UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAVIDEA BIOPHARMACEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL M. GOLDBERG,, <br><br> Defendants. | Case No.:  1:19-cv-01578 <br><br> **COMPLAINT** |

Plaintiff Navidea Biopharmaceuticals, Inc. ("Navidea" or "Plaintiff"), files this Complaint against Defendant Dr. Michael M. Goldberg ("Goldberg" or "Defendant") for breach of contract, breach of the covenant of good faith and fair dealing, and to obtain a declaratory judgment.

## THE PARTIES

1. Plaintiff Navidea is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Ohio.  Plaintiff is a publicly-traded corporation listed on the New York Stock Exchange American ("NYSE").

2. Non-Party Macrophage Therapeutics, Inc. ("Macrophage") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business in Ohio.

3. Upon information and belief, Defendant Goldberg is an employee of Macrophage and is a resident of New Jersey.

## NATURE OF THE ACTION

4. This is a civil action for breach of contract, breach of the covenant of good faith and fair dealing, fraudulent inducement, and to obtain a declaratory judgment.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because this is a civil action involving citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. Navidea is a citizen of Delaware and Ohio; the Defendant is a citizen of New Jersey.

6.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

7.     A substantial part of the events or omissions giving rise to the claim occurred in this county.

8.     Personal jurisdiction over Goldberg exists because (a) Goldberg entered into the August 14, 2018 (the "August Agreement") in which he agreed that any action brought to enforce the terms of this Agreement shall be brought exclusively in the federal and state courts located in New York, New York, and (b) Goldberg regularly transacts business within New York.

**BACKGROUND**

**A.     The August Agreement**

9.     Navidea is a leader in precision medicine with immuno-targeted products designed to help identify the sites and pathways of undetected disease and enable better diagnostic accuracy, clinical decision-making, targeted treatment and, ultimately, patient care.

10.    Navidea focuses on the development of innovative immunodiagnostic agents and immunotherapeutics that can and will make a difference for individuals, as well as their families, physicians and care givers, touched by devastating conditions like cancer, autoimmune, infectious and inflammatory diseases.

2

11. Macrophage is a subsidiary of Navidea and is seeking to develop treatments for cancer, cardiovascular, autoimmune, antiviral and brain diseases through use of the Manocept platform, a patented delivery system targeting CD206 on activated macrophages.

12. Navidea owns approximately 99.8% of Macrophage with Goldberg and Platinum (defined below) holding the remaining 0.2% through preferred shares of stock.

13. On or about August, 14, 2018, Navidea, Macrophage, and Goldberg entered into the August Agreement with the intent of entering into one or more additional definitive agreements (the "Transaction Documents").

14. To date, no Transaction Documents have been entered into between Navidea, Goldberg and Macrophage.

15. The August Agreement provides that Goldberg would be entitled to receive 23.5 million shares of common stock of Navidea. The August Agreement provides that 18.5 million shares would be issued upon consummation of the transaction and five million shares would be issued on January 2, 2019.

16. The August Agreement provided that 10 million of the shares of common stock to be issued to Goldberg would be held in escrow to settle any disputes that may arise between Navidea and Goldberg related to certain debt obligations alleged to be owed to Goldberg and for which a third party, Platinum-Montaur Life Sciences, LLC, has made a competing claim.

17. The August Agreement provides that Goldberg will also be entitled to an aggregate of $978,000 as severance, payable in equal installments over 24 months beginning on August 31, 2018.

18. The August Agreement provides that Navidea will also pay the costs to continue Goldberg's existing health coverage for a period of 16 months, by paying the amounts required under COBRA to maintain such coverage.

19. The August Agreement provides that Goldberg waived all rights to collect any debt (including, without limitation, interest) owed by Navidea, and releases each of Navidea and Macrophage from any and all claims that currently exist or arise, including but not limited to claims for any compensation, vacation pay, severance, bonus, options, warrants or any debt obligations.

20. The August Agreement specifically did not waive Goldberg's claims to an additional five million so-called "Phantom Shares" of Navidea stock; however, Goldberg's entitlement to the Phantom Shares expired by virtue of his cessation of employment at Navidea.

21. The August Agreement provides that after the award and the placement of the Navidea shares with members of Goldberg's family, neither Goldberg nor such family members will transfer any of Navidea shares for six months without the prior written consent of Navidea.

22. The August Agreement further provides that Macrophage would issue to Goldberg shares of MT Super Voting Common Stock in a number equal to 5.0% of the outstanding shares of Macrophage.

