UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: NAVIDEA BIOPHARMACEUTICALS
LITIGATION

Case No.: 1:19-cv-01578-VEC

ECF Case

## PLAINTIFF/COUNTERCLAIM-DEFENDANT NAVIDEA BIOPHARMACEUTICALS, INC. AND THIRD-PARTY DEFENDANT MACROPHAGE THERAPEUTICS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND MOTION TO STRIKE CERTAIN OF DEFENDANT/COUNTERCLAIM-PLAINTIFF/THIRD-PARTY PLAINTIFF MICHAEL M. GOLDBERG. M.D.'S <u>COUNTERCLAIMS AND THIRD-PARTY CLAIMS</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

I.    BACKGROUND ...................................................................................................... 3

    A.    The August Agreement ................................................................................. 3

    B.    The Platinum Note ........................................................................................ 3

II.   LEGAL STANDARD ............................................................................................. 6

    A.    Federal Rule of Civil Procedure 12(b)(6) ................................................... 6

    B.    Federal Rule of Civil Procedure 12(b)(1) ................................................... 7

    C.    Federal Rule of Civil Procedure 12(f) ........................................................ 8

III.  LEGAL ARGUMENT ............................................................................................ 9

    A.    Portions of the Breach of Contract Claims Should be Dismissed and/or
        Stricken ......................................................................................................... 9

        1.    The Contract Claims Against Navidea Contradict The August
            Agreement ......................................................................................... 9

        2.    The Contract Claims Against Macrophage Contradict The August
            Agreement ....................................................................................... 12

    B.    Goldberg Fails To Allege A Plausible Claim For Wrongful Termination ............... 12

    C.    Goldberg Lacks Standing To Pursue Injunctive Relief ............................. 14

    D.    Goldberg's Quantum Meruit Claim Should Be Dismissed.......................... 17

        1.    Goldberg's Quantum Meruit Claim Fails As A Matter Of Law Because
            An Express Contract Governs Goldberg's Claims ................................. 17

        2.    Goldberg Lacks Standing To Enforce The Platinum Note And
            Therefore, His Quantum Meruit Claim Cannot Rely On Those
            Allegations ...................................................................................... 19

            a.    Goldberg Has Not And Cannot Allege Standing To Enforce The
                Platinum Note And Therefore, Those Allegations Must be
                Dismissed and/or Stricken ....................................................... 19

            b.    The Platinum Note Was Fully Assigned And Extinguished.................... 20

        3.    Portions of Goldberg's Quantum Meruit Claim are Not Sufficiently
            Plead............................................................................................... 23

CONCLUSION.................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AEI Life LLC v. Lincoln Benefit Life Co*.,
   892 F.3d 126 (2d Cir. 2018)................................................................................20

*Amidax Trading Grp. v. S.W.I.FT. SCRL*,
   671 F.3d 140 (2d Cir. 2011)..................................................................................7

*Antares Mgmt. LLC v. Galt Global Capital, Inc.*,
   No. 12-CV-6075(TPG), 2013 U.S. Dist. LEXIS 43545 (S.D.N.Y. Mar. 22,
   2013) ..................................................................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................6, 12, 13, 23

*Bader v. Wells Fargo Home Mortg. Inc.*,
   773 F. Supp. 2d 397 (S.D.N.Y. 2011)..................................................................17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 554 (2007)........................................................................................12, 23

*Bradley v. Earl B. Feiden, Inc.*,
   8 N.Y.3d 265 (N.Y. 2007) ..................................................................................22

*Brown v. Daikin Am. Inc.*,
   756 F.3d 219 (2d Cir. 2014)................................................................................13

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016)................................................................................7, 8

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)..................................................................................4

*Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*,
   No. 08-CV-1115, 2010 WL 4058143 (S.D.N.Y. Sept. 30, 2010)..........................13

*Ellington v. EMI Music, Inc.*,
   24 N.Y.3d 239 (N.Y. 2014) ................................................................................21

*Feinberg v. Katz*,
   No. 99 Civ. 45 (CSH), 2002 U.S. Dist. LEXIS 13771 (S.D.N.Y. July 26,
   2002) ..................................................................................................................8

*Galli v. Metz*,
   973 F.2d 145 (2d Cir. 1992)................................................................................22

*Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*,
   747 F.3d 44 (2d Cir. 2014)........................................................................8

*Inner City Telecomms. Network, Inc. v. Sheridan Broad. Network, Inc.*,
   260 A.D.2d 257 (N.Y. App. Div. 1999) ...................................................19

*Kaliski v. Bacot*,
   320 F.3d 291 (2d Cir. 2003) (in order to invoke derivative standing pursuant
   to Fed. R. Civ. P. 23.1, a plaintiff must satisfy Rule 23.1's pleading
   requirements) ............................................................................................17

*Kamdem-Ouaffo v. Balchem Corp.*,
   No. 17-CV-2810, 2018 U.S. Dist. LEXIS 157265 (S.D.N.Y. Sept. 14, 2018)........................13

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*,
   494 F. App'x 153 (2d Cir. 2012) .........................................................6, 9, 17, 18

*Luckett v. Bure*,
   290 F.3d 493 (2d Cir. 2002)........................................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...........................................................................14, 16

*Macrophage Therapeutics, Inc v. Michael M. Goldberg M.D.*
   (C.A. No. 2019-0137-JRS) ....................................................................15, 16

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993).......................................................................3

*Nat'l Fin. Co. v. Uh*,
   279 A.D.2d 374 (N.Y. App. Div. 2001) .....................................................21

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
   830 F.3d 152 (2d Cir. 2016).....................................................................6, 9

*Orientview Techs. LLC v. Seven for All Mankind, LLC*,
   No. 13 CI. 0538, 2013 U.S. Dist. LEXIS 111107 (S.D.N.Y. Aug. 7, 2013) ...................8, 21

*Platinum-Montaur Life Sciences, LLC v. Navidea Biopharmaceuticals, Inc.*,
   Case No. 1:17-cv-09591-VEC, 2018 U.S. Dist. LEXIS 186252 (S.D.N.Y. Oct.
   31, 2018) ................................................................5, 6, 7, 19, 21, 22

