USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/26/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                         :     19-CV-1578 (VEC)
IN RE: NAVIDEA BIOPHARMACEUTICALS  :
LITIGATION                                      :     OPINION AND ORDER
                                                         X
-------------------------------------------------------------

VALERIE CAPRONI, United States District Judge:

Plaintiff Navidea Biopharmaceuticals, Inc. ("Navidea"), a pharmaceutical company, sued Michael Goldberg ("Goldberg") for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty. *See* Am. Compl., Dkt. 15. Goldberg answered the complaint and asserted counterclaims and third-party claims against Navidea and Third-Party Defendant Macrophage Therapeutics, Inc. ("Macrophage"), a subsidiary of Navidea, for breach of contract, wrongful discharge, injunctive relief, and *quantum meruit*. Dkt. 31. Goldberg moved to dismiss Plaintiff's breach of fiduciary duty claim on the grounds that it is time-barred and fails to state a claim. Dkt. 32. Goldberg also seeks advancement of attorneys' fees in connection with the fiduciary duty claim and Rule 11 sanctions against Plaintiff. *Id.* Navidea and Third-Party Defendant Macrophage moved to dismiss or strike certain of Goldberg's counterclaims and third-party claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f). Dkt. 40. Defendant Goldberg's motion is GRANTED in part and DENIED in part. Plaintiff/Counterclaim Defendant Navidea and Third-Party Defendant Macrophage's motion is GRANTED.

## BACKGROUND

On August 14, 2018, Navidea, Macrophage, and Goldberg, the former CEO of Navidea and founder of Macrophage, entered into an agreement (the "August Agreement") with the intent of entering into a further transaction ("the Transaction") to "provide for the separation of Goldberg from Navidea and the establishment of the parties' rights and obligations with respect

to the ownership, management and continued operations of Macrophage." Am. Compl., Dkt. 15 ¶ 12. Specifically, and as relevant to the pending motions, the August Agreement provided for: (1) Goldberg's resignation from Navidea, (2) the sale of 23.5 million shares of Navidea to Goldberg on the date of the consummation of the Transaction; (3) a six-month line of credit from Navidea to Macrophage of up to $750,000, (4) an issuance to Goldberg of Macrophage Super Voting Common Stock shares in a number equal to 5% of the outstanding shares, and (5) Goldberg's waiver of all rights to collect any debt owed by Navidea to Goldberg. *See* August Agreement, Dkt. 31-1. Plaintiff alleges that the future-contemplated agreements have not been executed because Defendant "undertook certain actions which Navidea considered breaches of the August Agreement." Am. Compl., Dkt. 15 ¶¶ 14, 44-67. Notwithstanding the Plaintiff's argument, the August Agreement expressly states that "any subsequent failure to execute the Transaction documents shall not render" the Agreement invalid. *See* August Agreement, Dkt. 31-1.[1]

    **a. Defendant's Opening of the "Secret Account"**

On May 8, 2015, Navidea entered into a Term Loan Agreement with Capital Royalty Partners II ("CRG") for a loan of up to $60,000,000. Am. Compl., Dkt. 15 ¶ 69. Pursuant to the loan agreement, Navidea was required to provide CRG with the control agreements for all depository accounts controlled by either Navidea or Macrophage and to notify CRG of any changes to the deposit accounts. *Id.* ¶ 71. Failure to provide such notice or control agreements was an event of default under the CRG Loan Agreement. *Id.*

---

[1]     In deciding these motions, the Court may consider the August Agreement, as it is referenced in the complaint and answer and was relied on by both parties in asserting their claims. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *see also Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir. 1991); *Vtech Holdings Ltd. v. Lucent Techs., Inc.,* 172 F. Supp. 2d 435, 437 (S.D.N.Y. 2001).

On December 1, 2015, allegedly following a rift between Goldberg and other members of Navidea management, Goldberg opened a Wells Fargo account for Macrophage (the "Secret Account"). *Id.* ¶¶ 72-74. Goldberg failed to inform CRG of the existence of the account and failed to provide CRG with a control agreement, thereby breaching the CRG Loan Agreement. *Id.* ¶ 74. CRG ultimately filed suit against Navidea in Texas state court, alleging numerous events of default under the Loan Agreement, including Goldberg's opening of the Secret Account. *Id.* ¶ 85. The Texas court entered summary judgment in favor of CRG, concluding that one or more events of default had occurred. *Id.* ¶ 86. Navidea alleges that, as a result of the summary judgment ruling, it was forced to sell significant assets, resulting in losses exceeding $50 million. *Id.* ¶¶ 86-91.

