UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------
IN RE:  NAVIDEA BIOPHAMACEUTICALS
LITIGATION
----------------------------------------------------------------

19cv1578 (VEC) (DF)
**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE VALERIE CAPRONI, U.S.D.J.:**

This matter is again before this Court to recommend the amount – if any – that defendant

Michael Goldberg ("Goldberg") should be awarded from plaintiff Navidea Biopharmaceuticals,

Inc. ("Navidea") as indemnification for, or advancement of, the attorneys' fees and costs that

Goldberg has incurred in defending against Navidea's claims in this case.  (Dkts. 141, 142.)

Also before this Court is a separate application from Goldberg for advancement of the fees and

costs he purportedly incurred in connection with prosecuting both his counterclaims against

Navidea and his third-party claims.  (Dkt. 165.)  Finally, this Court is now faced with a motion

by Goldberg to compel Navidea to comply with an ongoing advancement protocol established by

the Court and to hold Navidea in contempt for allegedly failing to do so.  (Dkt. 184.)

Before considering any issues related to the advancement protocol, this Court has first

engaged in a detailed analysis of Goldberg's pending fee applications – an analysis that has taken

this Court an inordinate amount of time to conduct, and about which it makes the following

general observations:

As a fundamental matter, the fee applications here are based not on any statutory right to

fees, but rather on corporate bylaws provisions that entitle Goldberg to advancement, from

Navidea, of the attorneys' fees that he reasonably incurred in defending claims made against

him, relating to his work for the company.  Under those bylaws, the Court has found that, where

Goldberg is *successful* in defending against particular claims (as he has been, in this case, with

respect to Navidea's now-dismissed claim that he breached his fiduciary duty), he will be entitled not just to advancement, but to indemnification of his fees.  (*See* Opinion and Order, dated Aug. 24, 2020 ("8/24/20 Order") (Dkt. 134), at 5.)  The same bylaws, however, expressly contemplate that, if Goldberg were eventually to be *unsuccessful* in his defense of any claims, he would need to repay the advancement made for the defense of those claims.  (*See id.*, at 9 (noting that "[t]he advancement provision . . . require[s] that any advancement must be repaid if it is later determined that Goldberg is not entitled to indemnification").)  Indeed, the Court has found that, in accordance with the bylaws, Goldberg would not be entitled to advancement of any fees incurred in connection with Navidea's remaining claims without first providing an undertaking committing to repay such fees, should he not succeed on those claims.  (*Id.*, at 8.)[1]  In light of this bylaws framework, it should have been abundantly clear to Goldberg's counsel, from the get-go, that, should their client wish to seek advancement (and, eventually, indemnification) of his attorneys' fees in this case, he would have to be able to segregate the time spent by counsel in defending each of the different claims brought by Navidea.  In keeping track of their time, however, Goldberg's counsel, for the most part, failed to make efforts to identify the particular claims on which they were working.

---

[1] The relevant provisions of the Navidea bylaws are quoted at length in this Court's prior Report and Recommendation regarding the issues of advancement and indemnification (*see* Report and Recommendation, dated July 9, 2020 ("7/9/20 R&R") (Dkt. 119), at 7-9), and in the 8/24/20 Order, adopting that Report and Recommendation.  In short, these provisions state that "[t]o the extent that a director, officer, employee or agent of the corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding . . . or in defense of any claim, issue or matter therein, he shall be indemnified . . ." (Declaration of Gregory Zimmer, Esq., dated Jan. 25, 2020 (Dkt. 66), Ex. B, at Art. V, § 1(b)), and also require the advancement of fees for a director's or officer's defense, upon the production of "an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified . . . ." (*id.*, at Art. V, § 3).

Similarly, counsel largely failed to segregate the time they spent working on the defense of Navidea's claims against Goldberg from the time they spent prosecuting Goldberg's counterclaims and third-party claims.  Given that Navidea's bylaws, on their face, address only Goldberg's right to advancement or indemnification of fees for the *defense* of claims, counsel should have been aware that there would at least be a substantial chance that the Court would disallow a request for advancement or indemnification of fees for work performed in connection with Goldberg's affirmative claims.  In these circumstances, it behooved counsel to take pains to detail, in their time records, the nature of the work they were performing, so that their hours could be properly attributed to work covered, or not covered, by the bylaws' advancement and indemnification provisions.  As the Court has noted, their failure to "maintain[] appropriate records," hindering the Court's ability to assess whether particular work was, or was not, covered, would necessarily "redound to the detriment of their client, not Navidea."  (8/24/20 Order, at 7 n.6.)

This Court does understand that, in certain circumstances, it would have been difficult, if not impossible, for counsel to have parsed their work precisely on this case.  This Court recognizes, for example, that documents under review may well implicate more than one claim, and that matters like case scheduling and attendance at conferences often relate more to a case as a whole than to individual claims.  For this reason, this Court would have been willing, in some situations, to accept reasonable allocation estimates – such as, for example, by attributing one-ninth of counsel's time at a general case-management conference to each of the nine claims extant in the action at the time of the conference.  In most instances where an allocation of time would be needed, however, this Court would have expected counsel to rely on some type of task-specific measure to justify the allocation made.  For instance, for work drafting or responding to

3

discovery requests, counsel could have divided their time based on the number of requests that related to particular claims, or, for drafting a pleading, counsel could have based an allocation on the number of paragraphs or pages that were tied to the pleaded claims. This Court is not suggesting that any single mechanism would have constituted the "proper" way for counsel to have allocated their "general" time, and, in fact, the most appropriate mechanism might have differed, depending on the task at hand. Nonetheless, on a contemporaneous, task-by-task basis, counsel should have endeavored to allocate their time to particular claims based on some demonstrable logic from which the Court could conclude that each allocation was appropriate. The party seeking fees bears the burden of establishing that the requested fees are reasonable (*see* Discussion, *infra*, at Section I), and, in this instance, Goldberg's attorneys, for the most part, have not come forward with any objective, work-specific rationale to justify their proposed allocations of time.

Instead, one law firm retained by Goldberg charged him a flat fee for its time, and the two other attorneys who represented him on an hourly basis are now – after the fact – proposing that the Court apply, for each of them, identical, across-the-board percentage allocations that are supported by nothing more than their mirrored, conclusory statements about the relative importance of the parties' claims. Unfortunately, having examined counsel's time records closely, this Court is left with the distinct impression that the allocation percentages being proposed by counsel are based less on the reality of the work that they performed at any given time, than on their desire to push the maximum amount of time possible into those categories of work for which indemnification and advancement have been held to be available, so as to obtain the greatest possible awards for their client.

Under the circumstances, the Court would be well within its discretion to deny the fee applications now before it in their entirety.  For the reasons discussed below, however, I recommend that certain limited awards be made.  Specifically, with respect to the defense of Navidea's claim that Goldberg breached his fiduciary duty (as to which Goldberg seeks a total of $66,183 as indemnification for his legal fees), I recommend that, from the date of the inception of this litigation to October 2, 2020 (the date of Goldberg's currently pending fee application (Dkt. 141; *see also* Dkt. 142 (supplementing application))), Goldberg be awarded a total of $14,955 as indemnification for the fees that counsel have shown to have been reasonably incurred in defending against that claim.

As to the defense of Navidea's other claims, I recommend that Goldberg's motion for advancement of fees largely be denied, as this Court is unable to conduct a meaningful review of *nearly all* of the attorney time claimed to be subject to such advancement.  Although Goldberg is seeking over $150,000 in advancement for the defense of those claims, this Court finds that he has only adequately supported a request for advancement of fees for a few hours that one of his attorneys reportedly spent drafting an Answer to Navidea's original Complaint, before the fiduciary-duty claim was added by Navidea, through amendment.  Although, even there, counsel did not segregate his time on a claim-by-claim basis, I nonetheless recommend that Navidea be required to advance the fair value of that time, which this Court calculates to be $1,237.50, potentially subject to complete repayment if Goldberg is ultimately unsuccessful in his defense of any of the implicated claims.

As to litigation costs incurred up to the date of the pending applications, I recommend that Goldberg's request for advancement be denied, as counsel have not provided any support for their proposed allocation of those costs.

5

As for Goldberg's separate motion for the advancement of fees and costs in connection with the prosecution of his (a) counterclaims and (b) third-party claims, I recommend that both portions of that motion be denied – the former as untimely and, in any event, without merit, and the latter because the Court has already ruled against him on the matter, and that ruling stands as law of the case.  Finally, I recommend that Goldberg's most recent motion, to compel Navidea to comply with the ongoing advancement protocol set by the Court, and to hold Navidea in contempt for its alleged failure to comply with that protocol to date, be denied, and that Navidea not be required to make any advancement payments beyond that recommended herein until Goldberg's attorneys remedy the manifest defects in their record keeping.

## BACKGROUND

As relevant to this Report and Recommendation, Goldberg's attorneys have performed work for him that essentially falls into five "buckets":

(1)     Work performed in successfully defending against Navidea's fourth claim against Goldberg – *i.e.*, its claim for breach of fiduciary duty, which was dismissed by the Court on December 26, 2019 (Dkt. 61);

(2)     Work performed in defending against Navidea's three other claims against Goldberg in this case – claims that are still being actively litigated;

(3)     Work performed in prosecuting Goldberg's counterclaims against Navidea in this action;

(4)     Work performed in prosecuting Goldberg's third-party claims against Macrophage, Inc. ("Macrophage") in this action; and

(5)     Work performed on Goldberg's behalf in a separate (purportedly related) action that was brought against him by Macrophage in the Delaware Chancery Court (*Macrophage Therapeutics, Inv. v. Goldberg, C.A.*, No. 2019-0137-JRS (the "Delaware Action")).

6

As summarized below, each of these buckets of work has, in whole or in part, been previously addressed by the Court in the 8/24/20 Order.

A.     **The 8/24/20 Order**

1.     **Fees and Costs Incurred in Defending**
       **Against the Breach-of-Fiduciary-Duty Claim**

In the 8/24/20 Order, Judge Caproni found that Goldberg was entitled to indemnification from Navidea for the attorneys' fees and costs he had reasonably incurred in this action, in successfully defending against Navidea's claim for breach of fiduciary duty.  At the time of that decision, however, the Court declined to award any particular amount of attorneys' fees or costs to Goldberg in connection with counsel's work on that claim.  In this regard, the Court noted that Goldberg had twice been directed to submit copies of his attorneys' billing records, with explanations as to which entries related to that particular claim, but that, although he had finally produced the records, he had "provided no explanation of which time entries relate to the defense of which claims."  (8/24/20 Order, at 6.)  Noting that "[w]ithout this information, the Court [was] entirely unable to assess the reasonableness of Goldberg's requested attorneys' fees," the Court stated that it would give him "one (and only one) more opportunity to make a properly supported fee application" (*id.*, at 5; *see also id.*, at 6 (pointing out that "Goldberg's suggestion that the Court simply direct Navidea to pay him 'an initial amount representing some percentage of the amount reflected on [the billing] records' . . . [was] not only contrary to the lodestar method, but directly and inexcusably contravene[d] [this Court's] instructions to provide billing records specifically detailing the time spend defending the fiduciary duty claim")).  The Court cautioned Goldberg that, if, by September 30, 2020, he had still failed to make a properly supported application, this would "likely result in the Court finding that [he] ha[d] withdrawn with

prejudice his request for indemnification as a sanction for his failure to comply with this and previous court orders." (*Id.*, at 7.)

