Gregory Zimmer, Esq.
360 Lexington Avenue, Suite 1502
New York, NY 10017
Tel:  (914) 402-5683
GZimmer@GZimmerLegal.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Navidea Biopharmaceuticals Litigation | Case No.: 1:19-cv-01578-VEC |

**OBJECTIONS OF DR. MICHAEL M. GOLDBERG TO REPORT AND RECOMMENDATION OF HON. DEBRA C. FREEMAN REGARDING INDEMNIFICATION AND ADVANCEMENT OF ATTORNEYS' FEES DATED APRIL 21, 2021**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 5

I     DR. GOLDBERG'S GOOD FAITH ALLOCATIONS OF TIME TO INDEMNIFIABLE AND ADVANCEABLE WORK IS WELL-SUPPORTED AND PROPER UNDER APPLICABLE PRECEDENT ............................................................................... 5

II    THERE IS NO BASIS FOR AN ACROSS THE BOARD REDUCTION OF ATTORNEY ZIMMER'S HOURLY RATE ................................................................ 14

III   DR. GOLDBERG'S FEE APPLICATION WITH RESPECT TO INDEMNIFICATION OF FEES AND EXPENSES INCURRED IN SUCCESSFULLY DEFENDING AGAINST NAVIDEA'S FOURTH CAUSE OF ACTION SHOULD BE GRANTED . 17

IV   DR. GOLDBERG'S FEE APPLICATION WITH RESPECT TO ADVANCEMENT OF FEES AND EXPENSES INCURRED IN DEFENDING AGAINST NAVIDEA'S OTHER CLAIMS SHOULD BE GRANTED ................................................................ 21

V    DR. GOLDBERG SHOULD NE AWARDED ADVANCEMENT OF HIS FEES AND EXPENSES INCURRED IN PROSECUTING HIS COUNTERCLAIMS AND THIRD-PARTY CLAIMS ........................................................................................................ 22

VI   NAVIDEA SHOULD BE ORDERED TO BEGIN PAYMENTS TO DR. GOLDBERG AND TO OTHERWISE COMPLY WITH THE GOING-FORWARD ADVANCEMENT PROTOCOL ..................................................................................... 28

CONCLUSION .................................................................................................................. 29

# TABLE OF AUTHORITIES

**Page**

## Cases

*Macrophage Therapeutics, Inc. v. Goldberg*,
  C.A. No. 2019-0137-JRS ........................................................................................... 3

*Hensley v. Eckerhart*,

461 U.S. 424 (1983) ............................................................................................. *passim*

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,

711 F.2d 1136 (2d Cir. 1983) ........................................................................... 11, 13, 14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany*,

522 F.3d 182 (2d Cir. 2007) ..................................................................................... 17

*Citadel Holding Corp. v. Roven*,

603 A.2d 818, 824 (Del. 1992) ............................................................................. 22, 27

*Robinson v. Keane*,

No. 92-CV-6090, 1999 WL 459811 at *4 (S.D.N.Y. June 29, 1999) ........................................ 24

## Statutes

Fed. R. Civ. P. 13 ..................................................................................................... 23

Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Dr. Michael M. Goldberg M.D. ("Dr. Goldberg") respectfully submits the below objections to the Report and Recommendation of Hon. Debra Freeman dated April 21, 2021 (the "R&R") regarding Dr. Goldberg's fee application in connection with (i) indemnification relating to the now-dismissed Fourth Cause of Action of Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") for breach of fiduciary duty, (ii) advancement relating to Dr. Goldberg's defense of Navidea's other claims against him, (iii) Dr. Goldberg's separate motion for advancement of attorneys' fees and expenses relating to the prosecution of Dr. Goldberg's counterclaims against Navidea and his third-party claims against Third-Party Defendant Macrophage Therapeutics, Inc. ("Macrophage"), and (iv) administration of the going-forward advancement protocol previously adopted by the Court.

## PRELIMINARY STATEMENT

In considering the R&R it is important to set aside hyperbolic language and threats of draconian, punitive and even vindictive action, and return to first principles of reality-based analysis, realistic application of case law, and fundamental fairness and justice.

First, the Court has already ruled that Dr. Goldberg is entitled to indemnification for attorneys' fees and expenses incurred by him in defending and successfully dismissing Navidea's Fourth Cause of action seeking no less than **$50,000,000** in damages from Dr. Goldberg for an alleged breach of fiduciary duty, which was pending for more than eight months of active litigation and was subject to renewal for an additional month.

Second, the Court has already ruled that Dr. Goldberg is entitled to advancement for attorneys' fees and expenses incurred by him in defending against Navidea's other claims against him, which assert that he breached an agreement between him, Navidea and Third-Party

1

Defendant Macrophage Therapeutics, Inc. ("Macrophage") dated August 14, 2018 (the "August 14th Agreement") and seeks declarations that Navidea is not required to perform its unfulfilled obligations under the agreement.

Third, Dr. Goldberg's remaining counterclaims and third-party claims merely request that the Court enforce Navidea's and Macrophage's obligations to perform their obligations under the August 14th Agreement once he disproves Navidea's allegations that be breached the agreement, and to award him damages caused by their delay in performance.

Fourth, this action has been heavily litigated by the parties, including 135 Docket entries between its inception and August 2020, the timeframe covered by Dr. Goldberg's fee application.

Fifth, Dr. Goldberg submitted in support of his fee application from attorneys Gregory Zimmer, Esq. and N. Ari Weisbrot, Esq., complete billing records and extensive additional detail with backup calculations containing daily descriptions of work performed and time billed on this matter, which highlighted those portions of the work for which indemnification or advancement was sought and set forth the exact amount of time and fees sought for each, along with sworn declarations explaining the basis for the allocations made to indemnified and advanced amounts in the supporting materials.

Dr. Goldberg also sought indemnification of $32,400 in connection with Navidea's Fourth Cause of Action and advancement of $45,880 for defense against Navidea's other claims paid by him to the Goldstein Law Firm pursuant to a fixed fee arrangement.  It is undisputed that the Goldstein firm performed work in this action and that one of its attorneys was admitted *pro hac vice* to represent Dr. Goldberg as co-counsel at its inception.  Dr. Goldberg explained in his sworn declarations that the Goldstein Firm acted as lead counsel at the beginning of this case

until they were discharged prior to dismissal of Navidea's Fourth Cause of Action. Although the Goldstein Firm did some initial pre-litigation work for Dr. Goldberg and performed some work in the action currently pending in the Delaware Chancery Court captioned *Macrophage Therapeutics, Inc. v. Goldberg*, C.A. No. 2019-0137-JRS (the "Delaware Action") over the course of several months in support of Delaware counsel that was paid approximately $70,000 by Dr. Goldberg to do the majority of the work on the Delaware Action during the relevant time period (Goldberg Reply Decl. dated April 14, 2020 ¶ 4), Dr. Goldberg explains that the Goldstein Firm performed the vast majority of its work relating to this action and, in particular, defense the Fourth Cause of Action and Navidea's other claims. Dr. Goldberg also explained that the Goldstein Firm did not keep or provide to Dr. Goldberg detailed time records because of the nature of the flat-fee arrangement.

