Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Tel:  (914) 402-5683
GZimmer@GZimmerLegal.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Navidea Biopharmaceuticals Litigation | Case No.: 1:19-cv-01578-VEC |

Terry L. Orr, hereby declares under penalty of perjury as follows:

1.     I am a Partner with HKA in the Dallas office of the Forensic Accounting and Commercial Damages practice.  I am a Certified Public Accountant licensed in the state of Texas with 35 years of experience in the field of public accounting.  I am a member of the American Institute of Certified Public Accountants ("AICPA").  I am also a Chartered Global management Accountant, a Certified Internal Controls Auditor, A Certified Construction Auditor and I am a member of the AICPA's Forensic & Valuation Services Section.  I have been retained as an expert by Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Dr. Michael M. Goldberg, M.D. ("Dr. Goldberg") in this action.  I make this declaration in support of Dr. Goldberg's motion (the "Motion") to strike certain opinions of purported expert witness William F. Murray ("Murray") proffered by Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") in this action.

2.     Annexed hereto as Exhibit 1 is a chart illustrating Navidea's share price and trading volume between the earliest date identified in the Rebuttal Report of William F. Murray served in this action that Dr. Goldberg could sell shares, February 14, 2019, and the date of the Murray

Rebuttal Report, November 15, 2021. I calculated the average trading volume for that time period to be 267,245 shares per day and 15% above the average daily trading volume to be 307,332. As can be seen from the chart, there are many instances in which the trading volume exceeded 15% of average daily trading volume in that period with no negative impact to the share price. In fact, as is shown, share price actually increased on many of the days upon which trading volume exceeded 15% of average daily trading volume.

3. Murray calculates the value of Dr. Goldberg's shares on two dates, February 14, 2019 and February 14, 2020, which he states are the earliest dates that the shares could have been traded, and applies a blockage discount to account for the downward pressure on the share price caused by a sudden sale of a large volume of shares. As shown in Exhibit 1, trading volume on February 14, 2019 did not exceed the average daily trading volume. However, on February 14, 2020, there is a spike in trading volume over the 15% threshold, and yet the share price on that day did not decline, but instead, it actually went up to $1.18 from $0.98 the day before.

4. Murray argues that Dr. Goldberg should have received two transfers of Navidea stock. The first transfer of 13,500,000 pre-split shares[1], or 675,00 post-split shares, would have been salable on February 14, 2020. The second transfer of 500,000 post-split shares would have been salable on February 14, 2020. An analysis based on Murray's tradable dates reveals that Dr. Goldberg still could have sold all of his Navidea shares without exceeding the 15% of daily trading volume threshold.

7. Annexed hereto as Exhibit 2 is a chart illustrating certain trading days on which Navidea's daily trading volume was sufficient for Dr. Goldberg to sell some or all of the Navidea shares without implicating Murray's 15% threshold. As Exhibit 2 shows, based on the dates Murray calculated shares are tradable, Dr. Goldberg could have sold all 1,175,000 shares on May 22, 2020

---

1 On April 26, 2019, Navidea executed a 20 to 1 reverse stock split.

for $2.43 without violating the 15% of daily trading volume threshold. He also could have sold 50% of his shares on May 26, 2020 and November 13, 2020 without violating the 15% of daily trading volume threshold. There are also two additional days when he could have sold 25% of his shares without violating the 15% of daily trading volume threshold. Therefore, there were many opportunities within the first year after when Murray determines that Dr. Goldberg's shares are tradable, that he could have sold his shares without even implicating Murray's assumed 15% threshold.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge and investigation or, where noted, on information and belief.

February 4, 2022

                                                             /s/ *Terry L. Orr*
                                                             Terry L. Orr

# EXHIBIT 1

**Exhibit 1: Navidea's Share Pricing and Volume[1]**



---

[1] Navidea Biopharmaceuticals, Inc. data pulled from Capital IQ. Note the Y-axis cuts off at 10m shares, even though some data points go over that volume, in order to better see the smaller volumes

# EXHIBIT 2

**Exhibit 2: Dates when Post-Split Shares are Below 15% of Trading Volume**

|  | Sell 100% of Shares | Sell 50% of Shares | | Sell 25% of Shares | |
| --- | --- | --- | --- | --- | --- |
| Date | May-22-2020 | May-26-2020 | Nov-13-2020 | Aug-10-2020 | Feb-04-2021 |
| Trading Volume | 82,523,720 | 5,523,760 | 6,677,621 | 2,175,170 | 2,397,143 |
| Share Price | $ 2.43 | $ 2.50 | $ 2.76 | $ 3.46 | $ 2.89 |
| Post-Split Shares | 1,175,000 | 587,500 | 587,500 | 293,750 | 293,750 |
| % of Trading Volume | 1.4% | 10.6% | 8.8% | 13.5% | 12.3% |