UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: NAVIDEA BIOPHARMACEUTICALS
LITIGATION

Case No: 1:19-cv-01578-VEC

ECF Case

**MEMORANDUM OF LAW IN OPPOSITION TO MICHAEL M. GOLDBERG'S
PARTIAL MOTION *IN LIMINE* TO STRIKE CERTAIN OPINIONS OF
PURPORTED EXPERT WILLIAM F. MURRAY PROFFERED BY
<u>NAVIDEA BIOPHARMACEUTICALS, INC.</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.  To The Extent Orr's Damage Opinions Are Admissible, Murray's Private Placement Methodology To Evaluate The DLOM Is Admissible To Rebut Orr's Damage Analysis And Failure To Apply A DLOM…………………………………………3

A.  Murray's Private Placement Methodology Is Relevant………………………4

B.  Murray's Private Placement Methodology Reliably Applies Relevant Data Inputs…………………………………………………………………………..8

II.  Goldberg Does Not Challenge Murray's Rebuttal Opinions On Macrophage Or On Any Other Issue…………………………………………………………………...13

III.  To The Extent Orr's Opinions And Testimony Are Excluded, Murray's Opinions And Testimony To Rebut Those Opinions Also Should Be Excluded……………………13

CONCLUSION.................................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amorgianos v. Nat. R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ............................................................................................ 10

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
  222 F. Supp. 2d 423 (S.D.N.Y. 2002) ................................................................................ 3

*Boatman v. Comcast of S., L.P.*,
  2020 WL 714146 (E.D. Tenn. Feb. 12, 2020) ................................................................ 13

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) ................................................................................................ 12

*Campbell v. Metro Prop. & Casualty Ins. Co.*,
  239 F.3d 179 (2d Cir. 2001) ...................................................................................... 10, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 581 (1993) ...................................................................................................... 8, 9

*Duncan v. Theratx, Inc.*,
  775 A.2d 1019 (Del. 2001) ...................................................................................... 2, 8, 12

*Falise v. Am. Tobacco Co.*,
  258 F. Supp. 2d 63 (E.D.N.Y. 2000) ............................................................................... 10

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
  2020 WL 4251229 (S.D.N.Y. Feb. 19, 2020) .............................................................. 3, 14

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  Case No. 06-MD-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) ......................... 10, 12

*In re Fosamax Prods. Liab. Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009) ............................................................................... 8

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
  593 F. Supp. 2d 549 (S.D.N.Y. 2008) ............................................................................. 10

*Janis v. Comm'r*,
  469 F.3d 256 (2d Cir. 2006) .............................................................................................. 5

*Joffe v. King & Spalding LLP*,
   2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019) ............................................................... 7, 11, 12

*Kurtz v. Costco Wholesale Corp.*,
   818 F. App'x 57 (2d Cir. 2020) ........................................................................................ 11

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
   2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015) ................................................................ 6, 14

*Scott v. Chipotle Mexican Grill*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................... 6, 7, 14

*United States Sec. & Exch. Comm'n v. Mudd*,
   2016 WL 2593980 (S.D.N.Y. May 4, 2016) ..................................................................... 14

*United States v. Tejada*,
   956 F.2d 1256 (2d Cir. 1992) ........................................................................................... 14

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp.*, LLC,
   571 F.3d 206 (2d Cir. 2009) ......................................................................................... 7, 10

**Rules**

Fed. R. Evid. 702 ................................................................................................................ 8, 13

**Secondary Sources and Articles**

Ezra Angrist, Harry Curtis, III, Daniel Kerrigan,
   *Regression Analysis and Discounts for Lack of Marketability,*
   Business Valuation Review, Vol. 30, No. 1 (Spring 2011) ................................. 4, 5, 8

Charles A. Wilhoite, CPA, and Aaron M. Rotkowski,
   *Fair Market Value and Blockage Discounts: When the Market Doesn't Give You the Answer*,
   Insights (Autumn 2014) .................................................................................................. 5

George B. Hawkins, ASA, CFA.,
   *Blockage Discounts for Publicly Traded Stock*,
   Business Value, Banister Financial, Inc. (Fall 2001) ..................................................... 5

Scott Stabile, CPA,

   *Making Sense of Blockage Discounts – What, When, and Why?,*

   (March 29, 2020) ............................................................................................................... 5

*Discount for Lack of Marketability, Job Aid for IRS Valuation Professionals*,

   (September 25, 2009) ......................................................................................................... 5

Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") and Third-Party Defendant Macrophage Therapeutics, Inc. ("Macrophage" or "MT") submit this memorandum of law in opposition to *Michael M. Goldberg's Partial Motion In Limine To Strike Certain Opinions Of Purported Expert William F. Murray Proffered By Navidea Biopharmaceuticals, Inc*.

