Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Tel:  (914) 402-5683
GZimmer@GZimmerLegal.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Navidea Biopharmaceuticals Litigation | Case No.: 1:19-cv-01578-VEC |

**MEMORANDUM OF LAW OF DEFENDANT/COUNTERCLAIM PLAINTIFF/THIRD-PARTY PLAINTIFF DR. MICHAEL M. GOLDBERG IN OPPOSITION TO MOTION OF PLAINTIFF/COUNTERCLAIM DEFENDANT NAVIDEA BIOPHARMACEUTICALS, INC. AND THIRD-PARTY DEFENDANT MACROPHAGE THERAPEUTICS, INC. TO EXCLUDE EXPERT TESTIMONY OF TERRY L. ORR**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT AND BACKGROUND FACTS ............................................... 1

ARGUMENT ......................................................................................................................... 7

  I  APPLICABLE LEGAL STANDARD ................................................................................ 7

  II  MR. ORR'S PROPOSED TESTIMONY CONCERNING REGULATION D IS APPROPRIATE EXPERT TESTIMONY AND HE IS FULLY QUALIFIED TO GIVE IT ......................................................................................................................................... 9

    A.  Mr. Orr Is Fully Qualified To Provide The Proffered Specialized Knowledge Regarding Regulation D ........................................................... 10

    B.  The Proffered Testimony Regarding Regulation D Is Relevant ...................................... 12

    C.  The Proffered Testimony Regarding Regulation D Does Not Include Legal Conclusions ........................................................... 14

  III  MR. ORR'S PROPOSED TESTIMONY CONCERNING ANTI-DILUTION CLAUSES IS APPROPRIATE EXPERT TESTIMONY AND HE IS FULLY QUALIFIED TO GIVE IT ............................................................................................................................. 15

    A.  Mr. Orr Is Fully Qualified To Provide The Proffered Specialized Knowledge Regarding Anti-Dilution Clauses ............................................... 16

    B.  The Proffered Testimony Regarding Anti-Dilution Provisions Is Relevant .................... 16

    C.  The Proffered Testimony Regarding Anti-Dilution Clauses Does Not Include Legal Conclusions ........................................... 17

  IV. MR. ORR'S PROPOSED TESTIMONY CONCERNING DAMAGES IN CONNECTION WITH NAVIDEA SHARES IS APPROPRIATE ................................. 18

    A.  Mr. Orr Is Fully Qualified To Provide The Proffered Valuations For Navidea Shares ........................................................................ 18

    B.  Mr. Orr's Proffered Testimony Concerning The Value Of Pre-Split Navidea Shares Is Appropriate ........................................................ 18

    C.  Mr. Orr's Proffered Testimony Concerning The Value Of Post-Split Navidea Shares Is Appropriate ....................................................... 23

V.. MR. ORR'S PROPOSED TESTIMONY CONCERNING DAMAGES IN CONNECTION WITH MACROPHAGE SHARES IS APPROPRIATE ........................................................................ 24

CONCLUSION ................................................................................................................... 17

## **TABLE OF AUTHORITIES**

**<u>Cases</u>**                                                              **<u>Page</u>**

*523 IP LLC v. CureMD.Com*,
   48 F. Supp. 3d 600 (S.D.N.Y. 2014) ..................................................... 12

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256, 267 (2d Cir. 2002) ...................................................... 7, 8

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
   222 F. Supp. 2d 423 (2d Cir. 2002) ............................................ *passim*

*Borawick v. Shay*,
   68 F.3d 597 (2d Cir. 1995) ...................................................................... 9

*Boucher v. United States Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) ......................................................................... 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ........... *passim*

*Dionisi v. DeCampli*,
   1995 Del. Ch. LEXIS 88 (Del. Ch. June 28, 1995) ............................ 21

*Duncan v. TheraTx, Inc.*,
   775 A.2d 1019 (Del. 2001) .................................................................... 20

*Fin. Guar. Ins. Co. V. Putnam Advisory Co., LLC*,
   No 12-cv-7372, 2020 WL 4251229 (S.D.N.Y. Feb. 19, 2020) ........... 11

*Frye v. United States*,
   293 F.2d 1013 (D.C. Cir. 1923) ..................................................... *passim*

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
   855 A.2d 1059 (Del. Ch. 2003) ............................................................ 20

*Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*,
   2010 Del. Ch. LEXIS 15 (Del. Ch. Jan 29, 2010) ................................ 20

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................................. 12

*McCullock v. H.B. Fuller Co.*,
   61 F.3d 1038 (2d Cir. 1995) .................................................................... 9

*Paradee v. Paradee*,
   2010 Del. Ch. LEXIS 212 (Del. Ch. Oct. 5, 2010) .............................. 20

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. Apr. 15, 2016) ............................................. 15

*SIGA Techs., Inc. v. Pharmathene, Inc.*,
   132 A.2d 1108 (Del. 2015) .................................................................... 19

*Total Care Physicians, P.A. v. O'Hara*,
    2003 Del. Super. LEXIS 261 (Del. Ch. July 10, 2003) ........................................................ 21

*Town of Southampton v. Suffolk County*,
    367 Fed. Appx. 234, 2010 U.S. App. LEXIS 3941 (2d Cir. Feb. 25, 2010) ........................... 8

*United States v. Cohen*,
    887 F.3d 77 (1st Cir. 2018) .................................................................................. 10, 13, 14, 16

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007) ..................................................................................................... 7

## **Statutes**

Fed. R. Evid. 401 ........................................................................................................................ 1

Fed. R. Evid. 702 ........................................................................................................................ 1

Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Dr. Michael M. Goldberg M.D. ("Dr. Goldberg") respectfully submits this memorandum of law in opposition to the motion (the "Motion") of Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") and Third-Party Defendant Macrophage Therapeutics, Inc. ("Macrophage" and, together with Navidea, "Defendants") to exclude the expert testimony of Terry L. Orr.

