UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: NAVIDEA BIOPHARMACEUTICALS LITIGATION | Case No: 1:19-cv-01578-VEC<br><br>ECF Case |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF/COUNTERCLAIM-DEFENDANT NAVIDEA BIOPHARMACEUTICALS, INC.'S AND THIRD-PARTY DEFENDANT MACROPHAGE THERAPEUTICS, INC.'S <u>MOTION TO EXCLUDE EXPERT TESTIMONY OF TERRY L. ORR</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ...............................................................................................................................1

    I.    Goldberg Fails To Rebut That Orr Is Not Qualified As An Expert To Opine On Regulation D, Rule 144, Form S-8 And The August Agreement ............................1

    II.    Goldberg Fails To Rebut That Orr's Opinions And Testimony On Regulation D, Rule 144, Form S-8 And The August Agreement Are Inadmissible Legal Opinions ...............................................................................................................3

    III.    Orr Concedes He Cannot Offer Opinions And Testimony Concerning What Navidea *Intended* To Do ....................................................................................6

    IV.    Goldberg Fails To Rebut That Orr's Methodologies Are Not Reliable Or Relevant ..........................................................................................................6

        A.    Goldberg Fails to Rebut that Orr's Damage Opinions and Testimony Using the "Pre-Split" Methodology Should Be Excluded ...........................6

        B.    Goldberg Fails to Rebut that Orr's Damage Opinions and Testimony Using the "Savvy Investor" Methodology Should Be Excluded .................8

        C.    Orr's Damage Opinions Are Specifically Rebutted by Navidea's Expert ...9

    V.    Goldberg Fails To Rebut That Orr's Damage Opinions And Testimony On Macrophage Stock Should Be Excluded ..............................................................9

CONCLUSION ........................................................................................................................ 10

i

# **TABLE OF AUTHORITIES**

**Cases**

*Arista Recs. LLC v. Lime Grp. LLC*,
  Case No. 06-cv-5936, 2011 WL 1674796 (S.D.N.Y. May 2, 2011) ......................................... 3

*Astra Aktiebolag v. Andrx Pharms., Inc.*,
  222 F. Supp. 2d 423 (S.D.N.Y. 2002) ............................................................................... 3, 7, 9

*Boatman v. Comcast of South, L.P.*,
  Case No. 3:17-cv-536, 2020 WL 714146 (E.D. Tenn. Feb. 12, 2020) ...................................... 2

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) .......................................................................................................... 6

*CCM Rochester, Inc. v. Federated Invs., Inc.*,
  Case No. 14-cv-3600, 2016 WL 11617452 (S.D.N.Y. Aug. 31, 2016) .................................... 9

*Dionisi v. DeCampli*,
  Case No. 9425, 1995 WL 398536 (Del. Ch. June 28, 1995) ................................................ 7, 8

*Duncan v. Theratx, Inc.*,
  775 A.2d 1019 (Del. 2001) .............................................................................................. 7, 8, 9

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ................................................................................................................. 8

*Highland Cap. Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) ...................................................................................... 3

*In re Bailey Tool & Mfg. Co.*,
  Case No. 16-30503-SGJ-7, 2021 WL 6101847 (Bankr. N.D. Tex. Dec. 23, 2021) .................. 2

*In re Rezulin Prod. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ...................................................................................... 5

*In re WorldCom, Inc. Sec. Litig.*,
  352 F. Supp. 2d 472 (S.D.N.Y. 2005) ...................................................................................... 3

*Madison Fund, Inc. v. Charter Co.*,
  427 F.Supp. 597 (S.D.N.Y. 1977) ............................................................................................ 7

*Paradee v. Paradee*,
  Case No. CIV.A. 4988, 2010 WL 3959604 (Del. Ch. Oct. 5, 2010) ........................................ 8

*Project Boat Holdings, LLC v. Bass Pro Grp., LLC*,
   Case No. CV-12606-VCS, 2018 WL 3814930 (Del. Ch. Aug. 10, 2018) ................................ 2

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997) ........................................................................................................ 10

