UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: NAVIDEA BIOPHARMACEUTICALS LITIGATION | Case No: 1:19-cv-01578-VEC<br><br>ECF Case |

**SECOND DECLARATION OF BARRY M. KAZAN IN SUPPORT OF
PLAINTIFF/COUNTERCLAIM-DEFENDANT
NAVIDEA BIOPHARMACEUTICALS, INC. AND THIRD-PARTY
DEFENDANT MACROPHAGE THERAPEUTICS, INC.
MOTION TO EXCLUDE EXPERT TESTIMONY OF TERRY L. ORR**

Barry M. Kazan, an attorney duly admitted to practice law in the State of New York, under penalty of perjury, declares as follows:

1.  I am counsel to Plaintiff/Counterclaim-Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") and Third-Party Defendant Macrophage Therapeutics, Inc. ("Macrophage" or "MT"), and submit this declaration in further support of Navidea's and Macrophage's *Motion to Exclude the Expert Testimony of Terry L. Orr* (the "Motion to Exclude Orr").

2.  I have reviewed the Opposition to the Motion to Exclude Orr filed by Defendant/Counterclaim-Plaintiff/Third-Party Plaintiff Michael M. Goldberg, M.D. ("Goldberg") (ECF No. 266).

3.  In the Opposition, Goldberg makes certain arguments and factual assertions that are not supported by the record.

4.  The purpose of this declaration is to inform the Court of those incorrect arguments and factual assertions through citations and exhibits of materials.

1

**GOLDBERG'S REMAINING CLAIMS IN THIS CASE**

5. On December 26, 2019, this Court entered an order dismissing portions of Goldberg's claims for breach of contract, and all of his claims for breach of the implied covenant of good faith and fair dealing, wrongful termination, and quantum meruit. (ECF No. 61.) In addition, the Court granted dismissal of certain claims for injunctive relief and stated that if Goldberg seeks leave to file an amended counterclaim, Goldberg "must explain why he has standing to seek injunctive relief." (*Id.* at 16, n.14.) In addition, the Court stated that "Goldberg nowhere alleges facts from which the Court could conclude that monetary damages are inadequate to remedy his harm." (*Id.* at 15, n.12.)

6. On April 1, 2020, the Court denied Goldberg's motion for leave to amend and expressly stated that "Goldberg's proposed amended counterclaim for injunctive relief fails to address the Court's explicit instruction to explain why Goldberg believes 'he has standing to seek injunctive relief.'" (ECF No. 108 at 2.)

7. By operation of the Orders entered on December 26, 2019 and April 1, 2020, Goldberg has 2 remaining claims in this action: breach of the August 14th Agreement against Navidea for failing to issue to Goldberg the 23.5 million shares of Navidea common stock in the form required by the August Agreement (ECF No. 31 at ¶ 87) and breach of the August 14th Agreement against Macrophage for failing to issue Goldberg the Super Voting Common Shares required by the August 14th Agreement (ECF No. 31 at ¶ 100).

8. No party has argued that the August 14, 2018 Agreement is ambiguous requiring the admission of parole evidence of the sort that Mr. Orr proffers. This Court previously found that the August 14, 2018 Agreement "is unambiguous." (ECF No. 61 at 9.)

9. Nonetheless, Goldberg argues that Navidea's request for declaratory judgment in the Amended Complaint somehow provides him with affirmative relief. (Opp. at 1 ("damages suffered by Dr. Goldberg based on Defendants' failure to issue to Dr. Goldberg shares of Navidea and Microphage as required by the agreement . . . dated August 14, 2018 . . . are topics put squarely at issue by the claims asserted by Navidea against Dr. Goldberg.") That is not the case. Navidea is seeking a declaration that "performance of certain of its obligations are excused" by virtue of Goldberg's misconduct. (ECF No. 15 ¶ 116.) Goldberg attempts to argue that a rejection of Navidea's claims (*i.e.*, that Navidea was obligated to perform under the August 14 Agreement) compels a finding that Navidea must now issue stock on a pre-split basis. (Opp. at 3.) This is not the case either. If the Court finds that Navidea was not excused, then Navidea will be in breach subjecting itself to possible damages. As this Court has already ruled, monetary damages would be Goldberg's remedy. (ECF No. 61 at 16, n.13.)

10. Goldberg's position is that the 23.5 million shares were required to be issued on August 14, 2018 or August 15, 2018. (*See* September 16, 2020 Deposition of Goldberg ("Goldberg Sept. Tr.") at 335:10-15). A true and correct copy of certain excerpts of the Goldberg Sept. Tr. is annexed hereto as Exhibit 5.

11. In Goldberg's Counterclaims and Third-Party Claims (ECF No. 31), he alleges that he was damaged in an amount no less than $26 million as to Navidea and $16 million as to Macrophage. (ECF No. 31 at ¶¶ 95, 103).

