Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Tel:  (914) 402-5683
GZimmer@GZimmerLegal.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In Re Navidea Biopharmaceuticals Litigation | Case No.: 1:19-cv-01578-VEC |
|---|---|

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DR. MICHAEL M. GOLDBERG'S PARTIAL MOTION *IN LIMINE* TO STRIKE CERTAIN OPINIONS OF PURPORTED EXPERT WILLIAM F. MURRAY PROFFERED BY NAVIDEA BIOPHARMACEUTICALS, INC.**

## **TABLE OF CONTENTS**

                                                **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

CONCLUSION ..................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                   **Page**

*Amorgianos v. Amtrak*,
   303 F.3d 256 (2d Cir. 2002) .................................................................................... 10

*Boucher v. U.S. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) ......................................................................................... 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ............................................... passim

*Duncan v. TheraTx, Inc.*,
   775 A.2d 1019 (Del. 2000) ....................................................................................... 3

*El Ansari v. Graham*,
   Case No. 17-cv-3963, 2019 WL 3526714 (S.D.N.Y. Aug. 2, 2019) ......................................... 2

*Janis v. Comm'r*,
   469 F.3d 256 (2d Cir. 2006) ..................................................................................... 3

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   593 F. Supp. 2d 549 (S.D.N.Y. 2008) ..................................................................... 5, 8

*In re Gen. Motors LLC Ignition Switch Litig.*,
   No. 14-CV-5810, 2017 U.S. Dist. LEXIS 213074,
   2017 WL 6729295 (S.D.N.Y. Dec. 28, 2017) ................................................................ 7

*In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*,
   341 F. Supp. 3d 213 (S.D.N.Y. 2018) ........................................................................ 7

*In re Mirena*,
   169 F. Supp. 3d 396 (S.D.N.Y. 2016) ........................................................................ 7

*Faulkner v. Arista Records LLC*,
   46 F. Supp. 3d 365 (S.D.N.Y. 2014) ......................................................................... 7

*In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*,
   858 F.3d 787 (3d Cir. 2017) .................................................................................... 7

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ..................................................................................... 3

*Rosen v. Ciba-Geigy Corp.*,
   78 F.3d 316 (7th Cir. 1996) ..................................................................................... 5

**Statutes**

Fed. R. Evid. 702 ............................................................................................... 1, 3
Fed. R. Evid. 801 ................................................................................................. 10

Fed. R. Evid. 804 .................................................................................................................. 10

Fed. R. Evid. 807 .................................................................................................................. 10

Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Dr. Michael M. Goldberg M.D. ("Dr. Goldberg") respectfully submits this memorandum of law in further support of his motion (the "Motion") *in limine* to strike certain opinions of purported expert witness William F. Murray ("Murray") proffered by Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") and Macrophage Therapeutics, Inc. ("Macrophage" and, together with Navidea, "Defendants") in this action on the ground that they do not satisfy the requirements of Rule 702 of the Federal Rules of Evidence.

## PRELIMINARY STATEMENT

In this action, among other claims, Dr. Goldberg alleges that Navidea breached an agreement between Navidea, Dr. Goldberg and Macrophage (the "August 14th Agreement") by failing to issue to him 23.5 million shares of Navidea stock "pursuant to Regulation D of the Securities Act of 1933." Although Navidea did purport to issue certain shares of Navidea stock, Dr. Goldberg contends that the shares were not issued "pursuant to Regulation D" and that Navidea improperly placed restrictive legends on the shares, which prevented Dr. Goldberg from trading the shares at any time up to today, in breach of the August 14th Agreement. Dr. Goldberg's counterclaims against Navidea seek, among other relief, damages representing his economic loss resulting from this breach.

In his opening memorandum of law (the "Moving Brief") in support of the Motion, Dr. Goldberg demonstrated that his own damages expert, Terry L. Orr ("Orr") and Murray both agree that the amount of damages suffered by Dr. Goldberg should be initially calculated by determining the appropriate time at which to value the shares and then multiplying the number of shares by the publicly available closing stock price at that time.[1] However, the Motion requests

---

[1] Dr. Goldberg's expert, Terry L. Orr ("Orr"), and Mr. Murray, disagree with regard to the timeframe when the shares should be valued.

that the Court strike proffered testimony by Murray to the extent that he intends to testify that once that initial valuation is established, it must be reduced by applying a "blockage discount" which Murray claims is necessary because the 23.5 million shares represent a volume of Navidea stock greater than Navidea's average daily public trading volume.

