UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: NAVIDEA BIOPHARMACEUTICALS
LITIGATION

Case No.:  1:19-cv-01578-VEC

ECF Case

**PLAINTIFF/COUNTERCLAIM-DEFENDANT NAVIDEA BIOPHARMACEUTICALS,
INC.'S MEMORANDUM OF LAW IN OPPOSITION TO MICHAEL M. GOLDBERG'S
APPLICATION FOR ADVANCEMENT OF CERTAIN FEES AND EXPENSES**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.      APPLICABLE LEGAL STANDARD. ................................................................ 2

II.     DR. GOLDBERG AGAIN FAILS TO COMPLY WITH THE COURTS
        ORDERS. .......................................................................................................... 6

III.    DR. GOLDBERG FAILS TO JUSTIFY AN AWARD OF FEES AND COSTS
        ASSOCIATED WITH TIME SPENT ON PREPARING AND ATTENDING
        DEPOSITIONS. ............................................................................................... 10

        A.      Dr. Goldberg Does Not Provide Any Evidence in Support of the Allocations
                Applied to Each Deposition. ................................................................... 10

        B.      Dr. Goldberg Should Not Be Advanced Any Fees and Costs Related to Mr.
                Weisbrot's Participation in Certain Depositions. .................................... 14

IV.     DR. GOLDBERG SHOULD NOT BE AWARDeD ANY FESS AND COSTS
        ASSOCIATED WITH HIS DRAFT SUMMARY JUDGMENT MOTION. .......... 16

        A.      Dr. Goldberg Does Not Provide Any Evidence in Support of the Allocations
                Applied to the Rule 56.1 Statement and Draft Memorandum of Law. .......... 17

        B.      Mr. Zimmer's Base Rate Should Be Reduced. ........................................ 19

        C.      The Time Entries Related to the Rule 56.1 Statement Are Too Vague to be
                Advanced. ............................................................................................. 21

V.      COSTS ............................................................................................................ 22

VI.     THE APPLICATION IS RIFE WITH VARIOUS FORMS OF IMPROPER
        BILLING. ........................................................................................................ 23

        A.      Unreasonable Time. ............................................................................... 23

        B.      Calculation Errors. ................................................................................ 24

CONCLUSION ............................................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Agent Orange Prod. Liab. Litig.*,
　818 F.2d 226 (2d Cir. 1987)................................................................................20

*Alfonso v. New Day Top Trading, Inc.*,
　2020 U.S. Dist. LEXIS 116047 (S.D.N.Y. June 29, 2020) *adopted by,* 2021
　U.S. Dist. LEXIS 194150 (S.D.N.Y. Oct. 7, 2021) ........................................20, 22

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
　522 F.3d 182 (2d Cir. 2007).................................................................................3

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
　537 F.3d 132 (2d Cir. 2008).................................................................................2

*Blum v. Stenson*,
　465 U.S. 886 (1984)...........................................................................................14

*Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*,
　2014 U.S. Dist. LEXIS 79869 (S.D.N.Y. May 19, 2014) *adopted by,* 2014
　U.S. Dist. LEXIS 79037 (S.D.N.Y. June 9, 2014)................................................20

*Francois v. Mazer*,
　2012 U.S. Dist. LEXIS 111439 (S.D.N.Y. Aug. 6, 2012) ......................................4

*Genger v. Genger*,
　2017 U.S. Dist. LEXIS 80010 (S.D.N.Y May 22, 2017) *adopted by,* 2017 U.S.
　Dist. LEXIS 88091 (S.D.N.Y. May 30, 2017)......................................................20

*H.B. Auto. Grp., Inc. v. Kia Motors Am., Inc.*,
　2018 U.S. Dist. LEXIS 125538 (S.D.N.Y. July 25, 2018) *adopted by,* 2018
　U.S. Dist. LEXIS 142893 (S.D.N.Y. Aug. 22, 2018) ...........................................19

*Hensley v. Eckerhart*,
　461 U.S. 424 (1983)...........................................................................................2, 4

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
　2020 U.S. Dist. LEXIS 175752 (S.D.N.Y. Sept. 24, 2020)...................................19

*HTV Indus., Inc. v. Agarwal*,
　317 F. Supp. 3d 707 (S.D.N.Y. 2018)..................................................................19

*Johnson v. Ga. Highway Express Inc.*,
　488 F.2d 714 (5th Cir. 1974) ...............................................................................3

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998).............................................................................4, 20

*Lane Crawford LLC v. Kelex Trading (CA) Inc.*,
  2013 U.S. Dist. LEXIS 170239 (S.D.N.Y. Dec. 3, 2013) *adopted by,* 2014
  U.S. Dist. LEXIS 48408 (S.D.N.Y. Apr. 3, 2014)..................................................19

*Lee v. Santiago*,
  2013 U.S. Dist. LEXIS 130141 (S.D.N.Y. Aug. 15, 2013).......................................5

*Local 32B-32J, SEIU v. Port Auth.*,
  180 F.R.D. 251 (S.D.N.Y. 1998) .........................................................................22

*Luciano v. Olsten Corp*,
  109 F.3d 111 (2d Cir. 1997)..................................................................................23

*Mawere v. Citco Fund Servs. (USA) Inc.*,
  2011 US Dist. LEXIS 149111 (S.D.N.Y. Sept. 16, 2011) *adopted by,* 2011
  U.S. Dist. LEXIS 148538 (S.D.N.Y. Dec. 27, 2011) ............................................22

*McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*,
  450 F.3d 91 (2d Cir. 2006)......................................................................................2

*Millea v. Metro-North R.R.*,
  658 F.3d 154 (2d Cir. 2011).....................................................................................2

*N.Y. State Ass'n for Retarded Children v. Carey*,
  711 F.2d 1136 (2d Cir. 1983)..................................................................................5

*N.Y.C. Dist. Council of Carpenters v. Rock-It Contr., Inc.*,
  2010 U.S. Dist. LEXIS 30204 (S.D.N.Y. Mar. 26, 2010) *adopted by,* 2010
  U.S. Dist. LEXIS 38163 (S.D.N.Y. Apr. 19, 2010)..................................................3

*Quaratino v. Tiffany & Co.*,
  166 F.3d 422 (2d Cir. 1999).....................................................................................4

*Rice v. NBCUniversal Media LLC*,
  2019 U.S. Dist. LEXIS 114690 (S.D.N.Y. July 10, 2019) ...................................6, 7

*Seitzman v. Sun Life Assurance Co. of Can.*,
  311 F.3d 477 (2d Cir. 2002) *adopted by,* 2013 U.S. Dist. LEXIS 129129
  (S.D.N.Y. Sept. 10, 2013).........................................................................................5

*Simmonds v. N.Y.C. Dep't of Corr.*,
  2008 U.S. Dist. LEXIS 74539 (S.D.N.Y. Sept. 15, 2008).....................................20

*Simmons v. N.Y.C. Transit Auth.*,
  575 F.3d 170 (2d Cir. 2009)......................................................................................3

*Supreme Oil Co. v. Abondolo*,
    568 F. Supp. 2d 401 (S.D.N.Y. 2008).......................................................................3

*Tucker v. City of N.Y.*,
    704 F. Supp. 2d 347 (S.D.N.Y. 2010).......................................................................5

*United States ex. rel., Mikes v. Straus*,
    274 F.3d 687 (2d Cir. 2001), *overruled on other grounds by*, 136 S. Ct. 1989
    (2016)..........................................................................................................................4

*Vishipco Line v. Charles Schwab & Co.*,
    2003 U.S. Dist. LEXIS 6820 (S.D.N.Y. Apr. 22, 2003)..........................................22

*Williams v. N.Y.C. Hous. Auth.*,
    975 F. Supp. 317 (S.D.N.Y. 1997) ........................................................................13

*Yea Kim v. Nail Plaza, Inc.*,
    2009 U.S. Dist. LEXIS 1992 (S.D.N.Y Jan. 12, 2009),
    *aff'd by,* 523 F. App'x 28 (2d Cir. 2013) ...............................................................4

## Other Authorities

Federal Rule of Civil Procedure 16(f) .......................................................................6

Federal Rule of Civil Procedure 30(b)(6) ..................................................................6

Federal Rule of Civil Procedure 30(d)(3) ................................................................15

Local Civil Rule 56.1 ........................................................................... *passim*

Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") submits this memorandum of law in opposition to Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Michael M. Goldberg, M.D.'s ("Goldberg") application for attorneys' fees (the "Application").

