# Exhibit 2

Page 1

1

2    ** C O N F I D E N T I A L **

3    UNITED STATES DISTRICT COURT

4    SOUTHERN DISTRICT OF NEW YORK

5    Case No. 1:19-cv-01578-VEC

6    -----------------------------------x

7    IN RE: NAVIDEA BIOPHARMACEUTICALS

8    LITIGATION

9    -----------------------------------x

10                      September 8, 2020

11                      10:03 a.m.

12

13

14       Deposition of JED LATKIN, taken by

15    Defendant, pursuant to Subpoena, held via

16    Zoom videoconference, before Todd DeSimone,

17    a Registered Professional Reporter and

18    Notary Public of the States of New York and

19    New Jersey.

20

21

22

23

24

25

Page 30

```
 1
 2
 3
 4
 5
 6        Q.       And what did you do for them?
 7        A.       I was research sales, so it is
 8   a hybrid product of working with
 9   institutional clients but also providing
10   research.
11        Q.       Jed, you realize you are not
12   really answering my question?  Can you just
13   tell me what you did?
14            MR. KAZAN:  Objection to form.
15        Q.       You are just saying words.  I'm
16   just curious, can you describe what you did
17   when you worked for the Institutional
18   Equity group?
19        A.       So on a day-to-day basis --
20        Q.       No, no, not on a day-to-day
21   basis.  What did you do?  What was your
22   job?  Are you able to explain what your job
23   was?
24            MR. KAZAN:  I object to the
25   form.  I'm going to instruct the witness
```

Page 31

LATKIN - CONFIDENTIAL

1
2  not to answer right now.  Ari, can you ask
3  a question, please?
4           MR. WEISBROT:  Are you
5  objecting based on privilege?
6           MR. KAZAN:  No.  I'm objecting
7  based on the fact that you have asked three
8  questions and you are being argumentative
9  and harassing.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
                                                    Page 37
 1                LATKIN - CONFIDENTIAL
```

 8        Q.       So, look, I think everyone

 9    online can agree that I am probably the

10    dumbest guy in the room right now, but I

11    have to tell you, you have been talking for

12    about 35 minutes about your business

13    experience and if someone came up to me and

14    said hey, what did Jed Latkin do for the

15    first three years out of school, I swear to

16    God, I couldn't answer the question.  You

17    are much smarter than me because you are

18    able to say things that really don't say

19    anything.  So let's drill down.

20             Optimizing their business plan,

21    can you tell me what you did?  Like I don't

22    even know what that means.  Tell me what

23    you did.  Go.

Page 39



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23        MR. WEISBROT:  What has this

24  guy done ever?

25        MR. KAZAN:  Mr. Weisbrot, is

Page 40

1              LATKIN - CONFIDENTIAL

2   there a reason you need to raise your voice

3   and yell at the witness?

4              MR. WEISBROT:  Yes, I'm

5   frustrated by my ability -- like if you ask

6   me what I have done, I don't know that I

7   can answer in a good way, but I could give

8   you very specifics, as could you,

9   Mr. Kazan, as could Mr. Zimmer and

10  Dr. Goldberg and Mr. DeSimone.  I'm just

11  trying to find out what the guy's

12  experience is.  I have never in 30 years

13  had this much trouble just finding out what

14  the guy has done.

15

16

17

18

19

20

21

22

23

24

25

Page 65

1          LATKIN - CONFIDENTIAL

2

3      Q.      Mr. Latkin, are you satisfied

4  that you answered my question about, again,

5  what you specifically did with the

6  pharmaceutical space?

7              MR. KAZAN:  I object to the

8  form.  You can answer.

9      A.      I am satisfied, yes.

10      Q.      Okay, thank you.  Me too.

11              Keep going with your vague and

12  impossibly unable to answer questions about

13  your experience.  You said Morgan Stanley.

14  You said ING.  What other experience do you

15  have in the pharmaceutical space?

16              MR. KAZAN:  I object to the

17  form.  Could you restate your question

18  without all the commentary, Mr. Weisbrot?

19              MR. WEISBROT:  Fair enough.

20      Q.      What other experience besides

21  what you have already testified to do you

22  have in the pharmaceutical space?

23      A.      As part of the investments that

24  we made at --

25      Q.      Don't say "we."  I only want to

