Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Tel:  (914) 402-5683
GZimmer@GZimmerLegal.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Navidea Biopharmaceuticals Litigation | Case No.: 1:19-cv-01578-VEC |

**SUPPLEMENTAL MEMORANDUM OF LAW OF DEFENDANT/COUNTERCLAIM PLAINTIFF/THIRD-PARTY PLAINTIFF DR. MICHAEL M. GOLDBERG IN OPPOSITION TO MOTION OF PLAINTIFF/COUNTERCLAIM DEFENDANT NAVIDEA BIOPHARMACEUTICALS, INC. AND THIRD-PARTY DEFENDANT MACROPHAGE THERAPEUTICS, INC. TO EXCLUDE EXPERT TESTIMONY OF TERRY L. ORR**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT AND BACKGROUND FACTS ................................................. 1

   1.  Testimony Regarding The Characteristics of Shares Issued Under Regulation D ............ 6

   2.  Testimony Regarding Anti-Dilution Provisions Routinely Included In Contracts
      Requiring Delivery Of Specific Numbers Of Shares In The Future................................. 7

   3.  Testimony Regarding The Value Of 23.5 Million Post-Split Navidea Shares .................. 8

   4.  Testimony Regarding The Value Of 23.5 Million Pret-Split Navidea Shares .................. 8

   5.  Testimony Regarding The Value Of Macrophage ........................................................... 10

   CONCLUSION ............................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases** **Page**

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991)  ................................................................................ 6

*MPM Silicones, LLC v. Union Carbide Corp.*,
  1:11-CV-1542. 2016 U.S. Dist. LEXIS 98532, (N.D.N.Y. July 7, 2019) ............................... 7

*In re Fosamax Prods. Liability Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009)  ...................................................................... 7

*Am. Home Assur. Co. v. Merck & Co., Inc.*,
  462 F. Supp. 2d 435 (S.D.N.Y. 2006)  ...................................................................... 7

*Paradee v. Paradee*,
  2010 Del. Ch. LEXIS 212 (Del. Ch. Oct. 5, 2010) ....................................................... 9

Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Dr. Michael M. Goldberg M.D.

("Dr. Goldberg") respectfully submits this supplemental memorandum of law, pursuant to the

Court's Order dated August 29, 2022, in opposition to the motion (the "Motion") of

Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") and Third-Party

Defendant Macrophage Therapeutics, Inc. ("Macrophage" and, together with Navidea,

"Defendants") to exclude the expert testimony of Terry L. Orr ("Orr").

## PRELIMINARY STATEMENT AND BACKGROUND FACTS

In March 2019 Navidea commenced this Action seeking to avoid its obligation pursuant

to an agreement between Dr. Goldberg, Navidea and Macrophage dated effective as of August

14, 2018 (the "August 14th Agreement") to "issue to [Dr.] Goldberg 23.5 million shares of

Navidea common stock (the "**Shares**"), 18.5 million currently, and 5 million on January 2nd 2019

. . . issued under Regulation D of the Securities Act of 1933."[1]  (August 14th Agreement at 1.)

It is now September 2022, more than four (4) years after the August 14th Agreement was

entered and Dr. Goldberg has *never* had the benefit of a single share of Navidea common stock

issued pursuant to the August 14th Agreement even though not one of Navidea's witnesses in

their depositions in September 2020 could identify a single thing in their depositions that Dr.

Goldberg was required to do by the August 14th Agreement but did not do, or was prohibited

from doing by the August 14th Agreement but did anyway.

Dr. Goldberg intends to prove that there is no merit to Navidea's allegations that he

breached the August 14th Agreement such that Navidea was excused from issuing the Shares and

that Dr. Goldberg was entitled to have approximately 18.5 million of the Shares issued to him in

---

[1]       Dr. Goldberg's counterclaims allege that Navidea breached the August 14th Agreement by failing
to issue the Shares and that Navidea and Macrophage breached the agreement by failing to issue to Dr. Goldberg
certain shares of Macrophage.

or about August 2020 and 5 million Shares issued on January 2, 2019, all issued pursuant to

Regulation D of the Securities Act of 1933 with only those restrictions imposed by Regulation D

or otherwise imposed by the August 14th Agreement.

