UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: NAVIDEA BIOPHARMACEUTICALS LITIGATION | Case No: 1:19-cv-01578-VEC<br><br>ECF Case |

**SUPPLEMENTAL MEMORANDUM OF
PLAINTIFF/COUNTERCLAIM-DEFENDANT NAVIDEA
BIOPHARMACEUTICALS, INC.'S AND THIRD-PARTY
DEFENDANT MACROPHAGE THERAPEUTICS, INC.'S
<u>MOTION TO EXCLUDE EXPERT TESTIMONY OF TERRY L. ORR</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

FACTUAL BACKGROUND………………………………………………………..………2

LEGAL STANDARD…………………………………………………………………………..3

    THE PROPER MEASURE OF CONTRACTUAL DAMAGES AS IT RELATES TO DR. GOLDBERG'S CLAIMS REGARDING NAVIDEA STOCK……………………………………………………..…………………..3

    THE PROPER MEASURE OF CONTRACTUAL DAMAGES AS IT RELATES TO DR. GOLDBERG'S CLAIMS REGARDING MACROPHAGE STOCK .........................6

CONCLUSION ..................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

Cases

*Duncan v. Theratx, Inc.*,
   775 A.2d 1019 (Del. 2001) ................................................................................................... 4, 5

*Great American Opportunities, Inc. v. Cherrydale Fundraising, LLC*,
   2010 WL 338219 ..................................................................................................................... 7

*Israel Disc. Bank of New York v. First State Depository Co., LLC*,
   2013 WL 2326875 (Del. Ch. May 29, 2013) ........................................................................... 7

*Kruse v. Synapse Wireless, Inc.*,
   2020 WL 3969386, (Del. Ch Jul. 14, 2020) ............................................................................. 7

*Madison Fund, Inc. v. Charter Co.*,
   427 F.Supp. (S.D.N.Y 1977) ................................................................................................... 4

*Paradee v. Paradee*,
   4988, 2010 WL 3959604 (Del. Ch. Oct. 5, 2010) ................................................................. 3, 4

Navidea and Macrophage[1] submit this supplemental memorandum of law in response to the Court's August 29, 2022 Order (the "August 29 Order") which directed the parties clarify the proper measure of damages if Dr. Goldberg were to prevail on Counts I and II (breach of the August 14 Agreement (the "August 14 Agreement")) against Navidea and Macrophage.

## PRELIMINARY STATEMENT

During the course of discovery in this matter, Dr. Goldberg has maintained that damages in this case could only be proven through the use of an expert. Consistent with that position, Dr. Goldberg proposed an expert, Terry Orr, to opine on the damages that Dr. Goldberg alleges he suffered as a result of purported breaches of the August 14 Agreement by Navidea and Macrophage. Both Navidea and Macrophage deny that they have breached the August 14 Agreement. Each have moved to disqualify Dr. Goldberg's expert on the basis that the methodologies employed do not meet the *Daubert* standard and that his testimony would be inadmissible to prove up Dr. Goldberg's damages if it was determined that Navidea and/or Macrophage breached the August 14 Agreement. Because Dr. Goldberg ultimately bears the burden of proving his damages, it falls on him to establish the proper measure of damages if he were to prevail. To date, Dr. Goldberg has not done so.

In his response to the August 29, 2022 Order, Dr. Goldberg simply re-hashes and repeats his various arguments about what he proposes his expert will testify to and does not provide the Court with legal support for the "proper measure of damages" if Dr. Goldberg were to prevail on his remaining claims for breach of the August 14 Agreement. While it should not be the responsibility of Navidea and Macrophage to explain Dr. Goldberg's damages theory in the case or how his expert's testimony assists in making that determination, Navidea and Macrophage will

---

[1] Capitalized Terms not defined herein have the meaning as set forth in the moving papers.

