UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

IN RE: NAVIDEA BIOPHARMACEUTICALS
LITIGATION

----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 1/30/2023

19-CV-01578 (VEC) (VF)

**REPORT AND
RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO THE HONORABLE VALERIE E. CAPRONI, United States District Judge**

On April 8, 2022, defendant Michael Goldberg filed an application for an advancement

of attorneys' fees and costs incurred by Goldberg, between September 1, 2020, and March 31,

2022, in defending against the claims asserted against him in this action by plaintiff Navidea

Biopharmaceuticals, Inc. ("Navidea"). See ECF Nos. 275-77. For the following reasons, I

respectfully recommend that Goldberg's request for an advancement of attorneys' fees and costs

be **DENIED** in part and **GRANTED** in part.

## BACKGROUND

The Court assumes familiarity with the underlying facts and background of this case,

which have been discussed extensively by the Honorable Debra C. Freeman in previous Reports

& Recommendations concerning the indemnification and advancement of attorneys' fees

incurred by Goldberg. See ECF Nos. 119, 198, 231. As is relevant here, Navidea sued Goldberg

for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary

duty, and to obtain a declaratory judgment establishing the contractual rights and obligations of

the parties. See Am. Compl., ECF No. 15. In his answer, Goldberg asserted counterclaims

against Navidea and third-party claims against Macrophage Therapeutics, Inc. ("Macrophage"),

a subsidiary of Navidea. See ECF No. 31.

Goldberg moved to dismiss Navidea's breach-of-fiduciary-duty claim and sought attorneys' fees in connection with defending against that claim. See ECF Nos. 32-33. On December 26, 2019, the Honorable Valerie E. Caproni granted Goldberg's motion to dismiss the breach-of-fiduciary-duty claim and determined that he was entitled to attorneys' fees with respect to his defense of that claim. See ECF No. 61. The Court directed the parties to meet and confer regarding an appropriate amount of attorneys' fees. On February 20, 2020, Goldberg informed the Court that the parties were unable to reach an agreement on the amount of fees incurred with respect to his defense of the breach-of-fiduciary-duty claim. See ECF No. 78. Goldberg also filed a separate motion for the advancement of attorneys' fees incurred in defending against Navidea's remaining claims and in defending claims brought by Macrophage against him in an entirely separate proceeding in Delaware Chancery Court. See ECF Nos. 64-65.

On February 20, 2020, Judge Caproni referred the motion to Magistrate Judge Freeman for a report and recommendation. ECF No. 80. On July 9, 2020, Judge Freeman issued a Report and Recommendation ("R&R") recommending that Goldberg: (i) be indemnified for attorneys' fees reasonably incurred in defending the breach-of-fiduciary-duty claim; and (ii) be advanced attorneys' fees reasonably incurred in defending against Navidea's remaining claims in this action. ECF No. 119 at 2. Judge Freeman also recommended that the Court decline to award Goldberg any specific amount of fees, whether for indemnification or advancement, until he made a properly supported fee application. Id. at 3. Judge Freeman explained that Goldberg had "twice" been asked to submit his attorneys' contemporaneous time records, so that the Court could assess the reasonableness of (i) the amount sought in fees and costs incurred in defending

the breach-of-fiduciary-duty claim, and (ii) the amounts sought as advancement for fees and other expenses incurred in defending other claims in this action. Id. at 41. Judge Freeman further noted that the Court had "asked Goldberg to explain which of the time entries reflected in those records are claimed to relate to work performed in defense of the breach-of-fiduciary-duty claim, and which are claimed to relate to the defense of other claims, or to the prosecution of counterclaims or third-party claims" and that despite these requests, "the reasons for which this Court explained at length in two conferences with counsel – Goldberg has not complied." Id.

Moreover, Judge Freeman described how Goldberg "dumped on this Court a large collection of attorney billing records, with absolutely no explanation as to which time entries he [was] claiming relate to his defense of the breach-of-fiduciary-duty claim and which relate to any other claim, counterclaim, or third-party claim, suggesting only that the Court direct Navidea to pay him 'an initial amount representing some percentage of the amount reflected on the [those] records' subject to a later true-up once the Court finally able to conduct a reasoned review of his requested fees." Id. at 41-42. Judge Freeman declined to pull "'some percentage' out of the air," which would not "to any degree of certainty, result in Goldberg being awarded the amounts to which he is legitimately entitled." Id. at 42. Instead, Judge Freeman directed Goldberg to make "an appropriately supported fee application" upon which the Court could "conduct a proper lodestar analysis and make a recommendation as to the reasonable amounts that should be awarded." Id.

On August 24, 2020, Judge Caproni adopted Judge Freeman's R&R in its entirety. See ECF No. 134. The Court held that Goldberg was entitled to indemnification for attorneys' fees reasonably incurred in defending against the breach-of-fiduciary-duty claim and to

advancement of attorneys' fees reasonably incurred in defending against Navidea's remaining claims, provided that he tendered the necessary undertaking to repay the advancement of fees if the Court ultimately determined that he was not entitled to indemnification under Navidea's bylaws. Id. at 5-9. The Court, however, declined to award any fees because Goldberg had not made a properly supported fee application. Id. at 7-8, 11. Judge Caproni described how "Goldberg ha[d] twice been ordered to provide his attorneys' time records and to explain specifically which of the entries relate to the defense of the breach-of-fiduciary-duty claim and which relate either to the defense of Navidea's other claims or to the litigation of Goldberg's own counterclaims and third-party claims." Id. at 6. Instead, Goldberg submitted the billing records "nearly three weeks later" and included records "for all fees incurred in this action and in the Delaware action." Id. at 6. The billing records contained "no explanation of which time entries relate[d] to which claims," and without such an explanation, "the Court [was] entirely unable to assess the reasonableness of Goldberg's requested attorneys' fees." Id.

Moreover, Judge Caproni rejected Goldberg's contention that there was no need for the "Court to assess whether the fees incurred" were reasonable. Id. at 6 n.5. Judge Caproni explained that the "Navidea bylaws expressly state that Goldberg 'shall be indemnified against expenses (including attorneys' fees) actually and *reasonably* incurred by him.'" Id. (quoting ECF No. 66, Ex. B. ("Navidea Bylaws"), Art. V, § 1(b)) (emphasis added). In any case, Judge Caproni reasoned that even if Navidea's bylaws did not contain a reasonableness limitation, "courts routinely perform a reasonableness analysis of requested fees, even when the applicable contract provides for reimbursement of 'all' or 'actual' attorneys' fees." Id. Judge Caproni also rejected Goldberg's suggestion that the Court "simply direct Navidea to pay him" an initial

amount, representing some percentage of the billing records. Id. at 7. Judge Caproni found this suggestion to be "contrary to the lodestar method," in addition to "directly and inexcusably contravene[ing] Magistrate Judge Freeman's instructions to provide billing records specifically detailing the time spent defending the fiduciary duty claim." Id.

The Court ordered Goldberg to make a properly supported fee application in support of his indemnification and advancement claims by September 30, 2020. The Court directed Goldberg to submit copies of his attorneys' billing records that specifically detailed the time each attorney spent working on each of Navidea's claims and explaining the nature of the work performed. Id. at 7, 11. The Court warned Goldberg that failure to comply with its order would "likely result in the Court finding that Goldberg has withdrawn with prejudice his request for indemnification [and advancement] as a sanction for his failure to comply with this and previous court orders." Id. at 7-8, 12 (citing Rice v. NBCUniversal Media LLC, No. 19-CV-447 (JMF), 2019 WL 3000808, at *3 (S.D.N.Y. July 10, 2019) (district court may impose sanctions under Federal Rule of Civil Procedure 16(f) when there is "clear and convincing evidence that counsel disregarded a clear and unambiguous … pretrial order")). The Court further warned Goldberg that he had "one (and only one) more opportunity to make a properly supported fee application" and that failure to do so would mean that the Court would "likely deem his motion for indemnification to have been withdrawn with prejudice." ECF No 134 at 5.

The Court declined to decide whether Goldberg was entitled to advancement for fees and costs incurred in prosecuting his counterclaims against Navidea because the issue had not been properly raised before Judge Freeman. Id. at 11 n.10. The Court told Goldberg that he could renew his request for advancement related to his counterclaims in his subsequent fee application,

but cautioned that if he elected "to seek advancement of attorneys' fees incurred in connection with his counterclaims," he had to submit billing records that "specify which time entries correspond to time spent prosecuting *each* counterclaim." Id. at 11 n.10 (emphasis in original). Finally, the Court held that Goldberg was not entitled to advancement of fees and costs related to the prosecution of his third-party claims against Macrophage. Id. at 7 n.6, 11 n.10.

On October 2, 2020, Goldberg filed a letter motion seeking indemnification and advancement of attorneys' fees, supported by his own declaration and the declaration of Gregory Zimmer, his attorney. ECF No. 141. On October 7, 2021, with Judge Freeman's permission, Goldberg supplemented the application with a declaration from N. Ari Weistbrot, his other counsel of record. ECF No. 142. Goldberg did not file a memorandum of law in support of his renewed application for indemnification and advancement of fees.

On November 13, 2020, Goldberg filed another fee application, this one seeking advancement of attorneys' fees incurred in connection with the prosecution of his counterclaims against Navidea and his third-party claims against Macrophage. ECF No. 165. Navidea opposed both fee applications. ECF Nos. 155, 173. On February 1, 2021, Goldberg filed a motion to compel Navidea to comply with the ongoing advancement protocol established by the Court in its prior opinion (see ECF No. 134 at 12-13), and to hold Navidea in contempt for failing to comply up until that point. ECF No. 184.

