Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Tel:  (914) 402-5683
GZimmer@GZimmerLegal.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Navidea Biopharmaceuticals Litigation | Case No.: 1:19-cv-01578-VEC |

**OBJECTIONS OF DR. MICHAEL M. GOLDBERG TO REPORT AND
RECOMMENDATION ON FEE APPLICATION FOR ADVANCEMENT OF CERTAIN
FEES AND EXPENSES**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ............................................................................................... ii

I   APPLICABLE LEGAL STANDARD ............................................................... 1

II  THE FEES AND EXPENSES FOR WHICH DR. GOLDBERG SEEKS
ADVANCEMENT FALL WELL WITHIN THE REASONABLENESS STANDARDS
THE COURT MUST APPLY HERE ............................................................................. 4

CONCLUSION.................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                              **Page**

*Advanced Mining Sys., Inc. v. Fricke*,
   623 A.2d 82 (Del. Ch. 1992) ........................................................................................ 3

*Arbitrium (Cayman Islands) Handels AG v. Johnston*,
   1998 Del. Ch. LEXIS 41, 1998 WL 155550 (Del. Ch. Mar. 30, 1998) ........................ 2, 3, 14

*Aveta Inc. v. Bengoa*,
   2010 Del. Ch. LEXIS 175, 2010 WL 3221823 (Del. Ch. August 13, 2010) ................. 2, 3, 12

*Blank Rome, L.L.P. v. Vendel*,
   2003 Del. Ch. LEXIS 84, 2003 WL 21801179 (Del. Ch. August 3, 2010) ............................ 2

*Citadel Hldg. Corp. v. Roven*,
   603 A.2d 818 (Del. 1992) ........................................................................................ 1

*Danenberg v. Fitracks, Inc.*,
   58 A.3d 991 (Del. Ch. 2012) ........................................................................... 2, 3, 14

*Fasciana v. Elec. Data Sys. Corp.*,
   829 A.2d 160 (Del. Ch. 2003) ....................................................................... *passim*

*Homestore, Inc. v. Tafeen*,
   888 A.2d 204 (Del. 2005) ........................................................................................ 3

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................... 4, 9

*Lynch v. Gonzalez*,
   2020 Del. Ch. LEXIS 292, 2020 WL 5587716 (Del. Ch. Sept. 18, 2020) ......................... 4, 7

*Mooney v. Echo Therapeutics, Inc.*,
   2015 Del. Ch. LEXIS 146 (Del. Ch. May 28, 2015) ..................................................... *passim*

*Reinhard v. Dow Chem. Co.*,
   2008 Del. Ch. LEXIS 39 (Del. Ch. Mar. 28, 2008) ............................................................ 3

*Seiff v. Tokenize Inc.*,
   2020 Del. Ch. LEXIS 342 (Del. Ch. Nov. 19, 2020) .................................................... 4, 6, 13

*United States Supreme Court case of Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................... 4

*Weichert Co. V. Young*,
   2008 Del. Ch. LEXIS 51, 2008 WL 1914309 (Del. Ch. May 1, 2008) .................................. 2

*Wis. Inv. Bd. v. Bartlett*,
   2002 Del. Ch. LEXIS 42, 2002 WL 568417 at *6 (Del. Ch. Apr. 9, 2002),
   aff'd, 808 A.2d 1205 (Del. 2002) ........................................................................................ 2

**Rules**                                                                       **Page**

Del. Ct. Ch. R. 88 ......................................................................................................... 2

Fed. R. Civ. P. 12 ......................................................................................................... 6

Local Civ. R. 56.1 ........................................................................................... 10, 13, 14

Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Dr. Michael M. Goldberg M.D. ("Dr. Goldberg") respectfully submits these objections[1] to the Report and Recommendation (the "R&R") of Hon. Valerie Figueredo concerning Dr. Goldberg's fee application (the "Application") seeking advancement of fees and expenses incurred between September 1, 2020 and March 31, 2022 in defending the claims asserted against him in this action by Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") pursuant to the Court's Opinion and Order dated March 7, 2022 (Dkt. No. 261), as modified by the Court's Memo Endorsement dated March 9, 2022 (Dkt. No. 263).

