UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: NAVIDEA BIOPHARMACEUTICALS
LITIGATION

Case No: 1:19-cv-01578-VEC-VF

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF/COUNTERCLAIM-
DEFENDANT NAVIDEA BIOPHARMACEUTICALS, INC.'S AND
THIRD-PARTY DEFENDANT MACROPHAGE THERAPEUTICS, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

MINTZ & GOLD LLP
Barry M. Kazan, Esq.
Timothy J. Quill, Jr., Esq.
600 Third Avenue, 25th Floor
New York, New York 10016

*Attorneys for Plaintiff/Counterclaim
Defendant Navidea Biopharmaceuticals,
Inc. and Third-Party Defendant
Macrophage Therapeutics, Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .........................................................................................2

    I.     Relevant Factual Background ..............................................................2

    II.    Relevant Procedural Background .........................................................5

ARGUMENT..............................................................................................................6

    I.     Legal Standard ......................................................................................6

    II.    Navidea is entitled to summary judgment dismissing Dr. Goldberg's first counterclaim for breach of contract ...........................................................7

         A.    Navidea's obligation to issue shares to Dr. Goldberg was never triggered and therefore Navidea cannot have breached the August Agreement .........7

         B.    Dr. Goldberg materially breached the August Agreement, thereby excusing Navidea from its obligation to issue the Navidea common shares to Dr. Goldberg ..........................................................................10

    III.   Macrophage is entitled to summary judgment dismissing Dr. Goldberg's third-party claim for breach of contract ........................................................11

         A.    Dr. Goldberg cannot demonstrate that *Macrophage* breached its obligation to issue the Super Voting Common Stock because the non-issuance of those shares was the result of Dr. Goldberg's inaction.............................12

         B.    Dr. Goldberg's material breach of the August Agreement relieves Macrophage of any obligation it otherwise had to issue the Super Voting Common Stock.............................................................................14

         C.    Dr. Goldberg cannot establish that Macrophage's alleged breach caused him damages, a required element of his breach of contract claim against Macrophage.............................................................................14

    IV.   Navidea is entitled to summary judgment on its first claim for breach of contract. ...................................................................................................16

    V.    Navidea is entitled to summary judgment on its second claim for breach of the implied covenant of good faith and fair dealing. ...................................18

VI.    Navidea is entitled to summary judgment on its third claim for a declaratory judgment. ...................................................................................................21

        A.    There exists an actual controversy among the parties warranting the issuance of a declaratory judgment...........................................................21

        B.    Summary judgment granting Navidea's requested declaratory judgment is warranted....................................................................................................23

        C.    At a minimum, the Court should grant summary judgment and issue a declaratory judgment clarifying the rights and obligations of the parties to the August Agreement. .........................................................................24

CONCLUSION ...............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                        <u>Pages</u>

*854 Health and Welfare Fund*, 21 Civ. 10472 (LGS),
    2022 WL 16856270 (S.D.N.Y. Nov. 10, 2022) .......................................................................... 23

*AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*,
    2020 WL 7024929 (Del. Ch. Nov. 30, 2020) ............................................................... 7, 13, 16

*Admiral Insurance Company v. Niagara Transformer Corp.*,
    57 F. 4th 85 (2d Cir. 2023) .................................................................................................. 22

*Ainslie v. Cantor Fitzgerald, L.P.*, Consol. C.A. No. 9436-VCZ,
    2023 WL 106924 (Del. Ch. Jan. 4, 2023) .......................................................................... 9, 10

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
    910 A.2d 1020 (Del. Ch. 2006) .............................................................................................. 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................. 7

*Bifolck v. Philip Morris USA Inc.*,
    936 F.3d 74 (2d Cir. 2019) ..................................................................................................... 17

*BioLife Sol., Inc. v. Endocare, Inc.*,
    838 A.2d 268 (Del. Ch. 2003) .......................................................................................... 10, 24

*Bobcat North America, LLC v. Inland Waste Holdings, LLC*, C.A. No. N17C-06-170 PRW
    CCLD, 2019 WL 1877400 (Del. Super. Apr. 26, 2019) ........................................................... 8

*Brautigam v. Dahlback*,
    598 Fed. Appx. 53 (2d Cir. 2015) ........................................................................................... 23

*Carey v. Estate of Myers*, C.A. No. S11C-10-029 MJB,
    2015 WL 4087056 (Del. Super. July 1, 2015) ....................................................................... 24

*Cato Cap. LLC v. Hemispherx Biopharma, Inc.*,
    70 F. Supp. 3d 607 (D. Del. 2014) ........................................................................................... 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................................ 6, 7

*Chamison v. HealthTrust, Inc.*,
    735 A.2d 912 (Del. Ch. 1999) ................................................................................................ 19

*Chemipal Ltd. v. Slim-Fast Nutritional Foods Intern., Inc.*,
   350 F. Supp. 2d 582 (D. Del. 2004) ...................................................................... 15

*Christian v. Delaware State University*, No. 96C-09-004,
   1998 WL 960718 (Del. Super. Oct. 21, 1998) ........................................................ 14

*Compagnia Importazioni Esportazioni Rappresentanze v. L-3 Communications Corp.*,
   703 F. Supp. 2d 296 (S.D.N.Y. 2010) ................................................................... 23

*Dieckman v. Regency GP LP*,
   155 A.3d 358 (Del. 2017) ...................................................................................... 19

*Doe v. Wildey*, C.A. No. 09C-06-262 MJB,
   2012 WL 1408879 (Del. Super. March 29, 2012) .................................................. 15

*Dunlap v. State Farm Fire & Cas. Co.*,
   878 A.2d 434 (Del. 2005) ................................................................................. 18, 19

*Frontier Oil v. Holly Corp.*, No. Civ. A. 20502,
   2005 WL 1039027 (Del. Ch. Apr. 29, 2005) ......................................................... 15

*GWO Litig. Tr. v. Sprint Sols., Inc.*, C.A. No. N17C-06-356 PRW,
   2018 WL 5309477 (Del. Super. Oct. 25, 2018) ................................................ 18, 20

*Heather Const., Inc. v. Gangi*, 1987 WL 8215
   1987 WL 8215 (Del. Super. Mar. 16, 1987) .......................................................... 13

*H-M Wexford LLC v. Encorp, Inc.*,
   832 A.2d 129 (Del. Ch. 2003) ............................................................................... 14

*Horror Inc. v. Miller*,
   15 F. 4th 232 (2d Cir. 2021) ................................................................................... 7

*Jenkins v. United States*,
   386 F.3d 415 (2d Cir. 2004) ................................................................................... 22

*Kewazinga Corp. v. Microsoft Corp.*,
   558 F. Supp. 3d 90 (S.D.N.Y. 2021) ..................................................................... 15

