Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
(914) 402-5683
GZimmer@GZimmerLegal.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| *In re* Navidea Biopharmaceuticals Litigation | Case No.: 1:19-cv-01578-VEC |
|---|---|

**MEMORANDUM OF LAW IN SUPPORT OF DR. MICHAEL M. GOLDBERG MD'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF UNDISPUTED FACTS ..... 3

ARGUMENT ..... 7

I. LEGAL STANDARD ..... 7

II. DR. GOLDBERG IS ENTITLED TO SUMMARY JUDGMENT ON NAVIDEA'S CAUSES OF ACTION ..... 8

A. The Court Should Dismiss Navidea's First Cause of Action Because Navidea Cannot Prove That Dr. Goldberg Breached the August Agreement ..... 8

1. Navidea cannot prove that Dr. Goldberg breached the August Agreement by failing to negotiate or execute the Transaction Documents ..... 10

2. Navidea cannot prove that Dr. Goldberg breached the August Agreement by directing the M1M2 Transaction ..... 14

3. Navidea cannot prove that Dr. Goldberg breached the August Agreement by failing to make insurance payments ..... 18

B. The Court Should Dismiss Navidea's Second Cause of Action Because Navidea's Cannot Prove That Dr. Goldberg Breached the Implied Covenant of Good Faith and Fair Dealing ..... 18

1. Navidea cannot prove that Dr. Goldberg breached the implied covenant of good faith and fair dealing by failing to negotiate or execute the Transaction Documents ..... 20

2. Navidea cannot prove that Dr. Goldberg breached the implied covenant of good faith and fair dealing by transferring Macrophage's assets to M1M2 ..... 21

C. The Court Should Dismiss Navidea's Third Cause of Action ..... 22

III. DR. GOLDBERG IS ENTITLED TO SUMMARY JUDGMENT IN HIS FAVOR ON THE ISSUE OF LIABILITY FOR HIS FIRST AND SECOND COUNTS ..... 23

IV. DR. GOLDBERG SHOULD BE AWARDED HIS ATTORNEYS' FEES AND COSTS ..... 25

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Affy Tapple, LLC v. ShopVisible, LLC*,
No. N18C-07-216, 2019 Del. Super. LEXIS 867 (Del. Super. Ct. Mar. 7, 2019)................ 20

*All. Data Sys. Corp. v. Blackstone Cap. Partners V L.P.*,
963 A.2d 746 (Del. Ch.), *aff'd*, 976 A.2d 170 (Del. 2009)................................................ 19

*Allen v. El Paso Pipeline Grp. Co.*,
113 A.3d 167 (Del. Ch. 2014)............................................................................................ 15

*AssuredPartners of Va., LLC v. Sheehan*,
No. N19C-02-175, 2020 Del. Super. LEXIS 264 (Del. Super. Ct. May 29, 2020)............... 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................................................. 7

*Chamison v. Healthtrust, Inc.*,
735 A.2d 912 (Del. Ch. 1999)....................................................................................... 19, 20

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
232 F.3d 153 (2d Cir. 2000)................................................................................................. 7

*Cox Communs., Inc. v. T-Mobile U.S., Inc.*,
273 A.3d 752 (Del. 2022)................................................................................................... 14

*Crewe v. Rich Dad Educ., LLC*,
884 F. Supp. 2d 60 (S.D.N.Y. 2012)................................................................................... 22

*Dunlap v. State Farm Fire & Cas. Co.*,
878 A.2d 434 (Del. 2005)............................................................................................ 19, 22

*E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.*,
498 A.2d 1108 (Del. 1985)................................................................................................... 9

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
702 A.2d 1228 (Del. 1997)............................................................................................. 9, 10

*First State Constr., Inc. v. Thoro-Good's Concrete Co.*,
No. 08C-12-041, 2010 Del. Super. LEXIS 174 (Del. Super. Ct. May 3, 2010).. 10, 15, 20, 21

*Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*,
84 F.3d 91 (2d Cir. 1996)....................................................................................... 7

*Glenfed Fin. Corp., Com. Fin. Div. v. Penick Corp.*,
647 A.2d 852 (N.J. App. Div. 1994)...................................................................... 19

*GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*,
36 A.3d 776 (Del. 2012)...................................................................................... 8, 12

*Greentech Consultancy Co., WLL v. Hilco IP Servs., LLC*,
No. N20C-07-052, 2022 Del. Super. LEXIS 188 (Del. Super Ct. May 11, 2022)................ 14

*Hoechst Celanese v. Nat'l Union Ins.*,
623 A.2d 1133 (Del. Sup. Ct. 1992)...................................................................... 22

*Interim Healthcare, Inc. v. Spherion Corp.*,
884 A.2d 513 (Del. Super. Ct. 2005)............................................................ 10, 11, 16

*Jenkins v. Xpresspa Grp., Inc.*,
No. 19-1774, 2020 U.S. Dist. LEXIS 232342 (S.D.N.Y. Dec. 10, 2020).............................. 7

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
23 F. Supp. 3d 344 (S.D.N.Y. 2014)...................................................................... 16

*Lorillard Tobacco Co. v. Am. Legacy Found.*,
903 A.2d 728 (Del. 2006)....................................................................................... 9

*Macrophage Therapeutics, Inc v. Michael M. Goldberg M.D.*
(C.A. No. 2019-0137-JRS)...................................................................................... 16

*Murfey v. WHC Ventures, LLC*,
236 A.3d 337 (Del. 2020).................................................................................. 12, 15

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010)................................................................................ 19, 20

*Paul v. Deloitte & Touche, LLP*,
974 A.2d 140.......................................................................................................... 8, 9

*Renco Group, Inc. v. MacAndrews AMG Holdings LLC*,
No. 7668-VCN, 2015 Del. Ch. LEXIS 25 (Del. Ch. Jan. 29, 2015)................................... 22

*Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*,
616 A.2d 1192 (Del. 1992)........................................................................................ 9

*Salamone v. Gorman*,
106 A.3d 354 (Del. 2014)........................................................................................ 12

*Scott v. Harris*,
550 U.S. 372 (2007) .... 7

*Selevan v. N.Y. Thruway Auth.*,
711 F.3d 253 (2d Cir. 2013) .... 7

*SIGA Techs., Inc. v. PharmAthene, Inc.*,
67 A.3d 330 (Del. 2013) .... 11

*Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr.*,
No. 12875, 2019 Del. Ch. LEXIS 178 (Del. Ch. May 22, 2019) .... 20

*Toretto v. Donnelley Fin. Sols., Inc.*,
583 F. Supp. 3d 570 (S.D.N.Y. 2022) .... 22

*Wilgus v. Salt Pond Inv. Co.*,
498 A.2d 151 (Del. Ch. 1985) .... 19

*Winshall v. Viacom Int'l, Inc.*,
55 A.3d 629 (Del. Ch. 2011) .... 19

**RULES**

Federal Rule of Civil Procedure 56(a) .... 7

Dr. Michael M. Goldberg, M.D. ("Dr. Goldberg") respectfully submits this Memorandum of Law in support of his Motion for Summary Judgment ("Motion") seeking an order (1) dismissing Navidea Biopharmaceuticals, Inc.'s ("Navidea") remaining claims against him; (2) granting Dr. Goldberg summary judgment with respect to liability on his counterclaim against Navidea and third-party claim against Macrophage Therapeutics, Inc. ("Macrophage"); (3) requiring Navidea and Macrophage to perform certain obligations under the August 14, 2018 agreement (the "August Agreement"); and (4) awarding Dr. Goldberg attorney fees and all other relief requested in the proposed form of order submitted herewith.

