UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: NAVIDEA BIOPHARMACEUTICALS
LITIGATION

Case No: 1:19-cv-01578-VEC-VF

ECF Case

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT/COUNTERCLAIM PLAINTIFF/THIRD-PARTY PLAINTIFF DR. MICHAEL M. GOLDBERG, MD'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

MINTZ & GOLD LLP
Barry M. Kazan, Esq.
Timothy J. Quill, Jr., Esq.
600 Third Avenue, 25th Floor
New York, New York 10016
Tel: (212) 696-4848
Fax: (212) 696-1231

*Attorneys for Plaintiff /Counterclaim
Defendant Navidea Biopharmaceuticals,
Inc. and Third-Party Defendant
Macrophage Therapeutics, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................1

COUNTERSTATEMENT OF FACTS ........................................................................3

ARGUMENT...................................................................................................................4

    I.     Legal Standard ..............................................................................................4

    II.    Dr. Goldberg is not entitled to summary judgment on Navidea's three claims............5

          A.    Navidea has satisfied each element of its breach of contract claim..................6

              1.  Dr. Goldberg was required to execute the Transaction Documents under the August Agreement ...............................................................6

              2.  Dr. Goldberg failed to execute Transaction Documents............................9

              3.  The Challenged Transactions violated the August Agreement.................11

              4.  Navidea suffered damages as a result of Dr. Goldberg's breach..............13

              5.  Dr. Goldberg breached the August Agreement by failing to forward health insurance premium payments ...................................................15

          B.    Dr. Goldberg breached the implied covenant of good faith and fair  dealing .15

              1.  Dr. Goldberg's failure to execute the Transaction Documents is a breach of the implied covenant of good faith and fair dealing.............................15

              2.  Dr. Goldberg breached the implied covenant by issuing himself    more equity in Macrophage than the August Agreement permitted..................16

              3.  Dr. Goldberg also breached the implied covenant of good faith and  fair dealing by failing to advance Macrophage's interests...............................18

          C.    Navidea's declaratory judgment claim survives even if the Court were    to grant Dr. Goldberg summary judgment on Navidea's substantive  breach claims .........................................................................................................19

    III.   Dr. Goldberg is not entitled to summary judgment on his counterclaim and third-party claim because he fails to establish breaches of the August Agreement......................20

i

    A.     Navidea did not breach the August Agreement ................................................20

    B.     Dr. Goldberg cannot satisfy the elements of his claim against Macrophage...22

IV.    The Court should not award Dr. Goldberg his attorneys' fees and costs ....................24

CONCLUSION ..............................................................................................................25

# TABLE OF AUTHORITIES

<u>Cases</u>

*Admiral Insurance Company v. Niagara Transformer Corp.*,
 57 F. 4th 85 (2d Cir. 2023) .................................................................................. 20

*Ainslie v. Cantor Fitzgerald, L.P.*
 Consol. C.A. No. 9436-VCZ, 2023 WL 106924 (Del. Ch. Jan. 4, 2023) ..................... 7, 21, 23

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
 910 A.2d 1020 (Del. Ch. 2006) ............................................................................ 9

*Amnesty Am. v. Town of W. Hartford*,
 288 F.3d 467 (2d Cir. 2002) ................................................................................ 5

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) .......................................................................................... 4

*Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*,
 C.A. No. 3658-VCS, 2009 WL 1124451 (Del. Ch. Apr. 20, 2009) ......................... 17

*BioLife Sol., Inc. v. Endocare, Inc.*,
 838 A.2d 268 (Del. Ch. 2003) ............................................................................. 23

*Brzoska v. Olson*,
 668 A.2d 1355 (Del. 1995) ................................................................................. 23

*Buckeye Partners, L.P. v. GT USA Wilmington, LLC*,
 C.A. No. 2020-0255 (JTL), 2022 WL 906521 (Del. Ch. Mar. 29, 2022) ............... 17

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) .......................................................................................... 4

*Chamison v. HealthTrust, Inc.-The Hospital Co.*,
 735 A.2d 912 (Del. Ch. 1999) .................................................................... 15, 16, 18

*Clean Harbors, Inc. v. Safety-Kleen, Inc.*,
 C.A. No. 6117-VCP, 2011 WL 6793718 (Del. Ch. Dec. 9, 2011) .......................... 17

*Clean Harbors, Inc. v. Union Pacific Corp.*,
 C.A. No. N15C-07-081 (MMJ) (CCLD), 2017 WL 5606953 (Del. Super. Nov. 15, 2017) ...... 7

*Cohen v. Formula Plus, Inc.*,
 750 F. Supp. 2d 495 (D. Del. 2010) ...................................................................... 8

*Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*,
  980 A.2d 1024 (Del. Ch. 2008) ..................................................................... 6

*Comrie v. Enterasys Networks, Inc.*,
  Case No. 19254, 2004 WL 936505 (Del. Ch. Apr. 27, 2004) ................................. 24

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
  138 F. Supp. 3d 352 (S.D.N.Y. 2015) ............................................................ 4

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
  702 A.2d 1228 (Del. 1997) .......................................................................... 8

*Eastern Continental Mining and Development Ltd. v. Signet Group LLC*,
  No. 12-cv-1930 (KBF), 2015 WL 5707145 (S.D.N.Y. Sept. 29, 2015) .................. 23

*eCommerce Industries, Inc. v. MWA Intelligence, Inc.*,
  C.A. No. 7471-VCP, 2013 WL 5621678 (Del. Ch. Sept. 30, 2013) ................... 16, 17

*Frontier Oil v. Holly Corp.*,
  No. Civ. A 20502, 2005 WL 1039027 (Del. Ch. Apr. 29, 2005) ........................... 23

*Garfield on behalf of ODP Corp. v. Allen*,
  277 A.3d 296 (Del. Ch. May 24, 2022) ......................................................... 13

*Heather Const., Inc. v. Gangi*,
  1987 WL 8215 (Del. Super. Mar. 16, 1987) .................................................... 23

*H-M Wexford LLC v. Encorp, Inc.*,
  832 A.2d 129 (Del. Ch. 2003) ..................................................................... 23

*Holtz v. Rockefeller & Co., Inc.*,
  258 F.3d 62 (2d Cir. 2001) .......................................................................... 5

*Honeywell Intern. Inc. v. Air Prods. & Chem., Inc.*,
  872 A.2d 944 (Del. 2005) ............................................................................ 8

*In re NextMedia Group, Inc.*,
  440 B.R. 76 (Bankr. Del. 2010) ................................................................ 8, 15

*Kelly v. McKesson HBOC, Inc.*
  99C-09-265 (WCC), 2002 WL 88939 (Del. Super. Ct.) .................................... 18

*LaBarbera v. NYU Winthrop Hosp.*,
  527 F. Supp. 3d 275 (S.D.N.Y. 2021) ............................................................ 5

*Lehman Brothers Holdings, Inc. v. Spanish Broadcasting System, Inc.*,
  Civ. A. No. 8321-VCG, 2014 WL 718430 (Del. Ch. Feb. 25, 2014) ..................... 23

*Lippe v. Bairnco Corp.*,
    99 Fed. Appx. 274 (2d Cir. 2004)...........................................................24

*Manbro Energy Corp. v. Chatterjee Advisors, LLC*,
    No. 20 Civ. 3773 (LGS), 2023 WL 2565208 (S.D.N.Y. Mar. 17, 2023)...............................23

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ..........................................................20

