UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: NAVIDEA BIOPHARMACEUTICALS LITIGATION | Case No: 1:19-cv-01578-VEC-VF<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

# NAVIDEA BIOPHARMACEUTICALS, INC.'S AND MACROPHAGE THERAPEUTICS, INC.'S REPLY IN FURTHER SUPPORT OF <u>THEIR MOTION FOR SUMMARY JUDGMENT</u>

MINTZ & GOLD LLP
Barry M. Kazan, Esq.
Timothy J. Quill, Jr., Esq.
600 Third Avenue, 25th Floor
New York, New York 10016
Tel: (212) 696-4848
Fax: (212) 696-1231

*Attorneys for Plaintiff /Counterclaim Defendant Navidea Biopharmaceuticals, Inc. and Third-Party Defendant Macrophage Therapeutics, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    Navidea is Entitled to Summary Judgment on its Affirmative Claims ............................... 2

    Dr. Goldberg Cannot Satisfy the Elements of his Counterclaim and Third-Party Claim .... 6

    The Court Should Grant Navidea's Request for a Declaratory Judgment .......................... 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adchemy, Inc. v. Plateau Data Servs., LLC*,
   2017 WL 3412159 (Del. Super. June 28, 2017) ......................................................................... 10

*Chamison v. HealthTrust, Inc.—Hospital Co.*,
   735 A.2d 912 (Del. Ch. 1999) ..................................................................................................... 8

*Dana Corp. v. LTV Corp.*,
   668 A.2d 752 (Del. Ch. 1995) ................................................................................................... 10

*DeMarie v. Neff*,
   2005 WL 89403 (Del. Ch. Jan. 12, 2005) ................................................................................... 8

*Dolan v. Altice USA, Inc.*,
   2019 WL 2711280 (Del. Ch. June 27, 2019) .............................................................................. 2

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
   702 A.2d 1228 (Del. 1991) ......................................................................................................... 2

*Garfield v. Allen*,
   277 A.3d 296 (Del. Ch. 2022) ..................................................................................................... 5

*Kuhn Const., Inc. v. Diamond State Port Corp.*,
   990 A.2d 393 (Del. 2010) ........................................................................................................... 7

*Kulp v. Mann-Beebe*,
   2006 WL 1149146 (Del. Super. Mar. 21, 2006) ....................................................................... 10

*Lonergan v. EPE Holdings LLC*,
   5 A.3d 1008 (Del. Ch. 2010) ....................................................................................................... 4

*Nemec v. Shrader*,
   991 A.2d 1120 (Del. 2010) ......................................................................................................... 3

*Rexnord Indus., LLC v. RHI Holdings, Inc.*,
   2009 WL 377180 (Del. Super. Feb. 13, 2009) ......................................................................... 10

**PRELIMINARY STATEMENT**

Contrary to the arguments advanced by Dr. Goldberg, which require him to take inconsistent positions regarding unambiguous terms in a contract, the undisputed facts demonstrate that Dr. Goldberg materially breached the August Agreement and the implied covenant of good faith and fair dealing. Specifically, Dr. Goldberg failed to execute Transaction Documents, sought to unilaterally modify the executed contract, engaged in the Challenged Transactions, and refused to advance the interests of Macrophage – the fundamental purpose of the August Agreement.

The undisputed facts (and a prior binding ruling on Dr. Goldberg) demonstrate that when Navidea refused to concede to Dr. Goldberg's improper demands to alter the contract, he engaged in unlawful self-help by surreptitiously creating a shell company and transferring assets to grant himself additional equity in Macrophage—equity that the August Agreement expressly prohibited. The Delaware Chancery Court already concluded that Dr. Goldberg breached his fiduciary duty to Macrophage (and Navidea) by engaging in the Challenged Transactions.  In so doing, Dr. Goldberg violated the express terms of, and undermined and frustrated the central purpose of, the August Agreement, thereby causing Navidea to suffer damages.

Accordingly, Navidea has established that it is entitled to summary judgment in its favor on its breach of contract and implied covenant claims. Additionally, because Dr. Goldberg's breaches are material, Navidea and Macrophage were excused from further performance thereby defeating Dr. Goldberg's affirmative claims.

