Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Tel: (914) 402-5683
GZimmer@GZimmerLegal.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re* Navidea Biopharmaceuticals Litigation | Case No.: 1:19-cv-01578-VEC |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DR. MICHAEL M. GOLDBERG'S MOTION FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

**PAGES**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

    I.     DR. GOLDBERG IS ENTITLED TO DISMISSAL OF NAVIDEA'S FIRST CAUSE OF ACTION ......................................................... 1

    II.    DR. GOLDBERG IS ENTITLED TO DISMISSAL OF NAVIDEA'S SECOND CAUSE OF ACTION ..................................................... 6

    III.   NAVIDEA'S THIRD CAUSE OF ACTION ........................................................ 8

    IV.   DR. GOLDBERG IS ENTITLED TO SUMMARY JUDGMENT ON HIS FIRST CAUSE OF ACTION ................................................................. 8

    V.    DR. GOLDBERG IS ENTITLED TO SUMMARY JUDGMENT ON HIS SECOND CAUSE OF ACTION ........................................................... 9

    VI.   DR. GOLDBERG IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES ................................................................................................ 10

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Airborne Health, Inc. v. Squid Soap, LP*,
   984 A.2d 126 (Del. Ch. 2009) ................................................................................................ 7, 8

*Alban v. Kawasaki Kisen Kaisha, Ltd*,
   No. 22-2754, 2023 U.S. App. LEXIS 14101 (3d Cir. June 7, 2023) ..................................... 10

*Au New Haven, LLC v. YKK Corp.*,
   No. 1:15-cv-3411, 2019 U.S. Dist. LEXIS 113024 (S.D.N.Y. July 8, 2019) .......................... 7

*Diamond Servs. Mgmt., LLC v. Fable Jewelry Co.*,
   No. 12 Civ. 3543, 2012 U.S. Dist. LEXIS 165899 (S.D.N.Y. Nov. 20, 2012) ....................... 7

*Grimes v. Alteon, Inc.*,
   804 A.2d 256 (Del. 2002) ......................................................................................................... 9

*Hicks v. Baines*,
   593 F.3d 159 (S.D.N.Y. 2010) ................................................................................................. 6

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
   23 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................................................ 6

*Nichols v. Lewis*,
   No. 1758, 2008 Del. Ch. LEXIS 66 (Del. Ch. May 29, 2008) ................................................ 7

*Preferred Inv. Servs. v. T&H Bail Bonds, Inc.*,
   No. 5886, 2013 Del. Ch. LEXIS 190 (Del. Ch. July 24, 2013) ............................................... 9

*Siradas v. Chase Lincoln First Bank, N.A.*,
   No. 98-4028, 1999 U.S. Dist. LEXIS 15593 (S.D.N.Y. Sept. 30, 1999) ................................ 7

*Tradex Eur. SPRL v. Conair Corp.*,
   No. 06-1760, 2008 U.S. Dist. LEXIS 37185 (S.D.N.Y. May 7, 2008) ................................. 10

*Zurich Am. Life Ins. Co. v. Nagel*,
   590 F. Supp. 3d 702 (S.D.N.Y. 2022) ................................................................................... 10

**STATUTES**

8 Del. C. §§ 151, 152, 153, 157, 161 and 166 .............................................................................. 9

Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Michael M. Goldberg M.D. ("Dr. Goldberg") respectfully submits this reply memorandum of law in further support of his Motion.

## PRELIMINARY STATEMENT

In their Opposition to the Motion (the "Opp. Br."), Navidea admits that it did not issue the 23.5 million shares of Navidea common stock under Reg. D (the "Navidea Shares") as required by the August Agreement, and Macrophage admits that it did not issue to Dr. Goldberg 5% Super Voting Common Stock in Macrophage (the "Super Voting Common Stock").

Unable to deny their admitted breaches, Navidea and Macrophage attempt to excuse them by asking the Court to take a leap into an *Alison in Wonderland*-like alternate universe where up is down and down is up; where a clause saying that failure to execute documents "shall not render the provisions of this Agreement invalid" actually imposes a condition precedent *requiring* execution to receive performance; where words requiring one party to take action actually require another to do so; where actions already taken by parties to a contract *cannot* occur until future actions are taken; where CEOs are penalized for not taking actions *prohibited by law*; where contracts imposing restrictions on issuance of equity in one company *sub silentio* impose those same restrictions with respect to a different company; and where a *subsequent* breach by one party can excuse a *prior* breach by another. The text of the August Agreement and applicable law preclude the Court from joining Navidea on its journey.