23. The August Agreement further provides that the holders of MT Super Voting Common Stock shall be entitled to notice of any stockholders' meeting and to vote as a single class with holders of the Common Stock upon any matter submitted to the stockholders for a vote and that each holder of MT Super Voting Common Stock shall have 20 votes for each full share of MT Common Stock into which the shares of MT Super Voting Common Stock would be convertible on the record date for the matter to be voted on.

24. The August Agreement provides that until such time as Macrophage shall have obtained aggregate gross proceeds of $10 million in one or more financings, the vote or written consent of Navidea shall be required to issue to Goldberg or any of his affiliates any equity or rights to purchase equity.

25. The August Agreement provides that Navidea would be entitled to appoint one observer to the Macrophage Board of Directors, who would receive all notices of board meetings, written consents and board materials in advance of such meetings.

26. The August Agreement provides that for a period of six months, Navidea will provide a line of credit to Macrophage for the salary and benefits of Joel Kaufman, the expense of Nai Fang Wang, the expense of Jeffrey Arnold and MedChem, the remaining payment due and owing to the Salzman Group, the payment to Smart Assays, and other working capital items not to exceed $750,000 in the aggregate.

27. The August Agreement provides that Macrophage will redeem all shares of Goldberg's Macrophage preferred stock and any warrants or other equity rights held by Goldberg in Macrophage for no additional consideration other than Goldberg's rights under the August Agreement.

28. The August Agreement provides that the Transaction Documents shall contain other terms, conditions, representations and warranties of Navidea, MT and Goldberg customary for transactions of the type set forth in this Agreement, that counsel to Navidea's Special Committee, will prepare the initial drafts of the Transaction Documents, and that upon execution, the terms of such Transaction Documents shall supersede the terms set forth in the August Agreement.

29. The August Agreement provides that any subsequent failure to execute the Transaction Documents shall not render the provisions of the August Agreement invalid.

30. The August Agreement provides that if any part of the August Agreement is found invalid or unenforceable pursuant to judicial decree or decision, the remainder shall remain valid and enforceable according to its terms.

**B.  Partial Performance of the August Agreement**

31. Goldberg and Navidea each have partially performed their obligations under the August Agreement.

32. On August 14, 2018, Goldberg resigned as the Chief Executive Officer and President, and from the board of directors, of Navidea.

33. On August 14, 2018, Goldberg waived his rights to collect on the Platinum Debt (defined below).

34. On August 14, 2018, Goldberg released certain claims against Navidea and Macrophage.

35. Beginning on August 14, 2018, Navidea extended credit to Macrophage in an amount not to exceed $750,000 and has been paying directly all of the expenses of Macrophage incurred through February 14, 2019.

36. On August 31, 2018, Navidea advanced to Goldberg the costs to continue Goldberg's existing health coverage for a period of 16 months from August 14, 2018.

37. Commencing on August 31, 2018, Navidea has been paying the severance obligations under the August Agreement on a monthly basis. To date, Goldberg has been paid severance in the amount of $244,500.

38. In September 2018, Navidea's proposed issuance of 23.5 million shares to Goldberg under the August Agreement was presented to the NYSE for review.

39. The NYSE took the position that all equity granted to Goldberg at other than fair market value on the date of the issuance would constitute equity compensation, including equity granted in lieu of debt forgiveness because the value of the shares to be issued exceeded the amount of the debt being retired.

40. In addition, the NYSE indicated that any shares issued to Goldberg in lieu of his 2017 and 2018 bonus would be deemed equity compensation unless they were issued at fair market value on the date of the grant, or issued under a shareholder approved plan.

41. The NYSE guidance limited the ability of Navidea to comply with Goldberg's subsequent demands as to how he wanted his shares issued under the August Agreement without putting Navidea's stock exchange listing in jeopardy.

42. In response, Navidea offered Goldberg a cash payment in exchange for debt forgiveness in excess of the amount permitted by the NYSE to be issued in shares. Navidea offered each of the foregoing alternatives to Goldberg to the extent permissible under the NYSE rules (including combinations of the foregoing), but Goldberg rejected both, citing personal reasons, including tax planning.

43. On November 22, 2018, after Goldberg refused to sign the lock-up agreements, seek shareholder approval, or give instructions to which family members the shares should be issued, Navidea directed the transfer agent to issue 18.5 million shares due under the August Agreement.

44. On or about November 22, 2018, Goldberg was provided with 13.5 million shares and the remaining five million shares have been held by Navidea pursuant to the escrow provision in the August Agreement.

45. While Navidea has not yet issued the additional five million shares due on January 2, 2019, those additional five million shares would be required to be held in escrow under the August Agreement.