*Premium Mortg. Corp. v. Equifax, Inc.*,
   583 F.3d 103 (2d Cir. 2009)........................................................................8

*President & Fellows of Harvard Coll. v. Glancy*,
   C.A. No. 18790, 2003 WL 21026784 (Del. Ch. Mar. 21, 2003) ............................15

iii

*Rates Tech. Inc.v. Speakeasy, Inc.*,
  685 F.3d 163 (2d Cir. 2012)..............................................................................15

*Reeves v. Continental Equities Corp.*,
  767 F. Supp. 469 (S.D.N.Y. 1991) .......................................................................8

*Sprint Commc'ns Co., L.P. v. APCC Servs.*,
  554 U.S. 269 (2008)...........................................................................................16

*State v. Home Indem. Co*.,
  66 N.Y.2d 669 (N.Y. 1985) ................................................................................21

*Stengel v. Rotman*,
  Civ. No. 18109, 2001 WL 221512 (Del. Ch. Feb. 26, 2001), *aff'd sub nom.*,
  *Stengel v. Sales Online Direct, Inc.*, 783 A.2d 124 (Del. 2001) .............................15

*Suffolk Cnty. v. Long Island Lighting Co.*,
  728 F.2d 52 (2d Cir. 1984)..............................................................8, 11, 12, 17

*Summers v. Earth Island Inst*.,
  555 U.S. 488 (2009)...........................................................................................14

*Town of Babylon v. Fed. House. Fin. Agency*,
  699 F.3d 221 (2d Cir. 2012)...............................................................................16

*Wallace v. 600 Partners Co*.,
  86 N.Y.2d 543 (N.Y. 1995) ................................................................................21

*Wolff v. Rare Medium, Inc.*,
  171 F. Supp. 2d 354 (S.D.N.Y. 2001)................................................................9, 10

## Statutes

Del. Gen. Corp. Law. § 225 ........................................................................................15

N.Y. U.C.C. § 3-301 ............................................................................................19, 20

Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") and Third-Party Defendant Macrophage Therapeutics, Inc. ("Macrophage") submit this memorandum of law in support of their motion to dismiss and motion to strike certain of Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Michael M. Goldberg, M.D.'s ("Goldberg") Counterclaims against Navidea and Third-Party Claims against Macrophage pursuant to Federal Rule of Civil Procedure 12(b)(6), 12(b)(1) and 12(f).

## PRELIMINARY STATEMENT

This case was originally brought by Navidea against Goldberg for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and breach of loyalty to remediate the actions of a recalcitrant party, Goldberg, who has a pattern of ignoring his contractual obligations, confusing himself and his interests with those of the companies for which he purportedly acts, and pursuing plans to enrich himself at the expense of Navidea and Macrophage (and their shareholders). Goldberg, through his counterclaims and third-party claims, is seeking to impermissibly expand the controversies in this case beyond those permitted by the Federal Rules. As shown below, all or part of his claims fail to state a cause of action or he otherwise lacks standing to bring them in the first instance.

On or about August 14, 2018, Navidea, Macrophage, and Goldberg entered into an agreement (the "August Agreement") with the intent of providing for the separation of Goldberg from Navidea and the establishment of the parties' rights and obligations with respect to the ownership, management and continued operations of Macrophage. Almost immediately, Goldberg sought to renegotiate the August Agreement, and made certain claims and undertook certain actions which were material breaches of the August Agreement and otherwise designed to frustrate the terms of the August Agreement. Finally, in an utter act of desperation, Goldberg

executed self-help remedies by engaging in the unauthorized transfer of all or substantially all of Macrophage's assets, including rights under a license agreement with Navidea, to an entity formed and controlled by Goldberg.  While that unlawful transaction has been deemed void by a Delaware Court (and Goldberg has been held in contempt of that Court), Goldberg answered Navidea's Amended Complaint (which is also styled as a third-party claim against Macrophage) and asserted claims against Navidea and Macrophage for breach of the August Agreement, wrongful termination, *quantum meruit*, and injunctive relief.  By this motion, Navidea and Macrophage seek to dismiss certain of those claims.

Portions of Goldberg's breach of contract claims against Navidea and Macrophage fail because the plain language of the August Agreement contradicts Goldberg's allegations such that they must be dismissed or stricken as a matter of law.  Portions of those counts should also be dismissed because Goldberg lacks standing to assert them.

Goldberg's wrongful termination claim cannot survive this motion to dismiss on two grounds.  First, it is not sufficiently plead and second, Goldberg has waived his right to argue that the Macrophage Board of Directors was improperly constituted by failing to raise the issue in accordance with the Delaware General Corporate Law.

Goldberg's *quantum meruit* claim must be dismissed because there is no dispute that the August Agreement covers the subject matter of Goldberg's claims.  Goldberg also lacks standing to assert allegations relating to the Platinum Note in support of the *quantum meruit* claim. Further, Goldberg does not sufficiently allege what services, if any, he provided to Navidea or Macrophage for which they were supposedly enriched.

Finally, Goldberg lacks standing to obtain certain injunctive relief he requests and therefore, those requests should be dismissed or stricken.

# I.    BACKGROUND

## A.    The August Agreement

On August 14, 2018, Navidea, Navidea's subsidiary, Macrophage, and Goldberg entered into the August Agreement.  *See* Goldberg's Counterclaims and Third-Party Claims ("CC/TPC").[1]

In his Counterclaims and Third-Party Claims, Goldberg alleges that Navidea and Macrophage failed to issue to Goldberg the Navidea and Macrophage shares he contends he is owed pursuant to the August Agreement.  *See* CC/TPC ¶¶ 3, 87, 100.  Goldberg further asserts that Navidea and Macrophage took action to deprive him of control of Macrophage, diminish the value of Macrophage and deprive Goldberg of the benefit of his bargain under the August Agreement.  According to Goldberg, those actions diminished the value of Navidea and the value of the Navidea shares.  *See id.* ¶ 4.