### b. The Platinum Debt

Prior to becoming CEO of Navidea, Goldberg had been affiliated with Platinum-Montaur Life Sciences, LLC ("Platinum-Montaur"), a collaboration among Goldberg, Platinum Partners Value Arbitrage Fund LP, Platinum Partners Liquid Opportunity Master Fund L.P., and Platinum Opportunity (NY) LLC (collectively "Platinum Funds"). Am. Compl., Dkt. 15 ¶ 33. On July 25, 2012, Navidea executed a loan agreement and promissory note (the "Platinum Note") payable to Platinum-Montaur in an amount of up to $35 million. Navidea and Macrophage Mem. of Law, Dkt. 41 at 4. On November 2, 2017, Platinum-Montaur sued Navidea seeking to recover funds owed by Navidea (the "Platinum Debt"), a part of which Defendant Goldberg asserts he is entitled to.[2] Am. Compl., Dkt. 15 ¶¶ 37-38. Goldberg alleges that Platinum assigned him $1.3 million of the Platinum Debt, and that, as of the August Agreement, Navidea owed him $2.5

---

[2] Although the Counterclaim at paragraph 38 asserts that Navidea owes Goldberg money arising from the Platinum Debt, at paragraph 130 Goldberg appears to acknowledge that he released his portion of the Platinum Debt as part of the August Agreement.

3

million (including accrued interest), Counterclaims and Third-Party Claims (CC/TPC), Dkt. 31 ¶¶ 37-38. The August Agreement provided for the issuance of Navidea shares as compensation for Goldberg's agreement to release his portion of the Platinum Debt. Am. Compl., Dkt. 15 ¶ 39; CC/TPC, Dkt. 31 ¶ 130.

## DISCUSSION

### I. Defendant Goldberg's Motion to Dismiss

Defendant moves to dismiss Plaintiff's fourth cause of action on the grounds that it is time-barred and fails to state a claim for which relief can be granted. Defendant also seeks attorneys' fees and Rule 11 sanctions.

#### a. Plaintiff's Fourth Cause of Action is Dismissed as Time-Barred

Plaintiff's fourth cause of action alleges that Goldberg breached his fiduciary duty of loyalty by "failing to advise Navidea's board members and management of his decision to open a secret Macrophage bank account in violation of the CRG Loan Agreement and without bothering to consult with Navidea legal counsel." Am. Compl., Dkt. 15 ¶¶ 120-122. As noted, *supra,* Navidea and CRG entered into a Loan Agreement pursuant to which Navidea was required to provide CRG with the control agreements for all depository accounts controlled by Navidea or Macrophage. *Id*. ¶ 71. Plaintiff alleges that Goldberg's opening of the Secret Account, without providing the control agreements, caused Plaintiff to be in default under the CRG Loan Agreement and ultimately resulted in CRG obtaining summary judgment against Navidea. *Id.* ¶¶ 74, 82, 85, 86.

##### i. Applicable Law

New York choice of law rules dictate that the law of the state of incorporation governs claims for breach of fiduciary duty. *Walton v. Morgan Stanley & Co. Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980). Thus, because Navidea is a Delaware corporation, Delaware law applies. Under

Delaware law, claims for breach of fiduciary duty are governed by a three-year statute of limitations. Del. Code. Ann. Tit. 10, § 8106(a); *In re AMC Inv'rs, LLC,* 551 B.R. 148, 152 (D. Del. 2016) ("Delaware's three-year statute of limitations for breach of fiduciary duty claims applies, and [] the limitations period begins to run from the occurrence of the alleged wrong.").