### 2.    Fees and Costs Incurred in Defending Against Navidea's Other Claims in This Action

As for the attorneys' fees and costs incurred by Goldberg in defending against Navidea's remaining claims, while the Court found that Goldberg had demonstrated an entitlement to advancement of such fees and costs as were reasonably incurred (*see id.*, at 5), it again held that it would not proceed to make any award absent a properly supported fee application *(id.*; *see also id.*, at 10.)  On this point, the Court again explained that, although Goldberg had submitted his attorneys' overall billing records, he had "fail[ed] to detail the amount of time spent defending each remaining claim (as opposed to the time spent defending the breach of fiduciary duty claim, defending the claims in the Delaware Action, and prosecuting Goldberg's own counterclaims and third-party claims)," rendering the Court "unable to assess the reasonableness" of the fees incurred in defense of the remaining claims.   (*Id.*, at 11.)  Once again, the Court afforded Goldberg a final opportunity to make a properly supported fee application, and warned him that, if he failed to so by September 30, 2020, it would likely determine that he had withdrawn his motion for advancement with prejudice "as a sanction for failure to comply with court orders." (*Id.*, at 11-12.)

### 3.    Fees and Costs Incurred in Prosecuting Goldberg's Counterclaims Against Navidea

As for Goldberg's request for advancement of fees and costs in connection with his counterclaims against Navidea, the Court noted that, in his initial submission, Goldberg had failed to address his claimed entitlement to such fees and costs, although, in his objections to the 7/9/20 R&R (in which this Court had identified the decision in *Citadel Holdings Corp. v. Roven*,

603 A.2d 818 (Del. 1992) as relevant to the issue), he claimed that *Citadel* supported his position

(8/24/20 Order, at 11 n.10). The Court indicated that, because the issue had not been "properly

argued" before this Court had made its recommendation, it would "refrain from ruling on that

issue." (*Id.*) It also held, however, that Goldberg could raise the issue again in the further fee

application that the Court was permitting him to make (*i.e.*, the application that the Court

directed him to file no later than September 30, 2020), writing as follows:

> In *Citadel*, the Delaware Supreme Court held that a contractual
> advancement provision for defense costs should be construed to
> include the defendant's cost of pursing compulsory counterclaims
> that arose out of the same transaction underlying plaintiff's claims
> and were "advanced to defeat, or offset" those claims. 603 A.2d at
> 824. . . . Goldberg may further address that issue in his motion for
> advancement of attorneys' fees, focusing specifically on whether
> his counterclaims constitute compulsory counterclaims "advanced
> to defeat, or offset" Navidea's claims, as contemplated by the court
> in *Citadel* and subsequent case law.

(*Id.*) The Court further cautioned Goldberg that, "[s]hould [he] choose to seek advancement of

attorneys' fees incurred in connection with his counterclaims," he would be required to submit

attorney billing records that "specify which time entries correspond to time spent prosecuting

*each* counterclaim." (*Id.*, at 12 n.10 (emphasis in original).)

### 4. Fees and Costs Incurred in Prosecuting Goldberg's Third-Party Claims in This Action

Unlike Goldberg's request for advancement of fees and costs related to the prosecution of

his counterclaims, the Court rejected outright his request for advancement for fees and costs

incurred in connection with his prosecution of third-party claims, finding that this right to

advancement did not extend to such work. (*See* 8/24/20 Order, at 12 n.10 ("Goldberg is not

entitled to advancement of attorneys' fees incurred in connection with [the third-party] claims");

*see also id.*, at 7 n.6 ("[T]he Court finds that Goldberg is *not* entitled to advancement of the fees incurred in connection with prosecuting his own third-party claims . . . ." (emphasis in original)).

### 5. Fees and Costs Incurred in Connection With the Delaware Action

To the extent Goldberg had requested advancement of fees and costs incurred in connection with the Delaware Action, the Court declined to exercise ancillary jurisdiction over that portion of his application.  (*See id.*, at 3-5.)

### B. Goldberg's Renewed Application For Indemnification or Advancement of Fees and Costs For Defending Against Navidea's Claims

At a telephone conference with counsel on September 30, 2020, this Court granted Goldberg an extension from that date to October 2, 2020 to file his renewed fee application.  (*See* Dkt. 139.)  On October 2, Goldberg then filed a letter seeking indemnification or advancement of fees (Dkt. 141), supported by, *inter alia*, a Declaration of Gregory Zimmer, Esq., dated October 2, 2020 ("10/2/20 Zimmer Decl.") (Dkt. 141-1), and exhibits thereto, and a Declaration of Michael M. Goldberg, M.D., dated October 2, 2020 ("10/2/20 Goldberg Decl.") (Dkt. 141-7), and Exhibit A thereto.  With this Court's permission (*see* Dkt. 143), Goldberg then supplemented that application with a Declaration of N. Ari Weisbrot, Esq., dated October 7, 2020 ("10/7/20 Weisbrot Decl.") (Dkt. 142-1), and exhibits thereto.  Goldberg did not file any memorandum of law in support of this renewed application.

On November 6, 2020, Navidea filed a memorandum of law and two attorney declarations in opposition to Goldberg's renewed fee application.  (*See* Plaintiff/Counterclaim-Defendant Navidea Biopharmaceuticals, Inc.'s Memorandum of Law in Opposition to Michael M. Goldberg's Application Filed in Support of His Motion For Indemnification and Advancement of Attorneys' Fees, dated Nov. 6, 2020 ("11/6/20 Navidea Opp. Mem.") (Dkt. 155); Declaration of

Barry M. Kazan, Esq., in Support of Plaintiff/Counterclaim-Defendant Navidea

Biopharmaceuticals, Inc.'s Memorandum of Law in Opposition to Michael M. Goldberg's

Application Filed in Support of His Motion For Indemnification and Advancement of Attorneys'

Fees, dated Nov. 6, 2020 ("11/6/20 Kazan Decl.") (Dkt. 156), and exhibits thereto; Declaration

of Karim Sabbidine in Support of Plaintiff/Counterclaim-Defendant Navidea Bioparmaceuticals,

Inc.'s Memorandum of Law in Opposition to Michael M. Goldberg's Application Filed in

Support of His Motion For Indemnification and Advancement of Attorneys' Fees, dated Nov. 6,

2020 ("11/6/20 Sabbidine Decl") (Dkt. 157), and exhibits thereto.)

Goldberg filed a reply brief on November 13, 2020.  (Memorandum of Law of

Michael M. Goldberg in Further Support of Application For Indemnification and Advancement

of Attorneys' Fees, dated Nov. 13, 2020 ("11/13/20 Goldberg Reply Mem.") (Dkt. 164).)

### C.   Goldberg's Subsequent Motion For Advancement of Fees and Costs For Prosecuting Counterclaims and Third-Party Claims

On November 13, 2020, Goldberg then proceeded to file another fee motion, addressed

solely to his requests for advancement of fees and costs incurred in connection with his

counterclaims against Navidea and his third-party claims against Macrophage in this action –

neither of which, he explained, he had sought in his October 2 application.  (*See* Notice of

Motion, dated Nov 13, 2020 (Dkt. 165).)  This motion was not supported by any affidavit or

declaration, but rather only by a memorandum of law.  (*See* Memorandum of Law of Michael M.

Goldberg in Support of Motion For Indemnification and Advancement of Attorneys' Fees in

Connection With Counterclaims and Third Party Claims, dated Nov. 13, 2020 ("11/13/20

Goldberg Mem.") (Dkt. 166).)

11

On December 14, 2020, Navidea filed a memorandum of law in opposition to this

motion.  (Plaintiff/Counterclaim-Defendant Navidea Biopharmaceuticals, Inc.'s Memorandum of

Law in Opposition to Michael M. Goldberg's Motion For Indemnification and Advancement of

Attorneys' Fees in Connection With Counterclaims and Third Party Claims, dated Dec. 14, 2020

("12/14/20 Navidea Opp. Mem.") (Dkt. 173).)

On December 21, 2020, Goldberg filed both a memorandum and an attorney declaration

in reply.  (*See* Reply Memorandum of Law of Michael M. Goldberg in Further Support of

Motion For Indemnification and Advancement of Attorneys' Fees in Connection With

Counterclaims and Third Party Claims, dated Dec. 21, 2020 ("12/21/20 Goldberg Reply Mem.")

(Dkt. 174); Declaration of Gregory Zimmer, Esq., dated Dec. 21, 2020 ("12/21/20 Zimmer

Decl.") (Dkt. 175).)

**DISCUSSION**

I.    **APPLICABLE LEGAL STANDARDS**

This Court has already held that, before it may award a party its attorneys' fees and costs,

including as indemnification or advancement pursuant to a contract or corporate bylaws, it must

first review the requested fees and costs for reasonableness.  (*See* 8/24/20 Order, at 5-6; *see also*

*id.*, at 6 n.5 (rejecting Goldberg's contention that the Court need not engage in a reasonableness

analysis in this case).)  As the Court has also already noted (*see id.*, at 5-6; *see also* 7/9/20 R&R,

at 40), its starting point in analyzing whether claimed attorneys' fees are appropriate is "the

lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by

the case."  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar

calculation creates a "'presumptively reasonable fee'" (quoting *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d

12

Cir. 2008))).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984), and, to meet this burden, the party must provide the Court with contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done," *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

Indeed, in *Carey*, the Second Circuit emphasized that "[a]ll applications for attorney's fees . . . for any work done after the date of this opinion should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Id.*, at 1154.  In 2010, the Circuit then further clarified that contemporaneous time records are a "mandatory requirement," and that "*Carey* establishes a strict rule from which attorneys may deviate in only the rarest of cases" – giving, as an example of such a rare case, a situation where "the records were consumed by fire or rendered irretrievable by computer malfunction." *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010).  Moreover, the Circuit noted that, in the "few cases" in which it "ha[d] approved an award of attorneys' fees despite the lack of complete contemporaneous records, counsel ha[d] always maintained at least some contemporaneous records." *Id*.  Under *Carey*'s "strict rule," a judicial award of attorneys' fees should be denied where an attorney has charged a client a "flat fee" and not kept contemporaneous time records, given that counsel "bears the responsibility of making sure that records in support of fee requests comport with the requirements of the Circuit," and that "[t]his obligation exists even when the attorney has been paid by his client throughout the litigation." *Sery v. Medina*, No. 13cv165 (RLE), 2016 WL 3282491, at *3 (S.D.N.Y. Jun. 10, 2016).

For purposes of the lodestar, an attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.  Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987); *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-7 (2d Cir. 2006).  In *Arbor Hill*, the Second Circuit emphasized that the "reasonable hourly rate is the rate a paying client would be willing to pay."  *Arbor Hill*, 522 F.3d at 190.  In assessing whether an hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Id.*  When an attorney's requested hourly rate is higher than rates found to be reasonable in the relevant market, it is within the Court's discretion to reduce the requested rate.  *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).  Even where a requested hourly rate would ordinarily be found appropriate, in the relevant market, for an attorney of a certain level of skill and experience, the court may reduce that rate if records show that the work actually performed by that attorney could have been performed by someone more junior.  *See, e.g.*, *Torres v. City of New York*, No. 18cv3644 (LGS) (KHP), 2020 WL 6561599, at *7 (S.D.N.Y. Jun. 3, 2020), *report and recommendation adopted*, 2020 WL 4883807 (Aug. 20, 2020); *see also* Discussion, *infra*, at Section IV(A)(1).

As for the time component of the lodestar, an attorney's stated number of hours should be reduced by the court where it is greater than what would have been required to litigate the case

effectively.  *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir.