Based on these detailed submissions, Dr. Goldberg seeks through this fee application (i) indemnification of fees totaling $65,133 for his successful defense and dismissal of the Fourth Cause of action, (ii) advancement of fees totaling $151,713 for defending against Navidea's other claims, and (iii) advancement of expenses totaling $15,485.54 for document management and subpoena service of process fees, for a grand total of indemnification and advancement of $232,331.54 for litigation from April 2019 until August 2020, spanning multiple rounds of pleadings, motion practice and discovery, and encompassing 135 docket entries.

In response, the R&R recommends that Dr. Goldberg be (i) advanced $14,955 for his successful defense and dismissal of Navidea's **$50,000,000** breach of fiduciary duty claim in the Fourth Cause of Action, and (ii) indemnified **$1,237.50** for his defense of all of Navidea's other claims between April 2019 and August 2020 – a reduction of approximately 94% overall and more than **99%** of Dr. Goldberg's advancement request. Clearly, all sense of reality,

3

proportionality and fairness has been abandoned in the R&R.  Simply reviewing the 54-page R&R would justify an award of attorneys' fees in excess of the *total amount it recommends be advanced to Dr. Goldberg for the entire litigation*.

There is no dispute that Dr. Goldberg paid all amounts requested.  The amounts have been segregated where feasible and allocated in good faith, using reasonable and fully explained calculations where items of work were not divisible by claim.  Even Navidea, no friend of Dr. Goldberg, requested a maximum reduction of his indemnification and advancement request of up to fifty percent (50%) in its opposition to the fee application, which would result in an award of **$93,392.27**.  Neither the R&R nor Navidea's opposition provided any authority for the inexplicably punitive recommended award, which would total **$16,192.50**, or approximately **17%** of the minimum award advocated for *by Dr. Goldberg's <u>adversary</u>*, Navidea.

The purported justification for this draconian recommendation is that Dr. Goldberg failed to break down each task identified in his detailed time records by individual claim.  However, the R&R itself cites to the *United States Supreme Court* case of *Hensley v. Eckerhart*, 461 U.S. 424 (1983), which expressly recognized in the context of fee applications that in many cases, as here, "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435.  Here, in the face of the exact situation described in *Hensley* Dr. Goldberg submitted sworn declarations making, and fully explaining, the basis for good faith allocations of the time for which he seeks indemnification and advancement based on (in the case of attorneys Zimmer and Weisbrot) contemporaneous, detailed time records.  *Every* case cited in the R&R recognizes that, at most, a

4

reasonable *reduction* of requested amounts – *not* complete denial of the application – may be appropriate if the Court is unable to discern the reasonableness of the requested amounts.

It is unclear how this quest for reasonableness and fairness with respect to Dr. Goldberg's previously-awarded rights to indemnification and advancement devolved into a punitive process where, in contradiction of even the authority cited in the R&R and the arguments made by Dr. Goldberg's adversary, the R&R essentially recommends an unprecedented reduction of Dr. Goldberg's indemnification application and what amounts to a complete denial of advancement. Respectfully, it is time for the Court to take control of this process and re-focus it around applicable standards and fundamental legal and equitable principles.

## ARGUMENT

### I. DR. GOLDBERG'S GOOD FAITH ALLOCATIONS OF TIME TO INDEMNIFIABLE AND ADVANCEABLE WORK IS WELL-SUPPORTED AND PROPER UNDER APPLICABLE PRECEDENT

The overriding theme in the R&R is that Dr. Goldberg should be denied almost all indemnification and advancement because he "refuses" or somehow is improperly incapable of breaking down each and every hour (or fraction thereof) of work performed by his various attorneys according to the "individual claim" the work applies to. This criticism of Dr. Goldberg's fee application presumes that each and every moment of an attorney's work is attributable to one and only one claim or defense. However, that simply is not the case.

As set forth above, in *Hensley* the United States Supreme Court specifically noted and directed that in many cases "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." 461 U.S. at 435. As recognized by *Hensley*, the fact that overlapping claims and a common core of facts make exact separation of

work on a per-claim basis impossible *does not* equate with (or even suggest) inadequate recordkeeping or provide any basis to deny indemnification or advancement.

That is exactly the case here.  This case, especially since Navidea decided not to try to revive its Fourth Cause of Action and since the Court denied Dr. Goldberg's motion for leave to amend his counterclaims and third-party claims, revolves around a single, four-page contract between Dr. Goldberg, Navidea and Macrophage, the August 14th Agreement, and a core set of facts surrounding its implementation and performance or lack thereof.

Navidea, the plaintiff, alleges that Dr. Goldberg has breached the August 14th Agreement and requests that the Court relieve it of certain performance obligations as a consequence.  [Dkt. No. 15.]  Thus, to defend against this claim Dr. Goldberg must demonstrate that he fully performed under the agreement.  Work performed with respect to each aspect of the agreement imposing obligations or prohibitions on Dr. Goldberg and their implementation and performance is therefore relevant to Navidea's claim that he breached the agreement.  Likewise, work performed with respect to those aspects of the August 14th Agreement that impose obligations or prohibitions on Navidea are relevant to Navidea's claims because they (or some subset – which has not been identified by Navidea in its pleadings or in discovery) comprise the portions of the agreement Navidea seeks to avoid performing on.

Dr. Goldberg's remaining counterclaims merely ask that once he successfully defends against Navidea's claims (*i.e.*, once he demonstrates that he has not breached the August 14th Agreement) the Court issue declarations compelling Navidea and Macrophage to perform their obligations, and award him damages caused by their delay in doing so.  [Dkt. Nos31, 61.]  In other words, other than damages, there are no additional facts that Dr. Goldberg will be required to prove other than those relating to the core set of facts concerning the meaning of the August 14th

Agreement and the parties' performance or lack thereof under that agreement, which are already necessary in the context of defending against Navidea's claims against Dr. Goldberg.  In short, this case is quintessentially the type in which the Supreme Court has recognized is "difficult to divide the hours expended on a claim-by-claim basis" because it "cannot be viewed as a series of discrete claims."  461 U.S. at 435.

With that background in mind, the R&R's recommendation that the Court completely ignore work that was undisputedly reasonably and necessarily performed in defending the Fourth Cause of Action and Navidea's other claims because the work was not capable of division on a claim-by-claim basis is completely unsupported and, in fact, contrary to the very authority cited in the R&R.