## PRELIMINARY STATEMENT

Facing the prospect of having his own expert's opinions entirely excluded, Defendant Michael M. Goldberg, M.D. ("Goldberg") moves to strike certain rebuttal opinions of Navidea's and MT's rebuttal expert, William F. Murray ("Murray"), while simultaneously trying to adopt those same opinions as his own based on the purported similarity of the methodology to his own expert, Terry L. Orr ("Orr").[1] Goldberg thus argues both that Murray's methodology is improper and unreliable, but nonetheless provides a damage value that Goldberg can provide to the jury. These positions are not only inconsistent, they also are meritless. In short, Murray's rebuttal opinions are admissible; but they cannot be used by Goldberg as affirmative evidence of damages.

Unlike Orr, Murray used a published and peer-reviewed multivariable regression analysis as the basis for his expert report. Murray then used that analysis to ***rebut*** Orr's damage opinions. Murray did not agree with any of Orr's opinions, nor did Murray provide an affirmative damage analysis for Goldberg to use in lieu of Orr's testimony. Murray simply provided a rebuttal report and focused his rebuttal on Orr's deficient and inadmissible damage analyses, including Orr's failure to consider or apply a discount for the lack of marketability ("DLOM") on Goldberg's block of Navidea stock as a result of Navidea's stock being thinly traded. Using the regression analysis, which is a proprietary model that has been used prior in court cases and in hundreds of matters

---

[1] Navidea and MT previously moved to entirely exclude Orr as an expert. [Dkt. Nos. 252-254.]

before the IRS, Murray concluded, among other things, that Orr was obligated to calculate and apply a DLOM, but did not.

Goldberg first seeks to exclude Murray's rebuttal opinions and testimony by falsely characterizing the regression analysis as an "off the shelf" "results driven" model that uses "untested" "assumptions," and fails to consider Goldberg's investor savviness and Navidea's "true market conditions." (MOL at 1-2.) Goldberg's mischaracterization of a peer-reviewed and published analysis demonstrates Goldberg's and Orr's fundamental misunderstanding of financial valuations and Murray's role as a rebuttal expert.

*First*, the regression analysis is not an off-the-shelf, results driven model; rather it is a proprietary model that calculates the discount to be applied when, like here, an individual seeks to sell an illiquid block of stock. The analysis (and the data it uses) is relevant, reliable, and most importantly, rebuts Orr's opinions. *Second*, Murray's role as a rebuttal expert is not to provide a definitive damage analysis for Goldberg to critique or adopt. Murray's opinions are relevant ***only*** to rebut or criticize Orr's opinions. Murray does not need to use new methodologies or address alternative assumptions suggested by Goldberg, nor does Murray need to cross-check the results of his methodology against specific historical Navidea data points. In fact, Goldberg's assertion that Murray should have considered Goldberg's investor savviness to time the market (MOL at 10, 12, 15-16) is not only inconsistent with the role of a rebuttal expert, it also is contrary to how damages are calculated under Delaware law. *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1025, 1027 (Del. 2001) (rejecting a valuation methodology that assumed the stockholder would elect to "retain the shares" because the court would "not take into account [a] delay in the sale of [ ] shares for speculative purposes").

Goldberg and Orr do nothing to call into question the relevance or reliability of Murray's rebuttal opinions. Moreover, their misunderstanding of and improper attacks on a peer-reviewed

and published methodology lay bare the inadmissibility of Orr's opinions, which Navidea and Macrophage have moved to exclude. Accordingly, the Court should deny Goldberg's motion and fully allow Murray's rebuttal opinions. However, to the extent Orr's opinions are excluded in connection with Navidea's and MT's motion [Dkt. Nos. 252-254], the Court should not allow Goldberg to adopt Murray's opinions as his own. Murray's rebuttal opinions should be excluded as irrelevant where Orr's underlying affirmative opinions have been excluded. *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, Case No. 12-cv-7372, 2020 WL 4251229, at *9 (S.D.N.Y. Feb. 19, 2020) ("Because the Court excluded Dr. Snow's opinion regarding hypothetical losses, Longstaff's opinion criticizing Dr. Snow's analysis is no longer relevant.").[2]