## PRELIMINARY STATEMENT AND BACKGROUND FACTS

In their moving Memorandum of Law (the "Moving Memo"), Defendants do not raise any legitimate arguments in support of their effort to exclude the expert testimony of Terry L. Orr, the expert retained by Dr. Goldberg in this action. (*See generally*, Moving Memo, Dkt. No. 254.) Rather, they raise straw arguments, mischaracterize both the nature of the testimony Mr. Orr intends to present and the holdings in the cases cited in the Moving Memo. (*Id.*) Mr. Orr is a well-qualified expert witness on the subject matters he intends to address, as is demonstrated in the report he produced in this action (the "Orr Report"), his *curriculum vitae*, and as set forth herein. (*See generally*, Expert Report of Terry L. Orr, dated September 30, 2021, a true and correct copy of which is annexed to the Declaration of Gregory Zimmer, Esq. dated March 18, 2022 (the "Zimmer Decl.") as Exhibit A.) The topics he intends to address – the attributes of shares of publicly traded companies issued pursuant to Regulation D of the Securities Act of 1933 ("Regulation D"), anti-dilution provisions commonly employed in contracts contemplating the delivery of specific numbers of publicly traded shares at a future date, and damages suffered by Dr. Goldberg based on Defendants' failure to issue to Dr. Goldberg shares of Navidea and Macrophage as required by the agreement between Dr. Goldberg, Navidea and Macrophage dated August 14, 2018 (the "August 14th Agreement") – are topics put squarely at issue by the claims asserted by Navidea against Dr. Goldberg and the counterclaims and third-party claims

asserted against Defendants by Dr. Goldberg.  And the methodologies used by Orr in his valuation opinions easily satisfy the liberal admissibility standards developed under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny.

One of the primary claims by Dr. Goldberg in this action is that Navidea breached the terms of the August 14th Agreement by failing to issue to him 23.5 million shares of Navidea stock pursuant to Regulation D as provided for in the agreement.  (*See* Goldberg Counterclaims and Third-Party Complaint, Dkt. No. 31 (the "Counterclaims") ¶¶ 2, 51, Ex. A at 1.)  Dr. Goldberg alleges that although Navidea purported to issue certain shares of Navidea stock to him they were not compliant with Regulation D or the August 14th Agreement.  (*See* Counterclaims ¶¶ 3, 64.)  Mr. Orr intends to educate the finder of fact regarding the attributes of shares issued pursuant to Regulation D.  (*See* Orr Report at 4-13; Declaration of Terry L. Orr, dated March 18, 2022 (the "Orr Decl."), submitted herewith, at ¶¶ 5-12.)  This knowledge, which is specialized in nature and not within the knowledge of the average juror, is directly relevant to Dr. Goldberg's claim.

Mr. Orr *does not* intend to offer legal opinions regarding whether the shares purportedly issued by Navidea complied with Regulation D, whether they complied with the August 14th Agreement, nor whether or not Navidea is excused from its performance.  (*See* Orr Decl. ¶ 11-12.)  Dr. Goldberg's attorneys will make those arguments based on the evidence presented at trial, one piece of which will be the specialized knowledge regarding the attributes of shares issued pursuant to Regulation D provided by Mr. Orr.  This information may also be relevant to the calculation of damages, another topic upon which Mr. Orr intends to present to the jury.

Navidea has asked the Court to issue a declaration of the parties' respective rights under the August 14th Agreement. (*See* First Amended Complaint, Dkt. No. 15 (the "Complaint") at 23 (Requested Relief subparagraph (c).) Navidea alleges that it should be excused from performance of certain of its obligations under the August 14th Agreement. (*See* Complaint ¶ 116-117.) However, Dr. Goldberg will argue that one of the rights that should be declared by the Court is his right to have 23.5 million Navidea shares issued to him pursuant to Regulation D because those shares were never issued to him. Since the August 14th Agreement was executed Navidea effected a 20 for 1 reverse stock split. (*See* Orr Report at 13, n. 37.) It is anticipated that Navidea will argue that if Dr. Goldberg is successful Navidea should, at most, be required to issue to Dr. Goldberg pursuant to Regulation D only the equivalent of 23.5 million pre-split shares. Dr. Goldberg's position is that because the August 14th Agreement requires the delivery of a specific number of shares and does not contain any provision providing for the adjustment of that number based on any stock split or other event that might occur after its execution, Dr. Goldberg is entitled to a declaration that Navidea must issue him 23.5 million current Navidea shares pursuant to Regulation D at the time of judgment. Mr. Orr intends to provide the jury with specialized knowledge regarding anti-dilution provisions commonly incorporated into commercial contracts calling for the delivery of a specific number of shares of stock at a later date. (*See* Orr Report at 13-15; Orr Decl. ¶¶ 14-15.) This specialized knowledge is outside the knowledge of the average juror and is directly relevant to Dr. Goldberg's presentation to the finder of fact regarding the declaration of the parties' rights sought by Navidea in its Complaint.

With respect to Dr. Goldberg's claims for damages based on Navidea's breach of the August 14th Agreement by failing to issue to him 23.5 million Navidea shares as and when required by the august, Mr. Orr intends to present two damages calculations. As set forth above,

Dr. Goldberg believes that he may be successful in convincing the finder of fact that he is entitled to 23.5 million post-split shares (meaning 23.5 million current shares at the time of judgment) and that if a damages award is issued, he should be awarded the value of such shares. Mr. Orr intends to present the jury with a methodology for calculating the value of those shares. As set forth more fully in the Orr Report at 16-17 and the Orr Decl. ¶¶ 22-25, Mr. Orr believes that the appropriate time to calculate the value of those shares is at the time of a judgment. Accordingly, he presents a simple, reliable methodology for doing so based on information (including the then-current value of Navidea's shares) that will be readily (and publicly) available at that time.  (*See* Orr Report at 16-17; Orr Decl. ¶¶ 22-25.)  Defendants argue that his methodology is "speculative" because it incorporates specific inputs that while not known at this time will be known and available at the time of judgment.  (*See* Moving Memo at 19-21.) Defendants' arguments completely misses the mark.  Mr. Orr does not "speculate" as to whether a judgment in Dr. Goldberg's favor would entitle him to damages based on the value of 23.5 million post-split shares to Dr. Goldberg; he merely explains how such damages should be calculated *if* Dr. Goldberg is awarded such damages.  (*See* Orr Report at 16-17; Orr Decl. ¶¶ 22-25.)  Nor does he "speculate" about Navidea's future stock price; he merely instructs that the closing stock price on the day before a judgment is entered (a price that will be immediately and publicly available at that time) should be used in the calculation.  (*Id.*)  Notably, Defendants' expert, Mr. Murray, does not dispute Mr. Orr's methodology.  Rather, he simply argues that Mr. Murray's unreliable, proven incorrect "blockage discount" formula should be applied once the calculation is complete.  (*See* Expert Rebuttal Report of William F. Murray, dated November 15, 2021 (the "Murray Report"), a true and correct copy of which is annexed to the Zimmer Decl. as

Exhibit B.)  Given the nature of Dr. Goldberg's claim, the suggestion that a methodology for valuing his damages claim is based on "lacks probative value" is absurd.