*Scott v. Chipotle Mexican Grill*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................................ 5

*Siga Techs., Inc. v. PharmAthene, Inc.*,
   132 A.3d 1108 (Del. 2015) ....................................................................................................... 8

*United States Sec. & Exch. Comm'n v. Alpine Sec. Corp.*,
   354 F. Supp. 3d 396 (S.D.N.Y. 2018) ...................................................................................... 5

*United States v. Cohen*,
   887 F.3d 77 (1st Cir. 2018) ....................................................................................................... 5

*United States v. Lumpkin*,
   192 F.3d 280 (2d Cir. 1999) ...................................................................................................... 3


**Other Sources**

*United States v. Cohen*,
   Case Nos. 16-1682, 16-1703, 2017 WL 4073882 (App. Br. for the U.S.)
   (1st Cir. Sep. 7, 2017) ............................................................................................................... 5

Navidea and Macrophage[1] submit this reply memorandum of law in further support of their motion to exclude the expert testimony of Orr.

## PRELIMINARY STATEMENT

Realizing that Orr failed to provide any admissible expert opinions, Goldberg attempts to improperly supplement the record, shift blame to Navidea and Macrophage for Orr's failures, and use Murray's rebuttal expert opinions as his own affirmative damage analysis. The Court should reject each of these efforts. Goldberg's Opposition and Orr's new 16-page declaration, detailing his experience as an accountant and auditor, confirm that Orr is not qualified to render opinions on securities laws or contract interpretation. Moreover, any such opinions are inadmissible legal opinions. Goldberg also fails to rebut that Orr's damage analyses are inadmissible. Orr's "pre-split" and "savvy investor" methodologies are not peer reviewed, published, or generally accepted, and improperly rely on speculation. Concerning Macrophage, Orr concedes he failed to render a proper analysis and attempts to shift his failure to Navidea by alleging without basis non-existent discovery deficiencies. Discovery is closed, and all documents requested have been produced. Orr's failure to render a relevant and reliable expert report lay solely with him. Accordingly, the Court should exclude all of Orr's opinions, and reject Goldberg's attempts to use Murray's opinions to fill the gaps left open by Orr's exclusion. [*See* Dkt. No. 264 at 13-14.]

## ARGUMENT

### I.   Goldberg Fails To Rebut That Orr Is Not Qualified As An Expert To Opine On Regulation D, Rule 144, Form S-8 And The August Agreement

The Opposition and Orr's Declaration listing Orr's "additional" experiences is nothing more than a reformulation of Orr's *curriculum vitae*. (Opp. at 10-12; Orr Decl. ¶¶ 6, 14, 17-19 [Dkt. No. 267]). As discussed in the moving papers, Orr's CPA licensure, membership in various

---

[1] Capitalized Terms not defined herein have the meaning as set forth in the moving papers.

1

accounting groups, and his role as an auditor do not qualify him to opine on federal securities laws or interpret contracts.[2] (MOL at 16-17.) Orr's role reviewing "reports issued by [his] office's real estate valuation group" (Orr Decl. ¶ 20 [Dkt. No. 267]) also has nothing to do with federal securities laws or contract interpretation. The fact that Orr, as an accountant/auditor, is merely "familiar with Regulation D" and has "dealt several times with stock splits and reverse stock splits" (Orr Decl. ¶¶ 6, 14 [Dkt. No. 267]), is insufficient to cure the defect for his lack of qualifications.