12. Goldberg refused to answer questions at his deposition about the calculation of damages and obeyed his counsel's instructions to not answer questions about his calculation of damages because they could not be known "without the benefit of expert testimony." (*See* Ex. 5 (Goldberg Sept. Tr.) at 335:16-337:24.)

## **FACT DISCOVERY WAS EXTENSIVE AND COMPLETE**

13. From reading the Opposition, Goldberg and Orr appear to argue that discovery was somehow incomplete or that Navidea withheld information from Goldberg during the discovery process. (Opp. at 6, 25.) Neither assertion is correct.

14. Both Magistrate Judge Freeman and Judge Caproni have commented at times as to how extensively litigated this case has been. The same is true of discovery. The docket contains numerous entries in which the parties sought the Court's intervention of discovery disputes. (*See, e.g.,* ECF Nos. 63, 126, 130, 133, 135.)

15. On August 6, 2020 and August 7, 2020, Magistrate Freeman conducted discovery conferences during which the parties presented their disputes to the Court and Magistrate Freeman issued rulings resolving those disputes. The discovery conference resulted in a stipulation incorporating Magistrate Judge Freeman's rulings which was "So Ordered" by Magistrate Freeman on August 14, 2020. (ECF No. 133.)

16. Included in that Stipulation was a requirement that "By August 21, 2020, Navidea and Macrophage shall produce communications with the NYSE, to the extent they have not already been produced, regarding potential delisting of Navidea by NYSE American, for the period of June 1, 2018, through December 31, 2018." (*Id.* at 4 ¶ 5.) Navidea and Macrophage complied with this order.

17. The So-Ordered Stipulation also provided: "The Court is advised that the parties have met and conferred regarding their remaining discovery disputes not covered in this So-Ordered Stipulation. To the extent that the parties are in a disagreement over the results of their meet and confer, the parties shall promptly contact the Court to arrange for a conference call." (*Id.* at 7 ¶ 5.)

4

18. The Stipulation further provided: "To the extent that the parties have any additional disputes in complying with or adhering to this So-Ordered Stipulation, the parties are instructed to meet and confer promptly raise any such issues with the Court." (*Id.* at 8 ¶ 6.)

19. There is no assertion in the declaration of Gregory Zimmer filed in support of Goldberg's Opposition to the Motion to Exclude Orr that discovery was not complete. (ECF No. 268.)

20. In fact, as described below, discovery in this case has been extensive, and the parties both advised the Court that discovery was complete.

21. On November 5, 2020, Goldberg submitted to Magistrate Freeman a letter requesting additional discovery. (ECF No. 151.)

22. On November 16, 2020, Magistrate Judge Freeman issued a text order that stated: "Before this Court addresses Dr. Goldberg's application to compel further deposition testimony from Mr. Latkin (ECF No. 151), counsel for Dr. Goldberg is directed to inform opposing counsel as to the specific Rule 30(b)(6) topics on which testimony is still required, and counsel for both parties are directed to confer in good faith as to whether alternatives to further testimony may exist, such as designating certain testimony given in Mr. Latkin's individual capacity as Rule 30(b)(6) testimony, or providing certain information in writing. If the parties remain unable to resolve their differences, then counsel for Dr. Goldberg should inform this Court as to the topics still at issue, and should submit complete copies of the transcripts of the testimony taken from Mr. Latkin to date, both in his individual and representative capacities. (HEREBY ORDERED by Magistrate Judge Debra Freeman) (Text Only Order) (Freeman, Debra) (Entered: 11/16/2020)." (ECF No. 167.)

23. Goldberg's counsel did not inform opposing counsel of any topics that he believed required further discovery.

24. On June 15, 2021, the parties submitted a joint letter to the Court on the status of discovery. (ECF No. 208.) Goldberg represented that he wanted to present expert testimony on the valuation of certain securities of Navidea and Macrophage. (*Id.*) Nowhere in that letter did Goldberg state that additional fact discovery was necessary to provide to his expert. In fact, all counsel (including Goldberg's counsel) specifically advised the Court that: "As of the date of this letter, the parties agree that fact *discovery is now complete*." (ECF No. 208 (emphasis added).)

## DISCOVERY REGARDING THE POTENTIAL INVESTMENTS IN MT

25. Concerning the valuation of Macrophage, Orr relies almost exclusively on the following statements made by Navidea to the NYSE in connection with its September 24, 2018 letter concerning a plan to come into compliance with the NYSE's listing requirements:

> "the Company's subsidiary, Macrophage Therapeutics, Inc. has been engaged in active discussions with several parties regarding **potential investment in the subsidiary of up to $25 million**. Any such investment in the subsidiary would also increase Navidea's stockholders' equity on a consolidated basis." (Emphasis added.)

(Orr. Aff. Ex. A at 3 [ECF No. 267-1].)