The bases for the Motion were (i) Murray employed an untested and anecdotal assumption (the "15% Assumption") that the sale of any amount of Navidea stock by Dr. Goldberg in excess of 15% of Navidea's average daily trading volume would *always* result in a drop in the market price of Navidea stock, whereas Navidea's actual trading history makes clear that it often traded at higher prices on days when its trading volume was exponentially higher than average; and (ii) Murray applied the 15% Assumption and improperly incorporated it into calculations using a decade-old study conducted by his firm (the "MPI Restricted Stock Study") which considered the discounts to market price at which *restricted* shares of stock were sold in *private placements* to calculate discounts relating to the Navidea stock at issue, which Murray agrees should be valued at a time when *all restrictions on trading were lifted* and the stock was *freely, publicly tradeable* using public market trading price data.

Despite Defendants' Herculean efforts to obfuscate, raise and then defeat straw-man arguments and misrepresent or misapply authority, it remains undisputed that (i) the 15% Assumption has never been tested, peer reviewed, published, or generally accepted and is contrary to Navidea's actual trading history; (ii) the MPI Restricted Stock Study has never been peer reviewed, tested or generally accepted for use in predicting discounts of *freely tradeable public shares*, as opposed to the *private placement of restricted, non-tradeable shares*; and (iii) Murray's use of the MPI Restricted Stock Study in conjunction with the 15% Assumption, by design, *always* predicts a reduction in Navidea's stock price *every time* shares in excess of 15%

of Navidea's average daily trading volume are sold, but Navidea's actual trading history categorically demonstrates that this is not the case.

The authority cited by Defendants makes clear that Orr's opinion taking into account high valuation trading days to value Dr. Goldberg's damages is wholly appropriate, and that no "blockage discount" or other form of discount should be applied. Defendants present no authority for the use of a "blockage discount" in the fashion Murray attempts to use it here.

## ARGUMENT

The "proffering party bears the burden of establishing admissibility under Rule 702 . . .." *El Ansari v. Graham*, Case No. 17-cv-3963, 2019 WL 3526714, at *3 (S.D.N.Y. Aug. 2, 2019) (citing *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)).

In the Opposition Brief, Defendants state that Murray takes issue with Orr's valuation of the Navidea shares based on a period of relatively high price and high trading volume without applying some form of "blockage discount."[2] However, the only authority cited by Defendants for this substantive area of damages law,[3] makes clear that Orr's use of high interim trading values is entirely permissible, and that no discount should apply.

Defendants cite *Duncan v. TheraTx, Inc.*, 775 A.2d 1019 (Del. 2000), and argue that it precludes Orr from offering a valuation based on a time of high market prices for Navidea stock. (*See* Opposition Memo at 2.) However, *Duncan* stands for the exact opposite proposition. In *Duncan* the defendant placed temporary restrictions on the sale of certain shares of stock held by the plaintiffs for a period of approximately five (5) months.[4] The restrictions were lifted long

---

[2] "DLOM" (discount for lack of marketability) is not a term used in Murray's report. It was raised for the first time by Defendants' Opposition Brief.

[3] As Defendants' accurately state, while the law of the Second Circuit with regard to admissibility of expert testimony applies in this case, the substantive law of Delaware supplies the proper valuation of damages because the August 14th Agreement contains a Delaware choice of law provision.

[4] In this case the restrictive legends rendering the Navidea shares untradeable were put in place when the shares were purportedly issued to Dr. Goldberg in November 2018 and remain in place today.