## PRELIMINARY STATEMENT

To say that this Court is familiar with Dr. Goldberg's claims for advancement would be an understatement. For over two years now, Dr. Goldberg has been ignoring clear orders of the District Court and the Magistrate Judge by seeking fees, without justification, specification, or substantial clarity as to how lodestar percentages are being formulated and applied, and for tasks that do not fall within the scope of the advancement order. In its last Report and Recommendation regarding Dr. Goldberg's application for attorneys' fees, which was adopted in full by District Judge Valerie Caproni, the Court stated that it was "left with the distinct impression that the allocation percentages being proposed by counsel are based less on the reality of the work that they performed at any given time, than on their desire to push the maximum amount of time possible into those categories of work for which … advancement ha[s] been held to be available, so as to obtain the greatest possible award for their client." (*See* Report and Recommendation, dated April 21, 2021 ("4/21/21 R&R") at 4 [ECF No. 198]; Opinion and Order, dated May 27, 2021 ("5/27/21 O&O") at 4 [ECF No. 207]). The latest application is more of the same.

Although Dr. Goldberg's current Application provides a modicum of detail as to how he calculates the percentages of fees for which he is seeking advancement, he fails to provide any evidentiary support to justify those calculations or the guiding principles for how he determined what entries related to which claims. Rather, Dr. Goldberg continues to expect Navidea and the Court to simply "take his word" that the percentages he is applying to, *inter alia*, time spent on depositions and time spent drafting memorandums are accurate. Moreover, Dr. Goldberg once

again fails, as ordered by the Court on numerous occasions, to specify the time spent by Dr. Goldberg defending *each* of Navidea's three claims remaining in this case.

Dr. Goldberg has consistently failed to follow the guidelines set forth by this Court as well as applicable case law. His latest Application is no different. On no less than three occasions, the Court has warned Dr. Goldberg that it was prepared to reject his requests for advancement in their entirety as a sanction for his failure to comply with Court orders. (*See* Opinion and Order, dated August 24, 2020 ("8/24/20 O&O") at 7, 11 [ECF No. 134]; 5/27/21 O&O at 17; and Opinion and Order, dated March 7, 2022 ("3/7/22 O&O") at 11 [ECF No. 261]). Navidea respectfully submits that the time has come for the sanction to be imposed and Dr. Goldberg's Application should be rejected in its entirety. In the event that the Court does not select this remedy, the amount subject to advancement should be rejected or reduced for the reasons set forth below.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARD.

At the outset, the Court has incorporated and applied the following legal standard in its prior opinions. (*See* 8/24/20 O&O at 5-6; 5/27/21 O&O at 5-7; *see also* Report and Recommendation, dated July 9, 2020 ("7/9/20 R&R") at 39-40 [ECF No 119]; 4/21/21 R&R at 12-16). The touchstone for an award of attorneys' fees is reasonableness. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). District courts are provided "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). The Second Circuit has held that in determining what represents a reasonable attorney fee, courts must calculate the "lodestar" figure. *See Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011). The "lodestar" figure is computed by multiplying a reasonable hourly rate by the number of reasonably expended hours. *See McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). However, in

2

abandoning the "lodestar" term, but keeping its basic methodology, the Second Circuit has held that the better course is for district courts to bear in mind that the reasonable hourly rate is the rate a paying client would be willing to pay - the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007); *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ("[t]he presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay…'") (citation omitted); *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008) ("[i]n the Second Circuit, fee awards are determined by the 'presumptively reasonable fee' method.") (citation omitted).  In determining what rate a paying client would be willing to pay, courts should consider, *inter alia*, the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974), while keeping in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  *See N.Y.C. Dist. Council of Carpenters v. Rock-It Contr., Inc.*, 2010 U.S. Dist. LEXIS 30204, at *9-10 n.5 (S.D.N.Y. Mar. 26, 2010) (internal citations omitted), *adopted by,* 2010 U.S. Dist. LEXIS 38163 (S.D.N.Y. Apr. 19, 2010).

The *Johnson* factors, in turn, include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or by the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases."  *Id.* (citing *Johnson*, 488 F.2d at 717-19).  Therefore, in order to determine what the "presumptively reasonable fee" would be, courts must look at the factors considered under both the "lodestar" and *Johnson* approaches.

3

In determining the number of hours reasonably expended, the court "should exclude excessive, redundant, or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999*); see also Hensley*, 461 U.S. at 434 (the district court should exclude from the calculation "hours that were not reasonably expended") (citation omitted). The district court should require that a fee application be consistent with "billing judgment." *Hensley*, 461 U.S. at 434. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* (emphasis in original). "'The critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Francois v. Mazer*, 2012 U.S. Dist. LEXIS 111439, at *5 (S.D.N.Y. Aug. 6, 2012) (quoting *Yea Kim v. Nail Plaza, Inc.*, 2009 U.S. Dist. LEXIS 1992 (S.D.N.Y Jan. 12, 2009)), *aff'd by*, 523 F. App'x 28 (2d Cir. 2013). The party seeking fees bears the burden of establishing the reasonable number of hours claimed by submitting contemporaneous time records showing "the name of each attorney working on the file, the date the work was done, the hours spent, and the nature of the work performed." *United States ex. rel., Mikes v. Straus*, 274 F.3d 687, 706 (2d Cir. 2001), *overruled on other grounds by*, 136 S. Ct. 1989 (2016). Counsel "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. If the district court finds the fee applicant's claim excessive, it may assign appropriately reduced hours to particular work or particular activities, decreasing or even disallowing those claims. *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (In exercising its discretion, the court may "deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'") (citation omitted).

In order to determine whether the hours billed can be compensated, the Court should "look[] initially to the amount of time spent on each category of tasks, as reflected in

contemporaneous time records … and then decide[] how much of that time was 'reasonably expended.'" *Tucker v. City of N.Y.*, 704 F. Supp. 2d 347, 354 (S.D.N.Y. 2010) (quoting *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)), *adopted by, in part, motion granted by, judgment entered by*, 704 F. Supp. 2d 347 (S.D.N.Y. 2010).  "Where the requested amount of fees is excessive because the number of hours stated is greater than should have been required for the work performed, the Court should reduce the stated hours accordingly." *Lee v. Santiago*, 2013 U.S. Dist. LEXIS 130141, at *8 (S.D.N.Y. Aug. 15, 2013) (citing *Seitzman v. Sun Life Assurance Co. of Can.*, 311 F.3d 477, 487 (2d Cir. 2002)), *adopted by*, 2013 U.S. Dist. LEXIS 129129 (S.D.N.Y. Sept. 10, 2013).  A reduction is also warranted where the attorneys' time records are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed or the time expended.  *Id.* at *9 (other citations omitted).