```
                                              Page 66
 1              LATKIN - CONFIDENTIAL
 2    hear you.
 3         A.      As part of the investments that
 4    I recommended working with Uri Landesman
 5    and Mark Nordlicht, I suggested multiple
 6    healthcare investments based on research
 7    that I had done on products which I thought
 8    would be successful and companies that I
 9    thought would be successful.
10         Q.      Do you want to tell me what
11    research you have done and what investments
12    you recommended or any other information,
13    just one thing that has to do with
14    healthcare other than I made
15    recommendations?  I mean, what did you do?
16    What companies did you research?  What
17    companies did you recommend?  What
18    companies did your clients invest in?  Can
19    you give me any color or do you want to
20    keep being as vague as you possibly can?
21              MR. KAZAN:  Mr. Weisbrot, if
22    you continue with this line of questioning
23    by yelling at the witness and by
24    criticizing the witness' answer, we will
25    contact the magistrate judge and I will
```

Page 67

1            LATKIN - CONFIDENTIAL

2    seek a protective order.

3                MR. WEISBROT:  No problem.

4    Happy to have the magistrate judge read

5    this transcript, happy to.  Whenever you

6    are ready, let me know.  In the interim, I

7    would like Mr. Latkin to name a company, an

8    investment he recommended, anything.  I

9    mean, I have never had this much trouble,

10   most people are dying to brag about who

11   they recommended, oh, I recommended Apple,

12   and I recommended this, and I was the one

13   who researched this and found out that this

14   company was developing this therapeutic.

15                Most people are dying to tell

16   that information.  So it usually takes ten

17   minutes.  What is frustrating me,

18   Mr. Kazan, is your client's inability to

19   just give any specifics.  So I apologize,

20   you are not wrong, but I'm going to give

21   him one last chance and then we will figure

22   it out.

23

24

25

Page  68



24   Q.   The  next  words  out  of  your

25  mouth,  I  don't  care  where  you  were,  ING,

Page 69

1              LATKIN - CONFIDENTIAL

2    Morgan Stanley, should be companies that

3    you personally researched in terms of

4    pharmaceuticals and recommended to your

5    clients to invest in.  That should be the

6    next thing you say.

7                  MR. KAZAN:  What's the

8    question, Mr. Weisbrot?

9                  MR. WEISBROT:  Do you want me

10   to read it back or withdraw it and reask

11   it?

12                 MR. KAZAN:  It is up to you.

13                 MR. WEISBROT:  I will withdraw

14   it and reask it.

15

16

17

18

19

20

21

22

23

24

25

Page 78

1          LATKIN - CONFIDENTIAL

14     Q.     Then you are not understanding
15   my question since we have now wasted 15
16   minutes on a very simple question.  Can you
17   identify a single person, I mean, ING is a
18   big company, and Roche is the biggest
19   company, I'm asking you whether there is
20   anybody who can testify, anybody, that you
21   brought them together, yes or no?

```
 1              LATKIN - CONFIDENTIAL
 2                  Do you think he was the right
 3   guy to run Macrophage?
 4        A.      What time frame are you
 5   referring to?
 6        Q.      At the time that you appointed
 7   him to run Macrophage.
 8                  MR. KAZAN:  Hold on a minute.
 9   Mr. Weisbrot, you are yelling at the
10   witness.
11                  MR. WEISBROT:  I'm sorry, you
12   are right.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 91

1          LATKIN - CONFIDENTIAL

2

3

4

5

6

7

8

9

10

11        Q.    So you were involved.  My

12   question is when you said you were not

13   involved in that decision, that wasn't

14   true, was it?

15             MR. KAZAN:  Mr. Weisbrot, can

16   you please stop yelling at the witness?

17             MR. WEISBROT:  Can you please

18   take five minutes and instruct your client

19   to stop giving false testimony.  I'm not

20   even worried about the false testimony, I

21   welcome it.  I'm worried about the wasting

22   of all of our time by backtracking his

23   statements so that I have to spend 20

24   minutes disproving what he is saying.

25             Here is what we are going to

Page 92

```
 1              LATKIN - CONFIDENTIAL
 2    do, we are going to take a five-minute
 3    break, and even though technically you are
 4    not allowed to consult with your client
 5    during the deposition, I'm going to allow
 6    you to, in fact, I'm going to encourage you
 7    to, because we just spent 20 minutes after
 8    he said, quote, "I was not involved in
 9    that," meaning the decision to give
10    Dr. Goldberg control over Macrophage, when
11    he signed the agreement.
12              So if you want to spend all day
13    long with disproving what he is saying, I'm
14    happy to, but I would encourage you to take
15    five minutes to talk to him, even though
16    you are not allowed, I'm going to allow it
17    on the record, to just tell him to tell the
18    truth, even if it hurts your case.  I just
19    want the truth.  I'm taking a five-minute
20    break.
21
22
23
24
25
```

Page 101

1            **LATKIN - CONFIDENTIAL**

15        Q.      Okay, thank you.

16                Now, is that because you are

17   changing the truth now during your

18   deposition, meaning you are changing the

19   story, or is it because you violated

20   federal securities law back at the time?