Dr. Goldberg also intends to prove that although Navidea did issue certain shares of

Navidea common stock in his name in November 2018 those shares were not issued under

Regulation D and/or contained restrictive legends preventing Dr. Goldberg from selling or

otherwise realizing any value from them until Navidea unilaterally removes certain restrictive

legends neither permitted nor required by Regulation D or the August 14th Agreement.  Despite

demands by Dr. Goldberg that the legends be removed, Navidea has refused to do so.  Therefore,

Dr. Goldberg intends to prove that due to Navidea's breach of the August 14th Agreement he has

not received *any* of the Stock he is entitled to under the August 14th Agreement or the value of

that Stock.

Dr. Goldberg intends to argue that because he has never received any Navidea common

stock in the form required by the August 14th Agreement he is entitled to receive today the full

23.5 million Shares required by the August 14th Agreement, or the value thereof, as a remedy for

Navidea's breach of the August 14th Agreement.  The August 14th Agreement *did not* contain any

provision for adjusting the number of Navidea shares to be issued in the event that a stock split

or other similar event occurred between the date the August 14th Agreement was executed and

the date the Shares are actually delivered to Dr. Goldberg.

Because this action has been pending for more than 4 years, Navidea and its common

stock have undergone significant changes since the August 14th Agreement was signed.  In April

2019 Navidea implemented a 20 for 1 reverse stock split, meaning that twenty shares of stock

immediately prior to the reverse split's implementation became a single share.  Navidea was

2

seeking approval of its stockholders for the reverse split throughout the summer of 2018 in advance of its annual meeting, and it received shareholder approval on August 15, 2018, the day after the August 14th Agreement was executed.  The admitted purpose of Navidea's implementation of the reverse stock split was to raise Navidea's per share stock price as part of a plan to avoid delisting by the NYSE/AMEX.  The August 14th Agreement *does not* contain any provision protecting *either* Dr. Goldberg *or* Navidea in the event of a stock split.  As a result, Dr. Goldberg will argue that he is entitled to receive 23.5 million shares of post-split shares, in other words, to have Navidea issue 23.5 million shares of current stock after a judgment is entered. This issue is particularly significant due to the length of time this action has been pending and, therefore, the length of time Dr. Goldberg has been denied the benefit of the Shares promised to him in the August 14th Agreement.

In addition to the reverse stock split, successive rounds of fundraising by Navidea since the August 14th Agreement was executed have resulted in severe dilution of its common shares. Navidea has engaged in repetitive rounds of highly dilutive fundraising which diluted its common stock by approximately 1,000%.  On August 14, 2018 Navidea had approximately 163 million pre-split shares outstanding (which equates to 8.1 million post-split shares).  Today, it has approximately 90 million post-split shares (which equates to approximately 1.8 billion pre-split shares).  On August 14, 2018 the 23.5 million Shares to be issued to Dr. Goldberg pursuant to the August 14th Agreement represented an approximately 12.6% ownership interest in Navidea based on its 162,959,731 outstanding shares.  23.5 million post-split shares of Navidea today represent an approximately 12.6% ownership interest today.  23.5 million shares adjusted for the reverse split would represent only an approximately 1.3% ownership interest today.

Dr Goldberg therefor intends to offer two potential damages calculations.  First, he

intends to offer a calculation to value 23.5 million post-split shares because he believes that he is

entitled to post-split shares for the reasons set forth above and expects that the finder of fact will

agree with his argument in that regard.  However, he also intends to offer a calculation of the

value of 23.5 million pre-split shares in case the finder of fact determines that Navidea is

somehow entitled to protection from its reverse split even thought it was aware of the potential

for such a reverse split and was actively seeking shareholder approval for it when the August 14th

Agreement was executed, yet did not receive any such protection in the August 14th Agreement.[2]

Dr. Goldberg also seeks to remedy the undisputed fact that Macrophage never issued to

him the Macrophage Super Voting Common Stock he is entitled to under the August 14th

Agreement.  Macrophage is a subsidiary of Navidea which was owned and controlled by

Navidea prior to August 14, 2018.  As of August 14, 2018 Macrophage was an early stage

biopharmaceutical company focused on therapeutics,[3] with ongoing research underway,

including at New York Medical College, the University of Pennsylvania, University of

Connecticut and Harvard.  It was agreed by both Navidea, Dr. Goldberg and Macrophage as of