1

attempt to explain below what it believes could be the "proper measure of damages" if Dr. Goldberg were to prevail on his claims as Navidea understands those claims to be: (1) the proper measure of damages if Dr. Goldberg were to prevail on his claim that Navidea was required to issue to him 18.5 million shares of Navidea on August 14, 2018 and 5 million shares of Navidea on January 2, 2019 (subject to an escrow agreement); and (2) the proper measure of damages if Dr. Goldberg were to prevail on his claim that Macrophage was required to issue to him Super Voting Shares in Macrophage on August 14, 2018.

## FACTUAL BACKGROUND

On December 26, 2019, this Court dismissed portions of Dr. Goldberg's claims for breach of contract, all of his claims for breach of the implied covenant of good faith and fair dealing, his claims for wrongful termination, and his claims under a theory of quantum meruit. In addition, the Court granted dismissal of certain claims for injunctive relief and stated that if Dr. Goldberg seeks leave to file an amended counterclaim, Dr. Goldberg "must explain why he has standing to seek injunctive relief." Dkt. No. 61 at 16. The Court further stated that "Goldberg nowhere alleges facts from which the Court could conclude that monetary damages are inadequate to remedy his harm." *Id.* at 15, n.1.

On April 1, 2020, the Court denied Dr. Goldberg's motion for leave to amend and expressly stated that "Goldberg's proposed amended counterclaim for injunctive relief fails to address the Court's explicit instruction to explain why Goldberg believes 'he has standing to seek injunctive relief.'" Dkt. No. 108 at 2.

By operation of the orders entered on December 26, 2019 and April 1, 2020, Dr. Goldberg has two remaining claims in this action: breach of the August 14 Agreement against Navidea for failing to issue to Dr. Goldberg the 23.5 million shares of Navidea common stock in the form contemplated by the August Agreement (Dkt. No. 35 at ¶ 87) and breach of the August 14

2

Agreement against Macrophage for failing to issue to Dr. Goldberg the Super Voting Common Shares required by the August 14 Agreement." Dkt. No. 35 at ¶ 87.

## LEGAL STANDARD

The August 14 Agreement provides that "[t]his Agreement shall be governed by and construed in accordance of the laws of the State of Delaware without regard to its conflicts-of-law provisions, as an agreement executed under the seal in the state of Delaware." Therefore, Delaware law should inform the Court as to the appropriate measure of damages.

I. **THE PROPER MEASURE OF CONTRACTUAL DAMAGES AS IT RELATES TO DR. GOLDBERG'S CLAIMS REGARDING NAVIDEA STOCK**

With respect to the Court's first question, Dr. Goldberg's claim is that Navidea failed to issue 23.5 million shares of Navidea common stock in the form required by the August Agreement which he characterizes as shares "all issued pursuant to Regulation D of the Securities Act of 1993 with only those restrictions imposed by Regulation D or otherwise imposed by the August 14 Agreement." Dkt. No. 285 at 1-2. While Dr. Goldberg suggests other claims arise from this alleged breach, the crux of Dr. Goldberg's claim – and the opinion put forth by his expert Mr. Orr – is that by failing to issue to the 23.5 million shares, Dr. Goldberg was "prevent[ed] … from selling or otherwise realizing any value from them until Navidea unilaterally removes certain restrictive legends." Dkt. No. 285 at 2.

With respect to the Navidea shares, Dr. Goldberg relies in his supplement on a single case that states "[w]here a party has wrongfully deprived another of the ability to sell shares, damages are measured using the highest intermediate value of the shares less the value of the time of judgment." *Paradee v. Paradee*, Case No. CIV.A. 4988, 2010 WL 3959604 (Del. Ch. Oct. 5, 2010). However, *Paradee* is an unpublished opinion by the Chancery Court and concerns a breach of fiduciary duty based on an individual's egregious conduct to improperly revoke another beneficiary's irrevocable trust. *Id.* at *12-13. The present case concerns a breach of contract and

3

is not similar in any way to *Paradee*. *Id.* Dr. Goldberg cites no additional Delaware law in his supplement to clarify the issue for the Court.