On April 21, 2021, Judge Freeman issued another R&R recommending that Goldberg's fee applications be granted in part and denied in part. See ECF No. 198. Judge Freeman recommended that: (i) Goldberg be awarded $14,955.00, as indemnification for the fees his attorneys had shown were reasonably incurred in defending against the breach-of-fiduciary-duty

claim; (ii) Goldberg be awarded $1,237.50, as advancement for the fees his attorneys had shown were reasonably incurred in defending against Navidea's remaining claims; (iii) Goldberg not be awarded any attorneys' fees related to the prosecution of his counterclaims and third-party claims; (iv) Goldberg not be awarded any advancement of litigation costs incurred to date; and (v) Goldberg's motion to compel Navidea to comply with the advancement protocol be denied. Id. at 5-6. Judge Freeman explained that, although Zimmer and Weisbrot submitted contemporaneous time records, their "failure to segregate their time in a manner that would allow for meaningful judicial review arguably justifies a denial of Goldberg's application with respect to their time." Id. at 21-22. However, "in the interest of justice," Judge Freeman examined the time records of Zimmer and Weisbrot and recommended awarding some portion of the fees, instead of rejecting the request outright. Id. at 22.

In examining the time records, Judge Freeman first generally adjusted Zimmer's billing rate to $375 per hour, from $400 to $450 per hour, to account for Zimmer having "apparently spent a fair amount of his time engaged in work that could have been performed by more junior attorneys or staff." Id. at 25. For time spent on document review, Judge Freeman recommended awarding Zimmer only $300 per hour. Id. at 26. Judge Freeman also recommended approving Weisbrot's billing rate of $450 per hour, given his skill and experience. Id.

Turning to the reasonableness of the hours requested, Judge Freeman noted that "[f]or the most part, Zimmer did not segregate the hours he spent working on the defense of Navidea's breach-of-fiduciary-duty claim." Id. at 27. Instead, for block-billed entries, Zimmer used "contemporaneous time sheets" to determine what portion of the time billed related to the fiduciary-duty claim. Id. Zimmer applied a similar methodology to entries that reflected time

spent "generally on this action," using time sheets to determine the advanceable portion of the work. Id. at 28.

Judge Freeman noted several issues with Zimmer's submissions. Id. at 29. First, some of the time entries submitted by Zimmer were not "presented in a manner consistent with Zimmer's stated methodology . . . render[ing] it difficult, if not impossible, to discern Zimmer's logic." Id. Judge Freeman noted that these inconsistencies might have been due to carelessness or errors, but that the Court should not have to "guess" at Zimmer's intentions and recommended that time for those entries be excluded. Id. at 29-30. Next, for the block-billed entries, where Zimmer used other time sheets to determine the advanceable time, Judge Freeman noted that "Zimmer should have submitted his underlying time sheets, so that this Court could check his breakdowns." Id. at 30. As such, to "account for the vagueness inherent in block-billing" and because the Court could not independently confirm the breakdowns, Judge Freeman reduced these entries by 5%. Id. at 31.

Most problematic, as Judge Freeman noted, were time entries which Zimmer described as relating "generally" to this action, to which Zimmer sought 30% of the fees incurred, on a theory that the percentage was a reasonable approximation for the time he spent on the defense of the fiduciary-duty claim. Id. at 31. However, Judge Freeman noted that "Zimmer ha[d] made *absolutely no effort* to provide this Court with any basis for accepting the 30% estimate as reasonable," either by providing copies of discovery requests or responses, or pointing to specific portions of a pleading, that would allow the Court to have "some reasoned basis for understanding why a certain percentage of the time spent drafting that pleading would have been tied to the claim." Id. at 31-32. Furthermore, Judge Freeman noted that Judge Caproni had

"already criticized Zimmer for his previously having 'merely estimated the amount of time . . .
spent working on the breach of fiduciary duty claim.'" Id. at 32. Despite the deficiencies, Judge
Freeman still undertook a careful review of the time descriptions, and found that the Court could
"find no reasonable, non-speculative foundation on which to base a 30% estimate—or indeed,
any blanket percentage estimate—of the portion of Zimmer's 'general' work that was expended
on the claim at issue." Id. Judge Freeman noted that the time entries referred "vaguely" to
strategy, discovery, or document review, without a substantive explanation. Id. at 33.

More broadly, Judge Freeman explained that "the problem caused by Zimmer's failure to
segregate his time among claims is fundamentally different in character from the problems
caused by block-billing and other commonly seen types of vagueness in record-keeping." Id. at
34. As Judge Freeman described, in this situation, the Court had been "given no way to
determine if the universe of the records placed before it relates, in the first place, to the portion of
the case for which indemnification is available"—as opposed to the more common problem of
clustering together time on compensable tasks, which makes it difficult to determine whether the
time was reasonable. Id.

Moving to Weisbrot's submissions for the defense of the fiduciary-duty claim, Judge
Freeman noted that Weisbrot used the same methodology as Zimmer. Id. at 35. Judge Freeman
recommended advancement for work that was directly related to the defense of the fiduciary-
duty claim, but not for the time that Weisbrot found "allocable generally" to this action. Id. at 36.
Like Zimmer, Judge Freeman found that Weisbrot had not "not submitted any analysis, grounded
in documentation of his actual work, to justify his proposed percentage allocation." Id. at 37.
Weisbrot similarly applied a 30% multiplier to the time entries "allocable generally" to this

action, to estimate the time spent in defense of the fiduciary-duty claim. But like Zimmer's entries, Judge Freeman found that "there is no reasoned basis on which this Court can find that a 30% allocation would be appropriate" and further noted that the "time entries in this grouping are all quite vague, and they frequently refer to matters for which indemnification would plainly be unavailable." Id.

As for hours expended in connection with Goldberg's defense of Navidea's other claims (besides the fiduciary-duty claim), Zimmer proposed various percentage reductions to these hours. However, Judge Freeman noted that Zimmer "did not do what the Court instructed him to do," in that he "did not 'submit copes of his [] biling records specifically detailing the amount of time spen[t] defending *each* of Navidea's remaining claims." Id. at 41 (quoting 8/24/20 Order at 11) (emphasis added). This lack of specificity, as Judge Freeman explained, meant that if "Goldberg were ultimately to prevail on only one or two of the three claims in question, the amount that would have to be repaid to Navidea would be unclear." Id. And more broadly, looking at Zimmer's proposed percentage reductions, Judge Freeman did not find it "credible that, for the vast majority of the period in question, Zimmer spent so little of his 'general' time (only 15%) engaged in the prosecution of Goldberg's counterclaims." Id. at 41-42.

Concerning Zimmer's time entries for document review, Judge Freeman explained that the "Court cannot merely accept Zimmer's bare statement that 95.5% of the document review that he apparently conducted jointly in this action and in the Delaware Action should be allocated to this case." Id. at 43. Judge Freeman noted in particular that Zimmer had not provided the Court with the document requests made in the Delaware action, so these numbers could not be cross-checked. Id. Further, Judge Freeman concluded that Zimmer provided "no support" for

10

his estimate that 80% of the time spent in document review related to Goldberg's defense of Navidea's remaining claims, and only 20% related to Goldberg's counterclaims or third-party claims, and that Zimmer "made no attempt to demonstrate that the produced documents related predominantly to Navidea's own claims." Id. at 43-44. Judge Freeman explained that it seemed like "Zimmer ha[d] artificially sought advancement for most of his work, regardless of whether Goldberg [was] fairly entitled to the full amounts sought." Id. at 44.

In sum, Judge Freeman recommended no further advancement for time spent on document review which was "not broken out for each of the claims at issue," was "based entirely on across-the-board percentage estimates," and appeared "without support, to shift most of counsel's time to the portions of this case for which advancement would be available." Id. Judge Freeman recommended no further advancement of Weisbrot's hours defending against Navidea's other claims for substantially the same reasons. Id. at 44-45.

Lastly as to the litigation costs incurred, Judge Freeman found that neither Zimmer nor Weisbrot had "endeavored to address which costs were incurred in connection with which claims" and noted that she had "no basis for making such determinations" herself. Id. at 46. Specifically as to Consolio, the e-discovery vendor that provided a platform for document review, Judge Freeman noted that Zimmer did not distinguish between documents produced in this case, as opposed to the Delaware action (as he reviewed documents in the two cases jointly), and he "made no attempt to justify how he now propose[d] to allocate the costs of the vendor's services." Id. Instead, Zimmer asked for an 80% advancement of Consolio's costs. Id. at 46-47. But, as Judge Freeman explained, "[f]or the same reasons that this Court has no way to accept that unsupported estimate with respect to Zimmer's work (and doubts that it is at all accurate), it

cannot accept it with respect to the costs of the vendor that aided in that work." Id. at 47. As such, Judge Freeman did not recommend advancement for any litigation costs pertaining to Consolio.

On May 27, 2021, Judge Caproni adopted the R&R in full, granting in part and denying in part Goldberg's applications for indemnification and advancement of attorneys' fees and costs. ECF No. 207. The Court noted that it had "spent an inordinate amount of time reviewing Goldberg's deficient fee applications" and that "Goldberg ha[d] repeatedly disregarded the Court's orders to provide copies of his attorneys' detailed billing records" so that the Court could assess the reasonableness of any attorneys' fees and costs incurred to date. ECF No. 207 at 7. Moreover, the Court added that "Goldberg ha[d] dug in his heels and petulantly insisted that the billing records he provided [were] sufficient and that the Court should simply accept his purportedly good faith estimates as to the amount of time each of his attorneys has spent on each claim in this case." Id. The Court warned Goldberg that "the apparent failure of Goldberg's attorneys to maintain appropriate records that would permit the Court to comply with its responsibilities to review fee requests for reasonableness will 'redound to the detriment of their client, not Navidea.'" Id. (quoting ECF No. 134 at 7 n.6).

In particular, Judge Caproni noted that "Goldberg inexcusably ignored this Court's prior order that he produce 'billing records [that] specify which time entries correspond to time spent prosecuting *each* counterclaim.'" Id. at 15 (quoting ECF No. 134 at 11 n.10) (emphasis in original). As it related to Goldberg's motion to compel Navidea to comply with the advancement protocol previously set, Judge Caproni found that Navidea was not required to make any additional advancement of fees until Goldberg's attorneys "'stop[] basing their advancement

12

requests on the same broad, conclusory, percentage estimates that they used in connection with []
Goldberg's fee application.'" Id. at 16 (quoting ECF No. 198 at 48). Although the Court left the
advancement protocol in place, Navidea was not required to comply until Goldberg's attorneys
produced "time records that specify, for each attorney, the date, the hours expended, and the
nature of the work done on each claim for which advancement" was sought. Id.