## OBJECTIONS

There is no dispute that Dr. Goldberg's Application for advancement based on the Bylaws of Navidea, which is a Delaware corporation, is governed by Delaware law. As with most aspects of corporate law under Delaware law, there is a well-developed body of law governing advancement pursuant to corporate Bylaws. Under Delaware law, a party making a fee application bears the burden of justifying the amounts sought. *See Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 823-24 (Del. 1992). To satisfy this requirement under Delaware law, the application must include "a good faith estimate" of the fees and expenses that the party contends should be approved. *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 177 (Del. Ch. 2003). To support a fee application for advancement pursuant to the corporate bylaws of a Delaware corporation the applicant must "make an affidavit or submit a letter, as the Court may direct, itemizing (1) the amount which has been received, or will be received, for that purpose from any

---

[1] Dr. Goldberg hereby incorporates by reference his memorandum of law and reply memorandum of law submitted in support of the Application (Dkt. Nos. 276 and 283, respectively) as well as the declaration (the "Zimmer Declaration") of Gregory Zimmer, Esq. submitted in support of the Application (Dkt. No. 277).

source, and (2) the expenses incurred and services rendered, before making such an allowance." Ct. Ch. R. 88.

Determining the reasonableness of amounts sought "does not require that [the] Court examine individually each time entry and disbursement." *Aveta Inc. v. Bengoa*, 2010 Del. Ch. LEXIS 175, 2010 WL 3221823 at *6 (Del. Ch. August 13, 2010) (accord *Blank Rome, L.L.P. v. Vendel*, 2003 Del. Ch. LEXIS 84, 2003 WL 21801179 at *8-9 (Del. Ch. August 3, 2010) (rejecting alleged requirement of line-item review)).  Discussing specific invoices typically "would neither be useful nor practicable." *Weichert Co. V. Young*, C.A. No. 2223-VCL, 2008 Del. Ch. LEXIS 51, 2008 WL 1914309 at *2 (Del. Ch. May 1, 2008).  "[A]n arm's-length agreement, particularly with a sophisticated client . . . can provide an initial 'rough cut' of a commercially reasonable fee." *Wis. Inv. Bd. v. Bartlett*, 2002 Del. Ch. LEXIS 42, 2002 WL 568417 at *6 (Del. Ch. Apr. 9, 2002), aff'd, 808 A.2d 1205 (Del. 2002).  "If a party cannot be certain that it will be able to shift expenses at the time the expenses are incurred, the prospect that the party will bear its own expenses provides 'sufficient incentive to monitor its counsel's work and ensure that counsel [does] not engage in excessive or unnecessary efforts.'" *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012) (citing *Aveta*, 2010 Del. Ch. LEXIS 175, 2010 WL 3221823, at *6); *see also*, *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 1998 Del. Ch. LEXIS 41, 1998 WL 155550 at *2 (Del. Ch. Mar. 30, 1998) (considering that client faced prospect of bearing full cost of litigation when evaluating reasonableness), aff'd, 720 A.2d 542 (Del. 1998).

Moreover, "[d]etermining reasonableness of amounts sought also does not require the Court to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic." *Danenberg*, 58 A.3d 991,

997 (Del. Ch. , 2012). "For a Court to second-guess, on a hindsight basis, an attorney's judgment . . . is hazardous and should whenever possible be avoided." *Arbitrium*, 1998 Del. Ch. LEXIS 41, 1998 WL 155550, at *4.

When reviewing amounts submitted for advancement, the nature of the right involved further counsels against granular review. *Danenberg*, 58 A.3d at 997 (Del. Ch. 2012).

> In making a decision to advance expenses to a director or officer, the corporation is not extending the amount by which it may be legally liable, as it does when it extends indemnification rights. The right to be indemnified for expenses will exist (or will not) depending upon factors quite independent of the decision to advance expenses. Thus, the decision to extend advancement right should ultimately give rise to no net liability on the corporation's part. . . . [T]he advancement decision is essentially simply a decision to advance credit.

*Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992). "If it is subsequently determined that a corporate official is not entitled to indemnification, he or she will have to repay the funds advanced." *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 214 (Del. 2005). Consequently,

> [T]he function of a § 145(k) advancement case is not to inject this court as a monthly monitor of the precision and integrity of advancement requests. Unless some gross problem arises, a balance of fairness and efficiency concerns would seem to counsel deferring fights about details until a final indemnification proceeding . . ."

*Fasciana*, 829 A.2d at 177; *see also Reinhard v. Dow Chem*. Co., 2008 Del. Ch. LEXIS 39 (Del. Ch. Mar. 28, 2008) ("[T]his Court does not relish and will not perform the task of playground monitor, refereeing needless and inefficient skirmishes in the sandbox [over advancement].").