*Kuroda v. SPJS Holdings, LLC*,
   971 A.2d 872 (Del. Ch. 2009) ............................................................................... 18

*LaPoint v. AmerisourceBergen Corp.*, No. Civ. A. 327-CC,
   2007 WL 2565709 (Del. Ch. Sept. 4, 2007) .......................................................... 14

*Lehman Brothers Holdings, Inc. v. Spanish Broadcasting System, Inc.*, Civ. A. No. 8321-VCG,
    2014 WL 718430 (Del. Ch. Feb. 25, 2014) ............................................................................ 13

*Lippe v. Bairnco Corp.*,
    99 Fed. Appx. 274 (2d Cir. 2004) ........................................................................................ 15

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) .............................................................................................................. 23

*Miller v. Brightstar Asia, Ltd.*,
    43 F.4th 112 (2d Cir. 2022) .................................................................................................. 23

*Oyola v. 21st Century Centennial Ins. Co.*, C.A. No. N19C-02-200 JRJ,
    2020 WL 4344553 (Del. Super. July 28, 2020) ..................................................................... 9

*PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*,
    857 A.2d 998 (Del. Ch. 2004) .............................................................................................. 19

*Prairie Capital III, L.P. v. Double E Holding Corp.*,
    132 A.3d 35 (Del. Ch. 2015) ................................................................................................ 12

*Preferred Investment Services v. T & H Bail Bonds, Inc.*, C.A. No. 5886 VCP,
    2013 WL 3934992 (Del. Ch. July 24, 2013) ....................................................................... 24

*Seaford Assocs. Ltd. P'ship v. Subway Real Estate Corp.*, No. Civ. A. 2248,
    2003 WL 21254847,n.30 (Del. Ch. May 21, 2003) ............................................................... 8

*Thomas v. Headlands Tech Principal Holdings, L.P.*, C.A. No. N19C-11-041 EMD CCLD,
    2020 WL 5946962 (Del. Super. Sept. 22, 2020) ................................................................. 19

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) ..................................................................................................... 14

*Wechsler v. Abramowitz*, Nos. 6861 & 6862,
    1984 WL 8244 (Del. Ch. Aug. 30, 1984) ............................................................................ 13

*Wegmann v. Young Adult Institute, Inc.*, No. 15 Civ 3815 (KPF),
    2019 WL 5682666 (S.D.N.Y. Oct. 31, 2019) ...................................................................... 17

*White v. Russell*, C.A. No. 2020-0462-SEM,
    2023 WL 3191746 (Del. Ch. May 2, 2023) ........................................................................... 8

Statutes

28 U.S.C. § 2201(a) ..................................................................................................................... 21
Section 271 of the DGCL ............................................................................................................... 5

Rules

Fed. R. Civ. P. 56(a) ................................................................................................................ 6, 23
Federal Rule of Civil Procedure 56 ............................................................................................ 6
Rule 56(c) .................................................................................................................................... 7

Other Authorities

17A Am. Jur. 2d Contracts § 703 ............................................................................................ 13

Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") and Third-Party Defendant Macrophage Therapeutics, Inc. ("Macrophage") submit this memorandum of law in support of their motion for summary judgment (1) dismissing Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Dr. Michael M. Goldberg, M.D.'s ("Dr. Goldberg") counterclaim against Navidea and third-party claim against Macrophage; and (2) finding in favor of Navidea on its affirmative claims against Dr. Goldberg.

## PRELIMINARY STATEMENT

In what is hopefully the final chapter of the saga among the parties related to an August 14, 2018 Agreement (the "August Agreement"), Navidea and Macrophage respectfully request that summary judgment on the remaining claims in this action be adjudicated in their favor. Over the course of the past five years, the parties have engaged in extensive discovery and motion practice in this Court and a series of actions in the Delaware Chancery Court (the "Delaware Court"). The end result of these rulings is that, as of this time, Dr. Goldberg has only a single breach of contract claim against Navidea and a single breach of contract claim against Macrophage, and Navidea has a breach of contract claim, a breach of the implied covenant of good faith and fair dealing claim, and a declaratory judgment claim against Dr. Goldberg.

Further, the Delaware Court has rejected all of Dr. Goldberg's attempts at self-help by voiding certain actions taken by Dr. Goldberg and finding that he breached his fiduciary duty to Macrophage (and by extension to Navidea) when he tried to unilaterally effectuate portions of the August Agreement instead of pursuing his remedies (if any) in this Court. Finally, this Court struck Dr. Goldberg's expert's opinion required for his sole remaining claim against Macrophage, and found Dr. Goldberg's expert "barely" qualified to testify on two other subjects. The end result of these rulings is that Dr. Goldberg should be found in breach of the August Agreement as a matter

1

of law and that those breaches, along with the plain language of the August Agreement, should preclude him from any further relief in this action.

Dr. Goldberg's breach of contract claim against Navidea fails both because the supposed obligation upon which his breach claim relies required a condition precedent that never occurred and, in any event, Dr. Goldberg materially breached the August Agreement thereby excusing Navidea's performance. Dr. Goldberg's breach of contract claim against Macrophage fails because the alleged breach was caused by Dr. Goldberg's own failure to act, because his material breach of the August Agreement excused Macrophage from performance under that contract, and because he cannot establish the element of damages given this Court's exclusion of his expert's opinion on that issue. In contrast, Navidea's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment all succeed because Navidea has established each element of its claims and Dr. Goldberg cannot identify any genuine issue of material fact that would undermine Navidea's claims.

In sum, Navidea and Macrophage are entitled to summary judgment in their favor.

## STATEMENT OF FACTS

### I.      Relevant Factual Background

The facts set forth herein are undisputed and adopted from Navidea's and Macrophage's Local Civil Rule 56.1 Statement of Material Facts ("SMF"). Navidea and Macrophage rely, in part, on the factual findings of Vice Chancellor Slights, reached by a preponderance of the evidence at trial, and issued in his June 23, 2021 Memorandum Opinion in *Macrophage Therapeutics, Inc. v.*

*Michael M. Goldberg, M.D. and M1M2 Therapeutics, Inc.*, C.A. No. 2019-0137-JRS (Del. Ch. 2021). [1]

Navidea is a publicly traded company and the parent (and over 99 percent owner) of Macrophage. (SMF ¶¶ 1, 2, 3, 22.) On August 14, 2018, Navidea, Macrophage, and Dr. Goldberg—who served as CEO of Navidea from September 2016 to August 14, 2018, and as CEO of Macrophage from August 14, 2018 to February 20, 2019—entered into the August Agreement. (SMF ¶¶ 4, 5, 24, 27.) The August Agreement includes provisions for, *inter alia*, the issuance of Navidea common shares to Dr. Goldberg, the escrowing of those shares pursuant to certain terms and conditions, a lock-up agreement, the issuance of Macrophage Super Voting Common Stock to Dr. Goldberg, limitations on the issuance of additional equity to Dr. Goldberg, payment of severance and health costs to Dr. Goldberg, Navidea's extension of a credit line to Macrophage, the redemption of Dr. Goldberg's preferred stock in Macrophage, Dr. Goldberg's release of any rights to collect a debt, a waiver of Dr. Goldberg's rights (other than those set forth in the August Agreement), and Dr. Goldberg's resignation from Navidea. (SMF ¶¶ 31-33.)