## PRELIMINARY STATEMENT

This dispute arises out of the August Agreement between Navidea, Macrophage, and Dr. Goldberg. Navidea develops medical diagnostic products. Macrophage is a Navidea subsidiary focusing on development of therapeutics. Dr. Goldberg is a renowned scientist who ran Navidea as its CEO and Chairman and was its largest investor. He established Navidea's subsidiary, Macrophage, to develop therapeutic products for treating devastating diseases. To achieve this mission, Dr. Goldberg provided early funding to Macrophage, helped it seek outside investors, and served as its CEO and a director.

In the lead-up to the August Agreement, Navidea and Macrophage faced significant issues that would jeopardize both Navidea's and Macrophage's businesses – potential investors in Macrophage expressed concerns about Navidea's control of Macrophage, and the New York Stock Exchange threatened to delist Navidea based on shareholder equity concerns, among others. The August Agreement was the parties' solution to those problems. Under its terms, Dr. Goldberg agreed to resign as CEO from Navidea and forgive over $2,000,000 in debt owed to him by Navidea. In return, Navidea agreed to, *inter alia*, issue Dr. Goldberg 23.5 million shares of Navidea common stock, and Macrophage agreed to issue Dr. Goldberg 5% of its Super Voting Common

Stock. The August Agreement included all material terms of the parties' deal and made clear that it was fully binding, although the parties contemplated that more formal transaction documents might be executed at a later date.

After signing the August Agreement, the parties tried but failed to agree on more formal transaction documents. That did not dissuade Dr. Goldberg from performing all of his contractual obligations. Navidea and Macrophage, however, took a different path; they refused to comply with the provisions of the August Agreement requiring them to issue shares to Dr. Goldberg, and instead, the Companies filed coordinated lawsuits against Dr. Goldberg in both Delaware and in this Court over the same facts.

In the present case, Navidea's principal claim has been that Dr. Goldberg breached the August Agreement by (1) failing to negotiate and sign more formal post-Agreement transaction documents, (2) conducting a transaction that resulted in his receipt of equity in a Macrophage subsidiary, and (3) refusing to make payments to Navidea's health insurance provider to maintain COBRA coverage after his separation. But each of those claims fails on the plain language of the August Agreement – the Agreement ***does not*** require negotiation or execution of more formal transaction documents; the Agreement ***does not*** restrict issuances of equity in a Macrophage ***subsidiary***; and the Agreement ***does not*** require Dr. Goldberg to make the payments to continue his health insurance.

Navidea's first two breach theories suffer from other fatal flaws. As to its first theory, the undisputed record shows that Dr. Goldberg ***did*** negotiate post-Agreement transaction documents in good faith. And the doctrine of issue preclusion bars Navidea from proving damages – an essential element of its breach claim – because the Delaware Court of Chancery issued a post-trial

decision finding that the same transaction that Navidea complains about here caused no harm. Thus, the Court should grant summary judgment dismissing Navidea's breach of contract claim.

Navidea's other remaining claims fare no better. In an attempt to compensate for the lack of support of its breach of contract claim in the text of the August Agreement, Navidea has asked this Court to read into the Agreement a requirement to sign formal transaction documents and a restriction on receiving shares in a Macrophage subsidiary. But Delaware law – which governs this dispute – prohibits asserting claims for breach of the implied covenant of good faith and fair dealing that mirror breach of contract claims. Implying those terms would also clash with both the plain text of the August Agreement and the parties' clear intent. And the same flaws that plague Navidea's first two breach theories plague its two implied covenant theories. Thus, the Court should grant summary judgment dismissing Navidea's implied covenant claim.

Finally, because Navidea cannot sustain either of its only two remaining substantive claims against Dr. Goldberg, the Court should also dismiss Navidea's Declaratory Judgment Act claim.

As to Dr. Goldberg's affirmative claims, the plain text of the August Agreement requires Navidea and Macrophage to issue shares to Dr. Goldberg, and the undisputed record shows that they did not. Thus, the Court should grant summary judgment as to liability on Counts I and II asserted in Dr. Goldberg's Answer, Counterclaims and Third-Party Complaint ("Answer"), hold a trial on damages, and award Dr. Goldberg attorneys' fees and costs, along with other relief requested in his proposed order.

**STATEMENT OF UNDISPUTED FACTS**

Navidea is a publicly traded company that develops medical diagnostic products. (Defendant's Statement of Material Facts ("DSOF") ¶¶ 1-2.) Dr. Goldberg was a member of Navidea's board of directors between 2013 and August 14, 2018, acted as its CEO between 2016 and August 14, 2018, and was also a major investor. (*Id.* ¶¶ 3-5.) Prior to the execution of the

August Agreement, Dr. Goldberg held certain debt owned by Navidea, in an amount in excess of $2,000,000. (*Id.* ¶ 35.)

Navidea possessed a license to use certain intellection property (the "Licensed IP") owned by the University of California, San Diego, to develop medical diagnostic products. (*Id.* ¶ 6.) In or about 2015, Navidea expanded the scope of its license to include the right to use the Licensed IP to develop therapeutic products and created its subsidiary, Macrophage, to pursue that goal. (*Id.* ¶¶ 8-9). Navidea then entered into a sublicense (the "Sublicence") which, with a single exception, gave Macrophage the exclusive right to use the Licensed IP to develop therapeutic products in exchange for 100% of Macrophage's common stock. (*Id.* ¶¶ 21-23.)

Macrophage was initially funded through the purchase of preferred stock by Dr. Goldberg and a non-party investor, Platinum Montour Life Sciences LLP ("Platinum"). (*Id.* ¶¶ 10-11.) Dr. Goldberg operated Macrophage as its CEO and was a member of Macrophage's board of directors. (*Id.* ¶¶ 14-15.) From its inception until around March 2019, Macrophage pursued scientific research in an effort to develop therapeutic products using the Licensed IP. (*Id.* ¶¶ 17, 20.)

By the summer of 2018, it became clear to Dr. Goldberg and Navidea's board of directors that Navidea's control of Macrophage (through its ownership of all common stock) was an impediment to attracting outside investors in Macrophage. (*Id.* ¶¶ 24-31.)