*Murfey v. WHC Ventures, LLC*,
    236 A.3d 337 (Del. 2020)...........................................................12

*Nat'l Coalition on Black Civic Participation v. Wohl*,
    No. 20 Civ. 8668 (VM), 2023 WL 2403012 (S.D.N.Y. Mar. 8, 2023)......................................5

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
    875 F.3d 107 (2d Cir. 2017) ...........................................................4

*OSI Systems, Inc. v. Instrumentarium Corp.*,
    892 A.2d 1086 (Del. Ch. 2006) ...........................................................9

*Pellaton v. Bank of N.Y.*,
    592 A.2d 473 (Del. 1991).........................................................8

*Pfizer Inc. v. US Dept. HHS*,
    2021 WL 4523676 (S.D.N.Y. Sept. 30, 2021) ...............................................19, 20

*Renco Grp, Inc. v. MacAndrews AMG Holdings LLC*,
    C.A. No. 7668-VCN, 2015 WL 394011 (Del. Ch. Jan. 29, 2015) ..........................................16

*Ross v. Thomas*,
    728 F. Supp. 2d 274 (S.D.N.Y. 2010) ...........................................................6, 8, 9

*Seidensticker v. Gasparilla Inn, Inc., C.A.*,
    No. 2555-CC, 2007 WL 4054473 (Del. Ch. Nov. 8, 2007) ......................................6

*SIGA Techs., Inc. v. PharmAthene, Inc.*,
    67 A.3d 330 (Del. 2013).........................................................10

*U.S. Info. Sys., Inc. v. Int'l Brotherhood of Elec. Workers Loc. Union No. 3*,
    No. 00 Civ. 4763 (RMB) (JCF), 2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006) .......................4

*Winshall v. Viacom Int'l, Inc.*,
    55 A.3d 629 (Del. Ch. 2011) ...........................................................15

Rules

Del. Ch. Ct. R. 15(b) ...........................................................18

Fed. R. Civ. P. 56(a) ........................................................................................... 4

Fed. R. Civ. P. 56(c)(3) ....................................................................................... 5

Local Civil Rule 56.1 ................................................................................. *passim*

Plaintiff/Counterclaim Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") and Third-Party Defendant Macrophage Therapeutics, Inc. ("Macrophage") submit this memorandum of law in opposition to Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Dr. Michael M. Goldberg, M.D.'s ("Dr. Goldberg") motion for summary judgment.

## PRELIMINARY STATEMENT

Far from establishing the absence of disputed issues of material fact that warrant summary judgment in his favor, Dr. Goldberg relies on a Rule 56.1 Statement that is rife with legal conclusions and purported factual assertions that are misrepresented, mischaracterized, or—in many instances—based on citations to the record he failed to include as exhibits in his filing. Dr. Goldberg cites very few facts that are directly relevant to his summary judgment motion because the purported material facts he cites are primarily legal conclusions inappropriate for his motion or lay testimony that would usurp the role of the Court in interpreting the contract at issue. In the limited circumstances where his cited facts are relevant to his motion, Dr. Goldberg misrepresents those undisputed facts to support his own claims when, in fact, they refute his arguments and establish that Navidea and Macrophage are entitled to summary judgment, not Dr. Goldberg.

Moreover, Dr. Goldberg conveniently ignores the plain language of the contract, the procedural history of this case, and the binding judgment of a Delaware Chancery Court which found that Goldberg breached his fiduciary duty to Macrophage—and by extension to Navidea. The plain language of the contract dictates a finding that it is Dr. Goldberg, not Navidea nor Macrophage, that breached the August Agreement—both its express provisions and the implied covenant of good faith and fair dealing.

In his Memorandum of Law in Support of his Motion for Summary Judgment (ECF Doc. No. 321) ("Goldberg MOL"), Dr. Goldberg argues that he has done no wrong (or at least no wrong

that has caused damage to Navidea) and therefore is entitled to summary judgment dismissing Navidea's claims and in favor of his claims against Navidea and Macrophage. But he is incorrect.

Specifically, Dr. Goldberg argues that he was not obligated to execute the Transaction Documents[1] or to forward payment to cover his health insurance, even though the August Agreement clearly requires him to do so. He contends that his self-dealing as CEO of Macrophage was not a breach of contract or the implied covenant of good faith and fair dealing and that Navidea, the majority owner of Macrophage, was not harmed by his conduct. But the Delaware Chancery Court has already held that Dr. Goldberg breached his fiduciary duty of loyalty to Macrophage. He also incorrectly argues that Navidea is precluded from obtaining a declaratory judgment in this case when applicable case law provides otherwise. Finally, he contends that Navidea and Macrophage breached the August Agreement by failing to issue him equity in the proper form, but Dr. Goldberg failed to satisfy a condition precedent and then materially breached the contract, thereby excusing Navidea's performance, and he has only his inaction and improper conduct to blame for Macrophage not issuing him stock. In short, each of Dr. Goldberg's arguments fails because the record facts establish that Navidea can satisfy each element of its claims against Dr. Goldberg but Dr. Goldberg cannot satisfy the elements of his counterclaim or third-party claim against Navidea or Macrophage, respectively.

In sum, the undisputed facts demonstrate that Dr. Goldberg is not entitled to summary judgment on Navidea's claims, nor is he entitled to summary judgment on his affirmative claims. To the contrary, as set forth in Navidea's and Macrophage's own moving papers, Navidea and

---

[1]   Unless stated otherwise, capitalized terms have the meanings set forth in Navidea and Macrophage's Memorandum of Law in Support of their Motion for Summary Judgment (ECF Doc. No. 315) ("Navidea/Macrophage MOL"), Navidea and Macrophage's Local Civil Rule 56.1 Statement of Material Facts (ECF Doc. No. 324) ("SMF"), and Navidea and Macrophage's Response to Dr. Goldberg's Local Civil Rule 56.1 Statement of Material Facts ("RSMF") submitted contemporaneously herewith.

Macrophage are entitled to summary judgment in their favor, dismissing Dr. Goldberg's remaining claims and finding that Navidea prevails on its own affirmative claims.

## COUNTERSTATEMENT OF FACTS

While Navidea and Macrophage have admitted many of the facts contained in Dr. Goldberg's Rule 56.1 Statement of Material Facts (ECF Doc. No. 323) ("DSMF"), they have disputed certain of the facts to the extent those facts are legal conclusions, unsupported by the record, or mischaracterized. *See* Navidea and Macrophage's Response to Dr. Goldberg's Local Civil Rule 56.1 Statement of Material Facts ("RSMF"). In support of their own motion for summary judgment, Navidea and Macrophage submitted their Rule 56.1 Statement of Material Facts (ECF Doc. No. 324) (SMF).

The main facts upon which the parties disagree are: (1) the extent to which certain documents needed to be executed to consummate the Transaction.; (2) the nature of the "negotiations" between Dr. Goldberg and Navidea's counsel; (3) the impact of the Challenged Transactions which resulted in the Delaware Chancery Court finding that Dr. Goldberg breached his fiduciary duty; and (4) the damage that flowed to Navidea as a result of Dr. Goldberg's actions.

Specifically, certain of the obligations contained in the August Agreement were conditioned upon the consummation of the Transaction—the parties' execution of the Transaction Documents—defined as the Closing Date. (SMF ¶ 33.)

While the parties partially performed under the August Agreement (SMF ¶¶ 45-46), Dr. Goldberg immediately repudiated certain obligations and failed to perform others both on behalf of himself and on behalf of Macrophage (SMF ¶¶ 37-43, 47-48; RSMF ¶¶ 84, 86-87, 90, 98, 108, 130, 136, 170). No Transaction Documents were ultimately executed by the parties. (SMF ¶ 44.)