In response to Navidea's and Macrophage's showings, Dr. Goldberg espouses general principles of law but fails to apply them accurately to the facts of this case. He also advances inconsistent and specious arguments, several of which this Court has already rejected. But even if the Court were to adopt his arguments, there are disputed issues of material fact with respect to

certain elements of the parties' claims as framed by Dr. Goldberg such that the Court should, at a minimum, grant Navidea's request for a declaratory judgment and eliminate any uncertainty among the parties regarding their remaining rights and obligations under the August Agreement.

## ARGUMENT

**Navidea is Entitled to Summary Judgment on its Affirmative Claims.**

As Navidea established in its opening brief, the August Agreement was an enforceable contract that Dr. Goldberg breached causing Navidea damages. Specifically, Dr. Goldberg breached the August Agreement and implied covenant by (i) failing to enter and execute the Transaction Documents (SMF ¶¶ 41-44), (ii) refusing to perform unless the existing contract's terms were changed (SMF ¶¶ 37, 41), (iii) failing to perform his duties as CEO of Macrophage (SMF ¶ 38), and (iv) issuing himself additional ownership of Macrophage's assets (albeit indirectly) before Macrophage obtained at least $10 million in financing (SMF ¶¶ 48-50, 55, 70).

In his opposition, Dr. Goldberg relies on Navidea witnesses' deposition testimony interpreting the August Agreement to argue that he was not required to sign the Transaction Documents. *See* Goldberg Opposition Brief (ECF Doc. No. 328) ("Goldberg Opp.") at 19. But the Court has already concluded that the contract is unambiguous and therefore this parol evidence (witness testimony concerning the parties' intent in negotiating the contract) is inadmissible. *See* ECF Doc. No. 61 at 9; *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1991) (parol evidence cannot be used to interpret parties' intent if contract is unambiguous).[1]

Dr. Goldberg contends the Challenged Transactions were not a breach because the August Agreement does not <u>expressly</u> prohibit him from transferring Macrophage's primary asset to

---

[1] *Dolan v. Altice USA, Inc.*, 2019 WL 2711280 (Del. Ch. June 27, 2019), which Dr. Goldberg cites for his argument (*see* Goldberg Opp. at 19), is distinguishable because the court in that case found the contested clauses of a merger agreement ambiguous and thus received parol evidence to discern the parties' intent. Such evidence is irrelevant here where the August Agreement is unambiguous and its interpretation is solely a question of law.

2

M1M2 and issuing himself equity in that entity. *See* Goldberg Opp. at 10-11. But the very purpose and result of his machinations was to grant himself additional ownership in Macrophage that the contract <u>does</u> expressly prohibit. Indeed, under the contract, Dr. Goldberg was not allowed to issue himself additional equity without Navidea's consent until after Macrophage obtained at least $10 million in financing—financing that it was incumbent upon Dr. Goldberg, as CEO, to obtain. (*See* SMF ¶ 49; Kazan Decl. Ex. 10.) Because Macrophage never obtained that financing (and Navidea did not consent), the August Agreement did not allow issuance "to Goldberg or any of his affiliates any equity or rights to purchase equity[.]" (*Id.*) Dr. Goldberg issued himself additional equity anyway, breaching the express terms of the contract. (SMF ¶¶ 49-50, 55-58; RSMF ¶¶ 156-162.)

Even in the face of the undisputed facts, Dr. Goldberg pushes his specious argument even further. Quoting *Nemec v. Shrader*, 991 A.2d 1120, 1127 (Del. 2010), Dr. Goldberg argues that an "'implied covenant will not infer language that contradicts the exercise of an express contractual right.'" *See* Goldberg Opp. at 22-23. Following his logic, the Court must find that the contract <u>expressly granted</u> him the right to engage in the Challenged Transactions that the Delaware Court found were a breach of his fiduciary duty. *See id.* On the contrary, nothing in the contract suggests that Dr. Goldberg has the right to circumvent the restriction in the MT Super Voting Shares paragraph of the contract, let alone an "express contractual right" granting him the ability to do so.