## ARGUMENT

**I.  DR. GOLDBERG IS ENTITLED TO DISMISSAL OF NAVIDEA'S FIRST CAUSE OF ACTION**

Navidea argues that Dr. Goldberg breached the August Agreement by failing to execute "Transaction Documents." (Opp. Br. at 6-9.) The August Agreement provides:

> The Transaction Documents *shall* contain other terms, conditions, representations and warranties of Navidea, MT and Goldberg

> customary for transactions of the type set forth in this Agreement. Maslon LLP, counsel to Navidea's Special Committee, *shall* prepare initial drafts of the Transaction Documents. Upon execution, the terms of such Transaction Documents *shall* supersede the terms set forth herein, but any subsequent failure to execute the Transaction Documents *shall not* render the provisions of this Agreement invalid.

(Opp. Br. at 6-7 (emphasis added).) Navidea claims that this language makes execution of Transaction Documents a condition precedent to its obligation to issue the Navidea Shares. (Opp. Br. at 7-8.)[1] Navidea argues that the use of "mandatory, not permissive" "terms like 'shall' and 'will' in the Transaction Documents paragraph make their execution mandatory." (Opp. Br. at 8.) However, the "mandatory" term "shall" dictates what terms initial drafts "shall" contain, requires Navidea's counsel to prepare the initial drafts and states what effect Transaction Documents will have *if* they are executed. The only "mandatory" terms concerning execution of Transaction Documents are "shall not" – that is, "failure to execute the Transaction Documents *shall not* render the provisions of this Agreement invalid." Navidea does not explain how the use of "mandatory" terms applicable only to the content, drafter of initial drafts and potential effect of Transaction Documents could make their *execution* mandatory (much less a condition precedent). (*Id.*) Nor does Navidea acknowledge the operative "mandatory" term "shall not" applicable to execution.[2]

Navidea underscores the absurdity of its "interpretation" of the Transaction Documents provision of the August Agreement by acknowledging that "Delaware courts' objective theory of

---

[1] To the extent Navidea is also arguing that Dr. Goldberg breached the August Agreement by failing to negotiate Transaction Documents in good faith, the evidence presented in the Moving Brief and the evidence cited therein refutes that argument. (*See* Moving Br. at 12-14.) At a minimum, there exists an issue of fact whether Dr. Goldberg's extensive negotiations with Navidea's counsel constituted good faith negotiations.

[2] Navidea also claims that "certain of the obligations [imposed on it by the August Agreement] *required* additional documentation." (Opp. Br. at 7 (emphasis added).) However, it is undisputed that Navidea performed all of its obligations under the August Agreement *other than* the issuance of the Navidea Shares despite the fact that no Transaction Documents were ever executed. Moreover, Navidea did purport to issue a portion of the Navidea Shares to Dr. Goldberg in October 2018 although not in the form required by the August Agreement (Opp. Br. at 20) and place a portion of those shares in escrow despite the absence of executed Transaction Documents (*See* Navidea's 56.1 Counterstatement ("CSMF") ¶¶ 64-66).

contract interpretation does not demand drafting perfection in retrospect, but requires *language that a reasonable person would understand to create obligations and rights*." (Opp. Br. at 8 (emphasis added).) Yet, without identifying *any* language that could require execution of Transaction Documents, it simply states, *ipse dixit*, that "[t]he only reasonable interpretation of the Transaction Documents paragraph *requires* Dr. Goldberg to execute the Transaction Documents." (Opp. Br. at 8.) This simply cannot be squared with the contractual language.

Next, Navidea argues that Dr. Goldberg breached the August Agreement when he caused Macrophage to "create[] a subsidiary of Macrophage [M1M2 Therapeutics, Inc. ("M1M2")], transferred to M1M2 intellectual property licensed to Macrophage by Navidea, and issued to himself Super Voting Common Stock in M1M2 . . . ." (Opp. Br. at 11.) However, Navidea admits that "the August Agreement does not expressly prohibit Dr. Goldberg from engaging in self-help by creating a separate entity, transferring Macrophage's primary asset to that entity and surreptitiously obtaining interest in Macrophage." (*Id.* at 17.) This admission ends the analysis with respect to the claim that the M1M2 Transaction breached the August Agreement.