### C.  Platinum-Montaur Life Sciences LLC

46. Prior to becoming CEO, Goldberg was affiliated with an entity called Platinum-Montaur Life Sciences ("Platinum").

47. Platinum, Navidea and Goldberg are parties to that certain Securities Purchase Agreement, dated as of March 1, 2015, between Platinum and Macrophage (the "SPA"), which restricts Macrophage from issuing additional shares below a certain value absent Platinum's consent.

48. The issuance of the MT Super Voting Common Stock could not be accomplished under the SPA without either obtaining Platinum's consent or without diluting's Platinum's interests in Macrophage.

49. Platinum is currently in receivership and the 99% member of Platinum is in liquidation in the Cayman Islands.

50. On or about November 2, 2017, Platinum sued Navidea seeking to recover amounts that Platinum contends are due to it (the "Platinum Debt").  *See Platinum-Montaur Life Sciences LLC, v. Navidea Biopharmaceuticals, Inc.*, Civ. Act. No. 17-cv-9591 (VEC) (HBP).

51. Goldberg has made a competing claim to the Platinum Debt.

52. The August Agreement resolved Goldberg's claim by Navidea agreeing to issue him Navidea shares as compensation for the Platinum Debt, but holding 10 million shares in escrow as security in the event that Navidea is required to pay Platinum for all or a portion of the Platinum Debt.

53. On October 31, 2018, the Southern District of New York dismissed the Platinum Lawsuit for lack of standing. Platinum took an appeal of the dismissal.

54. On or about December 30, 2018, Navidea discovered that Platinum had sued Goldberg individually, alleging that he had misappropriated certain warrants from Platinum pursuant to which Goldberg was able to acquired 5.4 million shares in Navidea back in January 2017 (the "Warrants Litigation").

55. Prior to executing the August Agreement, Goldberg had informed Navidea that Platinum's claim to the warrants was a "dead issue" in that Platinum was not pursuing those claims against Goldberg any further. However, it turns out this representation was false in that the Warrants Litigation was filed on October 5, 2018.

56. On February 8, 2019, Goldberg filed an answer in the Warrants Litigation and that case remains pending.

**D.   Goldberg's Breaches of the August Agreement**

57. As of August 14, 2018, the parties anticipated that Goldberg would remain engaged in Navidea's subsidiary, Macrophage.

58. As of August 14, 2018, Goldberg agreed to focus his energy full time on creating value at Macrophage for Macrophage's shareholders.

59. Goldberg has refused to engage in activities necessary for the success of Macrophage because he views resolution of his demands for additional compensation under the August Agreement as a precondition to undertaking such actions.

60. On September 7, 2018, Navidea sent drafts of documents to Goldberg and Macrophage to memorialize and consummate the transaction (the "Draft Documents").

61. That same day, Goldberg refused to review the Draft Documents.

62. Specifically, Goldberg stated that he would not review the documents because: (1) there was no agreement regarding the preferred stock sale from Macrophage to Navidea; and (2) there was no agreement for the $750,000 to be treated as debt (even though the August Agreement expressly provided otherwise).

63. Thus, Goldberg refused to negotiate or comment on any documents that did not address his stock issuances.

64. Moreover, because of the NYSE guidance restricting certain actions by Navidea, Goldberg demanded more shares or cash than what he had previously agreed to accept in the August Agreement.

65. During the course of these discussions, Goldberg made numerous demands to change the terms of the August Agreement and made improper demands upon Navidea to try and circumvent the NYSE guidance.

66. For example, Goldberg offered to sell unspecified intellectual property to Navidea (which already belonged to Navidea because Goldberg was required under various agreements to transfer any intellectual property to Navidea).

67. Similarly, Goldberg demanded that Navidea restate the amount of the Platinum Debt notwithstanding the fact that the Platinum Debt had been quantified as a specific number in numerous filings during the time in which he was CEO of Navidea.

68. On November 2, 2018, after a call with Goldberg, Goldberg again refused negotiate or enter into the transactions stating unless he received additional shares to which he was not entitled under the August Agreement.

69. Later that same day, Goldberg contacted a member of the Navidea Board of Directors and stated: "If [the Navidea CEO] is representing the board and if what he offered is the final offer that Navidea is making for its inability to honor its contract I need to know. Because if so I will hire litigators next week and take all other actions necessary to perfect my valid contractual claims. This will be a disaster for all involved and I will lose millions that Navidea may not be able [sic] makeup so it's not where I want to go but that is the only path I will be left with to protect my downside."

70. On November 9, 2018, Goldberg continued to insist to Navidea's counsel that he needed additional compensation for the Platinum Debt and the delay in issuance of shares under the August Agreement.