In his Counterclaims and Third-Party Claims, Goldberg brings claims against Navidea and Macrophage for breach of contract, against Macrophage for wrongful termination, and against Navidea and Macrophage for *quantum meruit*.  Goldberg also seeks a litany of injunctive relief.  *See* CC/TPC.

## B.    The Platinum Note

Certain of Goldberg's Counterclaims and Third-Party claims rely, in part, on allegations Goldberg makes regarding money he claims he is owed by Navidea (*see* CC/TPC ¶¶ 36-38, 50, 57, 130-131)), and therefore, background on that issue is provided herein.

---

[1] Facts set forth herein are taken from Goldberg's Counterclaims and Third-Party Claims, filed on June 13, 2019 ("Counterclaims and Third-Party Claims").  On a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6), all factual allegations are generally accepted as true, and all inferences are drawn in favor of the pleader.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993).

On July 25, 2012, Navidea executed a loan agreement (the "Loan Agreement") and promissory note (the "Platinum Note") payable to the order of Platinum-Montaur Life Sciences LLC ("Platinum-Montaur") in the amount of up to $35,000,000.00.  *See* Navidea SEC Filing containing Loan Agreement, attached to the Declaration of Barry M. Kazan, dated July 5, 2019 ("Kazan Decl."), as Ex. 1.[2]

In his Counterclaims and Third-Party Claims, Goldberg alleges that Platinum-Montaur assigned a portion of the debt incurred by Navidea in connection with the Platinum Note (the "Platinum Debt") in the approximate amount of $1,300,000 to Goldberg.  CC/TPC ¶ 37.  Goldberg does not attach as an exhibit to his pleading any assignment agreement.

In fact, on March 22, 2016, Platinum-Montaur executed an assignment of its interest (the "Assignment Agreement") in the Platinum Note to Platinum Credit Opportunities Master Fund, LP ("Assignee" or "Plat-Opp").  *See* Kazan Decl., Ex. 2 (Assignment Agreement).  By its terms, the Assignment Agreement assigned *all* of Platinum-Montaur's interest in the Platinum Note to Assignee Plat-Opp.  The Assignment Agreement provided that Platinum-Montaur wished to sell and Assignee wished to acquire and purchase the note dated July 25, 2012, issued by Navidea to Platinum-Montaur.  *Id.*  Exhibit A to the Assignment Agreement then states as the "Description of Instrument" the following: "*[e]ntirety of that Subordinated Promissory Note*, dated July 25, 2012 (as amended), issued by Navidea Biopharmaceuticals, Inc. to Platinum-Montaur Life Sciences, Inc. in the initial principal amount of $6,650,869.35."  *Id.* Ex. A (emphasis added).  With interest, the total purchase price was $7,022,715.21.  *Id.*

---

[2] In considering a motion to dismiss, it is proper for this Court to consider any document that is "integral" to the claim. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 n.3 (2d Cir. 2002) (citing cases).

Goldberg alleges that in the August Agreement he "agreed to release his portion of the Platinum Debt, which as of August 14, 2019, was approximately $2,508,000 (including accrued interest), with interest accruing at 18.125% annually, compounded monthly." CC/TPC ¶ 130. The August Agreement merely recognized that Goldberg had asserted that he was owed money in connection with the Platinum Note and sought to facilitate resolution of that dispute. *See* Goldberg Answer to Amended Complaint Ex. A. The August Agreement provided, *inter alia*, that, in exchange for his resignation as an officer and director of Navidea, Goldberg would be issued a specified number of shares and that 10 million of those shares would be held in escrow to settle any disputes that may arise between Navidea and Goldberg related to certain debt obligations alleged to be owed to Goldberg and for which Platinum-Montaur had made a competing claim. *Id.* That competing claim was the subject of this Court's prior ruling in *Platinum-Montaur Life Sciences, LLC v. Navidea Biopharmaceuticals, Inc.*, Case No. 1:17-cv-09591-VEC, 2018 U.S. Dist. LEXIS 186252 (S.D.N.Y. Oct. 31, 2018) (the "Platinum Decision").

Specifically, on November 2, 2017, Platinum-Montaur commenced an action against Navidea in the Supreme Court of the State of New York, County of New York. The action was removed to the United States District Court for the Southern District of New York (the "District Court") on December 6, 2017. On April 6, 2018, Navidea filed its motion to dismiss which was heard before this Court. On October 31, 2018, the Court granted judgment for Navidea and dismissed all claims in the case. *See Platinum-Montaur*, 2018 U.S. Dist. LEXIS 186252. In its Platinum Decision, the Court ruled that Platinum-Montaur had no standing to assert any contractual interest in funds that might be due under the Loan Agreement or Platinum Note. *Id.* at *13. The claims against Navidea were dismissed

without prejudice on the grounds of lack of standing to pursue the claims asserted. *Id.* at *14-15. Like the claims made and dismissed in the Platinum Lawsuit, Goldberg here alleges that "Platinum assigned a portion of the Platinum Debt" to Goldberg and that "Navidea owes certain money to Dr. Goldberg arising from loans made to Navidea by Platinum." CC/TPC ¶¶ 36-38. In support of his *quantum meruit* claim, Goldberg alleges that, pursuant to the August Agreement, Goldberg agreed to release his portion of the Platinum Debt and asserts that Navidea has been substantially enriched at Goldberg's expense. CC/TPC ¶¶ 126-140.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)). While a court will accept the factual allegations in the complaint as true, allegations that "are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679.

An unambiguous contract may be construed as a matter of law on a motion to dismiss. *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). When the plain terms of an unambiguous contract contradict a plaintiffs' allegations or claims, those allegations or claims should be dismissed. *See Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157-58 (2d Cir. 2012); *Amidax Trading Grp. v. S.W.I.FT. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

**B.      Federal Rule of Civil Procedure 12(b)(1)**

A claim should be dismissed under Fed. R. Civ. P. 12(b)(1) if the district court lacks the constitutional power to adjudicate it, including where, as here, the Counterclaim Plaintiff/Third-Party Plaintiff lacks standing under Article III. *See Amidax*, 671 F.3d at 145. The plaintiff has the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). In evaluating whether it has jurisdiction, the court may consider matters outside the pleadings. *See Amidax*, 671 F.3d at 145.