### ii. The Fourth Cause of Action is Time-Barred

Plaintiff's fourth cause of action is time-barred because more than three years have passed since Goldberg's alleged breach of his fiduciary duty; Goldberg opened the "secret account" on December 1, 2015 and this action was filed on April 26, 2019. Am. Compl., Dkt. 15 ¶ 74. Navidea argues that Goldberg's opening of the bank account was part of an extended period of misconduct, or continuing wrong, which extended until April 27, 2016, at the earliest. Navidea Mem. of Law, Dkt. 45 at 9-10. Accordingly, Plaintiff argues that the appropriate triggering date for the statute of limitations is April 27, 2016. *Id.* at 10-12. The Court disagrees; the statute of limitations "begins to run at the time that the cause of action accrues, which is generally when there has been a harmful act by a defendant." *Barbara v. MarineMax, Inc.*, No. 12-CV-0368, 2012 WL 6025604, at *9 (E.D.N.Y. Dec. 4, 2012). Because Goldberg's alleged harmful act occurred when he opened the bank account on December 1, 2015, the statute of limitations began to run on that date.[3] Even if Navidea did not learn of the alleged breach on December 1, 2015, CRG filed suit against Navidea for breach of the Loan Agreement on April 7, 2016. *See* Navidea Mem. of Law, Dkt. 45 at 7. Thus, by at least April 7, 2016, and likely earlier, Plaintiff knew that Goldberg had opened the Secret Account. Accordingly, even if the

---

[3] Navidea suggests that it was not actually "harmed" for purposes of triggering the statute of limitations until summary judgment was entered in the Texas litigation on February 8, 2017. Navidea Mem. of Law, Dkt. 45 at 11. This argument is unpersuasive and conflicts with Plaintiff's own argument that Goldberg's opening of the secret account harmed Plaintiff by forcing it into litigation with CRG. Am. Compl., Dkt. 15 ¶¶ 74, 82, 85, 86.

5

Court views April 7, 2016, as the triggering date for the statute of limitations, the fourth cause of action remains time-barred.

Because Plaintiff's fourth cause of action is barred by the statute of limitations, Defendant's motion to dismiss this claim is granted.[4] Accordingly, the Court will not address Defendant's arguments that the claim should also be dismissed for failure to state a claim.

### b. Attorneys' Fees

Defendant requests an advancement of attorneys' fees with respect to Plaintiff's now-dismissed breach of fiduciary duty claim. Goldberg Mem. of Law, Dkt. 33 at 7-9. Article V of Navidea's bylaws dictate the circumstances and conditions governing indemnification and the payment of attorneys' fees. Specifically, Section 3 of Article V, entitled "Payment of Expenses" states:

> Expenses (including attorneys' fees) incurred by an officer or director in defending any civil . . . action . . . shall be paid by the corporation in advance of the final disposition of such action . . . upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the corporation as authorized in this Article V.

*See* Kazan Decl., Dkt. 46-5 at 15-18.

Plaintiff argues that Section 3 of Article V suggests that Goldberg is not entitled to attorneys' fees because the provision does not expressly apply to *former* directors. Navidea Mem. of Law, Dkt. 45 at 14. Section 7 of Article V, however, confirms that Goldberg is entitled to the advancement of attorneys' fees, even though he is a former director. Section 7 of Article V, entitled "Contractual Nature" states, in relevant part:

> This Article V shall be deemed to be a contract between the corporation and each director and officer who serves as such at any time while this Article V is in effect. . . . The

---

[4] Navidea may file a motion for leave to amend its complaint to clarify whether there is other conduct constituting a breach of fiduciary duty that fell within the statute of limitations period. Navidea must move for leave to amend its complaint by January 31, 2020. If Navidea chooses to move for leave to amend, it must include a redlined version of its proposed amended complaint.

indemnification and advancement of expenses provided by . . . this Article V shall . . . continue as to a person who has *ceased to be a director, officer* . . .

*Id.*

Thus, based on the plain language of the bylaws, Section 7 applies to all of Article V, including Section 3, and authorizes an advancement of attorneys' fees to former directors. Accordingly, Defendant's request for an advancement of attorneys' fees with respect to Plaintiff's fourth cause of action is granted.[5]

### c. Rule 11 Sanctions

Defendant argues Plaintiff's assertion of the fourth cause of action, despite knowing it was meritless and time-barred, warrants sanctions under Federal Rule of Civil Procedure 11. *See* Goldberg Mem. of Law, Dkt. 33 at 9-10. The Court disagrees and denies Defendant's request for sanctions.

Under Rule 11(b), when an attorney presents a pleading or written motion to the court, he certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law" and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2)-(3). If the Court determines that Rule 11(b) has been violated, sanctions may be imposed. Fed. R. Civ. P. 11(c). A motion for sanctions must describe the specific conduct that allegedly violates Rule 11(b) and "must be made separately from any other motion," after providing the opposing party 21 days to correct or withdraw the challenged pleading. Fed. R. Civ. P. 11(c)(2).