2002) (holding that time component should not reflect excessive hours).  In determining whether

an excessive amount of time has been expended on a matter, the Court may consider, *inter alia*,

the nature and quality of the work submitted by counsel in the case, *see Kirsch v. Fleet St., Ltd.*,

148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d

Cir. 1987), whether the work was complicated or straightforward, *see Castellanos v. Mid Bronx

Cmty. Hous. Mgmt. Corp.*, No. 13cv3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. Jun. 10,

2014), and whether inefficiencies resulted from the manner in which the case was staffed, *see,

e.g.*, *Simmonds v. New York City Dept. of Corr.*, No. 06cv5298 (NRB), 2008 WL 4303474, at

*7-8 (S.D.N.Y. Sept. 16, 2008) (reducing hours "to correct for the inefficiencies resulting from

[a] co-counsel arrangement").

    The stated hours should also be reduced where an attorney's proffered time records are

vague or otherwise inadequate to enable the court to determine the reasonableness of the work

performed or the time expended on particular tasks.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433

(1983); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,

No. 10cv05256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (finding that

vague time records were insufficient to substantiate claimed expenditures of time; collecting

cases); *Vishipco Line v. Charles Schwab & Co.*, Nos. 02cv7823, 7846, 7877, 7915, 7928, 7929

(SHS), 2003 WL 1936142, at * 2 (S.D.N.Y. Apr. 23, 2003) (finding time entries such as "legal

research" were too vague to allow court to determine reasonableness of time expended).  "It is

not the court's job to decipher time entries and guess how much time each activity took . . . .  It is

the responsibility of the applicant to make separate time entries for each activity." *Williams v.

N.Y. City Hous. Auth.*, 975 F. Supp. 317, 327 (S.D.N.Y. 1997) (internal quotation marks and

citation omitted)).  Indeed, claimed hours may be disallowed entirely, where an attorney's

presented time records mix the time spent on tasks for which the recovery of fees would be

permissible, with time spent on tasks for which recovery would be impermissible, thereby

preventing meaningful review by the Court.  *See Bumble and Bumble, LLC v. Pro's Choice*

*Beauty Care, Inc.*, No. 14cv6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17,

2016), *report and recommendation adopted by* 2016 WL 1717215 (Apr. 27, 2016).

In addition to the lodestar amount, attorneys' fees may include "those reasonable

out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted).  "[A]ll

administrative costs," however, "must be fully documented, 'including a description of the work

performed, how the work is related to the instant case, and the name and title of the person

performing the work,' to show that the costs are reasonable and necessary."  *Lucky Brand*

*Dungarees, Inc. v. Ally Apparel Resources, LLC*, No. 05cv6757 (LTS) (MHD), 2009 WL 466136

(S.D.N.Y. Feb. 25, 2009) (quoting *Barcia v. Sitkin*, Nos. 79cv5831, 79cv5899 (RLC), 1997 WL

66785, at *5 (S.D.N.Y. Feb. 14, 1997)).

## II.   GOLDBERG'S MOTION FOR ADVANCEMENT OF FEES AND COSTS RELATED TO HIS COUNTERCLAIMS AND THIRD-PARTY CLAIMS SHOULD BE DENIED AS UNTIMELY AND MERITLESS.

Turning first to the second of Goldberg's pending fee applications – the motion filed on

November 13, 2020, seeking advancement of the fees and costs incurred in the prosecution of his

counterclaims against Navidea and third-party claims against Macrophage – I recommend that

the motion be denied in its entirety.  First of all, Judge Caproni could not have been more clear

that the Court was affording Goldberg *one last chance* to make an adequately supported fee

application, and that this application needed to be filed by September 30, 2020.  (8/24/20 Order,

at 5-7, 11-12.)  While this Court then extended that deadline to October 2, 2020 (Dkt. 139), and, because of one attorney's reported illness, accepted certain supplemental papers on October 7, 2020 (*see* Dkt. 143), no extension was granted beyond that.  Further, the Court's 8/24/20 Order expressly stated that, to the extent Goldberg still wished to seek advancement of fees relating to his counterclaims, he was to do so *in his renewed fee application* (*see* 8/24/20 Order at 11 n.10 ("Goldberg may further address that issue in his motion for advancement of attorneys' fees . . . ."); the Court nowhere suggested that he could do so later, by way of a separate motion. Therefore, the separate motion that Goldberg proceeded to file should be denied as untimely.

In any event, the motion has no merit.  As set out above, the Court has already ruled on Goldberg's claimed entitlement to advancement of fees for the prosecution of this third-party claims (*see* Background, *supra*, at Section A(4); 8/24/20 Order, at 7 n.6, 12 n.10), and the Court's finding that Goldberg is *not* entitled to the advancement of such fees is law of the case, *see In re Nassau County Strip Search Cases*, 958 F. Supp. 2d 339, 343 (E.D.N.Y. 2013) ("'Under the law of the case doctrine, a decision on an issue made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.'" (quoting *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991))).

As for his supposed entitlement to advancement of fees for the prosecution of his counterclaims, not only is Goldberg's request for advancement of such fees not supported by attorney time records that break out, as the Court explicitly required, the time spent on those counterclaims,[2] but it relies solely on *Citadel*, which, standing alone, does not demonstrate his

---

[2] *See* 8/24/20 Order, at 12 n.10 ("Should Goldberg choose to seek advancement of attorneys' fees incurred in connection with his counterclaims, Goldberg's billing records must specify which time entries correspond to time spent prosecuting *each* counterclaim." (emphasis in original)).

entitlement to the fees sought here. *Citadel* was identified by this Court in its earlier Report and Recommendation and then referenced by Judge Caproni in her March 2020 Order. (*See* 7/9/20 R&R, at 41 n.6; 8/24/20 Order, at 12 n.10; *see also* 11/13/20 Goldberg Mem.; 12/21/20 Goldberg Reply Mem.). In that case, the Delaware Supreme Court held that a contractual advancement provision covering defense costs should be construed to cover the defendant's cost of pursuing counterclaims that were both compulsory under Rule 13(a) of the Federal Rules of Civil Procedure and that were "advanced to defeat, or offset" the plaintiff's claim. *Citadel*, 603 A.2d at 824.

Here, Navidea's Amended Complaint against Goldberg pleads the following claims: (1) a breach-of-contract claim, alleging that Goldberg breached specified terms of the parties' August 14, 2018 agreement (the "Agreement"); (2) a claim that Goldberg breached the Agreement's implied covenant of good faith and fair dealing; (3) a declaratory-judgment claim, seeking a declaration that certain of Navidea's obligations under the Agreement have been excused and that it may terminate the Agreement, and (4) a claim that Goldberg breached his fiduciary duties to Navidea. (*See* Amended Complaint, dated Apr. 26, 2019 ("Am. Compl.") (Dkt. 15).) The Amended Complaint does not specify the amount of damages sought, although it does state that Navidea seeks both compensatory and punitive damages, as well as attorneys' fees and costs. (*See id.*, at 23.)

As counterclaims, Goldberg pleads that *Navidea* breached the Agreement, for which he seeks damages from Navidea of "no less than $26,000,000." (Answer, Counterclaims and Third-Party Complaint, filed June 13, 2019 ("Goldberg Ans. & Counterclaim") (Dkt. 31) ¶¶ 84-96).) In the alternative (should the Court find the Agreement to be invalid), Goldberg pleads a claim seeking a monetary recovery from Navidea on a "quantum meruit" theory. (*See id.* ¶¶ 126-40.)

Finally, Goldberg claims that he is entitled to injunctive relief against Navidea, mandating that it take a number of affirmative steps with respect to its subsidiary, Macrophage, Inc. ("Macrophage"), and enjoining it from a wide range of conduct.  (*See id.* ¶¶ 115-25.)  Without distinguishing between his counterclaims and his third-party claims against Macrophage, which he includes in the same pleading, Goldberg also seeks, as relief, an award of punitive damages and attorneys' fees and costs.  (*See id.*, at 43.)

Apart from the question of whether these counterclaims should be characterized as "compulsory" within the meaning of Rule 13(a) (an issue the parties dispute (*see* 12/14/20 Navidea Opp. Mem., at 10; 12/21/20 Goldberg Reply Mem., at 6)), it is evident from the above description that Goldberg seeks to accomplish considerably more than "defeating or offsetting" Navidea's claims.  As Goldberg, himself, describes his counterclaims, they seek to recover "additional damages amounts in excess of any that might be awarded to Navidea."  (11/13/20 Goldberg Mem., at 3.)  They also seek a panoply of injunctive measures.  As such, the counterclaims cannot be deemed to be merely "defensive" in nature, and this Court therefore finds that they are not covered by advancement provision of Navidea's bylaws.

**III.    GOLDBERG SHOULD RECEIVE NO INDEMNIFICATION OR ADVANCEMENT OF ATTORNEYS' FEES WITH RESPECT TO THE WORK PERFORMED BY GOLDSTEIN LAW PARTNERS, LLC.**

In connection with his defense of Navidea's claims, Goldberg retained as counsel two solo practitioners (Gregory Zimmer, Esq. ("Zimmer"), and N. Ari Weisbrot, Esq. ("Weisbrot")), as well as the law firm of Goldstein Law Partners, LLC (the "Goldstein Firm").  While Goldberg apparently paid Zimmer and Weisbrot on an hourly basis, he paid the Goldstein Firm a flat fee for its work.  Further, in connection with his fee application, Goldberg has not submitted any

contemporaneous time records from the Goldstein Firm, as a basis for this Court to check the reasonableness of the flat rate that was charged.

In these circumstances, Goldberg is simply not entitled to advancement or indemnification for any of the attorneys' fees that he paid to the Goldstein Firm.[3]  As set out above, the rule in this Circuit is clear:  a party seeking an award of fees is required to provide contemporaneous time records, and, where such records are not submitted, the application "should normally be disallowed."  *Carey*, 711 F.2d at 1154.  Nothing about this case suggests that it is among "the rarest of cases" in which this "mandatory requirement" should be excused.  *Scott*, 626 F.3d at 133-34.  Indeed, Goldberg – who has sought reimbursement for a portion of the fees that he paid to the Goldstein Firm with no supporting attorney affidavit or declaration from any attorney with that firm (*see* 10/2/20 Goldberg Decl.) – has not even suggested that the Goldstein Firm maintained any contemporaneous records for its work on this case, much less that such records were destroyed or rendered irretrievable through no fault of counsel, *see Scott*, 626 F.3d at 133-34.  Moreover, as seasoned practitioners in this Circuit, Goldberg's attorneys should have been well aware of the Circuit's strict requirements for fee applications, and thus

---

[3] Overall, Goldberg states that he paid the Goldstein Firm the flat fee of $108,000, to represent him in connection with both this case and the Delaware Action.  (10/2/20 Goldberg Decl. ¶ 3.)  Of the total amount he paid the firm, Goldberg proposes to allocate $5,000 to "pre-litigation work."  (*Id*. ¶ 4.)  Of the remainder, he proposes to allocate 5% (which he calculates as $5,100) to the firm's work on the Delaware Action (*id*. ¶ 5); 5% (which he calculates as $4,892) to the firm's prosecution of his third-party claims in this case (*id*. ¶ 6); 15% (which he calculates as $14,677) to the firm's prosecution of his counterclaims in this case (*id*. ¶ 7); and 80% (which he calculates as $78,280) to the firms' defense of Navidea's claims (*id*. ¶ 8).  Of this $78,280, he proposes to allocate $32,400, to the firm's work in defending the fiduciary-duty claim (a figure Goldberg had previously calculated by assuming that 30% of all of the Goldstein Firm's work (apparently including its "pre-litigation work") was attributable to the defense of that claim (*see id.*, Ex. A (Declaration of Michael M. Goldberg, M.D., dated Mar. 23, 2020) ¶¶ 4-5), and that he now stands by, without any other rationale), leaving $45,880 as purportedly allocable to the firm's work defending against Navidea's remaining claims (10/2/20 Goldberg Decl. ¶¶ 9-10).

should have known from the time of their retention that the maintenance of contemporaneous time records would be required to protect their client's ability to obtain advancement of fees or any other fee award.