Take for example one of the larger components of Dr. Goldberg's fee application, the review of documents produced by Navidea and Macrophage in response to his discovery requests. Dr. Goldberg served separate document requests on Navidea and Macrophage in this action.  Dr. Goldberg also served separate sets of documents requests seeking entirely different categories of documents on Macrophage and a subpoena for similar documents on Navidea in the Delaware Action.  Yet despite the fact that each company received its own set of discovery requests in each action, Navidea and Macrophage chose to produce all of their documents in a combined document production employing a single Bates labeling convention ("MT-DEL_____").  They produced 22,072 documents, comprising 79,894 pages without any distinction as to which party was producing each document or which litigation the document was being produced in, much less which document request the document was responsive to or which claim or defense it was relevant to.  (*See* Declaration of Gregory Zimmer in Support of Objections to R&R, dated May 5, 2021 (hereinafter, the" Zimmer Obj. Decl.") ¶ 2.)  Thus, when an attorney was undertaking review of

the document production it was literally impossible to classify the work and time spent even as relating to either this action or the Delaware Action, much less an individual claim, all as a result of the actions of Navidea and Macrophage.  *Id.*

Despite the implication in the R&R that any failure to differentiate which claim (or even which lawsuit) time spent reviewing documents produced by Navidea and Macrophage related to in contemporaneous time entries was a failure on the part of Dr. Goldberg's counsel, it was, in fact, an impossibility due to the way in which Navidea and Macrophage chose to produce their documents.  For example, when reviewing a document produced jointly by Navidea and Macrophage that is not differentiated either as to the producing party, the case it is being produced in, the request to which it is responsive or the claim to which it is relevant, if the document turns out to be a junk e-mail containing an invitation to a medical or business conference sent to a mailing list, which has no discernable relation to any claim or document request in either lawsuit, which claim does that review time apply to?[1]  Similarly, if the document contains no salient information, such that after review it is not coded as relating to any issue in the case, which claim does that review time apply to?[2]  It certainly cannot be that the *only* claims it does not apply to are the ones subject to indemnification or advancement.  Yet that is the approach taken in the R&R, which rejects the good faith allocations made by Dr. Goldberg's counsel that were set forth with supporting facts in detailed declarations submitted to the Court under penalty of perjury by Dr. Goldberg's attorneys.

Significantly, with respect to those documents that were issue coded as having some material relevance to claims in either this action or the Delaware Action, consistent with the

---

[1]   The joint Navidea/Macrophage production contained approximately 10,142 such documents comprising 29,990 pages.  (*See* Zimmer Obj. Decl. ¶ 3.)

[2]   The joint Navidea/Macrophage production contained approximately 13,203 such documents comprising 40,646 pages.  *Id.* ¶ 4.

allocations made by Dr. Goldberg concerning document review, the vast, vast majority of issue codes applied to reviewed documents related to defense of Navidea's claims against Dr. Goldberg for breach of contract. For those documents that were issue coded with substantive issue codes (as opposed to individual persons' names or non-substantive designations such as "hot docs" or "privileged"), approximately 86% of the documents, which comprised approximately 86% of the pages contained in the production, were coded as relating to issues relevant to defense of Navidea's claims against Dr. Goldberg. (*See* Zimmer Obj. Decl. ¶ 5, Ex. A.) Not surprisingly, this correlates closely with the 80% allocation of document review time to defense of Navidea's claims, albeit the actual percentage is somewhat higher than the percentage allocated conservatively for advancement purposes.

Likewise, when a letter is written to the Court that relates to scheduling, or depositions or document production generally, and does not mention or discuss the substance of any specific claim, which claim does that letter relate to? Again, the rule surely cannot be the one implied by the R&R, which is that it relates to every claim *except* those that are subject to indemnification or advancement. Yet the R&R recommends that because specific correspondence cannot be divided on a claim-by-claim basis, it cannot be indemnified or advanced despite the good faith allocations submitted by Dr. Goldberg's counsel. Again, Dr. Goldberg used an 80% allocation to defense of Navidea's claims because this is consistent with the percentage of work that is capable of attribution.

Dr. Goldberg's allocations of time spent defending against and dismissing Navidea's Fourth Cause of Action were good faith estimates made under oath based on Dr. Goldberg's counsel's (and, in the case of the Goldstein Firm, Dr. Goldberg's) experience litigating this action. [Dkt. Nos. 141 and 142 with attachments.] While the specific allocation could

conceivably be debated, the only effort Navidea made to do so in its opposition to Dr.

Goldberg's fee application was to argue that Dr. Goldberg improperly allocated thirty percent

(30%) of time spent drafting document requests to defending against Navidea's Fourth Cause of

Action for breach of fiduciary duty.  Navidea argued that the requests contained eighty-nine (89)

separate requests, but that the vast majority of the requests did not relate to the breach of

fiduciary duty claim.  [Dkt. No. 155 at 10.]  However, in his reply, Dr. Goldberg established that

the requests contained fifteen requests specifically relating to the breach of fiduciary duty claim

(Requests Nos. 32-33, 44-54, 84 and 88) and thirteen requests requesting documents directly

relevant to the breach of fiduciary duty claim in addition to other claims in the case (Requests

Nos. 4-16).  [Dkt. No. 164 at 4-5.]  Thus, the requests relating to the breach of fiduciary claim

comprised in excess of 30% of the overall requests, which correlates closely with the 30% of

time allocable overall to the drafting of the document requests sought in the fee application.

In short, the Supreme Court, in a seminal case relied upon by both Navidea in opposition

to Dr. Goldberg's fee application and by the R&R, squarely held that were, as here, the various

claims in a case arise from a common set of facts, it is often difficult to divide the hours

expended on a claim-by-claim basis" and that "[s]uch a lawsuit cannot be viewed as a series of

discrete claims."  461 U.S. at 435.  Dr. Goldberg proffered good faith allocations of the amounts

of time and attorneys' fees paid by him based on the percentage of overall effort expended with

respect to those claims for which he sought indemnification and advancement.  The only specific

challenge made by Navidea to the actual allocations utilized by Dr. Goldberg demonstrated that

his allocation was accurate (albeit slightly lower than the actual metric).

Additional analysis of document review, a discrete area discussed in the R&R further

shows that the allocation utilized by Dr. Goldberg in that context was again accurate (albeit

slightly lower than the actual metric).  Further, Navidea, following applicable case law, argued

that, at most, Dr. Goldberg's application should be reduce by some percentage to account for

purported over-allocation – which demonstrably did not occur.  Even Navidea did not argue that

Dr. Goldberg should be denied any indemnification or advancement for these amounts.