## ARGUMENT

### I.   To The Extent Orr's Damage Opinions Are Admissible, Murray's Private Placement Methodology To Evaluate The DLOM Is Admissible To Rebut Orr's Damage Analysis And Failure To Apply A DLOM

If the Court allows Orr to provide opinions and testimony on Goldberg's alleged damages, Murray should be allowed to rebut those opinions. Murray rebuts five specific aspects of the Orr Report – (1) Orr's speculation on when Goldberg would sell his shares, (2) Orr's failure to consider "the thinly traded nature of Navidea's stock," (3) Orr's failure to provide any support for the Macrophage damage analysis, (4) Orr's claims on when the shares should have been issued, and (5) Orrs' failure "to consider the value of the shares today as an offset to damages." (Kazan Decl. Ex. 1 ("Murray Rebuttal Report") at 3.) Goldberg does not refute or challenge any of Murray's qualifications to render those opinions. Instead, Goldberg takes issue with only one aspect of

---

[2] As set forth in Navidea's and Macrophage's moving papers [Dkt. No. 254 at 12], New York law should be applied to the admissibility of expert testimony. *See Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 486 (S.D.N.Y. 2002) ("evidentiary rulings concerning the admissibility of expert testimony are generally governed by regional circuit law").

Murray's rebuttal report – the methodology Murray used to demonstrate that Orr failed to consider or apply a DLOM. Goldberg's criticisms of Murray's methodology have no merit.

### A.   Murray's Private Placement Methodology Is Relevant

Goldberg argues that Murray's rebuttal analysis on the DLOM is not relevant and should be excluded because Murray improperly: (1) used a private placement model to evaluate the DLOM for publicly traded stock; (2) assumed that trading volume of more than 15% of the average daily trading volume would result in a decrease in the stock price; and (3) failed to separately consider Navidea's stock trading history. (MOL at 2, 5-9.) Each of these contentions is without merit. The rebuttal analysis is relevant.

Goldberg first argues that the mere fact that the methodology has the words "private placement" in its name is disqualifying. (MOL at 4 ("this lawsuit *does not* involve a private placement") (emphasis in original).) Orr and Goldberg fundamentally misunderstand Murray's methodology and its applicability to the Navidea shares at issue in this case. Murray utilized a propriety private placement model (the "Private Placement Methodology") based on a multiple regression analysis developed by his firm (the "MPI Restricted Stock Study") to demonstrate that Orr failed to apply a DLOM to the illiquid block of Goldberg's Navidea stock, which was illiquid due to the "thinly traded" nature of Navidea stock. (Murray Rebuttal Report at 7-13.) To demonstrate this point, Murray's report identifies the fact that Goldberg alleged he was entitled to 13,500,000 million shares of unrestricted Navidea stock as of February 14, 2019 – a time when the average daily trading volume was only 27,156 shares per day. (*Id.* at 10.)

The applicability to the facts of this case of the Private Placement Methodology and the MPI Restricted Stock Study is facially apparent from the study itself. The first page of the MPI Restricted Stock Study specifically states that it "can be used as a basis for determining discounts for lack of marketability in . . . *illiquid blocks of **publicly traded stocks***." (Kazan Decl. Ex. 3 ("MPI

Restricted Stock Study") at 1) (emphasis added). That is exactly what Goldberg has claimed he was damaged by – the inability to sell an illiquid block of publicly traded Navidea stock.