Because the finder of fact may determine that Navidea breached the August 14th Agreement by failing to issue the 23.5 million Navidea shares as and when required by the agreement, but disagree with Dr. Goldberg that he is entitled to 23.5 million post-split shares or their value as a remedy, Mr. Orr also intends to present a calculation of the damages Dr. Goldberg suffered as a result of his inability to trade the 18.5 million Navidea shares purportedly issued to him at the times he should have been able to trade them had Navidea complied with the August 14th Agreement, as well as the 5 million shares that undisputedly were never issued to him.  (*See* Orr Report at 17-23; Orr Decl. ¶ 26.)

Mr. Murray agrees with Mr. Orr that the proper way to value such damages is to select an appropriate time to value the shares and multiply the number of shares by the closing market price of Navidea's stock at that time.  (*See* Murray Report at 6; deposition transcript of William F. Murray, December 6, 2021, a true and correct copy of which is annexed to the Zimmer Decl. as Exhibit C at 140:20-141:1.)  Not surprisingly, Navidea argues that once the actual value of damages is calculated in this fashion, under *every* possible set of circumstances it must be reduced by applying what Navidea calls a "blockage discount" purportedly intended to account for the effect of selling "large blocks" of stock into the market.  (*See* Moving Memo at 21.) Navidea cites absolutely no authority for this proposition and the authority it does cite regarding damages calculations do not apply any such reduction.  (*Id.*)  Moreover, the need for a "blockage discount" is refuted by Navidea's own trading history, and the only methodology Navidea and its expert, Mr. Murry, propose to use calculate a "blockage discount" in this case produces results directly contrary to Navidea's actual trading history and is inherently unreliable and the subject

of a *Daubert* motion by Dr. Goldberg in this action.  (*See* Dr. Goldberg's *Daubert* Motion

seeking to strike Mr. Murray's blockage discount analysis, Dkt. No. 255 and supporting

documents, Dkt. Nos. 256-258.)

      Finally, Mr. Orr intends to present to the finder of fact a methodology and range of value

for the shares of Macrophage that were supposed to be issued to Dr. Goldberg pursuant to the

August 14th Agreement, but which undisputedly were never issued to him.  (*See* August 14th

Agreement, a true and correct copy of which is annexed to the Zimmer Decl. at Exhibit D at 1;

Counterclaims ¶¶ 52, 79; Answer to Counterclaims, Dkt. No. 39 ¶ 79; Orr Report at 24-25; Orr

Decl. ¶ 27.)  Mr. Orr's valuation presentation relies upon one of the valuation methodologies

acknowledged by Mr. Murray to be a valid valuation methodology – analysis of

contemporaneous offers to purchase Macrophage stock.  (*See* Murray Depo. at 171:11-173:2.)  It

is based upon representations made by Navidea to the New York Stock Exchange ("NYSE")

under circumstances that Mr. Murray testified present indicia of truth (*i.e.* that they were made to

regulators under conditions that could imposed penalties on the company and the signer for

submitting false statements).  (*See* Orr Report at 24-25; Orr Decl. ¶ 27; Murray Depo. at 177:7-

17.)  Navidea's deponents also acknowledged that submission of false statements to the NYSE

can impose significant penalties on the company and its officers and employees.  (*See* Zimmer

Decl. ¶ 6.)  Defendants' argument that the range of values presented by Mr. Orr is "speculative"

because it is based on inferences drawn from Defendants' own statements to regulators is

misguided.  The inferences drawn by Mr. Orr are well founded based on the limited facts

concerning these offers made available to Dr. Goldberg by Defendants through discovery.  (*See*

Orr Decl. ¶ 27.)  Any deficit in definitive facts is the result of Defendants' own (at least

purported) inability to recall specific details of potential transactions that were reported to

regulators and were essential to Navidea's survival as a publicly traded company.  The law is

clear that were a plaintiff establishes that damages occurred, the amount of damages need not be

proven with specificity, especially if the plaintiff's inability to do so is caused by the conduct of

the defendant.

For these reasons, as set forth more fully below, the Court should deny the Motion in its

entirety.

## **ARGUMENT**

## I.     **APPLICABLE LEGAL STANDARD**

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "Rule 702 embodies a more liberal standard of admissibility for expert

opinions than did *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923)."  *United States v.*

*Williams*, 506 F.3d 151, 161-162 (2d Cir. 2007) (citing *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993) (holding that the *Frye* test of general

acceptance in the scientific community was superseded by the Federal Rules); *Amorgianos v.*

*Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (observing departure, under

Federal Rule, from the *Frye* standard)).

An expert witness's testimony should be admitted as long as it is both relevant and reliable. *Daubert*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469. "*Daubert* contemplates 'liberal admissibility standards.'" *Town of Southampton v. Suffolk County*, 367 Fed. Appx. 234, 235, 2010 U.S. App. LEXIS 3941, *2 (2d Cir. Feb. 25, 2010) (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

The Second Circuit has held that:

> when interpreting the requirements under *Daubert* and its progeny, the Second Circuit has noted that "although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony."

*Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 487 (2d Cir. 2002) (quoting *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (internal quotations and citations omitted).

> Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. . . . Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment . . . and likewise to grant summary judgment . . . These conventional devices, rather than wholesale exclusion under an uncompromising "general acceptance" test, are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469, 484-485 (1993).

The Second Circuit has specifically instructed that:

> *Daubert* allows for the admissibility of scientific evidence, even if not generally accepted in the relevant scientific community, provided its reliability has independent support. Finally, the Court expressed its faith in the power of the adversary system to test 'shaky but admissible' evidence, *Daubert*, 113 S. Ct. at

2798, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable.