Orr's prior expert experience only further detracts from his purported qualifications. (Orr Decl. ¶ 21 [Dkt. No. 267].) In *Project Boat Holdings, LLC v. Bass Pro Grp., LLC,* Case No. CV-12606-VCS, 2018 WL 3814930 (Del. Ch. Aug. 10, 2018), the issue was whether a certain transaction "complied with GAAP [generally accepted accounting principles]." *Id.* at *3. There are no issues of GAAP in this case. In *Boatman v. Comcast of South, L.P.*, Case No. 3:17-cv-536, 2020 WL 714146, at *9 (E.D. Tenn. Feb. 12, 2020), Orr submitted rebuttal testimony and there is no indication he provided a valuation, nor did he address federal securities laws. *Id.* at *9. Moreover, the Court excluded multiple portions of Orr's intended opinions and testimony. *Id.* In *In re Bailey Tool & Mfg. Co.*, Case No. 16-30503-SGJ-7, 2021 WL 6101847 (Bankr. N.D. Tex. Dec. 23, 2021), Orr provided rebuttal testimony about a cash reconciliation performed by another forensic accountant. *Id.* at *29-30. The court noted that while Orr "did question one of the methods used," he "never provided an alternate number" so the other expert's analysis was "basically uncontroverted," and that Orr's critique was "irrelevant." *Id.* at *29, 30. The final matter cited by Orr – *Envirodigm* – was not listed in Orr's *curriculum vitae*, or anywhere in his report, it has no

---

[2] Orr's mandatory continuing education credits also does not render him an expert in securities laws. (Orr Decl. ¶ 6 [Dkt. No. 267].) Under Texas law (where Orr is a licensed CPA), Orr must complete 120 continuing education credits every 3 years (or an average of 40 credits per year) to maintain his CPA license. *See* https://cpe.furthered.com/cpe-requirements/texas#:~:text=What%20are%20the%20TX%20CPE,specific%20Ethics%20every%202%20years. The license requirement has nothing to do with any purported expertise in federal securities laws, and Orr fails to list any continuing education courses that qualifies him to render opinions on securities laws or contract interpretation.

2

associated case number to research the case, and is an improper supplementation of his report.

Regardless of whether Orr's opinions and testimony on federal securities law could be relevant (they are not) (Opp. at 10-18), Orr's experience and training as an accountant/auditor does not qualify him to render opinions on federal securities laws or contract interpretation. *Arista Recs. LLC v. Lime Grp. LLC*, Case No. 06-cv-5936, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) ("[A]n expert who is qualified in one field cannot offer an opinion about aspects of the case in another field for which she is not qualified.") An auditor's job is to represent the "belief that the financial statements taken as a whole are not materially misstated." *In re WorldCom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 480 (S.D.N.Y. 2005) (emphasis excluded). That has nothing to do with any expertise to opine on Regulation D, Rule 144, Form S-8 or the August Agreement.

The only case Goldberg cites in support – *Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 585 (S.D.N.Y. 2002) – is inapposite. Notwithstanding that the case concerned very technical pharmaceutical patents, there is no indication that any of the experts' qualifications were actually challenged. *See id.* at 489, 592 (not discussing any objections to qualification of Dr. Davies and Dr. Langer, and "Dr. Straus was qualified, without objection").

## II. Goldberg Fails To Rebut That Orr's Opinions And Testimony On Regulation D, Rule 144, Form S-8 And The August Agreement Are Inadmissible Legal Opinions

Even if Orr were qualified (he is not), Goldberg and Orr fail to rebut that Orr's opinions are inadmissible legal opinions. Regulation D and Rule 144 are laws. Form S-8 is a form that allows public companies to register securities. The August Agreement is a contract. Any opinions about whether these laws, forms and contracts were complied with are inadmissible legal opinions that "usurp" the role of the Court. *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999); *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) ("To the extent O'Shea discusses governing law, the discussion is inadmissible because "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.")

3

The below quoted excerpts from Orr's Declaration demonstrates his opinions and testimony concerning Regulation D, Rule 144, Form S-8 and compliance with the August Agreement are inadmissible legal opinions:

- "Regulation D neither authorizes[3] nor requires the placement of other forms of legends on shares issued pursuant to Regulation D" (Orr Decl. ¶ 9 [Dkt. No. 267]);

- Because "Dr. Goldberg was not an officer or director of Navidea after the August 14th Agreement was executed, he would not be subject to Rule 144's restrictions on trading by "affiliates" but would only be subject to the generally applicable six (6) month restriction on trading" (*id.* at ¶ 10);