26. The September 24, 2018 letter, however, expressly recognized the uncertainty surrounding these transactions in that it further states: "[Navidea] has a contingency plan available to be executed in the event that the above strategies do not come to fruition within the anticipated timelines." (*Id.*)

27. While not contained in the declaration submitted by Goldberg's counsel, Orr suggests that discovery into the potential investment in MT was "limited." (Orr. Aff. at ¶ 27 [ECF

No. 267] ("I believe these inferences are well founded based on the limited facts concerning these offers made available to Dr. Goldberg during discovery."); *see also* Opp. at 6, 25.)

28. Orr ignores or omits that there was discovery and trial testimony regarding the nature of these investments, and that the parties represented to the Court that discovery was complete.

29. Goldberg was the CEO of Navidea up until August 14, 2018 and the CEO of Macrophage through February 20, 2019. In each of these capacities, Goldberg had knowledge regarding any potential investments in Macrophage.

30. On August 1, 2018, Goldberg characterized Navidea's 99% ownership in MT as "worthless." (*See* Trial Transcript of Goldberg dated December 2, 2020 ("Goldberg Dec. Tr.") at 473-74 ("I believe that, as it was, [Navidea's stake in MT] was worthless.").) A true and correct copy of certain excerpts of the Goldberg Dec. Tr. is annexed hereto as Exhibit 6.

31. Goldberg was asked at his deposition about potential investors in Macrophage, and he confirmed as follows:

    a. He was meeting with potential investors in Macrophage between August 14, 2018 and February 14, 2019. (*See* Ex. 5 (Goldberg Sept. Tr.) at 261:15-262:6.); and

    b. The only investors contacted were those which he had contact with prior to August 14, 2018. (*Id*. at 262:8-264:3.)

32. At trial in Delaware, Goldberg confirmed that investors never made a written offer because they "were not interested in investing" and Goldberg recounted the fact that ultimately "there were no investments in Macrophage." (*See* Ex. 6 (Goldberg Dec. Tr.) at 475-482.)

33. Goldberg had the opportunity to and did in fact question Navidea and Macrophage through their CEO, Jed Latkin, regarding the statements upon which Orr relies regarding the potential investment in Macrophage. Mr. Latkin testified:

    a. "Dr. Goldberg and Mr. Kaufman were having discussions with at that time I believe it was a company called Orbimed. There were a few others that I don't remember. And they were anticipating trying to raise money, somewhere between five and $10 million prior to the end of the year in Macrophage." (*See* Deposition Transcript of Jed Latkin dated October 26, 2020 ("Latkin Tr.") at 181:12-19.); and

    b. "Dr. Goldberg and Mr. Kaufman were in active discussions with Orbimed at the time." (Latkin Tr. 181:23-25.)

A true and correct copy of certain excerpts of the Latkin Tr. is annexed hereto as Exhibit 7.

34. Mr. Latkin discussed the basis for the statement to the NYSE on how value would be attributed to Navidea through an investment in Macrophage. (*Id.* at 182:2-184:9.)

35. And Mr. Latkin further testified that by February 14, 2019, there was no contemplated investment in Macrophage. (*Id.* 186:6-24.)

36. The Trial court in Delaware found that Macrophage was insolvent as of February 14, 2019. (Del. Op. at 46 [ECF No. 226-1].)

37. Orr does not address Macrophage's insolvency in his report, nor does he address Goldberg's or Latkin's testimony.

**NAVIDEA'S REVERSE SPLIT**

38. Orr's Affidavit and Goldberg's memorandum improperly supplement Orr's report regarding the relevance of Navidea's reverse stock split.

39. Goldberg has not asserted any claim in his counterclaims or third-party claim or otherwise that the 23.5 million shares referenced in the August 14, 2018 Agreement would not be subject to the 20-1 reverse split effectuated by Navidea on April 26, 2019.

40. All of the parties were aware that Navidea was seeking approval for a stock split at the time the August 14, 2018 agreement was executed.

41. On July 9, 2018, Navidea filed a definitive proxy statement ("Navidea Proxy Statement") *signed by Goldberg* which gave notice to stockholders of an annual meeting to be held on August 16, 2018. One of the stated purposes of the meeting was "To approve a potential amendment to our amended and restated certificate of incorporation to effect a reverse split of the Company's common stock, as determined by the Board of Directors at its discretion, of a ratio of not less than one-for-five and not more than one-for-twenty." (*See* Exhibit 8 at 3, 13-19.) A true and correct copy of certain excerpts of the Navidea Proxy Statement is annexed hereto as Exhibit 8.

42. On August 16, 2018, Navidea's stockholders approved the proposal authorizing the reverse stock split. A true and correct copy of the SEC filing noting stockholder approval of the reverse stock split is annexed hereto as Exhibit 9.

43. On April 19, 2019, Navidea's Board of Directors approved a one-for-twenty reverse split which became effective on April 26, 2019. A true and correct copy of the SEC filing noting board approval of the reverse stock split is annexed hereto as Exhibit 10.

Date: April 1, 2022
      New York, New York

By: /s/ Barry Kazan
    Barry M. Kazan, Esq.