3

before trial.  The Delaware Supreme Court ruled that in valuing damages a two-step process should be employed.  The plaintiff should be entitled to the highest trading price during the relevant valuation period while the restrictions were in place, reduced by the average trading price for the appropriate valuation period after the restrictions were lifted.[5]  There is no discussion in *Duncan* of any form of discount being applied, much less the form of draconian "blockage discount" Murray purports to employ.  Simply put, Defendants' own authority makes clear that Murray's discount methodology is not relevant to the valuation of Navidea shares that are alleged to have been improperly restricted from sale.

The single case Defendants cite with respect to "blockage discounts" involved the sale of hundreds of pieces of original art, *not* publicly traded securities, and was a tax case.  *See Janis v. Comm'r*, 469 F.3d 256, 258 (2d Cir. 2006).  *All* of the articles cited by Defendants regarding "blockage discount" discuss them in the context of valuations for tax or matrimonial purposes.  Defendants do not cite a single authority for the proposition that a "blockage discount" should be applied in the context of valuing damages in a lawsuit where a plaintiff alleges that publicly traded stock was improperly restricted from transfer or sale by the defendant.

Put succinctly, Defendants have not submitted anything other than obfuscation and misrepresentation of cited authority in support of their argument that a blockage discount should be applied.  This simply does not satisfy Defendant's burden to prove its admissibility by a preponderance of evidence.

Navidea's market trading history also clearly demonstrates that there is no reasonable basis to assume that Dr. Goldberg could not have sold his Navidea shares without causing a decline in Navidea's stock price.  In the Moving Brief, Dr. Goldberg demonstrated that during

---

[5] In this case, no such reduction is possible because the restrictions have never been lifted.

4

the time period since Dr. Goldberg argues that the Navidea shares he is entitled to under the August 14th Agreement should have been freely tradeable, Navidea's stock frequently traded at higher prices on days on which trading volume exceeded its average daily trading volume by percentages exponentially higher than the 15% threshold applied by Murray. (*See* Moving Brief at 15-16.) In opposition to the Motion Defendants do not dispute this. In fact, they do not even address it. (*See generally*, Opposition Brief.)

In the Moving Brief, Dr. Goldberg demonstrated that Murray applied a discount methodology to the market value of the Navidea shares without any rationale relating to Navidea's trading history or any other factor other than a results-driven desire to reduce the amount of damages that Dr. Goldberg may recover. (*See* Moving Brief at 9-12.) In response, Defendants *do not* submit any rationale for the application of a discount methodology or any explanation from Mr. Murray as to why he did so. (*See generally*, Opposition Brief.)

The Moving Brief demonstrated that Murray himself testified at deposition that the 15% Assumption was a made-up threshold that had never been tested, peer reviewed or even informally evaluated. It was developed anecdotally by his firm before he joined it through discussions with unidentified individuals at unidentified times, and Murray has no information about how or why it was adopted, nor does he have any basis to defend it other than his "sense" that it is appropriate. (*See* Moving Brief at 9-12.) "[I]t is well established that an 'insightful, even an inspired, hunch' must be excluded if it 'lacks scientific rigor.'" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 593 F. Supp. 2d at 562 (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996)). Defendants do not provide any response that could support a finding that Murray's 15% Assumption is anything other than "an insightful, even an inspired, hunch" that utterly lacks scientific rigor.

5

Murray's use of the 15% Assumption was not based on his own knowledge and experience, nor on any scientific or objective analysis. He could not (and did not in response to the Motion) identify a single specific circumstance in which it had been used, much less approved, and had no response (including in opposition to the Motion) to the fact that the results derived using the 15% Assumption was proven demonstrably and directionally incorrect by Navidea's actual trading history during the relevant time period. (*See generally*, Opposition Brief.) Mr. Murray also testified that he did *no* research regarding the relationship of Navidea's trading volume to its trading price during the relevant time period to test or attempt to confirm the accuracy of his 15% Assumption. Tellingly, Murray admitted at deposition that the 15% Assumption is a "rule of thumb" that could be wrong with respect to an individual company's stock and that "[i]t could be possible that you could sell shares and there's no impact, or you could sell five shares and there is a big impact." (*See* transcript of Murray Deposition, annexed to the Declaration of Gregory Zimmer, Esq. submitted with Moving Brief (hereinafter, the "Zimmer Decl."), as Exhibit A, Dkt. No. 255-1, at 131:24-132:6.)