As stated previously, the standard detailed above is in accordance with the Court's own prior rulings in which it applied this very standard to Dr. Goldberg's previous applications for advancement.  (*See* 8/24/20 O&O at 5-6; 5/27/21 O&O at 5-7; *see also* 7/9/20 R&R at 39-40; 4/21/21 R&R at 12-16).  Significantly, after applying this standard, the Court decreased Dr. Goldberg's prior request for advancement from over $150,000 to $1,237.50.[1]  (*See* 5/27/21 O&O at 4; 4/21/21 R&R at 5).  The same analysis should be applied to Dr. Goldberg's current Application.  Moreover, the lack of any evidentiary support to justify Dr. Goldberg's new allocations evidence the appropriateness of a substantial across-the-board percentage reduction in fees because, *inter alia*, Dr. Goldberg has failed to comply with the Court's numerous orders to provide support for the fees he is seeking.  (*See* 8/24/20 O&O at 5-7, 12; 5/27/21 O&O at 17; 3/7/22 O&O at 11; *see also* 7/9/20 R&R at 39-40; 4/21/21 R&R at 12-16).

---

[1] In addition, after applying the same legal standard, the Court also decreased Dr. Goldberg's request for indemnification from $66,183 to $14,955. (*See* 5/27/21 O&O at 4; 4/21/21 R&R at 5).

## II.     **DR. GOLDBERG AGAIN FAILS TO COMPLY WITH THE COURTS ORDERS.**

This Court is intimately familiar with Dr. Goldberg's arduous briefing and prior non-compliance with the Court's orders, which is fully recounted in both Magistrate Judge Freeman's 7/9/20 R&R, and District Judge Caproni's adoption of the R&R (the 5/27/21 O&O).  Specifically, on no less than three occasions, the Court stated that if Dr. Goldberg did not comply with its orders, his advancement request would be denied as a sanction.  (*See* 8/24/20 O&O at 12 ("failure to comply with [its] Order will likely result in the Court determining that Goldberg has withdrawn his motion for advancement of fees with prejudice as a sanction for failure to comply with court orders."); 5/27/21 O&O at 17 ("Goldberg's failure to require his attorneys to maintain appropriate time records so that the Court can comply with its responsibility to review requested fees for reasonableness will redound to his detriment, not Navidea's."); 3/7/22 O&O at 11 ("Failure to comply with this Order will likely result in the Court determining that Goldberg has withdrawn his motion for advancement of fees with prejudice as a sanction for failure to comply with Court orders.")).  As demonstrated further below, Dr. Goldberg's latest Application is yet another example of Dr. Goldberg's intransigence and his unwillingness to comply with the Court's express orders and consequently, Dr. Goldberg's Application should be "withdrawn … with prejudice as a sanction for failure to comply with court orders."  (*See* 8/24/20 O&O at 12); *see also Rice v. NBCUniversal Media LLC,* 2019 U.S. Dist. LEXIS 114690, at *7 (S.D.N.Y. July 10, 2019) (district court may impose sanctions under Federal Rule of Civil Procedure 16(f) when there is "clear and convincing evidence that counsel disregarded a clear and unambiguous … pretrial order.")

The 5/27/21 O&O explicitly stated, in multiple instances, that Dr. Goldberg is "to submit copies of his attorneys' billing records that specifically detail the time each attorney spent working

on each of Navidea's claims[2] and explaining the nature of the work performed." (*Id.* at 2 (emphasis added); *see also id.* at 10-11 ("this Court and Magistrate Judge Freeman have repeatedly ordered Goldberg to produce billing records that *specifically detail the time spent defending … each claim in this case* so that the Court can assess the reasonableness of the request attorneys' fees") (emphasis added); *id.* at 17 (Dr. Goldberg and his attorneys "can either start keeping time records in sufficient detail that a reviewing court can ascertain how much time was spent on specific tasks that are tied to *specific claims*…")). In addition, Judge Caproni's 3/7/22 O&O, states that Dr. Goldberg "must submit copies of hist attorneys' billing records *specifically detailing* the amount of time spent litigating *each of Navidea's remaining claims in this case*." (*Id.* at 11 (emphases added)). Moreover, Dr. Goldberg was also required to submit attorney billing records that "specify which time entries correspond to time spent prosecuting *each* counterclaim."[3] (*See* 8/24/20 O&O, at 12 n.10 (emphasis in original); *see also* 4/21/21 R&R at 17 ("not only is Goldberg's request for advancement of such fees not supported by attorney time records that break out, as the Court explicitly required, the time spent on those counterclaims")).

Dr. Goldberg once again fails to comply with either the 4/21/21 R&R, the 5/27/21 O&O, and the 3/7/22 O&O. Specifically, Dr. Goldberg again fails to separate his billing records detailing the amount of "time spent defending … each claim in this case." (*See generally* Zimmer Decl. Exs A-B). Rather, Dr. Goldberg groups all of the time he is requesting as advancement for as "fees and/or expenses relating to Dr. Goldberg's defense of Navidea's claims against him in this

---

[2] As the Court is aware, Navidea currently has three claims against Dr. Goldberg including: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory judgment brought by Navidea against Dr. Goldberg seeking a declaration that Dr. Goldberg's conduct excused Navidea from having to perform the agreement entered into between Navidea, Macrophage, and Dr. Goldberg on August 14, 2018 (the "August Agreement"). (*See* First Amended Complaint ("FAC") ¶¶ 92-122 [ECF No. 15]).

[3] By operation of the Orders entered on December 26, 2019 and April 1, 2020, Dr. Goldberg has two remaining claims in this action: (1) breach of the August Agreement against Navidea for failing to use to Dr. Goldberg the 23.5million shares of Navidea common stock in the form required by the August Agreement [ECF No. 31 at 87]; and (2) breach of the August Agreement against Macrophage for failing to issue to Dr. Goldberg the Super Voting Common Shares required by the August Agreement [ECF No. 31 at 100].

action….."  (App. at 5).  Out of the 126 time entries that Dr. Goldberg is seeking advancement for, there are a total of 7 entries in which Dr Goldberg's counsel state that such entry is related to the defense of Navidea's claims against Dr. Goldberg.  (*See* Declaration of Gregory Zimmer, dated April 8, 2022 ("Zimmer Decl.") Ex. B at 18 (November 13, 2020 time entry [ECF No. 277-2]; *id.* at 8 (May 28, 2021 time entry [ECF 277-4]; *id.* at 13-14 (June 10 and 16, 2021, and July 3, 6, and 15, 2021 time entries)).  However, none of those entries specify which specific claim of Navidea's that they relate to.  (*See* 4/21/21 R&R at 8 ("although Goldberg had submitted his attorneys' overall billing records, he had 'fail[ed] to detail the amount of time spent defending each remaining claim …' rendering the Court 'unable to assess the reasonableness' of the fees incurred in defense of the remaining claims.") (citation omitted)).  Rather, Dr. Goldberg simply "seeks advancement of 100% of … fees and expenses" "relating … to Dr. Goldberg's defense of Navidea's claims against him in this action."  (App. at 5).

This Court has stated that it "does understand that, in certain circumstances, it would have been difficult, if not impossible, for counsel to have parsed their work precisely on this case."  (*See* 4/21/21/ R&R at 3).  However, this Court also has stated that:

> For this reason, this Court would have been willing, in some situations, to accept reasonable allocation estimates — such as, for example, by attributing one-ninth of counsel's time at a general case-management conference to each of the nine claims extant in the action at the time of the conference.  In most instances where an allocation of time would be needed, however, this Court would have expected counsel to rely on some type of task-specific measure to justify the allocation made.