21                MR. KAZAN:  I object to the

22   form.

23        Q.      By the way, the lawyer hasn't

24   said it, and I appreciate it, I think Barry

25   is doing a good job, but you may want to

```
 1              LATKIN - CONFIDENTIAL
 2      consider, and if you need a minute to
 3      consult with him, the Fifth Amendment,
 4      because I'm asking you a very pointed
 5      question.
 6                  You just admitted that you had
 7      serious concerns about certain aspects of
 8      this deal but you did it anyway and you
 9      didn't inform investors, that's already
10      under oath.  I'm asking you now whether or
11      not, you know, the fact that you have done
12      this concerns you?  And before you answer
13      the question, because Barry is being very,
14      very tolerant of me and I appreciate that,
15      you may want a minute to talk to him
16      because there are Fifth Amendment issues.
17                  Do you want to talk to your
18      attorney for a minute?  I won't leave.  I
19      will stay online.  You guys can blank it.
20      Do you want to talk for a minute?  Because
21      you have just admitted to securities fraud.
22                  MR. KAZAN:  Objection.
23          Q.      I don't want to trap you.  I'm
24      trying to be nice.  I just want truthful
25      answers.
```

```
 1          LATKIN - CONFIDENTIAL
 2               MR. KAZAN:  Mr. Weisbrot, are
 3     you going to ask questions?
 4               MR. WEISBROT:  Okay, so if you
 5     don't want to take a minute, that's fine.
 6     Let's keep going.  That is fine with me.  I
 7     was actually being a good guy here, but
 8     that's fine.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 109

1        LATKIN - CONFIDENTIAL

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23        Q.        Mr. Latkin, do you feel like

24    you are qualified to be the CEO of this

25    company, with all of your pharmaceutical

```
                                          Page 110
 1              LATKIN - CONFIDENTIAL
 2   and therapeutic experience?
 3        A.      CEO of which company, Navidea
 4   or Macrophage?
 5        Q.      Wait, you are the CEO of both?
 6        A.      Yes.
 7        Q.      You are kidding?  There is a
 8   lawsuit in which the claim is that these
 9   two companies are adverse to each other and
10   you are the CEO of both?  Withdrawn.
11                Do you feel like you are
12   qualified to be the CEO of Navidea?
13
14
15
16
17        Q.      Do you believe you are
18   qualified to direct the future of both
19   companies?
20        A.      In conjunction with --
21        Q.      Yes or no.  I'm not playing
22   these games.  I have to finish by 4
23   o'clock.
24                Are you qualified to direct the
25   future of both companies, yes or no?  It
```

Page 111

1          LATKIN - CONFIDENTIAL

2    seems like something someone who is

3    qualified would say yes.

4              MR. KAZAN:  Mr. Weisbrot, he is

5    going to answer your questions.  You do not

6    get to interrupt his answers.

7              MR. WEISBROT:  I'm looking for

8    a yes or no answer.  It is very short.

9         Q.      Do you believe that you are

10   qualified to direct the future of both

11   Navidea and Macrophage, yes or no?

12        A.      Yes.

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LATKIN - CONFIDENTIAL

12               MR. KAZAN:  Mr. Weisbrot, what

13     is your question?

14         Q.     What did Dr. Goldberg do or not

15     do that violated this paragraph?

16               MR. KAZAN:  Can you please not

17     yell at the witness?

18               MR. WEISBROT:  I'm going to

19     yell because this witness will not answer

20     questions and I don't want to be here all

21     day and neither do you.

22         Q.     So just answer the question.

23               MR. KAZAN:  If you are going to

24     continue to yell, we are going to terminate

25     this deposition.

1          LATKIN - CONFIDENTIAL

2               MR. WEISBROT:  Do what you have

3    to do, Barry.

Page 217

1                 LATKIN - CONFIDENTIAL

9       Q.      I'm sure you did that to
10   prepare for your deposition.  This is a big
11   case, very important, you are the CEO of
12   two public companies.
13                 MR. KAZAN:  If you are going to
14   continue to interrupt him and not let him
15   finish the answer --
16                 MR. WEISBROT:  That is fair.
17   Barry, I'm sorry.
18       Q.      Go on, Mr. Latkin.  Go on and
19   tell me what you had to do to prepare for
20   your deposition today.

1          LATKIN - CONFIDENTIAL

15      Q.      So because he enlisted lawyers

16   and didn't tell you about a litigation,

17   Navidea decided not to comply with its

18   contractual agreement, right?

19              MR. KAZAN:   I object to the

20   form.   You can answer.

21      A.      Because we determined that

22   there was breaches to the contract.

23      Q.      But, you see, here is the

24   problem when you say stuff like that, I

25   would never tell my client to say that,

Page 257