August 14, 2018 that Macrophage's best chance for successful development of therapeutics was

to separate Macrophage from Navidea and give Dr. Goldberg voting and board control over

Macrophage (which he had already been running since Macrophage's inception).  Pursuant to the

August 14th Agreement, Dr. Goldberg was entitled to receive Super Voting Common Stock of

Macrophage equal to five percent of the total number of outstanding Macrophage shares, with

---

[2]       If the finder of fact determines that specific performance is a more appropriate remedy in this
action, including based on a finding that Navidea's claim that Dr. Goldberg breached the August 14th Agreement and
excused Navidea's performance with respect to the Shares, then valuation of the Shares will not be necessary.
[3]       Navidea was focused on diagnostics, not therapeutics, until it plundered all of Macrophage's
therapeutics research and developments in 2019.

4

each share of Super Voting Common Stock entitled to 20 votes on all matters, effectively giving

Dr. Goldberg voting and operational control of Macrophage.  Navidea was permitted only to

have a single observer on the Macrophage board of directors.  Since the August 14th Agreement

was executed, *no* Macrophage shares have been issued to Dr. Goldberg.

In the interim, in or about November 2018 Navidea commandeered the Macrophage

board of directors and in or about February and March 2019 Navidea terminated many of

Macrophage's ongoing research projects and took for itself all of Macrophage's assets and all of

Macrophage's research and developments Navidea perceived to have any value, including

several patents based on Macrophage's work.  Navidea now touts that very research and

development in therapeutics as a major component of its business and has repeatedly sought

investment *in Navidea* on the basis of Navidea's therapeutics work and products.  Macrophage is

now a defunct shell with no operations or assets.  As a result of Navidea's own conduct (and

Macrophage's once it was being operated by Navidea's officers and directors), Macrophage has

virtually no value today.  Because Navidea blocked the separation of Macrophage from Navidea

and Dr. Goldberg's control of Macrophage which all parties agreed was required for Macrophage

to raise funds needed to build value, Macrophage was never given a chance to succeed.

In the fall of 2018, Navidea reported to the NYSE/AMEX that it had received multiple

investment offers for investment in Macrophage that were reported by Navidea to the NYSE as

part of Navidea's effort to avoid delisting.  Those reports included statements made in writing to

the NYSE and intended for the NYSE to rely upon that Navidea was considering an investment

in Macrophage of $20 million that would be consolidated on Navidea's books and therefore help

Navidea achieve a minimum capitalization requirement to continue to be listed on the NYSE.

Although he personally made written representations to the NYSE regarding this transaction as

part of his effort to avoid Navidea being delisted, Navidea's witnesses testified at deposition that

they could not recall the terms of the proposed investment.

In light of the above, at trial, or where appropriate, in support of summary judgment, Dr.

Goldberg intends to introduce the testimony of expert witness Terry Orr ("Orr"). Orr will present

the following expert testimony:[4]

### 1.   Testimony Regarding Characteristics Of Shares Issued Under Regulation D

As set forth in the Orr Report, Orr intends to educate the finder of fact on the background

and requirements of Regulation D as applied to persons in Dr. Goldberg's position, the attributes

of shares of stock issued pursuant to Regulation D, and the restrictions on transfer or sale of

shares issued under Regulation D.  An understanding of the attributes of shares issued under

Regulation D is critical for any finder of fact charged with determining whether Navidea

complied with the August 14th Agreement when it issued certain shares of Navidea stock with

specific restrictive legends preventing Dr. Goldberg from selling or otherwise realizing any value

from those shares unless and until Navidea consented to remove the legends.  Only a finder of

fact educated about what Dr. Goldberg actually bargained for and contracted for (*i.e.*, 23.5

million shares of Navidea common stock issued under Regulation D) can responsibly decide the

issue whether Navidea has complied with its obligation.

This type of expert testimony is routinely admitted by Courts in the Second Circuit.  *See*,

*e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1303, (2d Cir. 1991) (allowing expert witness "to

provide background information regarding the securities laws and the filing requirements of

Schedule 13D.  The district court permitted Bilzerian's expert . . . to do the same . . ."); *MPM*

---

[4]      Although Orr's expert report (the "Orr Report") contains background discussion and recites certain background facts supporting his opinions, the foregoing facts will be established on summary judgment and/or at trial by Dr. Goldberg using fact witness testimony and documentary evidence.