While not conceding any breach, Navidea has suggested that the proper measure of damages for the failure to issue freely tradeable Navidea shares is found in *Duncan v. Theratx, Inc.*, 775 A.2d 1019 (Del. 2001), wherein the Eleventh Circuit asked the Delaware Supreme Court to resolve the question of determining the "appropriate method of calculating contract damages where an issuer's temporary suspension of a shelf registration prevents trading by stockholders in violation of the terms of a merger agreement." *Id.* at 1020. In *Duncan*, the Court stated:

> We conclude that, under Delaware law, contract damages in this situation are measured by calculating the difference between (1) the highest intermediate price of the shares during a reasonable time at the beginning of the restricted period, which functions as an estimate of the price that the stockholders would have received if they had been able to sell their shares, and (2) the average market price of the shares during a reasonable period after the restrictions were lifted. This damages rule provides a suitable approximation of the damages that the stockholders incurred as a result of the breach, while allocating exclusively to the stockholders who elect to retain their shares after reinstatement of the shelf registration the risk of subsequent positive and negative share price changes.

*Id.* The Court further stated that "The 'reasonable time' in this context is the "***time in which [the plaintiff] could have disposed of its shares without depressing the market had it been able to do so.***" *Id.* at fn. 9 (citing *Madison Fund, Inc. v. Charter Co.,* 427 F.Supp. 609 (S.D.N.Y 1977). Notably absent from Mr. Orr's opinion is any discussion regarding this issue – a criticism levied by Navidea's expert William Murray. Dkt. No. 265-1 at 3.

The *Duncan* court further explained the theory as follows:

> … one may obtain an appropriate estimate of the hypothetical sale price by identifying a reasonable period after the restriction was imposed during which the stockholders could have sold the shares and then selecting the "highest intermediate price" during that period as the presumed sale price. Although it provides only a rough approximation of what the stockholders would have received absent the restrictions, this method has the advantage of permitting the stockholders to recover some of the increases in the share price during the restricted period without assuming that the stockholders would have sold at the highest possible share price during the period. The intuition behind this rule is that the issuer-defendant should

4

> bear the risk of uncertainty in the share price because the "defendant's acts prevent a court from determining with any degree of certainty what the plaintiff would have done with his securities had they been freely alienable." But the issuer should not bear the risk of all subsequent share price increases because it is impossible to know whether and when the stockholders actually would have sold their shares during the restricted period."

*Duncan*, 775 A.2d at 1023-24.

As set forth in detail in Navidea's Motion to Disqualify, Mr. Orr engaged in an analysis contrary to Delaware law in that he "assum[ed] that the stockholders would have sold at the highest possible share price during the period," attempts to have Navidea "bear the risk of all subsequent share price increases," and ignores the Duncan court's admonition that "it is impossible to know whether and when the stockholders actually would have sold their shares during the restricted period." Rather, Mr. Orr relies on a "savvy investor" theory that is contrary to law. Dkt. No. 254 at 9-10.

Because Dr. Goldberg's expert failed to engage in an analysis consistent with *Duncan*, Navidea submits that it is impossible for a factfinder without the benefit of expert testimony (a fact conceded by Dr. Goldberg at his deposition) to now calculate the proper measure of damages. *Id.*

Faced with the Court's question – and not truly providing an answer – Dr. Goldberg simply repeats that his expert should be permitted to testify about the characteristics of shares issued under Regulation D (refuted by Navidea in its Moving Brief [Dkt. No. 254 at 17-18] and Reply Brief at [Dkt. No. 272 at 1-6]), the language contained in anti-dilution clauses (refuted by Navidea in its Reply Brief [Dkt. No. 272 at 3-6]), the post-split valuation of the 23.5 million shares (refuted by Navidea in its Moving Brief [Dkt. No. 254 at 6, 18-19, fn. 6]), and a pre-split valuation of the 23.5 million shares (refuted by Navidea in its Moving Brief [Dkt No. 254 at 6-9]).