The Court further warned Goldberg and his attorneys that "they can either start keeping
time records in sufficient detail that a reviewing court can ascertain how much time was spent on
specific tasks that are tied to specific claims so that any associated claim for indemnity or
advancement can be assessed by the Court for reasonableness or they can continue on the path
they are on. If they immediately choose the former, subsequent advancement and
indemnification requests have a chance of being granted. If they choose the latter, Goldberg's
legal fees associated with this litigation will likely be borne entirely by him." Id. at 17. The Court
added that "Goldberg's attorneys must implement task-specific, contemporaneous, objective,
documented measures to allocate hours spent on tasks that relate to multiple claims to the
individual claims." Id. at 17 n.9.

Navidea subsequently moved for reconsideration of the August 24, 2020 opinion and
order by Judge Caproni. ECF No. 218. Navidea sought to be permanently relieved from the
obligation to advance Goldberg's fees, following a decision in the Delaware Chancery Court that
found Goldberg had breached his fiduciary duty to Macrophage and Macrophage's stockholders
(including Navidea). ECF No. 219 at 1. On October 14, 2021, Judge Freeman recommended that
the motion for reconsideration be denied. ECF No. 231. Judge Caproni denied the motion for
reconsideration on March 27, 2022. ECF No. 261. In that order, Judge Caproni directed

13

Goldberg "to make a properly supported fee application in support of his claim for advancement." Id. at 11. The Court instructed Goldberg to "submit copies of his attorneys' billing records specifically detailing the amount of time spent litigating each of Navidea's remaining claims in this case." Id. The Court warned Goldberg that "[f]ailure to comply . . . will likely result in the Court determining that Goldberg has withdrawn his motion for advancement of fees with prejudice as a sanction for failure to comply with Court orders." Id. at 11.

On April 8, 2022, Goldberg submitted the instant application for the advancement of attorneys' fees, incurred between September 1, 2020, and March 31, 2022, along with a memorandum of law in support of his motion, and a declaration from Gregory Zimmer, his attorney. See ECF Nos. 275-76; ECF No. 277 ("Zimmer Decl."). Goldberg seeks: (i) the advancement of attorneys' fees and expenses incurred by N. Ari Weisbrot in the amount of $11,070.50; (ii) attorneys' fees and expenses incurred by Gregory Zimmer in the amount of $97,151.92, (iii) expenses incurred for Veritext Court Reporting, a court reporting service used in connection with depositions, in the amount of $12,096.81, and (iv) expenses incurred for Consilio in the amount of $22,853.32.[1] See Zimmer Decl. ¶¶ 2, 14-16. Navidea opposed the motion on May 5, 2022. ECF Nos. 281-82. Goldberg replied on May 19, 2022. ECF No. 283.

## LEGAL STANDARD

The Court "enjoys broad discretion in determining the amount of a fee award." Vincent v. Comm'r of Soc. Sec., 651 F.3d 299, 307 (2d Cir. 2011); D.B. ex rel. S.B. v. New York City Dep't of Educ., No. 18-CV-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22,

---

[1] Consilio is an e-discovery vendor whose services were used by Goldberg for "housing, search and coding" Navidea's and Macrophage's electronic document production. Zimmer Decl. ¶ 14.

2019), report and recommendation adopted, 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019). To calculate an award of attorneys' fees, courts in this Circuit determine the "reasonable hourly rate," defined as "the rate a paying client would be willing to pay," and multiply that rate by the number of hours "reasonably expended" in prosecuting an action. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 114-115, 117-18 (2d Cir. 2007), as amended, 522 F.3d 182 (2d Cir. 2008). The party seeking attorneys' fees bears the burden of demonstrating that the requested fees are reasonable. See Blum v. Stenson, 465 U.S. 886, 897-98 (1984); see also Mendoza v. Cavallo's of Chelsea, Inc., No. 18-CV-11147 (VSB) (DF), 2022 WL 2531343, at *10 (S.D.N.Y. Apr. 12, 2022), report and recommendation adopted, 2022 WL 4387494 (S.D.N.Y. Sept. 22, 2022).

In assessing requests for attorneys' fees, courts routinely use the "lodestar method" to calculate a "presumptively reasonable fee." Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citation omitted); see also Suk Joon Ryu v. Hope Bancorp, Inc., No. 18-CV-1236 (JSR) (KHP), 2018 WL 4278353, at *5 (S.D.N.Y. Aug. 29, 2018), report and recommendation adopted, 2018 WL 4759774 (S.D.N.Y. Sept. 28, 2018), aff'd, 786 F. App'x 271 (2d Cir. 2019) (applying lodestar analysis to determine the reasonableness of an advancement request for attorneys' fees). The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea, 658 F.3d at 166. To be reasonable, an attorney's rate must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (citation omitted; alteration in original). Additionally, in assessing whether the number of hours billed by the attorney is reasonable,

courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted). When awarding attorneys' fees, the court must "clearly and concisely state reasons supporting the award." Tackie v. Keff Enters. LLC, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (citation omitted).

The party seeking fees bears the burden of producing "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." Scott v. City of New York., 626 F.3d 130, 133-34 (2d Cir. 2010) (citation omitted); New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (explaining that a plaintiff must present contemporaneous time records that indicate "for each attorney, the date, the hours expended, and the nature of the work done" to be awarded attorneys' fees and costs). The Second Circuit has made clear that contemporaneous time records are a "mandatory requirement," from which "attorneys may deviate only in the rarest of cases," such as when "records were consumed by fire or rendered irretrievable by a computer malfunction." Scott, 626 F.3d at 133-34; see also Sery v. Medina, No. 13-CV-165 (RLE), 2016 WL 3282491, at *3 (S.D.N.Y. June 10, 2016) (noting that counsel "bears the responsibility of making sure that records in support of fee requests comport with the requirements of the Circuit" and holding that a fee application should be denied where an attorney has not kept contemporaneous time records).

When counsel's records are "insufficiently precise to enable the [c]ourt to assess the reasonableness of the hours spent on the stated tasks," a percentage reduction in the requested hours is warranted. Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic

Republic, No. 10-CV-05256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012).

"Generalized descriptions . . . are insufficient to allow the [c]ourt to determine what research or

other tasks the attorneys were actually performing, and therefore whether the amount of time

expended was reasonable." Id.; see also Vishipco Line v. Charles Schwab & Co., Nos. 02-CV-

7823, 7846, 7877, 7915, 7928, 7929 (SHS), 2003 WL 1936142, at *2 (S.D.N.Y. Apr. 23, 2003)

(time entries such as "legal research" are too vague to allow court to determine reasonableness of

time expended); Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001)

(time entries such as "legal research," which do not indicate the subject matter of the work

performed, "do not permit a thorough evaluation" by the court of the reasonableness of time

expended).

        Moreover, "block billing"—which occurs when counsel records "the total number of

hours they spent on the matter each day, without breaking out the time spent on separate

tasks"—can compound the problem posed by vague time entries, because it makes it

"particularly difficult for the [c]ourt to evaluate whether time spent on a given task was

excessive." Thai-Lao Lignite (Thailand) Co., 2012 WL 5816878, at *10. At times, courts have

reduced or even disallowed requested attorneys' fees where the supporting time records were not

broken out with sufficient detail to enable the court to determine the reasonableness of the time

spent on particular tasks. See Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010)

(affirming district court's application of hours reduction due to pervasive block billing in time

entries); Reiter v. Metro. Transp. Auth. of the State of New York, No. 01-CV-2762 (GWG),

2007 WL 2775144, at *15-16 (S.D.N.Y. Sept. 25, 2007) (applying reduction to attorneys' fees in

part because of use of "block billing," which made it impossible for court to determine if time

was spent on compensable tasks); Soler v. G & U, Inc., 801 F. Supp. 1056, 1061-62 (S.D.N.Y. 1992) (excluding from lodestar calculation all time entries with commingled activities). "Courts frequently respond to vague and difficult-to-decipher billing statements with an across-the-board percentage reduction in the fees claimed." Thai-Lao Lignite (Thailand) Co., 2012 WL 5816878, at *11; see also Williams v. N.Y. City Hous. Auth., 975 F. Supp. 317, 327 (S.D.N.Y. 1997) ("It is not the court's job to decipher time entries and guess how much time each activity took.").

Goldberg contends that the court need not engage in a "granular" or "line-item" review of an attorneys' billing records, suggesting that under Delaware case law advancement applications need only include a good faith estimate of the fees and expenses sought. See ECF No. 276 at 2-3; see also ECF No. 283 at 1-4. Goldberg appears to be rehashing an argument he previously made and lost. As Judge Freeman indicated in a prior R&R, "courts in this District, applying Delaware law, have consistently examined the amount of any proposed advancement for reasonableness," even where the contractual advancement provision does not contain an "express requirement that the advanced fees or costs be reasonable." ECF No. 119 at 39-40. Likewise, Judge Caproni also rejected Goldberg's contention that the Court need not assess whether the fees incurred in defending Navidea's claims were reasonable. See ECF No. 134 at 6 n.5. And as the Court has repeatedly warned Goldberg, generalized, vague, or block-billed time entries prevent the court from conducting a meaningful review of the reasonableness of the requested fees. See 7/9/2020 R&R at 41-42, ECF No. 119; 8/24/2020 Order at 6-8, 11, ECF No. 134; 4/21/21 R&R at 21-22, 31-32, 34-37, 48-49, ECF No. 198; 5/27/21 Order at 7, 15, ECF No. 207.