"Fee requests must be reasonable. At the same time, [Delaware] law is clear that the Court will not engage in a line-item review of invoices and second-guess with hindsight the appropriateness of an attorney's judgment." *Mooney v. Echo Therapeutics, Inc.*, 2015 Del. Ch. LEXIS 146 (Del. Ch. May 28, 2015). "Determining reasonableness does not require that this Court examine individually each time entry and disbursement." *Aveta*, 2010 Del. Ch. LEXIS 175, 2010 WL 3221823, at *6. "In determining reasonableness, the Court need not 'assess

independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic.'" *Seiff v. Tokenize Inc.*, 2020 Del. Ch. LEXIS 342 at * 12 (Del. Ch. Nov. 19, 2020) ("Plaintiffs' counsel have submitted sworn declarations, under penalty of perjury, that their invoices reflect the time necessary to properly prepare a defense to the New York action.  Tokenize has not introduced any evidence to contradict those declarations.  Under these circumstances, I will not second-guess an attorney's judgment as to the time spent on matters within the scope of the Agreement's advancement obligations.") (citing *Lynch v. Gonzalez*, 2020 Del. Ch. LEXIS 292, 2020 WL 5587716, at *3 (Del. Ch. Sept. 18, 2020)).

"If . . . fee requests relate to both advanceable claims and non-advanceable claims, *i.e.*, the work is useful for both types of claims, that work is entirely advanceable if it would have been done independently of the existence of the non-advanceable claims.  *Mooney* at *17. "[A]ny doubts should be resolved in favor of advancement.  The policy of Delaware favors advancement when it is provided for, with the Company's remedy for improperly advanced fees being recoupment at the indemnification stage." *Id.*  Even in the context of a final fee award pursuant to statutory provisions allowing awards of fees and expenses only to a "prevailing party," the United States Supreme Court has recognized, in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), that in many cases "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims." 461 U.S. at 435.  As recognized by *Hensley*, the fact that overlapping claims and a common core of facts make exact

separation of work on a per-claim basis impossible *does not* equate with (or even suggest) inadequate recordkeeping or provide any basis to deny indemnification or advancement.

"Fees on fees are paid in connection with a successful effort . . . to demonstrate that a corporation wrongfully has withheld advancement."  *Mooney*, 2015 Del. Ch. LEXIS 146 at * 17.

Moreover, where the Court has questions regarding the accuracy or reasonableness of a fee application the appropriate remedy is a reduction of the amounts requested, not a denial of the application in its entirety.  The cases cited in Navidea's opposition to the Application and the R&R for the proposition that an insufficient fee application does not justify a full award of fees makes clear that a *reduction*, not a denial of the application is the appropriate remedy. Therefore, even if Dr. Goldberg's Application were deficient – and as set forth in the Application submissions to Magistrate Judge Figueredo and herein it *was not* – there still would be no basis to deny it in its entirety.

Dr. Goldberg has made every possible effort to comply with the standards applicable to his Application and, to the extent possible, the Court's prior guidance.  To be clear, the Application *does not* apply good faith estimates of the percentages of time allocable to Navidea's claims and Dr. Goldberg's claims as his prior application did.  Counsel conducted serious, line-by-line analyses of deposition transcripts and draft documents, as well as the real-time issue coding done with respect to review of Navidea's document production in order to determine what specific portions of each related to defense of Navidea's claims.  Counsel submitted a declaration explaining how these analyses were performed and applied to the fees incurred. While these document-specific findings were represented as percentages of the total time spent for purposes of *calculation* of the amounts allocable to defense of Navidea's claims those percentages actually and specifically reflect the findings of counsel's extensive work in

allocating fees.[2]  Respectfully, the standards applied and the determinations made in the R&R are contrary to controlling authority.

Dr. Goldberg submitted his Application seeking advancement of fees and expenses incurred by him in defending against Navidea's three remaining claims against him in this action.[3]  This Court has already ruled that Dr. Goldberg is entitled to advancement of all reasonable fees and expenses incurred in defending against Navidea's claims against him, not on less than all of them.  It is also undisputable that the Navidea's three remaining claims against Dr. Goldberg are based on "overlapping claims and a common core of facts."  *Hensley*, 461 U.S. at 435.  Each claim incorporates each and every factual allegation in Navidea's First Amended Complaint and the two substantive claims both focus on the same alleged conduct by Dr. Goldberg after the August 14th Agreement was executed.  *See* Dkt. No. 15 at 20-22.  As the Supreme Court has clearly stated, in such situations "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims."