The parties entered the August Agreement, with the intention of entering into one or more additional definitive agreements (the "Transaction Documents"), to provide for the separation of Dr. Goldberg from Navidea and the establishment of the parties' rights and obligations with respect to the ownership, management and continued operations of Macrophage. (SMF ¶¶ 24-25.) The August Agreement specifically states that the "Transaction Documents shall contain other terms, conditions, representations and warranties of Navidea, [Macrophage] and [Dr.] Goldberg customary for transactions of the type set forth in this Agreement." (SMF ¶ 34.)

---

[1] Factual findings made by the Court of Chancery are binding in subsequent proceedings involving the same parties. *Preston Hollow Capital LLC v. Nuveen LLC*, C.A. No. N19C-10-107-MMJ CCLD, 2020 WL 7365808, at *10 (Del. Super. Dec. 15, 2020).

Certain of the obligations contained in the August Agreement were conditioned upon the consummation of the Transaction—the parties' execution of the Transaction Documents—defined as the Closing Date. (SMF ¶ 33.) Critically, one such obligation was the requirement that Navidea issue 23.5 million shares of common stock to Dr. Goldberg. (SMF ¶ 31.) The parties partially performed under the August Agreement. (SMF ¶¶ 45-46.) Maslon LLP, counsel to Navidea, sent drafts of the Transaction Documents to Dr. Goldberg for review and execution on September 7, 2018. (SMF ¶ 36.) However, no Transaction Documents were ultimately executed by the parties. (SMF ¶ 44.) Nevertheless, because the parties entered the August Agreement to expedite the separation of Dr. Goldberg from Navidea, the August Agreement expressly provides that "any failure to execute the Transaction Documents shall not render the provisions of the [August Agreement] invalid." (SMF ¶ 34.)

On November 29, 2018, Navidea executed a written consent that: (1) confirmed that the total number of directors on the Macrophage board of directors (the "Macrophage Board") was fixed at three; (2) removed each and every director of Macrophage other than Dr. Goldberg; and (3) elected two non-parties to the Macrophage Board. (SMF ¶ 53.) Navidea took these actions based upon Dr. Goldberg's attempt to change the terms of the August Agreement, his failure to close the August Agreement, and because of concerns about certain assertions that Dr. Goldberg made regarding his purported ownership of intellectual property. (SMF ¶¶ 52-53.)

In response to Navidea's actions, none of which were prohibited under the August Agreement, Dr. Goldberg, as CEO of Macrophage, caused Macrophage to enter into a series of transactions that benefited himself and were designed to circumvent the requirements and restrictions of the August Agreement. (SMF ¶¶ 50, 55.) Specifically, without informing Navidea or the Macrophage Board in advance, Dr. Goldberg created a subsidiary of Macrophage known as

M1M2, transferred Macrophage's primary asset (a sub-license to utilize Navidea's intellectual property (the "Sub-License Agreement")) to M1M2, and created an ownership structure and board for M1M2 that included Dr. Goldberg and his son (together, the "Challenged Transactions"). (SMF ¶¶ 50, 55, 58.)

Upon learning of the Challenged Transactions, the Macrophage Board terminated Dr. Goldberg as CEO and Macrophage sued him in Delaware Chancery Court. (SMF ¶¶ 61-63.) In a June 12, 2019 ruling, the Delaware Court found that the Challenged Transactions were "null and void for failure to comply with Section 271 of the DGCL." (SMF ¶ 8.) The Delaware Court later entered an implementing order ruling that the formation of M1M2, the issuance of any M1M2 common stock or super voting common stock, and the sub-license agreement between M1M2 and Macrophage as well as any other actions taken by or on behalf of M1M2 were also null and void *ab initio*. (SMF ¶ 8.)

Macrophage continued to pursue its claims in Delaware against Dr. Goldberg for breach of fiduciary duty. (SMF ¶ 69.) Following a trial, the Delaware Court ruled that Dr. Goldberg breached his fiduciary duty to Macrophage by, among other things, entering into the Challenged Transactions. (SMF ¶¶ 70-71.)

## II.   Relevant Procedural Background

On February 20, 2019, Navidea commenced an action against Dr. Goldberg in this Court, Case No. 19-cv-1578. On March 7, 2019, Dr. Goldberg commenced an action against Navidea and Macrophage in this Court, Case No. 19-cv-2101. On May 7, 2019, the Court consolidated those cases. (ECF Doc. No. 26.)

On December 26, 2019, this Court entered an order dismissing portions of Dr. Goldberg's claims for breach of contract, and all his claims for breach of the implied covenant of good faith

and fair dealing, wrongful termination, and quantum meruit. (ECF Doc. No. 61 at 18-19.) The Court also found that Dr. Goldberg lacked standing to seek an injunction removing others from the Macrophage Board, invalidating the actions taken by the Macrophage Board on or after November 29, 2018, and reinstating the Sub-License Agreement. (ECF Doc. No. 61 at 19.) Then, on April 1, 2020, the Court denied Dr. Goldberg's motion for leave to amend his counterclaim because his proposed amended counterclaim for injunctive relief did not address why he believes he has standing to assert such a claim. (ECF Doc. No. 108 at 2.) By operation of the Court's December 26, 2019, and April 1, 2020 Orders, Dr. Goldberg has only two remaining claims in this action: breach of the August Agreement against Navidea for failure to issue 23.5 million shares (ECF Doc. No. 35 (Counterclaim) ¶ 87); and breach of the August Agreement against Macrophage for failing to issue Super Voting Common Stock (ECF No. 35 (Counterclaim) ¶ 100).

On November 9, 2022, the Court granted Navidea's *Daubert* motion to exclude certain testimony from Dr. Goldberg's proposed damages expert, Terry Lee Orr ("Orr"). (ECF Doc. No. 290.) As relevant for purposes of this motion, Orr's proposed testimony regarding damages resulting from Macrophage's alleged breach of the August Agreement is inadmissible. (ECF Doc. No. 290 at 24-26.)

## ARGUMENT

### I.   Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return

a verdict for the non-moving party." *Horror Inc. v. Miller*, 15 F. 4th 232, 241 (2d Cir. 2021) (citations and quotations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II.   Navidea is entitled to summary judgment dismissing Dr. Goldberg's first counterclaim for breach of contract.