In the summer of 2018, Navidea also received an early warning letter from the New York Stock Exchange ("NYSE"), which operated the securities exchange on which Navidea was traded, stating that Navidea was at risk of being delisted based on several factors, including that it did not have sufficient "shareholder equity" on its books. (*Id.* ¶¶ 32-37.)

To address both the funding impediment at Macrophage and the shareholder equity portion of the NYSE's concerns, Dr. Goldberg, Navidea, and Macrophage agreed to, among other items:

(i) separate Dr. Goldberg from Navidea; (ii) remove Navidea's control of Macrophage and give Dr. Goldberg voting control of Macrophage; and (iii) increase Navidea's shareholder equity by eliminating the debt owed to Dr. Goldberg by Navidea. (*Id.* ¶¶ 38-42.) The parties' agreement was embodied in the August Agreement, which was executed on August 14, 2018. (Declaration of Gregory Zimmer, Ex. D (hereinafter "Zimmer Decl.").) Among other obligations, the August Agreement required:

- Navidea to issue to Dr. Goldberg 23.5 million shares of Navidea common stock pursuant to Regulation D of the Securities Act of 1933 ("Reg. D") (DSOF ¶ 60);
- Navidea to make severance payments to Dr. Goldberg and continue Dr. Goldberg's health insurance coverage for 16 months by making COBRA payments (*id.* ¶ 97);
- Navidea to provide funding of up to $750,000 to Macrophage for a period of 6 months (*id.* ¶ 101);
- Macrophage to issue to Dr. Goldberg Super Voting Common Stock equal to 5% of Macrophage's outstanding shares, which would have 20 votes per share and give Dr. Goldberg voting control of Macrophage (*id.* ¶ 82);
- Dr. Goldberg to surrender his preferred shares of Macrophage in exchange for the consideration provided for in the Agreement (*id.* ¶ 106); and
- Dr. Goldberg to waive his right to collect the debt owed to him by Navidea and resign as an officer and director of Navidea (*id.* at ¶¶ 109, 114).

The August Agreement is a fully binding and enforceable contract. (Zimmer Decl. Ex. A ¶ 93.) Thus, while the August Agreement contemplated that additional, more detailed documents ("Transaction Documents") might be executed, it did not require any party to negotiate the terms of, or execute, Transaction Documents, and specifically provides that the terms of the agreement remain valid if Transaction Documents are never executed. (DSOF ¶¶ 117-22.)

After the August Agreement was executed, Dr. Goldberg (on his own behalf and on behalf of Macrophage) negotiated extensively with Navidea's counsel regarding potential Transaction

Documents, but the parties were not able to agree on terms. (*Id.* ¶¶ 124-29.) Consequently, Transaction Documents were never executed. (*Id.*)

Immediately after the August Agreement was executed, Dr. Goldberg resigned as CEO and as a board member of Navidea. (*Id.* ¶¶ 115-16.) At the same time, Navidea began making severance payments to Dr. Goldberg and paying amounts necessary to maintain COBRA coverage (*id.* ¶¶ 99-100), began to provide funding to Macrophage pursuant to the Agreement (*id.* ¶ 103), and informed NYSE that the debt owed to Dr. Goldberg was cancelled (Zimmer Decl. Ex. O at 4). But Navidea failed to perform several other of its obligations under the Agreement, including issuing 23.5 million shares of Navidea common stock to Dr. Goldberg. (DSOF ¶¶ 63-72.)

On top of Navidea's failure to issue Dr. Goldberg those shares, Macrophage did not – and has never – issue[d] any Super Voting Common Stock to Dr. Goldberg, thereby depriving him of his contractual right to gain voting control of Macrophage. (*Id.* ¶ 89.) In February 2019, Dr. Goldberg sought to remedy Macrophage's breach of the Agreement by causing (1) Macrophage to form a subsidiary, M1M2, Inc. ("M1M2"), (2) Macrophage to transfer the Sublicense to M1M2 in exchange for 100% of M1M2's common stock, and (3) M1M2 to issue to Navidea 95% of its common stock and to issue to him 5% of its common stock as Super Voting Common Stock, with voting rights identical to those provided for in the August Agreement (the "M1M2 Transaction"). (*Id.* ¶¶ 131-32, 134-35.)

After receiving notice of the M1M2 Transaction, Navidea's board of directors instructed its counsel to sue Dr. Goldberg and M1M2 on behalf of Macrophage in the Delaware Court of Chancery (the "Delaware Action"). (*Id.* ¶¶ 137-39.) The Chancery Court held a three-day bench trial, at which the following witnesses testified for Macrophage: (i) CEO of Navidea and Macrophage, Jed Latkin; (ii) two of Navidea's board members, Michael Rice and Claudine Bruck,

who were also Macrophage board members at Navidea's request and direction; (iii) Navidea's attorney, William Mower, who negotiated and drafted the August Agreement and negotiated potential Transaction Documents with Dr. Goldberg; and (iv) a Navidea employee, Joel Kaufman, who had been assigned to Macrophage at the relevant time. The Chancery Court made several post-trial findings, among which the most important and relevant to this case was that the M1M2 Transaction did not cause any damages to Macrophage. (*Id.* ¶ 147.)

## ARGUMENT

### I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jenkins v. Xpresspa Grp., Inc.*, No. 19-1774, 2020 U.S. Dist. LEXIS 232342, at *6-7 (S.D.N.Y. Dec. 10, 2020) (Caproni, J.) (quoting *Celotex Corp.*, 477 U.S. at 322). As the record in this case reflects, Dr. Goldberg is entitled to summary judgment because Navidea and Macrophage have produced no "evidence sufficient to permit a reasonable juror to return a verdict in" their favor on an "essential element" of the contested claims. *See Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013); *Jenkins*, 2020 U.S. Dist. LEXIS 232342, at *7 (Caproni, J.) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (explaining summary judgment is appropriate if record could not lead a rational trier of fact to find for nonmoving party).

In contract disputes, summary judgment is appropriate when (1) "the language of the contract is unambiguous, such that reasonable persons could not differ as to its meaning," or (2) despite ambiguity, "extrinsic evidence of the parties' intent is so one-sided that it does not raise a genuine issue of fact for trial." *Jenkins*, 2020 U.S. Dist. LEXIS 232342, at *7 (quoting *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir. 1996); *see*

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000).

## II. DR. GOLDBERG IS ENTITLED TO SUMMARY JUDGMENT ON NAVIDEA'S CAUSES OF ACTION

Navidea's First and Second Causes of Action are premised on Navidea's claims that Dr. Goldberg breached the August Agreement and the duty of good faith and fair dealing implied in it by (i) refusing to negotiate and sign certain Transaction Documents proposed by Navidea after the August Agreement was signed (Zimmer Decl. Ex. A ¶¶ 94-95, 109), (ii) issuing himself shares in M1M2 (*id.* ¶¶ 96-97), and (iii) failing to make payments to Navidea's health insurance provider to continue his health insurance coverage (*id.* ¶ 98). However, pursuant to the plain language of the August Agreement, Dr. Goldberg was not obligated to take the actions that Navidea claims he should. Nor does it prohibit Dr. Goldberg from taking those actions that Navidea insists have breached the Agreement. Rather, in nearly all instances, Navidea's factual allegations regarding Dr. Goldberg's conduct that allegedly breached the August Agreement are belied by the undisputed evidence developed through discovery. Finally, after trial in the Delaware Action, the Chancery Court made factual findings that preclude several of Navidea's alleged bases for its claims.