With respect to the Challenged Transactions, the undisputed facts—as admitted by Dr. Goldberg—resulted in Dr. Goldberg obtaining more equity (i.e., ownership) of the assets of Macrophage than he was entitled to under the August Agreement absent Macrophage obtaining $10 million in financing. (SMF ¶¶ 38-50, 55, 58; RSMF ¶¶ 156-162.)

With respect to damages, Navidea has suffered damages as result of Dr. Goldberg's actions—both with respect to his failure to pay COBRA premiums and with respect to his failure to go beyond his self-interest and operate Macrophage for the benefit of Navidea. (SMF ¶ 73; RSMF ¶¶ 170-171, 177.)

## **ARGUMENT**

### I.   **Legal Standard**

Summary judgment cannot be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists," and therefore summary judgment is not appropriate, "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In this District, courts rely on Local Civil Rule 56.1 Statements to assist in determining whether the moving party has met its burden. But "Rule 56.1 statements are not argument. They should contain factual assertions with citation to the record. They should not contain conclusions." *U.S. Info. Sys., Inc. v. Int'l Brotherhood of Elec. Workers Loc. Union No. 3*, No. 00 Civ. 4763 (RMB) (JCF), 2006 WL 2136249, at *1 (S.D.N.Y. Aug. 1, 2006) (internal quotations and citations omitted). Indeed, "[t]he Court can . . . disregard legal conclusions or unsubstantiated opinions in a

Local Rule 56.1 statement." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015). Thus, "counsel's unsupported factual assertions or legal conclusions" drawn from documentary evidence or sworn testimony are not considered on a summary judgment motion. *LaBarbera v. NYU Winthrop Hosp.*, 527 F. Supp. 3d 275, 288 (S.D.N.Y. 2021). Moreover, "[a] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported by the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001). A court has discretion "to disregard any inappropriate portions of a party's submissions and rely upon admissible evidence in its analysis." *Nat'l Coalition on Black Civic Participation v. Wohl*, No. 20 Civ. 8668 (VM), 2023 WL 2403012, at *8 (S.D.N.Y. Mar. 8, 2023) (quotations and citations omitted).

## II.   Dr. Goldberg is not entitled to summary judgment on Navidea's three claims.

In his moving papers, Dr. Goldberg fails to establish the absence of disputed issues of material fact as they relate to his legal theories. His Rule 56.1 Statement is rife with improper legal conclusions, masquerading as purported factual assertions, that should not be considered. *See LaBarbera*, 527 F. Supp. 3d at 288. And he also fails, on multiple occasions, to include in his submission the excerpts from the record which he cites. Dr. Goldberg is on notice that the Court will not search through the record in support of facts relevant to a party's claim or defense. *See* Individual Practice Rule 4.H.ii.e; Fed. R. Civ. P. 56(c)(3); *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). In those instances where Dr. Goldberg has identified undisputed facts—and actually included evidence in the record in support of those facts—those facts refute his argument or, at a minimum, create disputed issues of material fact based on his theories of the case that warrant denial of Dr. Goldberg's motion for summary judgment.

**A.      Navidea has satisfied each element of its breach of contract claim.**

Dr. Goldberg argues that Navidea cannot satisfy the elements of its breach of contract claim because: (i) he was not required to execute the Transaction Documents; (ii) he was not required to pay his health insurance premiums; (iii) the Challenged Transactions did not constitute a breach; and (iv) his breaches did not cause Navidea any losses. *See* Goldberg MOL at 8. Dr. Goldberg is wrong. As set forth below, Navidea can establish that Dr. Goldberg had obligations under the August Agreement, failed to perform those obligations, and his breaches caused Navidea damages.

1.   Dr. Goldberg was required to execute the Transaction Documents under the August Agreement.

Under Delaware law, where a "dispute centers on the proper interpretation of an unambiguous contract, summary judgment is appropriate because such interpretation is a question of law." *Seidensticker v. Gasparilla Inn, Inc.*, C.A. No. 2555-CC, 2007 WL 4054473, at *2 (Del. Ch. Nov. 8, 2007) (citations omitted); *see Ross v. Thomas*, 728 F. Supp. 2d 274, 281 (S.D.N.Y. 2010) (quoting *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del. Ch. 2008)) ("'Summary judgment is an appropriate process for the enforcement of unambiguous contracts because there is no material dispute of fact for the court to resolve.'"). Here, the Court has already ruled that the August Agreement's language is unambiguous. *See* ECF Doc. No. 61 (Dec. 26, 2019 Opinion and Order) at 9. Thus, the Court need only review the express language of the contract to determine the parties' obligations thereunder.

The "Transaction Documents" paragraph of the August Agreement provides that the parties will enter and execute Transaction Documents:

> The Transaction Documents shall contain other terms, conditions, representations and warranties of Navidea, [Macrophage] and [Dr.] Goldberg customary for transactions of the type set forth in this Agreement. Maslon LLP, counsel to Navidea's Special Committee, will prepare the initial drafts of the Transaction Documents. Upon execution, the terms of such Transaction Documents shall supersede the terms set forth herein, but any subsequent failure to execute the

Transaction Documents shall not render the provisions of this Agreement invalid. (SMF ¶¶ 33-34 (citing Kazan Decl. Ex. 10); DSMF ¶ 117 (quoting Zimmer Decl. Ex. D at 2).)  In fact, certain of the obligations required additional documentation. (*See* DSMF ¶¶ 73, 78, 82; RSMF ¶¶ 77, 80, 165, 175, 176.) Thus, the August Agreement required Dr. Goldberg to execute the Transaction Documents. Dr. Goldberg contends that he was not required to sign the Transaction Documents, and thus cannot have breached the contract. But his argument stems from a misinterpretation and misrepresentation of the express terms of the August Agreement.

Dr. Goldberg bases his legal argument on the final phrase of the Transaction Documents paragraph, which states that a failure to execute the Transaction Documents "shall not render the provisions of this Agreement invalid." (*Id.*) But this language does <u>not</u> suggest that Dr. Goldberg has no obligation to execute the Transaction Documents—it simply states if he fails to do so, the August Agreement nonetheless remains enforceable. In other words, Dr. Goldberg's failure to execute the Transaction Documents constitutes a non-material breach of the August Agreement because his failure does not relieve Navidea of its remaining performance obligations under the contract. But it is a breach nonetheless and permits Navidea to recover its resulting losses. *See, e.g.*, *Ainslie v. Cantor Fitzgerald, L.P.*, Consol. C.A. No. 9436-VCZ, 2023 WL 106924, at *10 (Del. Ch. Jan. 4, 2023) ("An immaterial breach exposes the breaching party to damages, but the counterparty must still perform."); *Clean Harbors, Inc. v. Union Pacific Corp.*, C.A. No. N15C-07-081 (MMJ) (CCLD), 2017 WL 5606953, at *4 (Del. Super. Nov. 15, 2017) (same).[2]

---

[2]   As explained in Section III.A, *infra*, under the August Agreement, execution of the Transaction Documents was a condition precedent to Navidea's obligation to issue to Dr. Goldberg 23.5 million shares of common stock. But because the August Agreement was still valid even absent execution of the Transaction Documents, Dr. Goldberg's failure to sign those documents was a non-material breach and also failure of a condition precedent. *See Ainslie*, 2023 WL 106924, at *10 ("parties may contract to excuse a party's duty to perform for something less than a material breach by conditioning that duty on the occurrence of a condition precedent").