It is undisputed that a "paramount goal[] of the August Agreement was to separate Macrophage from Navidea such that [Macrophage] would be more attractive to investors." Goldberg Opp. at 23. (*See* SMF ¶ 25.) In exchange for his work as CEO to advance the interests of Macrophage, including obtaining $10 million in financing so that Macrophage could develop therapeutics and its own revenue stream, Dr. Goldberg was to be compensated, in part, with 5.0% ownership in Macrophage. (SMF ¶ 31 (citing Kazan Decl. Ex. 10); RSMF ¶ 156.) By

3

surreptitiously creating a subsidiary of Macrophage, transferring to it substantially all of Macrophage's assets (SMF ¶¶ 50-55; RSMF ¶ 157), and issuing himself equity in the subsidiary—he granted himself more than the 5% the August Agreement contemplated (RSMF ¶¶ 156-162.)

Thus, Dr. Goldberg engaged in conduct that violated the essential purpose of the August Agreement, thereby establishing a breach of the implied covenant. Indeed, had the parties even contemplated that Dr. Goldberg might breach his fiduciary duty to Macrophage and Navidea by increasing his 5% ownership of Macrophage through a shell company without raising the $10 million, they would have agreed that such an action would be contradictory to the entire concept and purpose of the August Agreement.

The Court also should reject Dr. Goldberg's attempt to recharacterize the findings in the Delaware Action. *See* Goldberg Opp. at 24. Although the elements of a breach of fiduciary duty claim are distinct from those in Navidea's claims in this action, the factual findings of the Delaware Chancery Court,[2] when viewed in the context of the August Agreement's language and its undisputed purpose, establish a breach of the implied covenant. Dr. Goldberg argues the Delaware Chancery Court did not find a breach of the August Agreement or the implied covenant, but that ignores the Chancery Court's finding that Dr. Goldberg's "self-help was unjustified and [he] must be held accountable."[3] (Kazan Decl. Ex. 2 at 2.).

---

[2] Under the doctrine of nonmutual offensive collateral estoppel, Dr. Goldberg cannot challenge the factual conclusions of the Delaware Chancery Court. *See* Navidea and Macrophage Memo of Law in Support of Motion for Summary Judgment (ECF Doc. No. 315) at 17.

[3] To that end, contrary to Dr. Goldberg's argument, Navidea is not trying to use the implied covenant as a "substitute for fiduciary duty analysis." *See* Goldberg Opp. at 24 (quoting *Lonergan v. EPE Holdings LLC*, 5 A.3d 1008, 1017 (Del. Ch. 2010)). Navidea simply asks the Court to recognize that the very conduct of Dr. Goldberg that constituted a breach of his fiduciary duty to Macrophage also violates the purpose of the August Agreement, because that contract was designed to improve Macrophage's ability to continue as a standalone therapeutics company. In any event, Dr. Goldberg's citation to *Lonergan* is misplaced because the parties' agreement in that case expressly eliminated fiduciary duties under the Delaware Limited Partnership Act, and the plaintiffs asserted an implied covenant claim in order to circumvent that provision. *Lonergan*, 5 A.3d at 1017-19. Thus, the *Lonergan* court was hesitant to resort to the implied covenant. There is no such language eliminating fiduciary duties in the August Agreement.

Dr. Goldberg's arguments regarding Navidea's damages fare no better. Merely because the court in the Delaware Action concluded that Macrophage did not establish quantifiable damages in its case does not preclude Navidea from establishing its own damages here. *See* Goldberg Opp. at 19, n.6. Had Dr. Goldberg performed under the contract, Navidea—as Macrophage's majority owner—would have benefited from Macrophage's success as a therapeutics company. Instead, Navidea suffered losses—both expectation damages (the lost revenue to Macrophage) and reliance damages (the funds it advanced to Macrophage under the August Agreement). And contrary to Dr. Goldberg's argument, Navidea is not seeking the return of attorneys' fees it spent in this litigation, but rather the return of funds it loaned to Macrophage under the contract. That Macrophage may have spent some of those funds on attorneys' fees to undo the Challenged Transactions does not preclude Navidea from suffering damages as a lender. Thus, Dr. Goldberg's citation to Delaware case law prohibiting recovery of litigation fees is inapposite. *See* Goldberg Opp. at 19-20.