Yet, refusing to accept even *its own* interpretation of the August Agreement, Navidea argues at length that the M1M2 Transaction breached the August Agreement. Navidea points to a provision in the August Agreement that awards Dr. Goldberg 5% Super Voting Common Stock *in Macrophage* and prohibits him from "issu[ing] [himself] or any of his *affiliates* any equity or rights to purchase equity" "until such time as [Macrophage] shall have obtained aggregate gross proceeds of $10 million in one or more financings after the Closing Date" without the written consent of Navidea. (Zimmer Decl. Ex. D at 1 (emphasis added).) Navidea then invites the Court to apply this requirement to equity in a *subsidiary* of Macrophage. In contradiction to its own admission, it

-3-

argues that not to do so would constitute "an irrational elevation of form over substance." However, the "form" Navidea takes issue with is the text of the August Agreement.

Navidea's own counsel drafted the August Agreement and was careful to ensure that "affiliates" of Dr. Goldberg were included in the parties to whom equity could not be issued. The inclusion of this prohibition relating to "affiliates" of Dr. Goldberg demonstrates both that Navidea's counsel was aware of and focused on whether prohibitions in this section applied to affiliates and was fully capable of applying them to affiliates or subsidiaries of Macrophage if that was the parties' intent. As such, it is clear that the parties did not intend to apply the prohibition to "affiliates" or subsidiaries of Macrophage.

In fact, the contemporaneous interpretation of the language by Navidea's own counsel – who drafted the text – also makes clear that this language was not intended to apply to affiliates or subsidiaries of Macrophage. When Navidea's counsel prepared initial drafts of proposed Transaction Documents, the draft Stockholders Agreement purportedly "contain[ing] other terms, conditions, representations and warranties" (Zimmer Decl. Ex. D at 2.) relating to the limitation on Dr. Goldberg's issuance of equity to himself or his "affiliates" made clear that the limitation applied solely to issuance of shares of Macrophage, *not* any subsidiary. (*See* Dkt. No. 330 Ex. 19.) That document defines "Corporation" as "Macrophage Therapeutics, Inc.," with no mention of subsidiaries. (*Id.* at 1.) It then provides that "neither Dr. Goldberg or the Corporation shall issue, attempt to issue, or enter into any agreement to issue, [sic] ownership interest *in the Corporation* to Dr. Goldberg or any Affiliate of Dr. Goldberg without the prior written consent of Navidea[.]" (*Id.* (emphasis added).) It sets forth a broad definition of "Affiliate" that covers persons or entities with virtually any connection to Dr. Goldberg, but only restricts the entity whose shares may not be issued to "the Corporation," which is defined solely as Macrophage. (*Id.*) Thus, Navidea's counsel, the drafter of both the August Agreement *and* the initial drafts of proposed Transaction Documents, was well

aware of the concept of applying the prohibition to "affiliates" and purposefully applied it in *both* documents with respect to Dr. Goldberg, but *not* with respect to Macrophage. This fact cannot be squared with Navidea's self-serving reading of the provision.

Navidea's argument that the M1M2 Transaction gave Dr. Goldberg a greater interest in Macrophage than provided for in the August Agreement is another that cannot be squared with the facts. By granting himself a 5% Super Voting Common Stock interest in M1M2 – which held only a portion of Macrophage's assets – Dr. Goldberg received the same ownership interest in a portion of Macrophage's assets as the interest he was undisputedly entitled to in all of Macrophage under the August Agreement. (Zimmer Decl. Ex. D at 1.) Navidea's argument that this would "'upset[] the economic balance of rights and obligations' to which the parties agreed" ignores the fact that Dr. Goldberg has not yet received *any* other interest in Macrophage pursuant to the August Agreement. In fact, even today, years after the M1M2 Transaction was rescinded by the Delaware Action for reasons unrelated to the August Agreement,[3] Dr. Goldberg has not received *any* Super Voting Common Stock interest in Macrophage. Thus, Navidea's argument that the short-lived M1M2 Transaction gave Dr. Goldberg a greater ownership interest in Macrophage than he was entitled to, even while it was in effect, is factually false.