71. On November 12, 2018, Goldberg continued to place the issue of his Navidea share issuance as a precondition to fulfilling his commitment to focus his time creating value at Macrophage.

## FIRST CAUSE OF ACTION
## (**BREACH OF CONTRACT**)

72. Navidea repeats and reiterates the preceding allegations as if set forth fully herein.

73. The August Agreement is a valid and binding contract.

74. The August Agreement required, among other things, that Goldberg enter into Transaction Documents which contain "terms, conditions, representations and warranties of Navidea, Macrophage and Goldberg customary for transactions of the type set forth in [the August Agreement."

75. Goldberg has refused to provide comments on the Draft Documents or enter into Transaction Documents.

76. The August Agreement prevented Goldberg from issuing to himself or any affiliate any equity until Macrophage has obtained $10 million in one or more financings.

77. Notwithstanding the fact that Macrophage has not obtained $10 million in financings, Goldberg has issued himself five percent ownership of a newly created subsidiary of Macrophage.

78. Notwithstanding the fact that Navidea advanced Goldberg the costs to continue Goldberg's existing health coverage, Goldberg did not pay the amounts required thereby causing Navidea to request a waiver from its insurer which has resulted in damage to Navidea.

79. Navidea at all times has either complied with its obligations under the August Agreement and has performed and was willing and able to perform all of its obligations thereunder that it was able to perform.

80. Goldberg was capable of performing his obligations under the August Agreement but, instead, breached the August Agreement through his actions above.

81. Navidea has suffered damages and will continue to suffer damages resulting from Goldberg's breaches in an amount to be determined at trial.

SECOND CAUSE OF ACTION
(**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**)

82. Navidea repeats and reiterates the preceding allegations as if set forth fully herein.

83. The August Agreement is governed by Delaware law.

84. The covenant of good faith and fair dealing is implied in every contract governed by Delaware law.

85. When entering into the August Agreement, it was the intention of the parties that Goldberg, Macrophage and Navidea would promptly enter into the Transaction Documents.

86. When entering into the August Agreement, it was the intention of the parties that Goldberg would immediately start taking actions to advance the business of Macrophage.

87. When entering into the August Agreement, it was the intention of the parties that Navidea would extend a credit line up to $750,000 and for a period of only six months.

88. Navidea was reasonably justified in understanding that Goldberg would cooperate in fulfilling the terms of the August Agreement.

89. In refusing to negotiate the Draft Documents and/or enter into the Transaction Documents, Goldberg has acted arbitrarily and unreasonably.

90. As a result of Goldberg's actions, including the transferring of Macrophage's assets to the MT Subsidiary, Navidea has been deprived of the benefits of the bargain it struck with Goldberg and Macrophage.

91. The foregoing misconduct by Goldberg constitutes a breach of the implied covenant of good faith and fair dealing.

92. Navidea has suffered damages and will continue to suffer damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (**DECLARATORY JUDGMENT**)

93. Navidea repeats and reiterates the preceding allegations as if set forth fully herein.

94. This action involves the respective rights of Goldberg and Navidea under the August Agreement.

95. A ripe controversy exists under the parties respective obligations under the August Agreement in light of: (1) Goldberg's issuance of equity to himself; (2) Goldberg's failure to enter into the Transaction Documents; (3) Goldberg's insistence that his personal interests be satisfied before causing Macrophage to comply with its obligations under the August Agreement; (4) Navidea was unable to issue stock in accordance with Goldberg's demands without endangering Navidea's listing with the NYSE.

96. Plaintiff seeks a declaratory judgment that performance of certain of its obligations are excused by virtue of the above.

97. Plaintiff seeks a declaratory judgment that it is entitled to terminate the August Agreement as result of Goldberg's actions.

### **REQUESTED RELIEF**

WHEREFORE, Navidea demands judgment as follows:

A. That Goldberg breached the August Agreement;

B. That Goldberg's conduct warrants the imposition of compensatory and punitive damages;

C. A declaration regarding the remaining rights and obligations under the August Agreement;

14

D.      That Navidea be awarded attorney fees and costs; and

E.      That Navidea be awarded such other and further relief that this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a jury trial on all issues so triable.

Dated: New York, New York  
February 20, 2019

Respectfully submitted,

THOMPSON HINE LLP

By: /s/ Barry M. Kazan  
Barry M. Kazan  
335 Madison Avenue, 12th Floor  
New York, New York 10017-4611  
Tel. (212) 344-5680  
Fax (212) 344-6101  
Barry.Kazan@Thompsonhine.com

*Attorneys for Plaintiff*  
*Navidea Biopharmaceuticals, Inc.*