As this Court has recognized, a Rule 12(b)(1) jurisdictional challenge can be either "facial or fact-based." *Platinum-Montaur*, 2018 U.S. Dist. LEXIS 186252, at *5 (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). A facial challenge contends that a plaintiff lacks standing even "'based solely on the allegations of the complaint or the complaint and exhibits attached to it.'" *Id*. (quoting *Amidax*, 671 F.3d at 145). When assessing a facial challenge, the district court must determine whether the plaintiff's pleading documents "allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Amidax*, 671 F.3d at 145. The court must also "'accept[] as true all material factual allegations of the complaint,'" and "'draw[] all reasonable inferences in favor of the plaintiff.'" *Carter*, 822 F.3d at 57 (citations omitted).

A defendant can mount a fact-based challenge by proffering evidence beyond the complaint and its attachments. *Id*. The plaintiff may then rest on its allegations, if the defendant's evidence is immaterial, or it may present additional counter evidence. *Id*. Where there are material disputes of jurisdictional facts, the district court must make factual findings as part of its inquiry. *Id*.

With respect to standing to enforce a contract, it has long been held that, "absent a contractual relationship there can be no contractual remedy." *Suffolk Cnty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984). "Such a relationship exists if the plaintiff is in privity of contract with the defendant." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*, 747 F.3d 44, 49 (2d Cir. 2014). "A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[ ] an intent to permit enforcement by the third party in question." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985)).

## C.    Federal Rule of Civil Procedure 12(f)

Rule 12(f) authorizes the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See, e.g.*, *Feinberg v. Katz*, No. 99 Civ. 45 (CSH), 2002 U.S. Dist. LEXIS 13771, at *62-64 (S.D.N.Y. July 26, 2002) (striking allegations under Rule 12(f) where the allegations were inflammatory and irrelevant to the claims at issue); *Reeves v. Continental Equities Corp.*, 767 F. Supp. 469, 474 (S.D.N.Y. 1991) (striking a request for punitive damages for breach of contract where punitive damages were not available as a matter of law); *cf. Orientview Techs. LLC v. Seven for All Mankind, LLC*, No. 13 CI. 0538 (PAE), 2013 U.S. Dist. LEXIS 111107, at *9 (S.D.N.Y. Aug. 7, 2013) (indicating that a pleading may be stricken if it is obviously insufficient as a matter of law).

### III.   <u>LEGAL ARGUMENT</u>

**A.   Portions of the Breach of Contract Claims Should be Dismissed and/or Stricken**

**1.   The Contract Claims Against Navidea Contradict The August Agreement**

While Count I is styled as a breach of the August Agreement, virtually all of the allegations against Navidea should be dismissed under Rule 12(b)(6) for failure to state a claim, under Rule 12(b)(1) for lack of standing, or stricken as immaterial and prejudicial under Rule 12(f) because the allegations find no support in the August Agreement.

The bulk of allegations in Goldberg's breach of contract claim against Navidea should be dismissed or stricken because they contradict the plain language in the August Agreement. An unambiguous contract, such as the operative agreement here, may be construed as a matter of law on a motion to dismiss. *Orchard Hill*, 830 F.3d at 156. When the plain terms of an unambiguous contract contradict a plaintiffs' allegations or claims, those allegations or claims should be dismissed. *See Karmilowicz*, 494 F. App'x at 157-58. Here, Goldberg's allegations are all contradicted by the August Agreement. Moreover, to the extent that Goldberg argues that he can maintain claims based on a breach of good faith and fair dealing, the obligation of good faith cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract. *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001) (dismissing separate claim for breach of obligation of good faith as redundant to breach of contract claim) (citing *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 305 (S.D.N.Y. 1998) ("Any purported duty of good faith cannot add to, detract from, or alter the terms of the contract itself.")).

Paragraph 88 alleges that "Navidea has failed to contribute the required $750,000 to fund Macrophage's ongoing operations thereby diminishing the value of Macrophage as required by the August Agreement."  CC/TPC ¶ 88.  However, the August Agreement does not require Navidea to fund Macrophage's ongoing operations in the amount of $750,000.  Instead, the express terms of the August Agreement provide that Navidea will provide a line of credit for six months ("For six months after the Closing Date, Navidea *will provide a line of credit* to [Macrophage] . . . *not to exceed $750,000* in the aggregate.")  *Id*. (emphasis added).  Goldberg does not allege – because he cannot allege – that Navidea failed to provide a line of credit for six months; rather, Goldberg creates a term that does not appear in the August Agreement.

Paragraph 89 alleges that "Navidea improperly removed Dr. Greene from Macrophage's Board of Directors and purportedly replaced him with Claudine Bruck and Y. Michael Rice in violation of the August Agreement and the duty of good faith and fair dealing incorporated into it by law."  CC/TPC ¶ 89.  However, the August Agreement does not require that Dr. Greene serve on Macrophage's Board of Directors, nor does it set forth a term for members of the Board to serve, and consequently, that allegation should be dismissed or stricken.

Paragraphs 90 and 91 allege that "Navidea directed the improperly constituted Macrophage Board of Directors to terminate Dr. Goldberg as CEO of Macrophage" and "Navidea directed the improperly constituted Macrophage Board of Directors to hire Latkin as Macrophage's CEO in violation of the August Agreement"  CC/TPC ¶¶ 90-91.  However, the August Agreement does not dictate the terms upon which Goldberg could remain as CEO of Macrophage, does not prevent the Board from hiring an individual other than Goldberg, to serve as Macrophage's CEO.  Accordingly, those allegations should be dismissed or stricken.

Paragraph 92 alleges that "Navidea improperly terminated the Sub-License Agreement in violation of the August Agreement and the duty of good faith and fair dealing incorporated into it by law." *See* CC/TPC ¶ 92. Nothing in the August Agreement prevents Navidea from terminating the Sub-License Agreement (and in fact, the Sub-License Agreement is not mentioned in the August Agreement). As a result, that allegation should be dismissed or stricken. Further, Goldberg was not a party to the Sub-License Agreement and therefore, lacks standing to assert any claims based on that agreement. *See also Suffolk Cnty.*, 728 F.2d at 63.