---

[5] The parties must meet and confer to see whether they can agree on the attorneys' fees incurred by Goldberg in connection with his defense of the fiduciary duty claim. The parties must submit a letter to the Court by January 31, 2020, stating whether they have been able to reach an agreement.

7

Here, Plaintiff's assertion of the fourth cause of action is not so frivolous as to warrant sanctions; Plaintiff sets forth a good-faith, albeit unpersuasive, argument as to why the claim is part of an extended continuing wrong and should not be deemed time-barred. Moreover, Plaintiff's request for sanctions is procedurally improper. The request was not brought "as its own motion" or "served under Rule 5" as required by Rule 11(c)(2), and Defendant allegedly failed to provide Plaintiff an opportunity to withdraw or correct the claim. Navidea Mem. of Law, Dkt. 45 at 19. Thus, Defendant's request for sanctions is denied.

## II. Plaintiff/Counterclaim Defendant and Third-Party Defendant's Motion to Dismiss

Goldberg asserts counterclaims against Navidea and third-party claims against Macrophage for breach of the August Agreement, wrongful discharge as Macrophage's CEO, injunctive relief, and *quantum meruit*. *See* CC/TPC, Dkt. 31 ¶¶ 84-140. Navidea and Macrophage move to dismiss portions of the counterclaims and third-party claims asserting breach of contract and injunctive relief, as well as the claims for wrongful termination and *quantum meruit*, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 40.

### a. Portions of Count I and II: Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

#### i. Counts I and II: Breach of Contract

Navidea and Macrophage move to dismiss paragraphs 88-94 and 101-102 of Goldberg's breach of contract counterclaim and third-party claim under Rule 12(b)(6) because the "plain language of the August Agreement contradicts Goldberg's allegations." *See* Navidea and Macrophage Mem. of Law, Dkt. 41 at 9-12. The Court agrees and dismisses these portions of

Goldberg's counterclaim and third-party claim for breach of contract.[6]

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).

Under New York state law, to state a claim for breach of contract, the plaintiff must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). On a motion to dismiss, the Court may dismiss a breach of contract claim for failure to state a claim if the terms of the contract are unambiguous and the "plain language" of the contract contradicts or fails to support plaintiff's allegations of breach. *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156-58 (2d Cir. 2016); *see Karmilowicz v. Hartford Financial Services Group, Inc.*, 494 F. App'x 153, 158 (2d Cir. 2012). A contract is unambiguous if "the contract language has a definite and precise meaning … concerning which there is no reasonable basis for a difference of opinion." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010).

Here, the express language of the August Agreement is unambiguous and fails to support Goldberg's breach of contract counterclaim and third-party claim. Goldberg argues that Navidea and Macrophage's conduct breached the August Agreement by violating the alleged intent

---

[6] Goldberg may file a motion for leave to amend the counterclaim and third-party claim for breach of contract by January 31, 2020. If Goldberg chooses to move for leave to amend, he must include a redlined version of his proposed amended counterclaims.

underlying the Agreement. *See* Goldberg Mem. of Law, Dkt. 51 at 5. Specifically, Goldberg alleges that Navidea breached the Agreement by failing to contribute $750,000 to fund Macrophage, improperly terminating him as CEO of Macrophage, placing two directors on the Macrophage board, terminating the Sub-License agreement, terminating certain Macrophage research and development projects, and improperly accessing and using intellectual property belonging to Macrophage. CC/TPC, Dkt. 31 ¶¶ 88-94. Although Goldberg asserts that these actions violated the "clear intent" of the Agreement, he fails to identify any *express* terms in the Agreement prohibiting, or even mentioning, the alleged wrongful conduct.[7] Navidea and Macrophage Mem. of Law, Dkt. 41 at 10. Similarly, although Goldberg alleges that Macrophage "improperly terminated and/or assisted" in Navidea's termination of the Sub-License agreement and certain research and development projects, there is nothing in the Agreement prohibiting termination of the Sub-License. *Id.* at 12; CC/TPC, Dkt. 31 ¶¶ 101-102.