I therefore recommend that Goldberg be awarded no portion of the attorneys' fees incurred by the Goldstein Firm as advancement or indemnification for his defense of Navidea's claims.

## IV.   GOLDBERG'S APPLICATION FOR INDEMNIFICATION OR ADVANCEMENT OF ZIMMER'S AND WEISBROT'S FEES SHOULD BE LARGELY DENIED BASED ON THE SIGNIFICANT DEFICIENCIES IN THEIR TIME RECORDS.

In his submitted Declaration, Zimmer requests that, with respect to the fees that he charged to Goldberg, Goldberg be indemnified by Navidea for $25,243 (purportedly attributable to Zimmer's work in defense of the fiduciary-duty claim), and advanced another $92,488 in fees and $15,485.54 in costs (purportedly attributable to Zimmer's work in defense of Navidea's other claims. (*See* 10/2/20 Zimmer Decl. ¶¶ 5, 17, 18; *see also id.*, Ex. A (Declaration of Gregory Zimmer, Esq., dated Mar. 23, 2020 ("3/23/20 Zimmer Decl.") ¶ 11.) Weisbrot, for his part, asks that Navidea be required to indemnify Goldberg for $8,540 in fees charged by Weisbrot for work on the fiduciary-duty claim, and advanced another $13,345 for Weisbrot's work on Navidea's remaining claims. (10/7/20 Weisbrot Decl. ¶¶ 10, 15.)[4]

While both Zimmer and Weisbrot have submitted contemporaneous records of the time they expended on this matter, their failure to segregate their time in a manner that would allow

---

[4] Although Weisbrot states that he is also requesting that Goldberg be advanced certain litigation expenses, he does not specify, in his Declaration, the specific amount being sought for those expenses. (*See id.* ¶ 14 (Weisbrot noting only that he had allocated a percentage of his costs to his work defending against Navidea's claims, without specifying the amount of costs sought).)

for meaningful judicial review arguably justifies a denial of Goldberg's application with respect

to their time, as well.  Nonetheless, in the interest of justice, this Court has examined their time

records closely, and recommends that, in lieu of completely rejecting them and awarding

Goldberg no attorneys' fees at all (either as indemnification for the fees incurred in connection

with defending Navidea's breach-of-fiduciary-duty claim, or as advancement for the fees

incurred in connection with defending Navidea's other claims), the Court should instead exercise

its discretion to award some portion of the fees requested, even if a very small portion.

Specifically, for the reasons discussed below, I recommend that Navidea be directed to

indemnify Goldberg in the amount of $14,955 for the fees he has shown that he reasonably

incurred in connection with defending the breach-of-fiduciary-duty claim, and that Navidea be

directed to advance another $1,237.50 to Goldberg in connection with his defense of Navidea's

remaining claims.

     **A.**    **Reasonable Hourly Rates**

         **1.**    **Zimmer's Base Rate Should Be Slightly Reduced.**

     Prior to forming his own solo law practice, Zimmer apparently gained experience

working as an associate at various major law firms.  (*See* 10/2/20 Zimmer Decl. ¶ 4.)  He

represents that he has practiced before this Court since 2000 (*id.* ¶ 2), such that he had 19 years

of experience when this case was commenced.  He further states that he has "handled hundreds

of cases as lead or co-counsel in the state and federal courts in New York," including "many,

many large complex civil actions" (*id.* ¶¶ 2-3).  According to Zimmer, he initially billed

Goldberg at the rate of $450 per hour, but reduced his rate to $400 per hour, beginning on

April 15, 2019.  (*Id.* ¶ 16.)  He also states that, beginning on January 24, 2021, he reduced his

rate further, to $300 per hour, for the specific work of engaging in document review.  (*Id.*)

Zimmer's base rates of $450 and $400 per hour are in line with the rates that have recently been approved in this District for attorneys in solo practice, with similar years of experience in general civil litigation.[5]  *See Townsend v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 18cv5939 (AJN), 2020 WL 2079633, at *2 (S.D.N.Y. Apr. 30, 2020) ("In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases." (internal quotation marks and citation omitted)); *see also, e.g.*, *Carlton Group, Ltd. V. Par-La-Ville Hotel & Residences Ltd.*, No. 14cv10139 (ALC), 2016 WL 3659922 (S.D.N.Y. Jun. 30, 2016) (in contract case, finding $450 per hour reasonable for senior attorneys practicing in small firm).

Navidea, however, objects to the use of a partner-level rate for Zimmer's performance of work that could have been performed by an associate or even a paralegal.  (*See* 11/6/20 Navidea Opp. Mem., at 2-3 (Navidea arguing that, "[a]lthough []it does not view the billing rates for Zimmer or Weisbrot as objectionable, the rates as applied to lower level legal work, paralegal type work, and/or ministerial work should not be billed at the base billing rates").)  As to Zimmer, this point is well taken, as a review of his time records reveals that, having no associates and seemingly no paralegals on his team, he was apparently tasked with performing a substantial amount of the lower-level work on the case.

As noted above, Zimmer voluntarily reduced his rate to $300 per hour for document review, and this Court finds that reduced rate to have been reasonable for the work performed. In addition to document review, however, Zimmer also engaged in other tasks that could have

---

[5] In determining reasonable hourly rates, courts may take into account that counsel at large law firms tend to charge higher rates than those at smaller firms, to compensate for higher overhead costs.  *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension,* 450 F.3d 91, 97 n.6 (2d Cir. 2006).

been similarly billed at lower rate, but were not.  For example, his records reflect that he conducted legal research on a number of issues.  (*See, e.g.*, 10/2/20 Zimmer Decl., Ex. B, Dkt. 141-3, at ECF 3-4[6] (time entries for 6/3/19 ("research re Texas state court decision"), 7/16/19 ("legal research re [case cited by Navidea]")); *id.*, Ex. C, Dkt. 141-4, at ECF 5, 17 (time entries for 6/7/19 ("conduct legal research re statute of limitations, indemnification and advancement of attorneys' fees"), 4/6/20 ("Legal research re application of corporate attorney/client privilege to former CEO/director")).)  He was also apparently responsible for the initial drafting of virtually all of the papers prepared in this case, including pleadings, briefs, discovery requests and responses, subpoenas, stipulations, and correspondence.  (*See, e.g.*, *id.*, Ex. B, Dkt. 141-3, at ECF 3, 5 (time entries for 6/7/19 ("begin preparing motion to dismiss"), 7/23/19 ("Begin drafting reply memorandum and declaration")); *id.*, Ex. C, Dkt. 141-4, at ECF 3-5, 7, 9, 15 (time entries for 5/2/19 ("Prepare stipulations re scheduling . . ., Draft letter to Court re extensions of certain scheduling dates"), 6/3/19 ("begin drafting Goldberg initial disclosures"), 6/4/19 ("begin drafting counterclaims and third-party claims"), 7/21/19 ("Begin drafting NY Discovery requests"), 8/29/19 ("Begin drafting responses to NY action interrogatories and requests for admission"), 12/27/19 ("Draft deficiency letter . . . and prepare NY Action subpoenas"), 3/20/20 ("draft letter to Court re substitute service")).)  Indeed, as Navidea points out, Zimmer even undertook to perform ministerial tasks like the filing of court submissions and the preparation of courtesy copies.  (*See, e.g.*, *id.*, Ex. B, Dkt. 141-3, at ECF 6 (time entry for 7/29/19 ("filing of briefing . . .; prepare FedEx courtesy copies"));  Ex. C,

---

[6] For clarity of reference, this Court will cite to portions of counsel's submitted time records, and to portions of Goldberg's Answer, Counterclaims and Third-Party Complaint (which contains separate paragraph numbers for the Answer and for the affirmative claims), by reference to the Docket entry where they appear and to the pages numbers affixed to the documents by the Court's Electronic Case Filing ("ECF") system.

Dkt. 141-4, at ECF 2, 4-5 (time entries for 4/11/19 ("file [letter] with court"), 5/24/19 ("Draft and file letter to Court"), 6/13/19 ("file [pleading] and motion to dismiss w/ court")).)

"Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner," *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, No. 17cv6851 (SHS), 2020 WL 5731953, at *3 (S.D.N.Y. Sept. 24, 2020) (citing *HTV Indus., Inc. v. Agarwal*, 317 F. Supp. 3d 707, 721 (S.D.N.Y. 2018)), either by reducing a partner rate otherwise found to be reasonable, in specific instances where that partner performed associate-level tasks, *see, e.g.*, *H.B. Automotive Group, Inc. v. Kia Motors America, Inc.*, 13cv4441 (VEC) (DF), 2018 WL 4017698, at *7 (S.D.N.Y. Jul. 25, 2018) (reducing attorney's hourly rate for specific time spent on junior-level tasks), *report and recommendation adopted*, 2018 WL 4007636 (Aug. 22, 2018), or, where parsing through the time records for this purpose would be impractical, by reducing the partner's rate in general or applying an overall percentage reduction to the fees sought, *see, e.g.*, *HTV Indus.,* 2018 WL 2976013 (reducing total fee award by 25% where senior counsel performed a substantial number of tasks that could have been performed by a more junior attorney); *Lane Crawford LLC v. Kelex Trading (CA) Inc*., No. 12cv9190 (GBD) (AJP), 2013 WL 6481354, at *10 (S.D.N.Y. Dec. 3, 2013) (finding 15% fee reduction to be warranted where, *inter alia*, attorney billed at $350 per hour for work such as drafting standard forms of service and reviewing judge's rules), *report and recommendation adopted*, 2014 WL 1338065 (Apr. 3, 2014).

In this instance, I recommend that, in order to account for the fact that Zimmer apparently spent a fair amount of his time engaged in work that could have been performed by more junior attorneys or staff, Zimmer's billed rate of $450 or $400 per hour generally be adjusted to $375

per hour, and that his discounted rate of $300 per hour for document review (should that time be found compensable) be approved as reasonable for that particular work.

## 2.   <u>Weisbrot's Proposed Rate Should Be Approved</u>.

Weisbrot, who is apparently also in solo practice, states that he has been practicing litigation since February 1995, and represents that, over the last 25 years, he has "tried dozens of cases to verdict," and has "handled hundreds of contract matters, with similar causes of action as those set forth in this action." (10/7/20 Weisbrot Decl. ¶ 3.) He states that he is "regularly sought out by clients large and small seeking [his] experience in litigation and, in particular, contract litigation." (*Id.* ¶ 4.) Weisbrot further states that his "regular[] hourly rate is $450/hour," which, he claims, "is a significant discount from the $700/hour [he] was charging when [he] was affiliated with a large law firm." (*Id.* ¶ 5.)