Yet the R&R fails and/or refuses to acknowledge that there are significant portions of the

work performed in this litigation that cannot be directly attributed on a claim-by-claim basis.  It

suggests that counsel's inability to perform this impossible task is somehow delinquent or

disrespectful, and it adopts what can only be characterized objectively as a punitive approach

that almost completely deprives Dr. Goldberg of the indemnification and advancement this Court

has already ruled he is entitled to.  Far from ignoring the directives of this Court or being

disrespectful or delinquent, Dr. Goldberg's submissions went to great length to explain both why

certain categories of work were not capable of being allocated to individual claims, and then

provided specific, detailed facts supporting the allocations that were made by counsel in good

faith under oath.  Should the Court find that additional information is needed or that adjustments

to those allocations are necessary or justified, the adjustments should be made based on objective

analyses.  The R&R's recommendation that Dr. Goldberg be denied the vast majority of the

amount for which he is entitled to indemnification and effectively denied advancement

completely simply cannot be squared with applicable case law, the facts of this case, or any

concept of equity, fairness or justice.

Another case principally relied upon in the R&R confirms this.  After specifically noting

that the R&R relates to contractual indemnification and advancement, and that it differs from

statutory provisions providing for fee awards, the Court cites to *N.Y. State Ass'n for Retarded*

*Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983), which is a statutory fee award case

involving The Civil Rights Attorneys' Fees Award Act of 1976. That statute expressly limits the Court's power to award fees to "reasonable" fees.[3]

In *Carey* the attorneys did not have contemporaneous records for the majority of the work they performed. Rather, they "estimated the majority of their time by reconstruction," which was explained to mean their "present recollection of hours spent years before, in some instances as many as eight years ago" and that "all estimated at least a portion of their time without reference to" any applicable documentation. In response, the indemnifying party (the State of New York and various of its officers and employees) submitted an extensive memorandum and included a detailed appendix responding to each of the hourly estimates presented by the plaintiff's attorneys. Only after being presented with specific objections to each time entry did the Court engage in an analysis of the reasonableness of the requested fees.

*None* of the elements present in *Casey* is present here. First, Dr. Goldberg's attorneys *did not* "estimate" the time they spent on this action. They presented detailed invoices containing daily records of all work performed and consulted their own contemporaneous daily time records where appropriate to further break down and describe their work.[4] Second, Navidea *did not* submit specific objections to the vast majority of the individual time entries. Rather, it complained generally that Dr. Goldberg should not be permitted to allocate portions of time applicable generally to those for which he is entitled to indemnification and advancement. And even in the egregious circumstances of *Casey*, where certain attorneys estimated that they had expended more than a thousand hours of time "almost entirely unsupported by daily records," the court reduced

---

[3]    While Dr. Goldberg acknowledges that there are reasonableness limitations on contractual indemnification and advancement awards, the Navidea Bylaws do not require that fees be "reasonable." Thus, as the R&R itself recognizes, strict insistence on standards set out in cases applying statutory indemnification provisions containing express "reasonableness" requirements is not appropriate here.

[4]    These daily time sheets not only contain privileged attorney work product, they also contain notes of privileged conversations regarding the representation of Dr. Goldberg as well as irrelevant and privilege descriptions of work for other clients. (*See* Zimmer Obj. Decl. ¶ 6.)

their time "estimates" – it *did not* deny indemnification completely as the R&R recommends here. Despite additional detailed, entry-by-entry objections by the State, the appellate court refused to further-reduce the reductions made by the District Court, which ranged from five percent (5%) to fifty percent (50%). *Casey* certainly did not hold that even where there were no records and the attorneys admittedly "recreated" their charges from eight years earlier without even reviewing contemporaneous documents the plaintiff could be denied indemnification or advancement in its entirety for any aspect of the case or the fee application.

The R&R makes admonitions based on *Carey* about the consequences of failing to maintain contemporaneous time records. However, Dr. Goldberg's counsel *did* maintain contemporaneous time records, and submitted contemporaneous (monthly) billing records that summarized in non-privileged fashion those records on a daily basis with full descriptions of the work performed. Dr. Goldberg's counsel also used their contemporaneous time records to further refine their application and did so under penalty of perjury. They identified work attributable *solely* to the indemnifiable or advanceable claims and requested 100% indemnification or advancement of that time. They identified work not attributable in any respect to indemnifiable and/or advanceable claims (such as time spent on the Delaware Action as one example) and excluded 100% of that time from their application. And where work was not divisible on a claim-by-claim basis they used their knowledge of the relevant value and complexity of *all* claims toward which the work was directed to present the Court with good faith (and accurate) allocations of that time among (i) indemnifiable claims, (ii) advanceable claims, and (iii) non- (or not yet) indemnifiable or advanceable claims. They also provided their rationale for the allocations based on which aspects of their work (*i.e.*, defense of Navidea's claims, counterclaims, third-party claims and Delaware Action claims) were involved and the relative complexity, value and importance of that work. This is completely

different from what occurred in *Carey*, where no contemporaneous records existed and attorneys attempted to "recreate" billing from memory, but where the court nevertheless awarded fees, merely reducing the requested amounts under those egregious circumstance by five percent (5%) to fifty percent (50%).  Nothing about the *Carey* case supports the R&R's recommendation that Dr. Goldberg not be awarded *any* indemnification or advancement on work that by its nature simply cannot be divided on a claim-by-claim basis.

Moreover, although the R&R purports to invoke a "strict rule" based on Carey regarding flat fee billing such as the billing to Dr. Goldberg from the Goldstein firm, the *Carey* case never even mentioned flat fee billing and certainly did not impose a "strict rule" against indemnification of time billed without contemporaneous time records when it merely reduced the fee applications in light of the fact that *none* of the attorneys in *Carey* had based their applications on contemporaneous time records.

## II.   THERE IS NO BASIS FOR AN ACROSS THE BOARD REDUCTION OF ATTORNEY ZIMMER'S HOURLY RATE

The R&R makes another draconian and punitive recommendation when it recommends that the hourly rate for attorney Gregory Zimmer, Esq. be reduced from $450 (for the first few months of his work on the case) and then $400 (for the remainder of his representation to date) based on a *di minimis* amount of work, clearly identified in his time records, which the R&R deems to be work that should be billed at paralegal rates.

As an initial matter, the recommended reduction, even with respect to specific time entries, is not justified.  Attorney Zimmer has twenty (20) years handling complex litigations at major national and international law firms.  His $450/hour and $400/hour billing rates are far below those charged by other attorneys with comparable experience, especially attorneys at large firms.  If large firm attorneys are afforded higher billing rates (for any reason other than some

14

form of implicit bias in favor of "big law" attorneys) then that premium would likely be based on the existence of support staff, infrastructure and other accoutrements of large firms.  In the case of attorney Zimmer, a solo practitioner, Dr. Goldberg essentially agreed to pay a blended rate for attorney Zimmer's work which, over the course of the litigation, has significantly reduced his costs versus engagement of a large firm.  This is achieved by the elimination of *any* secondary or tertiary levels of review or editing of documents, *any* need of any attorney to get "up to speed" on work performed by other attorneys at the firm, and the fact that attorney Zimmer does not charge for certain costs typically billed through to clients by large firms, such as FedEx or other postage.  He also typically does not bill for ministerial work that would normally be passed through to clients.  (*See* Zimmer Obj. Decl. ¶ 7.)  Thus, there is no basis to reduce attorney Zimmer's hourly rate to account for the small number of billing entries for work that could have been performed by support staff.