The MPI Restricted Stock Study was peer-reviewed and published in the Business Valuation Review in 2011[3] and the Private Placement Methodology has been used in prior court cases and in hundreds of cases before the IRS. (Kazan Decl. Ex. 2 ("Murray Tr.") at 48:9-10, 123:7-21.) While Murray testified that the methodology is often used to value privately traded shares (Murray Tr. at 82:4-7), Murray also testified as to the study's applicability to the current case with publicly traded stock, stating that "private placements of restricted stocks" provide "market evidence" of how illiquid blocks of stock would be valued (Murray Tr. at 38:10-39:10; Murray Rebuttal Report at 7 ("transactions in restricted shares provide useful guidance as to the diminution in value arising from lack of liquidity")). Accordingly, there is nothing improper about Murray using the Private Placement Methodology to calculate the DLOM for Goldberg's Navidea shares or using a "blockage discount"[4] as the DLOM, as Murray believed Goldberg's Navidea

---

[3] *See* Ezra Angrist, Harry Curtis, III, Daniel Kerrigan, *Regression Analysis and Discounts for Lack of Marketability,* Business Valuation Review, Vol. 30, No. 1, pp. 36-48 (Spring 2011). A complete copy of the MPI Restricted Stock Study is annexed to the Declaration of Barry Kazan as Exhibit 3. The Business Valuation Review states on its website that it is a peer-reviewed journal. *See* https://meridian.allenpress.com/bvr (need to submit articles for "peer review"); https://meridian.allenpress.com/bvr/article-abstract/38/1/2/444438/Letter-from-the-Editor-A-Re-introduction-to-the?redirectedFrom=fulltext ("The Business Valuation Review is the quarterly peer-reviewed journal of the Business Valuation Committee of the American Society of Appraisers").

[4] The concept of a "blockage discount" is not a fanciful notion. It is a generally accepted valuation concept. *See Janis v. Comm'r*, 469 F.3d 256, 258 (2d Cir. 2006) ("[t]he theory behind a blockage discount . . . is that if a large quantity of any item is added to the existing supply, the price of all such items will tend to fall"). The "blockage discount" and DLOM concepts have been written about extensively in business and valuation publications. *See, e.g.,* Charles A. Wilhoite, CPA, and Aaron M. Rotkowski, *Fair Market Value and Blockage Discounts: When the Market Doesn't Give You the Answer,* Insights, pp. 76-85 (Autumn 2014) (*available at* http://www.willamette.com/insights_journal/14/autumn_2014_12.pdf); George B. Hawkins, ASA, CFA., *Blockage Discounts for Publicly Traded Stock*, Business Value, Banister Financial, Inc. (Fall 2001) (*available at* https://www.businessvalue.com/resources/Valuation-Articles/Blockage-Discounts.pdf); Scott Stabile, CPA, *Making Sense of Blockage Discounts – What, When, and Why?* (March 29, 2020) (*available at* https://www.marcumllp.com/insights/making-sense-of-blockage-discounts). Even the IRS has a manual for DLOM, which includes discussions on blockage discounts. *See Discount for Lack of Marketability, Job Aid for IRS Valuation Professionals* (September 25, 2009) (*available at* https://www.irs.gov/pub/irs-utl/dlom.pdf).

shares could not be sold at once, at market price, without a discount. (Murray Rebuttal Report at 7.)

Goldberg also argues that Murray's Private Placement Methodology is improper because it only calculates discounts. (MOL at 6.) Setting aside that Orr failed to use any peer-reviewed, published or accepted methodology in valuing Goldberg's alleged damages, Goldberg's argument that Murray's published, peer-reviewed and generally accepted methodology is improper is baseless and entirely misses the point. Murray did not use the Private Placement Methodology to assert there could only be a discount; rather, Murray first assessed the facts of the case and concluded "[a] blockage discount should be applied." (Murray Rebuttal Report at 7.) Then, Murray used the Private Placement Methodology to calculate the discount. There is nothing improper about Murray determining that it was necessary to apply a blockage discount, calculating the discount, and then rebutting Orr's report for his failure to do the same. *Scott v. Chipotle Mexican Grill*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party.")

Murray's explanation and use of the Private Placement Methodology is more than sufficient to demonstrate its relevance should Murray's rebuttal be required. *Id.* (rebuttal expert has "no burden to produce models or methods of their own; they need only attack those of the [opposing] expert"); *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, Case No. 11-cv-681, 2015 WL 5459662, at *12 (S.D.N.Y. Sept. 16, 2015) (the rebuttal expert "need not himself have done the work that he asserts [the opposing expert] should have done; it is enough that based upon his experience he is able to provide a reasoned basis for why she should have done so").