*Borawick v. Shay*, 68 F.3d 597, 610, 1995 U.S. App. LEXIS 29707, *45 (2d Cir. 1995).

"It is not required . . . that an expert categorically exclude each and every possible alternative cause in order to render the proffered testimony admissible." *Astra Aktiebolag*, 222 F. Supp. 2d at 488 (citing *Zuchowicz v. United States*, 140 F.3d 381, 385-87 (2d Cir. 1998)). "Although peer review and publication of an expert's technique enhance its reliability, the mere fact that an expert's findings have not been peer-reviewed or published is not a sufficient reason to exclude it." *Astra Aktiebolag*, 222 F. Supp. 2d at 489-490 (internal citations omitted). Where the expert has "developed the procedure to handle a new problem unique to this litigation," lack of prior publication is neither "noteworthy or indicative of a lack of reliability." *Astra Aktiebolag*, 222 F. Supp. 2d at 494

"Disputes as to the strength of his credentials, faults in his use of . . . methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) (quoted by *Astra Aktiebolag*, 222 F. Supp. 2d at 494.

The specialized knowledge and valuation opinions expressed by Mr. Orr fall well within the bounds of reliability that govern admissibility under the *Daubert* standard.

## II. MR. ORR'S PROPOSED TESTIMONY CONCERNING REGULATION D IS APPROPRIATE EXPERT TESTIMONY AND HE IS FULLY QUALIFIED TO GIVE IT

Expert testimony is admissible if it is relevant, "which means the evidence must have the 'tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Astra Aktiebolag*, 222 F. Supp. 2d at 488 (2d Cir. 2002) (citing Fed. R. Evid. 401; *Daubert*, 509 U.S. at 587).

9

Expert testimony providing specialized knowledge to the finder of fact concerning the requirements and operation of industry-specific rules should generally be admitted, subject to the liberal admissibility of *Daubert*. *See*, *e.g.*, *United States v. Cohen*, 887 F.3d 77, 85 (1st Cir. 2018) ("The expert testimony at issue explained to the jury that the rules governing IOLTA accounts permit transactions involving third-party funds, and that such third-party transactions are typical for IOLTA accounts.").

Mr. Orr intends to present specialized knowledge regarding the attributes of shares of stock issued pursuant to Regulation D and his opinion as to whether certain legends placed on shares of Navidea stock purportedly issued to Dr. Goldberg by Navidea pursuant to the August 14th Agreement are authorized or required by Regulation D. As set forth below, Mr. Orr is qualified to present this specialized knowledge, the knowledge is relevant and necessary to determination of the issues that will be presented in this case, and it does not constitute an improper legal opinion.

### A. Mr. Orr Is Fully Qualified To Provide The Proffered Specialized Knowledge Regarding Regulation D

When considering whether an expert is qualified to provide specialized knowledge to the finder of fact, "the ultimate issue for the court to determine is whether the witness has 'specialized knowledge' through 'experience, training or education' as to the contents of his proposed expert testimony." *Astra Aktiebolag*, 222 F. Supp. 2d at 489 (citing Fed. R. Evid. 702).

Mr. Orr has ample experience, training and education concerning Regulation D to provide specialized knowledge to the finder of fact concerning the attributes of shares issued pursuant to Regulation D. (*See* Orr Decl. ¶ 6.) As an auditor for 27 years and an audit partner for a majority of those years, Orr was involved in issuing audit or review reports on financial statements that were included in SEC filings, including Regulation D filings. (*Id.*) A

responsibility the auditor has when financial statements that the auditor has reviewed or audited accompany an SEC filing, is to verify that the information in the filing is congruent with what is disclosed in the accompanying financial statements.  (*Id.*)  Therefore, Orr was required to maintain an understanding of SEC filing requirements and disclosures to ensure what was reported in the SEC filing was congruent with what was reported in the accompanying financial statements that he audited or reviewed.  (*Id.*)  As an auditor he guarded against financial statements that he audited or reviewed accompanying an SEC filing that was false or misleading.  (*Id.*)  Therefore, Orr studied and took continuing education courses to stay current on SEC guidelines and requirements.  (*Id.*)  Additionally, he was a second partner reviewer of financial statements that were included in SEC filings.  (*Id.*)  The second partner's responsibility was to provide an objective review of the congruency of disclosures in the financial statements and the SEC filing and to provide additional assurance that the information in the SEC filing was not false or misleading.  (*Id.*)  In order to perform those functions, Orr was required to become familiar with Regulation D and the restrictions it placed on securities issued pursuant to it and to update and refresh his knowledge of Regulation D periodically.  (*Id.*)

The cases cited by Navidea in support of their argument that Mr. Orr is not qualified to provide specialized knowledge concerning Regulation D and related regulations and rules are completely inapposite.  In *Fin. Guar. Ins. Co. V. Putnam Advisory Co., LLC*, No 12-cv-7372, 2020 WL 4251229 (S.D.N.Y. Feb. 19, 2020), the court considered whether a proffered expert witness who had never worked at a bond rating agency could opine on a highly technical calculation of "attachment points" for CDO products.  The Court held that although the proffered expert had extensive experience in *obtaining* credit ratings *from* ratings agencies (which were based in part on the "attachment points" calculated by the ratings agencies), he had never done

…

such calculations as part of his work or experience.  Given the highly technical nature of the calculations, the Court found the proffered expert not qualified.

*523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014), held that a proffered expert with no training in software engineering, computer programming, systems engineering or similar fields was not qualified to testify as to how a specific software product may have infringed a patent.  The court held that although the expert understood the use of the technology, nothing in his qualifications indicated that he had any experience with the actual software technologies available to effectuate the apparatus at issue.

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007), merely held that a proffered expert's "expertise in colorimetry does not establish his expertise as a statistician" especially since the proffered expert admitted at deposition that he was not an expert in statistics.

Here, Mr. Orr simply intends to provide the trier of fact with specialized knowledge concerning the attributes of stocks issued pursuant to Regulation D, attributes that Mr. Orr has regularly worked with throughout his career.  He clearly "has 'specialized knowledge' through 'experience, training or education' as to the contents of his proposed expert testimony." *Astra Aktiebolag*, 222 F. Supp. 2d at 489 (citing Fed. R. Evid. 702).