- "whether Regulation D authorizes or requires legends similar to those placed on the Navidea shares" and "that such legends are not specifically addressed in Regulation D and therefore are neither authorized nor required by Regulation D" (*id.* at ¶ 11);

- How "shares registered on Form S-8 . . . differ from shares issued pursuant to Regulation D" (*id.* at ¶ 12);

- When "the start of the six month holding period that would be applicable to shares issued to Dr. Goldberg pursuant to Regulation D under the terms of the August 14th Agreement" is triggered (*id.* at ¶ 13);

- "the use of contractual [anti-dilution] provisions addressing the potential for a stock split or other change in the nature of the shares issued by a public company in contracts requiring the delivery of specific numbers of shares at a future date" and why "parties frequently utilize these types of clauses in contracts to protect themselves from the possibility of a future stock split or other change in the nature of the shares" (*id.* at ¶ 14);

- "anti-dilutive language is commonly used to protect the parties' interests and avoid confusion and disputes, especially in contractual situations where a stated number of shares are identified" (*id.* at ¶ 14); and

- The purpose or "existence of such [anti-dilution] contractual clauses and their use" (*id.* at ¶ 15).

(*See also* Opp. at 12-18.) Each of the foregoing are textbook legal opinions. Moreover, Orr's insistence on "educat[ing] the finder of fact" on the above (and other) legal matters and the reasons for using particular contractual language (Orr Decl. ¶¶ 9-15 [Dkt. No. 267]) squarely places Orr in

---

[3] As noted in the moving papers, Orr's purported expertise on Regulation D is further called into question as Orr conceded at deposition that the term he used in his report, "not authorized," was a "poor term," and that neither Regulation D nor Form S-8 prohibited Navidea from using the language it did in the stocks' legends. (MOL at 6.)

4

the improper role of an "advocate" who is trying to advise the court on legal matters. *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (excluding testimony as "plaintiffs' experts propose improperly to assume the role of advocates for the plaintiffs' case by arguing as to the intent or motives underlying the conduct").

The cases Goldberg cites to allow his opinions, only further demonstrate the inadmissible legal nature of this testimony. In *Scott v. Chipotle Mexican Grill*, 315 F.R.D. 33 (S.D.N.Y. 2016) (Opp. at 15, fn. 1) the Court was able to separate the expert's inadmissible opinions from the admissible opinions. *See id.* at 48 ("Mr. Crandall was retained to challenge the methodology used and assumptions held by plaintiffs' experts. Accordingly, it is perfectly appropriate for him to identify variations in the evidence or record evidence overlooked. But his expert opinion on what that means for the plaintiffs' case is impermissible.") Here, however, none of Orr's opinions about securities laws or the August Agreement can be separated as proper factual testimony.

Nor is *United States v. Cohen*, 887 F.3d 77 (1st Cir. 2018) of any help to Orr. (Opp. at 10.) In fact, *Cohen* lays bare the inadmissibilty of Orr's legal opinions. In *Cohen*, the Court allowed "expert testimony from Jayne Tyrell, the Executive Director of the Massachusetts IOLTA Committee, concerning the rules and regulations relating to Massachusetts IOLTA accounts." *See United States v. Cohen*, Case Nos. 16-1682, 16-1703, 2017 WL 4073882, at *33 (App. Br. for the U.S.) (1st Cir. Sep. 7, 2017); *Cohen*, 887 F.3d at 85 (the admission of testimony from Tyrell explaining "the rules governing IOLTA accounts" was "no abuse of discretion"). If Orr were the chairman of the SEC, the anlaysis may be different. But Orr is not the chairman, he never worked at the SEC, nor is he an attorney. *Cohen* thus highlights Orr's lack of qualifications as an accountant/auditor to opine on legal matters.

As set forth in the moving papers, each of Orr's opinions on Regulation D, Rule 144, Form S-8 and compliance with the August Agreement should be excluded as inadmissible legal opinions.