Murray admitted at deposition that he did no research regarding Navidea or its trading history to determine whether a "discount" was appropriate. (*See* Moving Brief at 13-16.) He simply assumed (as he testified was the case in every other engagement he and his firm have been involved in) that the 15% Assumption applies any time the stock of any company is traded in a volume that exceeds its daily average trading volume by 15%, and that any such trade will *always* result in a decline in its stock price. (*Id.*) Had Murray made any attempt to test his theory he would have found that Navidea's stock frequently traded on days on which its trading volume exceeded its daily average by double, triple or greater at higher prices than on immediately preceding days with average trading volume. (*Id.*) Thus, Murray's 15%

6

Assumption, which resulted in applying an *assumed* discount on *every* day Navidea's trading volume exceeded its daily volume by 15% is not only untested, but also inherently unreliable based on Navidea's real world trading history.

In short, without conducting any analysis of Navidea's trading history or providing any rationale relevant to the facts of this case, Murray applied an anecdotal, untested 15% Assumption that would *by design* find that any sale of Navidea stock in volumes in excess of 15% of its average daily trading volume would drive down the price of Navidea stock when Navidea's actual performance often demonstrated the opposite relationship between volume and price during the relevant timeframe. This is exactly the type of result-driven analysis that *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), is intended to preclude. *See*, *e.g.*, *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig.*, 341 F. Supp. 3d 213, 241 (S.D.N.Y. 2018) ("Opinions that assume a conclusion and 'reverse-engineer[] a theory' to fit that conclusion are, similarly, inadmissible."); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-CV-5810, 2017 U.S. Dist. LEXIS 213074, 2017 WL 6729295, at *8 (S.D.N.Y. Dec. 28, 2017) (excluding expert opinion because it "reveals Plaintiffs' experts to be 'reverse-engineering a theory to fit the desired outcome.'" (citing *In re Mirena*, 169 F. Supp. 3d 396, 430 (S.D.N.Y. 2016); *see also Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014) ("[M]ethodology . . . aimed at achieving one result . . . is unreliable, and . . . must be excluded."); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787, 796-800 (3d Cir. 2017) (affirming exclusion of "conclusion-driven" analysis).

The Motion also seeks to preclude Murray from relying on a study conducted by his firm (the "MPI Restricted Stock Study") of *private placements* of *restricted stock* to calculate a

discount to apply to the *public sale of freely tradeable shares*. Both Murray and Orr agree that Dr. Goldberg's damages in this case should be valued based on the public trading price of Navidea shares at *a time after all restrictions on Dr. Goldberg's trading of the shares should have been removed*. (*See* Murray Report, Zimmer Decl. Exhibit B, Dkt. No. 256-2, at 6; Orr Report, Exhibit 1 to Declaration of Barry Kazan, Esq. submitted with Opposition Brief (hereinafter, the "Kazan Decl."), Dkt. No. 265-1, at 21.) The MPI Restricted Stock Study developed a model for predicting the amount of discount that a willing buyer and a willing seller would accept in a transaction *at a time when the shares were not tradeable and would not be tradeable for a significant period of time*. (*See generally* Kazan Decl. Ex. 3, Dkt. No. 265-3.) This is exactly the type of "apples to oranges" comparison that is precluded under *Daubert*. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

Defendants do not even attempt to explain what similarities might exist or how a study regarding private placements of *restricted* shares can properly be used to predict the behavior of freely tradable *unrestricted* shares. (*See generally* Opposition Brief.) Instead, they tout the fact that the MPI Restricted Stock Study uses multiple regression analysis and has been used repeatedly and is "generally accepted." However, even where a methodology is rigorous and generally accepted for one purpose, it cannot simply be applied for a different purpose without explanation, and its pedigree in other contexts is irrelevant to its admissibility under *Daubert* for other purposes. *See*, *e.g.*, *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 593 F. Supp. at 562 ("transferring the results from a study of one substance to another has no validity.")