(*Id.*).  A review of the Application, including the Zimmer Declaration, makes clear that Dr. Goldberg's counsel did not "rely on some type of task-specific measure to justify the allocation[s] made."  (*Id.*).  This Court has stated that counsel for Dr. Goldberg "should have endeavored to allocate their time to *particular claims* based on some demonstrable logic from which the Court

8

could conclude that each allocation was appropriate."[4]  (*Id.* at 4) (emphasis added).  A review of the invoices submitted by Dr. Goldberg do not show a single attempt by Dr. Goldberg's counsel to "allocate their time to particular claims based on some demonstrable logic."  (*Id.*).  Nor does the Zimmer Declaration explain how any such demarcation of time entries were determined – only that they were.  Rather, Dr. Goldberg's counsel is grouping all of the time requested into a bucket to be known as the "defense of Navidea's claims against Dr. Goldberg."

Moreover, Dr. Goldberg continues to apply an across-the-board percentage to several time entries, which this Court has explicitly held is improper.  (*See* 5/27/21 O&O at 13; 4/21/21 R&R at 4, 44, 49).  Specifically, there are 16 time entries that Dr. Goldberg is seeking advancement for in which Mr. Zimmer applies an unsubstantiated 80% allocation.  (*See* Zimmer Decl. Ex. B (September 22, 23, 24, and 25, October 9, 12, 14, 15, and 21, and November 5, 2020 time entries) [ECF No. 277-2]; (December 7, 2020 and March 22, 2021 time entries) [ECF No. 277-3]; (June 15, 2021 time entry) [ECF No. 277-4]; (December 14, 2021, February 1 and 2, 2022 time entries) [ECF No. 277-5]).  Similarly, out of the 19 time entries Dr. Goldberg is seeking advancement for time spent by Mr. Ari Weisbrot, nine of those time entries apply an unsubstantiated 80% allocation.  (*See* Zimmer Decl. Ex. A (September 22, October 2, 7, 20, 20, and 26, November 5, 10, and 12, 2020 time entries) [ECF No. 277-1]).  Dr. Goldberg states that "[t]his percentage is consistent with the percentages derived from page-by-page, line-by-line and document-by-document review of items relating to both Dr. Goldberg's defense of Navidea's claims and his prosecution of his affirmative claims, such as the draft 56.1 statement, the draft memorandum of law, depositions, and review of documents produced by Navidea and Macrophage."  (App. at 7).  However, as

---

[4] Importantly, the Magistrate Judge also stated that "it should have been abundantly clear to Goldberg's counsel, from the get-go, that, should their client wish to seek advancement (and, eventually, indemnification) of his attorneys' fees in this case, he would have to be able to segregate the time spent by counsel in defending each of the different claims brought by Navidea."  (*Id.* at 2).

discussed in further detail below, Dr. Goldberg has failed to submit any of the aforementioned documents or disclose the basis for how Dr. Goldberg's counsel determined what work related to which of the claims and counterclaims in this action or those that related to the *Macrophage Therapeutics v. Goldberg*, No. 2019-0137-JRS case pending in the Court of Chancery of the State of Delaware ("Delaware Action") so that Navidea and the Court can assess the reasonableness of Dr. Goldberg's request – an issue for which Dr. Goldberg has been on notice based on the Court's prior criticism of his fee applications. (7/9/20 R&R at 3, 16, 21-22, 41; 8/24/20 O&O at 6-7 nn.5-6, 10-11; 4/21/21 R&R at 12-16; 5/27/21 O&O at 5-7).

The Court should deny the Application because, as stated above, it violates the Court's multiple orders and clear and explicit instructions to Dr. Goldberg to "*specifically detail*[] the amount of time spent litigating *each of Navidea's remaining claims in this case*" (3/7/22 O&O at 11 (emphases added)), and fails to provide any documentary evidence in support of his allocations.

## III.   DR. GOLDBERG FAILS TO JUSTIFY AN AWARD OF FEES AND COSTS ASSOCIATED WITH TIME SPENT ON PREPARING AND ATTENDING DEPOSITIONS.

### A.   Dr. Goldberg Does Not Provide Any Evidence in Support of the Allocations Applied to Each Deposition.

Regarding the time spent by Dr. Goldberg's counsel participating in depositions, Dr. Goldberg applies to the time entries related to each specific deposition a "multiplier equal to the percentage of the deposition relating to Navidea's claims against Dr. Goldberg." (App. at 5). To determine this allocation, Dr. Goldberg conducted:

> a page-by-page review of each transcript, determined which portions relate to [*the Delaware Action, which portions relate to*] Navidea's claims against Dr. Goldberg [*and which portions relate to Dr. Goldberg's claims against Navidea and Macrophage*].

(*Id.* (emphases in original)). Consequently, Dr. Goldberg determined that the following allocations apply to the depositions of the following individuals:

1)      100% for the deposition of William Mower (*see* Zimmer Decl. Ex. A (September 3, 2020 time entry) [ECF No. 277-1]; *id.* Ex. B (September 2, 3, and 4, 2020 time entries) [ECF No. 277-2]);

2)      69% for the first day of the deposition of Jed Latkin (*see id.* Ex. A (September 8, 2020 time entry) [ECF No. 277-1]; *id.* Ex. B (September 5, 6, 7, and 8, 2020 time entries) [ECF No. 277-2]) and 43% for the second day of the deposition of Jed Latkin (*id.* (September 30, 2020 time entry) [ECF No. 277-2]);

3)      27% for the deposition of Joel Kaufman (*id.* (September 8 and 9, 2020 time entries) [ECF No. 277-2]);

4)      99% for the first day of the deposition of Dr. Claudine Bruck (*see id.* Ex. A (September 11, 2020 time entry) [ECF No. 277-1]; *id.* Ex. B (September 10 and 11, 2020 time entries) [ECF No. 277-2]) and 25% for the second day of the deposition of Dr. Bruck (*id.* (September 28 and 29, 2020 time entries [ECF No. 277-2]);

5)      54% for the Rule 30(b)(6) deposition of Mr. Lakin (*see id.* Ex. A (October 13 and 26, 2020 time entries) [ECF No. 277-1]; *id.* Ex. B (October 24, 25, and 26, 2020 time entries) [ECF No. 277-2]);

6)      72% for the deposition of Michael Rice (*see id.* (September 12 and 14, 2020 time entries) [ECF No. 277-2]);

7)      100% for the deposition of Michael Goldberg (*see id.* (September 15 and 16, 2020 time entries) [ECF No. 277-2]); and

8)      100% for the deposition of Dr. Mark Greene (*see id.* (September 17, 2020 time entry) [ECF No. 277-2]).

At the outset, all of the depositions that have taken place in this action relate to the five claims currently being litigated between the parties (*i.e.*, Navidea's claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) declaratory judgment (*see supra* at 7 n.2), and Dr. Goldberg's claims for (a) breach of contract against Navidea, and (b) breach of contract against Macrophage (*see supra* at 7 n.3).   Nonetheless, for the depositions of Dr. Goldberg and Dr. Greene, "Dr. Goldberg seeks advancement of 100% of his fees and expense because those fees and expenses were necessitated solely by Navidea's and Macrophage's noticing and conduct of the depositions."  (App. at 6).  In other words, Dr. Goldberg is asserting that no portion of both Dr. Goldberg's deposition and Dr. Greene's deposition related to the prosecution of his claims against Navidea and Macrophage – a proposition that is inherently flawed given that Navidea and Macrophage will use those deposition transcripts in order to prepare

11

its defenses to those claims. Dr. Goldberg's failure to segregate any portion of his deposition or Dr. Greene's deposition to his affirmative claims, as was required by the Court, is a clear indication that he did not seriously attempt to comply with the Court's multiple orders on this matter. (*See* 8/24/20 O&O at 7, 11; 5/27/21 O&O at 17; 3/7/22 O&O at 11).