```
 1              LATKIN - CONFIDENTIAL
 2   because how do you know, that's not a legal
 3   issue, but you have said it so now I'm
 4   going to ask you about it.  We spent an
 5   hour on this.  What provision did he
 6   breach?  Just show it to me.  How do you
 7   not understand my questions?  What
 8   provision did he breach?
 9              MR. KAZAN:  Let's get the
10   magistrate back on the phone.
11              MR. WEISBROT:  You can do
12   whatever you want.
13              MR. KAZAN:  Mr. Weisbrot, can
14   you refrain from yelling at my client and
15   interrupting my client for the next couple
16   of hours or can you not?
17              MR. WEISBROT:  I mean, I can,
18   if you can instruct him, and maybe we
19   should take a calming-down break, I want
20   him to answer truthfully questions.  It is
21   not complicated, Barry.
22              He just said under oath, under
23   penalties of perjury and contempt, that my
24   client breached this contract.  I am trying
25   to understand, since we wasted an hour
```

Page 258

1                 LATKIN - CONFIDENTIAL

2    determining that that's not true, if you

3    can't have your client testify truthfully,

4    I'm not sure if it is your fault for not

5    preparing him to just be honest, or if it

6    is his fault for not being able to follow

7    your instructions to be honest, but it is

8    very frustrating, I don't think this hurts

9    us at all, it is frustrating because I

10   don't want to be in a deposition all day

11   long.  When a witness cannot answer a

12   question truthfully, it becomes

13   frustrating.

14                 So let's take two minutes, you

15   should talk to him, again, you are not

16   supposed to, but I will allow it off the

17   record, just tell him that when he says

18   that Dr. Goldberg breached the contract, he

19   better be ready for the next question,

20   which is what provisions, since we have

21   gone over the whole thing and he couldn't

22   find anything.  Hell, Barry, you tell him

23   what to answer.  In fact, you can answer

24   it.  I just want an answer to my question

25   so we can end it.  So let's take two

1          LATKIN - CONFIDENTIAL

2     minutes.   Thank you.

1          LATKIN - CONFIDENTIAL

13              MR. KAZAN:  You know what, Ari,

14    I'm terminating this.

15              MR. WEISBROT:  Let's get the

16    magistrate on the phone.  This is an easy

17    question, who is on the committee.

18              MR. KAZAN:  Let's get the

19    magistrate on the phone.

20              MR. WEISBROT:  I just want to

21    know who is on the committee.

22              MR. KAZAN:  Mr. Weisbrot, the

23    problem is every time Mr. Latkin tries to

24    answer a question, not every time, a good

25    many times, you interrupt him.  You have

```
 1              LATKIN - CONFIDENTIAL
 2   been yelling at him.  You have been
 3   belittling him.  I ask that you stop doing
 4   both and stop interrupting him.  So I'm
 5   terminating this to get a protective order.
 6        Q.      Jed, who is on the litigation
 7   committee?
 8              MR. KAZAN:  Mr. Weisbrot, did
 9   you not hear me?  I am terminating --
10              MR. WEISBROT:  I did not hear
11   you because I don't take you seriously.  I
12   want to know who is on the litigation
13   committee.  Barry, don't terminate it.
14              MR. KAZAN:  I'm terminating
15   this deposition.  I'm seeking a protective
16   order.
17              MR. WEISBROT:  Barry, take a
18   minute and call me.  I just want to know
19   who is on the litigation committee.
20              MR. KAZAN:  Mr. Weisbrot, thank
21   you very much.
22              MR. WEISBROT:  Barry, I'm
23   calling you right now.
24              MR. KAZAN:  Let's get on the
25   phone with the magistrate right now.  I
```

```
 1              LATKIN - CONFIDENTIAL
 2    want the magistrate to have the benefit of
 3    this transcript and read this transcript.
 4    We are done with this because you cannot
 5    provide common courtesy to a witness.
 6              MR. WEISBROT:  I'm asking who
 7    is on the litigation committee.
 8              MR. KAZAN:  We are far beyond
 9    that.  You interrupt him and you yell at
10    him.  We are done.
11              MR. WEISBROT:  Barry, I urge
12    you to talk to me for a minute.  I'm going
13    to call you.  Before you terminate it, I'm
14    going to call you.
15              MR. KAZAN:  We are officially
16    terminating --
17
18
19
20
21
22
23
24
25
```