*Silicones, LLC v. Union Carbide Corp.*, 1:11-CV-1542. 2016 U.S. Dist. LEXIS 98532, *5

(N.D.N.Y. July 7, 2019) ("Opinion testimony that arguably states a legal conclusion may be

helpful and admissible if the case involves a specialized industry.") (citing 4 Weinstein's Federal

Evidence § 704.04[2][a] (2d ed. 2016)); *In re Fosamax Prods. Liability Litig.*, 645 F. Supp. 2d

164, 190-91 (S.D.N.Y. 2009) (allowing expert testimony on compliance with FDA regulations

where the expert's "assessment of the reasonableness of [the defendant's] conduct in light of her

experience and her understanding of FDA regulations [would] be helpful to the jury"); *Am.

Home Assur. Co. v. Merck & Co., Inc.*, 462 F. Supp. 2d 435, 451 (S.D.N.Y. 2006) (admitting

expert testimony on FDA regulations where the court was "persuaded that [the expert's]

testimony on these complex regulatory provisions [would] assist the trier of fact").[5]

### 2. Testimony Regarding Anti-Dilution Provisions Routinely Included In Contracts Requiring Delivery Of Specific Numbers Of Shares In The Future

If the finder of fact determines that Navidea is not excused from performance of delivery

of 23.5 million Shares of Navidea common stock to Dr. Goldberg and that Navidea has not

complied to any extent with that obligation yet, the finder of fact must determine the appropriate

remedy.  The August 14th Agreement does not contain protection for *either* Dr. Goldberg *or*

Navidea with respect to stock splits.  An average juror will not be aware of the existence or

purpose of anti-dilution provisions in contracts or that parties regularly incorporate them into

contracts requiring delivery of a specific number of stock shares at a later date.

Dr. Goldberg intends to introduce testimony from Orr explaining anti-dilution provisions,

which provide for the adjustment of the agreed number of shares to account for future events

---

[5]     Ordinary jurors do not possess the specialized knowledge required to make the factual determination whether the shares purportedly issued in Dr. Goldberg's name by Navidea comply with the August 14th Agreement's requirement that Navidea issue to Dr. Goldberg 23.5 shares of Navidea common stock "issued under Regulation D."

such as stock splits (either forward or reverse), that anti-dilution provisions are common contract

terms and that parties to contracts requiring the delivery of a specific number of shares in the

future routinely negotiate for the inclusion of anti-dilution provisions.  The average juror is

unlikely to be aware of such clauses or their purpose, much less the fact that such clauses are

commonly incorporated under circumstances similar to those surrounding the August 14th

Agreement.[6]

3.   **Testimony Regarding The Value Of 23.5 Million Post-Split Navidea Shares**

Dr. Goldberg believes that the proper remedy for Navidea's failure to deliver any of the

Shares required by the August 14th Agreement is that he is entitled to 23.5 million current (*i.e.*,

post-split) shares of Navidea common stock.  He intends to argue this point to the finder of fact.

He also intends to proffer Orr's expert opinion as to the proper methodology for valuing 23.5

million shares if Dr. Goldberg is not awarded specific performance (*i.e.*, delivery of 23.5 million

current shares).  (*See* Orr Report at 16-17.)  As Orr explains in his report, this methodology is

indicated because this theory of damages assumes that no Shares were received by Dr. Goldberg

and because the large volume of shares represented by 23.5 million post-split shares represents a

volume the award of which might temporarily depress Navidea's stock price on the date a

judgment was entered such that using a closing price might not appropriately reflect the true

value of the shares.