5

Finally, Dr. Goldberg drops two footnotes suggesting that (i) Mr. Orr's testimony on the issue of the anti-dilution clauses may not be necessary (Dkt. No. 285 at 4, fn. 2, and 8, fn. 6.), and (ii) that Mr. Orr's valuation may not be necessary "[i]f the finder of fact determines that specific performance is a more appropriate remedy in this action." With respect to Dr. Goldberg's claims that Mr. Orr's testimony on the issue "may not be necessary," Navidea not only agrees, but has argued that Mr. Orr's testimony on this point should be excluded. *Id.* With respect to claims for specific performance, Dr. Goldberg has neither pleaded in his counterclaim nor cited any authority in his supplemental brief that specific performance is available to him.

In sum, Navidea submits that if the Court adopts Dr. Goldberg's theories on the nature of the breach (failure to deliver 23.5 million shares of Navidea stock pursuant to Regulation D) then the proper measure of Dr. Goldberg's damages resulting from the failure to remove restrictive legends from his stock is set forth above. Further, if the Court adopts that standard, then it is apparent that Mr. Orr's testimony should be excluded in its entirety for failure to render an opinion consistent with *Daubert*.

## II. THE PROPER MEASURE OF CONTRACTUAL DAMAGES AS IT RELATES TO DR. GOLDBERG'S CLAIMS REGARDING MACROPHAGE STOCK

As detailed above, Dr. Goldberg's remaining claim against Macrophage is that Macrophage breached the August 14 Agreement by failing to issue Dr. Goldberg the Super Voting Common Shares required by the August 14 Agreement." Dkt. No. 35 at ¶ 87. The August 29 Order requests clarification on the proper measure of damages if Dr. Goldberg were to prevail on his claim that Macrophage was required to issue to him Super Voting Shares in Macrophage on August 14, 2018.

Rather than attempting to answer the question or cite to any relevant case law, Dr. Goldberg states that "[v]aluation of Macrophage is necessarily difficult and imprecise …" Dkt. No. 285 at 10. He then refers the Court back to his earlier brief to a string cite in his discussions about the impact of "uncertainty" and that, in certain circumstances, the Defendant can bear the risk of uncertainty. Of course, one of those cases *Great American Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219 at (cite) (Del. Ch. Jan 29, 2010), cautions that the fact finder may not "supply a damages figure based on 'speculation or conjecture' where the plaintiff has failed to meet its burden of proof on damages."

Delaware law states that the remedy for a breach of contract is expectation damages. *Israel Disc. Bank of New York v. First State Depository Co., LLC*, No. CIV.A. 7237-VCP, 2013 WL 2326875, at *24 (Del. Ch. May 29, 2013) (Expectation damages thus require the breaching promisor to compensate the promisee for the promisee's reasonable expectation of the value of the breached contract, and, hence, what the promisee lost; it is the amount of money that would put the promisee in the same position as if the promisor had performed the contract (i.e., the benefit of the bargain)). Applying expectation damages to Dr. Goldberg's claim against Macrophage, the proper measure of damages would be the value of the Super Voting Shares on August 14, 2018. Unlike Navidea, Macrophage is not a publicly traded company with a history of stock transactions. The Super Voting Shares were shares equal to 5% of the common stock of Macrophage with 20-1 voting rights (i.e., they would have given to Dr. Goldberg slightly more than 50% voting control over Macrophage). While Dr. Goldberg has mentioned a control premium, Dr. Goldberg's expert has merely opined on what he believes 5% of Macrophage was worth on August 14, 2018. Navidea has contested that methodology and argued that Mr. Orr's methodology does not meet the *Daubert* standard. Dkt. No. 254 at 14.