Finally, and as is relevant here, Rule 16(f) of the Federal Rules of Civil Procedure authorizes sanctions for, among other things, the "fail[ure] to obey a scheduling or other pretrial

18

order." Fed. R. Civ. P. 16(f)(1)(C); see also Rice, 2019 WL 3000808, at *3. "In deciding whether

a sanction is merited [under Rule 16(f)], the court need not find that the party acted in bad faith."

Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 53 (2d Cir. 2018) (internal quotation marks

and citation omitted). Instead, "[t]he fact that a pretrial order was violated is sufficient to allow

some sanction." Id. (internal quotation marks and citation omitted). "The Court need find only

that there is clear and convincing evidence that counsel disregarded a clear and unambiguous

scheduling or other pretrial order." Rice, 2019 WL 3000808, at *3.

## DISCUSSION

For the reasons explained below, I recommend that Goldberg's application for the

advancement of fees and costs as it pertains to the defense of Navidea's claims against him be

denied as a sanction for failing to comply with multiple court orders instructing Goldberg to

specifically detail the amount of time spent litigating each of Navidea's claims in this action. I

further recommend that Goldberg's application for fees and costs stemming from work

performed by his attorneys on prior advancement motions be granted in part, as detailed below.

To the extent that those previous applications were successful, the billing entries for the work

performed were sufficiently specific to allow for an assessment of the reasonableness of the

hours expended and the requested fee amount.

### A. **Goldberg's Instant Request for Attorneys' Fees and Costs**

In the instant motion for attorneys' fees and costs incurred between September 1, 2020,

and March 31, 2022, Goldberg seeks the following advancement of fees and expenses: (1)

$11,070.50 in attorneys' fees for work performed by N. Ari Weisbrot; (2) $97,151.92 in

attorneys' fees for work performed by Gregory Zimmer; (3) $12,096.81 in expenses incurred for

19

Veritext Court Reporting; and (4) $22,853.32 in expenses incurred for Consilio. See Zimmer
Decl. ¶ 16.

Beginning with attorneys' fees, Goldberg seeks advancement of the full amount of
attorneys' fees and expenses relating to Goldberg's defense of Navidea's claims against him in
this action. Zimmer Decl. ¶ 5. Zimmer explains that "time and expenses relating solely" to the
prosecution by Goldberg of his counterclaims against Navidea in this action or relating to the
Delaware action are "not included in this fee application." Id. ¶ 6. Attached to Zimmer's
declaration are copies of invoices from Weisbrot for the period from September 1, 2020, through
November 30, 2020, and copes of invoices from Zimmer, for the period from September 1, 2020,
through March 31, 2022. Id. ¶¶ 2-3, Exs. A, B. Zimmer also provided "written calculations of the
amounts reflected on those invoices for which [Goldberg] seeks advancement." Id. ¶ 2.
According to Zimmer, the invoices were prepared "monthly" and "reflect the time entries and
time amounts reflected on daily time sheets, with descriptions of work preformed edited only for
clarity and completeness." Id. ¶ 4. Zimmer did not provide daily time sheets because they
"contain entries relating to other clients" and "working notes that comprise attorney work
product." Id.

With respect to time spent on depositions, Zimmer represents that they "conducted a
page-by-page review of each [deposition] transcript, determined which portions relate to the
Delaware Action, which portions relate to Navidea's claims against Dr. Goldberg[,] and which
portions relate to Dr. Goldberg's claims against Navidea and Macrophage." Id. ¶ 7. In order to
"calculate the amount to be advanced with respect to preparation for and taking an individual
deposition," Zimmer used "a multiplier equal to the percentage of the deposition relating to

20

Navidea's claims against" Goldberg. Id. And, for the time spent preparing for and appearing at the depositions of Goldberg and Mark Greene, taken by Navida and Macrophage, Goldberg seeks advancement of 100% of his legal fees and expenses, because these depositions "were necessitated solely by Navidea's and Macrophage's noticing and conduct[ing] of the depositions." Id. ¶ 8.

Zimmer also explains how he allocated "time spent on the review of depositions and the preparation of the draft Rule 56.1 Statement." Id. ¶ 9. Here, too, Zimmer conducted a "line-by-line review" of the draft Rule 56.1 Statement and "determined the percentage of the draft 56.1 Statement devoted to Dr. Goldberg's defense of Navidea's claims against him and the percentage devoted to Dr. Goldberg's affirmative claims." Id. According to Zimmer, "93% of the draft Rule 56.1 Statement was devoted to defending against Navidea's claims against Dr. Goldberg and 7% was devoted to Dr. Goldberg's affirmative claims." Id. Zimmer thus applied a "90% multiplier to time spent on drafting" the Rule 56.1 Statement to determine the amount for which fees were sought.[2] Id.

Similarly, Zimmer determined that "81%" of the draft summary judgment memorandum "was devoted to defending against Navidea's claims against Dr. Goldberg" and "19% was devoted to Dr. Goldberg's affirmative claims." Id. ¶ 10. Accordingly, Zimmer applied an "80% multiplier to time spent generally on preparing" the draft summary judgment memorandum. Id. For time spent on "discrete sections" of the summary judgment memorandum, "such as the

---

[2] Although Zimmer determined that 93% of the draft Rule 56.1 statement was devoted to defending against Navidea's claims, he applied a 90% multiplier to the time spent drafting the Rule 56.1 statement. Zimmer Decl. ¶ 9. Zimmer provides no explanation for the different percentages.

Preliminary Statement," Zimmer allocated the time "proportionally to the percentage of that section relating to Dr. Goldberg's defense of Navidea's claims." Id. Zimmer also explains that "the Legal Standard section was allocated at 50% since the same standard applies to both Dr. Goldberg's defense of Navidea's claims and his prosecution of his affirmative claims." Id. Zimmer did not attach a copy of the draft Rule 56.1 statement or draft summary judgment memorandum to his declaration, because they "constitute[] privileged attorney work product." Id. ¶¶ 9-10, nn.2-3.

For "advanceable amounts" that were attributable to time spent working on issues in this case that relate both to Navidea's claims and Dr. Goldberg's counterclaims but were not allocable to an individual claim, Zimmer "used an 80% multiplier." Id. ¶ 11. Zimmer explains that the 80% multiplier is "consistent" with the "percentages derived from page-by-page, line-by-line and document-by-document review of items relating to both Dr. Goldberg's defense of Navidea's claims and his prosecution of his affirmative claims." Id. Zimmer does not provide an example of what these kinds of issues would be, except to say that they are "issues relating to both Navidea's claims and Dr. Goldberg's counterclaims." Id.

Finally, Goldberg seeks "advancement of 100% of his fees and expenses in connection with litigation over advancement issues," because such work "was undertaken to either compel Navidea to comply with its contractual advancement obligations or to oppose Navidea's efforts to avoid those obligations." Id. ¶ 12. Goldberg does not seek fees for time spent "reviewing time sheets, compiling and reviewing invoices and preparing advancement explanations and calculations." Id. ¶ 13.

With respect to costs for e-discovery, Goldberg seeks advancement of fees paid to Consilio. Id. ¶ 14. Goldberg incurred expenses for "housing, search and coding" Navidea's and Macrophage's electronic document production. Id. For those expenses, Zimmer applied an "86% multiplier representing the approximate percentage of documents coded" that related to Navidea's claims against Goldberg. Id. Zimmer does not provide an explanation for how the 86% figure was calculated. For depositions, Goldberg used Veritext, a court reporting service. Id. ¶ 15. To allocate that cost, Zimmer applied the same methodology used in determining the multiplier for attorneys' fees, and used the "percentages applicable to each specific deposition day to the Veritext invoice for that day." Id. ¶ 15. Goldberg submitted copies of the Consilio and Veritext invoices for the relevant period. Zimmer Decl., Exs. C, D.

**B. Goldberg's instant application for the advancement of attorneys' fees and costs should be denied, as to fees and costs incurred in Goldberg's defense of Navidea's claims against him in this action.**

1. Goldberg's request for the advancement of attorneys' fees for the defense of Navidea's claims lacks sufficient specificity to determine the reasonableness of the fees incurred.

Zimmer submitted 11 pages of billing records for Weisbrot and 73 pages of his own billing records. See Zimmer Decl., Exs. A, B. Accompanying each monthly invoice is a page containing the "advancement calculation[s]" for that month, which detail for each relevant time entry the number of hours, billing rate, and percentage applied (*i.e.*, 80%, 100%), to determine the amount sought for advancement.[3] Id. These billing records, however, suffer from the same

---

[3] The "Advancement Calculation" pages contain the entries for which Zimmer and Weisbrot seek reimbursement. See, e.g., Zimmer Decl., Ex. B-4 at 11. In reviewing the billing records, I looked to the "Advancement Calculation" pages to determine the time entries for which Goldberg sought advancement.

defects detailed at length in previous orders from the Court: (1) the billing entries are not separated on a claim-by-claim basis; (2) Goldberg applies percentage reductions to the entries without sufficient explanation as to how the percentages were calculated; and (3) there is no supporting documentation for the Court to use to verify Goldberg's calculations. See 7/9/2020 R&R at 41, ECF No. 119; 8/24/2020 Order at 6-8, 11, ECF No. 134; 4/21/21 R&R at 21-22, 33-37, 45-51, ECF No. 198; 5/27/21 Order at 7, 15, ECF No. 207.

To begin, Goldberg has been warned multiple times about his attorneys' failure to delineate their time entries for work performed on a claim-by-claim basis or to provide sufficient detail about the nature of the work performed. Goldberg was instructed by Judge Caproni that his attorneys had to specifically detail the time each attorney spent working on each of Navidea's claims and explain the nature of the work performed. ECF No. 134 at 7, 11. Judge Freeman also explained that Zimmer had failed to follow the Court's instruction to submit "billing records specifically detailing the amount of time spen[t] defending *each* of Navidea's remaining claims." ECF No. 198 at 41 (quoting ECF No. 134 at 11); see also id. at 50 (recommending that Navidea "not be required to advance any attorneys' fees" until Goldberg submitted "attorney time records that show counsel's time segregated on a claim-by-claim basis"). And Judge Freeman expressly stated that Zimmer's and Weisbrot's "failure to segregate their time in a manner that would allow for meaningful judicial review arguably justifie[d] a denial of Goldberg's application with respect to their time." Id. at 21-22.