Delaware law instructs that where "counsel ha[s] submitted sworn declarations, under penalty of perjury, that their invoices reflect the time necessary to properly prepare a defense to the New York action, . . . and the party opposing advancement "has not introduced any evidence to contradict those declarations . . . [the Court should] not second-guess an attorney's judgment as to the time spent on matters within the scope of the Agreement's advancement obligations."  *Seiff*, 2020 Del. Ch. LEXIS 342 at * 12.  In this case, Dr. Goldberg's counsel submitted a sworn

---

[2]     In some cases Dr. Goldberg rounded down the actual percentages derived from these analyses to present conservative amounts for advancement in the Application.  Remarkably, the R&R questions without any suggested basis these actions and identifies them as bases to question the work performed by counsel and the representations made in his declaration.

[3]     Navidea's Fourth Cause of Action for breach of fiduciary duty was dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

declaration and contemporaneous billing entries as well as detailed calculations of advanceable amounts.  Counsel's declaration explain the extensive work performed to allocate the work attributable to advanceable claims versus non-advanceable claims.  *See* Dkt. No. 277.  These allocations with respect to document review, the cost of reviewing and hosting Navidea's and Macrophage's document production in this case, and depositions, were based on materials fully within Navidea's possession.  Navidea's counsel (who also represents Macrophage here and represented Macrophage in the Delaware Action) obviously has possession of and full access to both its own document production and the transcripts of all depositions.  Navidea was fully able to review those materials and seek to introduce evidence, either in the form of their own declarations or the source materials, to contradict Dr. Goldberg's counsel's declaration.  They did not do so.  Under these circumstances, the Court should "not second-guess" Dr. Goldberg's attorneys' judgment as to the time spent on matters within the scope of [Navidea's] advancement obligations."  *Lynch*, 2020 Del. Ch. LEXIS 292.  This is especially true in the advancement context existing in this case where "a balance of fairness and efficiency concerns would seem to counsel deferring fights about details until a final indemnification proceeding . . .."  *Fasciana*, 829 A.2d at 177.

In submitting his Application Dr. Goldberg complied with applicable authority and also heeded the Court's prior guidance that applying good faith percentage estimates to the time spent defending against Navidea's claims in order to determine what portion of fees and expenses are advanceable would not suffice.  Accordingly, where time or expenses were devoted solely to Navidea's claims against him they were itemized as such in billing records and submitted in full for advancement.  However, for the vast majority of the time that was the subject of this Application, which comprised primarily work on discovery, the allocation of advanceable time

was based on extensive work performed by counsel to identify exactly what specific portion of the work performed was actually incurred in defense of Navidea's claims.

It is important to keep in mind that although Navidea has three claims pending against Dr. Goldberg, they are all based on the identical set of facts and circumstances surrounding the agreement (the "August 14th Agreement") executed by Navidea, Dr. Goldberg and Third-Party Defendant Macrophage Therapeutics, Inc. ("Macrophage").  The First Cause of Action alleges that actions taken by Dr. Goldberg after the August 14th Agreement was executed breached the August 14th Agreement.  *See* Dkt. No. 15 ¶¶ 92-101.  Navidea's Second Cause of Action incorporates by reference the exact same factual allegations and claims, in the alternative to the First Cause of Action, that Dr. Goldberg's actions after the August 14th Agreement was executed breached a duty of good faith and fair dealing embodied in the agreement.  *Id.* ¶¶ 102-112.  The Third Cause of Action again incorporates by reference all of the same factual allegations and merely seeks a declaration of the parties' rights based on the same alleged conduct by Dr. Goldberg.  *Id.* ¶¶ 113—117.  Dr. Goldberg believes that any such declaration of the parties' rights should declare that he fully complied with his obligations under the August 14th Agreement, did not engage in any conduct breaching the agreement or the duty of good faith and fair dealing, and must also declare that undisputed fact that Navidea failed to issue to him the 23.5 million Navidea shares pursuant to Regulation D of the Securities Act of 1933 that it was required to issue to Dr. Goldberg and that Macrophage failed to issue to him the 5% Super Majority Voting Stock that it was required to issue to him under the August 14th Agreement.[45]

---

4       Dr. Goldberg's single remaining claim seeks damages for Navidea's and Macrophage's failure to issue the shares.

5       As part of a concerted effort to inundate and overwhelm Dr. Goldberg with litigation, Macrophage commenced litigation in Delaware Chancery Court against Dr. Goldberg on the same day that it commenced this action, alleging that a subset of the same facts alleged here in support of Navidea's three causes of action constituted a breach of Dr. Goldberg's fiduciary duty to Macrophage and/or converted Macrophage property.  After a bench trial in the Delaware Action the Delaware court dismissed the conversion allegations against Dr. Goldberg, refused