Dr. Goldberg's only remaining counterclaim against Navidea is his claim for breach of contract arising from Navidea's alleged failure to issue him the 23.5 million shares of Navidea common stock in the form required by the August Agreement. (ECF Doc. No. 35 (Counterclaim) ¶ 87.)

Under Delaware law, which governs the August Agreement, to succeed on a breach of contract claim, a party must establish "(i) a contractual obligation, (ii) a breach of that obligation by the [counterparty], and (iii) a causally related injury that warrants a remedy, such as damages or in an appropriate case, specific performance." *AB Stable VIII LLC v. Maps Hotels & Resorts One LLC*, C.A. No. 2020-0310-JTL, 2020 WL 7024929, at *47 (Del. Ch. Nov. 30, 2020), *aff'd*, 268 A.3d 198 (Del. 2021). Here, Dr. Goldberg cannot satisfy the elements of his breach of contract claim against Navidea because Navidea did not breach any obligation under the August Agreement and because Dr. Goldberg materially breached the contract, thus excusing Navidea's performance.

### A.   Navidea's obligation to issue shares to Dr. Goldberg was never triggered and therefore Navidea cannot have breached the August Agreement.

It is axiomatic that a party cannot have breached an obligation under a contract by failing to perform when that party's performance is not yet due. *See, e.g.*, *Bobcat North America, LLC v.*

*Inland Waste Holdings, LLC*, C.A. No. N17C-06-170 PRW CCLD, 2019 WL 1877400, at *6 (Del. Super. Apr. 26, 2019) ("The general rule concerning a condition precedent is that one has no duty to perform until the condition occurs.").[2] Here, the August Agreement expressly states that Navidea will issue to Dr. Goldberg 23.5 million shares of Navidea common stock "on the date of the consummation of the Transaction (such date, the 'Closing Date')[.]" (SMF ¶ 31.) As such, the August Agreement makes clear that the consummation of the Transaction—*i.e.*, the Closing Date, and Dr. Goldberg's execution of the Transaction Documents—is a condition precedent to Navidea's obligation to issue to Dr. Goldberg the 23.5 million shares of Navidea common stock.

A condition precedent is "an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." *Seaford Assocs. Ltd. P'ship v. Subway Real Estate Corp.*, No. Civ. A. 2248, 2003 WL 21254847, at *5 n.30 (Del. Ch. May 21, 2003) (quoting *Black's Law Dictionary* 289 (7th ed. 1999)). Although the existence of a condition precedent in a contract generally includes terms such as "if," "provided that," or "on the condition," such language is not required. *See White v. Russell*, C.A. No. 2020-0462-SEM, 2023 WL 3191746, at *6 (Del. Ch. May 2, 2023); *Cato Cap. LLC v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607, 619 (D. Del. 2014) (noting that no particular words are required to create a condition precedent under Delaware law).

Maslon LLP, counsel to Navidea's special committee, sent the draft Transaction Documents to Dr. Goldberg on September 7, 2018. (SMF ¶ 36.) And there is no dispute that Navidea performed other obligations under the August Agreement, including making a final salary payment to Dr. Goldberg on August 15, 2018, providing the required line of credit to Macrophage

---

[2] There exists an exception to this rule for anticipatory breach or repudiation, but there are no facts to support any argument by Dr. Goldberg that Navidea anticipatorily breached the August Agreement.

not to exceed $750,000, paying the costs to continue Dr. Goldberg's health coverage under COBRA for 16 months, and paying Dr. Goldberg an aggregate of $978,000 in severance over two years. (SMF ¶ 46.) Thus, there is no dispute that Navidea was ready, willing, and able to fulfill its obligations under the August Agreement, including signing the Transaction Documents after Maslon LLP sent those documents to Dr. Goldberg for execution. (SMF ¶ 43.)

But Dr. Goldberg refused to proceed to closing and refused to execute the Transaction Documents. (SMF ¶¶ 43-44.) Instead, he attempted to re-negotiate the deal set forth in the August Agreement under different terms. (SMF ¶ 41.) There is no dispute among the parties that the Transaction Documents were never executed and that the closing never occurred. (SMF ¶ 44.) Thus the "Closing Date," as defined in the August Agreement, never arrived, and  the condition precedent triggering Navidea's performance obligation never occurred. Therefore, Navidea was never required to issue the common stock. *See, e.g.*, *Ainslie v. Cantor Fitzgerald, L.P.*, Consol. C.A. No. 9436-VCZ, 2023 WL 106924, at *27 (Del. Ch. Jan. 4, 2023) (granting summary judgment for defendant on breach of contract claim because plaintiff failed to sign release, a condition precedent to defendant's performance); *Oyola v. 21st Century Centennial Ins. Co.*, C.A. No. N19C-02-200 JRJ, 2020 WL 4344553, at *4 (Del. Super. July 28, 2020) (granting insurer summary judgment where insured did not satisfy condition precedent).

Navidea cannot have breached a contract simply by not performing an act which, as of the date of the purported breach, it had no duty to perform. As such, the counterclaim against Navidea for breach of the August Agreement fails and Navidea is entitled to summary judgment on Dr. Goldberg's first counterclaim.

**B.    Dr. Goldberg materially breached the August Agreement, thereby excusing Navidea from its obligation to issue the Navidea common shares to Dr. Goldberg.**

Even if the Court were to determine that Navidea was (or is) required to issue the 23.5 million shares to Dr. Goldberg on some post-August Agreement date (if and when Dr. Goldberg ultimately executes the Transaction Documents and closes), Dr. Goldberg's material breach of the August Agreement excuses Navidea from that obligation. Under Delaware law, "[a] material breach entitles the nonbreaching party to damages and relieves it of its obligations to perform under the agreement." *Ainslie*, 2023 WL 106924, at *10; *see BioLife Sol., Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003).

Here, the August Agreement expressly states that Dr. Goldberg is precluded from issuing himself any equity without Navidea's consent until after Macrophage receives at least $10 million in additional financing after the Closing Date.

> Notwithstanding the foregoing, until such time as [Macrophage] shall have obtained aggregate gross proceeds of $10 million in one or more financings after the Closing Date, the vote or written consent of Navidea shall be required to issue to Goldberg or any one of his affiliates any equity or rights to purchase equity, which vote or consent will not be unreasonably withheld.

(SMF ¶ 49.)