Discovery has concluded and Navidea has come up short with any evidence to show that there are genuine issues of material fact on its claims for breach of contract and breach of duty of good faith and fair dealing. Because those claims cannot survive summary judgment scrutiny, they must be dismissed.

### A. The Court Should Dismiss Navidea's First Cause of Action Because Navidea Cannot Prove That Dr. Goldberg Breached the August Agreement

When interpreting a contract, courts "give priority to the parties' intention as reflected in the four corners of the agreement." *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*,

36 A.3d 776, 779 (Del. 2012); *see also Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009[1] In that regard, "[i]n upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985). Contracts will be interpreted according to their clear and unambiguous terms and accorded with their ordinary meaning. *Paul*, 974 A.2d at 145 (citing *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)); *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)). "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) (citing *Rhone-Poulenc*, 616 A.2d at 1196).

"A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." *Rhone-Poulenc*, 616 A.2d at 1196. Instead, an ambiguity exists "[w]hen the provisions in controversy are fairly susceptible of different interpretations or may have two or more different meanings." *Eagle Indus.*, 702 A.2d at 1232. When an ambiguity as to a particular term exists, "the interpreting court must look beyond the language of the contract to ascertain the parties' intentions." *Id.* (citations omitted).

As the Delaware Supreme Court has advised,

> [i]f a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity. But when there is uncertainty in the meaning and application of contract language, the reviewing court must consider the evidence offered in order to arrive at a proper interpretation of contractual terms. This task may be accomplished by the summary judgment procedure in certain cases where the

---

[1] Delaware law governs all claims arising out of the August Agreement. (*See* August Agreement, p. 2, Miscellaneous ("This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to its conflicts-of-law provisions")).

> moving party's record is not prima facie rebutted so as to create issues of material fact.

*Id.* at 1232-33.

Under Delaware law, in a breach of contract action, the plaintiff has the burden to prove by a preponderance of the evidence that: (1) a contractual obligation existed; (2) there was a breach of that obligation; and (3) damages resulted from the breach. *See Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct. 2005); *First State Constr., Inc. v. Thoro-Good's Concrete Co.*, No. 08C-12-041, 2010 Del. Super. LEXIS 174, at *7-8 (Del. Super. Ct. May 3, 2010). In its First Cause of Action for breach of contract, Navidea alleges that Dr. Goldberg breached the August Agreement by (i) refusing to negotiate and sign certain draft Transaction Documents proposed by Navidea after the August Agreement was signed (Zimmer Decl. Ex. A ¶¶ 94-95), (ii) issuing to himself shares in a subsidiary of Macrophage (*id.* ¶¶ 96-97), and (iii) failing to make payments to Navidea's health insurance provider to continue his health insurance coverage (*id.* ¶ 98). As set forth below, Navidea cannot meet its burden of proving any of these breaches.

***1. Navidea cannot prove that Dr. Goldberg breached the August Agreement by failing to negotiate or execute the Transaction Documents***

In support of its breach of contract claim, Navidea asserts that "[t]he August Agreement required, among other things, that Goldberg *enter into* Transaction Documents which contain 'terms, conditions, representations and warranties of Navidea, Macrophage and Goldberg customary for transactions of the type set forth in [the August Agreement]'" (Zimmer Decl. Ex. A ¶ 94 (emphasis added)), and that Dr. Goldberg "refused to provide comments on the Draft Documents or *enter into* Transaction Documents." (*Id.* ¶ 95 (emphasis added).) However, these purported contractual obligations cannot find support in the text of the August Agreement itself. In a paragraph headed "Transaction Documents," the August Agreement provides:

> The Transaction Documents[2] shall contain other terms, conditions, representations and warranties of Navidea, MT and Goldberg customary for transactions of the type set forth in this Agreement. Maslon LLP, counsel to Navidea's Special Committee, shall prepare initial drafts of the Transaction Documents. Upon execution, the terms of such Transaction Documents shall supersede the terms set forth herein, but *any subsequent failure to execute the Transaction Documents shall not render the provisions of this Agreement invalid*.

(Zimmer Decl. Ex. D. at 2, "Transaction Documents" (emphasis added)). There is no dispute that the August Agreement is a binding and enforceable contract. (*See id.* Ex. A ¶ 93 ("The August Agreement is a valid and binding contract").)[3] As stated *supra*, on a breach of contract claim, Delaware law requires Navidea to prove that an affirmative duty exists under the August Agreement and that Dr. Goldberg failed to perform such a duty. *See Interim Healthcare*, 884 A.2d at 548.

Based on the unambiguous language of the aforementioned provision, the Agreement *did not* require *anyone*, let alone Dr. Goldberg, to sign Transaction Documents. In fact, not only did the August Agreement not obligate Dr. Goldberg to execute additional Transaction Documents, it specifically provides that the parties are *not* required to do so. On this point, each of Navidea's witnesses admitted at their respective depositions that Dr. Goldberg had no obligation to execute any Transaction Documents after signing the August Agreement. (DSOF ¶¶ 117-21.) Having bargained for the terms of the Agreement, Navidea cannot, in this litigation, ask this Court to impose additional obligations on Dr. Goldberg outside the four corners of the contract. *See Murfey*

---

[2] The capitalized term "Transaction Documents" is not defined in the August Agreement. *See generally*, August Agreement.

[3] And even if the August Agreement were merely a preliminary agreement, based on the language of the Agreement, it would be a fully binding Type I preliminary agreement under Delaware law, which makes clear there is no obligation of the parties to negotiate additional documents in good faith, much less execute additional documents. *See SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 349 n.82 (Del. 2013) (finding that a binding Type I agreement reflects mutual assent "to all points that require negotiations," but on the other hand, a Type II agreement does not bind the parties, but requires them to engage in future good faith negotiations).

*v. WHC Ventures, LLC*, 236 A.3d 337, 350 (Del. 2020) ("[i]mplying terms that the parties did not expressly include risks upsetting the economic balance of rights and obligations that the contracting parties bargained for in their agreement"); *GMG Cap. Invs.*, 36 A.3d at 779 (explaining that the parties are bound by a contract's four corners); *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014) (noting that courts must give effect to the intent of the parties as stated in the contract's terms).