Dr. Goldberg mischaracterizes the August Agreement by contending that it "contemplated that the parties <u>might</u> execute additional Transaction Documents." *See* Goldberg MOL at 12 (emphasis added). But terms like "shall" and "will," which appear in the Transaction Documents paragraph, are mandatory, not permissive. Had the parties intended for execution of the Transaction Documents and closing to be permissive, they would have used the word "may." *See In re NextMedia Group, Inc.*, 440 B.R. 76, 83 (Bankr. Del. 2010) (noting that contract "uses mandatory 'shall' language, not permissive 'may' language").

While the August Agreement may not be perfectly drafted, "Delaware courts' objective theory of contract interpretation does not demand drafting perfection in retrospect, but requires language that a reasonable person would understand to create obligations and rights." *In re NextMedia Group, Inc.*, 440 B.R. at 83. The only reasonable interpretation of the Transaction Documents paragraph requires Dr. Goldberg to execute the Transaction Documents.

Dr. Goldberg's factual argument interpreting the August Agreement fails as well. He concedes that, under Delaware law, "[i]f a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity." Goldberg MOL at 9 (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232-33 (Del. 1997)). But despite his concession and the Court's conclusion that the August Agreement is unambiguous (*see* ECF Doc. No. 61 at 9), Dr. Goldberg cites witness testimony to try to prove his flawed contractual interpretation. *See* Goldberg MOL at 11 (citing DSMF ¶¶ 117-21). Because the August Agreement is unambiguous, the Court should not consider parol evidence to interpret the contract nor to determine the parties' intent. *See Ross*, 728 F. Supp. 2d at 281 (quoting *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 478 (Del. 1991)); *Cohen v. Formula Plus, Inc.*, 750 F. Supp. 2d 495, 502 (D. Del. 2010) (quoting *Eagle Industries, Inc.*, 702 A.2d at 1232).

Further, what obligations the contract imposes on the parties is a legal question that is not the subject of factual testimony. Under Delaware law, lay witnesses are not permitted to opine on the meaning of contractual language. *See, e.g.*, *Honeywell Intern. Inc. v. Air Prods. & Chem., Inc.*, 872 A.2d 944, 950 (Del. 2005) (noting interpretation of contract language is a question of law); *OSI Systems, Inc. v. Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006) (same); *Ross*, 728 F. Supp. 2d at 281 (citing *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006)) (same). As such, the witness testimony cited by Dr. Goldberg is inadmissible on this point and should be disregarded.[3]

2. Dr. Goldberg failed to execute Transaction Documents.

There can be no dispute that Dr. Goldberg failed to execute the Transaction Documents and, indeed, Dr. Goldberg does not cite any record evidence to suggest that he did so. In his motion papers, Dr. Goldberg cites deposition testimony and emails establishing that he communicated with representatives of Navidea regarding the Transaction Documents after the parties entered the August Agreement. While that may be true, all of that evidence is meaningless on the question

---

[3]   Even if Navidea witness testimony were somehow admissible for purposes of interpreting the parties' obligations under the August Agreement, Dr. Goldberg mischaracterizes Dr. Bruck's deposition testimony and ignores testimony that flatly contradicts his argument. Dr. Goldberg cites Paragraph 120 of his DSMF, which purportedly relies on Dr. Bruck's testimony (*see* Goldberg MOL at 5), but the pages cited from Dr. Bruck's deposition transcript are not included in his submission. *See* Zimmer Decl. Ex. B (missing deposition transcript pages 145-146). Dr. Bruck's testimony on that point states only that it would not be unreasonable for a party to try to engage in a process of renegotiation if she is presented with documents to sign that she believes do not accurately reflect the parties' agreement. (RSMF ¶ 163 (citing Kazan Resp. Decl. Ex. 9 (Bruck Dep. Tr.) at 145:24-146:19.) But that simply begs the question whether Dr. Goldberg was correct in claiming that the draft Transaction Documents did not reflect the terms of the August Agreement—it is not material to the question whether the August Agreement required execution of the Transaction Documents. Further, Dr. Bruck also testified that Dr. Goldberg's communication in that respect was "extremely aggressive, contentious, and frankly not helpful." (RSMF ¶ 163 (quoting Kazan Resp. Decl. Ex. 9 (Bruck Dep. Tr.) at 146:20-23.) Dr. Goldberg's argument is also refuted by Mr. Rice, who testified that the Transaction Documents had to be signed in order to reach a closing, which was necessary for the parties to receive the benefits of the August Agreement. (RSMF ¶ 164 (citing Kazan Resp. Decl. Ex. 10 (Rice Dep. Tr.) at 80:5-85:13).)

whether Dr. Goldberg executed the Transaction Documents. He failed to do so.

Further, Dr. Goldberg's argument that he negotiated in good faith fails on two levels. *See* Goldberg MOL at 13-14. First, his reference to supposed good faith negotiations in the context of Navidea's breach of contract action suggests that he is defending the claim as if the August Agreement were a Type II preliminary agreement that requires the parties to negotiate in good faith. *See SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 349 n.82 (Del. 2013). But the August Agreement is not a Type II preliminary agreement; it is a fully enforceable contract that required Dr. Goldberg to execute the Transaction Documents. *See* Goldberg MOL at 11 ("There is no dispute that the August Agreement is a valid and binding contract.").[4]

Second, Dr. Goldberg's argument fails as a factual matter. As reflected in the communications between Dr. Goldberg and counsel for Navidea's Special Committee, Dr. Goldberg sought to change the terms of the parties' binding contract in his post-August Agreement communications by stating:

> [T]here is no agreement for the $750K to be treated as debt so neither David nor I will spend any time reviewing those documents. . . . There also was no agreement to lock up [my] shares for 6 months as I agreed to take unregistered shares so I will de-facto have a six month lock up. . . . Finally the Escrow agreement needs to have a well-crafted (details the specific negotiated steps Navidea must pursue as a requirement for accessing the shares) section on required actions of Navidea before they can claim the shares used as collateral. . . . There should be a provision that if the Platinum claim ever drops below $2.2 million then an immediate pro-rata decrease in the shares held in escrow will result.

(RSMF ¶ 165 (quoting Kazan Decl. Ex. 13 (JX 41)).) His supposed "negotiations" regarding the

---

[4]   Delaware courts recognize both Type I and Type II preliminary agreements, but the August Agreement does not fit neatly into either of those categories. The contract is not a Type I preliminary agreement because the parties did not agree on <u>all</u> points requiring negotiation (e.g., how the MT Super Voting Common Stock could be issued, the terms of an escrow agreement, how to impose obligations on Dr. Goldberg's family members who were not parties to the Agreement) and the Transaction Documents were supposed to do more than merely memorialize the existing agreement. It cannot be a Type II preliminary agreement because, as its language makes clear, it was fully binding and enforceable even if the parties never executed the Transaction Documents. *Cf. SIGA Techs.*, 67 A.3d at 349.

precise terms of the Transaction Documents therefore were <u>not</u> made in good faith. Indeed, as of November 5, 2018, counsel for the special committee still had not received from Dr. Goldberg or his counsel "any red-lined or proposed documents . . . that would permit consummation of the Transaction." (RSMF ¶ 166 (quoting Kazan Resp. Decl. Ex. 11.)

3.   <u>The Challenged Transactions violated the August Agreement</u>.