Nor is there any merit to Dr. Goldberg's argument that Navidea cannot establish causation. *See* Goldberg Opp. at 20. Navidea's losses, including the funds loaned to Macrophage upon the expectation Dr. Goldberg would perform and those funds loaned to Macrophage to defend this action, naturally flowed from Dr. Goldberg's breaches. (Kazan Decl. Ex. 16 at 485:15-24; SMF ¶ 73.) The benefit of the August Agreement was that Macrophage would exploit the patent for therapeutics but because Dr. Goldberg did not comply with the contract, Macrophage lost the ability to exploit that patent during the time of Dr. Goldberg's inappropriate conduct. (SMF ¶ 73.)

Finally, even if Navidea cannot establish the damages it suffered as a result of Dr. Goldberg's breaches with sufficient precision, Navidea can still recover nominal damages under Delaware law. *See Garfield v. Allen*, 277 A.3d 296, 328 (Del. Ch. 2022). This is enough to satisfy the final element of its affirmative claims.

**Dr. Goldberg Cannot Satisfy the Elements of his Counterclaim and Third-Party Claim.**

Dr. Goldberg neither refuted Navidea's and Macrophage's demonstration that he failed to establish the elements of both his counterclaim and third-party claim nor raised an issue of genuine issue of material fact precluding summary judgment in their favor

Dr. Goldberg contorts the language of the August Agreement to argue that the term "Closing Date" means the effective date of the contract, August 14, 2018, and contends that is the date upon which Navidea was supposed to issue the shares. *See* Goldberg Opp. at 7-8. But Dr. Goldberg is wrong and his argument defies the legal principles he espouses. The August Agreement uses the terms "effective date" and "August 14, 2018" to describe the date the contract was signed, but states that Navidea must issue shares "on the date of the consummation of the Transaction (such date, the 'Closing Date')" reflecting a different date than the effective date for execution of the Transaction Documents. A contract must be interpreted to give effect to all its terms. *See* Goldberg Opp. at 7. Thus, application of Dr. Goldberg's own legal principle distinguishes between August 14, 2018 and the "Closing Date" upon which the Navidea shares were to be issued. Because these are two distinct dates, there is no merit to Dr. Goldberg's argument that Navidea had to issue the shares on August 14, 2018.

Dr. Goldberg also fails to rebut that the execution of the Transaction Documents was a condition precedent to Navidea's issuance of shares. His reliance on the "failure to execute the Transaction Documents shall not render provisions of this Agreement invalid" language as a crutch fails. *See* Goldberg Opp. at 7. That language does not eliminate the obligation to execute the Transaction Documents; it simply makes clear that a failure to do so does not constitute a <u>material</u> breach. Interpreting the language as Dr. Goldberg suggests is impermissible because it would make

6

references to execution of the Transaction Documents mere surplusage. *See Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010).

Dr. Goldberg argues that Navidea's post-execution conduct is inconsistent with Navidea's interpretation of "Closing Date" in the contract, but he is wrong on this score as well. Navidea issued shares to Dr. Goldberg (albeit with restrictive covenants) to incentivize him to abide by the August Agreement after he demanded its terms be changed and threatened not to perform. (SMF ¶ 45.) Thus, Navidea's issuance of shares before the due date was merely an effort to prevent the deal from falling apart in the face of Dr. Goldberg's repudiation. Navidea paid a lump sum of cash to Dr. Goldberg to cover his health benefits under COBRA for the same reason.[4] And Navidea extended credit to fund Macrophage immediately after the contract was signed because Macrophage otherwise would have run out of funds and could not have operated, which would have rendered the August Agreement worthless. (Kazan Decl. Ex. 16 at 477:15-478:3; *see* SMF ¶ 46.) Navidea's performance under the contract does not alter the definition of "Closing Date," nor does it reflect a different interpretation of the contract.[5] If anything, Dr. Goldberg's references to the draft Stockholders Agreement (Zimmer Opp. Decl. Ex. 19), further undermine his argument because the Effective Date is left blank (as opposed to August 14, 2018) and references any "ownership interest" rather than "equity" in Macrophage (which Dr. Goldberg effectuated an increase of through the Challenged Transactions).