Additionally, Navidea argues that the provision of the August Agreement requiring *Navidea* to pay the cost of Dr. Goldberg's COBRA health insurance coverage actually required Dr. Goldberg to pay them. (Opp. Br. at 15.) In Navidea's counterfactual world, it was entitled to unilaterally impose that obligation on Dr. Goldberg by deciding to engage in conduct different

---

[3] Although the Delaware Action held that the M1M2 Transaction breached Dr. Goldberg's fiduciary duty to Macrophage, the Chancery Court did not consider whether Dr. Goldberg was entitled to a greater interest in Macrophage than the one indirectly granted through the M1M2 Transaction and did not rule – or even consider – whether the M1M2 Transaction breached the August Agreement. (*See generally* Zimmer Decl. Ex. NN.) Resolution of that issue is solely within the province of this Court.

from that required by the parties' agreement. The August Agreement clearly provides that "*Navidea will pay* the costs to continue Goldberg's existing health coverage for a period of 16 months after the Closing Date, *by paying the amounts required under COBRA to maintain such coverage*." (Zimmer Decl. Ex. D at 1, Severance (emphasis added).) Navidea argues – without any factual or legal support – that "because Navidea issued those payments directly to Dr. Goldberg, it is clear from the contract that the parties expected that he would forward those premiums to the insurance carrier." (Opp. Br. at 15.) In Navidea's view, a party can not only unilaterally decide to perform in a manner other than that provided in the contract, but that post-execution conduct can make the contract retroactively – and "clearly" – mean something opposite of what it actually says. The Court cannot indulge this misguided effort by Navidea.[4]

## II. DR. GOLDBERG IS ENTITLED TO DISMISSAL OF NAVIDEA'S SECOND CAUSE OF ACTION

Navidea argues that Dr. Goldberg's failure to execute Transaction Documents breached the implied covenant of good faith and fair dealing *because* the August Agreement *expressly requires* it. (Opp. Br. at 15-16.) This argument fails for at least three reasons. First, while Navidea is correct that a plaintiff may *plead* an implied covenant claim in the alternative to a breach of

---

[4] In an effort to manufacture some form of damages, Navidea cites testimony concerning costs incurred by Navidea in funding the Delaware Action. (Opp. Br. at 14.) However, the Delaware Action was for breach of fiduciary duty and conversion, *not* breach of the August Agreement. (*See generally* Zimmer Decl. Ex. NN.) And those costs were not even recoverable in the Delaware Action, where they *did* relate to the claims at issue. (*Id.* at *46-50.) Navidea's position that it incurred damages by paying Macrophage's law firm, Meitar, for time it spent advising Dr. Goldberg personally is not based on admissible evidence and cannot salvage Navidea's claims. In the Delaware Action, Mr. Latkin was not able to present *any* evidence to support that claim or damages in any amount based on it. (*Id.* at *44.) Navidea is precluded from making that same claim here. *See, e.g., Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 359 (S.D.N.Y. 2014). The Chancery Court similarly found that no evidence exists that Dr. Goldberg's conduct caused any reputational harm. (Zimmer Decl. Ex. NN at *42-43.) Finally, Navidea's conclusory statement that Dr. Goldberg "caused Navidea damages" when he allegedly "failed to further the interests of Macrophage as a separate entity" cannot survive summary judgment. (*See* Opp. Br. at 14); *Hicks v. Baines*, 593 F.3d 159, 166 (S.D.N.Y. 2010) ("[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist"). Moreover, the undisputed evidence shows Dr. Goldberg worked continuously on the development of therapeutics at Macrophage until the Navidea-appointed Macrophage board of directors terminated him on February 20, 2019. (Dkt. No. 330 ¶ 25; CSMF ¶ 14.)