Paragraph 93 alleges that "Navidea improperly terminated certain research and development projects of Macrophage in violation of the August Agreement and the duty of good faith and fair dealing incorporated into it by law," (*see* CC/TPC ¶ 93), but no language in the August Agreement prevents Navidea from doing so. Consequently, that allegation should be dismissed or stricken.

Finally, Paragraph 94 alleges that "Navidea improperly accessed and used certain confidential intellectual property of Macrophage and converted it to Navidea's own use in violation of the August Agreement and the duty of good faith and fair dealing incorporated into it by law." CC/TPC ¶ 94. But nowhere in the August Agreement does it state that Navidea cannot access and use Macrophage's confidential intellectual property. Indeed, there is no language in the August Agreement about Macrophage's intellectual property. Therefore, that allegation should be dismissed or stricken.

For the foregoing reasons, Goldberg's claims in paragraphs 88-94 of the breach of contract claim against Navidea should be dismissed or stricken.

### 2.    The Contract Claims Against Macrophage Contradict The August Agreement

While Count II is styled as a breach of the August Agreement, virtually all of the allegations against Macrophage should be dismissed under Rule 12(b)(6) for failure to state a claim, under Rule 12(b)(1) for lack of standing, or stricken as immaterial and prejudicial under Rule 12(f) because the allegations find no support in the August Agreement.

Paragraph 101 alleges that "Macrophage improperly terminated and/or assisted, consented to and/or acquiesced in Navidea's improper termination of the Sub-License Agreement in violation of the August Agreement and the duty of good faith and fair dealing incorporated into it by law." *See* CC/TPC ¶ 101. As stated above, nothing in the August Agreement prevents Navidea or Macrophage from terminating the Sub-License Agreement. That allegation should also be dismissed or stricken because Goldberg lacks standing to enforce the Sub-License Agreement, an agreement to which he is not a party. *See also Suffolk Cnty.*, 728 F.2d at 63.

Paragraph 102 alleges that "Macrophage improperly terminated and/or assisted, consented to and/or acquiesced in Navidea's improper termination of certain research and development projects without proper board authorization in violation of the August Agreement and the duty of good faith and fair dealing incorporated into it by law," (CC/TPC ¶ 102). However, nothing in the August Agreement prevents Navidea or Macrophage from taking such action. *See id.* Similarly, that allegation should also be dismissed or stricken because Goldberg is seeking to enforce agreements to which he is not a party.

### B.    Goldberg Fails To Allege A Plausible Claim For Wrongful Termination

Count III of the Complaint alleges in conclusory fashion that "Macrophage wrongfully terminated Dr. Goldberg" as Macrophage's CEO. CC/TPC ¶¶ 107, 111. However, at no point in

his pleading does Goldberg identify what law applies (*e.g*, New York, Delaware, Ohio, New Jersey), the elements of that law, or how his termination violated that law.   Therefore, his wrongful termination claim does not satisfy the pleading standard under *Twombly* and *Iqbal*, under which "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570)).   Moreover, if New York law applies, Goldberg cannot maintain a cause of action.   "The New York Court of Appeals has unequivocally held that there is no independent cause of action in tort for wrongful discharge of an employee." *Kamdem-Ouaffo v. Balchem Corp.*, No. 17-CV-2810, 2018 U.S. Dist. LEXIS 157265, at \*32-33  (S.D.N.Y. Sept. 14, 2018) (granting motion to dismiss wrongful termination claim because New York law does not recognize tort liability for wrongful discharge) (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 297 (N.Y. 1983) ("This court has not and does not now recognize a cause of action in tort for abusive or wrongful discharge of an employee; such recognition must await action of the Legislature."); *see also Sullivan v. Harnisch*, 19 N.Y.3d 259, 261 (N.Y. 2012) ("We held in Murphy . . . and have several times reaffirmed, that New York common law does not recognize a cause of action for the wrongful discharge of an at-will employee.")).

Under New York law, "employment for an indefinite or unspecified term is presumed to be at will and freely terminable by either party at any time without cause or notice." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 231 (2d Cir. 2014) (alterations and internal quotation marks omitted); *Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*, No. 08-CV-1115, 2010 WL 4058143, at \*4 (S.D.N.Y. Sept. 30, 2010) ("Under New York law, 'an employer has the right to terminate an at-will employee at any time for any reason or for no reason, except where that right has been limited by express agreement.'").

Here, because New York law does not recognize an independent cause of action for wrongful termination, Goldberg's claim must be dismissed.  Moreover, to the extent Goldberg's wrongful termination allegations rely on the terms of the August Agreement, those allegations are duplicative of the breach of contract claim and cannot survive this motion to dismiss.

To the extent Goldberg's wrongful termination claim depends on his allegations that he was terminated by "an improperly constituted Board of Directors of Macrophage," (CC/TPC ¶ 108), Goldberg lacks standing to pursue those allegations for the reasons set forth below at Section III.C.  Having failed to plead sufficient factual allegations to allow this Court to draw the reasonable inference that Macrophage is liable under the alleged claim, Goldberg's wrongful termination claim must be dismissed.

### C.    Goldberg Lacks Standing To Pursue Injunctive Relief

To have a justiciable "case or controversy," a plaintiff must satisfy the three "irreducible constitutional minimum[s]" of standing: (1) injury-in-fact; (2) causal connection between the complained-of conduct and the alleged injury; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A plaintiff must demonstrate standing for each claim and form of relief sought.  Accordingly, in order to seek injunctive relief, a plaintiff must show the three elements of standing: injury in fact, causation, and redressability.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

In his Counterclaims and Third-Party Claims, Goldberg seeks an injunction, *inter alia*: "[r]emoving Michael Rice and Claudine Bruck from Macrophage's Board of Directors and declaring that Navidea is entitled only to appoint an observer to the Macrophage Board of Directors as provided in the August Agreement;" and "[i]nvalidating all actions taken by the

Macrophage Board of Directors on or after November 29, 2018." *See* CC/TPC ¶ 125(b)-(c). The composition of the board of directors of Macrophage is governed by Delaware law.