Because Goldberg fails to allege a breach of any express terms of the August Agreement, but rather relies solely on his own statements regarding the alleged intent of the Agreement, paragraphs 88 through 94, 101, and 102 of Goldberg's breach of contract counterclaim and third-party claim against Navidea and Macrophage are dismissed.[8]

---

[7]  Nothing in the August Agreement explicitly prevents Navidea from removing Goldberg as CEO, terminating the Sub-License agreement, terminating Macrophage research projects, or accessing Macrophage's intellectual property. Additionally, although Goldberg alleges that Navidea "failed to contribute the required $750,000 to fund Macrophage's ongoing operations," CC/TPC, Dkt. 31 ¶ 88, the August Agreement only requires Navidea to "provide a line of credit … not to exceed $750,000," Navidea and Macrophage Mem. of Law, Dkt. 41 at 10; *see* August Agreement, Dkt. 31-1. There is no allegation that the line of credit was not provided.

[8]  The Court notes that portions of Goldberg's counterclaim and third-party claim for breach of contract do allege a breach of the express terms of the August Agreement (*see* CC/TPC, Dkt. 31. ¶¶ 87, 100). Navidea has not moved to dismiss those portions of the counterclaim.

### ii. Counts I and II: Breach of Implied Covenant of Good Faith and Fair Dealing

Goldberg argues in the alternative that, although Navidea and Macrophage's conduct may not have breached an *express* term in the Agreement sufficient to constitute a breach of contract, it violated the implied covenant of good faith and fair dealing. Goldberg Mem. of Law, Dkt. 51 at 2-6. The Court disagrees and dismisses Goldberg's counterclaim and third-party claim for breach of the implied covenant of good faith and fair dealing.[9]

The covenant of good faith and fair dealing is implicit in all contracts; it encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included," and it prohibits either party from acting in a manner "which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 305 (S.D.N.Y. 1998) (internal citation omitted). Although the covenant inheres in every contract, "[t]he scope of potential liability for breach of the covenant is quite narrow," *Witherspoon v. Rappaport*, 65 F. App'x 356, 356 (2d Cir. 2003), and it is "not implicated merely because a party acts in its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract," *Gaia House Mezz LLC v. State St. Bank Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013) (internal quotation marks omitted). More important, the duty cannot "be used to create independent obligations beyond those agreed upon and stated in the express language of the contract," *Granite Partners,* 17 F. Supp. 2d at 306; it is still the "terms of the contract which govern the rights and obligations of the parties," *CIBC Bank and Trust Co., Ltd. (Cayman) v. Banco Cent. Do Brasil,* 886 F. Supp. 1105, 1118 (S.D.N.Y. 1995) (quoting *Nat'l Westminster*

---

[9] Goldberg does not formally assert a separate claim for breach of the implied covenant; he merely alleges a breach of the duty of good faith and fair dealing within his breach of contract claim.

*Bank, U.S.A. v. Ross*, 130 B.R. 656, 679 (S.D.N.Y. 1991)). In addition, a "claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of an express provision of the underlying contract." *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) (internal citation omitted). Thus, in order to allege claims for both breach of contract and breach of the implied covenant, a plaintiff must "allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-CV-9116, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009).

Here, as noted *supra,* Goldberg fails to allege that Navidea and Macrophage's conduct violated any express term of the Agreement; he cites to his own allegations regarding the parties' alleged intent and does not identify any supporting language in the August Agreement. Thus, because any purported duty of good faith and fair dealing "cannot add to, detract from, or alter the terms of the contract itself," *Granite Partners*, 17 F. Supp. 2d at 306, Goldberg's claim asserting a breach of the implied covenant fails. *See Ward v. TheLadders.com, Inc.,* 3 F. Supp. 3d 151, 164 (S.D.N.Y. 2014) ("[t]he implied covenant of good faith and fair dealing cannot be used to create terms that do not exist in the writing.") (internal citation omitted). Moreover, because Goldberg fails to "allege an implied duty that is consistent with the *express* contractual terms" or is based on "allegations that are distinct from the factual predicate for its contract claims," Goldberg's claim for breach of the implied covenant is dismissed as duplicative of his breach of contract claim.[10] *Mr. Olympia, LLC v. Ultimate Nutrition, Inc.,* No. 17-CV-1346,

---

[10] Goldberg's failure to assert a distinct counterclaim or third-party claim for breach of the implied covenant of good faith underscores the duplicative nature of the claim; he merely references the implied duty in passing within his breach of contract counterclaim. *See ICD Holdings S.A.*, 976 F. Supp. at 243-44 (a "claim for breach of