From this Court's review of his time records, it appears that, in at least certain instances, Weisbrot, like Zimmer, also performed work that could have been performed by a more junior attorney. (*See, e.g.*, *id.*, Ex. B, Dkt. 142-3, at ECF 3 (time entry for 6/7/19 ("research potential claims"), 12/5/19 ("[r]eceive, review, and digest their discovery responses")).) In fairness, however, it seems that Weisbrot primarily engaged in reviewing and revising the drafts that had been prepared by Zimmer (*see, e.g.*, Weisbrot time entries for 6/3/19 ("[r]eview and comment on Initial Disclosures"), 6/5/19 ("[r]eceive and review draft pleadings; [w]ork on them"), 6/11/19 ("review, revise and work on motion to dismiss"), 8/21/19 ("[r]review and revise reply papers"), 9/4/19 ("[r]eview and revise [] discovery responses")), and that he otherwise largely performed an advisory role (*see, e.g.*, time entries for 5/30/19 ("[m]eet with client and counsel, to prepare strategy"); 12/24/19 ("[d]iscuss with client and co-counsel re strategy")).

26

Given that, overall, Weisbrot appears to have engaged in work commensurate with his level of experience, I recommend that his proffered rate of $450 per hour be approved, as falling within the range of rates that the Court has found reasonable for those with similar levels of skill and experience, for similar work performed in this District.

**B.       Reasonable Hours**

As Goldberg is seeking (1) indemnification for the attorneys' fees incurred in connection with his defense of Navidea's breach-of-fiduciary-duty claim, and (2) advancement of the attorneys' fees incurred in connection with his defense of Navidea's other claims, this Court will address, separately, the hours expended by Zimmer and Weisbrot for each type of work.

**1.       Hours Expended in Connection With Goldberg's
Defense of Navidea's Breach-of-Fiduciary-Duty Claim**

**a.       Zimmer's Time on the Fiduciary-Duty Claim**

For the most part, Zimmer did not segregate the hours he spent working on the defense of Navidea's breach-of-fiduciary-duty claim.  Rather, in order to estimate those hours, he has employed the following methodology, which he asks the Court to accept as reasonable:

First, according to Zimmer, he identified, in his records, certain time entries (or portions of time entries) that related solely to the defense of this particular claim.  (*See* 10/2/20 Zimmer Decl. ¶ 6.)  Where the entry was block-billed (in other words, where different tasks were clustered in the same time entry, without specific amounts of time being separately attributed to each task), Zimmer states that he "used [his] contemporaneous time sheets to determine what portion of the time represented by the billing entry represented time spend directly on [the fiduciary-duty claim]."  (*Id.*)[7]  For all of the time that, Zimmer contends, related "directly" to the

---

[7] Zimmer has not submitted these "contemporaneous time sheets" to this Court, so that this Court may review them directly and confirm his allocations.

defense of Navidea's fiduciary-duty claim, he is seeking, on Goldberg's behalf, indemnification for 100% of the time shown.  (*See id.* ¶ 5; *see also* 3/23/20 Zimmer Decl. ¶ 9.)

Second, Zimmer states that he has identified time entries that, either in whole or in part, related to time that he spent "generally on this action" during the period when, he contends, the fiduciary-claim was "in play."[8]  (10/2/20 Zimmer Decl. ¶ 6; 3/23/20 Zimmer Decl. ¶¶ 7, 10.) According to an earlier Declaration submitted by Zimmer (discussing the same methodology), he excluded from this time any "time spent on motions other than the motion to dismiss the [fiduciary-duty] claim, such as Dr. Goldberg's opposition to Navidea's motion to dismiss certain of his counterclaims and third-party claims," as well as any "time spent on related matters pending in other courts."  (3/23/20 Zimmer Decl. ¶ 10.)  Again, if a block-billed time entry reflected his "general" work only in part, then Zimmer asserts that he used his "contemporaneous time sheets" to determine the portion of the entry that related to such work.  (*See* 10/2/20 Zimmer Decl. ¶ 6.)  Zimmer estimates that, overall, 30% of this "general" time fairly related to the defense of the fiduciary-duty claim, and he thus seeks, on Goldberg's behalf, indemnification for 30% of this time.  (*See* 10/2/20 Zimmer Decl. ¶ 5; *see also* 3/23/20 Zimmer Decl. ¶ 10.)

As back-up for the amounts sought, Zimmer has submitted a collection of time records that he has partially highlighted in yellow, ostensibly to show which described tasks (shown either as complete time entries or as portions of block-billed time entries) are ones that relate either "directly" (*i.e.*, 100%) or "generally" (*i.e.*, 30%) to defense of the fiduciary-duty claim. (10/2/20 Zimmer Decl., Ex. B.)  After each highlighted task, Zimmer provides a calculation that

---

[8] As noted above, the Court dismissed Navidea's breach-of-fiduciary-duty claim against Goldberg on December 26, 2019.  (Dkt. 61.)  According to Zimmer, however, because the Court "authorized Navidea to seek leave to amend (and thus reinstate)" the claim, and because Navidea did not "confirm to Dr. Goldberg that it would not seek to reinstate [the claim] until January 12, 2020," the claim effectively remained in the case until that date.  (10/2/20 Zimmer Decl. ¶ 6.)

either applies the 30% multiplier or does not, thereby signaling whether the task is represented to relate generally, or directly, to the claim at issue.  (*See id.*)  As time relating "directly" to the fiduciary-duty claim, Zimmer has principally identified time entries (or portions of entries) specifically referring to the preparation of Goldberg's motion to dismiss that claim, or to his reply brief on that motion.  (*See, e.g.*, *id.*, at Dkt. 141-3, ECF 3-6 (time entries for 6/7/19, 6/10/19, 6/11/19, 6/12/19, 7/27/19, 7/28/19, 7/29/19).)  As time relating "generally" to the case, for which Zimmer estimates that 30% should be attributed to defending the claim in question, Zimmer has largely identified entries describing the drafting of Goldberg's Answer to the Amended Complaint (*see, e.g., id.*, at ECF 3 (time entries for 6/4/19, 6/6/19)), the preparation of discovery requests and responses (*see, e.g.*, *id.*, at ECF 4-6 (time entries for 7/21/19, 7/22/19, 7/26/19, 8/26/19, 8/27/29, 8/29/19)), document review (s*ee, e.g.*, *id.*, at ECF 7 (time entries for 11/27/19, 11/28/19, 11/29/19)), and other discovery matters (*see, e.g.*, *id.*, at ECF 9 (time entries for 12/27/19, 1/7/20)).

    As a preliminary matter, this Court finds that a handful of the time entries submitted by Zimmer in connection with Goldberg's indemnification request have not been presented in a manner consistent with Zimmer's stated methodology, in that either a portion of a time entry has been highlighted, and yet the time calculation appears to be based on the entirety of the entry (*see id.* at ECF 4, 9 (time entries for 6/13/19, 1/7/20)), or, conversely, the entire entry has been highlighted, and yet the time calculation appears to be based only on an unidentified portion (*see id.*, at ECF 2, 4, 9 (time entries for 5/1/19, 6/12/19, 12/30/19)).  This renders it difficult, if not impossible, to discern Zimmer's logic.  While this may have been the result of carelessness or errors in his presentation, and while, in some instances, this Court may be able to guess at his

intentions, it should not have to do so, and it therefore recommends that the time for these particular entries be excluded from any indemnification award.

Turning to the remainder of the time entries that were purportedly related, in whole or in part, to the defense of the fiduciary-duty claim, this Court has first considered those time entries for which Zimmer is seeking indemnification at the rate of 100% for the entire entries. Out of 57 time entries in this section of Zimmer's application, only four (*see id.*, at ECF 4-5 (time entries for 7/16/19, 7/24/19, 7/26/19, 7/28/19)) fall into this category, for a total of 15.8 hours. This Court is satisfied that the amounts of time reflected in these entries was reasonable for the tasks described, that these tasks were specifically related to the defense of the fiduciary-duty claim,[9] and that indemnification for the reflected time should therefore be awarded.

This Court has next considered time entries that were block-billed, but where Zimmer has stated, in his Declaration, that certain of those tasks were wholly related to the defense of the fiduciary-duty claim and that he was able to use his "time sheets" to break out the time for each of the tasks described. Excluding the entry for June 12, 2019 for the reasons stated above, there are five such time entries (*see id.*, at ECF 3-6 (time entries for 6/7/19, 6/10/19, 6/11/19, 7/23/19, 7/29/19)), totaling 11.7 hours for the tasks said by Zimmer to have been directly related to the claim at issue. While Zimmer should have submitted his underlying time sheets, so that this Court could check his breakdowns, he has at least stated, under penalty of perjury, that he has provided the times for each task in question based on contemporaneous records, and this Court

---

[9] To the extent these time entries refer to work on the motion to dismiss the fiduciary-duty claim and "for advancement" of fees related to that claim, this Court finds that, under Delaware law, the attorneys' fees reasonably incurred by counsel in seeking advancement of the fees incurred in connection with the defense of the fiduciary-duty claim (in other words, "fees on fees") are themselves subject to advancement. *See Rekor Systems, Inc v. Loughlin*, No. 19cv7767 (LJL), 2020 WL 6898271, at *16 (S.D.N.Y. Nov. 23, 2020) (citing *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 561 (Del. 2002).

has examined the stated amounts of time for each, and finds them reasonable. Nonetheless, to account for the vagueness inherent in block-billing, and for the fact that, in the absence of the time sheets that Zimmer has referenced, this Court cannot independently confirm the breakdowns provided, this Court recommends that the time reflected in these entries be slightly reduced, by 5%.[10] With this modest reduction, I recommend that 11.12 hours of the stated time be allowed in connection with the lodestar calculation for the indemnification claim.

Finally, this Court has attempted to examine the time entries (whether block-billed or not) that have been described by Zimmer as relating "generally" to this action – entries for which Goldberg seeks indemnification for 30% of the fees incurred, on the theory that this reasonably approximates the time spent defending the fiduciary-duty claim. This is considerably more problematic, as Zimmer has made *absolutely no effort* to provide this Court with any basis for accepting the 30% estimate as reasonable. Zimmer has not, for example, provided copies of discovery requests or responses, and pointed out which portions of those requests or responses related, in some way, to Navidea's claim that Goldberg had breached his fiduciary duties.[11] Nor

---

[10] Where attorneys have block billed their time, the Court may apply a percentage reduction to counsel's stated hours, to account for the its difficulty in assessing the reasonableness of the time spent on each separate task. *See Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming hours reduction for pervasive block billing in time entries). Although reductions in the range of 15% to 30% are typical, see *Clarke v. Hudson Valley Fed. Credit Union*, No. 14cv5291 (KBF), 2016 WL 884667, at *3 (S.D.N.Y. Mar. 8, 2016), courts have "considerable discretion" to determine the amount of the reduction that would be appropriate in a particular case, *Ryu v. Hope Bancorp, Inc.*, No. 18cv1236 (JSR) (KHP), 2018 WL 4278353, at *8 (S.D.N.Y. Aug. 29, 2018) (recommending a 20% reduction of the requested attorneys' fees to account for block billing and excessive hours), *report and recommendation adopted*, 2018 WL 4759774 (Sept. 28, 2018); *see also Terminate Control Corp. v. Nu-Life Constr. Corp.*, 28 F.3d 1335, 1342-43 (2d Cir. 1994) (stating that 30% fee reduction for "lack of specific record keeping" was within the district court's discretion); *Sprint Communications*, 2014 WL 6611484, at *8-9 (imposing a 10% reduction).