The R&R also points to time entries totaling 5 hours billed for legal research by attorney Zimmer.  (R&R at 24.)  It does not provide any rationale for why this *de minimis* amount of time in the context of the entire representation would be impermissible.  It also ignores the fact that if this work were performed by a lower level attorney at a large firm (which attorney would surely have billed at a rate at or neat $400/hour) the results would then have to be reviewed by a more senior attorney at attorney Zimmer's level who, in turn, would have charged a much higher big firm rate.  Simply put, there is no basis to conclude that this approach to 5 hours of legal research resulted in excessive charges and no such basis is given in the R&R.

The same analysis applies to entries related to drafting important correspondence to the Court and other litigation documents.  While courts may be more comfortable awarding much higher amounts spread among a cadre of make-work employees at large firms, there is no

evidence or even explanation of how the performance of work by a single attorney having comprehensive knowledge of all facts, documents and strategy in the case could possibly be less efficient or more expensive than multiple rounds of drafting by lower level, yet still expensive attorneys and review by senior and more expensive partners.  (*See* R&R at 24-25.)

Even if some reduction in Dr. Goldberg's indemnification and advancement award was warranted for these entries, they should be made on an entry-by-entry basis because reducing the hourly rate applied to all of the work for which Dr. Goldberg is awarded indemnification and advancement would result is massive reductions completely disproportionate to the amount of "ministerial" work actually billed to Dr. Goldberg by attorney Zimmer.  The R&R presents no rationale why a reduction for specific time entries could not or should not be used.  Perhaps in light of the recommendation to award Dr. Goldberg only **3.3 hours of advancement to defend against Navidea's claims for a year and a half** the R&R considered this a distinction without a difference.  However, if the Court re-focuses this process on applicable standards, rational examination of Dr. Goldberg's application and the work that was undisputedly performed by his attorneys, the prejudice to Dr. Goldberg of adoption of this approach would be massive.

For example, Dr. Goldberg is seeking advancement of $92,488 for work performed by attorney Zimmer in defending Navidea's claims other than the Fourth Cause of Action.  Utilizing the lower $400/hour billing rate used by attorney Zimmer for the vast majority of this case, that amounts to approximately 231 hours.  Applying the recommended reduction of $25/hour to this would result in a reduction of Dr. Goldberg's advancement award by $5,780, whereas applying a reduced rate (assuming one was justified – which it is not) to the *di minimis* entries that prompted the recommendation of adjustment would result in a much lower deduction.

As Navidea acknowledged in its opposition to Dr. Goldberg's fee application, the Second Circuit has repeatedly ruled that the touchstone of a reasonable hourly rate "is the rate a paying client would be willing to pay."  (Opp. to Fee App at 4 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany*, 522 F.3d 182 (2d Cir. 2007).  Here, Dr. Goldberg not only was willing to pay – and did in fact pay – attorney Zimmer's low blended hourly rate, that arrangement saved him many, many thousands of dollars versus what Dr. Goldberg would have paid (and this Court presumably would have approved) if he engaged a cadre of big firm attorneys who all billed at rates near or far exceeding attorney Zimmer's rates, but saved a relative pittance on a handful of administrative tasks that he was actually billed for.

**III.  DR. GOLDBERG'S FEE APPLICATION WITH RESPECT TO INDEMNIFICATION OF FEES AND EXPENSES INCURRED IN SUCCESSFULLY DEFENDING AGAINST NAVIDEA'S FOURTH CAUSE OF ACTION SHOULD BE GRANTED**

As set forth above, the principal basis for the R&R's recommendation that portions of Dr. Goldberg's fee application with respect to indemnification of amounts incurred in defending and successfully dismissing Navidea's Fourth Cause of Action for breach of fiduciary duty is that the Goldstein firm billed Dr. Goldberg on a flat-fee basis and did not keep contemporaneous time records, and that the application improperly contains what the R&R characterizes as "block billing" and does not break out the amount of time and feees requestee on a claim-by-claim basis.  As set forth above, these are not bases to deny the application in whole or by category.

With respect to the Goldstein firm, Dr. Goldberg submitted under oath a good faith allocation of the portion of the flat-fee paid to that firm that applies to the defense and dismissal of the Fourth Cause of Action along with the factual basis for that allocation, including the overwhelming importance of defending the cause of action based on its $50,000,000 damages demand and the fact that despite Navidea's argument that the firm was extensively involved in

the Delaware Litigation Dr. Goldberg paid a separate, Delaware law firm approximately $70,000 to defend that action during the timeframe the Goldstein firm was retained by him.  [Dkt. No. 141 Exhibit 7.]  The R&R ignores this important fact and does not undertake any analysis of the Goldstein firm's work except to note that it was only counsel of record in this action for a limited time.  However, the Goldstein firm only represented Dr. Goldberg for a brief time after this action and the Delaware Action were filed.  The R&R does not take into account that Dr. Goldberg paid the Delaware firm $70,000 to handle the lion's share of Delaware work.

The R&R instead simply recommends that indemnification for the Goldstein firm's work be denied because Dr. Goldberg entered into a flat-fee arrangement with it.  This blanket approach defeats the fundamental concept of advancement.  If the Court believes that the allocation provided by Dr. Goldberg is excessive, or that the flat-fee arrangement somehow affects the determination of what time was reasonably spent by the Goldstein firm defending and dismissing the Fourth Cause of Action, the Court should, at most, make a reasonable downward adjustment to the amount sought in the application.  Neither the analysis nor the authority employed in the R&R justify a complete denial of indemnification for the work performed by the Goldstein firm in connection with the Fourth Cause of Action.

With respect to attorney Zimmer's time, the R&R recommends that all of his time entries attributable solely to the Fourth Cause of Action be awarded, but recommends a 5% reduction for those entries where only a portion of the entry relates to the Fourth Cause of Action and the balance relates to work for which indemnification is not sought.  The Court notes that Zimmer submitted records under oath separating such time and presents to reason to question his representations under oath, but for unexplained reasons recommends a 5% reduction for these entries.  There is no suggestion that the representations about these entries were 5% inaccurate.

Thus there is no justification for the reduction.  Dr. Goldberg respectfully requests that these entries be indemnified in their entirety.