Goldberg next argues that Murray improperly assumed that the stock price would decrease when the quantity of stock traded was greater than 15% of the daily average trading volume. (MOL

at 6.) Murray testified that he has used the 15% figure "for years," that it is based on discussions with "bankers," "traders," "people in the industry," and his colleagues, and that a range of 10% to 15% is the "general consensus" and the "general market guideline." (Murray Tr. at 66:7-25; 67:15-21; 68:13-14; 73:13-17; 81:8-12.) Murray does not need to use or "identify alternative or better methodologies" to placate Goldberg. *Joffe v. King & Spalding LLP*, Case No. 17-cv-3392, 2019 WL 4673554, at *14 (S.D.N.Y. Sept. 24, 2019); *Scott*, 315 F.R.D. at 44 ("[a] rebuttal expert is permitted to use new methodologies for the purpose of rebutting or critiquing the opinions of the opposing party's expert witness"). Murray need only use the methodology as developed by his firm, and as he has used it prior. And even if there were a question of what percentage to apply, that goes to the weight of the evidence, not its admissibility. *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp.*, LLC, 571 F.3d 206, 214 (2d Cir. 2009) ("contentions that the assumptions are unfounded go to the weight, not the admissibility of the testimony"). Moreover, other than Orr's self-serving affidavit, neither Goldberg nor Orr has pointed to any case law, statutes or articles that indicate that the 15% figure is incorrect or improper.

Goldberg also wrongly argues that Murray failed to consider Navidea's "company-specific information" and stock trading history, and failed to use other models or "develop a methodology to analyze *whether* trading large volumes of *Navidea* stock *would* cause its share price to decline." (MOL at 6-8 (emphasis in original).) In other words, Goldberg suggests that it is entirely proper for an expert to develop a case-specific methodology that by definition would not have been subject to peer review and not generally accepted in violation of the *Daubert* standard. Goldberg misunderstands the law and the role of a rebuttal expert. As a rebuttal expert, Murray is not required to use or "identify alternative or better methodologies." *Joffe,* 2019 WL 4673554, at *14. For that reason alone, Goldberg's argument fails. In addition, the premise of Goldberg's argument – that Goldberg could have waited until the highest trade price and volume days to sell all of his

stock – is speculative and was specifically rejected by the Delaware Supreme Court. *See Duncan,* 775 A.2d at 1025, 1027.[5] Furthermore, Murray did consider Navidea's company specific information (including its volatility, trading history, and shares outstanding) (Murray Tr. at 55:1-18; 65:7-16) as data inputs in the Private Placement Methodology to calculate the DLOM. (*See* Murray Rebuttal Report at 7-13.)

Put simply, to the extent Orr's damage opinions and testimony are admissible, Murray's rebuttal opinions and testimony on the Private Placement Methodology are relevant and admissible because it properly rebuts Orr's testimony, and is thus "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute" about the DLOM. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 581,591 (1993); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009).

**B.     Murray's Private Placement Methodology Reliably Applies Relevant Data Inputs**

Goldberg also asserts that the Private Placement Methodology should be excluded because it is not reliable. (MOL at 9.) Again, Goldberg is wrong.

The methodology meets all the *Daubert* factors of reliability. *Daubert*, 509 U.S. at 593-94. The methodology is premised on the MPI Restricted Stock Study, which was a published, peer-reviewed[6] study in the Business Valuation Review. Murray also testified that the methodology is "generally accepted" as he has previously used the methodology in court, and it also has been used "in hundreds of valuations each year that go to the IRS." (Murray Tr. at 123:7-21.) *See Daubert*,

---

[5] For substantive issues, such as damages, Delaware law applies because of the Delaware governing law provision in the parties' August 14 agreement.

[6] Goldberg claims not to know whether the published MPI Restricted Stock Study was peer-reviewed because Murray never "inform[ed] Dr. Goldberg through counsel" of the same after his deposition. (MOL at 14.) If Goldberg had reviewed the study, *which is published and available online*, and reviewed the criteria to be published in the Business Valuation Review, he would have quickly discovered that the Business Valuation Review is a peer-reviewed journal. *See, supra,* fn. 3.

509 U.S. at 593-94 (factors of reliability include (1) "whether a theory or technique . . . can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) whether uniform "standards controlling the technique's operation" exist; and (4) whether the theory or technique enjoys "general acceptance" within an identifiable relevant scientific or professional community). Accordingly, there should be no doubt that the Private Placement Methodology is a reliable methodology.