**B.  <u>The Proffered Testimony Regarding Regulation D Is Relevant</u>**

As set forth above, Mr. Orr intends to present specialized knowledge concerning the attributes of shares of stock issued pursuant to Regulation D.  This will include the forms of restrictive legends that one would expect to see on such shares.  He will also offer his opinion as to whether certain legends placed on shares purportedly issued to Dr. Goldberg by Navidea pursuant to the August 14th Agreement were authorized or required by Regulation D.  (*See* Orr Report at 4-13; Orr Decl. ¶¶ 5-13.)

Dr. Goldberg intends to prove that Navidea breached the August 14th Agreement by failing to issue 23.5 million shares of Navidea stock pursuant to Regulation D as required by the August 14th Agreement.  He intends to prove that those shares that were purportedly issued to him by Navidea did not comply with Regulation D or the August 14th Agreement because they contained restrictive legends that were neither authorized nor required by Regulation D nor permitted by the August 14th Agreement.  Dr. Goldberg respectfully submits that the jury in this action cannot reasonably be expected to possess the specialized knowledge regarding the attributes of shares issued pursuant to Regulation D sufficient to decide the issued that will be presented to it by Dr. Goldberg at trial.  To determine whether shares of Navidea stock purportedly issued to him complied with Regulation D, the jury will be required to consider the attributes of the shares purportedly issued to Dr. Goldberg and determine whether they comply with Regulation D.  Doing so will be impossible without the specialized knowledge concerning the attributes of shares issued pursuant to Regulation D that Mr. Orr intends to present.  This information is unquestionably relevant to the ultimate determination of this claim.  *See*, *e.g.*, *Cohen*, 887 F.3d at 85 (holding that expert testimony regarding rules applicable to claims made in case admissible as relevant).

Mr. Orr also intends to present his opinion as to whether certain legends placed on shares purportedly issued to Dr. Goldberg by Navidea were authorized or required by Regulation D. Dr. Goldberg intends to argue that the placement of specific legends on shares purportedly issued to him pursuant to the August 14th Agreement violated the terms of the August 14th Agreement. Mr. Orr's opinion whether the legends were authorized or required by Regulation D are relevant because the August 14th Agreement requires that the Navidea shares issued pursuant to it be issued "pursuant to Regulation D."  (*See* August 14th Agreement, a true and correct copy of

which is annexed to the Zimmer Decl. as Exhibit D, at 1.)  Thus, if Regulation D did authorize or require that they be affixed, the issuance of shares with the legends affixed would, in fact, be consistent with the August 14th Agreement.  Whether the legends are authorized or required by Regulation D is specialized knowledge that the average juror would not be expected to possess. Although Dr. Goldberg does not intend to argue that Regulation D prohibited the placement of the legends on the shares, he does intend that the August 14th Agreement itself prohibited their inclusion.

Mr. Orr's opinions will address one potential justification for including the legends on the shares – the clause in the August 14th Agreement requiring that they be issued pursuant to Regulation D.  Simply put, specialized knowledge concerning the requirements of Regulation D and the characteristics of shares issued pursuant to Regulation D is required to resolve these claims asserted by Dr. Goldberg.  The specialized knowledge therefore is relevant to this action. This knowledge is specialized and could not be expected to be within the knowledge of the average juror.  Therefore, it is an appropriate subject for expert testimony.  *See Cohen*, 887 F.3d at 85.

### C.  The Proffered Testimony Regarding Regulation D Does Not Include Legal Conclusions

Navidea argues that Mr. Orr's testimony regarding Regulation D should be excluded because it contains "purely legal conclusions."  (*See* Moving Memo at 17-18.)  This is false.  Mr. Orr intends to provide specialized knowledge regarding the restrictions imposed on stocks by Regulation D for holders of the shares in Dr. Goldberg's circumstances and to opine on whether certain legends affixed to Navidea shares purportedly issued to Dr. Goldberg by Navidea were authorized or required by Regulation D.  Navidea attempts to mischaracterize background information regarding Regulation D included in Mr. Orr's report to support his presentation as

legal conclusions.  They are not.  The requirements and operation of Regulation D is not a legal

conclusion.  It is specialized knowledge that the finder of fact may use to decide issues of fact,

including *whether* shares issued to Dr. Goldberg were properly issued pursuant to Regulation D.

The knowledge and opinions conveyed by Mr. Orr may assist the trier of fact (if they are

credited) but they are not themselves improper legal opinions.[1]

      The cases cited by Defendants are not to the contrary.  *United States v. Lumpkin*, 192

F.3d 280 (2d Cir. 1999) excluded a proffered expert who would opine on whether a witness's

confidence in presentation correlated with accuracy.  The court found this would usurp the jury's

fundamental role in assessing credibility.  *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33

(S.D.N.Y. Apr. 15, 2016) did not strike any of the expert's opinions.  Rather, it ruled that the

expert would not be permitted to make certain statements regarding the implication of those

opinions on the ultimate issues in the case.  If the Court feels that such limiting instructions are

necessary with regard to Mr. Orr's proposed testimony it may do likewise, however, there is

nothing in the *Scott* decision that would justify striking Mr. Orr's specialized knowledge or

opinions.

## III.    MR. ORR'S PROPOSED TESTIMONY CONCERNING ANTI-DILUTION CLAUSES IS APPROPRIATE EXPERT TESTIMONY AND HE IS FULLY QUALIFIED TO GIVE IT

      As with Mr. Orr's proposed testimony concerning Regulation D, Mr. Orr's proposed

testimony concerning anti-dilution clauses and their use in commercial contracts is relevant to

this action and Mr. Orr is qualified through experience training and education to provide such

specialized knowledge to the finder of fact.  *See Astra Aktiebolag*, 222 F. Supp. 2d at 488 (2d

---

[1]     If the Court believes that certain aspects of Mr. Orr's proffered testimony crossed the boundary of specialized knowledge and opinion into the realm of legal conclusions that can easily be addressed through limiting instructions or through restrictions on specific statements by Mr. Orr.  It is not a basis to exclude his testimony on these topics in their entirety.  *See, e.g.*, *Scott*, 315 F.R.D. at 48-49.

Cir. 2002) (citing Fed. R. Evid. 401; *Daubert*, 509 U.S. at 587), *Cohen*, 887 F.3d at 85 (1st Cir. 2018).