5

(MOL at 17-18.) *United States Sec. & Exch. Comm'n v. Alpine Sec. Corp.*, 354 F. Supp. 3d 396, 417, fn. 33 (S.D.N.Y. 2018), aff'd, 982 F.3d 68 (2d Cir. 2020) ("Alpine principally presents its legal argument in the expert declaration Alpine submitted with its opposition papers. These legal arguments may not be presented through an expert.").

### III. Orr Concedes He Cannot Offer Opinions And Testimony Concerning What Navidea *Intended* To Do

Orr concedes that he cannot offer testimony concerning "Navidea's actual intent to effectuate a stock split." (Orr Decl. ¶ 15 [Dkt. No. 267]; MOL at 18.) By extension, as noted in the moving papers, Orr also cannot testify as to what language Navidea intended to or should have included in the contract or stock legends concerning any potential stock split. (MOL at 18.)

### IV. Goldberg Fails To Rebut That Orr's Methodologies Are Not Reliable Or Relevant

#### A. Goldberg Fails to Rebut that Orr's Damage Opinions and Testimony Using the "Pre-Split" Methodology Should Be Excluded

Orr fails to rebut that his damage analysis using the "pre-split" methodology is inadmissible. Orr admits that the methodology does not provide an actual damage value. Orr also admits that the future speculative valuation date at "the time of judgment" (Orr Decl. ¶ 22 [Dkt. No. 267]) could result in an unknown value "[i]f Navidea is no longer traded on a public exchange" (*id.* at ¶¶ 23 fn. 4). Such a future and speculative assessment of how damages could be calculated after a trial has concluded is not useful or relevant to the Court. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("expert testimony should be excluded if it is speculative or conjectural"); (MOL at 19). Moreover, Orr's admission that Navidea stock may not be freely tradeable demonstrates the necessity of applying a discount for lack of marketability ("DLOM"), which Orr failed to do or even consider. (MOL at 19-23.)

In addition, Orr's failure to use a methodology that was tested, peer reviewed, published or generally accepted is not saved by his citation to *Astra Aktiebolag* (Opp. at 21), where a method

6

was not peer reviewed because it was in an area "raising issues that may have never interested any scientist." *Astra Aktiebolag*, 222 F. Supp. 2d at 489. Performing a valuation of stocks with a DLOM is not uncommon. Navidea and Macrophage, in their opposition to Goldberg's motion to exclude Murray, cited multiple articles and sources showing the ubiquity and general acceptance of DLOM valuations. [Dkt. No. 264 at 5 fns. 3 and 4.] And Murray testified that he has used his methodology hundreds of times. (*Id.* at 5.)

Goldberg and Orr also fail to rebut that the pre-split methodology violates the holding in *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001). (Opp. at 20 fn. 4.) Goldberg improperly asserts that counsel misrepresented *Duncan* by failing to address *Duncan's* two-step process. (*Id*.) The two-step process is irrelevant to, and does not negate, the fact that the Delaware Supreme Court in *Duncan* specifically stated that "*the issuer [here, Navidea] should not bear the risk of all subsequent share price increases because it is impossible to know whether and when the stockholders actually would have sold their shares during the restricted period.*" *Id. at* 1023 (emphasis added). Regardless of the step, the court can "not take into account [a] delay in the sale of [ ] shares for speculative purposes." *Id.* at 1025, 1027. Yet that is precisely what Orr does, in contravention of *Duncan*.[4]

The cases cited by Goldberg are inapposite. (Opp. at 19-20.) Except for one case, each either predates *Duncan*, does not discuss *Duncan*, or concerns general issues of risk allocation that do not address the specific factual scenario here or the valuation issues in *Duncan*. And, in one

---

[4] Under *Duncan*, to determine the timing of a "hypothetical sale," Orr was required to use a "*reasonable period* after the restriction was imposed during which the stockholders could have sold the shares and then select[ ] the "highest intermediate price" during that period as the presumed sale price." *Id.* (Emphasis added.) A "reasonable period" is the "time in which [the plaintiff] could have disposed of its shares **without depressing the market had it been able to do so**." *Id.* at 1023, fn. 9 (emphasis added) (*citing Madison Fund, Inc. v. Charter Co.*, 427 F.Supp. 597, 609–10 (S.D.N.Y. 1977)). *Duncan* specifically admonished using a speculative sales date to allocate risk back to the issuer. "The *Madison Fund* Court's theory supposes that stockholders who elect not to sell their shares (a) fix the amount of damages by (constructively) selling their shares soon after the restrictions are lifted and (b) (constructively) repurchase the shares as an independent, speculative investment. This rule assigns the risk associated with uncertainty in the share price after the restricted period solely to the stockholders who decide to retain their shares." *Id.* at 1024-25.