The moving brief also questioned whether the MPI Restricted Stock Study has ever been peer reviewed because at his deposition Murray could not say whether the MPI Restricted Stock Study had been peer reviewed and agreed to provide that information later but never did so. (*See*

Moving Brief at 14.) Rather than provide a straightforward statement from Murray or someone from his firm that the study has been peer reviewed, Defendants provide a copy of the MPI Restricted Stock Study which does not state that it was peer reviewed. (*See* Exhibit 3 to the Declaration of Barry Kazan, Dkt. No. 265-3.) They also provide a URL link to a web page dated March 1, 2019, stating that *at that time* the journal in which the study purportedly was published was a peer reviewed journal. It does not state that the journal was peer reviewed in the Spring of 2011 when the MPI Restricted Stock Study purportedly was published in the journal. (*See* Opposition Brief at 5, n. 3.) The second web page cited by Defendants is a *current* page containing links for submission of articles and does not discuss peer review or state that the journal was peer reviewed in 2011. (*Id.*)

Given that Murray, represented by Defendants' counsel at deposition, agreed to provide direct information about whether the MPI Restricted Stock Study had been peer reviewed (*see* Moving Brief at 14) but Defendants decided to cite to the article and these web pages, which do not address the relevant time period instead, Defendants clearly have not met their burden in proving that even the MPI Restricted Stock Study itself was peer reviewed.

Even more important, Defendants' Opposition Brief makes clear that the MPI Restricted Stock Study has never been peer reviewed when used in conjunction with the 15% Assumption. The copy of the study submitted by Defendants does not mention the 15% Assumption. (*See* MPI Restricted Stock Study, Kazan Decl. Exhibit 3.) And while the preamble to the study says that "the predicted private placement discounts derived from the [MPI Restricted Stock Study] can be used *as a basis for* determining discounts for lack of marketability for . . . illiquid blocks of publicly traded stock," the study does not explain how that could be done, nor does it mention the 15% Assumption. (*See generally*, MPI Restricted Stock Study, Kazan Decl. Ex. 3.)

In sum, Murray was charged with driving down the amount of Dr. Goldberg's damages and did so by taking an "off the shelf" methodology developed in a completely different context and adding to it an untested assumption of unknown provenance to get the job done. "When an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Amtrak*, 303 F.3d 256, 266 (2d Cir. 2002).

Confronted with the Motion, and stuck with the burden of convincing the Court by a preponderance of evidence that Murray's assumptions and methodology satisfy the *Daubert* standard, Defendants present nothing more than misrepresentations of cited cases, and straw-man arguments that have nothing to do with the basis for the Motion.[6] In short, Defendants have utterly failed to satisfy the requirements for admission of Mr. Murray's testimony regarding his discount methodology and the Motion should be granted.

## CONCLUSION

For the foregoing reasons, and as set forth more fully in the Moving Brief, the Court should grant Dr. Goldberg's Motion and should grant Dr. Goldberg such other and further relief as the Court deems just and proper.

Dated: Westchester, New York
April 1, 2022

Respectfully submitted,

/s/ Gregory Zimmer

---

[6] Defendants spend considerable time arguing that if Mr. Murray's discount methodology is struck that Defendants can run away from the portion of his report opining that unless a discount overlay is appropriate Dr. Goldberg's damages based on his claims regarding the Navidea shares is no less than $2,998,400. However, the Motion was solely to *exclude* the discount methodology portion of Murray's report. Defendants themselves go out of their way to argue that Mr. Murray's other opinions should be admitted even if the Motion is successful. Although this is not at issue in this Motion, Defendants do not explain why this single opinion should be exempt from their own argument, nor why an admission by Defendants' agent for purposes of valuing Dr. Goldberg's damages should not be admissible if Defendants decide at some later date that it is against their interest. *See* Fed. R. Evid. 801(d)(2). 804(b)(3), 807.

                                   Gregory Zimmer, Esq.
                                   142 New Chalet Drive
                                   Mohegan Lake, NY 10547
                                   Phone: 914.402.5683
                                   Fax: 914.402.5683
                                   Email: GZimmer@GZimmerLegal.com