Although not provided to the Court, Dr. Goldberg's testimony at his deposition covered such topics, among others, as the M1/M2 transaction which was the subject of the Delaware Action, the basis for his claims of damages in his action, Macrophage's negotiation and performance under the August Agreement, and Macrophage's decision not to issue certain stock to Dr. Goldberg for which Dr. Goldberg claims Macrophage is liable to him for damages. (*See* Declaration of Barry M. Kazan in Opposition to Dr. Goldberg's Application, dated May 5, 2022 ("Kazan Decl.") ¶ 2). Given that these topics are not related to Dr. Goldberg's defense of *Navidea's* claims against him and Dr. Goldberg is seeking 100% of the fees and expenses related to them, his allocation should be rejected and his counsel's allocations generally should be approached with skepticism.

Thus, while Dr. Goldberg provides some conclusory assertions regarding his methodology[5], he again has made absolutely no effort to provide this Court with any basis for accepting his allocations as reasonable. (*See* 7/9/20 R&R at 3, 21-22, 39, 41; 8/24/20 O&O at 6 n.5, 7 n.6, 10, 11; 4/24/21 R&R at 3, 27, 30, 31 ("Zimmer has made absolutely *no effort* to provide this Court with any basis for accepting the …. estimate as reasonable.") (emphasis in original). Specifically, and in the face of the Court's prior decisions, Dr. Goldberg has not attached any of the deposition transcripts in which he apparently "conducted a page-by-page review of each

---

[5] Dr. Goldberg applies the same allocation for participating in each respective deposition to the preparation for each respective deposition. In other words, Dr. Goldberg is simply estimating that the amount of time spent preparing for the deposition as it relates to the defense of Navidea's claims is equal to the amount of time during the deposition that relates to the defense of Navidea's claims.

transcript."  (App. at 5).  As this Court has previously stated, "Zimmer has made absolutely *no effort* to provide this Court with any basis for accepting the …. estimate as reasonable."  (*See* 4/21/21 R&R at 31) (emphasis in original).  Zimmer has not, for example, provided copies of the deposition transcripts, and pointed out which portions of those transcripts relate, in some way, to the defense of Navidea's claims.  (*See id.* at 31 ("Zimmer has not, for example, provided copies of discovery requests or responses, and pointed out which portions of those requests or response related, in some way, to Navidea's claim that Goldberg breached his fiduciary duties.")).  Nor has Zimmer "highlighted the portions of [the deposition transcripts] that, in his view, were particularly tied to the defenses of that claim, such that this Court would have some reasoned basis for understanding why a certain percentage of the time [during that deposition] would have been tied to the claim."  (*Id.* at 31-32).

Dr. Goldberg is once again asking Navidea and the Court to simply "take his word" that the allocations he has applied to each deposition "equal to the percentage of the deposition relating to Navidea's claims."  (App. at 5).  Dr. Goldberg has failed to demonstrate the reasonableness of his advancement request as it relates to the depositions.  In addition to it not being the Court's job to decipher time entries (*see, e.g., Williams v. N.Y.C. Hous. Auth.*, 975 F. Supp. 317, 327 (S.D.N.Y. 1997) ("[i]t is not the court's job to decipher time entries and guess how much time each activity took . . . . It is the responsibility of the applicant to make separate time entries for each activity.") (internal quotation marks and citation omitted), it is also not Navidea's job to go through each deposition transcript and determine what portion of each deposition transcript relate to Dr. Goldberg's defense of Navidea's claims.  As Magistrate Judge Freeman previously stated, "while, in some instances, this Court [and Navidea] may be able to guess at [Dr. Goldberg's] intentions, it should not have to do so, and it therefore recommends that the time for these particular entries be excluded from any … award."  (*See* 4/21/21 R&R at 29-30).  A similar result should occur here.

**B.** **Dr. Goldberg Should Not Be Advanced Any Fees and Costs Related to Mr. Weisbrot's Participation in Certain Depositions.**

With respect to Dr. Goldberg's former counsel, Ari Weisbrot, Dr. Goldberg is seeking for the fees billed by Mr. Weisbrot: (1) 100% advancements of the fees for participating in Mr. Mower's deposition (Zimmer Decl. Ex. A (September 3, 2020 time entry) [ECF No. 277-1]); and (2) 69% advancement of the fees for participating in Mr. Latkin's deposition. (*Id.* (September 11, 2020 time entry)). Specifically, Dr. Goldberg is seeking advancement on $1,125.00 and $2,484.00 billed by Mr. Weisbrot for his participation in Mr. Mower's deposition and Mr. Latkin's deposition, respectively. (*Id.*). Again, although Dr. Goldberg provides some cursory detail regarding his methodology and how he determined the deposition allocations (*see supra* section III(A)), Dr. Goldberg provides no support for these allocations. More critically, Navidea should not be required to advance Dr. Goldberg any of the fees billed by Mr. Weisbrot for his work in preparing and participating in the depositions of Mr. Mower and Mr. Latkin. As the deposition transcripts demonstrate (*See* Kazan Decl. Exs. 1-2), Mr. Weisbrot's conduct during the depositions was abhorrent, subjecting multiple deponents to annoyance, embarrassment, and oppression. As stated above, the party seeking attorneys' fees bears the burden of demonstrating that his requested fees are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 897-98 (1984). Mr. Weisbrot's conduct was unquestionably unreasonable, and Dr. Goldberg should not be advanced fees for Mr. Weisbrot's demonstrable harassment of witnesses.

By way of example, on September 4, 2020, Mr. Zimmer took the lead on deposing counsel for Navidea, Mr. William Mower. Mr. Weisbrot was also present at the deposition. Throughout the deposition, Mr. Weisbrot continually disrupted the deposition, interrupted the deponent's answering of questions, and engaged in combative and argumentative behavior with counsel for the witness. As clearly demonstrated in the deposition transcript, the main aspects of the behavior

complained of include Mr. Weisbrot's disruption of the deposition, shouting in the middle of questions, and annoying, oppressing, and embarrassing the witness.  Of particular note, Mr. Weisbrot called Mr. Mower an "idiot," accused him of malpractice, and demanded the name of his malpractice carrier even though Dr. Goldberg was never represented by Mr. Mower and furthermore, mocked what Mr. Weisbrot perceived as a speech impediment: "Mr. Mower, do you have a stutter or is your stutter an indication of dishonesty."  Mr. Weisbrot's offensive comments and questions began shortly after the commencement of the deposition and continued throughout the remainder of the deposition, even after multiple requests by counsel for Mr. Mower for Mr. Weisbrot to cease the offensive conduct.  (*See* Kazan Decl. Ex. 1).

On September 8, 2020, Mr. Weisbrot, with Mr. Zimmer in attendance, deposed Jed Latkin, the CEO of Navidea.  During the course of the deposition, Mr. Weisbrot threatened and insulted the deponent, and engaged in intimidating, combative behavior by repeatedly yelling at the witness and interrupting his answers.  The transcript reflects the undersigned counsel requesting that Mr. Weisbrot cease yelling at the witness on at least eight (8) occasions, and the deposition transcript is replete with Mr. Weisbrot constantly interrupting the witness during his answers.  In addition, Mr. Weisbrot accused the witness of committing perjury, stated that the witness "had admitted to securities fraud," and suggested that the witness consider invoking his Fifth Amendment right to self-incrimination.  In fact, Mr. Weisbrot spent a significant time testifying on his own, adding colloquy before and after questions such that the questions for which answers were sought were buried in Mr. Weisbrot's speeches.  Faced with this behavior, Navidea and Macrophage's counsel expressed on numerous occasions that if the yelling and the interrupting did not stop, the deposition would be terminated pursuant to Fed. R. Civ. P. Rule 30(d)(3) and Navidea and Macrophage would seek a protective order.  After approximately six hours of this behavior, the conduct did not cease, and Navidea's and Macrophage's counsel terminated the deposition.  (*See* Kazan Decl. Ex. 2).