4.   **Testimony Regarding The Value Of 23.5 Million Pre-Split Navidea Shares**

Because the trier of fact may ultimately find that Dr. Goldberg is not entitled to post-split

shares or their value, Dr. Goldberg also intends to present Orr's expert opinion regarding the

---

[6]      If the Court rules on the meaning of the August 14th Agreement based on a finding that its terms
are unambiguous and that extrinsic evidence is neither required nor permitted, then Orr's testimony may not be
necessary, but a jury will not posses this specialized knowledge and it is therefore an appropriate basis for expert
testimony.

value of 23.5 million pre-split shares had they been issued pursuant to the terms of the August

14th Agreement.  Because Navidea took steps (the failure to issue 5 million shares and the

issuance of 18.5 million Shares in forms not complaint with the August 14th Agreement and not

available even until today for Dr. Goldberg to sell or otherwise realize value from), Orr

considered Navidea's trading history within a reasonable time frame after Dr. Goldberg would

have been able to sell the shares.  The earliest that could have occurred would be: (i) May 2019

for 13.5 million shares purportedly issued to Dr. Goldberg in November 2018 (but still

unavailable to him for sale), (ii) May 2020 for the 5 million shares purportedly issued to Dr.

Goldberg in November 2018 (but still unavailable to him for sale) because those shares were

placed in escrow which expired in May 2020, and (iii) June 2020 for the 5 million shares to be

issued to Dr. Goldberg on January 2, 2019 which were never issued.

As set forth in Dr. Goldberg's memorandum of law in opposition to Navidea's Motion,

controlling Delaware caselaw provides that "[w]here a party has wrongfully deprived another of

the ability to sell shares, damages are measured using the highest intermediate value of the shares

less the value at the time of judgment." *Paradee v. Paradee*, 2010 Del. Ch. LEXIS 212, *35-36

(Del. Ch. Oct. 5, 2010).  This would assume that Dr. Goldberg actually received delivery of the

shares in proper form in addition to damages.  Accordingly, Orr valued pre-split shares (*i.e.*, 23.5

million shares divided by 20 to reflect the 20 for 1 reverse stock split) as of August 2020, a time

period where Navidea stock was trading at its high since the Shares would have become salable

by Dr. Goldberg if the August 14th Agreement were complied with.  Based on this analysis, Orr

calculated that Dr. Goldberg's damages with respect to Navidea's failure to properly issue the

Navidea Shares was $5,675,250.[7]  (*See* Orr Report at 17-23.)  If Dr. Goldberg is also awarded the

---

[7]    For illustrative purposes, Orr also provided the value of the Shares as of the earliest date Dr.
Goldberg should have been able to sell them under the terms of the August 14th Agreement (but was not because of

shares their value will have to be calculated at the time they are delivered and deducted from this

amount.

     **5.   Testimony Regarding The Value Of Macrophage**

Valuation of Macrophage is necessarily difficult and imprecise due to the breaches of the

August 14th Agreement by Navidea and Macrophage and their subsequent misconduct, which Dr.

Goldberg intends to prove on summary judgment or at trial, *i.e.*, Navidea's failure to relinquish

voting control to Dr. Goldberg which all parties agreed would be required for Macrophage

achieve investment and increase its value, (ii) Navidea's termination of Macrophage's operations

and its stripping Macrophage of its valuable research, development and other assets including

patents, and (iii) Navidea's witness's inability to "recall" details regarding the investment offers

in Macrophage reported to the NYSE.  Where a defendant's conduct makes exact calculation of

damages impossible a reasonable estimate may be presented to the finder of fact.  (*See* authority

at Opp. Memo at 20-21.)

Accordingly, Orr intends to present testimony to the finder of fact regarding the imputed

value of Macrophage based on investment offers reported to the NYSE/AMEX, using his

expertise in accounting and reporting requirements as well as valuation techniques.  On the basis

of this analysis, Orr will testify that investment offers reported by Navidea to the NYSE imputed

a value range to the five percent Super Voting Common Stock interest that Dr. Goldberg was to

receive of approximately $2.7-$12.5 million, even without taking into account any control

premium which would be expected to increase the value of a block of shares that carries voting

control of any company.  (*See* Orr Report at 24-25.)

---

Navidea's breach) and the current value of the Shares as of the date of his report (if this value would be helpful to
the trier of fact Orr would update it as of a trial date).

## CONCLUSION

For the foregoing reasons, and as set forth more fully in Dr. Goldberg's memorandum of law in opposition to the Motion and accompanying submissions, the Court should deny Defendants' Motion in its entirety and should grant Dr. Goldberg such other and further relief as the Court deems just and proper.

Dated: Westchester, New York
       September 8, 2022

Respectfully submitted,

/s/ Gregory Zimmer
Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Phone: 914.402.5683
Fax: 914.402.5683
Email: GZimmer@GZimmerLegal.com

11