Delaware Courts are frequently called upon to value shares of companies in the context of appraisal proceedings. *See, e.g., Kruse v. Synapse Wireless, Inc.*, C.A. No. 12392-VCS, 2020 WL 3969386 *1-2, (Del. Ch Jul. 14, 2020). As one Delaware Court described the process:

> While Delaware courts typically look for market-based evidence of fair value in appraisal proceedings, there is no contemporaneous market evidence available here with respect to the 2016 Merger. It is undisputed that there was no market-check or competitive sales process for Synapse leading up to that transaction …
>
> With neither party arguing this Court should defer to the deal price, Kruse and Synapse both have relied on expert witnesses to value Kruse's Synapse shares …
>
> The experts used similar valuation techniques: each presented valuations based on discounted cash flow ("DCF") models, comparable transactions and McWane's prior purchases of Synapse's stock (the only market-based evidence presented). And, in doing so, the experts materially agreed on several important inputs in their valuation models. Nevertheless, as has become standard fare for appraisal litigation, the experts reached monumentally different valuations. When dueling experts proffer wildly divergent valuations, the resulting trial dynamic presents difficult and, frankly, frustrating challenges for the judicial appraiser. This case presents another, more fundamental challenge; after carefully reviewing the evidence, it is difficult to discern *any* wholly reliable indicators of Synapse's fair value. There is no reliable market evidence, the comparable transactions analyses both experts utilized—a dicey valuation method in the best of circumstances—have significant flaws and the management projections relied upon by both experts in their DCF valuations are difficult to reconcile with Synapse's operative reality. ***In the typical litigation context, the lack of fully reliable evidence might lead the factfinder to conclude that neither party carried their burden of proof and neither party, therefore, is entitled to a verdict.*** But "no" is not an answer in the unique world of statutory appraisal litigation. If the parties fall short in their respective burdens, the court must still reach an answer—a fair value appraisal must still be provided.

*Id.* at 1-2. (emphasis added).

Here the proper measure of damages is first determining the value of Macrophage and then extrapolating to determine the value of the Super Voting Stock that was not delivered. As Kruse explains, there are valuation techniques that exist – DCF models, comparable transactions, market-based evidence, among others. Id. at 1. None of those have been proffered by Mr. Orr in this case. Macrophage's expert, William Murray, further undercuts Mr. Orr's analysis and demonstrates how

8

Mr. Orr cannot meet the standard for demonstrating a proper measure of damages utilizing generally accepted principles of valuation. Mr. Murray notes that Mr. Orr failed to apply a "comprehensive analysis of value using any of the three [accepted] approaches." Kazan Decl. Dkt. No. 253, Ex. 4 at 14. Mr. Murray acknowledges that a company can be valued using a market comparison approach, but that Mr. Orr "has insufficient data" to use that approach. *Id.* Goldberg's expert, Mr. Orr seems to agree. *Id.* at Ex. 3, 44:8-24. Indeed, Mr. Orr admitted in deposition that he "didn't do a full analysis of the value of Macrophage." *Id.* at 43:8-13. Accordingly, the lack of fully reliable evidence should lead the factfinder to conclude that Dr. Goldberg failed to carry his burden of proof to establish the proper measure of damages.

## CONCLUSION

Navidea and Macrophage renews its request that the Court disqualify the testimony of Mr. Orr.

Date:  September 15, 2022          Respectfully submitted,
       New York, New York

                                    /s/ Barry M. Kazan
                                    Barry M. Kazan, Esq.
                                    Mintz & Gold LLP
                                    600 Third Avenue, 25th Floor
                                    New York, New York 10016
                                    Phone: (212) 696-4848
                                    Fax:    (212) 696-1231
                                    kazan@mintzandgold.com

                                    *Attorneys for Plaintiff /Counterclaim Defendant*
                                    *Navidea Biopharmaceuticals, Inc. and*
                                    *Third-Party Defendant*
                                    *Macrophage Therapeutics, Inc.*

9

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2022 I caused to be served on counsel of record, electronically via the Court's electronic filing system, a true and correct copy of Plaintiff/Counterclaim-Defendant Navidea Biopharmaceuticals, Inc.'s and Third-Party Defendant Macrophage Therapeutics, Inc.'s Supplemental Memorandum of Plaintiff/counterclaim-defendant Navidea Biopharmaceuticals, Inc.'s and third-party defendant Macrophage Therapeutics, Inc.'s Motion to Exclude Expert Testimony of Terry L. Orr

/s/ Barry M. Kazan
Barry M. Kazan