When Judge Caproni adopted Judge Freeman's R&R, she too noted that Goldberg had "inexcusably ignored this Court's prior order that he produce 'billing records [that] specify which time entries correspond to time spent prosecuting *each* counterclaim.'" ECF No. 207 at 15

24

(quoting ECF No. 134 at 11 n.10) (emphasis in original). And most recently, just one month before Goldberg filed the instant motion, Judge Caproni ordered Goldberg to produce billing records that "specifically detail[ed] the amount of time spent litigating *each of Navidea's remaining claims* in this case." ECF No. 261 at 11 (emphasis added).[4]

Goldberg has also been repeatedly warned by the Court about the difficulty of determining the reasonableness of the fees requested by his attorneys when he applies percentage reductions to billing entries without sufficient explanation as to how the percentage was determined. For example, in a prior advancement motion, Zimmer estimated the amount of time spent working on the breach-of-fiduciary-duty claim was 30% of the total time spent on "general" work performed on the New York case. ECF No. 198 at 32. In response, Judge Freeman undertook a "careful review of the recorded time descriptions" to which Zimmer applied the 30% figure. Id. After review, Judge Freeman explained that the Court could "find no reasonable, non-speculative foundation on which to base a 30% estimate—or indeed, any blanket percentage estimate—of the portion of Zimmer's 'general' work that was expended on the claim at issue." Id. Separately, Judge Caproni warned Goldberg that "the apparent failure of Goldberg's attorneys to maintain appropriate records that would permit the Court to comply with its responsibilities to review fee requests for reasonableness will 'redound to the detriment of their client, not Navidea.'" ECF No. 207 at 7 (quoting ECF No. 134 at 7 n.6).

---

[4] To the extent there are circumstances where work may not be easily parsed claim-by-claim, the court instructed Goldberg that it is sometimes willing "to accept reasonable allocation estimates" based on "some type of task-specific measure to justify the allocation made." ECF No. 198 at 3. This task-specific measure must be "capable of being justified by reference to some objective measure." Id. at 50.

Here, Zimmer has again used blanket percentages to apportion time entries and estimate the time spent on work that is allocable to claims for which fees are advanceable, without providing any documentation to allow the Court to verify the percentage estimates and without a sufficient explanation as to how the percentages were determined. Cf. ECF No. 198 at 31-32 (noting that "Zimmer ha[d] made *absolutely no effort* to provide this Court with any basis for accepting the 30% estimate as reasonable," by providing copies of discovery requests or responses or by pointing to specific portions of a pleading, that would allow the Court to have "some reasoned basis for understanding why a certain percentage of the time spent drafting that pleading would have been tied to the claim").

Beginning with billing entries for depositions, there are eight depositions described in the billing entries: the depositions of William Mower, Jed Latkin, Joel Kaufman, Dr. Claudine Bruck, "Mr. Lakin," Michael Rice, Michael Goldberg, and Dr. Mark Greene. See Zimmer Decl., Ex. A at 3, 7, 11; Ex. B-1 at 5-8, 12-13. For depositions noticed by Goldberg, Zimmer claims to have conducted a "page-by-page review of each transcript" to determine a percentage multiplier to use to calculate the time spent preparing and taking such depositions that is advanceable by Navidea. Id. ¶ 7. Using this methodology, Zimmer determined, for example, that 27% of the time spent on the deposition of Joel Kaufman was advanceable, or 72% of the time spent on the deposition of Michael Rice. See id., Ex. B-1 at 6. For the depositions noticed by Navidea, of Goldberg and Dr. Mark Greene, Goldberg requests 100% of fees related to those depositions. Id. ¶ 8; Ex. B-1 at 7.

First, the billing descriptions of the deposition-related time entries do not break down, claim-by-claim, the time spent preparing for or taking any of the depositions. For instance,

Weisbrot's September 3, 2020 entry simply states: "Participate in Deposition of W. Mover." Zimmer Decl., Ex. A at 4. Likewise, the September 8, 2020 entry states: "Prepare for and take deposition of J. Latkin." Id. Similarly, Zimmer's deposition-related time entry for September 2, 2020 states: "Prepare for Mower Deposition (2.70)." Id., Ex. B-1 at 5. Zimmer's September 14, 2020 entry states: "Rice prep. (1.20) and deposition (10.50)." Id., Ex. B-1 at 6.

Moreover, neither Zimmer nor Weisbrot provide any basis for the Court to assess whether the percentages applied to each deposition were reasonable. All either attorney provides is a representation that he conducted a "page-by-page review of each transcript." Zimmer Decl. ¶ 7. But Goldberg has not supplied the Court with any of the transcripts of the depositions or any documentation relating to the preparation for depositions, such as outlines. Such information could have allowed the Court to determine whether the percentage applied to the time spent for each deposition was reasonable. Without such supporting documentation, there is no basis from which to assess the appropriateness of the percentages calculated by Goldberg for each deposition. See, e.g., id., Ex. B-1 at 6.

In any case, even without supporting documentation, Goldberg's methodology for determining the percentages for each deposition noticed by Goldberg is itself questionable. Zimmer conducted a "page-by-page review" of the deposition transcripts to determine how much time in an individual deposition related to Navidea's claims against Goldberg. See Zimmer Decl. ¶ 7. But the amount of lines in a deposition transcript devoted to certain lines of questioning does not necessarily correlate to the time spent preparing for the deposition. See, e.g., Mawere v. Cisco Fund Services (USA) Inc., No. 09-CV-1342 (BSJ) (DF), 2011 WL 6779319, at *7 (S.D.N.Y. Sept. 16, 2011) (explaining that method of estimation for apportioning time "based on

the number of pages of Defendants' briefs addressed to particular claims" is flawed because "the number of pages dedicated to an argument does not necessarily reflect the time required for its research and drafting"). With nothing more than Zimmer's conclusory assertions regarding his methodology, the Court has no basis from which to assess the reasonableness of the percentage estimates applied to each deposition.

Additionally, Goldberg seeks 100% of the fees associated with his own deposition and the deposition of Dr. Greene, arguing that those depositions were noticed by Navidea and Macrophage. Zimmer Decl. ¶ 8. By seeking 100% of the fees, Goldberg seemingly contends that no time was spent, either in preparation for these depositions or in the depositions themselves, on questions relating to Goldberg's own counterclaims or the Delaware action. This contention is patently unreasonable. Indeed, as Navidea points out, Goldberg's deposition covered topics not relevant solely to Goldberg's defense of this action, including, for instance, topics related to the Delaware Action. See Declaration of Barry Kazan ("Kazan Decl.") ¶ 2, ECF No. 282; see also ECF No. 281 at 11-12. Further, Goldberg ignores that Navidea and Macrophage will use those depositions to prepare their defenses of Goldberg's counterclaims in this action. Regardless, because Goldberg has not provided the transcript of the deposition, it is not possible to examine his assertion that the questioning in those deposition related solely to his defense of Navidea's claims in this action.

Turning to the fees sought in relation to the draft Rule 56.1 statement and draft summary judgment motion, Goldberg's advancement motion suffers from the same deficiencies already discussed. Twenty-five of Zimmer's time entries relate, at least in part, to the Rule 56.1 statement, totaling 52.6 hours of time. See Zimmer Decl., Ex. B-2 at 18; Ex. B-3 at 1, 6-8, 13.

The bulk of the time entries (23 of 25 entries) that relate to the draft Rule 56.1 statement state:

"[r]eview deposition and trial transcripts and prepare Rule 56.1 statement based on same." <u>See,</u>

<u>e.g.</u>, <u>id.</u>, Ex. B-2 at 18. Only two entries for work on the Rule 56.1 statement do not follow this

format. In his April 23, 2021 entry, Zimmer states: "Review J. Kaufman deposition i/c/w

preparation of Rule 56.1 Statement (100% re defense of Navidea claims)." <u>Id.</u>, Ex. B-2 at 18.

And Zimmer's June 4, 2021 entry states: "Prepare, review and revise Rule 56.1 Statement." <u>Id.</u>,

Ex. B-3 at 13. Five entries relate to the draft summary judgment motion, for a total of 13.8 hours

expended. <u>See id.</u>, Ex. B-3 at 8, 13.  The entries for the work performed on the summary

judgment motion do not provide a description of the work performed beyond a general statement

such as: "draft summary judgment argument section re: Navidea claims." <u>See id.</u>, Ex. B-3 at 13.

Like the time entries for depositions, the entries for the summary judgment motion and

Rule 56.1 statement are not separated on a claim-by-claim basis. None of the entries for time

spent drafting the Rule 56.1 statement indicate for *which* of Navidea's claims the work was

performed. <u>See id.</u>, Ex. B-2 at 18; Ex. B-3 at 1, 6-8, 13. Likewise, none of the time entries for the

summary judgment motion specify for which claim the work was performed. Instead, the entries

contain general descriptions attributing the time expended to "Navidea's claims" or "Goldberg

claims." <u>See, e.g.</u>, <u>id.</u>, Ex. B-3 at 8, 13. Goldberg provides no explanation for why a claim-by-

claim breakdown was not feasible, despite repeated and explicit warnings from the Court that

such detail was required. And, in drafting the Rule 56.1 statement or summary judgment motion,

it certainly seems possible for Goldberg's attorneys to have indicated how much time was spent

working on particular sections of the statement or memorandum that are relevant to specific

claims in this action. Or, where such a breakdown was impossible—such as, for example, the

introductory section—Goldberg could have provided a reasoned methodology for how he allocated the time. But even ignoring the failure to allocate time on a claim-by-claim basis, the entries in the billing records refer vaguely to the kind of work performed, such as stating "drafting summary judgment argument section re Navidea claims." Id., Ex. B-3 at 13 (7/3/2021 entry). Such entries are "inadequate to enable the Court to determine what issues, in particular, the attorneys were researching, much less whether the expended time was reasonable for the work performed." Mawere, 2011 WL 6779319, at *8 (collecting cases and declining to award fees for vague time entries).