Dr. Goldberg's remaining counterclaims seeks damages for Navidea's and Macrophage's failure to issue certain securities to him as required by the August 14th Agreement.  *See* Dkt. No. 31 ¶¶ 84-104  **[CITE]**  Thus, the only additional facts relevant to Dr. Goldberg's counterclaims that are not necessary to prove that Dr. Goldberg did not breach the August 14th Agreement are the undisputed fact that Navidea and Macrophage did not actually issue the securities as required, and the issue of damages.[6]  "If . . . fee requests relate to both advanceable claims and non-advanceable claims, *i.e.*, the work is useful for both types of claims, that work is entirely advanceable if it would have been done independently of the existence of the non-advanceable claims.  *Mooney* at *17.

When it is understood that Navidea's claims against Dr. Goldberg are based on allegations of misconduct by him after the August 14th Agreement was executed, with the Second Cause of Action asserting an alternate legal theory (breach of the duty of good faith and fair dealing) and the Third Cause of Action seeking a remedy for the alleged misconduct (a declaration of the parties' rights under the August 14th Agreement), it becomes clear that this is one of the situations in which the claims "involve a common core of facts or will be based on related legal theories . . . [and, therefore,] . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims."  *Hensley*, 461 U.S. at 435

---

to adjudicate one of Macrophage's breach of fiduciary duty claims and ruled on the last count that although Dr. Goldberg had technically breached his fiduciary duty to Macrophage he had done so in his capacity as CEO of Macrophage an effort to comply with Macrophage's obligations under the August 14th Agreement and had not caused any harm to Macrophage.  The Delaware court awarded Macrophage $1.00 in nominal damages and refused to award Macrophage its attorneys' fees.

[6]     Counsel has gone to great lengths to identify and seek advancement of only that time and those expenses relating to defending against Navidea's claims.  Thus, time spent questioning witnesses at deposition and reviewing documents and related expenses concerning Navidea's and Macrophage's failure to issue the required shares was excluded from the Application.  Likewise, time and expenses incurred in developing Dr. Goldberg's damages theories were not included in the Application.

This is especially true where, as here, the vast majority of time for which advancement is sought relates to fact witness depositions concerning the events leading up to and following the execution of the August 14th Agreement and a draft Fed. R. Civ. P. 56.1 Statement in support of an anticipated motion for summary judgment by Dr. Goldberg which lays out that factual background.  However, while "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis" (*Id.*), Dr. Goldberg's counsel engaged in significant efforts to segregate time based on time spent on defending against Navidea's claims and time spent prosecuting his counterclaims.

For depositions, this consisted of a separate, line-by-line review of each deposition transcript to identify the number of lines in each individual transcript that covered material relating to Dr. Goldberg's defense of Navidea's claims against him, material relating to prosecution of Dr. Goldberg's counterclaims, and material relating to the litigation of the Delaware Action.  This process was required because when conducting depositions it would be impractical, if not impossible, to keep a contemporaneous minute-by-minute tally of the amount of time spent on each.  The attorney taking the depositions (which, with the exception of approximately two hours of a single deposition, was attorney Gregory Zimmer, Esq.) is a solo practitioner and Dr. Goldberg incurred fees for only Mr. Zimmer's time, without incurring any time for a paralegal or other support person to assist, or to monitor time breakdowns (if that were even possible), thereby reducing significantly the amount paid by him and sought through advancement.  Mr. Zimmer conducted the depositions with outlines in one hand and a pad and pen in the other to take notes where appropriate to assist with the process of conducting the deposition.  It was critical to the success of the deposition taking process that he focus on his questions and the answers provided by the deponent, and that he react in real-time to the

information obtained.  Even if certain portions of the questions and answers related solely to defending against Navidea's claims, prosecuting Dr. Goldberg's counterclaims or defending the Delaware action despite the overlapping nature of those claims,[7] the suggestion that Mr. Zimmer could have simultaneously operated a timer of some sort and maintained separate notes on a minute-by-minute basis regarding what subject was being questioned about defies reality.  This is especially true where the course of questioning and answers was necessarily driven in part by the deponent's responses, could not be known in advance, often changed on an answer-by-answer basis and required full concentration to address.