But Dr. Goldberg flouted that restriction and materially breached the August Agreement when he surreptitiously engaged in the Challenged Transactions. (SMF ¶¶ 51-55, 58, 70.) There is no dispute that Macrophage did not obtain at least $10 million in financing, nor is there any dispute that the Closing Date never occurred. (SMF ¶¶ 44, 48.) By creating M1M2, transferring to M1M2 Macrophage's most valuable asset (Macrophage's Sub-License Agreement with Navidea), and granting himself an equity interest and control over M1M2 (and thus control over the Sub-License Agreement), Dr. Goldberg effectively accomplished that which he was prohibited from doing under the August Agreement—he granted himself additional interest in Macrophage (via M1M2),

before Macrophage obtained the necessary financing, without Navidea's consent. (SMF ¶¶ 48-50, 55.) Dr. Goldberg engaged in impermissible "self-help" to right what he perceived as a wrong under the August Agreement. In doing so, he materially breached the contract. (SMF ¶ 70.)

Because Navidea owns approximately 99% of Macrophage, Dr. Goldberg's material breach harmed Navidea and its interest in Macrophage. Indeed, as the Delaware Court found following a three-day trial in December 2020:

> Dr. Goldberg exploited the parties' inability to come to terms on definitive agreements implementing the August Agreement by surreptitiously removing Navidea from the process and taking the Navidea Sub-License for his own.

(SMF ¶ 70.)

Dr. Goldberg's material breach excused Navidea's further performance under the August Agreement, including its obligation to issue Dr. Goldberg the 23.5 million of Navidea common stock, regardless of when the date to issue those shares otherwise could arise. As such, Navidea cannot be liable for breach of the August Agreement and is entitled to summary judgment on Dr. Goldberg's only remaining counterclaim.

### III. Macrophage is entitled to summary judgment dismissing Dr. Goldberg's third-party claim for breach of contract.

Dr. Goldberg's only remaining claim against Macrophage is for breach of contract based on Macrophage's alleged failure to issue him the Macrophage Super Voting Common Stock. (ECF Doc. No. 35 (Counterclaim) ¶ 100.) But Dr. Goldberg's claim fails for at least three reasons. First, he cannot demonstrate that *Macrophage* breached the August Agreement because it was Dr. Goldberg's own failure to act, in his position as CEO of Macrophage, that caused Macrophage not to issue the Super Voting Common Stock. As such, his breach of contract claim against Macrophage lacks causation and is meritless on its face. Second, Dr. Goldberg materially breached the August Agreement, thereby relieving Macrophage of any further obligations under the

contract. Finally, Dr. Goldberg fails to establish damages arising from the alleged breach, an essential element of his third-party claim.

A.   **Dr. Goldberg cannot demonstrate that *Macrophage* breached its obligation to issue the Super Voting Common Stock because the non-issuance of those shares was the result of Dr. Goldberg's inaction.**

Dr. Goldberg's claim against Macrophage fails for lack of causation because it was Dr. Goldberg's inaction that led to the non-issuance of the Super Voting Common Stock. Because Macrophage is a corporation, it can only act through its human agents. *See Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60 (Del. Ch. 2015). Between August 14, 2018 and February 20, 2019, Dr. Goldberg was the CEO of Macrophage and had effective control over its Board of Directors. (SMF ¶ 5.) Indeed, Dr. Goldberg had so much power over Macrophage during that time that he was able to create a subsidiary, transfer Macrophage's primary asset to that subsidiary, and issue himself a controlling interest in that subsidiary. (SMF ¶ 55.) Dr. Goldberg therefore certainly had the power—and, as CEO, the responsibility—to cause Macrophage to issue the Super Voting Common Stock to himself, as he contends the August Agreement requires. But there is no dispute that he failed to do so. (SMF ¶ 47.)

Despite his own inaction, Dr. Goldberg seeks to recover from Macrophage for its alleged failure to perform under a contract when he, as the agent for Macrophage, failed to act. It is specious for Dr. Goldberg to assert a claim against his principal for losses he allegedly suffered because he was not issued equity based upon *his own* failure to cause the company to issue that equity during the time he was CEO.

Dr. Goldberg's failure to act as CEO can be characterized as prevention of contractual performance, because his inaction made it impossible for Macrophage to issue the Super Voting Common Stock—the very obligation that Dr. Goldberg alleges Macrophage breached. Dr. Goldberg cannot prevent Macrophage from performing and then successfully assert a claim for

breach based upon non-performance that he caused. Indeed, the prevention of one party's performance of the contract by the other party is itself a breach of contract. *See Heather Const., Inc. v. Gangi*, 1987 WL 8215, at *2 (Del. Super. Mar. 16, 1987); 17A Am. Jur. 2d Contracts § 703.

Dr. Goldberg's failure to act can also be viewed as a disruption in the chain of causation for his breach of contract claim. To prevail on a breach of contract claim, the defendant's breach must have caused the plaintiff's injury. *AB Stable*, 2020 WL 7024929, at *47. Here, any alleged action or inaction by Macrophage cannot logically be identified as the cause of Dr. Goldberg's purported injury, because—since a corporation must act through its agents—Dr. Goldberg's inaction was the cause.

Alternatively, Dr. Goldberg's failure can be characterized as acquiescence because he remained silent and failed to act, with full knowledge of his right to be issued the Super Voting Common Stock under the August Agreement. He therefore should be estopped from seeking to recover. *See, e.g.*, *Lehman Brothers Holdings, Inc. v. Spanish Broadcasting System, Inc.*, Civ. A. No. 8321-VCG, 2014 WL 718430, at *9 (Del. Ch. Feb. 25, 2014) (explaining the doctrine of acquiescence); *Wechsler v. Abramowitz*, Nos. 6861 & 6862, 1984 WL 8244 (Del. Ch. Aug. 30, 1984) ("Acquiescence, also an equitable defense, is based upon the rule that equity will not permit a complainant to stultify himself by complaining against acts in which he participated or in which he has demonstrated his approval be sharing in the benefits . . ."). Whether based on prevention of performance, lack of causation, or acquiescence, Dr. Goldberg's claim that Macrophage breached the August Agreement fails.

To the extent the Court accepts the argument that the non-issuance of Super Voting Common Stock can somehow be blamed on Macrophage in the first instance (despite Dr. Goldberg's prevention of performance, acquiescence, or the absence of causation), any damage

suffered by Dr. Goldberg could have been mitigated had he taken action to cause Macrophage to issue those shares. But, again, he failed to do so. (SMF ¶ 47.) "Delaware law requires any party seeking to recover contractual damages to mitigate those damages." *Christian v. Delaware State University*, No. 96C-09-004, 1998 WL 960718, at *3 (Del. Super. Oct. 21, 1998). Dr. Goldberg failed to mitigate and therefore cannot recover from Macrophage for this reason as well. This warrants summary judgment in favor of Macrophage on Dr. Goldberg's third-party claim.