Likewise, the August Agreement does not expressly require any party to provide comments on, or negotiate the contents of, proposed Transaction Documents. Indeed, while the Agreement contemplated that the parties might execute additional Transaction Documents that would "contain other terms, conditions, representations and warranties of Navidea, MT and Goldberg," the provision unambiguously provides that "any subsequent failure to execute the Transaction Documents shall not render the provisions of this Agreement invalid." (Zimmer Decl. Ex. D, "Transaction Documents.") While Dr. Goldberg continued to negotiate in good faith for months after the Agreement was executed, he could not reasonably come to an agreement with Navidea on additional terms. (*See infra*., DSOF ¶ 126-27.) Notwithstanding such efforts, because the express terms of the August Agreement do not require any party to negotiate, provide comments, or execute any Transaction Documents, as a matter of law, summary judgment is appropriate on Navidea's breach of contract claim in this context.

Even assuming that an obligation to negotiate Transaction Agreements is somehow implied in the August Agreement—which it is not—the undisputed evidence clearly shows that Dr. Goldberg *did* provide comments and negotiate extensively with Navidea's counsel, William Mower, who represented the Special Committee of the Navidea board of directors and was responsible for negotiating the August Agreement, on the contents of the proposed Transaction

Documents. (DSOF ¶ 43.) The undisputed facts show that immediately after the August Agreement was executed, Dr. Goldberg began asking Navidea when he would receive proposed drafts of Transaction Documents. (Zimmer Decl. Ex. T.) Although the Agreement was executed on August 14, 2018, Mr. Mower did not provide Dr. Goldberg with proposed drafts until September 7, 2018. (Zimmer Decl. Ex. U; Ex. R at 249:2-9.)

Indeed, within hours of receiving the proposed drafts, Dr. Goldberg reviewed those proposals, rejected certain proposed drafts as unnecessary or inconsistent with the terms of the August Agreement, and provided initial comments on other drafts. (*Id.* Ex. V.) Dr. Goldberg also agreed to provide more detailed comments on remaining drafts after the Rosh Hashana holiday concluded. (*Id.*) Thereafter, Dr. Goldberg and Mr. Mower engaged in extensive discussions regarding the implementation of the August Agreement and potential Transaction Documents. (DSOF ¶ 127.) Dr. Goldberg exchanged e-mails and telephone calls with Mr. Mower on an almost daily basis regarding the terms and contents of potential Transaction Documents. (*Id.*) Dr. Goldberg also communicated with Navidea director and Special Committee member Michael Rice multiple times after receiving drafts of proposed Transaction Documents. (*Id.*)

Dr. Goldberg continuously discussed with representatives of Navidea the implementation of the August Agreement and proposed Transaction Documents until Mr. Mower informed Dr. Goldberg that he and Navidea would no longer negotiate directly with Dr. Goldberg, but would only negotiate further if he retained an attorney. (Zimmer Decl. Ex. FF.) However, even after that unilateral attempt to cut off negotiations, Dr. Goldberg continued to exchange correspondence with Mr. Mower and Mr. Rice in an effort to compromise on additional terms. (*Id.* Ex. R at 353:2-354:9.) There is simply no evidence in the record that Dr. Goldberg was not negotiating in good faith; the fact that Navidea and its representatives did not agree with the terms proposed by Dr.

Goldberg, or appreciate Dr. Goldberg's negotiation style, does not negate the fact that Dr. Goldberg willingly and continuously engaged in discussions with Navidea. *See Cox Communs., Inc. v. T-Mobile U.S., Inc.*, 273 A.3d 752, 769 (Del. 2022) (explaining that indicia of bad faith include abandoning negotiations or renouncing the deal); *Greentech Consultancy Co., WLL v. Hilco IP Servs., LLC*, No. N20C-07-052, 2022 Del. Super. LEXIS 188, at *38-39 (Del. Super Ct. May 11, 2022) (same). Accordingly, even if the August Agreement imposed a duty to negotiate and to do so in good faith, based on the undisputed facts, no reasonable jury could find that Dr. Goldberg's conduct would not satisfy such duty.

Thus, because no issues of material fact exist, Dr. Goldberg is entitled to summary judgment on Navidea's breach of contract claim on the basis that Dr. Goldberg failed to negotiate or execute Transaction Documents.

***2. Navidea cannot prove that Dr. Goldberg breached the August Agreement by directing the M1M2 Transaction***

The August Agreement provides, in a paragraph headed "MT Super Voting Shares":

> MT will issue to Goldberg shares of MT Super Voting Common Stock in a number equal to 5.0% of the outstanding shares of MT. Except as otherwise required by law, the holders of MT Super Voting Common Stock shall be entitled to notice of any stockholders meeting and to vote as a single class with holders of the Common Stock upon any matter submitted to the stockholders for a vote. In that regard, each holder of MT Super Voting Common Stock shall have 20 votes for each full share of MT Common Stock into which the shares of MT Super Voting Common Stock would be convertible on the record date for the matter to be voted on. Notwithstanding the foregoing, until such time as MT shall have obtained aggregate gross proceeds of $10 million in one or more financings after the Closing Date, the vote or written consent of Navidea shall be required to issue to Goldberg or any of his affiliates any equity or rights to purchase equity, which vote or consent shall not be unreasonably withheld. Navidea will be entitled to appoint one observer to MT's Board of Directors, who will receive all notices of board meetings, written consents and board materials in advance of such meetings.

(Zimmer Decl. Ex. D., "Super Voting Shares.")

Navidea alleges that Dr. Goldberg breached this provision of the Agreement by directing the M1M2 Transaction (*i.e.*, causing Macrophage to create M1M2, transferring to M1M2 certain intellectual property licensed to Macrophage by Navidea, and issuing to himself Super Voting Common Stock in M1M2 equal to 5% of the outstanding shares of M1M2). (Zimmer Decl. Ex. A ¶¶ 96-97.) The Court should dismiss this breach of contract claim for at least two reasons.

*First*, the August Agreement does not prohibit (or otherwise mention) issuing shares of Macrophage's affiliates or subsidiaries; it only prohibits issuing equity in Macrophage directly. (Zimmer Decl. Ex. D ("[Until such time as ***MT*** shall have obtained aggregate gross proceeds of $10 million in one or more financings after the Closing Date, the vote or written consent of Navidea shall be required to issue to Goldberg or any of his affiliates any equity or rights to purchase equity") (emphasis added)). Because the language of that provision is plain and unambiguous, reading such a prohibition into the Agreement would violate basic principles of contract interpretation. *See Murfey*, 236 A.3d at 350 (explaining implying contractual terms risks upsetting terms of parties' bargain); *Allen v. El Paso Pipeline Grp. Co.*, 113 A.3d 167, 183 (Del. Ch. 2014) ("The most obvious reason a term would not appear in the parties' express agreement is that the parties simply rejected that term *ex ante* when they articulated their contractual rights and obligations.).