Dr. Goldberg also breached the August Agreement by engaging in the Challenged Transactions, through which he created M1M2 as a subsidiary of Macrophage, transferred to M1M2 intellectual property licensed to Macrophage by Navidea, and issued to himself Super Voting Common Stock in M1M2 that resulted in him receiving equity that was equivalent to <u>more than 5%</u> of Macrophage's outstanding shares. (*See* SMF ¶¶ 55-58; RSMF ¶¶ 156-162.) He cannot dispute these facts because the Delaware Court concluded that he "exploited the parties' inability to come to terms on definitive agreements implementing the August Agreement by surreptitiously removing Navidea from the process and taking the Navidea Sub-License for his own." (SMF ¶ 70 (quoting Kazan Decl. Ex. 2).) His actions were a clear violation of the MT Super Voting Shares paragraph of the August Agreement, which provides in pertinent part:

> MT will issue to Goldberg shares of MT Super Voting Common Stock in a number equal to 5.0% of the outstanding shares of MT. . . . Notwithstanding the foregoing, until such time as MT shall have obtained aggregate gross proceeds of $10 million in one or more financings after the Closing Date, the vote or written consent of Navidea shall be required to issue to Goldberg or any of his affiliates any equity or rights to purchase equity, which vote or consent shall not be unreasonably withheld.

(SMF ¶ 49 (quoting Kazan Decl. Ex. 10); DSMF ¶ 82 (quoting Zimmer Decl. Ex. D).) Dr. Goldberg attempts to argue that he did not breach the August Agreement's limitation on his Macrophage ownership because the contract prohibits only the issuance of shares in Macrophage, not the issuance of additional equity in its affiliates or subsidiaries. *See* Goldberg MOL at 14-15. That argument is an irrational elevation of form over substance and fails for at least two reasons.

First, the August Agreement prohibits Dr. Goldberg from receiving <u>any additional equity</u> related to Macrophage before the company obtains $10 million in financing after the Closing Date. (SMF ¶ 49 (quoting Kazan Decl. Ex. 10).) Dr. Goldberg professes to focus on the precise language of the August Agreement, but he fails to describe it accurately. That contract provides that "the vote or written consent of Navidea shall be required to issue to Goldberg or any of his affiliates <u>any equity or rights to purchase equity</u>." (*Id.* (emphasis added).) The contract does not expressly specify a restriction on equity <u>only in Macrophage</u>. Dr. Goldberg may contend that is what the parties intended, but that argument undermines his own general theory that the contract must mean what is expressly stated therein. It defies logic to believe that the parties prohibited Dr. Goldberg from obtaining additional equity in Macrophage absent certain conditions, but nonetheless permitted him to obtain additional equity through alternative means without those conditions having been satisfied.

To that end, Dr. Goldberg's reliance on *Murfey v. WHC Ventures, LLC* is misplaced. *See* Goldberg MOL at 15. That case holds that courts should not imply terms the parties did not expressly include because it "risks upsetting the economic balance of rights and obligations that the contracting parties bargained for in their agreement." *Murfey v. WHC Ventures, LLC*, 236 A.3d 337, 350 (Del. 2020). Here, the parties negotiated that a portion of the consideration for Dr. Goldberg's work as CEO of Macrophage would be his receipt of a 5% equity interest the company, but he was precluded from issuing himself or his family members any additional ownership interest absent consent of the majority owner, Navidea, until Macrophage obtained at least $10 million of financing. (*See* SMF ¶ 49.) Thus, allowing Dr. Goldberg to award himself additional ownership in Macrophage <u>before</u> the parties' agreement permitted him to do so would "upset[] the economic balance of rights and obligations" to which the parties agreed. *See Murfey* at 350.

Second, as noted above, the August Agreement provides that Dr. Goldberg is entitled to receive 5.0% of Macrophage's outstanding shares. (DSMF ¶ 82 (quoting Zimmer Decl. Ex. D).) But through his machinations, Dr. Goldberg awarded himself equity that amounted to ownership of more than 5%, a fact he admitted during trial in the Delaware Chancery Court. (RSMF ¶¶ 156-162.) This is also a clear breach of the August Agreement. *Cf. Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 323 (Del. Ch. May 24, 2022) (finding plaintiff in derivative action stated claim for breach of contract against company committee members where committee allegedly granted award of performance shares in excess of those authorized under stockholder-approved equity compensation plan).

4.   Navidea suffered damages as a result of Dr. Goldberg's breach.

Dr. Goldberg contends that, as a matter of law, Navidea cannot establish that his breach caused Navidea damages, but his argument on this point also fails. First, by attempting to confine Navidea's damages to those caused by the Challenged Transactions, Dr. Goldberg ignores his other breach of the August Agreement—his failure to execute the Transaction Documents. As established above, that breach caused Navidea to suffer reliance damages in the form of the costs and fees it incurred to fund Macrophage based on the expectation that Dr. Goldberg would perform under the August Agreement. (SMF ¶ 73; *see* RSMF ¶¶ 172 (quoting Kazan Resp. Decl. Ex. 15 at 723:13-723:17), 173 (quoting Zimmer Decl. Ex. A ¶ 115), 174, 177.)

Second, Dr. Goldberg creates this straw man—purposely ignoring his initial breach of the August Agreement in favor of the Challenged Transactions—so that he can speciously argue the doctrine of issue preclusion. He contends that, because the Delaware Court found Macrophage was not damaged by the Challenged Transactions, Navidea cannot have been harmed either. *See* Goldberg MOL at 16, 21. But his issue preclusion argument fails. Whether Macrophage was

damaged from Dr. Goldberg's Challenged Transactions vis-à-vis its breach of fiduciary duty claim in Delaware is a different question than whether Navidea suffered damages under the parties' contract as a result of Dr. Goldberg's actions. They involve different entities, alleging different harm, caused by different alleged wrongs. As Dr. Goldberg concedes in his moving papers, the "Delaware Court of Chancery did not address whether the [Challenged Transactions] breached the August Agreement" because the claim in that case was for breach of fiduciary duty—not breach of contract. *See* Goldberg MOL at 16 (citing DSMF ¶ 140). Further, as noted previously, the Delaware Court <u>did</u> find that Dr. Goldberg breached his fiduciary duty by engaging in self-dealing and "taking the Navidea Sub-License for his own." (SMF ¶ 70 (quoting Kazan Decl. Ex. 2).) There is no doubt that converting Navidea's interest to his own can cause Navidea losses.

Further, contrary to Dr. Goldberg's conclusory assertion that his breaches did not cause any damages, Jed Latkin, Navidea and Macrophage's CEO, testified during his deposition that Navidea suffered losses resulting from both Dr. Goldberg's failure to execute the Transaction Documents and the subsequent Challenged Transactions. (*See* SMF ¶ 73 (citing Kazan Decl. Ex. 33).) Specifically, Mr. Latkin testified that Navidea incurred expenses—including expenses on attorneys and administrative fees as a result of Dr. Goldberg's breach. (*See id.*) Dr. Goldberg's breach also caused Navidea to commence this action—something Navidea would not have done had Dr. Goldberg followed through with his obligations. (*See* SMF ¶ 43 (citing Kazan Decl. Ex. 18); RSMF ¶¶ 173, 174.) By failing to execute the Agreement and by engaging in the Challenged Transactions, Dr. Goldberg failed to further the interests of Macrophage as a separate entity to run Macrophage in a way that would increase the chances of both Navidea and Macrophage receiving investment, thus destroying the structure that was planned. This, too, caused Navidea damages. (*See* SMF ¶ 73 (citing Kazan Decl. Ex. 33).) At a minimum, this testimony creates a disputed issue

of material fact with respect to Dr. Goldberg's theory on whether Navidea suffered damages. That is enough to deny Dr. Goldberg summary judgment.