---

[4]  Dr. Goldberg is again wrong on the facts. Navidea did not fund his COBRA for sixteen months, as he claims. *See* Goldberg Opp. at 9. Instead, Navidea paid Dr. Goldberg a sum of cash that he could use to pay his COBRA benefits. But, again, he failed to do so—yet another breach on his part.

[5]  Dr. Goldberg creates a strawman by mischaracterizing Navidea's argument. *See* Goldberg Opp. at 6. Navidea does not contend that Dr. Goldberg's non-execution entitled it to five years of non-performance because such an argument would be entirely bereft of the facts. Dr. Goldberg failed to meet the condition precedent which delayed Navidea's obligations under the August Agreement, but only a few weeks later, Dr. Goldberg attempted to change the terms of the enforceable deal in the August Agreement through his purported "negotiations." Then, only six months later Navidea was excused from performance as a result of Dr. Goldberg's material breach by engaging in the Challenged Transactions. Thus, Navidea does not argue five years, but rather only a few weeks.

Dr. Goldberg's claims also fail because the Challenged Transactions were a material breach—either of the contract itself or the implied covenant—that excused Navidea's and Macrophage's performance. Indeed, a material breach of either excuses further performance by the non-breaching party. *See, e.g.*, *Chamison v. HealthTrust, Inc.—Hospital Co.*, 735 A.2d 912, 923 (Del. Ch. 1999) (finding defendant's own material breach of implied covenant estopped it from insisting on plaintiff's performance under contract). Thus, Dr. Goldberg's breach precludes his claims and entitles Navidea and Macrophage to summary judgment.

Dr. Goldberg speciously argues that any such breach was not material (*see* Goldberg Opp. at 11-12), but he again ignores the undisputed facts. As noted above, the $10 million in financing was essential for Macrophage to stand on its own as a successful therapeutics company that would attract investment. The Challenged Transactions, including the effect of increasing his ownership stake while he refused to perform the required work, is a material breach because its result touches a "fundamental purpose" of the August Agreement and "go[es] to the root of the contract."[6]

To try to salvage the missing causation element of his third-party claim, Dr. Goldberg argues that he cannot be blamed for Macrophage's failure to issue the Super Common Voting Stock because he lacked the authority to cause Macrophage to issue those shares. *See* Goldberg Opp. at 13-15. His argument lacks merit. First, he concedes that he was in control of the Board between August 14, 2018 and November 29, 2018. *See* Goldberg Opp. at 14. Second, his unilateral issuance of equity in the Macrophage subsidiary that he created, M1M2—without seeking

---

[6] Dr. Goldberg strains credulity by contending that the Challenged Transactions were merely a "de minimis" breach. *DeMarie v. Neff*, 2005 WL 89403 (Del. Ch. Jan. 12, 2005), which he cites for his specious argument (*see* Goldberg Opp. at 12), does not help him because the court there held that failure to pay a $1,000 deposit on a $400,000 real estate transaction was not de minimis but rather a material breach because it had both economic and symbolic importance. *DeMarie*, 2005 WL 89403 at *5. So too, here, Dr. Goldberg's issuance of additional equity without performing the services required, in direct contravention of the August Agreement, has both economic and practical importance and constitutes a material breach.

Macrophage Board approval—demonstrates that he viewed himself as able to implement transactions when he wanted to through February 19, 2019. At no point in time prior to February 11, 2019 did he suggest he was unable to cause Macrophage to issue the MT Super Voting Stock.