contract claim courts routinely dismiss such alternative implied covenant claims at the summary judgment stage. *See*, *e.g.*, *Au New Haven, LLC v. YKK Corp.*, No. 1:15-cv-3411, 2019 U.S. Dist. LEXIS 113024, *5 (S.D.N.Y. July 8, 2019) (dismissing implied covenant claim based on "covenant that is not expressed in the written agreement"); *Diamond Servs. Mgmt., LLC v. Fable Jewelry Co.*, No. 12 Civ. 3543, 2012 U.S. Dist. LEXIS 165899, at *17 (S.D.N.Y. Nov. 20, 2012) (dismissing implied duty claim based on same alleged acts as breach of contract claim). Second, Navidea could not pursue an implied covenant claim based on an alleged breach of the actual terms of the Agreement. *See Affy Tapple, LLC v. ShopVisible, LLC*, No. N18C-07-216, 2019 Del. Super. LEXIS 867, at *10 (Del. Super. Ct. Mar. 7, 2019); *Siradas v. Chase Lincoln First Bank, N.A.*, No. 98-4028, 1999 U.S. Dist. LEXIS 15593, at *19 (S.D.N.Y. Sept. 30, 1999).[5] Third, the August Agreement expressly states that the parties *are not* required to execute Transaction Documents. The implied covenant cannot impose obligations inconsistent with the actual provisions of the contract. *See Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009).

Navidea argues that "[t]he parties could not have foreseen" the possibility that equity in a Macrophage subsidiary might be issued. (Opp. Br. at 17.) However, language applying contract terms to subsidiaries or affiliates is commonplace in contract drafting. *See*, *e.g.*, *Nichols v. Lewis*, No. 1758, 2008 Del. Ch. LEXIS 66, at *23 (Del. Ch. May 29, 2008) (plaintiff "had a common contractual tool to protect himself against what happened. That protection is called an 'affiliates' clause. Nothing prevented Nichols from demanding that the Cooperation Clause extend to any affiliates of the Sellers"). Navidea's counsel included such language with respect to "affiliates" of

---

[5] Navidea contends that "certain provisions could not be effectuated without Transaction Documents." (Opp. Br. at 16.) However, it is undisputed that Navidea performed its obligations (including issuing certain Navidea shares, albeit not in the form required, and placing some in escrow) without Transaction Documents. (*See* note 2, *supra*.)

Dr. Goldberg in both the August Agreement and its initial draft of proposed Transaction Documents. (*See supra*, pp. 3-5.) Navidea's counsel's own conduct negates Navidea's argument.

Navidea also argues that the August Agreement required Dr. Goldberg to advance Macrophage's interests. (Opp. Br. at 18.) Navidea's position is that the August Agreement binds Dr. Goldberg to indentured servitude to Macrophage (without pay) through the implied duty, despite the fact that the August Agreement never discusses *any* obligation of Dr. Goldberg with respect to Macrophage's operations after its execution. Navidea argues that Dr. Goldberg's obligation "derives directly from the relationship that the August Agreement established," but it does not identify any aspect of that relationship from which it could be derived. (*Id.*) The August Agreement merely awarded Dr. Goldberg an equity interest in Macrophage. The implied duty cannot impose obligations not contemplated by the terms of the agreement it attaches to. *See Airborne Health*, 984 A.2d at 146.

### III.  NAVIDEA'S THIRD CAUSE OF ACTION

Navidea's third cause of action should be dismissed for the reasons set forth in the Moving Brief. However, if Navidea is correct that the Court should declare the parties' rights and obligations even if the Motion is granted, that declaration should simply confirm that Dr. Goldberg is entitled to issuance of the Navidea Shares and the Super Voting Common Stock.

### IV.  DR. GOLDBERG IS ENTITLED TO SUMMARY JUDGMENT ON HIS FIRST CAUSE OF ACTION

Dr. Goldberg's First Cause of Action alleges that Navidea breached the August Agreement by failing to issue the Navidea Shares as required by the August Agreement. It is undisputed that Navidea did not do so. (*See* Opp. Br. at 20.) Navidea argues that its performance was excused for two reasons. First, that execution of Transaction Documents was a condition precedent. Second, that the M1M2 Transaction breached the August Agreement and thereby excused its performance.

For the reasons set forth above, these arguments are without merit. Moreover, even if the M1M2 Transaction could be a breach of the August Agreement, it was a "subsequent" breach because, as set forth above, execution of Transaction Documents was not required to trigger Navidea's obligation to issue the Navidea Shares. *See Preferred Inv. Servs. v. T&H Bail Bonds, Inc.,* No. 5886, 2013 Del. Ch. LEXIS 190, at *38 (Del. Ch. July 24, 2013).