Goldberg concedes that he has known about Ms. Bruck and Mr. Rice's appointment to the Macrophage Board since November 29, 2018. *See* CC/TPC ¶ 66. In fact, on March 13, 2019, an order was entered in a separate action by Macrophage against Goldberg in the Delaware Chancery Court in which the Delaware Court ordered "The Board [of Macrophage] shall consist of Goldberg, Bruck and Rice." *Macrophage Therapeutics, Inc v. Michael M. Goldberg M.D.* (C.A. No. 2019-0137-JRS) (the "Delaware Action"), Court Order at ¶ 1, dated March 13, 2019. Thereafter, the Delaware Chancery Court issued a telephonic ruling, during which the court acknowledged the continuing authority of the properly constituted Board, stating that in "entering into [certain] challenged transactions, Dr. Goldberg failed to obtain the approval of Macrophage's board, which includes members Claudine Bruck and Y. Michael Rice." *Macrophage Therapeutics, Inc v. Michael M. Goldberg M.D.* (C.A. No. 2019-0137-JRS) (the "Delaware Action"), Telephone Rulings of the Court on Plaintiff's Motion For Summary Judgment at pages 9 and 12, dated June 12, 2019.[3] At no point in the over seven months since Ms. Bruck and Mr. Rice were elected as directors to the Macrophage Board, or the months since the Delaware Court formally recognized their authority did Goldberg take action as required under Delaware law. *See* Del. Gen. Corp. Law § 225. That alone waives any argument that Ms. Bruck and Mr. Rice are not valid Macrophage directors under applicable Delaware law.[4] *See*

---

[3] A court may take judicial notice of other court decisions in considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 167 (2d Cir. 2012) ("We may 'take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.'").

[4] Goldberg appears to claim to have informally objected to Ms. Bruck and Mr. Rice's appointment to the Macrophage Board *See* CC/TPC ¶ 108 (alleging that an improperly constituted Macrophage Board

*Stengel v. Rotman*, Civ. No. 18109, 2001 WL 221512 (Del. Ch. Feb. 26, 2001) (finding a month and a half delay from challenging a board election constituted unreasonable delay), *aff'd sub nom.*, *Stengel v. Sales Online Direct, Inc.*, 783 A.2d 124 (Del. 2001).

Given that, under applicable Delaware law, Goldberg has waived his right to challenge Ms. Bruck and Mr. Rice's appointment to the Macrophage Board, Goldberg's requested injunctive relief—to remove Ms. Bruck and Mr. Rice from the Board and invalidate all actions taken by the Board on or after November 29, 2018—is not a viable remedy. Therefore, Goldberg cannot satisfy the redressability element to demonstrate his standing to pursue that injunctive relief. *See Sprint Commc'ns Co., L.P. v. APCC Servs.*, 554 U.S. 269, 273-74 (2008) (injury not redressable unless "it is likely and not merely speculative that plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit."); *see also Town of Babylon v. Fed. House. Fin. Agency*, 699 F.3d 221, 229-30 (2d Cir. 2012) (no redressability where plaintiffs could not show that vacating the federal agency-issued directives to banks was likely to impact actions of third party banks whose actions injured plaintiffs); *Lujan*, 504 U.S. at 560 ("It must be likely . . . that the injury will be redressed by a favorable decision.").

In addition, Goldberg seeks an injunction "[r]einstating the Sub-License to Macrophage." CC/TPC ¶ 123(e). The "sub-license" is an agreement pursuant to which Navidea granted Macrophage an exclusive license to certain of its 'patents, patent applications, know-how, trade secrets and other proprietary rights related to devices and drugs for therapeutic and diagnostic purposes' through a sub-license agreement (the "Sub-License Agreement"). *See* Kazan Decl., Ex. 3 (Sub-License Agreement) & Ex. 4 (Termination Notice). That agreement was terminated.

---

"purportedly" terminated Goldberg as CEO. But the relevant delay is in filing a claim based on the purported objection. An objection coupled with a failure to bring any legal action is insufficient under Delaware law. *See President & Fellows of Harvard Coll. v. Glancy*, C.A. No. 18790, 2003 WL 21026784, at *17 (Del. Ch. Mar. 21, 2003).

*See* the Delaware Action, Telephone Rulings of the Court on Plaintiff's Motion For Summary

Judgment at pages 15-16, dated June 12, 2019.  Because Goldberg is not a party to the Sub-

License Agreement, he cannot claim to have been injured by its termination and therefore lacks

standing to pursue claims, including injunctive relief, based on the Sub-License Agreement.  *See*

*Suffolk Cnty.*, 728 F.2d at 63.[5]

In sum, because Goldberg cannot satisfy the Article III standing requirement with respect

to the requested injunctive relief, there is no justiciable "case or controversy" before the Court,

and accordingly, the requested relief must be dismissed.

### D.    Goldberg's *Quantum Meruit* Claim Should Be Dismissed

#### 1.    Goldberg's *Quantum Meruit* Claim Fails As A Matter Of Law Because An Express Contract Governs Goldberg's Claims

Goldberg cannot successfully plead his *quantum meruit* claim, a quasi-contractual theory

of liability, as an alternative to his breach of contract claims, because clear and complete

agreements between the parties indisputably govern the parties' rights and obligations.

It is well-settled that, under New York law, quasi-contractual relief based on a *quantum*

*meruit* theory is unavailable where, as here, an express contract covers the subject matter.  *See*

*Karmilowicz*, 494 F. App'x at 157-58 (affirming dismissal under Rule 12(b)(6) of *quantum*

*meruit* claim where an express contract covered the subject matter of the dispute); *Bader v. Wells*

*Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 414 (S.D.N.Y. 2011) (dismissing plaintiff's claim

---

[5] To the extent that Goldberg is asserting claims based on the fact that he is a shareholder of Macrophage, Goldberg has not complied with the pleading requirements of Fed. R. Civ. P. 23.1.  *See Kaliski v. Bacot*, 320 F.3d 291 (2d Cir. 2003) (in order to invoke derivative standing pursuant to Fed. R. Civ. P. 23.1, a plaintiff must satisfy Rule 23.1's pleading requirements).  For example, Goldberg has not alleged that he satisfied the "demand requirement of Rule 23.1," *i.e.*, the requirement that a plaintiff allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort.  *See* Fed. R. Civ. P. 23.1.

for *quantum meruit* because such a claim could not be stated where a written agreement was already in place).