2018 WL 1322201, at *4 (S.D.N.Y. Mar. 13, 2018) (emphasis added); *ICD Holdings S.A.*, 976 F. Supp. at 243-44.

### b. Count III: Wrongful Termination

Goldberg asserts a third-party claim against Macrophage for wrongful termination as Macrophage's CEO. CC/TPC, Dkt. 31 ¶¶ 105-14. Although Goldberg concedes that the August Agreement "did not expressly address [his] employment as Macrophage's CEO," he claims that the parties' alleged shared intent to grant Goldberg control of Macrophage implicitly limited the right to terminate him. Goldberg Mem. of Law, Dkt. 51 at 7-8. The Court disagrees.

Under New York law, "an employer has the right to terminate an at-will employee at any time for any reason or for no reason, except where that right has been limited by express agreement." *Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*, No. 08-CV-1115, 2010 WL 4058143, at *4 (S.D.N.Y. Sept. 30, 2010) (quoting *Sabetay v. Sterling Drug, Inc.*, 506 N.E.2d 919, 921 (N.Y. 1987); *Brown v. Daikin Am. Inc.,* 756 F.3d 219, 231 (2d Cir. 2014). Here, it is undisputed that Goldberg was an at-will employee, and he has not pointed to any provision of the August Agreement that limited or altered the general rule that an at-will employee may be terminated at any time. Although Goldberg claims that the purpose of the August Agreement was to "give [him] operational and voting control of Macrophage," he cites no express term in the Agreement to support that position. CC/TPC, Dkt. 31 ¶ 48; Goldberg Mem. of Law, Dkt. 51 at 3. The alleged purpose of the Agreement or the supposed shared intent of the parties does not constitute an "express agreement" sufficient to limit Macrophage's right to terminate Goldberg. *See*

---

the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.").

*Brown,* 756 F.3d at 231-32. Thus, the motion to dismiss Goldberg's third-party claim for wrongful termination is granted.

### c. Count IV: Injunctive Relief

Goldberg seeks an injunction, *inter alia*, removing Michael Rice and Claudine Bruck from Macrophage's Board of Directors, invalidating all actions taken by the Board on or after November 29, 2018, and reinstating the Sub-License to Macrophage. CC/TPC, Dkt. 31 ¶¶ 125(b), 125(c), 125(e); Goldberg Mem. of Law, Dkt. 51 at 9-10. Navidea and Macrophage argue Goldberg lacks standing to seek injunctive relief. Navidea and Macrophage Mem. of Law, Dkt. 41 at 14-17. The Court agrees and accordingly dismisses Goldberg's claim for injunctive relief as to these three claims.[11]

Pursuant to Article III of the Constitution, federal courts may only hear actual "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have a justiciable case or controversy, the Court must make a threshold determination of whether the plaintiff has standing to sue. *Id.* To have standing a plaintiff must allege: (1) a concrete, particularized, actual or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision from the Court. *Id.* (internal quotation marks omitted). To establish standing for an injunction, a plaintiff must show that there is a risk of continuing or future harm; past exposure to illegal conduct is insufficient to satisfy the injury-in-fact requirement. *City of Los*

---

[11] Navidea and Macrophage specifically discuss only Goldberg's request for an injunction removing Bruck and Rice from the Macrophage Board, invalidating all actions taken by the Board on or after November 29, 2018, and reinstating the Sub-License to Macrophage. *See* Navidea and Macrophage Mem. of Law, Dkt. 41 at 14-17. The Court will accordingly not discuss, and does not dismiss, Goldberg's thirteen other requests for injunctive relief. *See* CC/TPC, Dkt. 31 ¶ 125(a), (d), (f)-(p). To be clear, this opinion should be read only to dismiss the claims for injunctive relief asserted in ¶ 125(b), (c), and (e), and to express no opinion whether a motion to dismiss the entire count would be meritorious.

*Angeles v. Lyons*, 461 U.S. 95, 100 (1983). Moreover, the injury cannot be "conjectural or hypothetical," *id*.; the plaintiff must be "immediately in danger of sustaining some direct injury" as a result of defendants' conduct, *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 477 (1984) (internal citation omitted).