[11] Navidea, in contrast, has undertaken to provide this Court with a copy of the first set of document requests that Goldberg apparently served on Navidea, after Navidea had amended its Complaint to add the fiduciary-duty claim. (*See* 11/6/20 Kazan Decl., Ex. 4 (Dkt. 156-4).) As

has he highlighted the portions of Goldberg's pleading that, in his view, were particularly tied to the defense of that claim, such that this Court would have some reasoned basis for understanding why a certain percentage of the time spent drafting that pleading would have been tied to the claim. Nor, despite his assertion that Navidea's fiduciary-duty claim "dwarfed all other damages demands and issues in the case, and necessitated significant analysis and legal and factual investigation and research" (3/23/20 Zimmer Decl. ¶ 6), has Zimmer highlighted any time entries that involved such "analysis," "investigation," or "research." Instead, Zimmer has merely stated that he "applied a 30% multiplier to take into account the complexity, value and importance of the [fiduciary-duty claim] relative to the overall New York Action." (*Id*. ¶ 10; *see also* 10/2/20 Zimmer Decl. ¶ 5 (referencing prior Declaration).)

Judge Caproni has already criticized Zimmer for his previously having "merely *estimated* the amount of time . . . spent working on the breach of fiduciary duty claim." (8/24/20 Order, at 6 n.4 (emphasis in original) (referring to earlier Zimmer Declaration, where he provided *the same* 30% estimate).) Further, the Court has already rejected, as "contrary to the lodestar method," Goldberg's prior suggestion that the Court direct Navidea to pay him "some percentage" of counsel's billed time. (*Id.*, at 7.) Despite this, and despite the absence of any particularized explanation for the 30% figure, this Court has undertaken a careful review of the recorded time descriptions for which that percentage allocation has been proposed. Based on that review, this Court can find no reasonable, non-speculative foundation on which to base a 30% estimate – or, indeed, any blanket percentage estimate – of the portion of Zimmer's "general" work on this case that was expended on the claim at issue.

---

Navidea points out (*see* 11/6/20 Navidea Opp. Mem., at 10), this discovery demand contained 89 enumerated demands, most of which do not appear to relate to the allegations of Navidea's narrowly framed fiduciary-duty claim.

Some of the time entries in this group refer vaguely to discussions regarding "strategy." (*See, e.g.*, 10/2/20 Zimmer Decl. Ex. B, Dkt. 141-3, at ECF 2, 6 (time entries for 5/1/19, 5/10/19, 5/24/19, 8/29/19.))  Many entries, as noted above, relate to discovery, but with no indication of the substantive focus of that discovery.  (*See, e.g.*, *id.*, at ECF 3-4, 6-7 (time entries for 6/5/19, 7/21/19, 8/26/19, 8/27/19, 8/28/19, 8/30/19, 9/17/19).)  A few entries expressly refer to document review that was apparently conducted in connection with the Delaware Action, as well as this case.  (*See id.*, at ECF 7-8 (time entries for 12/1/19, 12/4/19, 12/5/19, 12/13/19).)  Several entries, on their face, reference Zimmer's drafting of Goldberg's counterclaims and third-party claims and telephone discussions regarding the same, including, in one instance, a telephone discussion between counsel and Goldberg that seemingly related to Goldberg's own damages claims.  (*See id.*, at ECF 3 (time entries for 6/4/19, 6/6/19 ("review and address comments from M. Goldberg re answer, counterclaims and third party claims, esp. w/r/t damages")).)

In addition, a number of the time entries post-date the Court's December 26, 2019 decision dismissing the fiduciary-duty claim (*see id.*, at ECF 9-10 (time entries for 12/27/19, 12/30/19/ 1/2/19, 1/3/20, 1/6/20, 1/7/20, 1/8/20, 1/9/20, 1/10/20)), and, although, as noted above (*see supra*, at n.8), Zimmer represents that, up until January 12, 2020, there remained the *possibility* that Navidea might seek to amend to try to reinstate that claim (*see* 3/23/20 Zimmer Decl. ¶ 7), this Court still finds it unreasonable for Zimmer to have been spending time – much less a substantial percentage of his time – defending a claim that had been dismissed.  Moreover, the post-decision time entries largely relate to discovery that was apparently being newly requested (*see, e.g.*, 10/2/20 Zimmer Decl., Ex. B, Dkt. 141-3, at ECF 9-10 (time entries for 12/27/19, 12/30/19, 1/3/20, 1/6/20, 1/7/20, 1/10/20 (all referring to either the preparation of discovery subpoenas or document requests)), and Zimmer has made no showing that those new

requests actually related to the dismissed claim – or that such requests would have been reasonable or proper at that time.  This Court also notes that one of these post-dismissal time entries refers to the preparation of a status letter to the Court (*see id.*, at ECF 9 (time entry for 1/2/20)); that status letter, which this Court has reviewed, made no reference to the fiduciary-duty claim, other than to state:  "The parties . . . intend to discuss the impact of [the 12/26/19] Order on the case generally[,] including whether the parties will seek leave to amend the pleadings and how it might impact the scope of discovery and depositions" (*see* Dkt. 62).

It is worth observing that the problem caused by Zimmer's failure to segregate his time among claims is fundamentally different in character from the problems caused by block-billing and other commonly seen types of vagueness in record-keeping.  In the situation where it is clear that all identified tasks are compensable, but those tasks have been clustered together, making it difficult for the Court to ascertain whether the particular time spent on specifically identified tasks was excessive, a percentage reduction of the stated hours can be a "practical means of trimming fat" from a fee application.  *Carey*, 711 F.2d at 1146.  Here, on the other hand, the Court has been given no way to determine if the universe of the records placed before it relates, in the first place, to the portion of the case for which indemnification is available.  In this way, the situation confronting the Court is less akin to block-billing than it is to the situation where, for example, a plaintiff seeks a fee award against a defaulting defendant, but counsel has failed to segregate the time spent working on the claims that were directed to that particular defendant. *See, e.g.*, *Bumble*, 2016 WL 658310, at *9 (cited in Discussion, *supra*, at Section I).  In *Bumble*, noting that, in the default context, there is no entitlement to fees arising from claims against other unrelated defendants, *id.*, Magistrate Judge James L. Cott wrote that he was "constrain[ed] . . . from recommending *any* fee award for [] 'mixed' [time] entries" (*i.e.*, entries that grouped

together services relating to both the defaulting and non-defaulting defendants), where counsel had merely estimated the percentages of their time that were related to their work on the relevant claims, without explaining the specific bases for their estimates.  *Id.* (emphasis added).

Similarly, upon its review of the totality of Zimmer's submissions, this Court finds that Goldberg has not met his burden to demonstrate, with reasonable certainty, the amount of Zimmer's time that, while not specifically referencing Navidea's fiduciary-duty claim, should nonetheless be allocated to the defense of that claim.  He certainly has not established, by any objective evidence, that the defense of the fiduciary-duty claim was, as he contends, "the driving force and primary focus of [his] efforts" in this action (3/23/20 Zimmer Decl. ¶ 8); except for the time spent on the motion to dismiss that claim, his time records simply do not reflect that.  At bottom, this Court would have to engage in pure speculation to accept Zimmer's 30% proposal (or, for that matter, to employ any other percentage allocation), and it should not do so.

Accordingly, as to Zimmer's time, I recommend that the Court find that only **26.92 hours** have reasonably been shown to have related to his work defending the fiduciary-duty claim.

### b.    Weisbrot's Hours

Weisbrot has used the same methodology as Zimmer to demonstrate the hours of his time that, he represents, related to the defense of Navidea's fiduciary-duty claim (*see* 10/7/20 Weisbrot Decl. ¶¶ 8-9), although, unlike Zimmer, he generally did not block bill his time, and thus his records are easier to scrutinize (*see id.*, Ex. A).

First, Weisbrot appears to contend that seven of his submitted time entries, shown as highlighted in Exhibit A to his October 7, 2020 Declaration, related, in their entirety, to the fiduciary duty claim.  This Court has reviewed those entries, and finds that five of them (*see* (10/7/20 Weisbrot Decl., Ex. A, Dkt. 142-2, at ECF 2 (time entries for 4/30/19, 6/7/19, 6/11/19,

6/11/19 (second entry for that date), and 7/28/19)), totaling 7.7 hours, plainly relate to that claim, including time spent working on the motion to dismiss the claim. This Court also finds that the stated amounts of time expended on the described tasks were reasonable, and that these hours should thus be included in an indemnification award. A sixth entry refers to "discovery demands relating to *this claim*" (*id*. (time entry for 8/28/19 (emphasis added))), without spelling out that the claim in question was the fiduciary-duty claim, but, despite Navidea's challenge to this time entry (*see* 11/6/20 Navidea Opp. Mem., at 10-11), this Court is willing to accept that this is what was intended, and therefore recommends that the time expended on that date – 3.1 hours – also be included, as both related to the claim and reasonable. This Court is unable to determine, however, whether the seventh entry, which is from a much later date, related to the fiduciary-duty claim, as it merely references "discovery deficiencies and production" (*see* 10/7/20 Weisbrot Decl., Ex. A, Dkt. 142-2, at ECF 2 (time entry for 12/3/19)), and counsel has provided no explanation to place this time entry in context. Accordingly, I recommend that Weisbrot be found to have expended a total of **10.8 hours** on work directly related to the defense of the fiduciary-duty claim.[12]

Second, echoing Zimmer's Declarations, Weisbrot states that he has "identified time allocable generally to [this] [a]ction . . ., such as preparing and responding to discovery requests, scheduling issues and other issues relating to the case in its entirety," exclusive of "time spent on specific motions other than the motion to dismiss the [fiduciary-duty] claim . . ., or time spent on

---

[12] This Court notes that the total fees being sought by Weisbrot for the time he claims to have spent "directly" on the fiduciary-duty claim do not reflect the actual total of the amounts sought for each time entry in that portion of his application. (*See id.*, at ECF 2-3 (fees sought in the sum of $3,355, for the total of $340 + $635.50 + $340 + $637.50 + $1,317.50 + $85 + $1,317.50 – which would actually equal $4,673).) This apparent mathematical error is not relevant to this Court's own lodestar analysis.

related matters pending in other courts . . . ." (10/7/20 Weisbrot Decl. ¶ 9.)  Like Zimmer,

though, Weisbrot has not submitted any analysis, grounded in documentation of his actual work,

to justify his proposed percentage allocation; rather, he merely reiterates Zimmer's statement that

"a 30% multiplier [was applied] to take into account the complexity, value and importance of the

[fiduciary-duty claim] relative to the overall [] [a]ction."  (*Id.*)  Thus, Zimmer and Weisbrot have

apparently decided, together, that it would be fair to allocate 30% of their work on this case to

the one claim for which, to date, Goldberg has been found entitled to indemnification.

Upon review of the time entries to which Weisbrot would apply this 30% multiplier, this

Court finds that, as with Zimmer's submitted time records, there is no reasoned basis on which

this Court can find that a 30% allocation would be appropriate.  The time entries in this grouping

are all quite vague, and they frequently refer to matters for which indemnification would plainly

be unavailable.  They refer, for example, to the "[r]eview [of] various lawsuits, claims,

counterclaims, and related documents" (10/7/20 Weisbrot Decl., Ex. B, Dkt. 142-3, at ECF 2

(time entry for 5/2/19)), to a "conversation with [] NY and DE counsel" (*id.* (time entry for

5/22/19)), to the preparation of "strategy," not stated to be directed to any particular claim (*see,

e.g.*, *id.*, at ECF 2-4 (time entries for 5/30/19, 7/8/19, 12/24/19, 1/2/20)), to the review and

drafting of Goldberg's answer and counterclaims, including the "research [of] potential claims"

(*see id.*, at ECF 2-3 (time entries for 6/4/19 (first entry for that date), 6/5/19, 6/7/19)), and to the

review and revision of various discovery demands and responses, including work performed

after the fiduciary-duty claim was dismissed (*see, e.g.*, *id.*, at ECF 3-5 (time entries for 7/24/19,

7/26/19, 9/4/19, 9/10/19, 12/23/19, 1/12/20)).  Without having provided the Court with any

meaningful explanation as to why 30% of these time entries related to the defense of the

37

fiduciary-duty claim, this Court again finds that this portion of Goldberg's fee application calls for undue speculation, and should not be approved.