With respect to all of the time entries that could not be broken down on a claim-by-claim basis and for which no portion could be 100% attributed to the Fourth Cause of Action, the R&R recommends that all of the entries be denied as "block billed" and improper.  For the reasons set forth in Section I, *supra*, this approach should be rejected by the Court and these entries and amounts should be awarded to Dr. Goldberg.

The R&R also points to a "handful" of individual entries contained in the extensive ten-page submission provided to the Court in support of Dr. Goldberg's fee application for indemnification of attorneys' fees billed by attorney Zimmer for the Fourth Cause of Action. While these entries do reflect ambiguities or inadvertent inclusions or omissions, the R&R's characterization of them as "the result of carelessness or errors" and the R&R's suggestion that the presentation intended that the Court should "guess" at the entries is belied by the extensive, detailed and almost completely accurate records that were conscientiously presented in support of Dr. Goldberg's application.  The implication that some kind of flippant attitude on the part of Dr. Goldberg's counsel (which does not exist) justifies the wholesale rejection of indemnification for these entries, rather than a reasonable, good faith effort to address this handful of inadvertent issues in inexplicable.  As set forth below, each of the entries identified in the R&R are easily addressed and, as addressed and/or corrected, should be awarded, rather than reflexively and punitively rejected.

With respect to the entry for 6/13/19 the entry inadvertently included 3 hours for time applicable to Dr. Goldberg's Answer and Counterclaims (which time is not being sought through the indemnification portion of the application).  However, rather than the punitive denial of all

time for that date in the indemnification application, the Court should reduce the total amount sought by the $360 attributable to the inadvertently-included portion of the entry and award the $200 attributable directly to the motion to dismiss the Fourth Cause of Action.  (*See* Zimmer Obj. Decl. ¶ 8.)

With respect to the entry for 1/7/20 the calculation does include 2 hours attributable to work for which indemnification is not being sought through this application.  Further review of contemporaneous time records confirms that the actual amount of time attributable to the Fourth Cause of Action is 1.5 hours which, when the applicable formula is applied results in an amount of $600.  Thus, rather than the punitive denial of this entry in its entirety, the $600 attributable to time inadvertently miscalculated should be awarded.  (*See* Zimmer Obj. Decl. ¶ 9.)

With respect to the entry for 5/1/19 the entire entry was highlighted because the single phone call noted in the entry was a subject of indemnification.  However, because the call was devoted to both answering certain of Navidea's claims and to the motion to dismiss the Fourth Cause of Action Dr. Goldberg sought indemnification only for half of the call, which is why half of the total time entry amount is used to calculate the amount for which indemnification is sought.  This full amount should be awarded, rather than penalizing Dr. Goldberg for the R&R's failure to notice this fact based on the manner in which this single entry was (accurately) presented.  Indemnification relating to this entry should not be denied.  (*See* Zimmer Obj. Decl. ¶ 10.)

With respect to the entry for 12/30/19 the entry contains time for drafting a deficiency letter regarding Navidea's and Macrophage's productions in relation to document requests served earlier in the action which sought documents relating to the Fourth ause of Action which was still subject to renewal by Navidea and time for new subpoenas drafted in the action.  The

new subpoenas did not seek documents or information concerning the Fourth Cause of Action so only the single hour devoted to the deficiency letter was included in the calculation of the amount for which indemnification was sought even tough the entire entry was inadvertently highlighted.  Indemnification relating to this entry should not be denied.  (*See* Zimmer Obj. Decl. ¶ 11.)

As with attorney Zimmer, the R&R recommends that all time entries by attorney Weisbrot that are not wholly attributable to the Fourth Cause of Action but, rather, have been apportioned to it by him in his supporting declaration and documentation should be denied.  For the reasons set forth in Section I, *supra*, this approach should be rejected and these amounts should be awarded.

## IV.   DR. GOLDBERG'S FEE APPLICATION WITH RESPECT TO ADVANCEMENT OF FEES AND EXPENSES INCURRED IN DEFENDING AGAINST NAVIDEA'S OTHER CLAIMS SHOULD BE GRANTED

As set forth above, the principal basis for rejection of Dr. Goldberg's fee application with respect to advancement for his defense of Navidea's claims against him other than the Fourth Cause of Action is the R&R's recommendation that all of the entries be denied as "block billed" and improper.  For the reasons set forth in Section I, *supra*, this approach should be rejected by the Court and these entries and amounts should be awarded to Dr. Goldberg.  In the alternative, the Court should conduct a conference and work with the parties to provide guidance as to how this issue can be addressed in light of the *Hensley* decision and the controlling precedent recognizing cases like this in which attorneys' fees cannot be allocated on a claim-by-claim basis and making clear that the existence of such conditions are not a basis to reject wholesale an application for indemnification or advancement.  Dr. Goldberg stands ready to participate in any such conference and to implement any specific guidance provided by the Court with respect to allocation of his attorneys' fees and expenses.

21

## V.   DR. GOLDBERG SHOULD NE AWARDED ADVANCEMENT OF HIS FEES AND EXPENSES INCURRED IN PROSECUTING HIS COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Dr. Goldberg made a motion in which he cited controlling Delaware authority from the Delaware Supreme Court making clear that where a defendant asserts counterclaims intended to defend against or offset claims against him those claims are advanceable under advancement provisions (like the one here) requiring advancement of fees and expenses incurred in defending an action.

As the *Citadel* Court held in a nearly identical context:

> Technically, of course, [counterclaims] represent separate causes of action. But under the Federal Rules of Civil Procedure . . . [c]ounterclaims arising from the same transaction as the original complaint must be asserted or be thereafter barred. Fed. R. Civ. P. 13(a).  Thus, in the federal action at least, any counterclaims asserted by [the defendant] are necessarily part of the same dispute and were advanced to defeat, or offset, [the plaintiff's] . . . claim.  We therefore believe the Agreement[5] covers [the defendant's] costs incurred in pursuing the counterclaims he asserted in the federal action as well.  The fact that certain defenses may have been stricken in the federal action does not foreclose the question of their reasonableness.  As a tactical matter, the assertion of such defenses may be justified even if later found to be without merit and there was no determination in the federal action that such defenses were asserted in bad faith.

*Citadel Holding Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992).  The counterclaims asserted by Dr. Goldberg against Navidea in this action arose out of and are based on the August 14th Agreement and its implementation (or lack thereof) by Navidea – the same agreement and set of facts and circumstances giving rise to Navidea's claims.[6]  They were asserted in this action to

---

[5]      The Agreement in *Citadel* was narrower than the one at issue here.  The agreement in *Citadel* required advancement only of "reasonable expenses (including court costs and attorney's fees) incurred by an Indemnitee who was or is a witness or was or is threatened to be made a named defendant or respondent in a Proceeding," whereas Navidea's Bylaws require Navidea to advance "[e]xpenses (including attorneys' fees) incurred by an officer or director in defending *any* civil, criminal, administrative, or investigative action, suit or proceeding."  (Emphasis added.)