Goldberg also argues that Murray did not use reliable data for the Private Placement Methodology, stating that Murray improperly: (1) assumed that trading volume of more than 15% of the average daily trading volume would result in a decrease in the stock price (MOL at 9-12); (2) "did no investigation or analysis of Dr. Goldberg's individual characteristics, such as his net worth, his holdings in Navidea stock, his knowledge of securities markets or the market for Navidea shares" (*id.* at 10); (3) failed to assess Navidea's actual market data compared to the results of the discount calculated by the Private Placement Methodology (*id.* at 16); (4) used a risk free rate of 3% (*id.* at 12); (6) used a 12-month change in the S&P (*id.*); (6) used Navidea's "book value to its market cap" (*id.* at 12-13); and (7) input the "Log Quarters to Sell Under the 1% Limit Rule" (*id.* at 13). Each of these arguments is meritless.

The 15% "assumption" that Murray "generally use[s]," is based on discussions with "bankers," "traders," "people in the industry," and his colleagues, and Murray testified that a range of 10% to 15% is the "general consensus" and the "general market guideline." (Murray Tr. at 66:7-25; 67:1-21; 68:13-14; 73:13-17; 81:8-12.) Deference should be given to Murray considering the general acceptance of the methodology and the professional judgment involved. As the court in *In re Air Cargo Shipping Servs. Antitrust Litig.*, stated:

> Deference to experts is particularly appropriate when expert testimony concerns "soft sciences" like economics. Because these disciplines "require the use of professional judgment," expert

> testimony is less likely to be excluded because "challenges may ultimately be viewed as matters in which reasonable experts may differ."
>
> Creating statistical models of the kind at issue here depend upon judgment and art as well as the reasoned manipulation of numbers. Models are not the real world; rather, such models are a reasoned and educated attempt to describe reality by accepted methods of statistical analysis using available real world observations, data, and knowledge. The process is not like a Pythagorean demonstration of a mathematical truth that can be revealed indisputably. Neither is it simple 'numbers crunching."

Case No. 06-MD-1175, 2014 WL 7882100, at *8 (E.D.N.Y. Oct. 15, 2014); *see also Falise v. Am. Tobacco Co.*, 258 F. Supp. 2d 63, 67 (E.D.N.Y. 2000).

To the extent there are any questions about the use of the 15% variable, however, that goes "to the weight, not the admissibility of the testimony." *Zerega Ave. Realty Corp.,* 571 F.3d at 214; *Campbell v. Metro Prop. & Casualty Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001) ("To the extent that . . . there [are] gaps or inconsistencies in the [expert's] reasoning, . . . such arguments go to the weight of the evidence, not its admissibility."); *Amorgianos v. Nat. R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible.").

Goldberg's reference to *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 593 F. Supp. 2d 549 (S.D.N.Y. 2008) is inapposite. In that case, the district court noted the well-established principle that "an 'insightful, even an inspired, hunch' must be excluded if it 'lacks scientific rigor.'" *Id.* at 562. The district court used this principle to exclude expert testimony where the expert's methodology was (1) never reported "in any peer-reviewed journal or in some public way so that other scientists could offer criticisms or suggestion," and (2) never used by that expert "in his day-to-day work," or applied to any study other than the one used in that litigation. *Id.* at 561-62. No similar circumstance exists here. The only improper "hunches" are Orr's untested, non-published,

non-peer-reviewed assumptions, including that Goldberg, as a "savvy investor," could perfectly time the market to sell Navidea at its highest stock price. (Kazan Decl. Ex. 4 ("Orr Report") at 23.)

Goldberg's next two arguments are about Navidea's trading history and actual market data. As noted above, as a rebuttal expert, Murray is not required to use or "identify alternative or better methodologies." *Joffe,* 2019 WL 4673554, at *14. Murray used a methodology to rebut Orr's analysis. That is all that is required. Even if Murray could have considered additional variables – which he was not required to do – "failure to include variables will affect the analysis' probativeness, not its admissibility." *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 62 (2d Cir. 2020).

Goldberg's last four arguments are all essentially the same and wrong. Goldberg asserts his disagreement with four data inputs used in the Private Placement Methodology: (1) a risk-free rate of 3%; (2) a 12-month change in the S&P; (3) Navidea's "book value to its market cap"; and (4) the "Log Quarters to Sell Under the 1% Limit Rule." But Goldberg has not submitted any expert report, testimony or declaration that this data was wrongly applied. Nor has Orr submitted any affidavit that the data inputs are incorrect. For each variable Murray explained it was either how the model worked, or he offered sufficient explanations for the use of each variable.