### A.  Mr. Orr Is Fully Qualified To Provide The Proffered Specialized Knowledge Regarding Anti-Dilution Clauses

Mr. Murray is qualified by 'experience, training or education' as to the contents of his proposed expert testimony" to provide specialized knowledge to the finder of fact concerning anti-dilution provisions that are commonly included in contracts calling for the delivery of specific numbers of shares of stock at a future date.  *See Astra Aktiebolag*, 222 F. Supp. 2d at 489 (citing Fed. R. Evid. 702); *see also* Orr Decl. ¶ 14.)

### B.  The Proffered Testimony Regarding Anti-Dilution Provisions Is Relevant

In its Complaint Navidea requests that the Court issue a declaration of the rights of the parties under the August 14th Agreement.  The Auguat 14th Agreement provides that Navidea shall issue to Dr. Goldberg 23.5 million shares of Navidea stock "pursuant to Regulation D."  Dr. Goldberg intends to prove that any Navidea shares purportedly issued to Dr. Goldberg by Navidea pursuant to the August 14th Agreement did not comply with the requirements of Regulation D or the August 14th Agreement and therefore did not constitute any degree of performance under the agreement's provisions concerning the issuance of Navidea stock.  Dr. Goldberg therefore intends to argue that the Court's declaration of the parties' rights under the August 14th Agreement should include a declaration that Navidea must issue to Dr. Goldberg 23.5 million shares of Navidea stock pursuant to Regulation D.

Navidea implemented a reverse stock split of twenty shares to one in April 2019. Because, if Dr. Goldberg is successful in this claim, he will receive the 23.5 million Navidea shares (or their value) only on or after the date a Judgment is entered in this action, he intends to argue that such shares should be issued to him in the form of 23.5 million current Navidea shares

(*i.e.* without adjustment for the reverse split).  The basis of Dr. Goldberg's argument in this regard is the fact that while companies entering into contracts requiring the delivery of a certain number of shares of stock at a future time can, and often do include anti-dilution provisions in their contracts to provide for (and protect themselves against the effects of) such stock splits the August 14th Agreement does not contain such a provision.

Mr. Orr intends to provide the finder of fact with specialized knowledge regarding standard contractual anti-dilution clauses that parties routinely incorporate into contracts requiring the delivery of a specific number of shares of stock to protect themselves against future stock splits or other events.  (*See* Orr Report at 13-16; Orr Decl. ¶¶ 14-15.)  The existence and purpose of such clauses is specialized knowledge that the average juror would not be expected to be aware of.  However, the existence and routine use of such clauses, combined with their absence in the August 14th Agreement, is probative of whether the parties intended the 23.5 million shares that were to be issued to Dr. Goldberg to be adjusted for stock splits after the date of the August 14th Agreement.  Thus, it is highly relevant to Dr. Goldberg's claims.

### C.  The Proffered Testimony Regarding Anti-Dilution Clauses Does Not Include Legal Conclusions

Defendants' latch onto a single word in the heading of the section of the Orr Report regarding anti-dilution clauses and argue the Mr. Orr is offering an improper opinion that Navidea "intended" to effectuate a reverse stock split at the time the August 14th Agreement was entered.  This is false.  A review of the content of the Orr Report makes clear that Mr. Orr intends to provide the finder of fact with specialized knowledge regarding the availability, use and effect of anti-dilution clauses.  (*See* Orr Report at 13-16.)  Mr. Orr does note that Navidea was seeking shareholder approval for a reverse stock split at the time the August 14th Agreement was negotiated and executed for the reverse stock split that it eventually implemented because he

17

opines that a contracting party that was specifically contemplating such a stock split would be expected to negotiate to include an anti-dilution provision into its contract if it did not want to bear the consequences of the split.  (*See* Orr Report at 15.)  However, he did not intend to offer any opinion as to Navidea's intent to actually effectuate such a stock split.  (*See* Orr Decl. ¶¶ 14-15).  To the extent the Orr Report implies that he did intend to offer such an opinion, Mr. Orr has clarified that he will not do so when presenting his testimony.  (*See* Orr Decl. ¶ 15.)

## IV.   MR. ORR'S PROPOSED TESTIMONY CONCERNING DAMAGES IN CONNECTION WITH NAVIDEA SHARES IS APPROPRIATE

### A.  Mr. Orr Is Fully Qualified To Provide The Proffered Valuations For Navidea Shares

Mr. Orr has extensive qualifications as an accountant and has utilized valuation methodologies extensively in his work.  He has received extensive training in valuation principles and has continued that training through continuing education.  He has also served as an expert witness on the issue of valuations in a number of cases.  (*See* Orr Report at 1, Appxs. 1 and 2; Orr Decl. ¶¶ 16-21.)

### B.  Mr. Orr's Proffered Testimony Concerning The Value Of Pre-Split Navidea Shares Is Appropriate

Mr. Orr also presents a valuation of damages incurred by Dr. Goldberg based on the assumption that calculations would involve pre-split shares of Navidea, not post-split shares.  In doing so, he presents three potential valuations.  First, he presents a valuation as of the first date the Navidea shares purportedly issued to Dr. Goldberg would have become tradeable if the trading restrictions authorized by the August 14th Agreement had been properly removed.  Second, he identifies a specific time-frame of several weeks during the time frame in which the shares were rendered incapable of being traded by legends placed on the shares which Dr. Goldberg intends to argue were improperly placed and retained on the shares, but Navidea shares

traded at historically high volumes, and provides a weighted average valuation based on that time period.  Finally, Mr. Orr offers a "current" valuation of the shares at the time immediately prior to the issuance of his report.[2]  Mr. Orr then opines that because of Dr. Goldberg's experience as an investor and the fact that he carefully follows Navidea's business and has extensive investment and practical experience in the fields in which Navidea operates, the valuation based on the time period of historic trading volume in Navidea represents the best estimate of the damages suffered by Dr. Goldberg as a result of Navidea's continued refusal to remove restrictive legends and permit Dr. Goldberg to trade the Navidea shares purportedly issued to him almost three and a half years ago, in November 2018.  (*See* Orr Report at 17-24.)[3]

Defendants argue that this opinion is impermissibly "speculative" and that it improperly assumes that Dr. Goldberg would have been able to time the market and maximize the price he received for his Navidea stock.  (*See* Moving Brief at 21-22.)  This argument is directly contrary to what Defendants' argue is controlling Delaware law.