7

case, *Dionisi v. DeCampli*, Case No. 9425, 1995 WL 398536 (Del. Ch. June 28, 1995), the court awarded only nominal damages because it found "no evidence of damage related to the proved wrongdoing and no adequate basis to assess damages." *Id.* at *18. The only possible relevant case, *Paradee v. Paradee*, Case No. CIV.A. 4988, 2010 WL 3959604 (Del. Ch. Oct. 5, 2010), is an unpublished opinion by the Chancery Court and concerns a breach of fiduciary duty based on an individual's egregious conduct to improperly revoke another beneficiary's irrevocable trust. *Id.* at *12-13. This case concerns a breach of contract and is not similar in any way to *Paradee*.[5]

Goldberg then argues that "doubts about the extent of damages are generally resolved against the breaching party." *Siga Techs., Inc. v. PharmAthene, Inc.*, 132 A.3d 1108, 1131 (Del. 2015). But Orr is not opining on whether there is liability (that is for the Court to decide); he is opining only on damages. Regardless of who is the breaching party (which the Court will decide), Orr is not alleviated of the statutory requirement to be a qualified expert and to provide a relevant and reliable analysis to calculate damages, all of which he has failed to do.

Put simply, Orr improperly concluded that Goldberg could delay the sale of his Navidea shares for speculative purposes and could sell all his shares at once without any DLOM. Orr's untested, non-peer reviewed and non-published "pre-split" damage opinion should be excluded because "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); (MOL at 19-21).

### B. Goldberg Fails to Rebut that Orr's Damage Opinions and Testimony Using the "Savvy Investor" Methodology Should be Excluded

Goldberg and Orr also fail to rebut the inadmissibility of their "savvy investor"

---

[5] The Court also should be skeptical of the "highest intermediate value" assessed by the Delaware Chancery Court in *Paradee*, as the methodology used is contrary to that espoused by the Delaware Supreme Court in *Duncan*. The *Paradee* court speculatively assumed the individual would have sold the stock at the highest possible price. *Paradee*, 2010 WL 3959604 at *13. *Duncan* held that the issuer "should not bear the risk of all subsequent share price increases." *Duncan*, 775 A.2d at 1023.

8

methodology. *Astra Aktiebolag* does not support Orr's failure to use a methodology that has not been tested, peer reviewed, published or generally accepted. *Astra Aktiebolag*, 222 F. Supp. 2d at 489. *Duncan* instructs against speculating as to when Goldberg would have sold his shares based on his alleged savviness. In fact, *Duncan* specifically rejected the notion that the issuer should bear the risk of all subsequent price increases. *Duncan*, 775 A.2d at 1023. And even if Orr could consider Goldberg's trading prowess (which he cannot), Orr never discussed with Goldberg his history of trading Navidea stock. (MOL at 10, 22.) Nor is there any evidence in the record of Goldberg's trading history. Moreover, Orr never adequately explains why a DLOM should not be applied. (Murray Report at 12 (Kazan Decl. Ex. 4); MOL at 21-22.)

Orr also again fails to explain the different methodology approaches – one based on a future judgment date and the other based on Goldberg's purported trading savviness. Orr's different, inconsistent and flawed valuation methodologies are nothing more than inadmissible "*ipse dixit.*" *CCM Rochester, Inc. v. Federated Invs., Inc.*, Case No. 14-cv-3600, 2016 WL 11617452, *4 (S.D.N.Y. Aug. 31, 2016).