In light of Mr. Weisbrot's improper conduct, Navidea submits that Dr. Goldberg's request for advancement of Mr. Weisbrot's fees related to the depositions of Mr. Mower and Mr. Latkin should be denied in its entirety.

IV.     **DR. GOLDBERG SHOULD NOT BE AWARDED ANY FESS AND COSTS ASSOCIATED WITH HIS DRAFT SUMMARY JUDGMENT MOTION.**

In his Application, Dr. Goldberg seeks advancement of the fees and costs related to a draft Statement of Material Facts on Motion for Summary Judgment pursuant to Local Civil Rule 56.1 (the "Rule 56.1 Statement") and a draft memorandum of law, both in support of an anticipated motion for summary judgment.  (App. at 6).

The Zimmer Declaration indicates that Dr. Goldberg seeks advancement for approximately 67.5 hours[6] billed by Mr. Zimmer relating to reviewing deposition and trial transcripts, and drafting a Rule 56.1 Statement and draft summary judgment memorandum of law.  (*See* Zimmer Decl. Ex. B (April 7, 19, 20, 21, 22, 23, and 26, 2021 time entries) [ECF No. 277-3]; April 27, 29, and 30, May 1, 2, 3, 10, 11, 12, 17, 18, 19, 20, 24, 25, 26, 27, and 28, June 4, 10, 16, and 22, and July 3, 6, and 15, 2021 time entries) [ECF No. 277-4]).  To support this amount, Zimmer claims that for the: (a) Rule 56.1 Statement, he "conducted a line-by-line review of the draft Rule 56.1 Statement and determined the percentage of the draft 56.1 Statement devoted to Dr. Goldberg's defense of Navidea's claims against him and the percentage devoted to Dr. Goldberg's affirmative claims" (App. at 6); and (b) draft memorandum of law, he "conducted a line-by-line review of the draft memorandum of law and determined the percentage of the draft memorandum of law devoted to Dr. Goldberg's defense of Navidea's claims against him [*and the percentage devoted to Dr. Goldberg's affirmative claims*]."  (*Id.* at 7 (emphasis in original)).  Consequently, Zimmer applied

---

[6] Specifically, Mr. Zimmer billed 52.6 hours towards the Rule 56.1 Statement (Zimmer Decl. Ex. B (April 7, 19, 20, 21, 22, 23, and 26, 2021 time entries) [ECF No. 277-3], April 27, 29, and 30, May 1, 2, 3, 10, 11, 12, 17, 18, 19, 20, 24, 25, 26, and 27, and June 4, 2021 time entries) [ECF No. 277-4]) and 14.9 hours towards discussing and drafting the memorandum of law (*Id.* (May 28, and June 10, 16, 22, and July 3, 6, and 15, 2021 time entries)).

an allocation of: (1) 90% to time spent on the Rule 56.1 Statement (*id.* at 6); (2) 80% to time spent generally on preparing the draft memorandum of law (*id.* at 7); and (3) 50% to the preliminary statement and legal standard section of the draft memorandum of law.  (*Id.*).  Taken at face value, Dr. Goldberg again appears to suggest that the bulk of counsel's time is spent on the defense of his claims by Navidea as opposed to the prosecution of his $26 million claim against Navidea and his $16 million claim against Macrophage once again leaving the impression that his goal is to maximize the amount of recoverable fees under the order.  (*See* 4/21/21 R&R at 4).

A.   **Dr. Goldberg Does Not Provide Any Evidence in Support of the Allocations Applied to the Rule 56.1 Statement and Draft Memorandum of Law.**

As with the depositions above, Dr. Goldberg once again incorrectly and improperly attempts to evade the requirement to provide evidentiary support for the Application by claiming each draft document "constitutes privileged attorney work product."  (App. at 6 n.2, 7 n.3).  This is not the first time Dr. Goldberg has brought forth assertions of privilege.  Specifically, on March 23, 2020, "[b]oth Zimmer and Weisbrot offered to submit their time records for *in camera* review, stating that they had not publicly filed their records so as to protect any attorney-client privileged information that they contained."  (*See* 7/9/20 R&R at 18).  However, during a June 4, 2020 teleconference, the "Court informed Goldberg of its understanding that attorney time records rarely convey privileged communications, but it nonetheless instructed him that, if he believed any particular time records revealed requests for legal advice, the substance of advice given, or *attorney work-product*, then he could redact those particular entries on privilege grounds." (*Id.* at 22 (emphasis added)).  Rather than heed the Court's advice, Dr. Goldberg chose not to produce them at all.  The same issues arise with respect to the Rule 56.1 Statement and draft memorandum of law.

Whether the Rule 56.1 Statement or the draft memorandum of law are privileged is not the issue.  The fact that the bases for Dr. Goldberg's allocations allegedly exist and he is choosing once again not to provide them in any form to the Court for review supports a finding that Dr. Goldberg has not provided sufficient information to justify his allocations.  While Navidea would gladly comment on the substance of the Rule 56.1 Statement and whether - as Dr. Goldberg asserts - 93% relates to his defense of Navidea's claims (App. at 6), it cannot due to Dr. Goldberg's withholding of the Rule 56.1 Statement.  Likewise, the Court cannot evaluate the reasonableness of the time spent on completing the draft Rule 56.1 Statement and draft memorandum of law.[7]

Given the Court's prior admonishment, Dr. Goldberg should have submitted both the draft Rule 56.1 Statement and the draft memorandum of law in support of his anticipated summary judgment motion for *in camera* review.  Instead, he chose not to submit them at all and expects that Navidea and "the Court should simply accept his purportedly good faith estimates as to the amount of time … his attorney[] has spent" on the defense of Navidea's claims as it relates to the Rule 56.1 Statement and draft memorandum of law.  (5/27/21 O&O at 7).  As stated previously, the Court has rejected this approach in its prior rulings.  Once again, Navidea is – and the Court should be – "left  with the distinct impression that the allocation percentages being proposed by counsel are based less on the reality of the work that they performed at any given time, than on their desire to push the maximum amount of time possible into those categories of work for which

---

[7] Moreover, with respect to the timing of recoverable fees related to the Rule 56.1 Statement and draft memorandum of law, the Court did not set a summary judgment briefing schedule until July 6, 2021.  (*See* Order, dated July 6, 2011 [ECF No. 211]).  Furthermore, discovery was not completed until June 15, 2021. (ECF No. 208 ("As of the date of this letter, the parties agree that fact discovery is now complete.").  Nonetheless, Dr. Goldberg claims that between April 7, 2021 and June 4, 2021, Mr. Zimmer spent approximately 52.6 hours preparing his Rule 56.1 Statement (Zimmer Decl. Ex. B (April 7, 19, 20, 21, 22, 23, and 26, 2021 time entries) [ECF No. 277-3], April 27, 29, and 30, May 1, 2, 3, 10, 11, 12, 17, 18, 19, 20, 24, 25, 26, and 27, and June 4, 2021 time entries) [ECF No. 277-4]) and between May 28, 2021 to July 3, 2021, Mr. Zimmer spent approximately 14.9 hours discussing and drafting Dr. Goldberg's memorandum of law in support of his anticipated motion for summary judgment.  (*Id.* (May 28, and June 10, 16, 22, and July 3, 6, and 15, 2021 time entries) [ECF No. 277-4]).  Navidea asserts that it is questionable why Dr. Goldberg's counsel began drafting a Rule 56.1 Statement and draft memorandum of law prior to both the Court's setting of a summary judgment schedule and the completion of discovery.