Moreover, no documentation was provided to the Court to help substantiate the percentage multipliers Goldberg determined where applicable to the time entries for the Rule 56.1 statement and summary judgment motion. For instance, Zimmer determined that 90% of the time spent drafting the Rule 56.1 statement was applicable to his defenses of the claims here. Zimmer Decl. ¶ 9. And Zimmer determined that 80% of the time spent preparing the draft summary judgment memorandum was attributable to his defense of the claims in this action. Id. ¶ 10. But Zimmer failed to explain how he reached these percentages and has not provided the Court the draft Rule 56.1 statement or summary judgment memorandum, such that the Court could attempt to corroborate his percentages by reviewing the draft filings. Instead, Zimmer asks the Court to rely on his assertion that he engaged in a "line-by-line" review of the documents, but without any explanation as to how he determined the applicable percentages. Id. ¶¶ 9-10. And although Zimmer asserts that these documents are privileged attorney work product, he does not explain why he could not, at a minimum, have provided an explanation to substantiate his percentages, or given the documents to the Court for *in camera* review. The Court is instead left

with his bare assertion that he conducted a line-by-line review without any means of corroborating his calculations. Without further documentation or explanation, it is impossible to ascertain whether the percentages Zimmer applied to the time entries are reasonable.

In sum, I recommend that Goldberg's request for the advancement of fees in connection with depositions, the draft Rule 56.1 statement, and the draft summary judgment motion be denied.

Beyond the time spent on depositions, the Rule 56.1 statement, and summary judgment memorandum, Zimmer's and Weisbrot's billing records also contain time entries for other work performed, which can be separated into three categories and total 32.9 hours of time. As discussed below, I recommend that Goldberg's request for the advancement of these fees also be denied.

The first group of entries pertain to tasks like conferences, telephone calls, meet and confers, and emails, and totals 4.6 hours for Weisbrot and 16.1 hours for Zimmer. See Zimmer Decl., Ex. A at 3 (9/22/2020 Weisbrot entry); Ex. A at 7 (10/2/2020, 10/7/2020 and 10/20/20 Weisbrot entries); Ex. B-1 at 7 (9/22/2020, 9/24/2020 Zimmer entries); Ex. B-1 at 12 (10/9/2020, 10/12/2020, 10/15/2020, 10/21/2020 Zimmer entries); Ex. B-2 at 4 (12/7/2020 Zimmer entry); Ex. B-4 at 11 (12/14/2021 Zimmer entry); Ex. B-4 at 15 (2/3/22 Zimmer entry).[5] For this group

---

[5] Zimmer mistakenly labeled two time entries in this group. First, in Zimmer's summary calculation page, titled "December 2021 Defense of Navidea Claims Advancement Calculation," he mistakenly lists an entry as dated "12/14/2022." Zimmer Decl., Ex. B-4 at 15. However, the billing records underlying the summary calculation page indicate that the work was performed in 2021, not 2022. Second, in Zimmer's summary calculation page, titled "February 2022 Defense of Navidea Claims Advancement Calculation," he mistakenly lists an entry as dated "2/3/2021." Zimmer Decl., Ex. B-4 at 15. However, Zimmer's billing records underlying the summary calculation page indicate that the work was performed in 2022, not 2021.

of time entries, the descriptions of the work performed are vague and not separated by claim. For instance, Zimmer's October 21, 2020 entry states "T/c w. M. Goldberg re New York Strategy." Id., Ex. B-1 at 12. Zimmer applied an 80% multiplier to calculate the advanceable amount, claiming that this figure is "consistent with the percentages derived from page-by-page, line-by-line and document-by-document review of items relating to both Dr. Goldberg's defense of Navidea's claims and his prosecution of his affirmative claims." Zimmer Decl. ¶ 11. But the time entries provide no substantive detail of the work performed and it is impossible to determine to which claims in this action the work relates, or whether they relate to Goldberg's counterclaims. Additionally, Zimmer does not provide any meaningful explanation for how he determined that 80% was an appropriate multiplier for determining the time spent on his defense of Navidea's claims in this action. Id.

The second group of entries involves work on drafting or reviewing miscellaneous materials or submissions to the Court and totals 2.7 hours for Weisbrot and 5.8 hours for Zimmer. See Zimmer Decl., Ex. A at 7 (10/16/2020 Weisbrot entry); Ex. A at 11 (11/10/2020 and 11/12/2020 Weisbrot time entries); Ex. B-1 at 7 (9/23/2020 and 9/25/2020 Zimmer entries); Ex. B-2 at 15 (3/22/21 Zimmer entry); Ex. B-3 at 13 (6/15/2021 Zimmer entry); Ex. B-4 at 15 (2/1/2022 Zimmer entry).[6] Zimmer applied an 80% multiplier to calculate the advanceable amount here as well. Id. ¶ 11. But as was true with the first group of entries, the description of the work performed does not provide any substantive detail. Additionally, some of the entries are

---

[6] In Zimmer's summary calculation page, titled "February 2022 Defense of Navidea Claims Advancement Calculation," he mistakenly lists an entry as dated "2/1/2021." Zimmer Decl., Ex. B-4 at 15. However, Zimmer's billing records underlying the summary calculation page indicate that the work was performed in 2022, not 2021.

block-billed and it is thus not possible to determine to which claims in this action the work relates.

The final group of entries involves work performed on document review, for which Zimmer has only two time entries amounting to 3.7 hours of time. <u>See</u> Zimmer Decl., Ex. B-1 at 5. The two entries for here are also not separated by claim and it is not apparent from the description of the time entry for which claim or claims the document review was performed. Instead, both time entries say: "Document review." <u>Id.</u>  In his accompanying "Advancement Calculation," Zimmer applied a 76.4% multiplier to determine the advanceable amount. <u>Id.</u> But nowhere does Zimmer explain how he determined that 76.4% of his time spent on document review was allocable to Goldberg's defense of Navidea's claims. Indeed, in his declaration Zimmer does not provide any reasoning at all for how he picked 76.4%.

In short, for the reasons discussed, I recommend that Goldberg's request for the advancement of attorneys' fees for the substantive defense of Navidea's claims be denied.

2.   <u>Goldberg's request for advancement of costs should be denied.</u>

In addition to attorneys' fees, Goldberg also seeks an advancement of costs for two vendors, Consilio and Veritext. <u>See</u> Zimmer Decl., Exs. C, D. I have reviewed the invoices submitted by Zimmer for these vendors and recommend that the request for advancement of these costs be denied, for substantially the same reasons as already discussed with respect to his request for attorneys' fees.

Beginning with Consilio, an e-discovery vendor, Zimmer applied an 86% multiplier across 19 months of invoices from Consilio, alleging that this multiplier represents the "approximate percentage of documents coded [that] relat[e] to Navidea's claims against Dr.

Goldberg." Id. ¶ 14; see also id., Ex. C at 1-2. Here, too, Zimmer fails to provide a claim-by-claim break down of the cost by, for instance, attempting to ascertain the volume of documents reviewed that could be apportioned to each claim. And Zimmer does not give any explanation for how he reached the percentage multiplier or provide documentation to support the 86% figure, beyond his own conclusory statement that it represents a percentage of documents reviewed relating to Navidea's claims.

As the Court previously indicated, Zimmer and Weisbrot have not "'endeavored to address which costs were incurred *in connection with which claims*,'" and therefore "the Court has no basis for assessing the reasonableness of Goldberg's request" for an advancement of these costs. ECF No. 207 at 16 (quoting 4/21/21 R&R at 46, ECF No. 198) (emphasis added). Despite prior warnings, Zimmer still fails to provide more than unsupported conclusory statements to justify his across-the-board percentage multiplier applied to the costs incurred for Consolio's services.

With regards to the invoices from Veritext—the court reporting service used for depositions—Goldberg applied the same percentages he applied to the depositions to apportion the court reporting costs. See id. ¶¶ 7, 15; see also id. Ex. D at 1. As already discussed with regards to the application for attorneys' fees, the Court has no way to verify or assess the reasonableness of the percentages used, because Goldberg has not provided supporting documentation or a sufficient explanation as to how the percentages were calculated. See supra pp. 26-29.

In sum, I recommend that Goldberg be denied the advancement of costs stemming from services provided by Veritext and Consilio. A review of Goldberg's instant motion indicates that

his attorneys have not reformed their billing practices to conform with the Court's previous instructions and warnings. Instead, as already discussed, Goldberg's motion contains the same deficiencies the Court has repeatedly asked Goldberg to correct. Given the number of explicit warnings previously issued by the Court and Goldberg's failure to abide by any of them, I recommend that Goldberg's motion for advancement of attorneys' fees and costs for work relating to the substantive defense of Navidea's claims be denied as a sanction for failure to comply with the Court's prior orders.

### C. **Goldberg's instant application for advancement of attorneys' fees and costs should be granted, as to certain fees and costs incurred in moving for the advancement of fees.**

Despite the issues addressed above, which affect the bulk of the billing records that Goldberg has submitted, I recommend that certain time entries—for work performed on Goldberg's prior motions for the advancement of fees—be approved because the billing records provide a sufficient basis from which to assess the reasonableness of the amount requested. Judge Freeman previously recommended that fees reasonably incurred by counsel in seeking advancement of fees, referred to as "fees on fees," be advanceable to Goldberg. See R&R, ECF No. 198 at 30 n.9, adopted in full by ECF No. 207; see also Rekor Systems, Inc v. Loughlin, No. 19-CV-7767 (LJL), 2020 WL 6898271, at *16 (S.D.N.Y. Nov. 23, 2020) (citing Stifel Fin. Corp. v. Cochran, 809 A.2d 555, 561 (Del. 2002)).

"[A] party that has been awarded attorneys' fees is generally entitled to recover the reasonable cost of making a fee application." Mawere, 2011 WL 6779319, at *7; see also Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing an application for . . . fees."); Valley Disposal, Inc. v. Cent.