Accordingly, and to ensure that Dr. Goldberg only submitted for advancement time that was relevant to defending against Navidea's claims, attorney Zimmer conducted a line-by-line review of each transcript and identified with the benefit of time to consider which portions related to Navidea's claims, which related to Dr. Goldberg's single counterclaims and which related to the Delaware Action.  *See* Dkt. No. 177.  Dr. Goldberg believes that this was a reasonable method for separating the time and consistent with both Delaware law and the Court's prior directives because the transcripts are literally a second-by-second representation of the actual work performed during the entire deposition.  Because, like the depositions themselves, preparation time for the depositions was done based on a narrative and progression of questions about the facts and circumstances surrounding the August 14th Agreement in relative chronological order and not based on any artificial breakdown relating to the claims against Dr. Goldberg in this action, his counterclaims and/or the claims in the Delaware Action, preparation

---

[7]     *See Mooney* at *17 ("If . . . fee requests relate to both advanceable claims and non-advanceable claims, *i.e.*, the work is useful for both types of claims, that work is entirely advanceable if it would have been done independently of the existence of the non-advanceable claims. "

time was allocated based on the amount of time actually devoted to each of those topics at the deposition as reflected in the transcripts.

With respect to the court reporting fees for each deposition day, which are charged per page, counsel utilized the same methodology because it allocated the cost according to the number of lines (and therefore the relative number of pages) utilized for portions of the deposition relating to defending Navidea's claims against Dr. Goldberg. *See* Dkt. No. 177. For the depositions of Dr. Mark Greene and Dr. Goldberg, which were noticed by Navidea, at which Dr. Goldberg asked no questions, and which to date Dr. Goldberg has not utilized in any way and has no plans to utilize, Dr. Goldberg allocated 100% of the costs to defending against Navidea's claims because he had no use for them in prosecuting his own claims or defending against Macrophage's claims in Delaware and has no way to know Navidea's purpose in taking the depositions, much less to allocate specific portions of the transcripts to specific potential uses. *Id.*

While Dr. Goldberg is of course willing to submit the deposition transcripts to the Court if the Court wishes to review them, there is no authority for submission of such source materials to the Court as part of a fee application, and doing so would be completely inconsistent with the Delaware authority governing advancement, which "is clear that the Court will not engage in a line-item review of invoices and second-guess with hindsight the appropriateness of an attorney's judgment" (*Mooney*, 2015 Del. Ch. LEXIS 146) and which makes clear that "[d]etermining reasonableness does not require that this Court examine individually each time entry and disbursement" (*Aveta*, 2010 Del. Ch. LEXIS 175). The deposition transcripts comprise thousands of pages, each of which were designated as "Confidential" by Navidea's counsel (other than Dr. Goldberg's transcript which was so designated by his counsel) pursuant to the

confidentiality agreement in place in this Action and could not be filed publicly without further

negotiation with Navidea's counsel or application to the Court.  Accordingly, they could not be

filed in the ordinary course in support of the Application.  Again, Navidea has unfettered access

to these transcripts and elected not to submit any evidence contradicting Dr. Goldberg's

counsel's allocations.  Where the "counsel [for the party seeking advancement] have submitted

sworn declarations, under penalty of perjury, that their invoices reflect the time necessary to

properly prepare a defense to the New York action . . . [and the party opposing advancement] has

not introduced any evidence to contradict those declarations . . . [the Court should not second-

guess an attorney's judgment as to the time spent on matters within the scope of the Agreement's

advancement obligations." *Seiff*, 2020 Del. Ch. LEXIS 342 at * 12.  Under these circumstances,

"a balance of fairness and efficiency concerns would seem to counsel deferring fights about

details until a final indemnification proceeding . . .." *Fasciana*, 829 A.2d at 177.

  With respect to draft summary judgment papers, which are still works in progress and

have not yet been completed or submitted to the Court,[8] Dr. Goldberg's counsel incurred time

drafting a draft Rule 56.1 statement in narrative form setting out a mostly chronological

description of the facts leading up to and following the execution of the August 14th Agreement.

This factual background is relevant in full to Navidea's completely overlapping claims against

Dr. Goldberg.  A full recitation of the facts is, in counsel's opinion, supportive of Dr. Goldberg's

position in defense of Navidea's claims that he fully performed his obligations under the August

14th Agreement and that Navidea's claim that his conduct justifies a declaration that it is no

longer obligated to perform certain of its obligations under the agreement should be denied.