> **B.    Dr. Goldberg's material breach of the August Agreement relieves Macrophage of any obligation it otherwise had to issue the Super Voting Common Stock.**

Even if Macrophage could somehow be responsible for Dr. Goldberg's failure to issue the Super Voting Common Stock, Macrophage still is entitled to summary judgment. As discussed in Section II.B, *supra*, Dr. Goldberg materially breached the August Agreement by engaging in the Challenged Transactions. This material breach excuses Macrophage's performance and relieves it of its obligation to issue Dr. Goldberg the Macrophage Super Voting Common Stock. As such, Macrophage cannot be liable to Dr. Goldberg for breach of the August Agreement and Macrophage's motion for summary judgment should be granted.

> **C.    Dr. Goldberg cannot establish that Macrophage's alleged breach caused him damages, a required element of his breach of contract claim against Macrophage.**

Even if Dr. Goldberg could demonstrate that Macrophage somehow breached the August Agreement by not issuing the Macrophage Super Voting Common Stock (and for the reasons set forth above, he cannot), his third-party claim against Macrophage still fails because he cannot establish the element of damages.

Damages are an essential element of a breach of contract claim under Delaware law. *See, e.g.*, *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). To satisfy this element, a party must

demonstrate the existence of damages provable to a reasonable certainty. *LaPoint v. AmerisourceBergen Corp.*, No. Civ. A. 327-CC, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007). Dr. Goldberg cannot do so.

Damages based on valuation must be established by expert opinion and proof of such damages cannot be speculative. *Frontier Oil v. Holly Corp.*, No. Civ. A. 20502, 2005 WL 1039027, at *39 (Del. Ch. Apr. 29, 2005). As a matter of law, where expert opinion is required to establish an element of a claim but such expert opinion is excluded, the party against whom the inadmissible opinion is offered is entitled to summary judgment. *See, Lippe v. Bairnco Corp.*, 99 Fed. Appx. 274 (2d Cir. 2004) (summary order) (affirming summary judgment in favor of defendants after proper exclusion of plaintiff's valuation expert where expert testimony on valuation of assets was necessary to plaintiff's claim); *Kewazinga Corp. v. Microsoft Corp.*, 558 F. Supp. 3d 90, 122 (S.D.N.Y. 2021) (granting defendant summary judgment for defendant in patent claim because plaintiff's expert opinions on damages were excluded on *Daubert* motion); *Chemipal Ltd. v. Slim-Fast Nutritional Foods Intern., Inc.*, 350 F. Supp. 2d 582, 597 (D. Del. 2004) (granting defendant summary judgment because plaintiff's basis for damages was expert testimony excluded for lack of reliability and plaintiff's damages claims therefore were speculative under Delaware law); *see also Doe v. Wildey*, C.A. No. 09C-06-262 MJB, 2012 WL 1408879, at *1 (Del. Super. March 29, 2012) (granting defendant summary judgment where court previously precluded expert testimony required to establish proximate cause element of plaintiff's claim).

Here, the Court has precluded Dr. Goldberg's expert, Mr. Orr, from offering an opinion on monetary damages purportedly suffered because of the non-issuance of the Super Voting Common Stock. (ECF Doc. No. 290 at 24-26.) And the Court has already ruled that monetary damages are the only appropriate remedy for Dr. Goldberg's breach claim. (ECF Doc. No. 61 at 19; ECF Doc.

No. 108 at 2.) Absent the expert testimony the Court already excluded by granting Macrophage's *Daubert* motion, Dr. Goldberg cannot establish the damages element of his third-party claim and therefore, as a matter of law, his breach of contract claim against Macrophage fails.

In sum, because there exists no disputed issue of material fact and Dr. Goldberg cannot satisfy the elements of his claim, Macrophage is entitled to summary judgment dismissing Dr. Goldberg's third-party claim for breach of the August Agreement.

## IV.   Navidea is entitled to summary judgment on its first claim for breach of contract.

As noted in Section II.A, to prevail on a breach of contract claim under Delaware law, a plaintiff must establish a contractual obligation, the defendant's breach, and resulting damages. *See AB Stable*, 2020 WL 7024929, at *47. Here, Navidea satisfies each of these elements and Dr. Goldberg cannot identify any genuine issue of material fact to dispute Navidea's claim.

The August Agreement, which all parties confirm is an enforceable contract, required Dr. Goldberg to, *inter alia*, enter into and execute the Transaction Documents, thereby closing the deal, and refrain from issuing himself or his family members any equity or rights to purchase equity in Macrophage until Macrophage obtained at least $10 million in financing after the Closing Date, unless he obtained the vote or written consent of Navidea.

As set forth in Section II.A., *supra*, Dr. Goldberg failed to proceed to closing and execute the Transaction Documents. (SMF ¶ 44.) There is no dispute that Maslon LLP, counsel to Navidea's Special Committee, prepared initial drafts of the Transaction Documents and sent them to Dr. Goldberg. (SMF ¶ 36.) But Dr. Goldberg refused to execute those documents and instead sought to alter the terms of the August Agreement. (SMF ¶ 41.)

Then, in February 2019, Dr. Goldberg materially breached the August Agreement by violating the provision in the contract that prohibits him from issuing himself additional equity in Macrophage. (SMF ¶¶ 50, 55.) Macrophage did not receive the $10 million in financing referenced

in the August Agreement, but Dr. Goldberg nevertheless engaged in the Challenged Transactions designed to issue himself additional equity. (SMF ¶¶ 48-50, 55.) He created a subsidiary, transferred Macrophage's most valuable asset to that subsidiary, and granted himself a pecuniary interest and control over that subsidiary. (SMF ¶ 55.) Through his surreptitious activity, Dr. Goldberg effectively accomplished that which he was prohibited from doing under the August Agreement, thereby materially breaching the contract.

Further, there can be no dispute that Dr. Goldberg engaged in the Challenged Transactions because the Delaware Court concluded as much by a preponderance of the evidence following trial. (SMF ¶ 70.) Under the doctrine of nonmutual offensive collateral estoppel, Dr. Goldberg is precluded from relitigating this issue that he already lost against Macrophage. *See, e.g.*, *Wegmann v. Young Adult Institute, Inc.*, No. 15 Civ. 3815 (KPF), 2019 WL 5682666, at *12-13 (S.D.N.Y. Oct. 31, 2019) (applying nonmutual offensive collateral estoppel where five conditions were satisfied: "(i) 'the issues in both proceedings [are] identical'; (ii) the issue in the prior proceeding [was] actually litigated and actually decided'; (iii) 'there [was] a full and fair opportunity for litigation in the prior proceeding'; (iv) 'the issue previously litigated [was] necessary to support a valid and final judgment on the merits'; and (v) application of the doctrine would not be unfair to the defendant") (quoting *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79-80 (2d Cir. 2019)); *Preston Hollow Capital LLC*, 2020 WL 7365808, at *8-11 (applying collateral estoppel to certain statements made by defendant as established in prior action in the Chancery Court). As the Delaware Court found here, Dr. Goldberg engaged in the Challenged Transactions and breached his fiduciary duty of loyalty to Macrophage and its shareholders (including Navidea).