Indeed, the broader context of the August Agreement proves that the omission of any restriction on issuing shares in Macrophage's affiliates or subsidiaries was intentional—while the same sentence of the August Agreement that prohibits issuing Macrophage's equity specifically discusses affiliates of Dr. Goldberg, the parties did not agree to restrict issuances of shares in Macrophage's affiliates or subsidiaries. Thus, because (1) the restriction in the Super Voting

Shares provision applies only to issuances of equity in Macrophage directly and, (2) at most, the M1M2 Transaction resulted in Dr. Goldberg having a fleeting ownership interest in M1M2 (a Macrophage *subsidiary*), the Court need not reach beyond the plain language of the August Agreement to find that Navidea cannot prove that Dr. Goldberg breached the August Agreement by directing the M1M2 Transaction.[4]

*Second*, Navidea cannot prove another essential element of its breach of contract claim – that it suffered damages as a result of the M1M2 Transaction, *Interim Healthcare,* 884 A.2d at 548 – because the Delaware Court of Chancery has issued a final judgment finding that the M1M2 Transaction caused no damages to Macrophage. Navidea cannot now re-litigate this issue.[5] Macrophage has already pursued Dr. Goldberg for damages allegedly incurred by it as a result of the M1M2 Transaction. In fact, Navidea itself acknowledges in its Amended Complaint that the "other [allegedly] materially disturbing conduct" of Dr. Goldberg regarding M1M2 "is the subject of a separate action by Macrophage against Goldberg in the Delaware Chancery Court: *Macrophage Therapeutics, Inc v. Michael M. Goldberg M.D.*, (C.A. No. 2019-0137-JRS) [the Delaware Action]. The conduct challenged in that action includes Goldberg's unauthorized transfer of all or substantially all of Macrophage's assets, including rights under a license agreement with Navidea, to an entity formed and controlled by Goldberg." (Zimmer Decl. Ex. A ¶ 15.)

4 The Delaware Court of Chancery did not address whether the M1M2 transaction breached the August Agreement. (*See* DSOF ¶ 140.)

5 Issue preclusion clearly applies here, because all four elements are satisfied: (i) the issues of both proceedings must be identical; (ii) the relevant issues were actually litigated and decided in the prior proceeding; (iii) there must have been full and fair opportunity for the litigation of the issues in the prior proceeding; and (iv) the issues were necessary to support a valid and final judgment on the merits. *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 359 (S.D.N.Y. 2014). As demonstrated *infra*, the issue of whether the M1M2 Transaction caused any damages to Macrophage presented in the Delaware Action is identical in this case, and that issue was fully and fairly litigated by the same parties in both cases. Additionally, the issue of damages was central to the final judgment issued by the Delaware Court of Chancery.

The Delaware Action was initiated by Navidea's board of directors as part of a two-pronged litigation strategy, which also includes the instant action (*id.* Ex. MM), was prosecuted by the same attorneys representing Navidea (and Macrophage) in this action (*id.* Ex. C at 2:1-8) and the witnesses for Macrophage in Delaware were Navidea's CEO/CFO/COO, Jed Latkin (who is also the CEO of Macrophage), Navidea directors Claudine Bruck and Mr. Rice (who are also Macrophage directors), Joel Kaufman, who was a Navidea employee at all relevant times, (*id.* at 45:3-24, 747:6-7), Mark Greene, who was a Navidea board member until the August Agreement was signed (*id.* at 636:2-10) and Navidea's counsel, William Mower, who negotiated and drafted the August Agreement on behalf of Navidea. (*Id.* at 709:2-11.) Despite this lineup of Navidea witnesses, Navidea's counsel was not able to present one shred of evidence that the M1M2 Transaction was ever implemented, had any effect, or caused any damages. (*Id.* Ex. NN at *46.)

Rather, binding here, the Delaware Court of Chancery found that the M1M2 Transaction was merely a paper transaction that had no effect on Macrophage or its operations or business. Dr. Goldberg testified without contradiction that M1M2 did not take any action after its formation, (*id.* Ex. C at 449:10-17) and none of Navidea's witnesses presented any evidence to the contrary. (*Id.* Ex. NN. at *46.) In fact, Latkin, who was the CEO, CFO and COO of Navidea *and* the CEO of Macrophage, testified that he could not find any evidence of any action taken by, or on behalf of, M1M2 after its formation. (*Id.* at 51.) Furthermore, after the M1M2 Transaction occurred, Navidea retained its 99.8% ownership interest in Macrophage (*id.* Ex. A ¶ 11), and similar to the Delaware Action, Navidea has not presented any quantifiable damages in this case.

In sum, because Macrophage suffered no damages from the M1M2 Transaction, and because that Transaction did not affect Navidea's interest in Macrophage, it could not have caused any damages to Navidea. Under these circumstances, Navidea cannot prove its breach of contract

cause of action based on the M1M2 Transaction, and Dr. Goldberg is entitled to summary judgment on that claim.

#### *3. Navidea cannot prove that Dr. Goldberg breached the August Agreement by failing to make insurance payments*

Finally, cannot prove that Dr. Goldberg breached the August Agreement by failing to make payments to Navidea's insurance carrier, (Zimmer Decl. Ex. A ¶ 98), because the August Agreement provides that "*Navidea will pay* the costs to continue Goldberg's existing health coverage for a period of 16 months after the Closing Date, *by paying the amounts required under COBRA to maintain such coverage*." (*Id.* Ex. D, "Severance" (emphasis added).) Thus, the plain language of the August Agreement requires *Navidea*, *not* Dr. Goldberg to make payments to continue Dr. Goldberg's health insurance. (*Id.*) It *does not* impose any obligation on Dr. Goldberg. (*Id.*) Each of Navidea's witnesses confirmed that the provision of the August Agreement concerning continuation of Dr. Goldberg's health coverage did not require Dr. Goldberg to take any action or perform any act. (DSOF ¶ 98.) Accordingly, as a matter of law, Dr. Goldberg could not have breached that provision of the August Agreement by failing to make payments, and summary judgment must be granted in that respect.

### B. The Court Should Dismiss Navidea's Second Cause of Action Because Navidea's Cannot Prove That Dr. Goldberg Breached the Implied Covenant of Good Faith and Fair Dealing

Navidea's Second Cause of Action alleges that Dr. Goldberg breached the implied covenant of good faith and fair dealing by: (1) refusing to negotiate or execute Transaction Documents, (2) transferring Macrophage's assets to M1M2. (Zimmer Decl. Ex. A ¶¶ 109-10.)[6]

[6] In addition, the Amended Complaint alleges that "it was the intention of the parties that Navidea would extend a credit line up to $750,000 for a period of six months only," but it fails to explain how this obligation on the part of *Navidea* could possibly impose any affirmative duty on Dr. Goldberg. Nor does the Amended Complaint allege any conduct by Dr. Goldberg in connection with the credit line that would constitute a breach of the duty of good faith and fair dealing. Because Navidea's inartful pleading lacks any legal or factual support, this argument needs no further discussion.

Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract.[7] *Chamison v. Healthtrust, Inc.*, 735 A.2d 912, 920 (Del. Ch. 1999) (citing *Wilgus v. Salt Pond Inv. Co.,* 498 A.2d 151, 159 (Del. Ch. 1985). "The implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct[.]" *Winshall v. Viacom Int'l, Inc.*, 55 A.3d 629, 636 (Del. Ch. 2011) (quoting *Dunlap v. State Farm Fire & Cas. Co*., 878 A.2d 434, 442 (Del. 2005)). The covenant is not implicated when a party simply acts in its own best interests. *See id.* Further, the implied covenant is not a license to rewrite contractual language. *Id*. at 637. Indeed, the implied covenant does not change the fundamental principle that the existing contractual terms control the parties' rights and obligations. *Nemec v. Shrader*, 991 A.2d 1120, 1126 n.18 (Del. 2010).

Moreover, the implied covenant "only applies where a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract." *All. Data Sys. Corp. v. Blackstone Cap. Partners V L.P.*, 963 A.2d 746, 770 (Del. Ch.), *aff'd*, 976 A.2d 170 (Del. 2009). Importantly, where the contract specifically addresses the issue complained of, "[e]xisting contract terms control, [and] implied good faith cannot be used to circumvent the parties' bargain, or to create a 'free-floating duty . . . unattached to the underlying legal document.'" *Dunlap*, 878 A.2d at 441 (third alteration in original) (footnote omitted) (quoting *Glenfed Fin. Corp., Com. Fin. Div. v. Penick Corp.*, 647 A.2d 852, 858 (N.J. App. Div. 1994)).

---

[7] Similar to the breach of contract claim, both parties agree that Delaware law applies to claim of the breach of the implied covenant of good faith and fair dealing based on the choice of law provision in the August Agreement. (August Agreement, p. 2, Miscellaneous; *see* Complaint ¶¶ 103-104 ("[t]he August Agreement is governed by Delaware law").)

To establish a breach of the implied covenant in Delaware, a plaintiff must show "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *AssuredPartners of Va., LLC v. Sheehan*, No. N19C-02-175, 2020 Del. Super. LEXIS 264, at *24 (Del. Super. Ct. May 29, 2020). "Delaware courts apply this legal theory only in narrow circumstances." *Chamison,* 735 A.2d at 921. Navidea has not met its burden on either of its implied covenant theories.

***1. Navidea cannot prove that Dr. Goldberg breached the implied covenant of good faith and fair dealing by failing to negotiate or execute Transaction Documents[8]***

Navidea cannot prove that Dr. Goldberg breached the implied covenant of good faith and fair dealing by failing to negotiate or execute draft Transaction Documents that Navidea provided to him for two reasons. (Zimmer Decl. Ex. A ¶ 109.)

*First*, as set forth above, the August Agreement neither requires any party to execute nor negotiate Transaction Documents and, in fact, expressly provides that "any subsequent failure to execute the Transaction Agreements shall not render the provisions of this Agreement invalid." (Zimmer Decl. Ex. D at 2, "Transaction Documents.") Indeed, "the implied covenant cannot contravene the parties' express agreement and cannot be used to forge a new agreement beyond the scope of the written contract." *Chamison*, 735 A.2d at 921. Instead, the terms of the contract govern the parties' rights and obligations. *See Nemec*, 991 A.2d at 1126 n.18; *Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr.*, No. 12875, 2019 Del. Ch. LEXIS 178, at *30 (Del. Ch. May

---

[8] The Court should dismiss Navidea's claim for the breach of duty of good faith and fair dealing for a more fundamental reason: it is duplicative of its contract claim. Indeed, in its breach of contract cause of action, Navidea asserts that Dr. Goldberg violated the express provisions of the August Agreement by failing to execute Transaction Documents, as well as implementing the M1M2 Transaction. These identical allegations underlie the factual bases for Navidea's good faith claim. However, as recognized by Delaware courts, because these two causes of action are based on the same conduct, the implied covenant claim would necessarily be duplicative of the breach of contract claim. *See Affy Tapple, LLC v. ShopVisible, LLC*, No. N18C-07-216, 2019 Del. Super. LEXIS 867, at *10 (Del. Super. Ct. Mar. 7, 2019) (explaining that "there cannot be a separate implied covenant claim involving the same conduct as the breach of contract claim").

22, 2019) (explaining the duty of good faith and fair dealing "has no role because the express terms of the contract govern"). Thus, Navidea cannot rely on this duty to circumvent the express language of the Agreement by implying an obligation on Dr. Goldberg's part to execute or negotiate Transaction Documents when no such obligation exists on the face of the Agreement.

*Second*, as detailed above, Dr. Goldberg did, in fact, negotiate the terms of proposed Transaction Documents and did so in good faith. No record evidence suggests otherwise.

Accordingly, because no issues of material fact exist, summary judgment is appropriate on Navidea's breach of the duty of good faith and fair dealing claim premised upon an alleged failure to negotiate or execute Transaction Documents.

#### 2. *Navidea cannot prove that Dr. Goldberg breached the implied covenant of good faith and fair dealing by transferring Macrophage's assets to M1M2*

For at least two reasons, Navidea cannot prove that Dr. Goldberg breached the covenant of good faith and fair dealing by transferring Macrophage's assets to M1M2.

*First*, Navidea cannot argue, on one hand, that Dr. Goldberg breached an ***express*** provision of the Agreement by engaging in the M1M2 Transaction and, on the other hand, argue that such an obligation was ***implied*** in the Agreement. As discussed above, Delaware law prohibits this sort of duplicative pleading. Navidea failed to prove that the M1M2 Transaction constitutes a breach of the August Agreement, and this Court should reject Navidea's improper attempt to evade the plain language of the August Agreement by arguing that the M1M2 Transaction breaches an implied covenant of good faith and fair dealing.

*Second,* like Navidea's breach of contract claim based on the M1M2 Transaction, Navidea's implied covenant claim based on the M1M2 Transaction fails because Navidea cannot prove that the M1M2 Transaction resulted in any damages to the company. Because damages are a necessary element of an implied covenant claim, and the doctrine of issue preclusion bars

Navidea from proving that it suffered damages from the M1M2 Transaction, the Court should grant summary judgment dismissing Navidea's implied covenant claim based on the M1M2 Transaction.[9]

**C. The Court Should Dismiss Navidea's Third Cause of Action**

Navidea's Third Cause of Action does not allege any additional claims against Dr. Goldberg. (*See* Zimmer Decl. Ex. A ¶¶ 113-17.) Rather, it requests a declaration that "performance of certain of [Navidea's] obligations are excused" and that it is entitled to "terminate" the August Agreement by virtue of its breach of contract and breach of duty of good faith and fair dealing allegations. (*Id.* ¶¶ 116-17.) The Declaratory Judgment Act, however, does not create substantive rights. *Hoechst Celanese v. Nat'l Union Ins.*, 623 A.2d 1133, 1136 (Del. Sup. Ct. 1992); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 80 (S.D.N.Y. 2012). Rather, as a dependent claim, if an underlying substantive claim is dismissed, the declaratory judgment claim is correspondingly dismissed. *See Renco Group, Inc. v. MacAndrews AMG Holdings LLC*, No. 7668-VCN, 2015 Del. Ch. LEXIS 25, at *19 n.70 (Del. Ch. Jan. 29, 2015) ("The motion to dismiss Plaintiff's declaratory judgment claims is resolved, here and throughout the balance of this opinion, with the Court's conclusions on the underlying substantive claims."); *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 606 (S.D.N.Y. 2022) (finding that because plaintiffs could not sustain substantive claims against defendant, plaintiffs' declaratory judgment claim must be dismissed).