     5.   <u>Dr. Goldberg breached the August Agreement by failing to forward health insurance premium payments</u>.

Dr. Goldberg's argument regarding his breach of the health insurance provision in the August Agreement also fails. The contract expressly provides that Navidea will cover the costs to continue Dr. Goldberg's health coverage by paying those amounts under COBRA. (DSMF ¶ 97 (quoting Zimmer Decl. Ex. D at 1).) But because Navidea issued those payments directly to Dr. Goldberg, it is clear from the contract that the parties expected that he would forward those premiums to the insurance carrier. He did not, thereby causing Navidea to suffer damages. (RSMF ¶ 170 (citing Kazan Decl. Ex. 20 at 153:6-153:25).)

**B.    Dr. Goldberg breached the implied covenant of good faith and fair dealing.**

Dr. Goldberg's motion for summary judgment seeking dismissal of Navidea's breach of the implied covenant of good faith and fair dealing claim also should be denied. It is true that an implied covenant claim is not implicated when a defendant "simply acts in its own best interests." *See* Goldberg MOL at 19 (citing *Winshall v. Viacom Int'l, Inc.*, 55 A.3d 629, 636 (Del. Ch. 2011)). But, when those actions and interests are taken in bad faith and contradict and frustrate the clear purpose of the parties' agreement, thereby preventing the plaintiff from recovery the fruits of the parties' bargain, the implied covenant has been breached. *See Chamison v. HealthTrust, Inc.-The Hospital Co.*, 735 A.2d 912, 920-22 (Del. Ch. 1999), *aff'd*, 748 A.2d 407 (Del. 2000).

     1.   <u>Dr. Goldberg's failure to execute the Transaction Documents is a breach of the implied covenant of good faith and fair dealing</u>.

Dr. Goldberg contends that he cannot have breached the implied covenant because the August Agreement does not require him to sign the Transaction Documents. *See* Goldberg MOL at 20-21. As discussed in Section II.A.1, *supra*, however, the August Agreement uses mandatory

language in the context of the parties' duty to enter into the Transaction Documents. (*See* SMF ¶¶ 33-34 (quoting Kazan Decl. Ex. 10).) *See In re NextMedia Group, Inc.*, 440 B.R. at 83. Thus, the August Agreement contemplates that the parties will sign the Transaction Documents (and in fact certain provisions could not be effectuated without Transaction Documents). Dr. Goldberg's failure to do so, combined with his bad faith attempts to renegotiate the agreed-upon material terms, is a breach. Thus, contrary to Dr. Goldberg's argument, Navidea's implied covenant claim does not "contravene the parties' express agreement" nor "forge a new agreement beyond the scope of the written contract." *See* Goldberg MOL at 20 (quoting *Chamison*, 735 A.2d at 921).

2. <u>Dr. Goldberg breached the implied covenant by issuing himself more equity in Macrophage than the August Agreement permitted.</u>

The record also establishes that Dr. Goldberg breached the implied covenant of good faith and fair dealing by engaging in the Challenged Transactions. Dr. Goldberg acted in bad faith by self-dealing, as the Delaware Court found he breached the duty of loyalty to Macrophage and its shareholders (including Navidea). (SMF ¶¶ 70-71 (quoting Kazan Decl. Ex. 2).) And his actions deprived Navidea of the benefit of its bargain under the August Agreement, which benefit included avoiding the further dilution of Navidea's interest in Macrophage until after Macrophage obtained $10 million in new financing. (SMF ¶ 49 (quoting Kazan Decl. Ex. 10).)

Dr. Goldberg argues that his self-dealing cannot breach both an express provision of the August Agreement and breach the implied covenant. *See* Goldberg MOL at 21. It is true that Navidea cannot succeed on <u>both</u> its breach of contract and breach of implied covenant claim, but Delaware courts have held that those claims <u>can</u> be pled in the alternative, provided all elements of an implied covenant claim are satisfied. *See, e.g.*, *Renco Grp, Inc. v. MacAndrews AMG Holdings LLC*, C.A. No. 7668-VCN, 2015 WL 394011, at *7 (Del. Ch. Jan. 29, 2015) (denying motion to dismiss implied covenant claim pled in alternative where plaintiff alleged defendant's

16

misconduct affected matters so fundamental to contract that plaintiff's reasonable expectations were frustrated); *eCommerce Industries, Inc. v. MWA Intelligence, Inc.*, C.A. No. 7471-VCP, 2013 WL 5621678, at *33-35 (Del. Ch. Sept. 30, 2013) (finding party breached express provision in contract but also concluding, in alternative, that gap existed in parties contract and if they had foreseen the conduct that constituted the breach, they would have agreed to proscribe it); *Clean Harbors, Inc. v. Safety-Kleen, Inc.*, C.A. No. 6117-VCP, 2011 WL 6793718, at *9 (Del. Ch. Dec. 9, 2011) (finding alleged facts could support implied covenant claim where express term of contract required defendant to use "good faith discretion," but other terms were potentially ambiguous as to defendant's obligations); *Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*, C.A. No. 3658-VCS, 2009 WL 1124451, at *6-8 (Del. Ch. Apr. 20, 2009) (denying motion to dismiss implied covenant claim pled in alternative to breach of contract claim).

Here, based on Dr. Goldberg's own arguments, Navidea's implied covenant claim is not foreclosed by its breach of contract claim. Navidea acknowledges that the August Agreement does not <u>expressly</u> prohibit Dr. Goldberg from engaging in self-help by creating a separate entity, transferring Macrophage's primary asset to that entity, and surreptitiously obtaining interest in Macrophage. But an implied covenant claim does not require that the contract <u>expressly</u> prohibit Dr. Goldberg's actions. On the contrary, the absence of such language is precisely the form of contractual gap that the implied covenant is designed to fill. The parties could not have foreseen Dr. Goldberg's post-contract conduct. They "did not address that issue because the reality" is that Dr. Goldberg's breach of his fiduciary duty to Macrophage through the Challenged Transactions was "so fundamental that it did not warrant consideration." *See Buckeye Partners, L.P. v. GT USA Wilmington, LLC*, C.A. No. 2020-0255 (JTL), 2022 WL 906521, at *24 (Del. Ch. Mar. 29, 2022).

Dr. Goldberg's argument that Navidea cannot prove damages caused by the Challenged Transactions also fails, as set forth in Section II.A.4, *supra*.

3. <u>Dr. Goldberg also breached the implied covenant of good faith and fair dealing by failing to advance Macrophage's interests.</u>

Dr. Goldberg's argument, buried in a footnote, that Navidea cannot succeed on an implied covenant claim based on his failure to work to advance Macrophage's business, also should be rejected. *See* Goldberg MOL at 22 n.9. His contention that Navidea's pleading does not expressly allege that Dr. Goldberg failed to advance the business of Macrophage fails because under both the Federal Rules of Civil Procedure and the Delaware Chancery Court's procedural rules, a party may move to amend the pleadings to conform to the evidence—even up until the time of trial. *See* Fed. R. Civ. P. 15(b)(2); Del. Ch. Ct. R. 15(b).