Finally, Dr. Goldberg cannot satisfy the damages element of his third-party claim because the Court already excluded his expert's opinion on this issue under *Daubert* and ruled that he cannot recover specific performance or injunctive relief. (*See* ECF Doc. No. 61 at 18-19; ECF Doc. No. 108 at 2; ECF Doc. No. 290 at 24-26.) The fact that specific performance may <u>generally</u> be an available remedy for breach of contract (*see* Goldberg Opp. at 17) is irrelevant because, in this case, the Court has already ruled against Dr. Goldberg on this issue. Indeed, because Dr. Goldberg failed to articulate his standing in his motion to amend, the Court denied him injunctive relief. The specific performance he seeks—the issuance of Macrophage shares—is within his fourth cause of action for injunctive relief and therefore also is precluded. *See* ECF Doc. No. 31 (Counterclaim) ¶ 125. The Court previously stated that monetary damages are sufficient in lieu of his specific performance claim. (*See* ECF Doc. No. 61 at 19; ECF Doc. No. 108 at 2.) His argument that he is entitled to nominal damages should also be rejected because Dr. Goldberg testified in his deposition that his damages claims cannot be determined "without the benefit of expert testimony."[7] (ECF Doc. No. 273-1 (Dr. Goldberg Sept. 2020 Dep. Tr.) at 335:16-337:24.) But his expert testimony on this subject has been excluded and thus he cannot satisfy the damages element.

**<u>The Court Should Grant Navidea's Request for a Declaratory Judgment.</u>**

Even if the Court does not grant Navidea and Macrophage summary judgment on the parties' substantive claims, declaratory judgment is warranted and, contrary to Dr. Goldberg's

---

[7] Unlike Navidea, which never circumscribed the basis for its damages and therefore can recover nominal damages for its breach claims, Dr. Goldberg has taken the position in both his deposition and papers filed with the Court that monetary damages, as established by expert testimony, are the only damages he seeks. (*See* ECF Doc. No. 273, ¶¶ 5-12; ECF Doc. No. 273-1 (Dr. Goldberg Sept. 16, 2020 Dep. Tr.) at 335-337.)

argument, would not be premature. *Rexnord*, which Dr. Goldberg cites (*see* Goldberg Opp. at 25), is inapposite because the court in that case denied a request for a declaratory judgment because the dispute was already proceeding in a court in another jurisdiction that might have determined the validity of the agreement and ordered declaratory relief. *See Rexnord Indus., LLC v. RHI Holdings, Inc.*, 2009 WL 377180, at *10 (Del. Super. Feb. 13, 2009). And in both *Adchemy* and *Kulp*, the court denied declaratory relief because additional factual development was necessary. *See Adchemy, Inc. v. Plateau Data Servs., LLC*, No. N15C-03-096 MMJ CCLD, 2017 WL 3412159 (Del. Super. June 28, 2017); *Kulp v. Mann-Beebe*, 2006 WL 1149146 (Del. Super. Mar. 21, 2006)).

Here, in contrast, there is no parallel proceeding that could result in inconsistent declarations, nor do additional facts need to be developed. Issuing a declaratory judgment would "afford [the parties] relief from uncertainty with respect to [their] rights" and obligations under the August Agreement. *See Dana Corp. v. LTV Corp.*, 668 A.2d 752, 755 (Del. Ch. 1995). Further, because the relevant facts are undisputed (and were established in the Delaware Action), there is no risk of premature judgment. The Court therefore should grant summary judgment on Navidea's third cause of action and issue a declaration clarifying the parties' continuing rights and obligations under the August Agreement so that they may comply without fear of further litigation.

## CONCLUSION

Accordingly, for the reasons set forth in their original moving papers and above, Navidea and Macrophage respectfully submit that summary judgment should be granted in their favor.

Date: July 20, 2023
New York, New York

Respectfully submitted,

/s/ Barry M. Kazan
Barry M. Kazan, Esq.
Timothy J. Quill, Jr., Esq.
Mintz & Gold LLP

10

600 Third Avenue, 25th Floor
New York, New York 10016
Phone: (212) 696-4848
Fax:    (212) 696-1231
kazan@mintzandgold.com
quill@mintzangold.com

*Attorneys for Plaintiff /Counterclaim Defendant*
*Navidea Biopharmaceuticals, Inc. and*
*Third-Party Defendant*
*Macrophage Therapeutics, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2023, I caused to be served on counsel of record, electronically via the Court's electronic filing system, a true and correct copy of

/s/ Barry M. Kazan
Barry M. Kazan