## V. DR. GOLDBERG IS ENTITLED TO SUMMARY JUDGMENT ON HIS SECOND CAUSE OF ACTION

Dr. Goldberg's Second Cause of Action alleges that Macrophage breached the August Agreement when it failed to issue the Super Voting Common Stock. "[T]here is no dispute that Macrophage did not issue the [] Super Voting Common Stock." (Opp. Br. at 22.) Macrophage argues that its performance was excused for two reasons. First, it argues that Dr. Goldberg was required to issue himself the Super Voting Common Stock as Macrophage's CEO and therefore cannot complain that it was not issued. (Opp. Br. at 22-23.) However, as set forth more fully in Dr. Goldberg's opposition to Macrophage's summary judgment motion, Delaware law provides that only the board of directors of a Delaware corporation (like Macrophage) can issue stock and regulate the corporation's capital structure. *See Grimes v. Alteon, Inc.*, 804 A.2d 256, 261 (Del. 2002) (applying 8 Del. C. §§ 151, 152, 153, 157, 161 and 166).

Macrophage also argues that the M1M2 Transaction breached the August Agreement and excused its performance. For the reasons set forth above and as set forth in Dr. Goldberg's opposition to Macrophage's summary judgment motion, the M1M2 Transaction did not breach the August Agreement, and it occurred *after* Macrophage's obligation to issue the Super Voting Common Stock, so it could not have excused performance. *See Preferred Inv. Servs. v. T&H Bail Bonds, Inc.*, No. 5886, 2013 Del. Ch. LEXIS 190, at *38 (Del. Ch. July 24, 2013).

-9-

Finally, Macrophage argues that Dr. Goldberg cannot establish damages resulting from Macrophage's breach because his expert was precluded from offering opinions on a valuation of Macrophage. (Opp. Br. at 23-24.) However, the Court's *Daubert* decision did not preclude Dr. Goldberg from seeking specific performance, *i.e.*, compelling Macrophage to perform in accordance with the Agreement by issuing Dr. Goldberg the appropriate shares. *See Alban v. Kawasaki Kisen Kaisha, Ltd*, No. 22-2754, 2023 U.S. App. LEXIS 14101, at *6-7 (3d Cir. June 7, 2023). Nor did it preclude an award of nominal damages. *See, e.g.*, *Tradex Eur. SPRL v. Conair Corp.*, No. 06-1760, 2008 U.S. Dist. LEXIS 37185, at *18 (S.D.N.Y. May 7, 2008); *Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 718 (S.D.N.Y. 2022).

## VI. DR. GOLDBERG IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES

Navidea and Macrophage argue that if the Motion is granted, Dr. Goldberg would not be a "prevailing party" entitled to recover attorneys' fees and costs pursuant to the provision of the August Agreement entitling the prevailing party in "[a]ny *action to enforce the terms* of [the August Agreement] or adjudicate any *dispute arising out of* [the August Agreement]" to recover such fees and costs. (Zimmer Decl. Ex. D at 3.) Navidea argues that this is true because the Court previously dismissed claims by Dr. Goldberg for *wrongful termination*, *quantum meruit* and *injunctive relief*. (Opp. Br. at 24-25.) They continue their folly by arguing that Dr. Goldberg should not be considered a "prevailing party" because the dismissed *non-contract* claims sought $26 million in damages, representing an amount in excess of that sought through his *contract-based* claims. However, the fee and cost-shifting provision does not apply to the dismissed claims. Moreover, if the Court were to consider the magnitude of claims successfully dismissed by the parties, Dr. Goldberg successfully dismissed Navidea's breach of fiduciary duty claim seeking $50 million in damages (Dkt. No. 61), whereas Navidea's remaining claims do not seek any specific damages at all. By this standard, Dr. Goldberg is *already* the "prevailing party."

## CONCLUSION

For the foregoing reasons, the Court should grant Dr. Goldberg's Motion and should grant Dr. Goldberg such other and further relief as the Court deems just and proper.

Dated: Westchester, New York
July 20, 2023

Respectfully submitted,

/s/ Gregory Zimmer
Gregory Zimmer, Esq.
142 New Chalet Drive
Mohegan Lake, NY 10547
Phone: 914.402.5683
Fax: 914.402.5683
Email: GZimmer@GZimmerLegal.com

Jennifer Fiorica Delgado, Esq.
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020
T: 973.597.2500
F: 973.597.2400
*Attorneys for Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Michael M. Goldberg, M.D.*