Moreover, a plaintiff may plead alternative theories of breach of contract and *quantum meruit* only when "there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." *See Antares Mgmt. LLC v. Galt Global Capital, Inc.*, No. 12-CV-6075(TPG), 2013 U.S. Dist. LEXIS 43545, at 34 (S.D.N.Y. Mar. 22, 2013) (refusing to dismiss *quantum meruit* claim despite the existence of a breach of contract claim because defendants had argued no such contract existed).

Here, all parties agree that the August Agreement governs the subject matter of Goldberg's claims and therefore, Goldberg's *quantum meruit* theory of liability cannot lie. *See Karmilowicz*, 494 F. App'x at 157-58. Recognizing that he is barred from asserting a *quantum meruit* claim as an alternative to his breach of contract claims under the circumstances, Goldberg attempts to manufacture a dispute by asserting – incorrectly – that "Navidea has sought a declaration that the August Agreement is invalid." *See* CC/TPA ¶ 127. Navidea did no such thing. Rather, in its Amended Complaint, Navidea seeks a declaration that further performance of certain of its obligations under the August Agreement are excused due to Goldberg's failure to perform certain obligations under the agreement. *See* Am. Compl. ¶¶ 113-117. In doing so, Navidea acknowledges that the August Agreement is in existence and governs Goldberg's claims and simply seeks relief based on basic principles of contract law. Thus, because the August Agreement covers the claims at issue and any relief sought by Goldberg, and the obligations asserted in Goldberg's *quantum meruit* allegations are indistinguishable from that agreement, Goldberg cannot state a claim for *quantum meruit* liability, and that claim must be dismissed. For the same reason, Goldberg cannot proceed on a theory of *quantum meruit* liability to recover

under the terms of the Platinum Note (paragraphs 130-131 of the CC/TPA) because the Platinum

Note is the applicable contract governing the dispute in connection with that debt.

### 2. Goldberg Lacks Standing To Enforce The Platinum Note And Therefore, His *Quantum Meruit* Claim Cannot Rely On Those Allegations

Goldberg's Platinum Debt allegations must be dismissed and/or stricken on independent

grounds due to the fact that Goldberg lacks standing to assert them.  As such, even if the

*quantum meruit* claim survives this motion to dismiss (which it should not), those allegations as

to the Platinum Note should be dismissed and/or stricken.  *See* CC/TPC ¶¶ 36-38, 130-131; *see*

Fed. R. Civ. P. 12(f).

### a. Goldberg Has Not And Cannot Allege Standing To Enforce The Platinum Note And Therefore, Those Allegations Must be Dismissed and/or Stricken

Goldberg does not allege ever having possession of the Platinum Note or that it was lost

or destroyed.  Accordingly, Goldberg's failure to sufficiently allege his standing to enforce the

promissory note compels that any allegations regarding the Platinum Note and the debt

supposedly owed to him, be stricken from his pleading.[6]  An entity may be entitled to enforce a

promissory note in one of three ways.  First, as the holder of the promissory note.  *See* Revised

N.Y. U.C.C. § 3-301.  New York law requires that a holder be in possession of the promissory

note.  *See id.* § 1-201[21].  Second, as a nonholder in possession who has the rights of a holder.

---

[6] Here, it is the Platinum Note, rather than the Loan Agreement, from which Navidea's debt was incurred. This Court recognized that in some cases, a payment obligation pursuant to a promissory note is distinct and severable from a payment obligation created by a related agreement.  *See Inner City Telecomms. Network, Inc. v. Sheridan Broad. Network, Inc.*, 260 A.D.2d 257, 257 (N.Y. App. Div. 1999).  In this case, however, Goldberg does not allege, and the Court previously found that there does not appear to be, any daylight between the payment obligation created by the note and that created by the loan agreement. *Platinum-Montaur*, 2018 U.S. Dist. LEXIS 186252, at *10 n.2.  Indeed, that is likely because the promissory note was created by the loan agreement itself to reflect the loan balance.  Therefore, if the entirety of the note were assigned, there would be no residual right to payment under the loan agreement either.

*See id.* § 3-301.  Third, as "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3-309 or 3-418(d)."  *See id*.  Only this third option allows the enforcement of a promissory note without possession.  *Id.*

Here, Goldberg does not set forth allegations that Goldberg has, or had, possession of the Platinum Note at any point.  *See generally* CC/TPC.  Goldberg does not allege that the Platinum Note was lost or destroyed.  *Id.*  Goldberg does not allege who, if anyone, is currently in possession of the Platinum Note.  *Id*.  Nor has Goldberg produced a copy of the supposed partial assignment of interest to him in the Platinum Note or alleged any facts that would satisfy UCC §§ 3-309 or 3-418(d).  *Id*.  Indeed, Goldberg offers no copy, allegation, or evidence that such a note was ever issued (and Navidea does not believe a note was ever issued).  *Id*.  While a motion to dismiss assesses only whether the claim is plausible, without any allegations as to the possession of the Platinum Note, the portion of Goldberg's *quantum meruit* claim relying on the Platinum Debt allegations fails to meet that standard.