Goldberg lacks standing to seek an injunction "removing [] Rice and [] Bruck from Macrophage's Board of Directors and declaring that Navidea is entitled only to appoint an observer to the Macrophage Board." CC/TPC, Dkt. 31 ¶ 125(b). Goldberg's assertion that, "absent injunctive relief, [he] will be irreparably injured," *id*. at ¶ 124, is entirely conclusory; he fails to allege any facts to show a risk of continuing or future harm as a result of Rice and Bruck's presence on the Board or how his injury would be "prevented by the equitable relief sought."[12] *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("To obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia,* 'a sufficient likelihood that he will again be wronged in a similar way.'") (quoting *Lyons*, 461 U.S. at 111).

Similarly, Goldberg lacks standing to seek an injunction reinstating the Sub-License to Macrophage because he fails to show that he suffered a direct injury as a result of the license's termination. The Sub-License was an agreement pursuant to which Navidea granted Macrophage an exclusive license to certain patents, trade secrets, and other proprietary rights. Navidea and Macrophage Mem. of Law, Dkt. 41 at 16. Goldberg, however, was not a party to

---

[12] Goldberg's counterclaim seeking removal of Rice and Bruck and a declaration "that Navidea is entitled only to appoint an observer to the Macrophage Board" appears to be, at its core, a breach of contract claim. If Goldberg is alleging that the appointment of Rice and Bruck to the Macrophage Board violated the August Agreement's clause that "Navidea will be entitled to appoint one observer to MT's Board of Directors," which the Court is not ruling it does, the appropriate relief for Goldberg to seek for this past harm is monetary damages. Goldberg nowhere alleges facts from which the Court could conclude that monetary damages are inadequate to remedy his harm.

the agreement and thus was not directly injured by its termination.[13] *See id; Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) ("A non-party to a contract [] lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[ ] an intent to permit enforcement by the third party' in question.").

Accordingly, because Goldberg lacks standing to seek an injunction removing Rice and Bruck from Macrophage's Board of Directors, invalidating all actions taken by the Macrophage Board on or after November 29, 2018, and reinstating the Sub-License, these three claims for injunctive relief, ¶125(b), (c), and (e), are dismissed.[14]

### d. Count V: *Quantum Meruit*

Finally, Goldberg asserts a counterclaim and third-party claim for *quantum meruit* as an alternative way to recover damages if the August Agreement is declared invalid. Specifically, he seeks compensation in connection with his resignation as CEO of Navidea, for work he allegedly performed as CEO of Macrophage, and for certain amounts allegedly owed to him by Navidea in connection with the Platinum Note. *See* CC/TPC, Dkt. 31 ¶¶ 126-140.

Unjust enrichment and *quantum meruit* are equitable remedies that may be awarded in the absence of an enforceable contract. *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 60 (2d Cir. 1997). Where a valid agreement governing the subject matter of the dispute exists, however, "an

---

[13] Goldberg argues that, although he was not a party to the Sub-License agreement, the termination of the License was a harm arising from the alleged breach of the August Agreement. *See* Goldberg Mem. of Law, Dkt. 51 at 12. Thus, Goldberg claims that if the Court holds that Navidea and Macrophage breached the August Agreement, the termination of the Sub-License agreement is included in the harm Goldberg suffered as a result. *Id.* at 12-13. This argument is insufficient to confer standing to seek injunctive relief, as the more appropriate remedy for a breach of contract claim is monetary damages.

[14] Goldberg may seek leave to file an amended counterclaim for injunctive relief by January 31, 2020. If Goldberg chooses to move for leave to amend, he must include a redlined version of the proposed amended counterclaim. Although the Court did not dismiss Goldberg's remaining claims for injunctive relief, *see* CC/TPC, Dkt. 31 ¶ 125(a), (d), (f)-(p), because Navidea and Macrophage failed to address them specifically, Goldberg may well lack standing to pursue a number of the other injunctions he is seeking. Accordingly, if Goldberg seeks leave to file an amended counterclaim, Goldberg must explain why he has standing to seek injunctive relief.