In sum, I recommend that **26.92 hours** of Zimmer's time, and **10.8 hours** of Weisbrot's time be included in the lodestar calculation for the fees attributable to the defense of Navidea's fiduciary-duty claim.

**2.    Hours Expended in Connection With
Goldberg's Defense of Navidea's Other Claims**

a.    <u>Zimmer's Hours</u>

In an attempt to isolate the time that he spent defending against Navidea's remaining claims, Zimmer notes, as an initial matter, that Navidea did not plead its fiduciary-duty claim until April 26, 2019, when it amended its original Complaint to add that claim.  (*See* 10/2/20 Zimmer Decl. ¶ 9.)  Zimmer therefore proposes to allocate 100% of his time drafting an Answer to Navidea's original Complaint to the defense of the claims other than the fiduciary-duty claim. (*See id*.)

Zimmer also notes that, in the early stages of this litigation, there were actually two cases pending in this Court – Navidea had sued Goldberg in one action, and Goldberg had separately sued Navidea in another.  By Order dated May 7, 2019 (Dkt. 26), Judge Caproni consolidated the actions, and Goldberg then reasserted his claims against Navidea as counterclaims to Navidea's amended claims.  For the period prior to the consolidation of the two cases, it appears that Zimmer spent at least some time working on both, without differentiating his time between the suits for billing purposes.  (*See* 10/2/20 Zimmer Decl. ¶ 10.)  For the time that Zimmer spent "generally" working on the two cases together, he proposes to allocate 50% of that time to the defense of Navidea's then-pending claims.  (*See id*.)

38

Turning to the period after the consolidation of the two cases, Zimmer states that he has been able to identify some time that should be allocated 100% to the defense of Navidea's claims other than the fiduciary-duty claim.  (*See id*. ¶ 11.)  Otherwise, after purportedly taking out of the mix any time spent specifically on drafting Goldberg's counterclaims and third-party claims, and on opposing Navidea's motion to dismiss certain of the counterclaims, Zimmer proposes to allocate 50% of his time to those other claims (for the period when the fiduciary-duty claim was "in play") and 80% of his time to those claims (after the fiduciary-duty claim was no longer in issue).  (*See id*. ¶¶ 11-12.)  Zimmer downplays the separate significance of Goldberg's counterclaims and third-party claims to the work he was performing, and asserts that, for any time he spent "generally" on this case, it would be reasonable to consider only 20% of his time to have been spent prosecuting those affirmative claims, regardless of whether the fiduciary-duty claim was in or out of the case.  (*See id*. ¶ 14, at Dkt. 141-1, pp. 6-7[13] (allocating 15% of "general" time to the counterclaims, and 5% to the third-party claims).)

In other words, where he could, Zimmer has identified time spent exclusively on certain aspects of the case – work that would fall into each of the first four "buckets" described by this Court, above.  Where he has been unable to place work entirely in a particular bucket, describing that remaining work as "general" in nature, he has proposed that the Court allocate his time as follows:

(1)    80% to the defense of Navidea's claims, meaning:

(a)    for the period when the fiduciary duty claim was "in play":  30% to the breach-of-fiduciary-duty claim, and 50% to the remaining claims, and

---

[13] Zimmer's 10/2/20 Declaration has two paragraphs numbered "14."  This Court is here referring to the second such paragraph.

    (b)  for the period after the fiduciary-duty claim was no longer in the case:  the full 80% to the remaining claims;

  (2)  15% to the prosecution of Goldberg's counterclaims against Navidea; and

  (3)  5% to the prosecution of Goldberg's third-party claims against Macrophage.

(*Id.*)

  It should additionally be noted that Zimmer concedes that he performed document review in connection with both the action in this Court and the one in Delaware simultaneously.  (*Id.* ¶ 15.)  He contends, though, that of the documents produced by Navidea and Macrophage, only 4.5% were dated on or after February 6, 2020, the date of the transaction at issue in the Delaware Action.  Accordingly, he proposes to allocate 95.5% percent of the time he spent in document review to *this* case, and, to that 95.5%, he would then apply the above percentage breakdowns.  (*See id*. ¶ 15 (stating that, to the 95.5%, Zimmer "then applied the eighty percent (80%) allocation relating to defense of Navidea's claims . . . to that amount and arrived at seventy six and four tenths (76.4%) as the proper allocation of this time to defending against Navidea's claims against Dr. Goldberg").)

  Starting with the time that Zimmer says should be allocated *entirely* to the defense of Navidea's claims other than the fiduciary-duty claim, this Court has identified only two time entries relating to the preparation of Goldberg's answer to Navidea's original Complaint (*see* 10/2/20 Zimmer Decl., Ex. C, Dkt. 141-4, at ECF 2-3 (time entries for 4/1/19, 4/2/19)), totaling 3.3 hours.[14]  Although the time expended for this work, which appears reasonable for the tasks

---

[14] Although Zimmer indicates that the work he performed on April 30, 2019 was also 100% attributable to the defense of claims other than the fiduciary-duty claim (*see id.*, at ECF 3 (time entry for 4/30/19)), this Court does not understand how that could be so, both because the

performed, is all subject to advancement, this Court notes that Zimmer did not do what the Court instructed him to do in connection with this this portion of the fee application, in that he did not "submit copies of his [] billing records specifically detailing the amount of time spend defending *each* of Navidea's remaining claims . . . ."  (8/24/20 Order, at 11 (emphasis added).)  Thus, if fees for these 3.3 hours were to be awarded as advancement, and then Goldberg were ultimately to prevail on only one or two of the three claims in question, the amount that would have to be repaid to Navidea would be unclear.  For this reason, should repayment be required, the Court might, at that time, require it *all* to be repaid.  Nonetheless, for now, I recommend that the 3.3 hours be included in an advancement award.

Moving on, however, this Court cannot recommend the inclusion of any other part of Zimmer's recorded time.  First of all, this Court can think of no reason why Zimmer could not have kept track of his time separately for the two distinct cases that were initially commenced in this District, and his conclusory assertion that he split his time 50-50 on the two cases, before they were consolidated, is wholly unsupported.  Second, this Court has been given no reason to accept that, after the cases were consolidated, Zimmer then suddenly switched from spending half of his time on Goldberg's affirmative claims (*i.e.*, in the companion case) to devoting only 20% of his time to the identical claims (in the consolidated case).  Third, this Court does not find it credible that, for the vast majority of the period in question, Zimmer spent so little of his

---

time record, on its face, identifies work other than preparing an Answer (*see id.* ("Prepare Answer; review Navidea motion to dismiss Platinum Note complaint.")), and because Navidea had filed its Amended Complaint four days earlier, on April 26, 2019 (*see* Dkt. 15), such that any "Answer" being prepared could not have been an Answer to the original Complaint.  Similarly, although Zimmer asserts that portions of his block-billed work on May 20 and 21, 2019 were 100% attributable to the defense of Navidea's claims other than the fiduciary-duty claim (*see* 10/2/20 Zimmer Decl., Dk. 141-4, at ECF 3), this Court fails to understand the basis for that assertion, as the work is explicitly described, in part, as reviewing and beginning to prepare an Answer to Navidea's *Amended* Complaint (*see id.*).

"general" time (only 15%) engaged in the prosecution of Goldberg's counterclaims.  As noted

above, the counterclaims seek at least $26 million from Navidea, plus punitive damages and a

wide array of injunctive relief, and Goldberg initially considered those affirmative claims

important enough to warrant a separate lawsuit.  Further, Goldberg himself attests that Zimmer

"played the lead role in drafting the [c]ounterclaims," and states that he terminated the Goldstein

Firm (which he had initially retained to represent him) "shortly after the [c]ounterclaims were

asserted and before any significant work had been done to prosecute those claims or defend them

against Navidea's motion to dismiss them."  (10/2/20 Goldberg Decl. ¶ 7.)  Yet, Zimmer – who

was thus apparently charged with preparing and performing "significant work" on the

counterclaims, would have the Court believe that he devoted an average of only 5% of his time

on each of the three counterclaims that were asserted against Navidea.[15]

        Fourth, this Court questions the assumption that, once the fiduciary-duty claim was

dismissed (the claim that, according to Zimmer, "dwarfed" all of Navidea's other claims in the

case), Zimmer suddenly put *all* of the time that would have been spent on that claim into

defending Navidea's other claims, and *none* into the prosecution of Goldberg's counterclaims or

---

        [15] A review of Goldberg's pleading reveals that he has asserted five counterclaims and/or
third-party claims:  his first two claims charge Navidea and Macrophage, respectively, with
breach of contract (*see* Goldberg Ans. & Counterclaim, Dkt. 31, at ECF 35, 36); his third claim,
alleging wrongful termination (*id.*, at ECF 37), is apparently directed against Macrophage (*see
id.*, at ECF 38 ¶ 111 ("Macrophage wrongfully terminated Dr. Goldberg.")); his fourth claim,
seeking various types of injunctive relief (*id.*, at ECF 38), seems to be primarily directed against
Navidea (*see generally id.*, at ECF 38-40), although, in some respects, it also appears to be
directed against Macrophage (*see, e.g.*, *id.*, at ECF 39 ¶ 125(c) (seeking an injunction
"[i]nvalidating all actions taken by the Macrophage Board of Directors on or after November 29,
2018")); and his fifth claim, seeking damages on a *quantum meruit* theory (*id.*, at ECF 41),
appears to be asserted jointly against both Navidea and Macrophage (*see id*. ¶ 128 ("In the event
the Court finds that the August 14th Agreement is not a valid and binding contract, Dr. Goldberg
is entitled to damages from Navidea and Macrophage on the basis of *quantum meruit*.")).  Thus,
based on this Court's reading, Goldberg has asserted at least three claims against Navidea, and at
least three claims against Macrophage.

third-party claims.  It is hardly obvious why, once the fiduciary-duty claim was dismissed, Zimmer would not have shifted more of his attention to Goldberg's own claims.

Finally, this Court finds particularly troubling Zimmer's proposed time allocations regarding document review – work that comprised a substantial amount of the time he dedicated to this case.  (*See generally* 10/2/20 Zimmer Decl., Ex. C, Dkt. 141-4, at ECF 11-24.)  On this point, this Court cannot merely accept Zimmer's bare statement that 95.5% of the document review that he apparently conducted jointly in this action and in the Delaware Action should be allocated to this case.  While it may be that only 4.5% of the reviewed documents were, as Zimmer represents, dated on or after the date of the transaction at issue in the Delaware Action, it may also be that those particular documents were particularly voluminous.  It may also be that the document requests in Delaware, to which responsive documents were produced, called for documents that pre-dated the transaction, such as drafts, or documents relating to the negotiation of the deal, or documents relating to the prior course of dealing between the parties, or other potentially relevant matters.  Certainly, a litigation centering on a particular transaction is not necessarily limited in discovery to the time period commencing on the date of the transaction itself.  Yet Zimmer has not provided this Court with the document requests that were made in the Delaware Action, nor indicated how many Bates numbered pages were produced in that case, as opposed to in this case.