[6]      Fed. R. Civ. P. 13(a)(1) instructs that counterclaims are compulsory if they "(A) arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . (B) do[] not require adding another party over whom the court cannot acquire jurisdiction."  Although Fed. R. Civ. P. 13(b) provides that such claims need not be asserted as counterclaims if they are the subject of another pending action, the separate action commenced by Dr. Goldberg in this Court was merged into this action by the Court through its Initial Pretrial

preserve Dr. Goldberg's claims arising from the August 14th Agreement and to defend against claims for rescission, termination or excuse of performance of the agreement asserted by Navidea and to offset damages claims asserted by Navidea. Thus, they are subject to advancement.

Likewise, Dr. Goldberg's third-party claims against Macrophage, a subsidiary of Navidea which is still 100% owned by Navidea, arise from the same set of facts and circumstances and assert misconduct against Navidea in that Navidea prevented Macrophage from performing under the August Agreement, improperly commandeered Macrophage's board of directors in breach of the August Agreement, directed Macrophage's actions in a manner that harmed Dr. Goldberg, and ultimately stripped Macrophage of its assets, and/or caused Macrophage to breach its obligations to Dr. Goldberg under the August 14th Agreement. Thus, the third-party claims against Macrophage are also necessary to defend against and offset Navidea's claims against Dr. Goldberg and he is entitled to advancement of his attorneys' fees and costs incurred in connection with those claims.

The R&R recommends that Dr. Goldberg's motion for advancement in connection with his counterclaims and third-party claims be denied because it was untimely based on a directions by the Court in its Opinion and Order dated August 24, 2020 [Dkt. No. 134] directing that Dr. Goldberg file fee applications in connection with his motion for indemnification of fees and expenses in connection with the Fourth Cause of Action which had been previously granted and his motion for advancement of fees and expenses in connection with his defense of Navidea's claims other than the Fourth Cause of Action, which motion was granted in the Opinion and Order. (*See* Opinion and Order at n. 10.)

---

Conference Order and Dr. Goldberg was directed to assert all claims in his separate action as counterclaims in this case. Because Dr. Goldberg's action was no longer pending when his Answer, Counterclaims and Third-Party Claims were filed in this case, and because he was ordered to assert them as counterclaims in this case by the Court, his counterclaims against Navidea were compulsory per Fed. R. Civ. P. 13(a)(1).

In one portion of the Opinion and Order, the Court ruled that "[n]o later than **September 30, 2020**, Goldberg is ordered to make a properly supported *fee application* in support of his indemnification claim." Opinion and Order at 7 (bold in original, italics added). This directive was contained in a section of the Opinion and Order discussing Dr. Goldberg's already-granted motion for indemnification. Another section of the Opinion and Order ruled that "[n]o later than **September 30, 2020**, Goldberg is directed to make a properly supported *fee application* in support of his claim for advancement." Opinion and Order at 11 (bold in original, italics added). This directive was contained in a section of the Opinion and Order granting Dr. Goldberg's motion for advancement with respect to his defense of Navidea's claims against him. *Id.* Both of these directives recognized that, having been awarded indemnification of his fees and expenses in connection with the Fourth Counterclaim in an earlier decision, and advancement in connection with his defense of Navidea's claims against him in the Opinion and Order, Dr. Goldberg was required to file *fee applications* for the exact amounts for which he was asking indemnification and advancement. Neither section mentioned a future "motion" in connection with Dr. Goldberg's counterclaims or third-party claims, or any deadline for filing such motion(s). Rather, the fee applications were ordered as follow up to the already granted motions.

The section of the Opinion and Order granting Dr. Goldberg's motion for advancement in connection with his defense of Navidea's claim against him appended a footnote in which the Court stated in relevant part:

> In *Citadel*, the Delaware Supreme Court held that a contractual advancement provision for defense costs should be construed to include the defendant's cost of pursing compulsory counterclaims that arose out of the same transaction underlying plaintiff's claims and were "advanced to defeat, or offset" those claims. 603 A.2d at 824. Because the issue of whether Goldberg is entitled to advancement of fees incurred in prosecuting his counterclaims was not properly argued before Magistrate Judge Freeman, *the Court will refrain from ruling on that issue*. See *Robinson v. Keane*, No. 92-CV-6090, 1999 WL 459811 at *4 (S.D.N.Y. June 29,

> 1999) ("These issues were not raised before the Magistrate Judge and therefore were not addressed by [her]; accordingly, they may not properly be deemed 'objections' to any finding or recommendation made"). Goldberg may further address that issue in his *motion for advancement of attorneys' fees*, focusing specifically on whether his counterclaims constitute compulsory counterclaims "advanced to defeat, or offset" Navidea's claims, as contemplated by the court in Citadel and subsequent case law. Should Goldberg choose to seek advancement of attorneys' fees incurred in connection with his counterclaims, Goldberg's billing records must specify which time entries correspond to time spent prosecuting each counterclaim.

*Id.* (emphasis added). The Opinion and Order thus ruled in footnote 10 that unlike the issues of indemnification of fees and expenses in connection with the Fourth Cause of Action and advancement of fees and expenses in connection with defending Navidea's claims against him, Dr. Goldberg had not made a motion for advancement in connection with his counterclaims and refrained from ruling as to whether he was entitled to such advancement. This ruling and the guidance that a motion would be required on this subject was contained completely within footnote 10 to the Opinion and Order. That footnote does not contain any time limit for filing such motion and no other part of the Opinion and Order discussed this issue or placed any time limit on Dr. Goldberg's filing of the *motion* for advancement in connection with his counterclaims that clearly was necessitated by this ruling.

While Dr. Goldberg will not presume to state what the Court may have been thinking when it provided specific deadlines in which to file fee applications in connection with already granted motions, and in a footnote not containing any deadline ruled that Dr. Goldberg would be required to file a motion seeking advancement of fees and expenses in connection with his counterclaims, Dr. Goldberg did not understand those separate sections of the Opinion and Order to impose any deadline on a motion for advancement in connection with his counterclaims. Respectfully, no objective reading of the provisions, together or individually, could reasonably be read to impose such a deadline on a motion for advancement of fees and expenses in connection with

counterclaims.  And, respectfully, if that was the Court's intent, its Opinion and Order was, at best, ambiguous.  Given these facts, it would be manifestly unjust to accept the R&R's recommendation that the Court deny Dr. Goldberg's motion as untimely.