For the risk-free rate, Murray testified that he uses 3% because interest rates are "very low," and he had to "normalize" it for the historically low rates since 2009. (Murray Tr. at 86:1-25.) For the 12-month S&P rate, Murray testified that variable was part of the creation of the model. (Murray Tr. at 90:9-15; 91:5-16 ("that was determined when they did the model").) For the book value to market cap variable, Murray testified that a coefficient of 1 is used "for most companies." (Murray Tr. at 92:7-14.) For the "Log Quarters to Sell Under the 1% Limit Rule," Murray testified that this input was based on the illiquid block of Navidea stock using the 15% assumption and determining how many quarters it would take to sell the stock when daily "dribbl[ing] out" 15%

of the average daily trading volume. (Murray Tr. at 99:4-100:3; 64:10-65:6.)

To the extent there is a dispute concerning the "proper variables to employ" or values to use, however, that is for the "jur[y] to . . . decide." *Joffe*, 2019 WL 4673554, at *14; *Campbell*, 239 F.3d at 186 ("To the extent that ... there [are] gaps or inconsistencies in the [expert's] reasoning, . . . such arguments go to the weight of the evidence, not its admissibility.") Here, especially, as Murray used a peer-reviewed and published methodology, deference should be given to his professional judgment regarding the data inputs. *In re Air Cargo Shipping Servs.*, 2014 WL 7882100, at *8.

In the final pages of his motion, Goldberg refers to a three-page declaration from Orr, with two exhibits, that is completely meritless. [Dkt. No. 257.] Orr's second exhibit listing five specific days of unusually high trading volume when Goldberg potentially could have sold Navidea stock runs afoul of *Duncan,* 775 A.2d at 1019. The exhibit is nothing more than an extension of Orr's inadmissible opinion that Goldberg, as a "savvy investor," would have known when the trading volume spiked and would have sold on those days. (Orr. Decl. at ¶¶ 4, 7, Ex. 2 [Dkt. No. 257].) *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (expert testimony should be excluded "if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith") (internal quotations omitted). And Orr's first exhibit is an incomprehensible and unreadable chart. Nonetheless, Orr asserts that this chart demonstrates that Murray's methodology is unreliable because there were certain days on which Navidea's trading volume exceeded 15% and the share price did not decrease. (Orr. Decl. at ¶¶ 2, 3, Ex. 1 [Dkt. No. 257].) Orr's carefully selected data points, without controlling for any other variables, do not undermine a peer-reviewed, published and generally accepted methodology, they only showcase Orr's lack of understanding of valuation principles.

Orr's veiled attempt to opine on the admissibility of an expert's rebuttal opinions and the reliability of an expert's methods has been rebuffed before and should be rebuffed here. *See Boatman v. Comcast of S., L.P.*, Case No. 3:17-cv-536, 2020 WL 714146, at \*9 (E.D. Tenn. Feb. 12, 2020) ("While Orr is allowed to explain to the jury why he believes Goins's expert report is deficient as proper rebuttal testimony, he cannot testify that Goins fails to render an expert opinion, fails to meet the standards of an expert opinion, or his methods are unreliable.")

Put simply, Murray used a peer-reviewed, published and generally accepted methodology to criticize Orr's report for, among other reasons, failing to consider a DLOM. The methodology and the data inputs used by Murray meet all the indicia of relevance and reliability under Fed. R. Evid. 702 and *Daubert* (and its progeny). There is nothing inadmissible about Murray's DLOM methodology or the data he used.

## II.   Goldberg Does Not Challenge Murray's Rebuttal Opinions On Macrophage Or On Any Other Issue

Goldberg's motion does not refute or challenge Murray's rebuttal opinions on Orr's failure to properly value Macrophage. Nor does Goldberg's motion challenge anything other than Murray's methodology. In fact, the motion is entirely silent on these matters. Murray's rebuttal opinions and testimony on Macrophage and all other matters are thus admissible and relevant unless Orr's direct testimony on those matters is excluded.