The Delaware Supreme Court has consistently held that "[w]here the injured party has proven the fact of damages – meaning that there would have been some profits from the contract – less certainty is required of the proof establishing the amount of damages.  In other words, the injured party need not establish the amount of damages with precise certainty 'where the wrong has been proven and injury established.'"  *SIGA Techs., Inc. v. Pharmathene, Inc.*, 132 A.3d 1108 (Del. 2015).  "The established presumption is that doubts about the extent of damages are generally resolved against the breaching party."  *Id.* at 1131.

---

[2]     This would be updated to a date immediately before trial.

[3]     The trading volumes in Navidea stock during this time-frame would have allowed Dr. Goldberg to sell all 23.5 million Navidea shares without affecting Navidea's share price even if Mr. Murray's improper "blockage discount" methodology was applied.

"Where a party has wrongfully deprived another of the ability to sell shares, damages are measured using the highest intermediate value of the shares less the value at the time of judgment." *Paradee v. Paradee*, 2010 Del. Ch. LEXIS 212, *35-36 (Del. Ch. Oct. 5, 2010). "The intuition behind this rule is that the issuer-defendant should bear the risk of uncertainty in the share price because the 'defendant's acts prevent a court from determining with any degree of certainty what the plaintiff would have done with his securities had they been freely alienable.'" *Duncan v. TheraTx, Inc.*, 775 A.2d 1019, 1023 (Del. 2001).[4] *See also Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 Del. Ch. LEXIS 15, *88-91 (Del. Ch. Jan 29, 2010) ("While this 'wrongdoer rule' – as it is called in some jurisdictions, notably New York – has not yet been adopted explicitly in Delaware, several cases strongly suggest that the wrongdoer does bear the burden of uncertainty in damages, especially where such uncertainty arises directly from the wrongdoer's actions."); *Henne v. Balick*, 51 Del. 369, 146 A.2d 394, 396 (Del. 1958) ("The fact that there is some uncertainty as to plaintiff's damage or the fact that the damage is very difficult to measure will not preclude a jury from determining its value."); *Gotham Partners, L.P.*

---

[4]     Defendants' misleadingly quote from a separate section of *Duncan* dealing with the second step in the valuation analysis approved in that case.  In *Duncan*, the Delaware Supreme Court was asked to rule whether a plaintiff who's shares had been *temporarily* restricted from sale could seek damages based on the highest stock price for the shares during the restricted period.  Citing the rule discussed herein, the *Duncan* court held that even in the case of a limited restriction on trading the defendant was required to bear the burden of uncertainty regarding when the plaintiff might have sold his stock due to the fact that the uncertainty was caused by the defendant's conduct restricting their sale.  The *Duncan* court held, however, that unlike the uncertainty as to when the plaintiff might have sold it shares during the restrictive period improperly imposed by the defendant, *once the restrictive period had ended* the rule no longer applied.  Rather, *if* the plaintiff had the benefit of unrestricted stock at some point and retained that stock at the time a damages award was calculated, the value of the retained, unrestricted stock had to be calculated, and for this *second* calculation, it was not appropriate to use calculations as beneficial to the plaintiff because there was no longer uncertainty caused by the defendant's conduct (*i.e.*, the restrictions on trading imposed by the defendant had already been lifted by the defendant).  It was in this totally different context that the *Duncan* used the language cited by Defendants regarding a "delay in the sale of [] shares for speculative purposes to conclude "that the stockholders would have sold at the highest possible share price during the period."  *Id.* at 2023. It is important to note that in our case, Navidea has refused to remove the restrictive legends it placed on all of the Navidea shares it issued to Dr. Goldberg pursuant to the August 14th Agreement, so the shares have *always* been restricted, and this secondary calculation is not applicable here.  It is respectfully submitted that if Defendants failure to disclose this distinction when citing this language evidences, at best, sloppy workmanship and, as worst, an absence of the duty of candor owed to the Court.

*v. Hallwood Realty Partners, L.P.*, 855 A.2d 1059, 1067 (Del. Ch. 2003) (placing the burden of uncertainty on the defendants); *Dionisi v. DeCampli*, 1995 Del. Ch. LEXIS 88 (Del. Ch. June 28, 1995) ("[S]ome may argue public policy requires the wrongdoer bear the risk of uncertainty of damages where they cannot be proved with mathematical certainty . . . .") (cited with approval in *Total Care Physicians, P.A. v. O'Hara*, 2003 Del. Super. LEXIS 261 (Del. Ch. July 10, 2003).

Significantly, *none* of the above cases, and *none* of the cases cited by Defendants discuss the application of any "blockage discount" or other downward adjustment of the type Defendants argue for in the Moving Memo.

In light of the above, consistent, longstanding authority in Delaware, Mr. Orr's opinion regarding valuation of pre-split Navidea shares is entirely consistent with Delaware law.

Navidea also argues that Mr. Orr fails to explain his use of two different methodologies to value damages based on post-split and pre-split shares. (*See* Moving Memo at 22.) However, Mr. Orr explains in the Orr Report at 16 that the methodology used to value post-split shares differed, at least in part, because under that theory no shares have been issued to Dr. Goldberg. Accordingly, actual share pricing and volume during the time period prior to their issuance would not be an appropriate basis for a valuation opinion. (*See* Orr Decl. ¶ 24.)

Finally, Defendants argue that Mr. Orr failed to apply a "blockage discount" to his valuation. For the reasons set forth in the Orr Decl. ¶ 26 Mr. Orr does not believe that a blockage discount would be appropriate in this case.

In any event, at most these "criticisms" of Mr. Orr's valuation opinions would form the basis for cross-examination and go to the weight of Mr. Orr's testimony, not a basis to exclude his testimony. *Astra Aktiebolag*, 222 F. Supp. 2d at 487.