### C.   Orr's Damage Opinions Are Specifically Rebutted by Navidea's Expert

Goldberg makes the incredulous assertion that "Murray [ ] does not dispute Mr. Orr's methodology." (Opp. at 4.) Murray does precisely that, and more. Murray addressed the significance of a "blockage discount," he criticized Orr for failing to apply a discount, he noted the "highly speculative" conclusion that Goldberg "would achieve near perfect market timing" and that "Mr. Orr does not cite to any support for his conclusion regarding the timing of sales and I am unaware of any empirical data or professional literature that suggests any person, much less Dr. Goldberg, can perfectly time the market to realize the maximum gains on publicly traded shares." (MOL at 22-23.) There is nothing about Orr's report or opinions that Murray agreed with.

## V. Goldberg Fails To Rebut That Orr's Damage Opinions And Testimony On Macrophage Stock Should Be Excluded

Goldberg concedes that Orr's valuation of Macrophage is entirely speculative and irrelevant because Orr had "limited facts," and did not have the "details regarding the potential investments or the ownership percentage or range of ownership of Macrophage the investors might receive for those investments." (Orr Decl. ¶ 27.) But instead of acknowledging his own failures of not doing a proper damage analysis of Macrophage, *which Orr conceded in his deposition* (Orr Tr. (Kazan Decl. Ex. 3) at 43:9-9 ("I didn't do a full analysis of the value of Macrophage" ), Goldberg and Orr improperly blame Navidea for not producing the relevant information in discovery. (Opp. at 25.) Discovery in this matter is closed. (Kazan Sec. Decl. at ¶¶ 13-24.) Navidea and Macrophage have produced all documents in accordance with the Court's and the parties' discovery protocols. (*Id.*) Goldberg's and Orr's failure to obtain information they now assert is necessary for an admissible damage analysis lay solely with Orr and Goldberg. Moreover, nothing in Orr's report suggests that his lack of information prevented him from rendering any of his opinions. Orr's failure to calculate an actual damage amount or to perform a proper damage analysis is fatal to him providing an expert opinion on Macrophage damages. *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997) (affirming exclusion of expert opinion as "irrelevant and inadmissible" where "the report was probative of no material fact").

Lastly, as noted in Navidea's and Macrophage's opposition to the motion to exclude Murray, to the extent Orr's opinions and testimony are excluded, Goldberg cannot use Murray as his own affirmative expert. [*See* Dkt. No. 264 at 13-14.]

## CONCLUSION

Accordingly, for the reasons set forth herein, the Motion to Exclude the Expert Testimony of Terry L. Orr should be granted.

Date: April 1, 2022  Respectfully submitted,
      New York, New York

                              /s/ Barry M. Kazan
                              Barry M. Kazan, Esq.
                              Marc B. Schlesinger, Esq.
                              Mintz & Gold LLP
                              600 Third Avenue, 25th Floor
                              New York, New York 10016
                              Phone: (212) 696-4848
                              Fax:    (212) 696-1231
                              kazan@mintzandgold.com
                              schlesinger@mintzandgold.com

                              -and-

                              Karim Sabbidine, Esq.
                              THOMPSON HINE LLP
                              335 Madison Avenue, 12th Fl.
                              New York, New York 10017
                              Phone: (212) 344-3921
                              Fax:    (212) 344-6101
                              karim.sabbidine@thompsonhine.com

                              *Attorneys for Plaintiff /Counterclaim Defendant*
                              *Navidea Biopharmaceuticals, Inc. and*
                              *Third-Party Defendant*
                              *Macrophage Therapeutics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2022, I caused to be served on counsel of record, electronically via the Court's electronic filing system, a true and correct copy of **Plaintiff/Counterclaim-Defendant Navidea Biopharmaceuticals, Inc.'s and Third-Party Defendant Macrophage Therapeutics, Inc.'s Reply Memorandum of Law in Further Support of Motion to Exclude the Expert Testimony of Terry L. Orr**.

    /s/ Barry M. Kazan
    Barry M. Kazan