… advancement ha[s] been held to be available, so as to obtain the greatest possible award for their client." (4/21/21 R&R at 4). Dr. Goldberg's failure to submit his Rule 56.1 Statement and draft memorandum of law for *in camera* review should result in a finding that he has withdrawn, with prejudice, his request for advancement of these fees due to his failure to comply with the Court's prior guidance.

### B.  Mr. Zimmer's Base Rate Should Be Reduced.

"Courts frequently reduce fee requests where work that could have been handled by more junior lawyers was instead performed by a senior partner," *Hitachi Data System Credit Corp. v. Precision Discovery, Inc.*, 2020 U.S. Dist. LEXIS 175752, at *6 (S.D.N.Y. Sept. 24, 2020) (citing *HTV Industries, Inc. v. Agarwal*, 317 F. Supp. 3d 707, 721 (S.D.N.Y. 2018)), either by reducing a partner rate otherwise found to be reasonable, in specific instances where that partner performed associate-level tasks, *see, e.g., H.B. Automotive Group, Inc. v. Kia Motors America, Inc.*, 2018 U.S. Dist. LEXIS 125538, at *23 (S.D.N.Y. July 25, 2018) (reducing attorney's hourly rate for specific time spent on junior-level tasks), *adopted by*, 2018 U.S. Dist. LEXIS 142893 (S.D.N.Y. Aug. 22, 2018), or, where parsing through the time records for this purpose would be impractical, by reducing the partner's rate in general or applying an overall percentage reduction to the fees sought, *see, e.g., HTV Industries*, 317 F. Supp. 3d 707 (reducing total fee award by 25% where senior counsel performed a substantial number of tasks that could have been performed by a more junior attorney); *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, 2013 U.S. Dist. LEXIS 170239, at *48 (S.D.N.Y. Dec. 3, 2013) (finding 15% fee reduction to be warranted where, *inter alia*, attorney billed at $350 per hour for work such as drafting standard forms of service and reviewing judge's rules), *adopted by*, 2014 U.S. Dist. LEXIS 48408 (S.D.N.Y. Apr. 3, 2014). This Court itself has previously reduced the rate of Mr. Zimmer to $375 per hour "to account for the fact that

Zimmer apparently spent a fair amount of his time engaged in work that could have been performed by more junior attorneys or staff."  (4/21/21 R&R at 25 [ECF No. 207]).

As stated above, Mr. Zimmer billed approximately 52.6 hours to preparing the Rule 56.1 Statement (*see supra* n.6), which again, Mr. Zimmer has chosen not to submit to Navidea or the Court.  (App. at 6 n.2); *see also Alfonso v. New Day Top Trading, Inc.*, 2020 U.S. Dist. LEXIS 116047, at *73 (S.D.N.Y. June 29, 2020) (holding that 36 hours spent on drafting and filing a complaint is excessive), *adopted by*, 2021 U.S. Dist. LEXIS 194150 (S.D.N.Y. Oct. 7, 2021). Magistrate Judge Freeman has held that "[w]hile a senior partner, of course, has oversight responsibility for the firm's filings, and would be expected to play a significant role in supervising the preparation of briefs and revising drafts, legal research and the initial drafting of legal argument is more often performed by senior or mid-level associates, and — at a minimum — substantial time performing such work should not be charged at a senior-partner level."  *Genger v. Genger*, 2017 U.S. Dist. LEXIS 80010, at *16-17 (S.D.N.Y May 22, 2017), *adopted by,* 2017 U.S. Dist. LEXIS 88091 (S.D.N.Y. May 30, 2017).

In determining whether an excessive amount of time has been expended on a matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in the case, *see Kirsch*, 148 F.3d at 173; *In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 232 (2d Cir. 1987), whether the work was complicated or straightforward, *see Castellanos v. Mid Bronx Community Housing Management Corp.*, 2014 U.S. Dist. LEXIS 79869, at *16-17 (S.D.N.Y. May 19, 2014), *adopted by*, 2014 U.S. Dist. LEXIS 79037 (S.D.N.Y. June 9, 2014), and whether inefficiencies resulted from the manner in which the case was staffed, *see, e.g.*, *Simmonds v. New York City Department of Corrections*, 2008 U.S. Dist. LEXIS 74539, at *24 (S.D.N.Y. Sept. 15, 2008) (reducing hours "to correct for the inefficiencies resulting from [a] co-counsel arrangement").  However, Navidea nor the Court can analyze the nature and quality of the work

submitted by counsel, whether the work was complicated or straightforward, and whether inefficiencies resulted from the manner in which the case was staffed due to Mr. Zimmer's withholding of the Rule 56.1 Statement and the draft memorandum of law.  Furthermore, because the Court has ruled that Mr. Zimmer was supposed to modify his rate for certain tasks, his failure to provide the Rule 56.1 Statement and draft memorandum of law precludes the Court from being able to engage in that analysis here.

As such, Dr. Goldberg's request for advancement of the 67.5 hours spent by Mr. Zimmer in researching, analyzing, and drafting the Rule 56.1 Statement and draft memoranda of law in support of his anticipated motion for summary judgment should be denied in its entirety.  (*See* Zimmer Decl. Ex. B (April 7, 19, 20, 21, 22, 23, and 26, 2021 time entries) [ECF No. 277-3]; April 27, 29, and 30, May 1, 2, 3, 10, 11, 12, 17, 18, 19, 20, 24, 25, 26, 27, and 28, June 4, 10, 16, and 22, and July 3, 6, and 15, 2021 time entries) [ECF No. 277-4]).  Alternatively, Mr. Zimmer's rate should be substantially reduced due to the fact that the majority of the Rule 56.1 Statement could have been handled by a more junior lawyer with a lower hourly rate.

### C.   The Time Entries Related to the Rule 56.1 Statement Are Too Vague to be Advanced.

This Court has already held that several of Dr. Goldberg's counsel's time entries were too vague to allow the Court to determine the reasonableness of the time expensed.  (*See, e.g.*, 5/27/21 O&O at 13; 4/21/21 R&R at 37 ("The time entries in this grouping are all quite vague…").  In Dr. Goldberg's most recent Application, he fails to rectify the Court's prior admonishments and continues to submit vague time entries.  For example, out of the 27 time entries related to the Rule 56.1 Statement, 23 of those time entries all state the exact same thing: "Review deposition and trial transcripts and prepare Rule 56.1 Statement based on same."  (*See* Zimmer Decl. Ex. B (April 4, 19, 20, 21, 22, and 26, 2021 time entries) [ECF No. 277-3]; April 27, 29, and 30, May 1, 2, 3,

10, 11, 12, 17, 18, 19, 20, 24, 25, 26, and 27, 2021 time entries) [ECF No. 277-4]).  This Court has

appropriately granted a reduction in hours when time entries are too vague to determine.  *Alfonso*,

2020 U.S. Dist. LEXIS 116047, at *74-75 (S.D.N.Y. June 29, 2020) ("a number of time entries

submitted by counsel are too vague for this Court to determine whether they reflect time reasonably

spent.").  Dr. Goldberg's time entries are inadequate to enable Navidea or "the Court to determine

what issues, in particular, the attorneys were researching, much less whether the expended time

was reasonable for the work performed."  *Mawere v. Citco Fund Services, (USA) Inc.*, 2011 US

Dist. LEXIS 149111, at *28 (S.D.N.Y. Sept. 16, 2011), *adopted by*, 2011 U.S. Dist. LEXIS 148538

(S.D.N.Y. Dec. 27, 2011); *see, e.g., Vishipco Line v. Charles Schwab & Co.*, 2003 U.S. Dist.