Vt. Solid Waste Mgmt. Dist., 71 F.3d 1053, 1060 (2d Cir. 1995) (noting that "motion costs should be granted whenever underlying costs are allowed," except if "there are reasons to the contrary"). As a usual rule, the Court should "evaluate the costs of preparing the [fee] motion no differently from the costs of litigating the underlying case." Valley Disposal, Inc., 71 F.3d at 1059. It is also within the Court's discretion to deny or substantially reduce requested "fees on fees," where, in the Court's view, the amount requested is excessive. See id. ("If the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the [court] may refuse further compensation or grant it sparingly."). A court may "exercise its discretion to reduce significantly the attorney time charged to the fee applications" where a party is not "entirely successful" in its fee application, where billing records are vague, or where the attorney used "block billing" and did not "break[ ] out the hours spent on each individual task." Mawere, 2011 WL 6779319, at *7-9.

Beginning with the billing rates, Goldberg requests an hourly billing rate of $450 for Weisbrot and $400 for Zimmer. See Zimmer Decl., Ex. A and Exs. B-1 to B-4. In an earlier declaration, made in connection with the October 2020 fee application, Weisbrot represented that he had been an attorney since 1995 and had tried dozens of cases and handled hundreds of contract matters. ECF No. 142-1 ¶ 3.[7] Weisbrot further stated that he owned and operated his own law firm. Id. ¶ 4. Additionally, Zimmer stated in a previous declaration, also in connection with the October 2020 fee application, that he had been admitted to practice law in New York since 2000 and had handled "hundreds of cases as lead or co-counsel in the state and federal

---

[7] In this earlier declaration, Weisbrot stated that his regular hourly rate is $425. ECF No. 142-1 at ¶ 5. However, the advancement calculation pages for the instant motion indicate an hourly rate of $450 for Weisbrot. See e.g., Zimmer Decl., Ex. A at 7.

courts in New York" and elsewhere. ECF No. 141-1 at ¶ 2. Zimmer also stated that he had

handled "many large complex civil actions, including multi-district litigations, securities and

antitrust actions and derivative actions." Id. ¶ 3.

Given their experiences, the requested hourly rates of $450 and $400 for Weisbrot and

Zimmer, respectively, are reasonable. "According to the lodestar method, $450 per hour is

reasonable compensation for experienced partners and senior attorneys practicing in the Southern

District of New York." Carlton Grp., Ltd. v. Par-La-Ville Hotel & Residences Ltd., No. 14-CV-

10139 (ALC), 2016 WL 3659922, at *3 (S.D.N.Y. June 30, 2016); see also Verizon Directories

Corp. v. AMCAR Transp. Corp., No. 05-CV-08867 (GBD) (RLE), 2008 WL 4891244, at *5

(S.D.N.Y. Nov. 12, 2008) (approving rates of $425 and $525 as reasonable for partners with

"extensive experience"); Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 434 (S.D.N.Y.

2007) (concluding that rate of $550 per hour is reasonable for partner).

Turning to the amount of time expended, Goldberg seeks fees for the preparation of fee

applications between October 2020 and March 2020. First, on October 30, 2020, Goldberg filed

a letter with the Court regarding Navidea's payments pursuant to the advancement protocol. ECF

No. 147. Leading up to this letter, Weisbrot billed 0.5 hours for work performed on October 29,

2020 for: "Review advancement protocols and letter to the court." Zimmer Decl., Ex A at 7. For

his part, Zimmer had four relevant billing entries: (1) on October 15, 2020, he billed 0.5 hours

for "Corres. w/ M. Goldberg, A. Weisbrot and B. Kazan re New York advancement issues;" (2)

on October 20, 2020, he billed 0.5 hours for "Telephonic conference w/ Magistrate Freeman re:

advancement issues"; (3) on October 27, 2020, he billed 0.5 hours for "Prepar[ing] advancement

stipulation as directed by Court"; and (4) on October 30, 2020, he billed one hour for

"prepar[ing] letter and proposed order re New York advancement (1.00)." <u>Id.</u>, Ex. B-1 at 12-13. In total, Weisbrot billed 0.5 hours and Zimmer billed 2.5 hours. Because the amount of time expended on the work performed is reasonable, I recommend awarding Goldberg **$1,225 in fees** for this time period.[8]

On November 13, 2020, Goldberg filed a brief in support of a fee application for indemnification and advancement of fees relating to his defense of Navidea's claims. <u>See</u> ECF No. 164; <u>see also</u> ECF No. 141. That same day, Goldberg also moved for fees in connection with counterclaims and third-party claims. ECF Nos. 165 (motion); 166 (memorandum of law). Following Navidea's opposition, on December 21, 2020, Goldberg submitted a brief and declaration in further support of his fee motion. ECF No. 174-75. Goldberg also filed a letter to the Court regarding the advancement protocol. ECF No. 163. During this period, Weisbrot had three time entries for the work performed related to the fee application: (1) a November 2, 2020 entry for 0.8 hours for "Review Court order on invoices (rates)"; (2) a November 6, 2020 entry for 1.5 hours for "Review and digest opposition to fee application"; and (3) a November 8, 2020 entry for 1.2 hours for "Work on response to fee application." Zimmer Decl., Ex. A at 11. Additionally, Zimmer had five time entries: (1) a November 9, 2020 entry for 0.9 hours for "review opposition to NY advancement application (0.70) [and] draft letter to Magistrate Freeman re advancement issues (0.20)"; (2) a November 11, 2020 time entry for 2.5 hours for "Review opposition to NY advancement fee application and begin drafting reply"; (3) a November 12, 2020 entry for 1.5 hours for "Draft reply re NY advancement application (1.50)";

---

[8] For Weisbrot, the calculation is 0.5 hours, multiplied by his billing rate of $450, for $225. For Zimmer, the calculation is 2.5 hours, multiplied by his billing rate of $400, for $1000.

(4) a November 13, 2020 entry for 1 hour for "Draft motion for advancement of attorneys' fees and expenses i/c/w/ NY counterclaims and third party claims (2.50) [and] draft, review and revise reply re advancement for defending Navidea NY claims (1.0)";[9] and (5) a December 21, 2020 time entry for 3.50 hours for the preparation of a "reply in further support of motion for advancement of attorneys' fees and expenses i/c/w NY counterclaims and third-party claims." See Zimmer Decl., Ex. B-1 at 18; Ex. B-2 at 4.

All of Weisbrot's time entries discussed above stem from work he performed on the November 13, 2020 fee application for Goldberg's defense of Navidea's claims (see ECF Nos. 141, 164), for which Goldberg was ultimately successful, at least in part. See ECF Nos. 198, 207. Similarly, all of Zimmer's time entries discussed above—except for the December 21, 2020 entry—stem from the same fee application. The total amount of time expended by Zimmer, excluding the entry from December 21, 2020, was 5.9 hours. The total amount of time expended by Weisbrot was 3.5 hours. Because the time spent on the work performed was reasonable, I recommend awarding Goldberg **$3,935 in fees** for this period.[10]

Zimmer's December 21, 2020 entry appears to relate to the motion by Goldberg for the advancement of attorneys' fees and costs in connection with the prosecution of his counterclaims and third-party claims, for which he is not entitled to the advancement of fees. See ECF Nos.

---

[9] Although the November 13 entry adds up to 3.5 hours of time, in Zimmer's corresponding calculation, he determined that only one hour of time was advanceable. See Zimmer Decl., B-1 at 18. Given Zimmer's calculation and because the description in the time entry includes work performed on Goldberg's counterclaims, I allot only one hour of time for the November 13, 2020 billing entry.

[10] For Weisbrot, the calculation is 3.5 hours, multiplied by his billing rate of $450, for a total of $1,575. For Zimmer, the calculation is 5.9 hours, multiplied by his billing rate of $400, for a total of $2,360.

165-66, 207 at 14-15. I thus do not recommend awarding any fees for the 3.50 hours of work performed by Zimmer on December 21, 2020.

Next, in January 2021, Goldberg filed various letters to the Court concerning the issue of attorneys' fees and advancement. <u>See</u> ECF Nos. 176, 178, 179, 181, 183. Judge Freeman also held a telephonic conference on January 20, 2021, that concerned the advancement protocol. <u>See</u> 1/20/21 minute entry; <u>see also</u> ECF No. 187 (1/20/2021 Conference Transcript). Zimmer has seven relevant billing entries for this work: (1) a January 7, 2021 entry for 0.5 hours for "Corresp. w/ M. Goldberg re NY advancement; prepare letter to Magistrate Freeman re same"; (2) a January 11, 2021 entry for 0.3 hours for "Prepare letter to Judge Caproni re NY advancement"; (3) a January 12, 2021 entry for 1 hour for "Review prior submissions re NY advancement in connection with efforts to obtain advancement; prepare letter to Judge Caproni re same"; (4) a January 20, 2021 entry for 0.8 hours for "Telephonic conference with Magistrate Freeman re advancement (.50) [and] t/c w/ M. Goldberg re same (.30); (5) a January 20, 2021 entry for 0.30 hours for "t/c w/ M. Goldberg" regarding telephonic conference with Judge Freeman; (6) a January 26, 2021 entry for 0.5 hours for "corresp. w/ B. Kazan and M. Goldberg re NY advancement"; and (7) a January 27, 2021 entry for 0.70 hours for "Review letter from B. Kazan to NY Court re advancement and draft response." Zimmer Decl., Ex. B-2 at 8. In total, Zimmer billed 4.1 hours of time. That amount of time spent preparing multiple letters to the Court and attending a telephonic conference with the Court is reasonable. I thus recommend awarding **$1,640 in fees** for this period.[11]

---

[11] The calculation is 4.1 hours, multiplied by his billing rate of $400, for a total of $1,640.