Therefore time spent drafting the draft Rule 56.1 Statement should be fully advanceable even

---

[8] Per the Court's instructions, if necessary, a summary judgment schedule will be proposed to the Court once the current ongoing mediation effort has terminated.

though it also applies in small part to Dr. Goldberg's very limited counterclaims that Navidea and Macrophage did not issue securities as required by the agreement. *See Mooney*. 2015 Del. Ch. LEXIS 146 at *17 ("If . . . fee requests relate to both advanceable claims and non-advanceable claims, *i.e.*, the work is useful for both types of claims, that work is entirely advanceable if it would have been done independently of the existence of the non-advanceable claims.")  However, to be conservative in his request, Dr. Goldberg excluded subjects relevant to his counterclaims from his advancement request with respect to the draft Rule 56.1 Statement. *See* Dkt. No. 177.  The same analysis was applied to certain time incurred in drafting a draft summary judgment motion. *Id.*

There is not authority to support the suggestion, and it would be problematic at best, for the Court to require Dr. Goldberg to submit attorney work product comprising and incomplete, work-in-progress form of papers that may eventually be submitted to the Court as part of a fee application for advancement.  In fact, applicable Delaware law counsels the opposite. *See Danenberg*, 58 A.3d at 997 ( "[d]etermining reasonableness of amounts sought also does not require the Court to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic."); *Arbitrium*, 1998 Del. Ch. LEXIS 41, 1998 WL 155550, at *4 ( "For a Court to second-guess, on a hindsight basis, an attorney's judgment . . . is hazardous and should whenever possible be avoided.")  Moreover, while Navidea protests that it was unable to challenge Dr. Goldberg's allocations with respect to the draft 56.1 Statement, it had unfettered access to source materials with respect to allocations relating to its document production and the deposition transcripts, yet it did nothing to challenge the substance of Dr. Goldberg's allocations.  Under these circumstances, "a balance

14

of fairness and efficiency concerns would seem to counsel deferring fights about details until a final indemnification proceeding . . ..” *Fasciana*, 829 A.2d at 177.

With respect to invoices from e-discovery vendor Consilio representing Dr. Goldberg's expenses with regard to housing, search and coding of Navidea's and Macrophage's electronic document production, attorney Zimmer conducted a review of the coding applied at the time of review of the documents. *See* Dkt. No. 177. Navidea produced many thousands of documents in a single combined production in this action and the Delaware Action. Dr Goldberg's counsel was required to review every document and applied issue-specific codes to responsive documents that were relevant to Navidea's claims in this action, his counterclaims and the Delaware Action. Each document was reviewed in the order it was produced and Bates stamped by Navidea in its production. It would have been impractical, if not impossible to note on time entries covering the review of many thousands of documents during a period of hours a minute-by-minute, document-by-document narrative of whether each individual document related to Navidea's claims, Dr. Goldberg's counterclaims or the Delaware Action. Even attempting to do so would have multiplied the amount of time required to conduct and document the review exponentially and therefore increased the amount of fees Dr. Goldberg was required to pay and the amount Navidea would be responsible for advancing. Instead, after receiving guidance from the Court that good faith estimates were inadequate to support fee applications, Dr. Goldberg's counsel engaged in a review of the number of documents coded for specific issues relating to Navidea's claims against Dr. Goldberg, determined the percentage of all documents represented by that collection of documents, and applied the 86% multiplier to the amount of fees incurred by Dr. Goldberg for document review.[9] *See* Zimmer Decl. ¶ 14, Ex. C. Navidea has full access to these documents

---

[9]     Dr. Goldberg's counsel also charged a reduced hourly rate of $300 for time spent reviewing documents.

and is well aware of the claims and counterclaims. It was free to conduct its own review and offer a rebuttal of the specific, document-by-document analysis-based allocation presented by Dr. Goldberg in the Application, but failed to do so (or perhaps attempted the review and could not identify any basis to provide a substantive challenge to Dr. Goldberg's allocation). Once again, where Navidea had the ability to raise specific challenges to the requested fees, but failed to do so, "a balance of fairness and efficiency concerns would seem to counsel deferring fights about details until a final indemnification proceeding . . .." *Fasciana*, 829 A.2d at 177.

With respect to time incurred in this action on matters such as scheduling issues and other issues that are general and/or procedural in nature and do not relate to *any* specific claims or defenses, Dr. Goldberg applied an 80% multiplier. This multiplier approximates the percentages of time attributable to defending against Navidea's claims versus prosecuting Dr. Goldberg's claims in all other aspects of the case, including the detailed analysis of depositions, draft summary judgment papers and document review. There is simply no rational basis to suggest that these time entries did not relate in any manner to Navidea's claims against Dr. Goldberg. If the Court does not believe that an approximate percentage correlating with the percentages objectively determined to relate to defending against Navidea's claims for those matter susceptible to such analysis is appropriate, the Court may make an appropriate adjustment to the requested allocation. However, there is not basis or authority for denying advancement of such fees in full.