Further, Dr. Goldberg's "self-help" breach of the August Agreement caused Navidea to suffer damages, including, without limitation, the costs and attorneys' fees incurred in pursuing

and defending against claims arising from Dr. Goldberg's breach, the cost to Navidea of Dr. Goldberg using Macrophage's lawyers for his personal use, and lost time on the patent life of the Licensed IP. (SMF ¶ 73.)

In short, Dr. Goldberg breached his obligations under the August Agreement and those breaches caused Navidea damages. Navidea therefore is entitled to summary judgment on its first claim for breach of contract.

To the extent Dr. Goldberg contends that Navidea cannot prevail on its contractual claim because it did not fully perform under the August Agreement, his argument fails. There can be no dispute that Navidea performed all of its obligations under the August Agreement up until the point that Dr. Goldberg materially breached the contract in February 2019 by engaging in the Challenged Transactions. (SMF ¶ 46.) True, the 23.5 million shares of Navidea common stock were not issued in the form required under the August Agreement. (SMF ¶ 40.) But, as explained in Section II.A, *supra*, Navidea never had that obligation because the condition precedent—Dr. Goldberg's execution of the Transaction Documents—never occurred. And even if Navidea was required to issue the 23.5 million shares, that obligation was excused upon Dr. Goldberg's material breach of the August Agreement in February 2019. *See* Section II.B, *supra*.

## V.     Navidea is entitled to summary judgment on its second claim for breach of the implied covenant of good faith and fair dealing.

Under Delaware law, an "implied covenant of good faith and fair dealing attaches to every contract." *GWO Litig. Tr. v. Sprint Sols., Inc.*, C.A. No. N17C-06-356 PRW, 2018 WL 5309477, at *5 (Del. Super. Oct. 25, 2018) (citing *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441-42 (Del. 2005)). The implied covenant "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872,

888 (Del. Ch. 2009) (internal quotations and citations omitted). The implied covenant is used "to infer contract terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017) (internal citations and quotations omitted).

To succeed on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must establish "(1) a specific implied contractual obligation; (2) breach of that obligation; and (3) resulting damage." *Thomas v. Headlands Tech Principal Holdings, L.P.*, C.A. No. N19C-11-041 EMD CCLD, 2020 WL 5946962, at *6 (Del. Super. Sept. 22, 2020). In determining whether a party has breached the implied covenant, courts look to the parties' expectations at the time they entered the contract. "The implied covenant is 'designed to protect the spirit of an agreement when, without violating an express term of the agreement, one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain.'" *PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1016 (Del. Ch. 2004) (quoting *Chamison v. HealthTrust, Inc.*, 735 A.2d 912, 920 (Del. Ch. 1999), *aff'd*, 748 A.2d 407 (Del. 2000)). A party is liable for breaching the covenant when his "conduct frustrates the overarching purpose of the contract by taking advantage of [his] position to control implementation of the agreement's terms." *Dunlap*, 878 A.2d at 442 (internal citation and quotation omitted). That is precisely what happened here.

It is undisputed that the intention of the parties in entering the August Agreement was that Navidea, Macrophage, and Dr. Goldberg would promptly execute the Transaction Documents and that Dr. Goldberg would immediately start taking action as CEO of Macrophage to advance that company's business interests. (SMF ¶¶ 24-25.) Indeed, the purpose of the August Agreement was to separate Macrophage from Navidea so that Macrophage would be more attractive to investors.

(SMF ¶ 25.) Navidea was reasonably justified in expecting that Dr. Goldberg would cooperate in fulfilling those goals that were the impetus for the August Agreement.

The August Agreement does not expressly account for the possibility that Dr. Goldberg might violate the spirit of the contract and act *against* the best interests of both Navidea and Macrophage. But that is precisely what he did. Dr. Goldberg refused to cooperate to advance the goals of the August Agreement. He acted arbitrarily and unreasonably in refusing to execute the Transaction Documents and reneging on the August Agreement that he did execute. (SMF ¶ 41.) Then, to make matters worse, Dr. Goldberg engaged in impermissible "self-help." (SMF ¶ 70.) He transferred Macrophage's primary asset to M1M2, thereby depriving Navidea of the benefit of its bargain with Dr. Goldberg and Macrophage. (SMF ¶ 55.) In engaging in these Challenged Transactions, Dr. Goldberg violated his fiduciary duty of loyalty to Macrophage and Macrophage's shareholders, including Navidea. (SMF ¶¶ 70-71.) His self-dealing deprived Navidea of the benefit of its bargain under the August Agreement. Further, there can be no dispute that Dr. Goldberg engaged in these actions and that he breached his fiduciary duty of loyalty to Macrophage (and, consequently, to Navidea) because the Delaware Court has already concluded as much following a trial in which Dr. Goldberg had the opportunity to defend his conduct. (SMF ¶¶ 70-71.)  As noted in Section IV, *supra*, Dr. Goldberg is collaterally estopped from arguing otherwise.

Navidea could not have anticipated that Dr. Goldberg would engage in self-dealing to undermine the contract and frustrate the fruits of the bargain that Navidea reasonably expected. At the time they entered the August Agreement, "the parties' expectations on this issue"—that Dr. Goldberg would work for the benefit of Macrophage (not to its detriment)—"were so fundamental that they clearly would not need to negotiate about nor memorialize them." *See GWO Litig. Tr.*,

2018 WL 5309477, at *6 (citing *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032-33 (Del. Ch. 2006)). That is precisely the kind of contractual gap that the implied covenant of good faith and fair dealing is designed to fill. Further, Navidea suffered damages from Dr. Goldberg's breach of the implied covenant of good faith and fair dealing, including costs and attorneys' fees incurred in pursuing and defending against claims arising from Dr. Goldberg's breach, the cost to Navidea of Dr. Goldberg using Macrophage's lawyers for his personal use, and lost time on the patent life of the Licensed IP. (SMF ¶ 73.)**.**

Accordingly, Navidea is entitled to summary judgment in its favor on its second claim against Dr. Goldberg for breach of the implied covenant of good faith and fair dealing.

## VI. Navidea is entitled to summary judgment on its third claim for a declaratory judgment.

Navidea seeks a declaratory judgment that it is entitled to terminate the August Agreement and that performance of any and all of its remaining obligations under that contract are excused because of Dr. Goldberg's material breach. But even if the Court does not find that the August Agreement is terminated, at a minimum, Navidea seeks a declaratory judgment determining and clarifying the parties' remaining rights and obligations so that the parties will not assert new breach claims in the future based on an incorrect interpretation of the contract.