---

[9] While the Second Cause of Action also alleges that "it was the intention of the parties that Goldberg would immediately take actions to advance the business of Macrophage," the Amended Complaint does not allege that Dr. Goldberg did not do so. (Complaint ¶ 106.) In any event, this allegation cannot form the basis for a claim for breach of the duty of good faith and fair dealing. This purported contractual obligation is nowhere to be found in the four corners of the Agreement. In fact, the August Agreement does not mention the conduct of Macrophage's business after the formation of the Agreement. (*See generally*, August Agreement.) Such a duty simply cannot be implied into the August Agreement through the covenant of good faith and fair dealing. *Dunlap*, 878 A.2d at 441 (finding that the implied covenant cannot be used to create a free-floating duty unattached to the underlying legal document).

For the reasons set forth above, because Navidea's breach of contract and breach of the duty of good faith and fair dealing must dismissed, Navidea's Third Cause of Action, which is entirely dependent upon them, must also be dismissed.

## III. DR. GOLDBERG IS ENTITLED TO SUMMARY JUDGMENT IN HIS FAVOR ON THE ISSUE OF LIABILITY FOR HIS FIRST AND SECOND COUNTS

Count I of Dr. Goldberg's Answer alleges that in breach of the August Agreement Navidea failed to issue to him 23.5 million shares of Navidea pursuant to Reg. D as required by the August Agreement. (Answer ¶ 88.) The first headed paragraph in the August Agreement requires that "[o]n the date of the consummation of the Transactions (such date the "**Closing Date**"), Navidea shall issue Goldberg 23.5 million shares of Navidea common stock (the "**Shares**") 18.5 million currently and 5 million on January 2, 2019. The Shares will be issued under Regulation D of the Securities Act of 1933" (Zimmer Decl. Ex. D. at 1, "Navidea Shares" (emphasis in original).)

It is undisputed that Navidea did not issue to Dr. Goldberg 23.5 million shares of Navidea stock pursuant to Reg. D. (DSOF ¶ 67.) Instead, in November 2018, Navidea purportedly issued 13.5 million shares of Navidea common stock directly to Dr. Goldberg, while placing an additional 5 million shares into escrow.[10] (*Id.* ¶¶ 65-66.) However, out of those 13.5 million shares issued to Dr. Goldberg, only 12,777,274 shares were issued under Reg. D, while 722,726 shares were not. (*Id.* ¶¶ 68-69.) Even more problematic, all 18.5 million shares were marked with restrictive legends, which are neither required under Reg. D nor authorized by the August Agreement. (*Id.* ¶¶ 67, 70.) Navidea's witnesses testified that the restrictive legends were added to prevent Dr. Goldberg from receiving any benefit from the shares. (*Id.* ¶ 71.) Moreover, to date, Navidea has

[10] Although Navidea purported to issue 5 million shares of Navidea Stock and placed them in escrow pursuant to the August Agreement, the Agreement's escrow provision required Navidea to release any escrowed shares to Dr. Goldberg no later than eighteen (18) months after the execution date of the August Agreement – *i.e.*, on February 14, 2020. (August Agreement at p. 1, Share Escrow.) It is undisputed that Navidea has not released those shares to Dr. Goldberg in contravention of the Agreement.

refused to issue the 5 million shares of Navidea stock, which were required to be escrowed on January 2, 2019, under the August Agreement. (*Id.* ¶ 72.) In summary, Navidea failed to issue any of the 23.5 million shares in accordance with the August Agreement. As a result, Dr. Goldberg is entitled to summary judgment on the issue of liability with respect to Count I.

As a relief for Count I, Dr. Goldberg respectfully requests an order that mandates Navidea to fulfill its obligations under the August Agreement by taking the following actions:

(i) Release the 5,000,000 shares in escrow and remove the restrictive legends not required by Reg. D;

(ii) Remove the restrictive legends, not required by Reg. D, from the 12,777,274 shares of Navidea common stock that were issued under Reg. D;

(iii) Reissue the 722,726 shares under Reg. D without any restrictive legends not required by Reg. D; and

(iv) Issue the remaining 5,000,000 shares pursuant to Reg. D without any restrictive legends not required by Reg. D.

Similarly, Count II of Dr. Goldberg's Answer alleges that in breach of the August Agreement Macrophage failed to issue to him shares of Macrophage Super Voting Common Stock equal to 5.0% of the outstanding shares of Macrophage as of August 14, 2018. (Answer ¶ 130.) It is undisputed that Macrophage did not issue to Dr. Goldberg any Macrophage Super Voting Common Stock. (DSOF ¶ 89.) As a result, Dr. Goldberg is entitled to summary judgment on the issue of liability with respect to Count III, as relates to the issuance of Macrophage Super Voting Common Stock. Similar to Count I, Dr. Goldberg requests an order requiring Macrophage to issue to him Super Voting Common Stock equal to 5.0% of the outstanding shares of Macrophage as of August 14, 2018.

Dr. Goldberg reserves his right to seek damages resulting from Navidea's and Macrophage's failure to and/or delay in issuing the aforementioned shares as required by the August Agreement.

## IV. DR. GOLDBERG SHOULD BE AWARDED HIS ATTORNEYS' FEES AND COSTS

The August Agreement provides that "[t]he prevailing party in any [action brought to enforce the terms of the August Agreement or adjudicate any dispute arising out of the August Agreement] . . . will be entitled to recover its reasonable attorneys' fees and costs." (Zimmer Decl. Ex. D. at 2, "Miscellaneous.") For the reasons set forth above, because Dr. Goldberg is entitled to summary judgment in his favor dismissing Navidea's remaining claims and in his favor on the issue of liability on Counts I and II of the Answer, Dr. Goldberg is entitled to recover his reasonable attorneys' fees and costs in connection with this action.

## CONCLUSION

For the foregoing reasons, the Court should grant Dr. Goldberg's Motion and should grant Dr. Goldberg such other and further relief as the Court deems just and proper.

Dated: Westchester, New York
June 1, 2023

Respectfully submitted,

*/s/ Gregory Zimmer*
Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
(914) 402-5683
GZimmer@GZimmerLegal.com

Jennifer Fiorica Delgado, Esq.
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
(646) 414-6962
jdelgado@lowenstein.com

*Attorneys for Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Michael M. Goldberg, M.D.*