Further, Dr. Goldberg's contention that the allegation cannot form the basis for an implied covenant claim because it is not reflected in the contract is specious at best. The purpose of the August Agreement was for Navidea and Macrophage to be operated separately—with Navidea focusing on diagnostics and Macrophage focusing on therapeutics—so that they would both be more attractive to investors. (*See* SMF ¶ 25, RSMF ¶ 31 .) The parties expected that, as CEO of Macrophage going forward, Dr. Goldberg would work to advance Macrophage's interests and fulfill his fiduciary duties. That obligation need not be spelled out in the parties' contract because it is implied. Far from a "free-floating duty" unattached to the underlying contract (*see* Goldberg MOL at 19, 22 n.9), this duty derives directly from the relationship that the August Agreement established. Dr. Goldberg failed to act to advance Macrophage's interest and, in fact, <u>undermined</u> Macrophage's interest through his "underhanded tactics to deny the other side the fruit of the parties' bargain." *See Kelly v. McKesson HBOC, Inc.*, No. Civ.A. 99C-09-265 (WCC), 2002 WL 88939, at *10 (Del. Super. Ct.) (citing *Chamison v. Healthtrust, Inc.*, 735 A.2d at 920).

### C.      Navidea's declaratory judgment claim survives even if the Court were to grant Dr. Goldberg summary judgment on Navidea's substantive breach claims.

Dr. Goldberg contends that the Court should dismiss Navidea's declaratory judgment claim because Navidea's substantive claims fail and the Declaratory Judgment Act does not create substantive rights. But Dr. Goldberg is wrong.

As an initial matter, Dr. Goldberg's argument presupposes that the Court has dismissed both Navidea's breach of contract and implied covenant claims. For all the reasons set forth above, Dr. Goldberg's motion for summary judgment on these two substantive claims should be denied and therefore his argument concerning Navidea's declaratory judgment claim collapses.

Dr. Goldberg's argument also betrays a misunderstanding of the nature of Navidea's declaratory judgment claim. Navidea seeks a declaration that its performance is excused or the August Agreement is terminated, thereby clarifying the rights and obligations of the parties going forward even if the Court finds that Dr. Goldberg did not commit a breach (*i.e.*, what is the legal impact of the language "any subsequent failure to execute the Transaction Documents shall not render the provisions of this Agreement invalid").  That request is not the same as, and therefore is not subsumed by, Navidea's substantive breach claims. Indeed, even if the Court concluded (although it should not) that Navidea cannot prove it is entitled to recover damages for Dr. Goldberg's breach of the August Agreement, such a finding would not necessarily foreclose the Court from determining and articulating the remaining obligations of the parties under the contract. Merely because Navidea may not be able to satisfy all the elements of its substantive claims does not automatically mean that its continuing obligations under the existing contract are clear.

Courts have recognized that declaratory judgment claims can survive dismissal of the underlying substantive claims. As Judge Vyskocil noted in *Pfizer Inc. v. US Dept. HHS*:

> Absent a substantive claim related to the same dispute, in order to sustain a claim
> for a declaratory judgment, plaintiffs must provide facts to establish that there is a

> dispute between the parties that is "definite and concrete, touching the legal relations of parties having adverse legal interests" and that it is "real and substantial" and "admits of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Case No. 20-cv-4920 (MKV), 2021 WL 4523676, at *6 (S.D.N.Y. Sept. 30, 2021) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). Those requirements are all met here, for the reasons Navidea argued in its moving papers. *See* Goldberg/Navidea MOL at 22-23. The Second Circuit identified prudential factors to consider in determining whether a declaratory judgment is ripe for consideration, all of which weigh in favor of issuing a declaratory judgment in this action. *See* Navidea/Macrophage MOL at 22 (quoting *Admiral Insurance Company v. Niagara Transformer Corp.*, 57 F. 4th 85, 99-100 (2d Cir. 2023)). In sum, Dr. Goldberg's summary judgment motion dismissing Navidea's declaratory judgment claim should be denied.

**III.   Dr. Goldberg is not entitled to summary judgment on his counterclaim and third-party claim because he fails to establish breaches of the August Agreement.**

Dr. Goldberg's claims against Navidea and Macrophage fail. He cannot establish that Navidea breached the August Agreement because he failed to satisfy a condition precedent to Navidea's obligation to perform. And even if Navidea's performance otherwise would have come due, Dr. Goldberg materially breached the contract, thereby excusing Navidea's performance. Dr. Goldberg also cannot establish that Macrophage breached the August Agreement because he cannot satisfy the breach, causation, or damages elements of his claim. Accordingly, his motion for summary judgment on his counterclaim and third-party claim also should be denied.

**A.   Navidea did not breach the August Agreement.**

Although it is undisputed that Navidea did not issue Dr. Goldberg all of the 23.5 million shares of Navidea common stock under Regulation D, Dr. Goldberg nevertheless cannot establish that Navidea breached the August Agreement. As set forth in Navidea's moving papers on its own

summary judgment motion, Dr. Goldberg's execution of the Transaction Documents was a condition precedent to Navidea issuing its shares. *See* Navidea/Macrophage MOL at 7-9. "Where the parties have created a condition precedent, the occurrence of that condition is necessary to give rise to the other party's duty to perform; if the condition does not occur, the duty never arises." *Ainslie*, 2023 WL 106924, at *10. Dr. Goldberg never executed the Transaction Documents and the deal never closed. Thus, Navidea's obligation to issue the shares never came due.

Dr. Goldberg relies on Jed Latkin's testimony to argue that restrictive legends were added to Navidea shares in order to prevent Dr. Goldberg from receiving benefits from the shares (*see* Goldberg MOL at 23), but Dr. Goldberg misrepresents that testimony and mischaracterizes the facts. When Dr. Goldberg attempted to change the terms of the already binding August Agreement and refused to execute the draft Transaction Documents, Navidea issued most of the shares with a restrictive legend in an effort to convince Dr. Goldberg to move forward with the parties' binding agreement. (*See* SMF ¶ 45 (citing Kazan Decl. Ex. 19).) Jed Latkin testified that issuing 18.5 million shares with the restrictive legend complied, at least partially, with the August Agreement. (*See* RSMF ¶ 168.) Navidea attempted to reach an agreement with Dr. Goldberg on the Transaction Documents but was never able to do so. As Mr. Latkin explained:

> We were attempting to comply, so we issued the shares. In the absence of a closing date, in the absence of acknowledgment of a lock-up agreement, we issued the shares as we did to hopefully continue to move forward with completion of the agreement.

(RSMF ¶ 169.) Unfortunately, Dr. Goldberg refused to move forward to complete the August Agreement. As such, Dr. Goldberg breached the August Agreement, the condition precedent was never satisfied, and Navidea was not obligated to issue the shares as provided under the contract.

Further, even if the Court were to find that the condition precedent in the August Agreement somehow was satisfied, Dr. Goldberg's breach claim still fails because he subsequently

materially breached the August Agreement by engaging in self-help and issuing himself more equity in Macrophage than the contract permitted through the Challenged Transactions. (SMF ¶¶ 55-58; RSMF ¶¶ 156-162.) Dr. Goldberg's material breach of the August Agreement relieved Navidea (and Macrophage) of any further performance obligations. His motion for summary judgment therefore should be denied and his request for relief—the release of Navidea shares from escrow, issuance of additional shares, and removal of restrictive legends on the shares that have been issued—also should be rejected. And, in any event, Dr. Goldberg's request for specific injunctive relief has already been rejected by the Court. *See* ECF Doc. No. 61 at 16 n.14, 19 (dismissing Count IV of Dr. Goldberg's Counterclaim for Injunctive Relief, which includes seeking an order "remov[ing] all restrictive legends from all Navidea shares held by Dr. Goldberg for any period after February 14, 2019," but granting him permission to seek leave to file an amended counterclaim provided he established standing to seek injunctive relief); ECF Doc. No. 108 at 2 (denying Dr. Goldberg's motion to amend to assert a counterclaim for injunctive relief because Dr. Goldberg failed "to address the Court's explicit instruction to explain why [he] believes 'he has standing to seek injunctive relief.'").