### b.    The Platinum Note Was Fully Assigned And Extinguished

As a second valid basis for striking Goldberg's allegations relying on the Platinum Note, the Court should find a lack of standing to assert those allegations due to the fact that there was a total assignment of the Platinum Note and a subsequent release of the Platinum Note.  As this Court previously recognized, pursuant to the choice-of-law provision in the Assignment Agreement, the Agreement is governed by the laws of New York State.  *See* Kazan Decl., Ex. 2; *see also AEI Life LLC v. Lincoln Benefit Life Co*., 892 F.3d 126, 132 (2d Cir. 2018) ("'[A] federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state.' Under New York law, 'courts will generally enforce choice-of-law clauses.'") (citations omitted).  New York courts have held that a complete assignment extinguishes the interest of the

assignor, such that the assignor retains no right to pursue any interest in the assigned asset. *See Nat'l Fin. Co. v. Uh*, 279 A.D.2d 374, 375 (N.Y. App. Div. 2001) ("Having assigned the note, [plaintiff] was no longer the real party in interest with respect to an action upon the instrument and retained no right to pursue a claim against defendant."). As this Court has previously found, determining whether Platinum-Montaur's assignment was complete or partial requires application of familiar contract principles. *See generally Platinum-Montaur*, 2018 U.S. Dist. LEXIS 186252. Under New York law, "a written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms" because "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244-45 (N.Y. 2014); *see also Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548 (N.Y. 1995) ("It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed.") (citation omitted). If the writing is ambiguous, *i.e.*, susceptible to more than one reasonable interpretation, then the Court may consider extrinsic evidence to resolve the ambiguity. *State v. Home Indem. Co.*, 66 N.Y.2d 669, 671-72 (N.Y. 1985). As this Court previously found, the language of the Assignment Agreement unambiguously assigned the entirety of Platinum-Montaur's interest in the Navidea debt to Plat-Opp. The Agreement expressly provided that Platinum-Montaur would "sell, transfer, convey, and assign" to Plat-Opp "*all*" of its right, title, and interest in" the Navidea "asset." Kazan Decl. Ex. 2 (emphasis added). The "asset" was then described as the "entirety" of the promissory note issued by Navidea on July 25, 2012. Kazan Decl. Ex. 2 at Ex. A. The assignment was also exhaustive in terms of temporal coverage, as it included rights to "all payments paid in respect [to the note] and all monies due, to become due or paid in respect thereof accruing on and after the Effective Date" of

the Agreement. *See* Kazan Decl. Ex. 2. Thereafter, on March 2, 2017, Plat-Opp provided a payoff letter to Navidea. In that letter, the Receiver defined "Indebtedness" to include all amounts due under the Platinum Note, indicated that upon payment of the Payoff Amount, all "Indebtedness owed to Lender" shall have been satisfied in full, and that the "Loan Documents," which included the Loan Agreement and the Platinum Note, "shall terminate and have no further force or effect."

Therefore, the Court should find that Goldberg's partial assignment assertion, like Platinum-Montaur's argument in the prior proceeding, collides directly with the plain language of the Assignment Agreement. Goldberg, like Platinum-Montaur, claims that he received an interest in the Platinum Loan Agreement and Platinum Note. CC/TPC ¶ 37. For that interpretation to prevail, the terms in the Assignment Agreement, "all" and "entirety," would have to mean not 100%, but a lesser percentage. As this Court found, that "tortured construction is implausible," as it renders superfluous the use of "entirety" and "all." *See generally Platinum-Montaur*, 2018 U.S. Dist. LEXIS 186252; *see also Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible.") (quotation marks and citation omitted)); *Bradley v. Earl B. Feiden, Inc*., 8 N.Y.3d 265, 274 (N.Y. 2007) ("A court must also be careful not to interpret a contracted [] provision in a manner that would render it meaningless.").

Goldberg's interpretation, like Platinum-Montaur's prior argument, also runs afoul of the Assignment Agreement's temporal reach. According to Goldberg, he retained not only a right to a residual interest in the Platinum Loan Agreement and Platinum Note, but also a right to interest and other charges that accrued after the assignment date. However, as the Court recognized, the

Assignment Agreement expressly gave Plat-Opp rights to all future payments that were not yet due on the note. *See* Kazan Decl., Ex. 2. Accordingly, Goldberg lacks standing to pursue allegations based on the Platinum Note on the separate basis that there was a total assignment of the Platinum Note and a subsequent release of the Platinum Note. At the very least, those allegations should be stricken from Goldberg's Counterclaims and Third-Party Claims.

### 3. Portions of Goldberg's *Quantum Meruit* Claim are Not Sufficiently Plead

Goldberg does not come close to satisfying the pleading standard under *Twombly* and *Iqbal* necessary for certain allegations in Goldberg's *quantum meruit* claim to survive a motion to dismiss. Goldberg vaguely alleges that "Navidea was substantially enriched as a result of the arrangement set forth in the August Agreement and Dr. Goldberg's actions following its execution on August 14th 2019 that were induced by Navidea's execution of the August Agreement." CC/TPC ¶ 129. Goldberg does not specify what actions he took or any services he provided to Macrophage or Navidea in support of his claim or how Navidea was "substantially enriched" as a result. *See id*. Accordingly, those allegations should be dismissed or stricken as insufficient "to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570)).

## <u>CONCLUSION</u>

For the reasons set forth herein, Navidea and Macrophage respectfully request that the Court grant their motion to dismiss Goldberg's claims for wrongful termination and *quantum meruit* and that the Court grant their motion to dismiss or strike certain of the breach of contract allegations and injunctive relief, together with such other and further relief as the Court may direct.

Dated: New York, New York
      July 5, 2019

Respectfully submitted,

THOMPSON HINE LLP

By:  /s/ Barry M. Kazan
      Barry M. Kazan
      Catherine R. Hartman
      335 Madison Avenue, 12th Floor
      New York, New York 10017-4611
      Tel. (212) 344-5680
      Fax (212) 344-6101
      Barry.Kazan@Thompsonhine.com
      Catherine.Hartman@Thompsonhine.com

      -and-

      SAUL EWING ARNSTEIN & LEHR LLP
      Alain M. Baudry
      33 South Sixth Street, Suite 4750
      Minneapolis, MN 55402
      T: (612) 225-2800
      Alain.Baudry@Saul.com

      *Attorneys for Plaintiff /Counterclaim Defendant*
      *Navidea Biopharmaceuticals, Inc. and*
      *Third-Party Defendant*
      *Macrophage Therapeutics, Inc.*