action in *quantum meruit* to prevent unjust enrichment ordinarily is not available." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006); *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.,* 70 N.Y.2d 382, 388 (1987). Although the existence of a contract generally bars recovery based on a quasi-contract theory, a claim for *quantum meruit* "may survive a motion to dismiss where the plaintiff challenges the contract's validity." *Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448 (S.D.N.Y. 2016); *see Gao v. JPMorgan Chase & Co.*, No. 14-CV-4281, 2015 WL 3606308, at *5 (S.D.N.Y. June 9, 2015) (allowing unjust enrichment claim where plaintiffs brought the claim "in the alternative, alleging that the contract [was] not enforceable"); *DeWitt Stern Group, Inc. v. Eisenberg*, 14 F. Supp. 3d 480, 485 (S.D.N.Y. 2014) (explaining that plaintiff could plead a claim for equitable relief because she claimed the contract was unenforceable); *Antares Mgmt. LLC v. Galt Global Capital, Inc.*, No. 12-CV-6075, 2013 WL 1209799, at *12 (S.D.N.Y. Mar. 22, 2013) (allowing an unjust enrichment claim where there was a "bona fide dispute as to the existence of a contract."). Where a plaintiff *fails* to allege that the contract at issue is invalid or unenforceable, however, a claim for *quantum meruit* is precluded. *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) (dismissing *quantum meruit* claim on the grounds that plaintiff's "failure to allege that the contracts at issue [were] invalid or unenforceable preclude[d] it, [] from seeking quasi-contractual recovery for events arising out of the same subject matter.").

Here, Goldberg does not allege that the August Agreement is invalid or unenforceable.[15] Instead, Goldberg claims that Navidea seeks to declare the Agreement invalid. *See* CC/TPC, Dkt. 31 ¶¶ 127, 136. Goldberg provides no support for that contention and that is, in fact, not

---

[15] In fact, Goldberg asserts that the August Agreement *is* a "valid, binding and enforceable contract." CC/TPC, Dkt. 31 ¶¶ 85, 98.

what Navidea's Amended Complaint alleges. Navidea's Amended Complaint expressly states that the "August Agreement is a valid and binding contract," Am. Compl., Dkt. 15 ¶ 93, and merely seeks a declaration that further "performance of certain of its obligations [under the August Agreement] are [sic] excused" due to Goldberg's alleged breach," *id*. ¶¶ 113-17. It does not, however, dispute the existence or validity of the August Agreement. Accordingly, because neither Goldberg nor Navidea has alleged that the August Agreement is invalid or unenforceable, Goldberg's *quantum meruit* claim is dismissed. *Compare Air Atlanta Aero Eng'g Ltd.*, 637 F. Supp. 2d at 196 (dismissing Plaintiff's *quantum meruit* claim because Plaintiff did not contend that the contract was invalid or unenforceable), *with DeWitt Stern Grp., Inc.,* 14 F. Supp. 3d at 485 (allowing unjust enrichment claim to proceed where Plaintiff pled unenforceability of contract).

## CONCLUSION

For the foregoing reasons, the Court finds Navidea's fourth cause of action to be time-barred and that Goldberg is entitled to an advancement of attorneys' fees with respect to that claim. The Court finds Rule 11 Sanctions to be unwarranted. Accordingly, Defendant Goldberg's motion to dismiss is GRANTED in part and DENIED in part. The parties must meet and confer regarding the amount of attorneys' fees and notify the Court by **January 31, 2020**, whether they have reached an agreement on the amount of fees incurred in litigating the breach of fiduciary duty claim. Navidea may move for leave to amend the fourth cause of action by **January 31, 2020**. As noted, *supra*, if Navidea chooses to move for leave to amend, it must include a redlined version of its proposed amended complaint.

The Court finds that certain portions of Goldberg's counterclaims and third-party claims for breach of contract and breach of the implied covenant of good faith and fair dealing, as well

18

as his third-party claim for wrongful termination, fail to state a claim upon which relief can be granted. Moreover, the Court finds that Goldberg lacks standing to seek an injunction removing Rice and Bruck from Macrophage's Board of Directors, invalidating all actions taken by the Board on or after November 29, 2018, and reinstating the Sub-License to Macrophage. Lastly, the Court dismisses Goldberg's *quantum meruit* claims on the grounds that Goldberg failed to allege that the August Agreement is invalid or unenforceable. Thus, Navidea and Third-Party Defendant Macrophage's motion to dismiss is GRANTED. Goldberg may file a motion for leave to amend his counterclaims and third-party claims for breach of contract and injunctive relief by **January 31, 2020**. As noted, *supra*, if Goldberg chooses to move for leave to amend, he must include a redlined version of his proposed amended counterclaims.

The Clerk of Court is respectfully directed to close the open motions at docket entries 32 and 40.

**SO ORDERED.**

**Date: December 26, 2019**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**