Also, Zimmer has provided no support for his estimate that, of the 95.5% of the time spent in document review in the two cases combined, fully 80% of that (translating to over 143 hours (*see* 10/2/20 Zimmer Decl., Ex. C, Dkt. 141-4, at ECF 11-24)) related to Goldberg's defense of Navidea's remaining claims, and only 20% related to Goldberg's counterclaims and third-party claims.  It would seem logical that, to the extent Macrophage produced documents for

review, those documents would have been more closely related to Goldberg's third-party claims (the only claims to which Macrophage was a party) than to Navidea's claims against Goldberg. As for the documents produced by Navidea, Zimmer has made no attempt to demonstrate that the produced documents related predominantly to Navidea's own claims.  To the extent Zimmer attempts to argue that the documents were equally relevant to both the claims and counterclaims (*see* 10/2/20 Zimmer Decl. ¶ 13 (asserting that, "with the exception of damages, there are no facts relevant to Dr. Goldberg's Counterclaims nor any elements that must be proved in connection with the Counterclaims that Dr. Goldberg would not be required to investigate or prove in defending against Navidea's claims")), this would not explain why he has opted to place the vast bulk of his document-review time into the "defense" bucket.  The most likely reason, it seems to this Court, is that Zimmer has artificially sought advancement for most of his work, regardless of whether Goldberg is fairly entitled to the full amounts sought.

In light of Zimmer's proposed allocations, which are not broken out for each of the claims at issue, are based entirely on across-the-board percentage estimates, and appear, without support, to shift most of counsel's time to the portions of this case for which advancement would be available, I recommend that no further advancement be awarded for Zimmer's time.

### b. Weisbrot's Hours

Weisbrot's proposed methodology for identifying the time that he spent in defending against Navidea's claims other than the fiduciary-duty claim is identical to Zimmer's methodology, except that his time records reflect no work on those claims prior to May 2, 2019 (after Navidea had already amended its Complaint), and thus he has merely requested advancement for 80% of the time that he purportedly engaged in general work on this case.  For

the same reasons discussed above, I recommend that time based on the blanket percentage estimate be excluded from any advancement award.

C.   **Lodestar Calculations**

Based on the above, the lodestar for Navidea's indemnification obligation to Goldberg, for the fees reasonably shown to have been incurred by Goldberg in defense of Navidea's fiduciary-duty claim, may be calculated as follows:

| Attorney | Reasonable Rates | | Reasonable Hours | | Fees |
|---|---|---|---|---|---|
| Gregory Zimmer | $375 | x | 26.92 | = | $10,095 |
| N. Ari Weisbrot | $450 | x | 10.80 | = | $4,860 |
| | | | | **Total:** | $14,955 |

Separately, the lodestar for Navidea's advancement obligation to Goldberg, for the fees reasonably demonstrated to have been incurred in defense of Navidea's other claims, may be calculated as follows:

| Attorney | Reasonable Rates | | Reasonable Hours | | Fees |
|---|---|---|---|---|---|
| Gregory Zimmer | $375 | x | 3.3 | = | $1,237.50 |
| N. Ari Weisbrot | $450 | x | 0 | = | 0 |
| | | | | **Total:** | $1,237.50 |

This Court finds no reason to diverge from the lodestar amounts calculated above, and therefore recommends that Goldberg be awarded $14,955 in attorneys' fees as indemnification for the fees incurred in connection with his defense of Navidea's breach-of-fiduciary-duty claim, and $1,237.50 in advancement for the fees incurred in connection with his defense of Navidea's other claims, up to the date of Goldberg's fee application.

D.     **Costs**

Goldberg has also requested that he be indemnified for the litigation costs he incurred in connection with defending the fiduciary-duty claim, and that he be advanced the costs he incurred in connection with defending Navidea's other claims.  Neither Zimmer nor Weisbrot, however (nor, for that matter, the Goldstein Firm) has endeavored to address which costs were incurred in connection with which claims, and this Court has no basis for making such determinations itself.  For example, for the costs stated by Weisbrot to have been incurred for "online research" (*see, e.g.*, Dkt. 142-4, at ECF 7, 15, 45), Weisbrot has not specified the nature of the legal research that was performed, and this Court cannot discern this from his time records.  Similarly, for costs stated by Zimmer to have been incurred for service of process for subpoenas (*see* Dkt. 141-5, at ECF 40), Zimmer has given no explanation of the nature of the testimony that was being sought and how it related to a particular claim or claims.

The largest component of the costs being sought relate to the amounts paid to a company named Consilio, represented by Zimmer to have been "the e-discovery vendor who processed, stored and provided a review platform for the approximately 22,000 documents produced by Navidea and Macrophage."  (10/2/20 Zimmer Decl. ¶ 18.)  Zimmer, however, does not even represent that these 22,000 documents were all produced in *this* case, as opposed to in this action and the Delaware Action combined – and this Court suspects that he has not made this representation because he cannot, given his concession that he undertook to review documents in the two cases jointly.  (*See id*. ¶ 15.)  Moreover, even assuming all 22,000 documents were produced here, Zimmer has made no attempt to justify how he now proposes to allocate the costs of the vendor's services.  As Consilio was apparently retained after the dismissal of Navidea's fiduciary-duty claim (*see* 10/2/20 Zimmer Decl., Ex. E (Consilio bills)), Zimmer merely asks for

advancement of 80% of those costs – essentially contending that 80% of the effort associated with document management, at that point in time, related to Navidea's three remaining claims, and only 20% to Goldberg's counterclaims and third-party claims.  (*See id.* ¶ 18.)  For the same reasons that this Court has no way to accept that unsupported estimate with respect to Zimmer's work (and doubts that it is at all accurate), it cannot accept it with respect to the costs of the vendor that aided in that work.  The same is true for any similar cost allocation made by Weisbrot, for any of his expenses.  (*See* 10/7/20 Weisbrot Decl. ¶ 14 ("I have allocated my time and *all disbursements* eighty percent ("80%) to the defense of Navidea's claims against Dr. Goldberg" (emphasis added)).)

For these reasons, I do not recommend that, for the period up to the date of Goldberg's fee application, Navidea be required to indemnify him for, or advance to him, any of his litigation costs.

## V.    ISSUES RELATING TO ONGOING ADVANCEMENT

In her 8/24/20 Order, Judge Caproni adopted a protocol recommended by this Court for the advancement by Navidea of the attorneys' fees and costs that Goldberg is incurring on an ongoing basis, in connection with his continued defense of Navidea's remaining claims.  The protocol established by the Court has apparently been entirely unsuccessful, as, to date, it is this Court's understanding that Navidea has refused to make *any* ongoing payments to Goldberg – a refusal that has made Goldberg increasingly incensed, leading to numerous complaining letters; a conference before this Court; a motion by Goldberg seeking to compel Navidea to comply with the protocol and to hold it in contempt for failing to do so (*see* Dkt. 184); and the issuance by this Court of an Order To Show Cause, directing Navidea to show cause why it should not be compelled to make at least some advancement payments (*see* Dkt. 186).

At this point, having fully reviewed the time records that Goldberg has submitted in connection with his fee applications, as well the samples of records that he submitted to Navidea seeking ongoing advancement in supposed accordance with the approved protocol (*see* Declaration of Gregory Zimmer, dated Feb. 1, 2021 ("2/1/21 Zimmer Decl.") (Dkt. 184-1), Exs. C, D, E), this Court not only declines to certify any facts that would justify holding Navidea in contempt,[16] but recommends that, apart from what is set out in this Report and Recommendation, Navidea not be required to make *any* further advancement of fees until Goldberg's counsel stops basing their advancement requests on the same broad, conclusory, percentage estimates that they used in connection with in Goldberg's fee application.  It is difficult to understand how, despite the Court's clear and repeated admonitions to Goldberg's counsel that requests for advancement must be supported by specific time records, rather than blanket estimates of time spent working on different aspects of this case, counsel could *still* be taking the position that Goldberg should simply be advanced 80% of his attorneys' fees, regardless of whether that estimate has been shown to have any concrete foundation in the particular tasks performed.  Yet that is exactly what Goldberg's monthly submissions to Navidea have apparently proposed.  (*See id.*)

Although the Court has determined that Goldberg has a right to advancement under the bylaws, Judge Caproni's earlier caution – given months ago – is worth reiterating here:  "To the

---

[16] Pursuant to the Federal Magistrates Act, 28 U.S.C. § 636(e), federal magistrate judges have limited civil contempt authority.  *See Servaas Inc. v. Republic of Iraq*, No. 09cv1862 (RMB), 2013 WL 5913363, at *2 (S.D.N.Y. Nov. 4, 2013).  Accordingly, unless the case is one in which the magistrate judge presides with consent of the parties, "a federal magistrate judge's role with respect to [a motion for contempt] is limited . . . to certifying or declining to certify the facts constituting contempt."  *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11cv1590 (LTS) (HBP), 2013 WL 3487350, at *1 (S.D.N.Y. Jul. 12, 2013), *vacated on other grounds*, 784 F.3d 99 (2d Cir. 2015).

extent Goldberg's attorneys have not maintained appropriate records to permit the Court to comply with its responsibilities [to review, for reasonableness, the time expended on different claims], their failure to do so will redound to the detriment of their client, not Navidea." (8/24/20 Order, at 7 n.6.)  While this Court is not closing the door on recommending the future advancement to, or indemnification of, fees incurred by Goldberg in connection with this case, the framework of the bylaws – which only allow for advancement of fees incurred in the *defense* of claims, and which require the advancement to be repaid with respect to any claim as to which Goldberg's defense is ultimately unsuccessful – highlight the reasons why a contemporaneous, claim-specific accounting of attorney time is so important here.  Goldberg's attorneys have been well aware of the Court's position on this for a very long time.  Indeed, this Court has stated, and restated, and restated again its view on this matter.  There is no excuse for counsel's continued use of across-the-board estimates that are not tethered to any objective documentation or task-specific logic.

Accordingly, although the protocol ordered by the Court remains in place, I recommend that Navidea be relieved of its obligation to comply with that protocol until Goldberg's counsel present it with time records that *separately* record counsel's time for *each* of the claims for which advancement is being sought, and that counsel is able to justify on some kind of demonstrable, task-specific basis.

## <u>CONCLUSION</u>

For all of the foregoing reasons, I respectfully recommend:

    (1)    that Goldberg's fee application (Dkts. 141, 142) be granted in part and denied in part, in that:

        (a)    Goldberg be awarded, from Navidea, $14,955 as indemnification for the attorneys' fees incurred in

defense of Navidea's breach-of-fiduciary-duty claim;

(b)    Goldberg be awarded, from Navidea, $1,237.50 as advancement for attorneys' fees incurred in defense of Navidea's remaining claims, up to the date of his application; and

(c)    Goldberg not be awarded, from Navidea, either as indemnification or advancement, any of the litigation costs that he sought as part of his fee applications;

(2)    that Goldberg's separate motion for advancement of attorneys' fees and costs in connection with the prosecution of his counterclaims and third-party claims (Dkt. 165) be denied in its entirety; and

(d)    that Goldberg's motion to compel Navidea to comply with the ongoing advancement protocol and to hold Navidea in contempt for its alleged failure to do so, to date (Dkt. 184) be denied, and that Navidea not be required to advance any additional attorneys' fees or costs to Goldberg, unless it is presented with attorney time records that show counsel's time segregated time on a claim-by-claim basis, with any allocations of time for "general" work having been made contemporaneously and in accordance with a task-specific evaluation capable of being justified by reference to some objective measure.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Valerie Caproni, U.S.D.J., United States Courthouse, 40 Foley Square, Room 240, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Caproni.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF

OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S.

140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993);

*Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58

(2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        April 21, 2021

                                    Respectfully submitted,


                                    _____
                                    DEBRA FREEMAN
                                    United States Magistrate Judge


Copies to:

All counsel (via ECF)