With respect to the merits of the motion, it is clear from a reading of Dr. Goldberg's allegations in support of the Counterclaims and Third-Party Claims [Dkt. No. 31] that each and every one of them arise from Dr. Goldberg's dispute with Navidea (and in the case of the third-party claims, Macrophage) concerning implementation of the August 14th Agreement, which is the basis of the claims against him by Navidea.  The August 14th Agreement required Dr. Goldberg to resign as Navidea's CEO and release certain claims against Navidea, including in excess of $3,000,000 owed to Dr. Goldberg by Navidea.  In exchange, Navidea was required to issue to Dr. Goldberg 23.5 million shares of Navidea common stock pursuant to Regulation D of the Securities Act of 1933.  In addition, the August 14th Agreement was executed, among other reasons, to separate Macrophage (which had been 99.9% owned by Navidea) from Navidea and to provide Dr. Goldberg with voting, board and operational control over Macrophage going forward.  The August 14th Agreement granted Dr. Goldberg Super Voting Common Stock of Macrophage sufficient to give him voting control of Macrophage.  The August 14th Agreement restricted Navidea's participation in appointments to the board of Macrophage to a single, non, voting observer.  And the intent and wish of Navidea and Macrophage was that Dr. Goldberg would act as CEO of Macrophage and direct its scientific operations as well as its fundraising efforts.

Similarly, the third-party claims asserted against Macrophage seek to force Macrophage, a party to the August 14th Agreement, a wholly-owned subsidiary of Navidea (at least prior to the execution of the August 14th Agreement) and an entity that Navidea purported to retake control over even after executing the August 14th Agreement, to perform it obligations under the August

14th Agreement and seek damages based on Macrophage's failure (at Navidea's direction) to timely comply with its obligations under the August 14th Agreement.  The Counterclaims and Third-Party claims make clear that it was Navidea's actions after the August 14th Agreement was executed, which Dr. Goldberg alleges constituted breaches of the August 14th Agreement, that prevented Macrophage from performing its obligations under the August 14th Agreement.  The third-party also sought damages based on conduct of Macrophage undertaken at the direction of the Macrophage directors purportedly appointed to the Macrophage board after the August 14th Agreement was executed, which appointments are alleged in the counterclaims and the third-party claims to have been made in violation of the August Agreement.

It is especially clear now that the Court has dismissed certain of Dr. Goldberg's counterclaims and third-party claims and denied his motion for leave to replead, that all of his remaining counterclaims and third-party claims arise from the exact August 14th Agreement and set of facts and circumstances giving rise to Navidea's claims against him.  Thus, under *Citadel* the counterclaims are clearly compulsory counterclaims within the meaning of Fed. R. Civ. P. 13(a)(1) and both the counterclaims and the third-party claims are intended to defend and/or offset against Navidea's claims in this action

There can be no doubt that each and every one of the counterclaims and third-party claims "are necessarily part of the same dispute and were advanced to defeat, or offset, [Navidea's] . . . claim[s]."  *Citadel Holding Corp.*, 603 A.2d at 824.  Accordingly, under the clear holding of *Citadel* the attorneys' fees and expenses incurred by Dr. Goldberg in connection with their prosecution should be advanced by Navidea.

While acknowledging that Dr. Goldberg presented this information and authority in support of his motion, the R&R recommends that the Court ignore it.  The only discernable basis

provided for this recommendation is that the amount of damages initially sought by Dr. Goldberg through the counterclaims and third-party claims, not less than $26,000,000 exceeds the amount sought by Navidea's affirmative claims.  However, this rationale is both inaccurate and logically flawed.  First, at the time the counterclaims and third-party claims were asserted in Dr. Goldberg's Answer and Counterclaims to Navidea's Amended Complaint, Navidea was seeking no less than $50,000,000 in damages from Dr. Goldberg based on its now-dismissed Fourth Cause of Action.  This amount is almost exactly double the amount sought through the counterclaims and third-party claims.  Moreover, it would be absurd, no less unjust, if a party with an advancement obligation could run into court in the posture of a plaintiff and assert claims against a defendant, and then escape its advancement obligation because the harm it caused the defendant exceeds the harm the defendant allegedly caused the plaintiff.

## VI.   NAVIDEA SHOULD BE ORDERED TO BEGIN PAYMENTS TO DR. GOLDBERG AND TO OTHERWISE COMPLY WITH THE GOING-FORWARD ADVANCEMENT PROTOCOL

The R&R recommends that Dr. Goldberg be required to submit revised requests for advancement to Navidea under the Court's going-forward advancement protocol in order to receive going-forward advancement after the date of Dr. Goldberg's fee applications dated October 2, 2020 and October 7, 2020.  This recommendation is based on the same rationale as the R&R's recommendations regarding time allocated by Dr. Goldberg's counsel to defense of Navidea's claims against him in the pending fee application.  Dr. Goldberg respectfully suggest that for the reasons stated above the issues raised in the R&R with respect to Dr. Goldberg's allocation of fees and expenses in his fee application are misguided and that Navidea should be required to comply with the protocol with respect to advancement requests already sent by Dr. Goldberg and future requests using the methodology discussed above.

28

Dr. Goldberg notes that the advancement protocol adopted by the Court provides a specific mechanism for addressing objections by Navidea to Dr. Goldberg's monthly going-forward advancement requests on a quarterly basis and imposes concrete, objective and mathematically discernable obligations on both Dr. Goldberg and Navidea prior to such applications. Dr. Goldberg has complied with *all* of his obligations *every* month since the protocol was adopted by the Court. Navidea has *never once* complied with a single aspect of its obligations. The Court was well aware at the time that the protocol was adopted that there could be disputes between Dr. Goldberg and Navidea regarding going-forward advancement requests. It considered objections to the proposed protocol from both Dr. Goldberg and Navidea. It adopted the protocol over those objections in part because the protocol itself contains provisions for presenting disputes about advancement to the Court on a quarterly basis. The Court then sat idle while Navidea completely flouted the protocol and the Court's Order on a monthly basis. Dr. Goldberg therefore respectfully requests that to the extent the Court intends to make modification to the protocol or give guidance on its implementation, it take into account this history, and also that it do so in advance of a broader decision on the R&R so that Dr. Goldberg can finally begin receiving the advancement the Court has already ruled he is entitled to.

However, to the extent the Court adopts the recommendations in the R&R or issues other rulings and/or guidance in an Order, Dr. Goldberg agrees that he should be permitted to make adjustments to his fee requests.

## CONCLUSION

For the foregoing reasons, the Court should reject and/or modify the R&R to the extent requested herein and should grant Dr. Goldberg such other and further relief as the Court deems just and proper.

Dated:  Westchester, New York
        May 5, 2021

Respectfully submitted,

/s/ Gregory Zimmer
Gregory Zimmer, Esq.
360 Lexington Avenue, Suite 1502
New York, NY 10017
Phone: 914.402.5683
Fax: 914.402.5683
Email: GZimmer@GZimmerLegal.com