## III.   To The Extent Orr's Opinions And Testimony Are Excluded, Murray's Opinions And Testimony To Rebut Those Opinions Also Should Be Excluded

The one thing that Goldberg certainly cannot do is use Murray as his own affirmative damage expert. But that seems to be Goldberg's backup plan. Faced with the prospect of having his expert entirely excluded, Goldberg has asserted that Murray provided a damage analysis under

which Goldberg would be entitled to no less than $2,998,400 in damages. (MOL at 4.)[7] This is a gross misunderstanding of rebuttal testimony and a mischaracterization of Murray's rebuttal report. Goldberg cannot use Murray as his own affirmative expert on damages. Murray's rebuttal opinions are relevant only to the extent necessary to rebut Orr's opinions. *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992) ("The function of rebuttal evidence is to explain or rebut evidence offered by an opponent."). Murray is not proffering direct evidence or a damage analysis, and his opinions cannot be substituted for Orr's opinions. (Murray Rebuttal Report at 1 ("this Rebuttal Report is limited to the analysis and rebuttal of the Expert Report by Terry L. Orr)); *see also Scott*, 315 F.R.D. at 41 ("Chipotle offers Mr. Crandall's testimony as rebuttal evidence, rather than an affirmative analysis.") The purpose of Murray's report is only to show that Orr should have applied a DLOM and one way a DLOM could have been calculated. (Murray Tr. at 43:5-13; Murray Rebuttal Report at 5-12.) Murray's rebuttal opinions have no relevance if Orr's underlying opinions are excluded.

Thus, if the Court grants, in whole or in part, Navidea's and Macrophage's motion to exclude Orr's damage opinions and testimony [Dkt. Nos. 252-254], Murray's related rebuttal testimony would "no longer [be] relevant" and should similarly be excluded. *Fin. Guar. Ins. Co.*, 2020 WL 4251229, at *9; *United States Sec. & Exch. Comm'n v. Mudd*, Case No. 11-cv-9202, 2016 WL 2593980, at *7 n.14 (S.D.N.Y. May 4, 2016) ("Because [expert's] reports and testimony have been excluded in their entirety, [the] rebuttal is no longer necessary or relevant."); *Luitpold Pharm., Inc.,* 2015 WL 5459662, at *9 ("As the Court has precluded [plaintiff's expert], there is no longer any reason for [the rebuttal experts] to testify.").

---

[7] Likewise, Orr incorrectly states that "Murray argues that Dr. Goldberg should have received two transfers of Navidea stock." (Orr. Aff. at ¶ 4 [Dkt. No. 257]). While Orr felt comfortable opining on legal arguments, Murray did not. Murray merely used dates that were based on Goldberg's deposition. Murray made no statement that Goldberg was actually entitled to the stock – a legal question that the Court will ultimately determine.

## <u>CONCLUSION</u>

Accordingly, for the reasons set forth herein, Goldberg's Motion to Exclude the Expert Testimony of William F. Murray should be denied, provided, however, that the Court should exclude Murray's rebuttal opinions and testimony to the extent the Court grants Navidea's and Macrophage's motion to exclude the opinions and testimony of Terry L. Orr.

Date:   March 18, 2022
        New York, New York

Respectfully submitted,

/s/ Barry M. Kazan
Barry M. Kazan, Esq.
Marc B. Schlesinger, Esq.
Mintz & Gold LLP
600 Third Avenue, 25th Floor
New York, New York 10016
Phone: (212) 696-4848
Fax:    (212) 696-1231
kazan@mintzandgold.com
schlesinger@mintzandgold.com

-and-

Karim Sabbidine, Esq.
THOMPSON HINE LLP
335 Madison Avenue, 12th Fl.
New York, New York 10017
Phone: (212) 344-3921
Fax:    (212) 344-6101
karim.sabbidine@thompsonhine.com

*Attorneys for Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. and Third-Party Defendant Macrophage Therapeutics, Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2022, I caused to be served on counsel of record, electronically via the Court's electronic filing system, a true and correct copy of **Plaintiff/Counterclaim-Defendant Navidea Biopharmaceuticals, Inc.'s and Third-Party Defendant Macrophage Therapeutics, Inc.'s Opposition To Michael M. Goldberg's Partial Motion _In Limine_ To Strike Certain Opinions Of Purported Expert William F. Murray Proffered By Navidea Biopharmaceuticals, Inc**.

/s/ Barry M. Kazan
Barry M. Kazan