### C.  Mr. Orr's Proffered Testimony Concerning The
### Value Of Post-Split Navidea Shares Is Appropriate

As set forth above, Dr. Goldberg intends to argue that because the Navidea shares purportedly issued to him to date by Navidea did not comply with the August 14th Agreement he has not received performance under the August 14th Agreement with respect to the Navidea shares and that the Court should declare that he is entitled to the immediate issuance of 23.5 million current shares of Navidea stock as of the date of judgment.  Dr. Goldberg also seeks damages based on Navidea's failure to issue the shares as required by the August 14th Agreement.  It is important to note that Navidea implemented a 20 shares for 1 reverse stock split on April 26, 2019.  Therefore, Mr. Orr intends to provide a valuation opinion for those shares if the Court awards him damages representing the value of post-split.

Mr. Orr provides a straightforward methodology for valuing the shares.  If Dr. Goldberg is awarded the value of 23.5 million post-split shares of Navidea stock, it would represent a significant percentage of ownership of Navidea, and because the post-split shares did not exist at the time the August 14th Agreement was executed.  (*See* Orr Decl. ¶ 22.)  Orr therefore offers the opinion that the value of these damages should be calculated by determining the percentage of ownership of Navidea represented by those shares multiplied by the total market value of Navidea at the time of judgment.  (*See* Orr Report at 16-17; Orr Decl. ¶¶ 22-25.)  Orr provides a simple formula for making this calculation, by multiplying the total number of issued and outstanding Navidea shares on the day prior to judgment by the closing per share market price for that day  to arrive at a total market value for Navidea and then multiplying that value by the percentage that the 23.5 million shares to be issued to Dr. Goldberg represent in relation to the new total number of issued and outstanding shares (i.e., the total on the day prior to the judgment plus the 23.5 million).  (*Id.*)

Navidea criticizes this methodology because it does not employ any "regression analysis to account for various variables."  However, the methodology does not contain any "variables." Both the number of issued and outstanding shares of Navidea on the day before the judgment and the closing price for those shares in the public market on that day are not variables.  They are constant numbers that, although they are not known today, will be known on (after the close of trading) the date before a judgment is entered in this case and thereafter.  Because Navidea stock is traded on the NYSE public market exchange his information is published and widely available for every trading day.   Therefore, Defendants' argument that this methodology is based on a "speculative future stock price" is false.  It is based on what will be a concrete, known stock price at the time the calculation is performed.  Notably, Defendants do not identify any variables that are inputs into my proposed methodology (because there are none) and do not suggest what, if any form of regression analysis could or should have been employed.  (*See* Moving Memo at 19-21.)  Navidea's expert, William F. Murray, does not even address this opinion in his rebuttal expert report.  (*See* generally Expert Rebuttal Report of William F. Murray, a true and correct copy of which is annexed hereto as Exhibit C.)

Likewise, Defendants' argument that this methodology is based on speculation as to whether Dr. Goldberg would hold or sell the shares is baseless.  This methodology is based on the stated assumption, and is not to be employed unless and until a judgment may be entered stating, that Navidea had not provided Dr, Goldberg with *any* performance with respect to Navidea shares under the August 14th Agreement and therefore a judgment is entered declaring that Navidea is required to issue him 23.5 million current (i.e. post-split) Navidea shares.  Under such circumstances Dr. Goldberg would never have received compliant Navidea shares and therefore could neither have held or sold them for any time period.  (*See* Orr Decl. ¶¶ 24.)

Defendants also criticize this methodology because Mr. Orr does not employ a "blockage discount." However, Orr does not believe a blockage discount should be applied with respect to this analysis. Dr. Goldberg would own a set percentage of Navidea shares, which, because the shares are publicly traded, has a set market value. Additionally, Navidea's shares have historically sold at higher prices on days on which volume was above average. As set forth in Dr. Goldberg's Daubert motion directed to Mr. Murray's "blockage discount" methodology and my declaration submitted in support thereof, Mr. Murray's methodology is flawed in several respects, including that it necessarily predicts a decline in Navidea's share price on any day on which daily trading exceeds by 15% of average daily trading volume, however Navidea's shares frequently traded at higher prices on high volume days that it did on preceding average trading volume days. Finally, Mr. Murray does not address my opinion regarding the valuation of post-split Navidea shares in his report. (*See generally*, id.).

## V.   MR. ORR'S PROPOSED TESTIMONY CONCERNING DAMAGES IN CONNECTION WITH MACROPHAGE SHARES IS APPROPRIATE

As set forth in Section IV(B), *supra*, under controlling Delaware law, where a plaintiff establishes liability and the fact of damages, but the amount of damages cannot be proven with certainty due to the fault of the defendant, damages may be awarded based on a reasonable estimate. In the case of Macrophage, valuation of its shares was rendered uncertain because Navidea's deposition witnesses professed to be unable to recall the details of certain investment offers made to Macrophage that were disclosed to the NYSE by Navidea.

In valuing Macrophage, Orr employed a market valuation methodology. Navidea represented to the NYSE the existence of two potential investors contemplating a $25 million total investment in Macrophage (one $10 million investment and one $15 million investment). (*See* MT-DEL00007125, a true and correct copy of which is annexed to the Orr Decl. as Exhibit

24

A.)  However, despite these representation to the NYSE, Navidea was not able to provide any further details regarding the potential investments or the ownership percentage or range of ownership of Macrophage the investors might receive for those investments.  It was reasonable for Orr to rely upon these representations to the NYSE because submission of false statements made in writing to the NYSE by companies trading on the NYSE and its officers and employees may be subject to significant penalties.  Navidea represented to the NYSE that despite not being able to provide details regarding the potential investment, Navidea would continue to consolidate Macrophage into its financial statements after the investment was completed.  Therefore, Orr provided the finder of fact with a valuation range that would allow Navidea to continue to consolidate Macrophage into its financial statements.  These inferences were well founded based on the limited facts concerning these offers made available to Dr. Goldberg during discovery.  Had Orr known the ownership percentage of MT the investor might receive for their investments, he could have provided a more accurate valuation of MT, based upon the market valuation approach.  However, he was precluded from doing so by a lack of information that was exclusively in Navidea's possession but was not disclosed in discovery.  Accordingly, Dr. Goldberg should be permitted to present Orr's range of values for Macrophage at trial.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion in its entirety and should grant Dr. Goldberg such other and further relief as the Court deems just and proper.

Dated: Westchester, New York
          March 18, 2022

Respectfully submitted,

/s/ Gregory Zimmer

25

Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Phone: 914.402.5683
Fax: 914.402.5683
Email: GZimmer@GZimmerLegal.com