LEXIS 6820, at *5-6 (S.D.N.Y. Apr. 22, 2003) (time entries such as "legal research" too vague to

allow the court to determine the reasonableness of time expended); *Local 32B-32J, SEIU v. Port

Authority*, 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (time entries indicating "research" were

inadequate where there was "no indication of what topics were researched.").

**V.    COSTS**

In the Application, Dr. Goldberg seeks advancement of his expenses paid to e-discovery

vendor Consilio.  Specifically, Dr. Goldberg states that:

> With respect to invoices from e-discovery vendor Consilio representing Dr.
> Goldberg's expenses with regard to housing, search and coding of Navidea's and
> Macrophage's electronic document production, the 86% multiplier representing the
> approximate percentage of documents coded as relating to Navidea's claims against
> Dr. Goldberg was applied.

(App. at 8).  However, this Court has already discussed, and rejected, Dr. Goldberg's analysis on

the issue of Dr. Goldberg's costs and the Court's reasoning should be applied once again.  (4/21/21

R&R at 47; 5/27/21 O&O at 16).

In the 5/27/21 O&O, the Court stated that "because neither Mr. Zimmer nor Mr. Weisbrot

has 'endeavored to address which costs were incurred in connection with which claims,' the Court

has no basis for assessing the reasonableness of Goldberg's request."  (*Id.* at 16).  The Court reasoned that Zimmer is "essentially contending that 80% of the effort associated with document management … related to Navidea's three remaining claims, and only 20% to Goldberg's counterclaims and third-party claims."  (4/21/21 R&R at 47).  The Court stated that "it cannot accept [Zimmer's 'unsupported estimate'] with respect to the costs of the vendor that aided in that work."  (*Id.*).

In the present matter, nothing has changed, and Dr. Goldberg continues to request that Navidea advance him expenses without any evidentiary support.  Specifically, Dr. Goldberg has provided no evidence in support of the 86% allocation he has applied to the invoices from Consilio. Dr. Goldberg merely claims that the "86% multiplier represent[s] the approximate percentage of documents coded as relating to Navidea's claims against Dr. Goldberg."  (App. at 8).  "Zimmer has made absolutely *no effort* to provide this Court [or Navidea] with any basis for accepting the" 86% estimate as reasonable.  (4/21/21 R&R at 31).  Consequently, none of Dr. Goldberg's expenses paid to e-discovery vender Consilio should be advanced.

## VI.   THE APPLICATION IS RIFE WITH VARIOUS FORMS OF IMPROPER BILLING.

In reviewing a fee application, the Court should "examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case."  *Luciano v. Olsten Corp*, 109 F.3d 111, 116 (2d Cir. 1997).  Thus, the hours claimed by Dr. Goldberg must be scrutinized by this Court, applying its own knowledge, experience, and expertise to determine whether all the hours claimed were reasonably spent.

### A.   Unreasonable Time.

There are several instances in which the Court has found that the time Dr. Goldberg has spent on this matter as unreasonable.  For example, on May 27, 2021, the Court found that Dr.

Goldberg's motion to strike [ECF No. 203] was a "waste of both the attorneys' and the Court's time and resources and demonstrates precisely why courts must evaluate fee requests for reasonableness." (*See* Memo Endorsed Order denying Motion to Strike, dated May 27, 2021 [ECF No. 206]).   Notwithstanding Judge Caproni's admonishment, Dr. Goldberg still seeks advancement of fees in the amount of $1,280.00 related to the unnecessary drafting and filing of this motion to strike.  (*See* Zimmer Decl. Ex. B (May 26 and 27, 2021 time entries) [ECF No. 277-4]).  In addition, Dr. Goldberg seeks advancement of $3,680.00 in fees (*see id.* (January 29, and February 1 and 17, 2021 time entries [ECF No. 277-3]) for time his counsel spent drafting an unreasonable motion to contempt [ECF No. 184], that this Court denied outright.  (5/27/21 O&O at 16).  Dr. Goldberg should not be advanced fees for work this Court has already found to be unreasonable.

### B.    Calculation Errors.

There are several instances throughout Dr. Goldberg's invoices in which he applies an incorrect calculation to determine the amount to be advanced.   Perhaps the most obstinate submission is on the advancement calculations for Mr. Weisbrot's September through October 2020 billing.  Mr. Zimmer applies a billing rate of $450 per hour for each and every time entry Mr. Weisbrot seeks advancement for in his "October[8] 2020 Defense of Navidea Claims Advancement Calculation" (Zimmer Decl. Ex. A at 3 [ECF No. 277-1]) and his "November 2020 Defense of Navidea Claims Advancement Calculation." (*Id.* at 7).  A simple review of the actual invoices submitted by Mr. Weisbrot show that he charged an hourly rate of $425 per hour (*see id.* at 1-2, 4-6), as opposed to the hourly rate of $450 per hour that Mr. Zimmer is now requesting advancement for.

---

[8] This is incorrectly referred to as November in the Zimmer Declaration.

Other instances of miscalculations by Mr. Zimmer include: (1) on September 2, 2020, Mr. Zimmer charged a rate of $400 per hour for document review when the time entry itself states: "Document review ($300/hr)" (Zimmer Decl. Ex. B at 5 [ECF No. 277-2]); (2) on August 11, 2021, Zimmer billed 0.2 hours to "[r]eview Order re advancement" and charged $160.00 when the correct charge should been $80.00 (*id.* at 18); and (3) on March 8, 2022, Zimmer billed 1.7 hours – when he should have billed 1.5 hours - to "[r]eview prior fee application and rulings re advancement to determine proper start date for next fee application (0.50); prepare letter to Court requesting that next fee application include time and expenses starting September 1, 2020 (1.00)." (*Id.* at 19).

## **CONCLUSION**

For the reasons set forth herein, Navidea respectfully submits that the Court should find that he has withdrawn, with prejudice, his request for advancement as a sanction for his failure to comply with the Court's prior orders and reject Dr. Goldberg's Application for attorneys' fees and costs, or in the alternative, reject and/or reduce his requests.

Date:   May 5, 2022                                  Respectfully submitted,
        New York, New York

                                                     _____
                                                     Barry M. Kazan, Esq.
                                                     Mintz & Gold LLP
                                                     600 Third Avenue, 25th Floor
                                                     New York, New York 10016
                                                     Phone: (212) 696-4848
                                                     Fax:    (212) 696-1231
                                                     kazan@mintzandgold.com

                                                     -and-

                                                     Karim Sabbidine, Esq.
                                                     THOMPSON HINE LLP
                                                     335 Madison Avenue, 12th Fl.
                                                     New York, New York 10017
                                                     Phone: (212) 344-3921
                                                     Fax:    (212) 344-6101

karim.sabbidine@thompsonhine.com

*Attorneys for Plaintiff /Counterclaim Defendant*
*Navidea Biopharmaceuticals, Inc. and*
*Third-Party Defendant*
*Macrophage Therapeutics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2022, I caused to be served on counsel of record, electronically via the Court's electronic filing system, a true and correct copy of **Plaintiff/Counterclaim-Defendant Navidea Biopharmaceuticals, Inc.'s Memorandum of Law in Opposition to Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Michael M. Goldberg, M.D.'s Application for Attorneys' Fees**.

_____

Barry M. Kazan

27