On February 1, 2021, Goldberg filed a motion for contempt based on Navidea's alleged failure to comply with the advancement protocol, and on February 17, 2021, Goldberg filed a reply brief in further support of the motion. ECF Nos. 184-85, 193. On April 21, 2021, Judge Freeman issued an R&R granting some indemnification and advancement of fees and denying Goldberg's motion to compel Navidea. ECF No. 198 at 6. In adopting the R&R, Judge Caproni explained that Navidea was not required to comply with the advancement protocol until Goldberg's attorneys produced adequate time records. See ECF No. 207 at 16. Goldberg's motion was thus unsuccessful.

In connection with that motion, Zimmer billed 9.6 hours of time. See Zimmer Decl., Ex. B-2 at 8, 12, 15 (1/29/2021 entry for 2 hours; 2/1/2021 entry for 4.50 hours; 2/17/2021 entry for 2.70 hours; 3/17/2021 entry for 0.40 hours). Courts can reduce or deny fees depending on the parties' success. See Murray v. UBS Sec., LLC, No. 14-CV-927 (KPF), 2020 WL 7384722, at *26 (S.D.N.Y. Dec. 16, 2020) ("The Supreme Court and the Second Circuit have made clear that a court retains discretion to reduce a fees award to account for limited success"); see also Empire Merchants, LLC v. Merinoff, No. 16-CV-9590 (JMF), 2018 WL 4062674, at *5 (S.D.N.Y. Aug. 27, 2018) (explaining that under Delaware law, "fees are appropriate only for expenses incurred in *successfully* obtaining advancement") (internal quotation marks omitted, emphasis in original). Because the February 2021 motion to compel was unsuccessful, I recommend that Goldberg not be awarded any fees for the work performed by Zimmer (a total of 9.6 hours) in connection with the motion. See Union Cent. Life Ins. v. Berger, No. 10-CV-8408 (PGG), 2013 WL 6571079, at *3 (S.D.N.Y. Dec. 13, 2013) (noting a downward adjustment in fees may be appropriate where a party was only partially successful).

Goldberg filed objections to Judge Freeman's April 2021 R&R on May 5, 2021. ECF Nos. 199-200. Zimmer billed 6.2 hours of time in connection with his work on the objections to the R&R. Specifically, on April 20, 2021, Zimmer billed 0.5 hours for "review advancement decision." Zimmer Decl., Ex. B-2 at 18. On May 3, 2021, Zimmer billed 0.5 hours for "review advancement decision." Zimmer Decl., Ex. B-3 at 6. On May 4, 2021, Zimmer billed 1.7 hours for "[r]eview R&R re indemnification and advancement and draft[ed] objections to same, incl. legal research re cases cited in R&R; t/c w/ M. Goldberg re same." Id. On May 5, 2021, Zimmer billed 3.5 hours for "[r]eview Navidea opposition to original fee application; continue drafting objections to R&R." Id. Goldberg's objections to the R&R were unsuccessful, as Judge Caproni adopted Judge Freeman's R&R in full. See ECF No. 207. Because Goldberg's objections to the R&R were unsuccessful, I do not recommend awarding him fees for the 6.2 hours of time spent on this work.

Goldberg also filed a motion to strike Navidea's response to Goldberg's objections to Judge Freeman's R&R. See ECF Nos. 203-05. That motion was also unsuccessful. See ECF No. 206. In fact, in denying the motion, the Court admonished Goldberg for even filing it, stating that the motion was a "waste of both the attorneys' and the Court's time and resources." Id. at 2. As such, I do not recommend awarding Goldberg fees for Zimmer's 5/26/2021 and 5/27/2021 entries, totaling 3.2 hours, for work on the motion to strike. Zimmer Decl., Ex. B-3 at 7-8.

On August 6, 2021, Navidea moved for reconsideration of the Court's August 24, 2020 order, which determined that Goldberg was entitled to the advancement of fees and costs, as well as indemnification for the defense of the breach-of-fiduciary-duty claim. ECF Nos. 134, 218-20. Goldberg successfully opposed the merits of Navidea's motion, which the Court denied on

42

March 7, 2022. ECF Nos. 225-26, 231, 261. In connection with the opposition to Navidea's

motion, Goldberg is seeking fees for 14.3 hours of work performed by Zimmer. Specifically, on

July 7, 2021, Zimmer billed 0.2 hours for a telephone call with Goldberg "re advancement

issues." Zimmer Decl., Ex. B-3 at 14. On August 11, 2021, Zimmer billed 0.2 hours for "Review

Order re advancement." Id., Ex. B-3 at 18. On August 30, 2021, Zimmer block-billed 2.2 hours,

of which Zimmer attributes 1.7 hours to "Review Navidea Motion to reconsider advancement

order." Id. Although Zimmer allocated 1.7 hours of the block-billed time to work on the

reconsideration motion, Zimmer does not explain how he determined that 1.7 hours of the 2.2

hours was allocable to that motion. Zimmer billed 11.4 hours on September 1, 2, and 3, 2021, for

time spent drafting Goldberg's opposition motion. Id., Ex. B-4 at 4. On September 27 and 29,

2021, Zimmer billed a total of 0.80 hours for time spent reviewing Navidea's reply in further

support of its motion to reconsider. Id. In total, Zimmer billed 14.3 hours for time spent opposing

Navidea's motion for reconsideration, which was ultimately successful on the merits. From that

time, I recommend excluding 1.7 hours which Zimmer block-billed. Because the amount of time

expended (12.6 hours) is reasonable and Goldberg's opposition was successful, I recommend

awarding Goldberg **$5,040 in fees** for this work.[12]

On October 14, 2021, Judge Freeman issued her R&R recommending denial of Navidea's

reconsideration motion. See ECF No. 231. Goldberg objected to the R&R, arguing that the Court

should reject and strike certain portions of the R&R as dicta and that Navidea should be ordered

to begin payments under the advancement protocol. See ECF Nos. 237-38. Specifically,

---

[12] This amount was calculated by multiplying Zimmer's hourly rate of $400 by 12.6 hours of work.

Goldberg objected to Judge Freeman's discussion of rulings made by the court in the Delaware action, arguing that the discussion was dicta and prejudicial to Goldberg. ECF No. 237 at 2-4. Zimmer has four time entries related to that R&R. On October 15, 2021, Zimmer billed 0.50 hours for "T/c w/ M. Goldberg re experts and advancement." Zimmer Decl., Ex. B-4 at 7. On October 25, 2021, Zimmer billed 1 hour for "Review Report and Recommendation re advancement reconsideration." Id. On October 27, 2021, Zimmer billed 4.30 hours to "[l]egal research re striking material from R&R and other potential objections to R&R; begin drafting objections to R&R." Id. Lastly, on October 28, 2021, Zimmer billed 4.50 hours to "[c]ontinue drafting objections to R&R; finalize same; draft Zimmer Decl. i-s-o same." Id. In total, Zimmer billed 10.3 hours for work related to Goldberg's objections to the October 2021 R&R. Goldberg's objections were unsuccessful, as Judge Caproni rejected his request to strike portions of the R&R. See ECF No. 261. Judge Caproni also declined to address whether Navidea should begin payments to Goldberg per the advancement protocol, because Goldberg had not raised the issue before Judge Freeman. Id. at 10. Because Goldberg's objections were not successful, I recommend that Goldberg not be awarded any fees for the 10.3 hours spent by Zimmer working on the objections.

The remaining two billing entries relating to the advancement of fees are from March 2022, for which Zimmer requests fees for 2.1 hours of time. On March 7, 2022, Judge Caproni denied Navidea's motion for reconsideration. ECF No. 261. Zimmer's billing records indicate that he performed work on March 7 and March 8, 2022, in connection with Judge Caproni's

order.[13] Zimmer Decl., Ex. B-4 at 19. In the billing records, the entry dated March 7, 2022, for

"Preliminary review of Order adopting Report and Recommendations re Advancement; t/c/ w/

M. Goldberg re same," states that the work performed took 0.70 hours. Id. But, in Zimmer's

accompanying calculation, Zimmer includes only 0.040 hours of time for this March 7 entry,

with no further explanation. Id. The March 8, 2021 entry accounts for 1.50 hours of work and

states: "Review prior fee application and rulings re advancement to determine proper start date

for next fee application (.50); prepare letter to Court requesting that next fee application include

time and expenses starting September 1, 2020 (1.00)." Id. In his calculation, however, Zimmer

used 1.70 hours of time. Id. For the discrepancy related to the March 8 entry, I recommend using

the lower figure of 1.5 hours. For the discrepancy related to the March 7 entry, I recommend

using 0.40 hours.[14] I thus recommend awarding Goldberg fees for only 1.9 hours for this period,

which amounts to **$760 in fees**.[15]

In sum, I recommend that Navidea be required to advance Goldberg **$12,600.00** in

attorneys' fees in connection with work related to Goldberg's prior advancement applications.

---

[13] In Zimmer's summary calculation page, titled "March 2022 Defense of Navidea Claims Advancement Calculation," he mistakenly lists these entries as dated "3/7/21" and "3/8/21." Zimmer Decl., Ex. B-4 at 19. However, Zimmer's billing records underlying the summary calculation page indicate that the work was performed in 2022, not 2021.

[14] Zimmer's calculation uses 0.040 hours of time. That amount of time must be a transcription error, because it would only amount to $16 in fees, at his billing rate of $400. I thus allot 0.40 hours of time for this billing entry.

[15] This amount was calculated by multiplying Zimmer's hourly rate of $400 by 1.9 hours.

45

## CONCLUSION

For the reasons stated above, I recommend that Goldberg's motion for attorneys' fees and expenses, see ECF No. 275, be denied in part and granted in part. In particular, Goldberg's request for fees and costs relating to his defense of Navidea's claims against him should be denied. Goldberg's request for fees and costs relating to prior advancement motions should be granted in part. I recommend that Goldberg be entitled to **$12,600.00** in advanceable fees.

DATED:      New York, New York
               January 30, 2023

Respectfully submitted,

_____
VALERIE FIGUEREDO
United States Magistrate Judge

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Valerie E. Caproni. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**