It is also important to note too that attorney N. Ari Weisbrot, who formerly represented Dr. Goldberg in this action as co-counsel, unfortunately passed away in May 2021 and was therefore unable to review his time records for his time for which advancement is sought through the Application in light of the Court's prior guidance. The amount sought for Mr. Weisbrot's time is relatively minimal and was allocated based on the same analyses referenced above.

As a result of Mr. Weisbrot's passing, attorney Zimmer has been Dr. Goldberg's sole legal advisor since May 2021.  Dr. Goldberg did not initiate this action and he has defended himself against a public company that is seeking permission from the Court to deprive him of millions of dollars in consideration required to be provided to him by Navidea and Macrophage by a signed contract, the August 14th Agreement.  One of Dr. Goldberg's rights is to have reasonable legal fees and expenses covered *in advance* by the Navidea pursuant to its Bylaws.  This litigation has gone on for 4 years to date and Dr. Goldberg has had to fund it completely on his own after having given up all rights required by the August 14th Agreement for salary and other benefits, and has been deprived of millions of dollars of consideration for the significant rights and ownership interests Dr. Goldberg surrendered in the August 14th Agreement.  Dr. Goldberg hired lawyers to react to a multipronged coordinated legal attack from Navidea in two jurisdictions.  He hired the best representation he could afford to respond to Navidea's multiple lawsuits per the required timelines. Dr. Goldberg has since had to hire and discharge lawyers as the cases developed and as he had to budget his limited resources.  It is unfair and legally incorrect under Delaware law to deny advancement of his mounting legal expenses .  This has made it difficult for him to mount a fully-effective legal defense.  The failure to advance his significant legal fees to date has significantly damaged his ability to defend himself against Navidea's claims and prosecute his counterclaims.

It is critical to Dr. Goldberg's ability to defend against Navidea's claims that he is assured that all legal expenses will be advanced pursuant to the protocol adopted by the Court if submitted properly.  The case is entering the final stage before it goes to a jury.  Dr. Goldberg would like to prepare a professional summary judgement motion so he can hopefully limit the expensive jury trial stage to the damages phase.  He respectfully requests that the Court award him what it believes is fair for past litigation expenses.  Since the amount is merely an advance that either gets repaid

if Dr. Goldberg loses the case or is subject to review as part of the process of payment under the prevailing party attorneys' fees provision in the August 14th Agreement and/or Dr. Goldberg's indemnification rights if he wins this case, there is no risk to Navidea. However, a total lack of advancement has already damaged his ability to mount a strong case. Further, extraordinary efforts to substantiate future advancement requests beyond those required by applicable law will significantly add to Dr. Goldberg's costs and the additional costs will not be in any way helpful to his legal positions and may take time and effort away from properly advancing his positions. Given those facts Dr. Goldberg respectfully suggests that the Court should ask Navidea how much it has spent in this action and take the relatively small fraction of that amount for which Dr. Goldberg seeks advancement into account when determining the reasonableness of his Application. He is confident that after a reasonable review the Court will agree that the recommendation in the R&R that he be advanced zero dollars is not reasonable.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should not accept the R&R with respect to advancement of fees and expenses incurred by Dr. Goldberg in defending against Navidea's claims against him between September 2000 and May 2021, and should award Dr. Goldberg the advancement requested in the Application in its entirety, *to whit* attorneys' fees and expenses incurred with N. Ari Weisbrot, Esq. in the amount of $11,070.50, attorneys' fees and expenses incurred with Gregory Zimmer, Esq. in the amount of $97,151.92, expenses incurred with Veritext Court Reporting in the amount of $12,096.81 and expenses incurred with Consilio in the amount of $22,853.32 (*see* Dkt. No. 177), and grant Dr. Goldberg such other and further relief as the Court

deems just and proper.

Dated:  Westchester, New York
        February 13, 2022

                                    Respectfully submitted,


                                    /s/ Gregory Zimmer
                                    Gregory Zimmer, Esq.
                                    142 New Chalet Drive
                                    Mohegan Lake, NY 10547
                                    Phone: 914.402.5683
                                    Fax: 914.402.5683
                                    Email: GZimmer@GZimmerLegal.com