### A. There exists an actual controversy among the parties warranting the issuance of a declaratory judgment.

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To constitute an "actual controversy," the disagreement between the parties "must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in

deciding them." *Jenkins v. United States*, 386 F.3d 415, 417-18 (2d Cir. 2004) (internal citations and quotations omitted).

In determining whether to exercise its discretion to render a declaratory judgment, a court should consider various factors, including:

> (1) whether the [declaratory judgment] will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Insurance Company v. Niagara Transformer Corp.*, 57 F. 4th 85, 99-100 (2d Cir. 2023) (internal citations and quotations omitted).

Here, these factors weigh in favor of this Court exercising jurisdiction and granting a declaratory judgment. The parties agree that the August Agreement was an enforceable contract. (SMF ¶ 27.) But there is a clear controversy, as evidenced by the parties' competing claims in this action, regarding whether alleged material breaches warrant termination of the contract and what, if any, are the obligations of each party. The parties lack clarity regarding their respective rights and duties under the contract. A declaratory judgment interpreting the August Agreement would clarify the legal issues and offer relief from the uncertainty inherent in the contractual language, particularly the language stating that any "failure to execute the Transaction Documents shall not render the provisions of this [August] Agreement invalid." (SMF ¶ 34.) To that end, the declaratory judgment is not being sought for an improper purpose such as a "race to res judicata." Further, a declaratory judgment would not increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court. The August Agreement is governed by Delaware law and courts within this Circuit regularly interpret contracts governed by Delaware

law. *See, e.g.*, *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112 (2d Cir. 2022) (applying Delaware law in breach of contract and breach of implied covenant claim); *Brautigam v. Dahlback*, 598 Fed. Appx. 53 (2d Cir. 2015) (applying Delaware law to demand futility in derivative action). Finally, a declaratory judgment would be an effective remedy that would improve judicial efficiency and judicial economy because clarification of the parties' rights and duties under the August Agreement is likely to eliminate, or at least minimize, disputes regarding the contract going forward.

Indeed, if the Court were to issue an opinion establishing the parties' respective rights and obligations, the controversy giving rise to these proceedings would be resolved. As such, "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). Accordingly, a declaratory judgment is appropriate in this action.

**B.   Summary judgment granting Navidea's requested declaratory judgment is warranted.**

Rule 56 contemplates the use of summary judgment as an appropriate device to "obtain a declaratory judgment," including in cases requiring the interpretation of a contract. Fed. R. Civ. P. 56(a), Committee Notes on Rules—2007 Amendment; *see, e.g.*, *Careful Bus Service, Inc. v. Local 854 Health and Welfare Fund*, 21 Civ. 10472 (LGS), 2022 WL 16856270, at *3 (S.D.N.Y. Nov. 10, 2022) (granting plaintiffs summary judgment on declaratory judgment claim that they do not owe termination premium under collective bargaining agreement); *Compagnia Importazioni Esportazioni Rappresentanze v. L-3 Communications Corp.*, 703 F. Supp. 2d 296, 313 (S.D.N.Y. 2010) (granting plaintiff summary judgment and declaring that defendant owes plaintiff certain commissions under a disputed contract). Because the relevant material facts here are undisputed and the only issue concerns a legal question for the Court (the proper interpretation of the August

Agreement), summary judgment on Navidea's declaratory judgment claim is warranted.

The Court should issue a declaratory judgment that Navidea is entitled to terminate the August Agreement as a result of Dr. Goldberg's material breach. Although each party has partially performed under the August Agreement, that does not justify continued enforcement of the contract. Indeed, as noted previously, under Delaware law, a material breach operates as a termination of the contract and excuses the non-breaching party from any further performance. *See BioLife Sol.*, 838 A.2d at 278; *Carey v. Estate of Myers*, C.A. No. S11C-10-029 MJB, 2015 WL 4087056, at *20 (Del. Super. July 1, 2015) (citing *Preferred Investment Services v. T & H Bail Bonds, Inc.*, C.A. No. 5886 VCP, 2013 WL 3934992, at *17 (Del. Ch. July 24, 2013)).

Here, as set forth in Sections II.B and IV, *supra*, Dr. Goldberg's improper actions, designed to satisfy his own personal pecuniary interests before those of his company and its shareholders, establish that he has materially breached the August Agreement and that Navidea and Macrophage are entitled to terminate the contract and are excused from any further performance.

In sum, there is no genuine dispute as to any material fact on this issue and Navidea is entitled to summary judgment granting its requested declaratory judgment that it may terminate the August Agreement and has no further obligations thereunder.

### C.   At a minimum, the Court should grant summary judgment and issue a declaratory judgment clarifying the rights and obligations of the parties to the August Agreement.

The August Agreement includes a provision stating that "failure to execute the Transaction Documents shall not render the provisions of the August Agreement invalid." (SMF ¶ 34.) It also contains a severability clause, meaning the contract is not void as a whole merely because certain obligations were not satisfied, nor is it unenforceable merely because Dr. Goldberg failed to execute the Transaction Documents. Notwithstanding this language, Dr. Goldberg's material breach warrants summary judgment granting Navidea the declaratory judgment it seeks.

However, even if the Court were to determine that Navidea has not sufficiently established that it is entitled to a declaratory judgment *terminating* the August Agreement, that should not alter the conclusion that summary judgment is warranted and a declaratory judgment clarifying the duties and obligations of the parties is appropriate. There still is no genuine dispute of any material fact regarding the August Agreement or the conduct of the parties in connection with that contract. Interpreting the August Agreement and the parties' rights and duties thereunder remains a question of law and the factors listed by the Second Circuit Court of Appeals in *Admiral Insurance Company* still weigh in favor of a declaratory judgment. Thus, Navidea still requests that the Court indicate which obligations under the August Agreement are severable and remain, even if Dr. Goldberg's actions somehow do not constitute a material breach that permits Navidea to terminate the contract.

## **CONCLUSION**

Accordingly, for the reasons set forth herein, Navidea's and Macrophage's motion for summary judgment should be granted.

Date:   June 1, 2023
        New York, New York

                                Respectfully submitted,

                                /s/ Barry M. Kazan
                                Barry M. Kazan, Esq.
                                Timothy J. Quill, Jr., Esq.
                                MINTZ & GOLD LLP
                                600 Third Avenue, 25th Floor
                                New York, New York 10016
                                Phone: (212) 696-4848
                                Fax:    (212) 696-1231
                                kazan@mintzandgold.com
                                quill@mintzangold.com

                                *Attorneys for Plaintiff /Counterclaim Defendant*
                                *Navidea Biopharmaceuticals, Inc. and*
                                *Third-Party Defendant*
                                *Macrophage Therapeutics, Inc.*