**B.      Dr. Goldberg cannot satisfy the elements of his claim against Macrophage.**

While there is no dispute that Macrophage did not issue the MT Super Common Voting Stock to Dr. Goldberg, he nonetheless is not entitled to summary judgment on this claim.

First, Macrophage shares were not issued to Dr. Goldberg because of Dr. Goldberg's own failure to act. As the CEO of Macrophage from August 14, 2018 to February 20, 2019 (SMF ¶ 5), Dr. Goldberg could have caused Macrophage to issue the Super Common Voting Stock to himself. But there is no dispute that he failed to do so. (SMF ¶ 47.) Thus, whether viewed as prevention of Macrophage's performance of the contract, a disruption in the chain of causation of damages from the breach, acquiescence in the non-issuance of the shares, or a failure by Dr. Goldberg to mitigate

damages (*see* Navidea/Macrophage MOL at 12-13), Dr. Goldberg cannot satisfy the breach, causation, or damages elements of his breach of contract claim. *See, e.g.*, *Heather Const., Inc. v. Gangi*, 1987 WL 8215, at *2 (Del. Super. Mar. 16, 1987) (prevention of one party's performance of contract by other party is itself a breach); *Eastern Continental Mining and Development Ltd. v. Signet Group LLC*, No. 12-cv-1930 (KBF), 2015 WL 5707145, at *19 (S.D.N.Y. Sept. 29, 2015) (citing *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003)) (noting "resulting damages" (*i.e.* – causation) is an element of breach of contract claim under Delaware law); *Lehman Brothers Holdings, Inc. v. Spanish Broadcasting System, Inc.*, Civ. A. No. 8321-VCG, 2014 WL 718430, at *9 (Del. Ch. Feb. 25, 2014) (explaining doctrine of acquiescence); *Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20 Civ. 3773 (LGS), 2023 WL 2565208, at *4 (S.D.N.Y. Mar. 17, 2023) (citing *Brzoska v. Olson*, 668 A.2d 1355, 1357, 1367 (Del. 1995)) (Delaware law imposes duty to mitigate damages, whether claim sounds in tort or contract).

Second, Dr. Goldberg materially breached the August Agreement by engaging in the Challenged Transactions, thereby excusing Macrophage from its obligation to issue the Super Common Voting Stock. *See Ainslie*, 2023 WL 106924, at *10; *see BioLife Sol., Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003).

Finally, Dr. Goldberg cannot establish that he suffered any damages from the alleged breach because the Court has already ruled that monetary damages are the only available remedy and Dr. Goldberg's expert testimony regarding the damages supposedly resulting from Macrophage's alleged breach has been excluded under *Daubert*. (ECF Doc. No. 290.) Under Delaware law, damages based on valuation must be established by expert opinion and proof of such damages cannot be speculative. *Frontier Oil v. Holly Corp.*, No. Civ. A 20502, 2005 WL 1039027, at *39 (Del. Ch. Apr. 29, 2005). Because he has no admissible expert opinion on the

issue of damages, Dr. Goldberg cannot satisfy the damages element of his claim. *See, e.g.*, *Lippe v. Bairnco Corp.*, 99 Fed. Appx. 274 (2d Cir. 2004) (summary order) (affirming summary judgment in favor of defendants after proper exclusion of plaintiff's valuation expert where expert testimony on valuation of assets was necessary to plaintiff's claim).

## IV.   The Court should not award Dr. Goldberg his attorneys' fees and costs.

Dr. Goldberg's request for an award of attorneys' fees and costs should be denied as premature at this stage of the litigation. But, even if he were to present his request at the appropriate time, Dr. Goldberg is not entitled to recover his attorneys' fees and costs at all.

The August Agreement provides that the "prevailing party in any [action under the August Agreement] will be entitled to recover its reasonable attorneys' fees and costs." (RSMF ¶ 167 (quoting Zimmer Decl. Ex. D).) In determining a "prevailing party" in these circumstances, Delaware courts look to the language of the relevant agreement. *Comrie v. Enterasys Networks, Inc.*, Case No. 19254, 2004 WL 936505, at *2 (Del. Ch. Apr. 27, 2004). Generally, Delaware courts hold that the all-or-nothing approach is the proper analysis to identify the prevailing party. *Id.* at *2. That analysis involves an inquiry into which party predominated in the litigation. *See id.*

Here, for all the reasons set forth above, Dr. Goldberg's motion for summary judgment should be denied and therefore he is not the "prevailing party." But even if Dr. Goldberg were entitled to summary judgment on some—or even all—of Navidea's or his own remaining claims that are the subject of the instant motion, he still would not have "predominated in the litigation" because Navidea has already prevailed on the most material and substantial claims.

Dr. Goldberg commenced a proceeding in this Court on or about March 7, 2019, in which he asserted claims for breach of contract seeking damages in excess of $8.25 million. (*See Goldberg v. Navidea Biopharmaceuticals, Inc., et al.*, Case No. 19-cv-02101 (VEC) ("Goldberg Action"), ECF Doc. No. 1.) Following consolidation of the Goldberg Action with the instant

action, Dr. Goldberg refiled his claims against Navidea and Macrophage, asserting claims for breach of the August Agreement and wrongful discharge as Macrophage's CEO, and seeking $26 million and certain declaratory and injunctive relief. (*See* Goldberg ECF Doc. No. 31.) Following motions to dismiss and motions to exclude, Dr. Goldberg's claim is, at most, $2,237,750 against Navidea for failure to issue stock. (ECF Doc. No. 290). Given that Dr. Goldberg's original claims have been largely dismissed and his damages claims reduced by a factor of 10, Dr. Goldberg cannot be deemed to have predominantly prevailed in this litigation.

## **CONCLUSION**

Accordingly, for the reasons set forth herein, Dr. Goldberg's motion for summary judgment should be denied in its entirety.

Date:   June 29, 2023
        New York, New York

Respectfully submitted,

/s/ Barry M. Kazan
Barry M. Kazan, Esq.
Timothy J. Quill, Jr., Esq.
Mintz & Gold LLP
600 Third Avenue, 25th Floor
New York, New York 10016
Phone: (212) 696-4848
Fax:    (212) 696-1231
kazan@mintzandgold.com
quill@mintzangold.com

*Attorneys for Plaintiff /Counterclaim Defendant*
*Navidea Biopharmaceuticals, Inc. and*
*Third-Party Defendant*
*Macrophage Therapeutics, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2023, I caused to be served on counsel of record, electronically via the Court's electronic filing system, a true and correct copy of **Plaintiff/Counterclaim-Defendant Navidea Biopharmaceuticals, Inc.'s and Third-Party Defendant Macrophage Therapeutics, Inc.'s Memorandum of Law in Opposition to Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Dr. Michael M. Goldberg, M.D's Motion for Summary Judgment.**

/s/ Barry M. Kazan
Barry M. Kazan